## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

### No. 25-7123
### 1:24-cv-03434-ACR

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

OCT 2 9 2025

RECEIVED

**SAMIHA AYYASH et al**

         **Plaintiffs-Appellants,**

**v.**

**AMERICAN AIRLINES INC. et al**

         **Defendants-Appellees.**

---

### Appellant Feras Hindi's Reply to Appellee American Airlines' Opposition

Appellant's Motion for Summary Reversal demonstrates clear legal error by the District Court in denying mandatory relief under Rule 55(a) and the Motion to Strike, misapplying the law and offering no explanation for its rulings or docket irregularities and abuse of discretion. The record reflects arbitrary discretion that compounded these procedural errors and materially prejudiced Appellant Feras. These errors are not discretionary; they are plain violations of law so evident that further briefing or argument would not alter this Court's determination.

### Pattern of Non-Compliance

This appeal again exposes Appellee's continuing disregard for procedural rules and Appellants' rights. Appellee filed its Amended Certificate of Parties one day past

the deadline in violation of FRAP 26 and this Court's scheduling order; ignored the ECF docket clearly listing each Appellant's current address; and served filings to outdated addresses despite both Notices of Change of Address and an unopposed Motion for Compliance with Rule 5 filed by all Appellants requesting individual service. By continuing to serve collectively and inaccurately, Appellee violated the Federal Rules and submitted false certifications in breach of Rule 11(b). Each Appellant resides separately and is entitled to individual service. These actions replicate Appellee's conduct in the District Court: late filings, disregard for rules, and dependence on judicial indulgence rather than compliance.

## **Appellee (AA) misstatement in Opposition & Defective Certificate of Service**

Appellee misdirects the Court by recasting the summary motion as about *personal jurisdiction*. The issue is purely procedural and right by the law 55(a), strike and court abused discretion. A party cannot invoke or argue jurisdiction before it has properly appeared and served a non defective filings within the prescribed time. Appellee's "jurisdiction-first" argument is therefore legally irrelevant and an attempt to avoid responsibility for its own procedural default. Despite Appellee's false assertion that Appellant Feras Hindi was aware of the filing on February 12, 2025, Appellant wasn't. Plaintiffs made clear, both in their written motions and during the hearing, that they sought resolution on the merits. Appellant's claims and relief primarily serve the public interest and secondarily seeks compensation

for personal damages. Yet neither the District Court nor Appellee ("AA") ever pursued resolution on the merits. What unfolded instead was a straightforward scenario in which a billion-dollar corporation used its influence and procedural advantages to evade accountability and conceal noncompliance and alleged fraud, misconduct that harmed both the public and the Appellant. From the outset, the proceedings reflected irregular handling and unequal treatment. The case lacked the option of assignment to a magistrate judge, classified by intake manager Jean Claude mere "negligence." On February 12, 2025—the day Appellee ("AA") filed its motion to dismiss—Plaintiff Tala's electronic notification settings were inexplicably disabled, also recorded as a "mistake.", docketing delays, intake staff assisting Appellee Gulf Air in drafting its conference motion, and the disclosure of private phone communications between Plaintiffs and court staff that were later cited in Appellee Gulf Air oppositions (See D.D.C Dkt 25). Chambers then accepted delayed scheduling aligned with Appellees' requests. These events, ( before even the hearing )collectively are a consistent pattern of procedural imbalance favoring represented parties over pro se litigants.

From the start, this case was steered toward dismissal—not because the claims lacked merit or jurisdiction was absent, but because powerful airline defendants leveraged institutional privilege and influence against ordinary citizens. At the March 28 hearing, the District Court denied Appellant's Rule 55(a) Motion by

misapplying both the Federal Rules and the law of service. The Court reasoned that
Appellee had "appeared properly under her local rules," even though appearance is
irrelevant to Rule 55(a), Appellant was unaware of any "local rule" that overrides
the Federal Rules. The Court further excused Appellee's defective certificate of
service by declaring that electronic filing on the portal "serves all parties," a
rationale used to disregard and deny the pending Motion to Strike. **More
importantly**, during the March 28 hearing, the District Court stated, *"American
Airlines has not yet filed a motion to dismiss for lack of personal jurisdiction... But
what **they've told me is they plan to file a motion to dismiss** the case because the
actions did not happen in the District and because neither or none of the
defendants are incorporated in D.C."* (Tr. 2:21–25, 3:1–4). This statement was
demonstrably false. (D.D.C Dkt. 7) ("AA")' Motion to Dismiss, had already been
filed weeks earlier asserting both *lack of jurisdiction* and *failure to state a claim.*
By representing otherwise on the record and pre-authorizing the defense's
argument, the Court effectively coached one party, created a misleading record, and
substituted neutrality for advocacy. Such judicial conduct goes beyond
discretion—it reflects a departure from the impartial application of the rules and
undermines the integrity of the proceeding. The real reason the District Court made
that statement is clear: the original, defective, and unserved Motion to Dismiss
(Dkt. 7) aside from containing misrepresented certificate that adds to their pattern

of non compliance, it contained no defense invoking the government-doctrine or any FAA-submission argument that could be used to argue *minimum contacts* or *purposeful availment*, nor to counter Appellant's allegations of negligence per se and fraud, which asserted personal harm to Appellant beyond the pilot's death. Despite ("AA")'s filing (Dkt. 14) expressly requesting either to *withdraw* or *proceed* with that motion (Dkt. 7), the Court instead directed and spoon fed the counsel to re-file, effectively supplying the missing defense theories that were never raised in the original pleading so she can use discretion and use it to dismiss the case, and she did. It was all planned.

This scenario does not fit within the *Mauritius* defense framework that Appellee invokes to suggest jurisdiction would have been dismissed regardless in misapplied case law ***Khochinsky v. Republic of Poland*** . That rationale applies only where jurisdiction is clearly precluded by sovereign immunity—not where, as here, the Court manufactured a new defense after the fact to justify dismissal. Appellee's counsel exploited that influence, and the Court enabled it by overlooking procedural defaults, disregarding legitimate motions, and even declaring from the bench, "I have all the power in the world," a statement directed at a pro se litigant and delivered in a manner more fitting of advocacy than adjudication. That moment defined the tone of the proceedings. The District Court's ruling replaced law with discretion, fairness with indulgence, and justice with authority. Rather

than applying the governing standards objectively, the Court exercised unfettered discretion to reach a predetermined outcome, abandoning neutrality and undermining the very principles of fairness the judicial process is designed to protect. The result is not only harm to these pro se Appellant, but also to public confidence in the judiciary itself, reflecting continuing injury to both the public and the integrity of the judicial process. Appellee and its counsel have patronized not only the law and the FRCP but the authority of this Court, the rights of pro se litigants, and the public's trust in impartial justice. Their opposition functions as a deflection—an attempt to recast Appellant's Motion for Summary Reversal, grounded solely in Rule 55(a) and the unresolved, deniedMotion to Strike, into a jurisdictional dispute that was predetermined by the judge and neither properly raised before the District Court nor relevant to the issues on Appellant Summary Motion. An audio transcript of the hearing will do more justice.

### Appellee's Misplaced Reliance on *Khochinsky v. Republic of Poland*

Appellee's reliance on *Khochinsky v. Republic of Poland* (See Ex. 1, Appeal Order) reflects a misunderstanding of Rule 55(a) and this case's posture. *Khochinsky* involved the Foreign Sovereign Immunities Act (FSIA) and a Rule 55(c) motion by Poland to vacate a previously entered default—an entirely different procedural and jurisdictional context. Here, ("AA") is a private domestic corporation with offices, employees and continuous business in DC and mainly, not a foreign sovereign.

Moreover, AA's jurisdictional basis was never properly established yet the District court was certain of lack of Jurisdiction over ("AA") raising legitimate concerns of undue familiarity and potential conflict of interest between Appellee, its counsel, and the District Court. Additionally, *Khochinsky* addressed a court's discretion to vacate a default; this appeal challenges the District Court's refusal to enforce a Rule 55(a). The reasoning in *Khochinsky*—discretionary relief for a sovereign asserting immunity and admitting no prejudice by Khochinsky—has no application here, where strict procedural compliance is required.

Appellee misuses that precedent to justify the District Court's abuse of discretion. involving disputed facts of a private defendant's procedural noncompliance. Furthermore, unlike *Khochinsky* where the Court analyzed whether setting aside default would prejudice the plaintiff, Rule 55(a) involves a purely *ministerial duty* and does not require a showing of prejudice before entry of default. Additionally, the District Court neither sought nor applied any prejudice analysis, yet Appellant's Feras filings clearly demonstrated prejudice—aside from time and financial losses inside and outside the litigation. If such cumulative deprivation does not constitute prejudice, it is difficult to imagine what would. Appellee has already admitted that service was not made by the deadline, offering "twice" negligence and "belief" as excuses. That admission alone establishes that the certificate of service was willful, inaccurate and defective, violating Rule 11(b), and confirming Appellee's failure as

required by Rule 12(a)(1)(A)(i). Under Rule 55(a), the clerk's entry of default was therefore mandatory upon affidavit, and the clerk and District Court erred by not entering default and excusing the violation instead of enforcing the rule.

## Relaxed Briefing & Procedural Right to Oppose

Defendant's contention that Appellant suffered no prejudice because "a relaxed briefing schedule" was in place is both legally and factually baseless. The record contains no order, docket entry, or stipulation establishing any revised schedule prior to the expiration of Plaintiffs' 14 day response period. The claim of a "relaxed" schedule improperly seeks to reframe procedural noncompliance as judicial discretion. The hearing occurred over forty days after the deadline, during which multiple pending motions by Plaintiffs remained unaddressed. Appellee's reliance on an imaginary "relaxed" schedule is thus a post hoc attempt to justify its neglect and obscure the resulting prejudice to Plaintiffs' right to timely adjudication. **Simple Math** : On **Feb 12** – ("AA") filed its motion, triggering a **14-day** response or opposition deadline; the deadline to respond Feb 26;  On **Feb 18** Appellant Feras was first notified; From **Feb 18** onward Counsel refused to amend the Certificate of Service; **Feb 20** Appellee requested to withdraw or complete its filing without seeking relief under Rule 6(b) and in violation of the Standing Order; **Feb 24** Appellant filed a Request for Entry of Default (Rule 55(a)); Feb 26  Deadline to respond expired. Appellee remained out of compliance

and filed nothing proper or timely; **March 7** The Court issued a Notice of Hearing based solely on Appellee's request, despite the procedural defects and pending motions; **March 28** The Court held the hearing, effectively granting Defendant another 30 days to submit a new, well-crafted motion—rewarding noncompliance and prejudice to Appellant. Appellee acted to protect his rights as his claims could have been dismissed with prejudice if he didn't oppose, or requested amendment or jurisdictional discovery. See, e.g., Fox, 389 F.3d at 1292; Jackson v. Todman, 516 F. App'x 3 (D.C. Cir. 2013).

### Incomplete and Inaccurate Evidence Submitted by Appellee

The evidence submitted in Appellee's opposition is incomplete, inaccurate, and misleadingly selective, offered to retroactively justify both its own noncompliance and the District Court's discretionary leniency. Appellee was served with the full Complaint for a Civil Case—the official Pro Se form of the Administrative Office of the U.S. Courts—together with all attachments filed in the D.D.C. docket as Dkt. 2 (See Exhibit 2). Appellee's reproduced "image attached" deliberately omits the term "attachments" (See Exhibit 3), thereby distorting the substance and structure of the filed complaint. The Parties section in (D.D.C Dkt. 2) explicitly identifies Feras, Samiha, and Tala as distinct plaintiffs; yet Appellee misrepresents them as a single entity to obscure defects in its service and procedural compliance. (See Ex 3 D.D.C Dkt 1 attachment ) Appellant had his email that Appellee

neglected to add to this court or use. Further, Appellee's own submission contradicts itself by referencing a form allegedly filed by "all Plaintiffs" even though its exhibit omits Plaintiff Tala's name entirely. Appellee also falsely claims that all Plaintiffs "withdrew pro se consent," when the docket clearly shows the only Pro Se Consent to Receive Notices of Electronic Filing was filed by Tala Josephano on Jan 8, 2025 (See Ex. 4) and docketed as D.D.C Dkt. 3) on January 10, 2025.

| 01/08/2025 | 3 | NEW Pro Se Consent To Receive Notices of Electronic Filing by TALA JOSEPHANO (zdp) (Entered: 01/10/2025) |
|---|---|---|

Feras didn't execute such consent. Appellee's conflation of separate filings and parties, coupled with selective omission of record text, demonstrates an intentional misrepresentation rather than inadvertent error. Finally Appellee's opposition fails entirely to oppose the Motion to Strike that was denied without legal findings or reasoning or acknowledged and docketed inaccurately. This silence constitutes a concession of those arguments. By not responding, Appellee effectively forfeited any defense of those procedural defects, leaving Appellants' arguments uncontested.

## **Conclusion**

For these reasons, the Court should deny Appellee's opposition, exercise its

inherent authority to strike the newly filed, defective certificate of service, and

grant Appellant's Motion for Summary Reversal in full. The Court should also

consider imposing sanctions on Appellee and its counsel for their continued pattern

of noncompliance with service requirements and disregard for procedural rules.


Submitted Oct 14 2025


Feras Hindi / Pro Se

F. H

Feras Hindi

7823 New London Dr

Springfield VA 22153

(703)980-6955

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

I hereby certify, on Oct 27 2025, that:

1. This document complies with the word limit because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2220 words.

2. This document complies with the typeface requirements because this document was prepared in a proportionally spaced typeface using Doc word in a 14-point Times New Roman font.

Date : Oct 27 2025

Respectfully submitted

Pro Se Appellants

*F. H*

Feras Hindi

Feras Hindi

7823 New London Drive

Springfield, VA 22153

(703)980-6955

## CERTIFICATE OF SERVICE

I hereby certify that on Oct 27 2025  , I served the foregoing Reply to Opposition and exhibits by placing a true and correct copy in the United States Mail, first-class postage prepaid, addressed as follows:

-Micah Ticatch IslerDare PC 1945 Old Gallows Road, Suite 650 Vienna, VA 22182

-Mark A. Johnston, Eckert Seamans Cherin Mellott, LLC. 1717 Pennsylvania Avenue, N.W., Suite 1200 Washington, DC 20006

And By agreed communications Messages to Samiha Ayyash, Tala Josephano


Date : Oct 27 2025

Respectfully submitted

Pro Se Appellants

*F. H*

Feras Hindi


Feras Hindi, Pro Se

7823 New London Drive

Springfield, VA 22153

(703)980-6955

# EXHIBIT 1

ALEXANDER KHOCHINSKY, APPELLANT v. REPUBLIC OF POLAND, A FOREIGN STATE, APPELLEE Appeal from the United States District Court for the District of Columbia (No. 1:18-cv-01532)

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

OCT 29 2025

RECEIVED

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 9, 2020          Decided June 18, 2021

No. 19-7160

ALEXANDER KHOCHINSKY,
APPELLANT

v.

REPUBLIC OF POLAND, A FOREIGN STATE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-01532)

———

*Nicholas M. O'Donnell* argued the cause and filed the briefs for appellant.

*Desiree F. Moore* argued the cause for appellee. With her on the brief was *George C. Summerfield. Jonathan M. Cohen* entered an appearance.

Before: SRINIVASAN, *Chief Judge*, RAO, *Circuit Judge*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the court filed by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*: In 2010, Alexander Khochinsky, then a Russian foreign national living in the

2

United States, contacted the Republic of Poland seeking restitution for the loss of his family's land during the Nazi invasion. In an effort to negotiate with Poland for the payment of restitution, Khochinsky offered a painting in his possession that he believed resembled one reported missing by Poland. Poland did not respond to the offer as Khochinsky anticipated. Instead, it sought Khochinsky's extradition from the United States on the ground that he was knowingly in possession of a stolen painting. Poland's extradition attempt ultimately failed.

Khochinsky then brought an action against Poland, alleging that the effort to extradite him was tortious and infringed his rights. The district court dismissed the suit, holding that the Foreign Sovereign Immunities Act gives Poland immunity from Khochinsky's action. We affirm.

I.

On appeal from a dismissal in favor of a foreign sovereign on grounds of sovereign immunity, we assume the unchallenged factual allegations in the complaint to be true. *Simon v. Republic of Hungary*, 812 F.3d 127, 135 (D.C. Cir. 2016).

A.

The story behind Khochinsky's suit traces back to a small town in Poland at the outset of World War II. At the time, Khochinsky's mother, Maria Khochinskaya, a Polish Jew, lived in the town of Przemysl, Poland, where her family owned property. In 1939, Nazi Germany invaded Poland, prompting the Soviet Union to respond by annexing a portion of Przemysl. The annexation cut the city in half, with Maria's residence falling within the annexed portion.

3

A few years later, on June 20, 1941, Maria and her grandmother took a trip that saved their lives. That day, a Friday, they traveled east to Lviv (then part of the Soviet Union) to observe the Sabbath with Maria's mother. The next day, Nazi Germany invaded the Soviet half of Przemysl, murdering Maria's relatives who had remained behind. Maria became heir to the family property in Przemysl, and that inheritance passed to Khochinsky upon his mother's death in 1989.

In the 1990s, Khochinsky returned to Przemysl to find that his mother's house had been replaced by a Catholic church. That was a surprise to Khochinsky because his family had never been compensated for the conversion of the property. He initially did not seek restitution from Poland, though, due to his perception that Poland was unreceptive to Holocaust-related restitution claims.

Khochinsky's calculus changed in 2010, when he learned that a painting reported missing from Poland resembled one that he had inherited from his father. When Khochinsky's father died in 1991, Khochinsky inherited *Girl with Dove*, a painting by French rococo master Antoine Pesne. According to Khochinsky's father, the painting had been in Germany before he acquired it following World War II. As for the painting reported missing by Poland, it had been looted from the Wielkopolskie Museum in Poland by Nazi forces and never recovered.

Khochinsky did not know whether the two paintings were one and the same. Regardless, Khochinsky believed that *Girl with Dove* might serve as a useful bargaining chip in his efforts to obtain restitution from Poland for his family's land. To that end, in 2010, he contacted Poland and offered *Girl with Dove*. A Polish official, indicating an interest in negotiating with

4

Khochinsky, sent an expert to Khochinsky's gallery to examine the painting. The expert determined that *Girl with Dove* was the missing painting but did not share his conclusion with Khochinsky.

Rather than negotiating with Khochinsky, Poland opted to pursue criminal charges against him. In January 2013, a Polish court accused Khochinsky of knowingly and unlawfully purchasing *Girl with Dove*, and Poland issued a "Wanted Person Notice" for his arrest. Later that year, Poland submitted a request to the United States for Khochinsky's extradition. In early 2015, an Assistant United States Attorney filed a petition for a certificate of extraditability in the United States District Court for the Southern District of New York. The next day, Khochinsky was arrested and imprisoned for more than one week. Upon release, Khochinsky was subject to continued house arrest and electric monitoring.

In August 2015, the district court denied the Government's petition for a certificate of extraditability and dismissed the extradition complaint. *In re Extradition of Khochinsky*, 116 F. Supp. 3d 412, 422 (S.D.N.Y. 2015). The court found that "the Government failed to adduce any evidence" that Khochinsky knew *Girl with Dove* was "stolen at the time he acquired it." *Id.* The court thus held that "the Government ha[d] failed to establish probable cause to believe that Khochinsky committed the crime with which he [was] charged." *Id.*

B.

In June 2018, Khochinsky filed suit against Poland in the United States District Court for the District of Columbia. Khochinsky claimed that Poland's unsuccessful—and, in his view, retaliatory—extradition request had caused him "substantial damage." Compl. ¶ 115, J.A. 17. Khochinsky's

USCA Case #19-7160    Document #1902899    Filed: 06/18/2021    Page 5 of 16

5

complaint set out five counts against Poland: (i) a violation of his First Amendment rights by instigating a retaliatory extradition process; (ii) quiet title as to his ownership of *Girl with Dove*; (iii) tortious interference with his business stemming from his imprisonment and house arrest; (iv) aiding and abetting a trespass of his family land; and (v) abuse of process in connection with Poland's conduct in the extradition proceeding.

Poland did not timely answer Khochinsky's complaint or enter any appearance. As a result, on March 12, 2019, the Clerk of the Court entered a default against Poland. A few weeks later, however, on April 23, 2019, Poland moved to vacate the Clerk's entry of default and to dismiss Khochinsky's claims for lack of jurisdiction based on sovereign immunity. Two days after that, on April 25, Khochinsky moved for entry of default judgment.

The district court took up all three motions at once, granting Poland's two motions and denying Khochinsky's. First, the court found good cause for vacatur of the default, placing particular emphasis on the meritorious nature of Poland's jurisdictional defense. *Khochinsky v. Republic of Poland*, No. 18-cv-1532, 2019 WL 5789740, at *4 (D.D.C. Nov. 6, 2019). Second, and relatedly, the court determined that, under the Foreign Sovereign Immunities Act (FSIA) it lacked jurisdiction over Khochinsky's claims. *Id.* at *4–7. Third, in light of its jurisdictional ruling, the court denied Khochinsky's motion for default judgment as moot. *Id.* at *3 n.1.

USCA Case #19-7160    Document #1902899       Filed: 06/18/2021    Page 6 of 16

6

II.

On appeal, Khochinsky challenges the district court's dismissal under the FSIA as well as the court's vacatur of the default. We reject those challenges.

A.

We first consider the district court's vacatur of the default, which we review for abuse of discretion. *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 965 (D.C. Cir. 2016). Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Here, Poland initially failed to respond to Khochinsky's complaint, and the Clerk of Court entered default against Poland. A few weeks later, however, Poland moved to vacate the Clerk's entry of default pursuant to Rule 55(c), which permits a court to "set aside an entry of default for good cause." Fed. R. Civ. P. 55(c).

In exercising its discretion under Rule 55(c), a "district court is supposed to consider 'whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious.'" *Mohamad v. Rajoub*, 634 F.3d 604, 606 (D.C. Cir. 2011), *aff'd sub nom. Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012) (quoting *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 373 (D.C. Cir. 1980). There is an interest favoring "the resolution of genuine disputes on their merits," such that "all doubts are resolved in favor of the party seeking relief." *Jackson v. Beech*, 636 F.2d 831, 835–36 (D.C. Cir. 1980). And that interest is pronounced in the context of a foreign state desiring to assert defenses based on its sovereign status. *See FG Hemisphere Associates, LLC*

USCA Case #19-7160    Document #1902899    Filed: 06/18/2021    Page 7 of 16

7

*v. Democratic Republic of Congo*, 447 F.3d 835, 838 (D.C. Cir. 2006).

Here, the district court addressed the three primary considerations, finding that Poland's default was the result of confusion rather than willfulness, that Poland's defense of sovereign immunity was meritorious, and that Khochinsky suffered no prejudice from vacatur of the default. Khochinsky primarily attacks the district court's finding as to a lack of willfulness. But "[e]ven when a default is willful, a district court does not necessarily abuse its discretion by vacating a default when the asserted defense is meritorious and the district court took steps to mitigate any prejudice to the non-defaulting party." *Gilmore*, 843 F.3d at 966. That is the case here.

Khochinsky has no colorable argument as to meritoriousness or prejudice. "[A]llegations are meritorious if they contain even a hint of a suggestion which, proven at trial, would constitute a complete defense." *Mohamad*, 634 F.3d at 606 (quoting *Keegel*, 627 F.2d at 374). Poland's defense readily meets that standard, and in fact is ultimately meritorious, as discussed below. As for prejudice, there is no indication of any cognizable prejudice to Khochinsky from the vacatur of a default that had been entered a few weeks beforehand. When given an opportunity to address the point at oral argument, Khochinsky's counsel acknowledged the absence of prejudice. *See* Oral Argument at 23:30-24:00.

We thus find no basis to set aside the vacatur of the default, especially given that the defaulting party is a foreign nation seeking to assert the defense of sovereign immunity. As we have previously noted, "[i]ntolerant adherence to default judgments against foreign states could adversely affect this nation's relations with nations and undermine the State Department's continuing efforts to encourage foreign

USCA Case #19-7160    Document #1902899    Filed: 06/18/2021    Page 8 of 16

8

sovereigns to resolve disputes within the United States' legal framework." *FG Hemisphere Associates*, 447 F.3d at 838–39 (quoting *Practical Concepts Inc. v. Republic of Bolivia*, 811 F2d 1543, 1551 n.19 (D.C. Cir. 1987)).

In an effort to bolster his argument that the district court erred in vacating the entry of default, Khochinsky seeks to supplement the record on appeal with evidence of a French court's October 2019 denial of Poland's further efforts to extradite Khochinsky, this time from Paris. That evidence, in Khochinsky's view, bears on whether Poland acted willfully in failing to respond to his complaint in this case. As explained, however, we sustain the district court's vacatur of default regardless of any willfulness on Poland's part. And at any rate, the evidence was not before the district court at the time of its grant of vacatur and thus does not bear on whether the court abused its discretion. *See Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 24 n.9 (D.C. Cir. 1984).

Khochinsky raises one additional ground for setting aside the district court's vacatur of default: the court's decision not to enforce (or even acknowledge) Poland's failure to comply with local rules pertaining to the process for seeking vacatur of a default and to conferring with an opposing party before filing a nondispositive motion. Noncompliance with those procedural rules, however, did not prejudice Khochinsky in any material way. We thus find no abuse of discretion in the district court's vacatur of the default.

B.

We now turn to the core of the case: Poland's assertion of sovereign immunity from Khochinsky's claims. We review de novo the district court's dismissal of the claims on grounds of

9

sovereign immunity. *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 874 (D.C. Cir. 2014).

The FSIA, 28 U.S.C. §§ 1602 *et seq.*, affords the exclusive basis for a United States court to obtain jurisdiction over claims against a foreign state. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). The statute first establishes a baseline grant of immunity, 28 U.S.C. § 1604, and then sets out various defined exceptions to that general grant, *id.* §§ 1605–07. The result is that courts lack jurisdiction over a claim against a foreign state unless it "comes within an express exception." *Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 196 (D.C. Cir. 2004).

Khochinsky contends that his claims implicate three FSIA exceptions: the implied waiver exception, 28 U.S.C. § 1605(a)(1); the counterclaim exception, *id.* § 1607; and the noncommercial tort exception, *id.* § 1605(a)(5). We agree with the district court that none of those exceptions extends to Khochinsky's claims.

1.

We first consider the implied waiver exception. Under 28 U.S.C. § 1605(a)(1), a foreign state will not be "immune from [ ] jurisdiction" in any case "in which the foreign state has waived its immunity either explicitly or by implication." Khochinsky contends that, by requesting his extradition, Poland implicitly waived its sovereign immunity as to all of his claims in this case. We disagree.

The FSIA does not specifically define what will constitute a waiver "by implication," but our circuit has "followed the virtually unanimous precedent construing the implied waiver provision narrowly." *Creighton Ltd. v. Gov't of Qatar*, 181

10

F.3d 118, 122 (D.C. Cir. 1999) (internal quotation marks and citation omitted). In particular, we "have held that implicit in § 1605(a)(1) is the requirement that the foreign state have *intended* to waive its sovereign immunity." *Id.* (emphasis added); *see Ivanenko v. Yanukovich*, 995 F.3d 232, 239 (D.C. Cir. 2021). And as we have observed, "courts rarely find that a nation has waived its sovereign immunity . . . without strong evidence that this is what the foreign state intended." *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990) (quoting *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 377 (7th Cir.1985)).

We have found the requisite evidence of a foreign state's intent to qualify as an implied waiver of sovereign immunity "in only three circumstances": (i) the state's "executing a contract containing a choice-of-law clause designating the laws of the United States as applicable"; (ii) the state's "filing a responsive pleading without asserting sovereign immunity"; or (iii) the state's "agreeing to submit a dispute to arbitration in the United States." *Ivanenko*, 995 F.3d at 239; *see World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1161 n.11 (D.C. Cir. 2002). And "courts have been reluctant to stray beyond these examples when considering claims that a nation has implicitly waived its defense of sovereign immunity." *World Wide Minerals*, 296 F.3d at 1161 n.11 (internal quotation marks omitted).

A foreign state's extradition request does not fit in that selective company. Extradition operates upon norms of "international comity." *See Casey v. Dep't of State*, 980 F.2d 1472, 1477 (D.C. Cir. 1992). Extradition treaties implementing those norms have produced "a global network of bilateral executive cooperation that aims to prevent border crossing from becoming a form of criminal absolution." *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323

11

F.3d 1198, 1208 (9th Cir. 2003). Conditioning a foreign state's exercise of treaty rights on submitting to the jurisdiction of United States courts could imperil the spirit of cooperation and comity underpinning that regime. In that context, there is good reason to doubt that a foreign state's effort to exercise its agreed-upon treaty rights exhibits an intent to relinquish its immunity from suit. And were we to find that a foreign state's extradition request implies a waiver of immunity in United States courts, we might expect that, as a reciprocal matter, the United States would subject itself to suit in foreign proceedings whenever it requests extradition assistance. *See id.* at 1208 n.6. We know of no sound basis for putting the parties to an extradition treaty to that choice as a matter of course.

That is particularly so in view of extradition's fundamentally diplomatic, executive character. "Subject to judicial determination of the applicability of the existing treaty obligation of the United States to the facts of a given case, extradition is ordinarily a matter within the exclusive purview of the Executive." *Shapiro v. Sec'y of State*, 499 F.2d 527, 531 (D.C. Cir. 1974), *aff'd sub nom. Comm'r v. Shapiro*, 424 U.S. 614 (1976). The Executive generally "conducts the procedure on behalf of the foreign sovereign," such that the foreign state "makes no direct request of our courts" and "its contacts with the Judiciary are mediated by the executive branch." *Blaxland*, 323 F.3d at 1207. Because a foreign sovereign operates at a level of remove from United States courts when it seeks our assistance in extradition, there is all the more reason to doubt that an extradition request connotes an intent to waive the requesting sovereign's immunity in our courts.

For essentially these reasons, the only other court of appeals to address the issue held that an extradition request does not impliedly waive sovereign immunity. *Id.* at 1206–09. In reaching that conclusion, the Ninth Circuit in *Blaxland*

12

distinguished the sole case on which Khochinsky relies here, a previous Ninth Circuit decision, *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699 (9th Cir. 1992). That earlier decision involved a letter rogatory, which is a "direct court-to-court request," whereas "extradition is a diplomatic process carried out through the powers of the executive, not the judicial, branch." *Blaxland*, 323 F.3d at 1207. While we have no occasion here to decide the status of a letter rogatory for purposes of the FSIA's implied waiver exception, we agree with the Ninth Circuit that an extradition request does not effect an implied waiver of sovereign immunity.

The terms of the specific extradition treaty at issue—between the United States and Poland—suggests no ground for drawing any different conclusion in the specific circumstances. The U.S.-Poland Treaty does not directly address the subject of sovereign immunity against actions in either party's courts. Rather, the Treaty generally provides for the signatory countries to "request extradition . . . through the diplomatic channel." Extradition Treaty Between the United States of America and the Republic of Poland, U.S.-Pol., art. 9, July 10, 1996, T.I.A.S. No. 99-917. And by making use of the Treaty's "diplomatic channel" through a request for assistance from the United States's Executive Branch, Poland did not subject itself to the jurisdiction of United States courts.

2.

Khochinsky next argues that two of his claims—the claim for quiet-title related to *Girl with Dove* and the claim for aiding-and-abetting-trespass related to his family land in Przemysl—fall within the FSIA's counterclaim exception. Under that exception, "[i]n any action brought by a foreign state, or in which a foreign state intervenes," the "foreign state shall not be accorded immunity with respect to any counterclaim" fitting

13

within three defined categories. 28 U.S.C. § 1607. Those three categories include, as relevant here, a counterclaim "arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state." *Id.* § 1607(b). According to Khochinsky, the extradition proceeding amounts to an "action brought by a foreign state" within the meaning of that provision, and his quiet-title and aiding-and-abetting-trespass claims arise out of the same "transaction or occurrence" as the extradition proceeding.

Even assuming that those two claims arise out of the same transaction or occurrence as the original extradition proceeding, Khochinsky's claims simply do not constitute "counterclaims" for purposes of the FSIA's counterclaim exception. Consistent with the ordinary understanding of a counterclaim, *see* Fed. R. Civ. P. 13, the counterclaim exception applies only when there is an "action brought by a foreign state, or in which a foreign state intervenes," and when the ostensible "counterclaim" is brought "in" that same action. *See* 28 U.S.C. § 1607 ("*In* any action brought by a foreign state . . .") (emphasis added).

Khochinsky's claims against Poland satisfy neither requirement. First, as the district court observed, the extradition proceeding was brought by the *United States*, not Poland, and at no point did Poland "intervene in the extradition proceeding or appear as a party in the proceeding at all." *Khochinsky*, 2019 WL 5789740, at *6. Second, Khochinsky brings his current claims in an entirely distinct action, one that he, not the foreign state, initiated. Those claims, then, are not counterclaims, much less counterclaims in an action brought by a foreign state. Khochinsky responds that he was unable to assert his claims in the original "action," i.e., the extradition proceeding. But that only confirms that an extradition

14

proceeding is not the sort of action as to which the FSIA's counterclaim exception generally applies.

3.

Third and finally, Khochinsky argues that two of his claims—the claims for First Amendment retaliation and for tortious interference with business relations—fall within the FSIA's noncommercial tort exception. That exception potentially applies in any case:

> in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment.

28 U.S.C. § 1605(a)(5). But even if Khochinsky's relevant claims fit within that description, the exception excludes from its coverage "any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." *Id.* § 1605(a)(5)(B).

Poland contends that Khochinsky's pertinent claims are ones "arising out of . . . abuse of process," *id.*, and we agree. Khochinsky's First Amendment retaliation claim asserts that Poland undertook the extradition process to retaliate against his speech. Compl. ¶¶ 120, 122, J.A. 18. And his tortious interference claim contends that Poland's actions caused him to be imprisoned and subjected to house arrest. Compl. ¶ 133, J.A. 19. Both of those claims "arise out of" an alleged "abuse of process"—i.e., an alleged abuse of the extradition process. While Khochinsky observes that the two claims are not

15

themselves actions for abuse of process, the statutory language
covers not just claims *of* abuse of process, but any claims
*"arising out of"* an alleged "abuse of process." 28 U.S.C.
§ 1605(a)(5)(B) (emphasis added).     That is true of
Khochinsky's two relevant claims here, both of which "derive
from the same corpus of allegations concerning his
extradition." *Blaxland*, 323 F.3d at 1203; *see Cabiri v. Gov't
of the Republic of Ghana*, 165 F.3d 193, 200 (2d Cir. 1999).

Khochinsky submits that the term "abuse of process" for
purposes of § 1605(a)(5)(B) refers solely to abuse of judicial
process, whereas extradition is a diplomatic process. But as the
Ninth Circuit observed in *Blaxland*, a claim against a foreign
state for wrongfully "invoking the extradition procedures"
involves an "abuse of process" within the meaning of
§ 1605(a)(5)(B). *Blaxland*, 323 F.3d at 1204. Whether the
term "abuse of process" is "defined according to a uniform
federal standard or according to applicable state law"—here,
District of Columbia or New York law—the term "concern[s]
the wrongful use of legal process," including an alleged effort
to "misuse[] legal procedures to detain" or "extradite"
someone. *Id.* at 1204, 1206; *see* Restatement (Second) of Torts
§ 682 (1977) (defining tort of abuse of process); *Doe v. District
of Columbia*, 796 F.3d 96, 108 (D.C. Cir. 2015) (same under
D.C. law); *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326 (N.Y.
1984) (same under N.Y. law). And Khochinsky is wrong,
moreover, insofar as he assumes that extradition is an
exclusively diplomatic process, to the complete exclusion of
any judicial role:  while extradition, as we have explained, is
fundamentally diplomatic in character, it ultimately involves
the courts in some measure in its execution—as evidenced by
the termination of the extradition proceedings in this case upon
a judicial determination that probable cause was lacking.

16

For all of those reasons, an alleged abuse of the extradition process counts as an "abuse of process" under § 1605(a)(5)(B). It follows that Khochinsky's claims of First Amendment retaliation and tortious interference fall outside the scope of the FSIA's noncommercial torts exception.

\*    \*    \*    \*    \*

For the foregoing reasons, we affirm the district court's grant of Poland's motion to dismiss for lack of jurisdiction.

*So ordered.*

# EXHIBIT 2

Complaint for a Civil Case—the official Pro Se form of the Administrative Office

of the U.S. Courts—together with all attachments filed in the D.D.C. docket as

Dkt. 2

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

OCT 2 9 2025

RECEIVED

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

District of Columbia ▾

____Civil_____ Division

| | | |
|---|---|---|
| Samiha Ayyash,<br>Feras Hindi<br>Tala Josephano | ) | Case No. 24-cv-03434 |
| | ) | *(to be filled in by the Clerk's Office)* |
| | ) | |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | Jury Trial: *(check one)* ✔ Yes ☐ No |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| **-v-** | ) | |
| | ) | UNITED STATES COURT OF APPEALS |
| Gulf Air B.S.C , American Airlines INC | ) | FOR DISTRICT OF COLUMBIA CIRCUIT |
| | ) | |
| | ) | OCT 2 9 2025 |
| | ) | |
| *Defendant(s)* | ) | RECEIVED |
| *(Write the full name of each defendant who is being sued. If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | ) | |
| *with the full list of names.)* | ) | |

## COMPLAINT FOR A CIVIL CASE

**I.     The Parties to This Complaint**

   **A.     The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Samiha Ayyash |
| Street Address | 7823 New London Dr, |
| City and County | Springfield, Fairfax |
| State and Zip Code | VA 22153 |
| Telephone Number | 703-980-6955 |
| E-mail Address | ayyashsamiha@gmail.com |

RECEIVED

DEC 31 2024

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

   **B.     The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Gulf Air B.S.C |
| Job or Title *(if known)* | Foreing airlines |
| Street Address | 1717 Pennsylvania Ave., N.W., 12th Floor |
| City and County | Washington |
| State and Zip Code | D.C. 20006. |
| Telephone Number | 1 (888) 359-4853 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | American Airlines INC |
| Job or Title *(if known)* | Foreign Airlines |
| Street Address | 1090 VERMONT AVE. NW |
| City and County | Washington |
| State and Zip Code | DC 20005 |
| Telephone Number | 800-433-7300 |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question      ☑ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

   a. If the plaintiff is an individual

   The plaintiff, *(name)* Samiha _____, is a citizen of the State of *(name)* Virginia _____.

   b. If the plaintiff is a corporation

   The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____,

   and has its principal place of business in the State of *(name)*

   _____.

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

   a. If the defendant is an individual

   The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of

   *(foreign nation)* _____.

b.  If the defendant is a corporation

The defendant, *(name)* Gulf Air B. S C , is incorporated under

the laws of the State of *(name)* , and has its

principal place of business in the State of *(name)* .

Or is incorporated under the laws of *(foreign nation)* Bahrain ,

and has its principal place of business in *(name)* Bahrain .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.  The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:
Samiha: Loss of substantial financial support from Captain Alhindi, including approximately $500 monthly contributions for essential living expenses and caregiving costs.Increased financial burden on Plaintiff Feras due to taking on caregiving responsibilities and covering expenses previously managed by Captain Alhindi. Funeral event expenses and legal proceedings up to 3/2023 emotional distress and severe psychological harm suffered

## III.  Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.
This is a civil action arising from the preventable death of Captain Mohannad Alhindi, who tragically died from a cardiac incident while on duty for Gulf Air B.S.C.(C) (hereinafter " Gulf Air" ) on December 14, 2022, in Dhaka, Bangladesh. Plaintiffs Samiha Ayyash and Feras Hindi, the mother and brother of Captain Alhindi, respectively, bring this case against the Defendants for their collective failure to uphold their legal and contractual obligations regarding aviation safety, as mandated by both U.S. and international regulations. These failures led directly to the death of Captain Alhindi, causing significant financial loss and severe emotional distress to the Plaintiffs. SEE ATTACHMENT

## IV.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

SEE ATTACHMENT

## V.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          12/09/2024

Signature of Plaintiff

Printed Name of Plaintiff     Samiha Ayyash    FERAS Hindi  Tala Josephano

### B.     For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

**United States District Court**

**District of Columbia**


1. Samiha Ayyash, Feras Hindi

   Pro Se

   7823 New London Dr, Springfield, VA 22153

   (703) 980-6955

   AyyashSamiha@gmail.com


**AMENDED CLAIM  COMPLAINT FOR A CIVIL CASE**

**ATTACHMENTS 1-7**


Negligence Per Se ,Negligence ,Wrongful Death , Breach of Fiduciary Duty

Fraudulent Concealment , Fraudulent Misrepresentation, Constructive Fraud, NIED

and IIED

RECEIVED

DEC 31 2024

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

**ATTACHMENT 2**

## JURISDICTION

### 1. Jurisdiction

This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 (diversity

jurisdiction) because the amount in controversy exceeds $75,000, exclusive

of interest and costs, and there is complete diversity of citizenship between

**Plaintiffs and Defendants:**

I. Plaintiff Samiha and Plaintiff Feras are residents & Citizens of Virginia Plaintiff Tala
is Citizen and resident of California

II. Gulf Air is incorporated and has its principal place of business in Bahrain.

III. American Airlines is incorporated in Delaware with its principal place of business in

Texas.

### B. Venue

Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(b)(2)
substantial parts of the events or omissions giving rise to this action occurred in
this jurisdiction, venue serves the convenience of witnesses. All Defendants can
be served in DC. No other Forum available.

**ATTACHMENT 3**

## 3. PARTIES

**Plaintiffs**

1. **Samiha Ayyash** Address: 7823 New London Dr, Springfield, VA 22153

   Relationship: Mother, heir, beneficiary, and dependent of Captain

   Mohannad Alhindi, Referred to by " The Captain "

2. **Feras Hindi** Address: 7823 New London Dr, Springfield, VA 22153

   Relationship: Brother of Captain Mohannad Alhindi

3. **Tala Josephano** 615 S Catalina Ave #233 Redondo Beach CA 90277

Relationship : Sister of the Captain and Feras and daughter of Samiha.

**Defendants**

1. **Gulf Air B.S.C.(C)** Principal Place of Incorporation : Bahrain  . DC Registered

   Agent : Evelyn D. Sahr, Drew M. Derco, Eckert Seamans Cherin & Mellott, LLC,

   1717 Pennsylvania Ave., N.W., 12th Floor, Washington, D.C. 20006. Gulf Air Has a

   company registered in NY

2. **American Airlines, Inc. :**Principal Place of Incorporation: Texas  Registered

   Office Address :CORPORATION SERVICE COMPANY 1090 VERMONT AVE. NW

   Washington DC 20005

**ATTACHMENT 3**

## Table of Violations

1. Gulf Air Negligence & Breach of Duties - **Page 10**
2. Gulf Air Violation of Codeshare Guidelines and DOT Orders and Rules
   - A. Failure to Detect and Mitigate Crew Medical Incapacitation - **Page 12**
   - B. Gulf Air Failure in Crew Medical Examination - **Page 14**
3. Gulf Air Violation of ICAO Annex 6
   - C. Gulf Air Violations of ICAO Annex 6 (3.3.2) - **Page 18**
   - Gulf Air's Failure in Implementing an Effective Safety Management System (SMS) - **Page 18**
4. Violations of ICAO Annex 19
   - D. Gulf Air's Failure in Implementing an Effective Safety Management System (SMS) - Page 21
5. Gulf Air Negligence in Hospital Choice & Quality of Care
   - E. Breach of Duty of Care in Providing Adequate Medical Care - **Page 25**
   - F. Breach in Providing the Captain's Medical History - **Page 25**
6. Gulf Air Duties & Breaches Leading to Percutaneous Coronary Intervention (PCI)
   - G. Breach of Duty of Care by Not Disclosing Material Facts - **Page 28**
7. Breach of Fiduciary Relationship - **Page 31**
8. Breach of Duty of Superior Knowledge
   - H. Heightened Duty in Emergencies - **Page 34**
9. Gulf Air Fraudulent Concealment
   - I. Fraudulent Concealment Related to PCI Consent - **Page 36**
10. Hospital Records Seizure and Intentional Concealment by Gulf Air - **Page 51**
11. Fraudulent Misrepresentation of Death Summary & Hospital Records - **Page 66**
12. Gulf Air False Representation
13. A. Media Representation – January 2023 - **Page 78**
13. American Airlines as Second Defendant - **Page 8**
14. AA False Representation of Audit Certificates Submitted to the FAA - **Page 85**
15. Gulf Air Violation of Public Interest - **Page 95**
16. American Airlines Violation of Public Safety - **Page 100**
17. Attachment 4 - Claims - **Page 102**

**ATTACHMENT 4**

# EXHIBIT 3

Attachment of Original claim and amended claim, that is added on top left just for

formalities. Party section in claim and amended claim is listed in Exhibit 2 and

identifies Feras as an individual Pro Se Party

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

OCT 2 9 2025

RECEIVED

# United States District Court

## District of Columbia

1. SAMIHA AYYASH, FERAS HINDI

   Pro Se

   7823 New London Dr, Springfield, VA 22153

   (703) 980-6955

   Fhindi@friendshiplogistics.com

   AyyashSamiha@gmail.com   

### COMPLAINT FOR A CIVIL CASE

 ATTACHMENTS 1-8

## Table of Contents

1. Jurisdiction

2. Venue

3. Parties

4. Statement of Claim

5. Claims

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

OCT 29 2025

RECEIVED



1. Samiha Ayyash, Feras Hindi

   Pro Se

   7823 New London Dr, Springfield, VA 22153

   (703) 980-6955

   AyyashSamiha@gmail.com

**AMENDED CLAIM  COMPLAINT FOR A CIVIL CASE**

 **ATTACHMENTS 1-7**

# EXHIBIT 4

Tala Josephano DKT 3 Pro Se Party individual Pro Se Consent.

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

OCT 2 9 2025

RECEIVED

# U.S. DISTRICT COURT

## DISTRICT OF COLUMBIA

### PRO SE CONSENT TO RECEIVE NOTICES OF ELECTRONIC FILING

**CHECK ONLY ONE BOX FOR THE APPLICABLE SECTION BELOW:**

---

☑ **INITIAL REQUEST:** (Check this box to begin receiving notices of electronic filing)

I understand that I waive my right to receive service of documents by first class mail pursuant to Federal Rule of Civil Procedure 5(b)(2)(E).

I understand that I will be sent notices of electronic filing via e-mail and upon receipt of a notice, I will be permitted **ONE** "free look" at the document by clicking on the hyperlinked document number, at which time I should print or save the document to avoid further charges. The **ONE** "free look" will expire in 15 days from the date the notice was sent. After the **ONE** "free look" is used or expired, the document can be accessed by me through PACER (Public Access to Court Electronic Records) and I may be charged to view the document or for FREE by using the public terminals at the Clerk's Office.

I understand that it is strongly recommended that I establish a PACER account by visiting the PACER website at www.pacer.gov, which will allow me to view, print, and download documents at any time for a nominal fee.

The e-mail address I provided below is valid and I understand I am responsible for checking it on a regular basis. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address.

I understand that electronic service does not allow me to file documents electronically and does not mean that I can serve documents by e-mail. I must continue to file all communications regarding my case in paper copy with the Court and serve the opposing party.

I understand that I must file a consent in each case in which I wish to receive electronic service and that electronic service is not available in Social Security or Immigration cases or for incarcerated litigants.

---

☐ **UPDATE TO INFORMATION:** (Check this box to make changes to your email address)

I have a new email address as indicated below.

---

☐ **REQUEST TO DEACTIVATE ELECTRONIC NOTICING:** (Check this box to request deactivate electronic noticing)

I request deactivation of electronic noticing. I understand that by deactivating my account, I will begin receiving all filings via U.S. mail instead of email.

I understand that I will continue to receive electronic notices until such time as the Court has deactivated my account.

---

*I am a pro se party and I have read the applicable section check-marked above and understand and agree to the terms and conditions set forth therein. The U.S. District Court bears no liability for errors resulting from the information I have submitted on this form.*

Signature: _____  Date: _____January 7 2025_____

Printed Name: ____Tala Josephano____  Case No: ____24-cv-03434____

Home Address: ____615 S Catalina Ave #233 Redondo Beach CA 90277____

| My Email Address is: | josephanotala@gmail.com |
|---|---|

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

OCT 2 9 2025

RECEIVED

RETURN THE FORM VIA MAIL OR IN PERSON TO:
The Clerk's Office
U.S. District Court
333 Constitution Ave. NW, Room 1225
Washington, DC 20001

RECEIVED

JAN 8 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia