**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 25-7123**

---

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**Samiha Ayyash, et al  Plaintiffs – Appellants Pro Se,**

**V.**

**American Airlines Inc., et al  Defendants – Appellees.**

---

Appeal from the United States District Court for the District of Columbia, No. 1:24-cv-03434-ACR (Judge Ana C. Reyes)

---

**APPELLANT'S APPENDIX**

Pro Se Plaintiff-Appellant
Feras Hindi
7823 New London Drive,
Springfield, VA 22153
(703)980-6955

Pro Se Plaintiff-Appellant
Tala Josephano
1876 PCH
Lomita CA 90717
(347)-749-4980

Pro Se Plaintiff-Appellant
Samiha Ayyash
No. 6 Abu Nssair
Amman Jordan
(703)623-3767

## INDEX

1. Docket statement .................................................................................6

2. Dkt. 72- Motion for Relief from Judgment .........................................14

3. Dkt. 71- Notice of Appeal .................................................................. 21

4. Dkt. 69- Order Granting Defendants' Motions to Dismiss..................24

5. Dkt. 2- Amended Complaint .............................................................. 32

6. Dkt. 3- NEW Pro Se Consent To Receive Notices of Electronic Filing by TALA JOSEPHANO ...............................................................................155

7. Dkt. 4- RETURN OF SERVICE; AFFIDAVIT of Summons and Complaint Executed. AMERICAN AIRLINES INC ..............................156

8. Dkt. 5- RETURN OF SERVICE; AFFIDAVIT of Summons and Complaint Executed. GULF AIR B.S.C.................................................. 157

9. Dkt 6- NOTICE of Appearance by Micah Ephram Ticatch on behalf of AMERICAN AIRLINES INC................................................................. 158

10. Dkt. 7- MOTION to Dismiss for Lack of Jurisdiction , MOTION to Dismiss by AMERICAN AIRLINES INC. ..........................................160

11. Dkt. 8- CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by AMERICAN AIRLINES INC. ......................... 172

12. Dkt. 9- NOTICE of Appearance by Darcy Osta on behalf of GULF AIR B.S.C ...................................................................................... 174

13. Dkt. 10-CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by GULF AIR B.S.C ..............................................176

14. Dkt 11 -ENTERED IN ERROR; NOTICE Short Notice - Request for Pre-Motion Conference by GULF AIR B.S.C. .............................................178

15. Dkt. 12- NOTICE of Appearance by Mark Andrew Johnston on behalf of GULF AIR B.S.C................................................................................ 182

16. Dkt. 13- MOTION for Telephone Conference Notice of Request to Schedule Pre-Motion Conference by GULF AIR B.S.C. .....................184

17. Dkt. 14- MOTION for Hearing Motion Conference by AMERICAN AIRLINES INC. ..................................................................... 189

18. Dkt. 16- ENTERED IN ERROR; MOTION for Entry of Default by FERAS HINDI .................................................................... 193

19. Dkt. 17- MOTION for Entry of Default................................................ 202

20. Dkt. 18- MOTION for Entry of Default................................................ 215

21. Dkt. 19- MOTION for Entry of Default................................................ 223

22. Dkt. 20- Memorandum in opposition to re Motion for Entry of Default ................................................................................... 239

23. Dkt. 21- MOTION for Extension of Time to File Response, MOTION for Hearing by TALA JOSEPHANO ........................................ 246

24. Dkt. 22- MOTION for Entry of Default................................................ 254

25. Dkt. 24- DEACTIVATE Pro Se Consent To Receive Notices of Electronic Filing by TALA JOSEPHANO ............................................... 267

26. Dkt. 25- RESPONSE re MOTION for Entry of Default........................ 268

27. Dkt. 26- MOTION for Entry of Default by TALA JOSEPHANO ......... 275

28. Dkt. 27- MOTION for Entry of Default by TALA JOSEPHANO ......... 281

29. Dkt. 28- NOTICE of Intent by FERAS HINDI..................................... 293

30. Dkt. 29- NOTICE of Intent by SAMIHA AYYASH .............................. 301

31. Dkt. 30- Emergency MOTION for Hearing, MOTION for Order to Remove Case Manager.......................................................... 307

32. Dkt. 34- MOTION to Strike Response to motion By Feras Hindi......... 322

33. Dkt. 35- MOTION to Strike Response to motion, by Samiha Ayash ... 338

34. Dkt. 36- NOTICE of Proposed Order by FERAS HINDI..................... 354

35. Dkt. 39- RESPONSE re Notice IN OPPOSITION TO PLAINTIFFS MARCH 15, 2025, NOTICE FILINGS .............................................. 357

36. Dkt. 40- MOTION to Strike, by Samiha Ayyash ................................. 363

37. Dkt. 41- MOTION to Strike, by Feras Hindi ....................................... 374

38. Dkt. 42- MOTION to Dismiss for Lack of Jurisdiction by AMERICAN AIRLINES INC. ................................................................385

39. Dkt. 43- MOTION to Dismiss for Lack of Jurisdiction by GULF AIR B.S.C. ........................................................................ 397

40. Dkt. 44- NOTICE in Support of Motion to Recuse by SAMIHA AYYASH, FERAS HINDI, TALA JOSEPHANO............................... 445

41. Dkt. 45- MOTION for Extension of Time to File Reply as to MOTION to Dismiss for Lack of Jurisdiction ............................................ 475

42. Dkt. 46- MOTION for Protective Order, MOTION for Hearing by TALA JOSEPHANO .....................................................................485

43. Dkt. 47- MOTION to Strike and MOTION to Dismiss for Lack of Jurisdiction ............................................................... 493

44. Dkt. 49- EMERGENCY MOTION to Stay..............................................621

45. Dkt. 52- RESPONSE re 46 MOTION for Protective Order MOTION for Hearing in Opposition filed by GULF AIR B.S.C. ................................631

46. Dkt. 53- RESPONSE re MOTION to Strike; MOTION to Dismiss for Lack of Jurisdiction ................................................................641

47. Dkt. 54- MOTION for Leave to Conduct Discovery ........................... 650

48. Dkt. 55- MOTION for Leave to Conduct Discovery ........................... 803

49. Dkt. 56- MOTION for Leave to File Motion for Protective Order, Stay and Hearing by TALA JOSEPHANO ................................................ 828

50. Dkt. 57- RESPONSE re MOTION to Stay in Opposition filed by GULF AIR B.S.C............................................................................ 844

51. Dkt. 60- MOTION for Leave to File Amended Motion to Stay.............852

52. Dkt. 61- REPLY to opposition to motion re 42 Motion to Dismiss; Lack of Jurisdiction ................................................................873

53. Dkt. 62- Memorandum in opposition to re MOTION for Discovery filed by GULF AIR B.S.C........................................................... 882

54. Dkt. 63- RESPONSE re MOTION for Leave to File in Opposition filed by GULF AIR B.S.C.................................................................................... 894

55. Dkt. 65- RESPONSE re MOTION for Leave to File in Opposition filed by GULF AIR B.S.C.................................................................................... 898

56. Dkt. 67- Memorandum in opposition to re MOTION to Dismiss for Lack of Jurisdiction....................................................................................903

57. Dkt. 74- ORDER of USCA as to Notice of Appeal to DC Circuit Court...........................................................................................................952

58. Transcripts of pre-motion conference -March 28,2025……………..953

USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 6 of 971

APPEAL,CLOSED,JURY,PROSE-NP,TYPE-F

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:24-cv-03434-ACR

AYYASH et al v. AMERICAN AIRLINES INC. et al
Assigned to: Judge Ana C. Reyes
Case in other court: USCA, 25-07123
Cause: 28:1332 Diversity-Personal Injury

Date Filed: 12/10/2024
Date Terminated: 08/06/2025
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

**Plaintiff**

**SAMIHA AYYASH**    represented by    **SAMIHA AYYASH**
7823 New London Dr.
SpringField, VA 22153
PRO SE

**Plaintiff**

**FERAS HINDI**    represented by    **FERAS HINDI**
7823 New London Dr
Springfield, VA 22153
(703)980-6955
PRO SE

**Plaintiff**

**TALA JOSEPHANO**    represented by    **TALA JOSEPHANO**
615 S. Catalina Ave
#233
Redondo Beach, CA 90277
PRO SE

V.

**Defendant**

**AMERICAN AIRLINES INC.**    represented by    **Micah Ephram Ticatch**
ISLER DARE, P.C.
1945 Old Gallows Road
Suite 650
Vienna, VA 22182
(703) 748-2690
Fax: (703) 748-2695
Email: mticatch@islerdare.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**GULF AIR B.S.C**    represented by    **Darcy Osta**
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
1717 Pennsylvania Avenue, NW

R- 6

Suite 12th Floor
Washington, DC 20006
202-659-6611
Email: dosta@eckertseamans.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark Andrew Johnston**
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
1717 Pennsylvania Avenue, NW
Suite 1200
Washington, DC 20006
(202) 659-6624
Fax: (202) 659-6699
Email: mjohnston@eckertseamans.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/10/2024 | 1 | COMPLAINT against AMERICAN AIRLINES INC., GULF AIR B.S.C ( Filing fee $ 405, receipt number 208700) with Jury Demand filed by SAMIHA AYYASH, FERAS HINDI. (Attachments: # 1 Civil Cover Sheet)(zdp) (Entered: 12/12/2024) |
| 12/10/2024 | | Summons(2) Issued as to AMERICAN AIRLINES INC., GULF AIR B.S.C. (zdp) (Entered: 12/12/2024) |
| 12/31/2024 | 2 | AMENDED COMPLAINT against AMERICAN AIRLINES INC., GULF AIR B.S.C with Jury Demand filed by SAMIHA AYYASH, FERAS HINDI.(zdp) (Entered: 01/08/2025) |
| 01/08/2025 | 3 | NEW Pro Se Consent To Receive Notices of Electronic Filing by TALA JOSEPHANO (zdp) (Entered: 01/10/2025) |
| 01/23/2025 | 4 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. AMERICAN AIRLINES INC. served on 1/22/2025, answer due 2/12/2025 (zdp) (Entered: 01/23/2025) |
| 01/30/2025 | 5 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. GULF AIR B.S.C served on 1/30/2025, answer due 2/20/2025 (zdp) (Entered: 02/10/2025) |
| 02/12/2025 | 6 | NOTICE of Appearance by Micah Ephram Ticatch on behalf of AMERICAN AIRLINES INC. (Ticatch, Micah) (Entered: 02/12/2025) |
| 02/12/2025 | 7 | MOTION to Dismiss for Lack of Jurisdiction , MOTION to Dismiss by AMERICAN AIRLINES INC.. (Attachments: # 1 Text of Proposed Order)(Ticatch, Micah) (Entered: 02/12/2025) |
| 02/12/2025 | 8 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by AMERICAN AIRLINES INC. (Ticatch, Micah) (Entered: 02/12/2025) |
| 02/20/2025 | 9 | NOTICE of Appearance by Darcy Osta on behalf of GULF AIR B.S.C (Osta, Darcy) (Entered: 02/20/2025) |
| 02/20/2025 | 10 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by GULF AIR B.S.C (Osta, Darcy) (Entered: 02/20/2025) |

R- 7

9/19/25, 12:44 PM
Case 1:24-cv-03434-ACR     Document 76     Filed 09/19/25     Page 3 of 8
District of Columbia live database

USCA Case #25-7123     Document #2186844     Filed: 08/06/2026     Page 8 of 971

| | | |
|---|---|---|
| 02/20/2025 | 11 | ENTERED IN ERROR.....NOTICE *Short Notice - Request for Pre-Motion Conference* by GULF AIR B.S.C (Osta, Darcy) Modified on 2/20/2025, pursuant to Counsel (mg). (Entered: 02/20/2025) |
| 02/20/2025 | 12 | NOTICE of Appearance by Mark Andrew Johnston on behalf of GULF AIR B.S.C (Johnston, Mark) (Entered: 02/20/2025) |
| 02/20/2025 | 13 | MOTION for Telephone Conference *Notice of Request to Schedule Pre-Motion Conference* by GULF AIR B.S.C. (Johnston, Mark) (Entered: 02/20/2025) |
| 02/20/2025 | 14 | MOTION for Hearing *Motion Conference* by AMERICAN AIRLINES INC.. (Ticatch, Micah) (Entered: 02/20/2025) |
| 02/20/2025 | | RESOLVED.....NOTICE of Provisional/Government Not Certified Status re 13 MOTION for Telephone Conference *Notice of Request to Schedule Pre-Motion Conference* by GULF AIR B.S.C. (Johnston, Mark).<br><br>Your attorney renewal/government certification has not been received. As a result, your membership with the U.S. District & Bankruptcy Courts for the District of Columbia is not in good standing, and you are not permitted to file. Pursuant to Local Civil Rule 83.9, you must immediately correct your membership status by following the appropriate instructions on this page of our website: https://www.dcd.uscourts.gov/attorney-renewal.<br><br>Please be advised that the presiding judge in this case has been notified that you are currently not in good standing to file in this court. Renewal Due by 2/27/2025. (zhcn) 2/21/2025 (zapb). (Entered: 02/21/2025) |
| 02/20/2025 | | RESOLVED.....NOTICE of Provisional/Government Not Certified Status re 10 LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by GULF AIR B.S.C (Osta, Darcy).<br><br>Your attorney renewal/government certification has not been received. As a result, your membership with the U.S. District & Bankruptcy Courts for the District of Columbia is not in good standing, and you are not permitted to file. Pursuant to Local Civil Rule 83.9, you must immediately correct your membership status by following the appropriate instructions on this page of our website: https://www.dcd.uscourts.gov/attorney-renewal.<br><br>Please be advised that the presiding judge in this case has been notified that you are currently not in good standing to file in this court. Renewal Due by 2/27/2025. (zhcn) Modified on 2/21/2025 (zhcn). (Entered: 02/21/2025) |
| 02/23/2025 | 16 | ENTERED IN ERROR.....MOTION for Entry of Default by FERAS HINDI. (Attachments: # 1 Exhibit)(zdp) Modified on 2/27/2025; refiled as docket entry 17 (zdp). (Entered: 02/26/2025) |
| 02/24/2025 | 17 | MOTION for Entry of Default by FERAS HINDI. (Attachments: # 1 Exhibit)(zdp) (Entered: 02/26/2025) |
| 02/24/2025 | 18 | MOTION for Entry of Default by FERAS HINDI. (Attachments: # 1 Exhibit)(zdp) (Entered: 02/26/2025) |
| 02/27/2025 | 19 | MOTION for Entry of Default by SAMIHA AYYASH. (Attachments: # 1 Exhibit)(zdp) (Entered: 02/28/2025) |
| 02/28/2025 | 21 | MOTION for Extension of Time to File Response/Reply, MOTION for Hearing by TALA JOSEPHANO. (zdp) (Entered: 03/05/2025) |

R- 8

Case 1:24-cv-03434-ACR    Document 76    Filed 09/19/25    Page 4 of 8

USCA Case #25-7123     Document #2186844      Filed: 08/06/2026     Page 9 of 971

| 03/03/2025 | 22 | MOTION for Entry of Default by SAMIHA AYYASH. ( # 1 Exhibit) (zdp) (Entered: 03/05/2025) |
| 03/04/2025 | 20 | Memorandum in opposition to re 17 Motion for Entry of Default, 16 Motion for Entry of Default, 19 Motion for Entry of Default filed by AMERICAN AIRLINES INC.. (Attachments: # 1 Exhibit)(Ticatch, Micah) (Entered: 03/04/2025) |
| 03/04/2025 | 23 | NOTICE OF Error in Filing by SAMIHA AYYASH re 17 Motion for Entry of Default, 18 Motion for Entry of Default, 22 Motion for Entry of Default, 19 Motion for Entry of Default (zdp) (Entered: 03/05/2025) |
| 03/07/2025 | | NOTICE of Hearing: Pre-motion Conference set for 3/28/2025 at 2:00 PM via Zoom before Judge Ana C. Reyes. (zakb) (Entered: 03/07/2025) |
| 03/07/2025 | 24 | DEACTIVATE Pro Se Consent To Receive Notices of Electronic Filing by TALA JOSEPHANO (zdp) (Entered: 03/10/2025) |
| 03/07/2025 | 26 | MOTION for Entry of Default by TALA JOSEPHANO. (zdp) (Entered: 03/10/2025) |
| 03/08/2025 | 27 | MOTION for Entry of Default by TALA JOSEPHANO. (Attachments: # 1 Exhibit)(zdp) (Entered: 03/10/2025) |
| 03/10/2025 | 25 | RESPONSE re 18 MOTION for Entry of Default, 22 MOTION for Entry of Default *in Opposition* filed by GULF AIR B.S.C. (Attachments: # 1 Exhibit 1 to Gulf Air BSC's Opposition to Plaintiff's Motions for Default, # 2 Exhibit 2 to Gulf Air BSC's Opposition to Plaintiff's Motions for Default)(Osta, Darcy) (Entered: 03/10/2025) |
| 03/15/2025 | 28 | NOTICE of Intent by FERAS HINDI (zjm) (Entered: 03/17/2025) |
| 03/15/2025 | 29 | NOTICE of Intent by SAMIHA AYYASH (zjm) (Entered: 03/17/2025) |
| 03/18/2025 | 30 | Emergency MOTION for Hearing, MOTION for Order to Remove Case Manager by TALA JOSEPHANO, SAMIHA AYYASH, FERAS HINDI. (zdp) (Entered: 03/19/2025) |
| 03/18/2025 | 31 | NOTICE of Intent to Sue by TALA JOSEPHANO, SAMIHA AYYASH, FERAS HINDI (See docket entry 30 to view document) (zdp) (Entered: 03/19/2025) |
| 03/19/2025 | 32 | RESPONSE re 26 MOTION for Entry of Default, 27 MOTION for Entry of Default *in Opposition* filed by GULF AIR B.S.C. (Attachments: # 1 Exhibit 1 to Gulf Air BSC's Opposition to Plaintiff Josephano's Motion for Entry of Default, # 2 Exhibit 2 to Gulf Air BSC's Opposition to Plaintiff Josephano's Motion for Entry of Default, # 3 Exhibit 3 to Gulf Air BSC's Opposition to Plaintiff Josephano's Motion for Entry of Default)(Osta, Darcy) (Entered: 03/19/2025) |
| 03/20/2025 | 33 | Memorandum in opposition to re 27 Motion for Entry of Default filed by AMERICAN AIRLINES INC.. (Ticatch, Micah) (Entered: 03/20/2025) |
| 03/24/2025 | 34 | MOTION to Strike 25 Response to motion, 10 LCvR 26.1 Certificate of Disclosure - Corporate Affiliations/Financial Interests, 13 MOTION for Telephone Conference *Notice of Request to Schedule Pre-Motion Conference*, 9 Notice of Appearance, 12 Notice of Appearance by FERAS HINDI. (Attachments: # 1 Certificate of Conference, # 2 Proposed Order)(zdp) Modified docket text on 3/26/2025 (zdp). (Entered: 03/26/2025) |
| 03/24/2025 | 35 | MOTION to Strike 25 Response to motion, 10 LCvR 26.1 Certificate of Disclosure - Corporate Affiliations/Financial Interests, 13 MOTION for Telephone Conference *Notice of Request to Schedule Pre-Motion Conference*, 9 Notice of Appearance, 12 Notice of Appearance by SAMIHA AYYASH. (Attachments: # 1 Certificate of Conference, # 2 Proposed Order)(zdp) (Entered: 03/26/2025) |

R- 9

USCA Case #25-7123     Document #2186844     Filed: 08/06/2026     Page 10 of 971

| | | |
|---|---|---|
| 03/25/2025 | 36 | NOTICE of Proposed Order by FERAS HINDI re 17 MOTION for Entry of Default, 18 MOTION for Entry of Default (Attachments: # 1 Proposed Order)(zdp) (Entered: 03/26/2025) |
| 03/25/2025 | 37 | NOTICE of Proposed Order by SAMIHA AYYASH re 22 MOTION for Entry of Default, 19 MOTION for Entry of Default (Attachments: # 1 Proposed Order)(zdp) (Entered: 03/26/2025) |
| 03/25/2025 | 38 | REPLY to opposition to motion re 26 Motion for Entry of Default, 27 Motion for Entry of Default filed by TALA JOSEPHANO. (Attachments: # 1 Exhibit, # 2 Certificate of Conference, # 3 Proposed Order)(zdp) (Entered: 03/26/2025) |
| 03/25/2025 | 40 | MOTION to Strike 8 LCvR 26.1 Certificate of Disclosure - Corporate Affiliations/Financial Interests, 6 Notice of Appearance, 7 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss by SAMIHA AYYASH. (Attachments: # 1 Proposed Order, # 2 Certificate of Conference)(zdp) (Entered: 03/26/2025) |
| 03/25/2025 | 41 | MOTION to Strike 8 LCvR 26.1 Certificate of Disclosure - Corporate Affiliations/Financial Interests, 6 Notice of Appearance, 7 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss , 14 MOTION for Hearing *Motion Conference*, 20 Memorandum in Opposition by FERAS HINDI. (Attachments: # 1 Proposed Order, # 2 Certificate of Conference)(zdp) (Entered: 03/26/2025) |
| 03/26/2025 | 39 | RESPONSE re 29 Notice (Other), 28 Notice (Other) *IN OPPOSITION TO PLAINTIFFS MARCH 15, 2025, NOTICE FILINGS* filed by GULF AIR B.S.C. (Osta, Darcy) (Entered: 03/26/2025) |
| 03/26/2025 | | MINUTE ORDER. The Court ORDERS that no parties are permitted to file any further motions without leave of Court. The Court will address the pending motions at the March 28, 2025 pre-motion conference. Signed by Judge Ana C. Reyes on 03/26/2025. (lcacr2) (Entered: 03/26/2025) |
| 03/28/2025 | | Minute Entry for Pre-Motion Conference held on 3/28/2025 before Judge Ana C. Reyes: For reasons stated on the record, Pending 17 , 18 , 19 , 22 , 26 and 27 Motions for Default are DENIED. Motion to Dismiss due by 4/18/2025. Responses due by 5/16/2025. Replies due by 6/6/2025. Court Reporter: Christine Asif. (smc) (Entered: 03/28/2025) |
| 03/28/2025 | | Motion(s) terminated: 26 MOTION for Entry of Default filed by TALA JOSEPHANO, 17 MOTION for Entry of Default filed by FERAS HINDI, 18 MOTION for Entry of Default filed by FERAS HINDI, 22 MOTION for Entry of Default filed by SAMIHA AYYASH, 27 MOTION for Entry of Default filed by TALA JOSEPHANO, 19 MOTION for Entry of Default filed by SAMIHA AYYASH. (lcacr2) (Entered: 03/28/2025) |
| 03/28/2025 | | MINUTE ORDER. For the reasons stated on the record at today's pre-motion conference, the Court DENIES AS MOOT the following Motions: 13 Motion for Telephone Conference, 14 Motion for Hearing, 21 Motion for Extension of Time, 30 Emergency Motion for Hearing, and 34 , 35 , 40 , 41 Motions to Strike. Signed by Judge Ana C. Reyes on 03/28/2025. (lcacr2) (Entered: 03/28/2025) |
| 04/17/2025 | 42 | MOTION to Dismiss for Lack of Jurisdiction by AMERICAN AIRLINES INC.. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Ticatch, Micah) (Entered: 04/17/2025) |
| 04/18/2025 | 43 | MOTION to Dismiss for Lack of Jurisdiction by GULF AIR B.S.C. (Attachments: # 1 Memorandum in Support of Motion to Dismiss, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Text of Proposed Order to Motion to Dismiss)(Osta, Darcy) (Entered: 04/18/2025) |

R- 10

| | | |
|---|---|---|
| 05/09/2025 | 44 | NOTICE in Support of Motion to Recuse by SAMIHA AYYASH, FERAS HINDI, TALA JOSEPHANO (Attachments: # 1 Exhibit)(zdp) (Entered: 05/13/2025) |
| 05/13/2025 | 45 | MOTION for Extension of Time to File Response/Reply as to 43 MOTION to Dismiss for Lack of Jurisdiction , 42 MOTION to Dismiss for Lack of Jurisdiction by SAMIHA AYYASH, FERAS HINDI, TALA JOSEPHANO. (zdp) (Entered: 05/14/2025) |
| 05/19/2025 | | MINUTE ORDER. Upon consideration of Plaintiffs' 45 Motion for Extension of Time, the Court GRANTS the Motion. Plaintiffs shall respond to Defendants' Motions to Dismiss on or before June 12, 2025. Defendants shall reply on or before July 3, 2025. No further extensions will be granted. Signed by Judge Ana C. Reyes on 05/19/2025. (lcacr2) (Entered: 05/19/2025) |
| 05/27/2025 | 46 | MOTION for Protective Order, MOTION for Hearing by TALA JOSEPHANO. (zdp) (Entered: 05/28/2025) |
| 05/29/2025 | 47 | MOTION to Strike 43 MOTION to Dismiss for Lack of Jurisdiction by SAMIHA AYYASH, FERAS HINDI, TALA JOSEPHANO. (Attachments: # 1 Memorandum in Support, # 2 Exhibit)(zdp) (Entered: 05/30/2025) |
| 06/04/2025 | 48 | NOTICE of Proposed Order by TALA JOSEPHANO re 46 MOTION for Protective Order MOTION for Hearing (zdp) (Entered: 06/05/2025) |
| 06/04/2025 | 49 | EMERGENCY MOTION to Stay by SAMIHA AYYASH, FERAS HINDI, TALA JOSEPHANO. (zdp) (Entered: 06/05/2025) |
| 06/09/2025 | 50 | NOTICE of Proposed Order by SAMIHA AYYASH, FERAS HINDI, TALA JOSEPHANO re 47 MOTION to Strike 43 MOTION to Dismiss for Lack of Jurisdiction (zdp) (Entered: 06/10/2025) |
| 06/09/2025 | 51 | NOTICE of Proposed Order by SAMIHA AYYASH, FERAS HINDI, TALA JOSEPHANO re 49 MOTION to Stay (zdp) (Entered: 06/10/2025) |
| 06/10/2025 | 52 | RESPONSE re 46 MOTION for Protective Order MOTION for Hearing *in Opposition* filed by GULF AIR B.S.C. (Johnston, Mark) (Entered: 06/10/2025) |
| 06/12/2025 | 53 | RESPONSE re 47 MOTION to Strike 43 MOTION to Dismiss for Lack of Jurisdiction *DEFENDANT GULF AIR B.S.C. (C)S OPPOSITION TO PLAINTIFFS MOTION TO STRIKE EVIDENCE (EXHIBIT A) UNDER COURT INHERENT AUTHORITY* filed by GULF AIR B.S.C. (Johnston, Mark) (Entered: 06/12/2025) |
| 06/12/2025 | 54 | MOTION for Leave to Conduct Discovery by SAMIHA AYYASH, FERAS HINDI, TALA JOSEPHANO. (Attachments: # 1 Memorandum in Support, # 2 Exhibit)(zdp) (Entered: 06/12/2025) |
| 06/12/2025 | 55 | MOTION for Leave to Conduct Discovery by SAMIHA AYYASH, FERAS HINDI, TALA JOSEPHANO. (Attachments: # 1 Proposed Order)(zdp) (Entered: 06/16/2025) |
| 06/13/2025 | 56 | MOTION for Leave to File Motion for Protective Order, Stay and Hearing by TALA JOSEPHANO. (Attachments: # 1 Proposed Order)(zdp) (Entered: 06/17/2025) |
| 06/18/2025 | 57 | RESPONSE re 49 MOTION to Stay *in Opposition* filed by GULF AIR B.S.C. (Johnston, Mark) (Entered: 06/18/2025) |
| 06/18/2025 | 58 | NOTICE of Proposed Order by SAMIHA AYYASH, FERAS HINDI, TALA JOSEPHANO re 54 MOTION for Leave to File (zdp) (Entered: 06/20/2025) |
| 06/18/2025 | 59 | NOTICE of Proposed Order by SAMIHA AYYASH, FERAS HINDI, TALA JOSEPHANO re 55 MOTION for Discovery (zdp) (Entered: 06/20/2025) |

R- 11

9/19/25, 12:44 PM
Case 1:24-cv-03434-ACR    Document 76    Filed 09/19/25    Page 7 of 8
District of Columbia live database

| 06/20/2025 | 60 | MOTION for Leave to File Amended Motion to Stay by SAMIHA AYYASH, FERAS HINDI, TALA JOSEPHANO. (zdp) (Entered: 06/20/2025) |
| 06/26/2025 | 61 | REPLY to opposition to motion re 42 Motion to Dismiss/Lack of Jurisdiction filed by AMERICAN AIRLINES INC.. (Ticatch, Micah) Modified docket text on 7/1/2025 (zdp). (Entered: 06/26/2025) |
| 06/26/2025 | 62 | Memorandum in opposition to re 55 MOTION for Discovery filed by GULF AIR B.S.C. (Johnston, Mark) (Entered: 06/26/2025) |
| 06/26/2025 | 64 | REPLY to opposition to motion re 47 Motion to Strike filed by SAMIHA AYYASH, FERAS HINDI, TALA JOSEPHANO. (zdp) (Entered: 06/30/2025) |
| 06/27/2025 | 63 | RESPONSE re 56 MOTION for Leave to File *in Opposition* filed by GULF AIR B.S.C. (Johnston, Mark) (Entered: 06/27/2025) |
| 07/02/2025 | 65 | RESPONSE re 60 MOTION for Leave to File *in Opposition* filed by GULF AIR B.S.C. (Johnston, Mark) (Entered: 07/02/2025) |
| 07/02/2025 | 66 | REPLY re 43 MOTION to Dismiss for Lack of Jurisdiction *GULF AIR B.S.C. (C)S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS AMENDED COMPLAINT UNDER RULES 12(b)(2), 12(b)(1) AND 12(b)(5)* filed by GULF AIR B.S.C. (Johnston, Mark) Modified docket text on 7/8/2025 (zdp). (Entered: 07/02/2025) |
| 07/07/2025 | 67 | Memorandum in opposition to re 42 MOTION to Dismiss for Lack of Jurisdiction filed by SAMIHA AYYASH, FERAS HINDI, TALA JOSEPHANO. (zdp) (Entered: 07/14/2025) |
| 07/07/2025 | 68 | REPLY to opposition to motion re 56 Motion for Leave to File, 55 Motion for Discovery filed by SAMIHA AYYASH, FERAS HINDI, TALA JOSEPHANO. (See docket entry 67 to view documents) (zdp) (Entered: 07/14/2025) |
| 08/05/2025 | 69 | ORDER granting Defendants' Motions to Dismiss, Dkts. 7 , 42 , 43 , denying Plaintiffs' motions, Dkts. 46 , 47 , 49 , 54 , 55 , 56 , 60 , dismissing Plaintiffs' Complaints, Dkts. 1 , 2 , and this case without prejudice, and directing the Clerk of Court to close this case. See document for details. Signed by Judge Ana C. Reyes on 08/05/2025. (lcacr2) (Entered: 08/05/2025) |
| 08/24/2025 | 70 | **REQUEST FOR LEAVE TO FILE REVIEW.** The attached document requires leave to file: PLAINTIFFS - Notice of Intent to Sue. Reason(s): Case is closed. (znmw) (Entered: 08/25/2025) |
| 08/24/2025 | 71 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 69 Order on Motion to Dismiss/Lack of Jurisdiction, Order on Motion for Protective Order, Order on Motion for Hearing, Order on Motion to Strike, Order on Motion to Stay, Order on Motion for Leave to File, Order on Motion for Discovery by SAMIHA AYYASH, FERAS HINDI, TALA JOSEPHANO. Fee Status: No Fee Paid. Parties have been notified. (znmw) (Entered: 08/25/2025) |
| 08/24/2025 | 72 | MOTION for Relief from Judgment by SAMIHA AYYASH, FERAS HINDI, TALA JOSEPHANO. (znmw) (Entered: 08/25/2025) |
| 08/25/2025 | 73 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The fee remains to be paid and another notice will be transmitted when the fee has been paid in the District Court or motion to proceed In Forma Pauperis has been decided re 71 Notice of Appeal to DC Circuit Court. (znmw) (Entered: 08/25/2025) |

R- 12

| | | |
|---|---|---|
| 08/27/2025 | | USCA Case Number 25-7123 for 71 Notice of Appeal to DC Circuit Court, filed by FERAS HINDI, TALA JOSEPHANO, SAMIHA AYYASH. (znmw) (Entered: 08/27/2025) |
| 08/27/2025 | 74 | ORDER of USCA as to 71 Notice of Appeal to DC Circuit Court, filed by FERAS HINDI, TALA JOSEPHANO, SAMIHA AYYASH ; holding case in abeyance pending resolution of motion for relief from judgment. USCA Case Number 25-7123. (znmw) (Entered: 08/28/2025) |
| 08/28/2025 | | MINUTE ORDER denying 72 Motion for Relief from Judgment. Plaintiffs' Motion makes out no basis for fraud on the court warranting relief from the judgment pursuant to Federal Rule of Civil Procedure 60(d)(3). Such relief is "typically confined to the most egregious cases, such as bribery of a judge or a juror, or improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged." *More v. Lew*, 34 F. Supp. 3d 23, 28 (D.D.C. 2014) (quoting *Great Coastal Express, Inc. v. Int'l Bhd. of Teamsters*, 675 F.2d 1349, 1356 (4th Cir. 1982)). Plaintiffs' Motion appears to identify only occasions when the Court itself has taken certain actions in disposing of this case. Accordingly, the Court DENIES the Motion. Signed by Judge Ana C. Reyes on 08/28/2025. (lcacr2) (Entered: 08/28/2025) |
| 08/29/2025 | 75 | Supplemental Record on Appeal transmitted to US Court of Appeals re 8/28/2025 MINUTE Order on Motion for Relief from Judgment;USCA Case Number 25-7123. (mg) (Entered: 08/29/2025) |
| 09/19/2025 | | USCA Appeal Fees received $ 605 receipt number 210436 re 71 Notice of Appeal to DC Circuit Court, filed by FERAS HINDI, TALA JOSEPHANO, SAMIHA AYYASH (znmw) (Entered: 09/19/2025) |

R- 13

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

| | | |
|---|---|---|
| **Samiha Ayysah, Feras Hindi,** | ) | |
| **Tala Josephano** | ) | **Case No.: 1:24-cv-03434-ACR** |
| | ) | |
| Plaintiffs | ) | |
| **American Airlines Inc. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendants | ) | |
| | ) | |

**PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT UNDER FEDERAL RULE**

**OF CIVIL PROCEDURE 60(d)(3)**

Plaintiffs, appearing pro se, respectfully notify the Court and move for relief from the final

judgment pursuant to Federal Rule of Civil Procedure 60(d)(3) on the grounds of fraud upon the

court, committed directly by Judge Ana C. Reyes.

Plaintiffs note that they have previously filed a Notice of Intent to Sue and a Notice of Appeal in

this matter. This Motion is submitted in addition to those filings to preserve Plaintiffs' rights and

to address critical judicial misconduct that fundamentally undermines the fairness and integrity

of these proceedings.

Fraud upon the court constitutes the most egregious form of misconduct, involving deliberate,

corrupt acts by judicial officers or others that defile the judicial process itself, impair the court's

impartiality, and strike at the very foundation of justice. Such fraud justifies immediate relief,

including vacatur of the judgment, regardless of the timing of other proceedings. *See* Hazel-Atlas


RECEIVED

AUG 24 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

R- 14

Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944); Shepherd v. American

Broadcasting Cos., 62 F.3d 1469, 1472 (D.C. Cir. 1995).

## I. BACKGROUND

1. On August 5, 2025, this Court entered an order dismissing Plaintiffs' complaint without prejudice.

2. Plaintiffs subsequently filed a Notice of Appeal to the United States Court of Appeals for the District of Columbia Circuit.

3. Plaintiffs also filed a Notice of Intent to Sue (Dkt. 31) that was deleted or suppressed from the docket, and emailed Judge Ana Reyes and her chambers. On August 25, 2025, Plaintiffs filed another formal Notice of Intent to Sue, reserving claims of judicial misconduct.

4. Since that time, Plaintiffs have uncovered and obtained clear and convincing evidence that fraud upon the court occurred in this matter, directly implicating Judge Ana C. Reyes, her chambers staff, Deputy Clerk Alexander Burton, and Intake Clerk Mr. Paterson.

5. This misconduct includes tampering with the record, misuse of federal rules, suppression of Plaintiffs' filings, conduct endangering Plaintiffs' safety, assisting a foreign government against a U.S. citizen, and facilitating risks to Plaintiff Tala Josephano's safety.

R- 15

3

## II. LEGAL STANDARD

Rule 60(d)(3) of the Federal Rules of Civil Procedure preserves the Court's inherent authority to "set aside a judgment for fraud on the court.". Fraud upon the court represents "the most egregious conduct," striking at "the integrity of the judicial process itself." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

The D.C. Circuit has explained that such fraud includes conduct by officers of the court that is "so egregious that it undermines the ability of the court to perform its impartial task of adjudging cases." *Shepherd v. American Broadcasting Cos.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995). Unlike ordinary fraud, fraud upon the court has no statute of limitations, and may be raised at any time.

Plaintiffs bear the burden of establishing fraud upon the court by clear and convincing evidence, which has already been partially submitted and appears on the docket.

## III. ARGUMENT

Plaintiffs respectfully submit that the following actions constitute fraud upon the court:

**a. Tampering with the Record** – Directing or permitting the removal and suppression of docket entries, including Dkt. 31, without notice or explanation to Plaintiffs.

**b. Misapplication of Federal Rules** – Applying incorrect procedural rules and legal standards in a manner systematically biased in favor of Defendants.

R- 16

4

**c. Disregard of Plaintiffs' Motions** – Willfully ignoring and failing to rule on Plaintiffs' motions, depriving Plaintiffs of due process.

**d. Involvement of Staff** – Coordinating with or allowing chambers staff, including Deputy Clerk Alexander Burton and Intake Clerk Mr. Paterson, to execute and conceal fraudulent acts.

**e. Endangering Plaintiffs' Safety** – Obstructing critical evidence and shielding Defendants' negligence, thereby exposing Plaintiffs to serious risks.

**f. Conduct at Hearing and Case Dismissal** – Judge Ana C. Reyes presided over a hearing in which she misstated controlling legal standards and applicable federal law. She allowed Defendants to refile claims improperly and threatened Plaintiff Tala Josephano, who appeared pro se. The Judge instructed Plaintiffs to limit their responses exclusively to the issue of jurisdiction, effectively restricting their opportunity to fully present their case. Without permitting discovery or adequate opportunity to amend, Judge Reyes dismissed the case both for lack of jurisdiction and for failure to state a claim, denying Plaintiffs a meaningful chance to be heard. This course of conduct amounts to a deliberate manipulation of judicial process—an egregious act of bad faith—that has allowed fraud against the government and the public to continue unabated, seriously endangering public safety and permitting corporate misconduct within the airline industry to persist without accountability.

Together, these deliberate actions corrupted the judicial machinery, deprived Plaintiffs of a fair tribunal, and directly benefited Defendants Gulf Air B.S.C. and American Airlines, Inc.

R- 17

Case 1:24-cv-03434-ACR     Document 72     Filed 08/24/25     Page 5 of 7
USCA Case #25-7123     Document #2186844     Filed: 08/06/2026     Page 18 of 971

5

## IV. CONCLUSION

Fraud upon the court constitutes an extraordinary ground for relief. Plaintiffs assert that Judge Reyes and her chambers staff engaged in deliberate, egregious misconduct that defiled these proceedings and destroyed the impartiality of the judicial process.

**WHEREFORE, Plaintiffs respectfully request that this Court:**

1. Take judicial notice of the fraud upon the court committed by Judge Ana C. Reyes and others as described herein;

2. Vacate and set aside the Court's August 5, 2025 dismissal order;

3. Restore all removed, altered, or suppressed docket filings to the official case record;

4. Refer the allegations of judicial misconduct by Judge Ana C. Reyes and her chambers staff to the appropriate judicial oversight authority for thorough and impartial investigation and disciplinary review;

5. Plaintiffs respectfully request an oral hearing on this Motion for Relief under Federal Rule of Civil Procedure 60(d)(3) pursuant to this Court's inherent authority and applicable local rules. Given the gravity and complexity of the allegations of fraud upon the court, a hearing is warranted and essential for a fair and just adjudication.

6. Plaintiffs note that no opportunity was previously provided to seek assignment of a magistrate judge or other judicial officer to assist or preside over this matter, as this option was deliberately overlooked and not offered by the Court. Given the demonstrated conflict of interest and corrupt conduct involving Judge Ana C. Reyes, Plaintiffs respectfully request that the Court either:

R- 18

6

I.    Assign an independent district judge to hear and decide this Motion, or

II.    Designate an additional judge to preside jointly or oversee the Motion alongside Judge Reyes, to ensure impartiality, prevent further prejudice, and uphold the integrity of these proceedings.

7. Grant any further relief this Court deems necessary to protect the integrity of these proceedings and preserve Plaintiffs' rights.

Respectfully submitted,

August 25  2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767

R- 19

7

## CERTIFICATE OF SERVICE

I hereby certify that on August 25  2025, Plaintiff Feras Hindi, Plaintiff Tala & Plaintiff Samiha will be sending a true and correct copy of the following documents to be served upon the parties listed below:

MOTION FOR RELIEF FROM JUDGMENT UNDER FEDERAL RULE OF CIVIL

PROCEDURE 60(d)(3)

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Email

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark  **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Email

Submitted,

August 25 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767

R- 20

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

### Civil Division

| | | |
|---|---|---|
| **Samiha Ayysah, Feras Hindi,** | ) | |
| **Tala Josephano** | ) | **Case No.:  1:24-cv-03434-ACR** |
| | ) | |
| Plaintiffs | ) | |
| **American Airlines Inc. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendants | ) | |
| | ) | |

### NOTICE OF APPEAL

Notice is hereby given that Plaintiffs Samiha Ayyash, Feras Hindi, and Tala Josephano, pro se, appeal to the United States Court of Appeals for the District of Columbia Circuit from the final order and judgment entered in this action on August 5, 2025, by Judge Ana C. Reyes, which dismissed Plaintiffs' complaints without prejudice before recusing herself.

Plaintiffs further note an irregularity in the docket: Docket Entry No. 31 was removed from the record without explanation, and it is unclear whether this action was taken by the Clerk's Office or the Judge's chambers. Plaintiffs respectfully preserve this issue for review and for further inquiry by the appellate court as appropriate.



**RECEIVED**

AUG 24 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

Respectfully submitted


August 25  2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980


Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955


Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767

R- 22

## CERTIFICATE OF SERVICE

I hereby certify that on August 25  2025, Plaintiff Feras Hindi, Plaintiff Tala & Plaintiff Samiha
will be sending a true and correct copy of the following documents to be served upon the parties
listed below:

Notice of Appeal

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182 . Method of Service: Email

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark  **AT** Eckert Seamans Cherin & Mellott, LLC
1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service:
Email , Mail

Submitted,

August 25 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767

R- 23

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SAMIHA AYYASH, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 1:24-cv-03434 (ACR) |
| GULF AIR B.S.C., *et al.*, | |
| *Defendants*. | |

**ORDER**

Plaintiffs Samiha Ayyash, Feras Hindi, and Tala Josephano, proceeding *pro se*, filed this suit after their relative, Captain Mohannad Alhindi, died of a heart attack at an airport in Dhaka, Bangladesh. They allege that negligence and safety violations by Defendants Gulf Air B.S.C. and its codeshare partner, American Airlines Inc., caused Captain Alhindi's death.

The Court sympathizes with Plaintiffs' loss. But it lacks personal jurisdiction over either Defendant. And even if it had jurisdiction, Plaintiffs' sprawling and conclusory Complaint falls well short of the Federal Rule of Civil Procedure's pleading requirements. The Court therefore **GRANTS** Defendants' motions to dismiss, Dkts. 7, 42, 43.

**I.    BACKGROUND[1]**

Plaintiffs' claims arise from the death of Captain Alhindi, a 63-year-old pilot for Defendant Gulf Air B.S.C. (Gulf Air). Dkt. 2 at 4, 10. While on duty in Dhaka, Bangladesh,

---

[1] The Court takes the facts from Plaintiffs' Complaint and Amended Complaint, Dkts. 1, 2. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). The Court must construe a *pro se* complaint together with all the plaintiff's filings, *see Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015), and must read all *pro se* filings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up).

1

Captain Alhindi "became incapacitated. . . . shortly before he was scheduled to operate a codeshare flight with American Airlines," and later "died in a hospital due to a 99% blockage in his left coronary artery." *Id.*

Plaintiffs allege that Gulf Air's "systemic negligence, including failure to address crew health risks and concealment of [alleged past] incapacitation incidents," led to Captain Alhindi's death. *Id.* They cite incidents stretching back decades: a 1986 bombing, the 1997 suspension of Gulf Air's U.S. operations, a 2000 crash, and other crew incapacitations, including one involving Captain Alhindi in 2004 and a flight attendant in 2022. *Id.* at 12–13. Plaintiffs also claim that Gulf Air mispresented its safety record to U.S. regulators. *Id.* at 13. All of this, they contend, reflects Gulf Air's failure to mitigate crew incapacitation risks, provide crew medical evaluations, implement an effective safety management system, and comply with regulatory requirements. *Id.* at 15–27. Plaintiffs also allege that Gulf Air negligently failed to provide Captain Alhindi with the necessary medical care in Bangladesh and fraudulently concealed facts about the Captain's medical treatment from his family. *Id.* at 28–84.

As for Defendant American Airlines Inc. (American), with whom Gulf Air has a codeshare agreement,[2] Plaintiffs allege that the airline violated its "regulatory duty under FAA/DOT guidelines to ensure that Gulf Air complied with safety standards, including crew fitness and operational safety." *Id.* at 85. They claim that American certified Gulf Air's compliance despite knowing of its safety issues and failed to conduct proper audits. *Id.* at 90–93.

Plaintiffs filed their original Complaint on December 10, 2024, Dkt. 1, and an Amended Complaint three weeks later, Dkt. 2. Both are long, repetitive, disorganized, and difficult to

---

[2] A codeshare agreement is an agreement between airlines "whereby a flight is listed under one airline's two-letter identification code but operated by the other airline." Dkt. 7 at 4.

R- 25

follow.  Liberally construed, they appear to allege negligence, intentional and negligent infliction of emotional distress, fraud, and various regulatory violations.

Defendants filed separate motions to dismiss.  *See* Dkts. 7, 42, 43.  All argue that the Court lacks personal jurisdiction.  *Id.*  They also raise other grounds for dismissal: failure to state a plausible claim, *see* Dkt. 7, lack of subject-matter jurisdiction, *see* Dkt. 43, and insufficient service of process, *see id.*

In response to American's initial motion, Plaintiffs filed a flurry of motions, including an emergency motion for a hearing, *see* Dkt. 30, and several motions to strike, *see* Dkts. 34, 35, 40, 41.  After a pre-motion conference on March 28, 2025, the Court denied these (and several other) motions as moot.  Defendants then renewed their motions to dismiss.  *See* Dkts. 42, 43.  Plaintiffs again responded with numerous motions, including a motion to strike Gulf Air's motion to dismiss, *see* Dkt. 47, an emergency motion to stay, *see* Dkt. 49, and multiple motions for leave to conduct jurisdictional discovery, *see* Dkts. 54, 55.

## II.    LEGAL STANDARDS

Dismissal is warranted on one ground alone: the Court lacks personal jurisdiction under Rule 12(b)(2).  Alternatively, dismissal is also proper under Rule 8(a)(2).

Under Rule 12(b)(2), the plaintiff bears the burden of "establishing a factual basis for the exercise of personal jurisdiction over the defendant."  *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  To carry this burden, the plaintiff "must allege specific acts connecting [each] defendant with the forum."  *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (cleaned up).  In evaluating jurisdiction, courts may consider materials outside the pleadings, *see Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005), and any factual disputes must be resolved in the plaintiff's favor, *see Crane*, 894 F.2d at 456.

3

R-26

Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff bears the burden of pleading "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Labels, conclusions, and naked assertions will not suffice. *See id.* While this plausibility standard is not a probability requirement, it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Importantly, a court need not accept as true any "conclusory statements" or "legal conclusions" offered by the plaintiff. *Id.* Courts may also dismiss *pro se* complaints sua sponte under Rule 8(a)(2) "where the complaint sets forth a meandering, disorganized, prolix narrative . . . ." *Hamrick v. United States*, 2010 WL 3324721, at *1 (D.D.C. Aug. 24, 2010) (cleaned up).

## III.   LEGAL ANALYSIS

### A. The Court Lacks Personal Jurisdiction

The Court lacks personal jurisdiction over both Defendants. Courts recognize two kinds of personal jurisdiction: general and specific. *Fuld v. Palestine Liberation Org.*, 145 S. Ct. 2090, 2102 (2025). A court may assert general jurisdiction where the defendant is domiciled or "fairly regarded as at home." *Id.* (cleaned up). For corporations, that typically means the place of incorporation or principal place of business. *See Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 889 (D.C. Cir. 2021). Specific jurisdiction, by comparison, requires a connection between the forum and the conduct giving rise to the suit, usually an "activity or an occurrence that takes place in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). To determine whether specific jurisdiction exists, a court "must first examine whether jurisdiction is applicable under the state's long-arm statute." *GTE New Media Servs., Inc. v.*

4

R- 27

*BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). If so, the court must then assess whether exercising jurisdiction would satisfy due process. *Id.*

### 1. Defendant Gulf Air

Plaintiffs acknowledge that Gulf Air is incorporated and headquartered in Bahrain. Dkt. 55 at 10. That rules out general jurisdiction.

Plaintiffs contend that the Court can exercise specific personal jurisdiction over Gulf Air because it "has purposefully and voluntarily transacted substantial business" in the District. *Id.* at 16, D.C. Code § 13-423(a)(1). But they satisfy none of the required elements under the transacting-business test. "To establish personal jurisdiction under the transacting business clause of the long-arm statute . . . a plaintiff must demonstrate that (1) the defendant transacted business in the District; (2) the claim arose from the business transacted in the District . . . ; (3) the defendant had minimum contacts with the District; and (4) the Court's exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice." *COMSAT Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 521 (D.D.C. 1995) (cleaned up).

Here, Gulf Air states, without contradiction, that it has no offices, assets, or employees in the District; does not fly its own aircraft here; and does not advertise or solicit business here. Dkt. 43-1 at 18. While the airline sells codeshare tickets to District residents, *id.*, that action does not alone create sufficient contacts to make litigation here foreseeable—and thus, an exercise of jurisdiction in this case would be unreasonable and unfair. *See COMSAT Corp.*, 900 F. Supp at 520–21.

"A related factor in determining whether the exercise of personal jurisdiction over [a] defendant is reasonable or fair is the District of Columbia's interest in adjudicating the dispute." *Formica v. Cascade Candle Co.*, 125 F. Supp. 2d 552, 556 (D.D.C. 2001) (cleaned up). When a

R- 28

plaintiff is not a resident of the forum state, the forum state's "legitimate interests in the dispute

[] considerably diminish[]." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano

Cnty.*, 480 U.S. 102, 114 (1987).  Here, Plaintiffs reside in Virginia and California, not in the

District.  The events giving rise to the claims occurred abroad.  By dismissing this case, then, the

Court does not fail to redress a harm inflicted on District residents or general wrongdoing

directed at the District.

Because the Court lacks personal jurisdiction over Gulf Air, it dismisses Plaintiffs'

claims against the airline.

## 2.  Defendant American

Plaintiffs concede that American is incorporated in Delaware and headquartered in Texas.

Dkt. 2 at 7.  That rules out general jurisdiction.

The Court thus turns to specific personal jurisdiction and the District's long-arm statute.

D.C. Code § 13-423(a).  That is an equally easy call.  Plaintiffs fail to allege *any* acts committed

by American in or relating to the District.  American's alleged audit failures would have

occurred in Bahrain, where Gulf Air is based.  Dkt. 42 at 6.  And any negligence stemming from

the airline's audit failures would have occurred in Bangladesh, where Captain Alhindi died.

Likewise, Plaintiffs' allegations that American committed constructive fraud lack a D.C.

connection.  To the extent that American falsely certified Gulf Air's compliance with federal

safety standards, it did so in Fort Worth, not in the District.  That the FAA received those

certifications in D.C. is irrelevant; jurisdiction cannot rest on a defendant's contact with a federal

agency located in the forum.  The government contacts doctrine excludes such incidental federal-

agency contact from the jurisdictional analysis.  *E.g.*, *Savage v. Bioport, Inc.*, 460 F. Supp. 2d

55, 62 (D.D.C. 2006).

R- 29

Plaintiffs seek jurisdictional discovery, but their request rests on speculation that American's contacts with "D.C.-based regulators" might establish jurisdiction.  Dkt. 54-1 at 9.  To be sure, "[a] plaintiff need only have a good faith belief that reasonable discovery could supplement jurisdictional allegations."  *Lewis v. Mutond*, 62 F.4th 587, 596 (D.C. Cir. 2023) (cleaned up).  But here, Defendants' alleged contacts do not and cannot establish such jurisdiction.  "A district court acts well within its discretion to deny discovery when no facts additional discovery could produce would affect the jurisdictional analysis."  *Id.* at 595 (cleaned up).  The Court therefore denies discovery.

Because the Court lacks personal jurisdiction over American, it dismisses Plaintiffs' claims against the airline.

## B.  Plaintiffs Fail to State a Claim

Even assuming the Court had personal jurisdiction, Plaintiffs' pleadings do not satisfy Rule 8.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft*, 556 U.S. at 679.  Here, Plaintiffs fail to supply *any* meaningful factual allegations.

For example, they cite a decades-old bombing and hijacking incident as evidence of Gulf Air's "systemic safety negligence."  Dkt. 2 at 12.  They also assert that "Gulf Air launched nonstop flights to JFK despite safety concerns" without explaining what those concerns were or pointing to any supporting facts.  *Id.*  They claim that "Gulf Air's breaches and negligence directly caused Captain [Alhindi]'s incapacitation and  . . . death" in Bangladesh, *id.* at 17, but it is impossible to see how.  Safety issues from decades-old incidents have zero bearing on whether an airline pilot suffers a heart attack.  As for American, Plaintiffs allege that it "breached its duty

R- 30

by failing to conduct meaningful audits." *Id.* at 86.  Yet, again, they offer no facts showing how the absence of audits could plausibly cause a pilot to experience a heart attack.

The only link between Captain Alhindi's heart attack and Defendants is that it occurred while he was on duty.  That is not enough.  Rule 8 does not permit Plaintiffs to replace well-pleaded facts with speculation and heated rhetoric.  The Complaints' disorganized structure, conclusory assertions, and lack of any logical connection between the alleged acts and the claimed injury warrant dismissal.

## IV.   CONCLUSION

The Court lacks personal jurisdiction over both Defendants, and Plaintiffs failed to state a claim under Rule 8.

For these reasons, the Court hereby

**GRANTS** Defendants' Motions to Dismiss, Dkts. 7, 42, 43;

**DENIES** Plaintiffs' Motions for a Protective Order and Hearing, Dkts. 46, 56, Motion to Strike Motion to Dismiss, Dkt. 47, Emergency Motions to Stay, Dkts. 49, 56, Motions for Leave to Conduct Discovery, Dkts. 54, 55, and Motion for Leave to File Amended Motion to Stay, Dkt. 60;

**DISMISSES** Plaintiffs' Complaints, Dkts. 1, 2, and this case without prejudice; and

**DIRECTS** the Clerk of Court to close this case.

**SO ORDERED**.

This is a final appealable Order.  *See* Fed. R. App. P. 4(a).  This Order is not intended for publication.

Date: August 5, 2025

ANA C. REYES
United States District Judge

8

R- 31

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

District of Columbia  ▼

_____Civil_____ Division

| | |
|---|---|
| Samiha Ayyash,<br>Feras Hindi<br>Tala Josephano | )<br>)<br>) |
| _____ | ) |
| *Plaintiff(s)*<br>*(Write the full name of each plaintiff who is filing this complaint.*<br>*If the names of all the plaintiffs cannot fit in the space above,*<br>*please write "see attached" in the space and attach an additional*<br>*page with the full list of names.)* | )<br>)<br>)<br>) |
| **-v-** | ) |
| Gulf Air B.S.C , American Airlines INC | )<br>)<br>)<br>) |
| _____ | ) |
| *Defendant(s)*<br>*(Write the full name of each defendant who is being sued. If the*<br>*names of all the defendants cannot fit in the space above, please*<br>*write "see attached" in the space and attach an additional page*<br>*with the full list of names.)* | )<br>)<br>)<br>) |

Case No. _____24-cv-03434_____

*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ✔ Yes ☐ No

## COMPLAINT FOR A CIVIL CASE

**I.    The Parties to This Complaint**

**A.    The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Samiha Ayyash |
| Street Address | 7823 New London Dr, |
| City and County | Springfield, Fairfax |
| State and Zip Code | VA 22153 |
| Telephone Number | 703-980-6955 |
| E-mail Address | ayyashsamiha@gmail.com |

RECEIVED

DEC 31 2024

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

**B.    The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

R- 32

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

| | |
|---|---|
| Name | Gulf Air B.S.C |
| Job or Title *(if known)* | Foreing airlines |
| Street Address | 1717 Pennsylvania Ave., N.W., 12th Floor |
| City and County | Washington |
| State and Zip Code | D.C. 20006. |
| Telephone Number | 1 (888) 359-4853 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | American Airlines INC |
| Job or Title *(if known)* | Foreign Airlines |
| Street Address | 1090 VERMONT AVE. NW |
| City and County | Washington |
| State and Zip Code | DC 20005 |
| Telephone Number | 800-433-7300 |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☐ Federal question                ☑ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff,  *(name)*  Samiha                                , is a citizen of the State of *(name)*  Virginia                        .

b.    If the plaintiff is a corporation

The plaintiff,  *(name)*                                , is incorporated under the laws of the State of *(name)*                                , and has its principal place of business in the State of *(name)*                                .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant,  *(name)*                                , is a citizen of the State of *(name)*                        .  Or is a citizen of *(foreign nation)*                        .

R-34

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

b.    If the defendant is a corporation

The defendant, *(name)* Gulf Air B. S C , is incorporated under

the laws of the State of *(name)* , and has its

principal place of business in the State of *(name)* .

Or is incorporated under the laws of *(foreign nation)* Bahrain ,

and has its principal place of business in *(name)* Bahrain .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

Samiha: Loss of substantial financial support from Captain Alhindi, including approximately $500 monthly contributions for essential living expenses and caregiving costs.Increased financial burden on Plaintiff Feras due to taking on caregiving responsibilities and covering expenses previously managed by Captain Alhindi. Funeral event expenses and legal proceedings up to 3/2023 emotional distress and severe psychological harm suffered

## III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

This is a civil action arising from the preventable death of Captain Mohannad Alhindi, who tragically died from a cardiac incident while on duty for Gulf Air B.S.C.(C) (hereinafter " Gulf Air" ) on December 14, 2022, in Dhaka, Bangladesh. Plaintiffs Samiha Ayyash and Feras Hindi, the mother and brother of Captain Alhindi, respectively, bring this case against the Defendants for their collective failure to uphold their legal and contractual obligations regarding aviation safety, as mandated by both U.S. and international regulations. These failures led directly to the death of Captain Alhindi, causing significant financial loss and severe emotional distress to the Plaintiffs. SEE ATTACHMENT

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

SEE ATTACHMENT

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    12/09/2024

Signature of Plaintiff

Printed Name of Plaintiff    Samiha Ayyash    FERAS Hindi  Tala Josephano

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

**United States District Court**

**District of Columbia**

1. Samiha Ayyash, Feras Hindi

Pro Se

7823 New London Dr, Springfield, VA 22153

(703) 980-6955

AyyashSamiha@gmail.com

**AMENDED CLAIM  COMPLAINT FOR A CIVIL CASE**

**ATTACHMENTS 1-7**

Negligence Per Se ,Negligence ,Wrongful Death , Breach of Fiduciary Duty

Fraudulent Concealment , Fraudulent Misrepresentation, Constructive Fraud, NIED

and IIED

**RECEIVED**

DEC 31 2024

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

R- 37

2

**ATTACHMENT 2**

## JURISDICTION

1. **Jurisdiction**

   This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 (diversity

   jurisdiction) because the amount in controversy exceeds $75,000, exclusive

   of interest and costs, and there is complete diversity of citizenship between

   **Plaintiffs and Defendants:**

I. Plaintiff Samiha and Plaintiff Feras are residents & Citizens of Virginia Plaintiff Tala

is Citizen and resident of California

II. Gulf Air is incorporated and has its principal place of business in Bahrain.

III. American Airlines is incorporated in Delaware with its principal place of business in

   Texas.

B. **Venue**

   Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(b)(2)

   substantial parts of the events or omissions giving rise to this action occurred in

   this jurisdiction, venue serves the convenience of witnesses.  All Defendants can

   be served in DC. No other Forum available.

R- 38

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 8 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 39 of 971

3

**ATTACHMENT 3**

## 3. PARTIES

**Plaintiffs**

1. **Samiha Ayyash** Address: 7823 New London Dr, Springfield, VA 22153

   Relationship: Mother, heir, beneficiary, and dependent of Captain

   Mohannad Alhindi, Referred to by " The Captain "

2. **Feras Hindi**  Address: 7823 New London Dr, Springfield, VA 22153

   Relationship: Brother of Captain Mohannad Alhindi

3. **Tala Josephano** 615 S Catalina Ave #233 Redondo Beach CA 90277

Relationship : Sister of the Captain and Feras and daughter of Samiha**.**

**Defendants**

1. **Gulf Air B.S.C.(C)** Principal Place of Incorporation : Bahrain  . DC Registered

Agent : Evelyn D. Sahr, Drew M. Derco, Eckert Seamans Cherin & Mellott, LLC,

1717 Pennsylvania Ave., N.W., 12th Floor, Washington, D.C. 20006. Gulf Air Has a

company registered in NY

2. **American Airlines, Inc. :**Principal Place of Incorporation: Texas  Registered

Office Address :CORPORATION SERVICE COMPANY 1090 VERMONT AVE. NW

Washington DC 20005

**ATTACHMENT 3**

R- 39

USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 40 of 971

4

**Table of Violations**

1. Gulf Air Negligence & Breach of Duties - **Page 10**
2. Gulf Air Violation of Codeshare Guidelines and DOT Orders and Rules
    ○ A. Failure to Detect and Mitigate Crew Medical Incapacitation - **Page 12**
    ○ B. Gulf Air Failure in Crew Medical Examination - **Page 14**
3. Gulf Air Violation of ICAO Annex 6
    ○ C. Gulf Air Violations of ICAO Annex 6 (3.3.2) - **Page 18**
    ○ Gulf Air's Failure in Implementing an Effective Safety Management System (SMS) - **Page 18**
4. Violations of ICAO Annex 19
    ○ D. Gulf Air's Failure in Implementing an Effective Safety Management System (SMS) - Page 21
5. Gulf Air Negligence in Hospital Choice & Quality of Care
    ○ E. Breach of Duty of Care in Providing Adequate Medical Care - **Page 25**
    ○ F. Breach in Providing the Captain's Medical History - **Page 25**
6. Gulf Air Duties & Breaches Leading to Percutaneous Coronary Intervention (PCI)
    ○ G. Breach of Duty of Care by Not Disclosing Material Facts - **Page 28**
7. Breach of Fiduciary Relationship - **Page 31**
8. Breach of Duty of Superior Knowledge
    ○ H. Heightened Duty in Emergencies - **Page 34**
9. Gulf Air Fraudulent Concealment
    ○ I. Fraudulent Concealment Related to PCI Consent - **Page 36**
10. Hospital Records Seizure and Intentional Concealment by Gulf Air - **Page 51**
11. Fraudulent Misrepresentation of Death Summary & Hospital Records - **Page 66**
12. Gulf Air False Representation
13. A. Media Representation – January 2023 - **Page 78**
13. American Airlines as Second Defendant - **Page 8**
14. AA False Representation of Audit Certificates Submitted to the FAA - **Page 85**
15. Gulf Air Violation of Public Interest - **Page 95**
16. American Airlines Violation of Public Safety - **Page 100**
17. Attachment 4 - Claims - **Page 102**

**ATTACHMENT 4**

R- 40

1. **<u>STATEMENT OF FACTS</u>**

2. Gulf Air has faced multiple incidents of crew incapacitations, including a flight attendant's heart attack in November 2022 and the death of Captain Alhindi in December 2022, caused by neglect in medical evaluations and safety systems. Despite these documented events, Gulf Air failed to treat them as serious safety threats, did not implement corrective actions, and failed to report incidents to regulators as required by ICAO Annexes 13.

3. On December 14, 2022, Captain Alhindi, a 63-year-old Gulf Air pilot, became incapacitated while on duty in Dhaka, Bangladesh. This occurred shortly before he was scheduled to operate a codeshare flight with American Airlines.

4. Eight hours later, Captain Alhindi died in a hospital due to a 99% blockage in his left coronary artery, and negligence which followed four heart attacks. As proven, this condition (99% Blockage) had developed over several years.

5. Gulf Air's systemic negligence, including failure to address crew health risks and concealment of incapacitation incidents, endangered public safety and violated international safety standards.

6. The airline's failure to provide timely medical care or transparency about crew health risks directly contributed to Captain Alhindi's death. Gulf Air's persistent safety failures and noncompliance with regulations on medical risk management continue to jeopardize aviation safety, exacerbating the harm caused by the Captain's death and posing risks to crew and passengers.

7. **<u>GULF AIR & American Airlines Duty under Rules & Regulations</u>**

R- 41

Case 1:24-cv-03434-ACR   Document 2   Filed 12/31/24   Page 11 of 123
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 42 of 971

6

8. Gulf Air and American Airlines, as common air carriers, are bound by international and U.S. aviation regulations. These include the following standards:

   A. **Annex 1:** Personnel Licensing

   B. **Annex 6:** Operation of Aircraft

   C. **Annex 13:** Investigation and Reporting of Incidents

   D. **Annex 19:** Safety Management Systems (SMS)

9. **Department of Transportation (DOT) Orders and Requirements:**

10. The DOT states that before implementing code-share operations, U.S. carriers must ensure the foreign carrier partner meets international safety standards through a safety audit.

11. The audit results must be submitted to the FAA for review, and the benefits, including service expansion and competition, are also considered in assessing public interest.

12. **Adherence to Safety including Adherence to ICAO Regulations**

   A. DOT Order Gulf Air and AA: DOT-OST-2008

   B. DOT Order Gulf Air and Etihad: DOT-OST-2019

   C. DOT Codeshare Requirements

   D. Public Interest

13. **FAA/DOT Guidelines**

   A. FAA/DOT Codeshare Guidelines

   B. FAA 14 CFR 129: Regulations for Foreign Air Carriers

14. **International Treaties and Agreements:**

R- 42

A. Montreal Convention

B. Aviation agreements between the U.S. and Gulf Air/American Airlines

C. Open Sky Agreement

D. Obligation to prioritize public safety and welfare in operations.

15. **GULF AIR's History of Safety Failures and Ongoing Negligence**

16. Gulf Air's history of systemic safety failures, including crew incapacitations, emergency landings, and operational breaches, demonstrates a pattern of negligence that contributed to Captain Alhindi's death.

17. A recent cyberattack on Gulf Air and Bahrain Airport further underscores the airline's failure to uphold safety and operational security

18. **Sample of Historical Incidents Highlighting Systemic Safety Negligence:**

A. **1986**: Bombing and hijacking incident raised concerns about Gulf Air's security.

B. **1994**: Gulf Air launched nonstop flights to JFK despite safety concerns.

C. **1997**: Gulf Air's U.S. operations were suspended due to financial and safety failures.

D. **August 2000**: A fatal crash killed 143, linked to pilot error and inadequate training shortly after expansion

E. **2019**: Gulf Air entered a codeshare with Etihad Airways, and subsequent safety incidents went unreported and ongoing deficiencies to safety systems

F. A list of Gulf Air's safety incidents and incapacitations will be presented.

19. **Sample of Recurring Crew Incapacitation Events:**

R- 43

A. **2004**: Captain Alhindi's first incapacitation due to undiagnosed high blood pressure, leading to hospitalization and long-term treatment.

B. **March 9, 2017**: Co-pilot incapacitated mid-flight, causing an emergency landing.

C. **November 23, 2022**: Flight attendant Yaser suffered a heart attack mid-flight, prompting an emergency landing.

D. **December 14, 2022**: Captain Alhindi's incapacitation and death.

E. **Dec 2022 to mid-2023**: Gulf Air erased social media posts about incapacitations and deaths, with plaintiffs holding proof of concealment.

F. According to a study, most of Gulf Air incidents are due to Pilot errors specifically Bahraini Nationals

20. **GULF AIR Deceptive Practices and Regulatory Failures:**

A. **2008**: Gulf Air's codeshare agreement with American Airlines put it under DOT, FAA andICAO oversight.

B. **2017**: Gulf Air misrepresented its safety record to the IOSA to obtain certification. Continuous false representation and concealing in their May application every year

C. **2021**: Despite unresolved safety issues and DOT approvals, Gulf Air continues to falsely announce to resume nonstop U.S. flights deceiving the Public

R- 44

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 14 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 45 of 971

9

**21. <u>GULF AIR Negligence Around Time of Captain Alhindi's Death:</u>**

    **A. December 6, 2022**: Gulf Air applied for DOT foreign air carrier permits without addressing fitness and safety failures.

    **B. December 14, 2022**: Gulf Air became aware of Captain Alhindi's death and their failures.

    **C. December 17, 2022**: Gulf Air failed to report the death or prior incapacitations, continuing noncompliance with ICAO regulations.

    **D. December 2022**: Gulf Air concealed critical safety incidents in DOT applications, including fatalities in late 2022.

R- 45

22. **GULF AIR NEGLIGENCE & BREACH OF DUTIES**

23. **GULF AIR VIOLATION OF Codeshare Guidelines and DOT Orders and Rules**

    A. ***Failure to Detect and Mitigate Crew Medical Incapacitation***

24. **Gulf Air's Duty to Captain Alhindi**

25. Gulf Air, as Captain Alhindi's employer, had a duty to ensure his health and safety by providing a safe working environment, proper rest, and regular medical evaluations. This included conducting health assessments to identify risks that could affect his ability to fly. Gulf Air was also responsible for maintaining effective contracts with Aviation Medical Examiners and adhering to international aviation standards.

26. Gulf Air had a heightened duty to ensure pilots' medical fitness, particularly for those with known risk factors. This duty stemmed from two main responsibilities:

    A. Compliance with ICAO standards, including cardiovascular assessments for pilots over 60.

    B. The independent duty to establish systems ensuring adherence to medical standards.

27. Gulf Air failed to fulfill these obligations, violating its duties, his employment contract, DOT orders, ICAO Annexes 1, 6, and 19, as well as FAA codeshare safety guidelines and public interest.

28. These failures directly contributed to Captain Alhindi's incapacitation and death from a preventable medical condition, causing significant harm to his dependents.

29. Gulf Air's systemic negligence endangered public safety by exposing passengers

R- 46

11

and crew to foreseeable risks of catastrophic consequences during flight operations.

30. This pattern of disregard for its responsibilities reflects the airline's broader failure to comply with its legal and ethical duties to employees and the public.

31. Gulf Air's gross negligence in failing to detect and mitigate the risks of crew medical incapacitation directly endangered the safety of passengers, crew members, and the public.

32. The airline consistently failed to fulfill its duty to detect crew incapacitations as safety hazards, violating established regulatory requirements, including those imposed by the International Civil Aviation Organization (ICAO).

33. This failure allowed significant medical risks to remain undetected and unaddressed, thus compromising aviation safety.

34. Had Gulf Air adhered to its obligations to detect these risks, it could have identified potential threats to flight safety and implemented appropriate preventive measures to avoid tragedies, such as the incapacitation of Captain Alhindi and his health deterioration

35. The failure to detect and address crew medical issues was not only a direct violation of safety protocols but also a foreseeable factor leading to the preventable incident "injury" that claimed Captain Alhindi's life.

R- 47

12

### B. **GULF AIR Failure In Crew Medical Examination**

36. Given Captain Mohannad's age, hypertension, and prior medical incapacitation, Gulf Air's duty extended to implementing heightened scrutiny to prevent foreseeable medical emergencies.

37. Gulf Air breached its duty in four critical ways:

    **A.** Failure to Ensure Adequate Medical Examinations:

    **B.** Noncompliance with ICAO Standards

    **C.** Lack of Internal Oversight

    **D.** Neglect of Known Risk Factors

    **E.** Failure to detect safety risk in health assessments

38. Gulf Air's breaches and negligence directly caused Captain Mohannad's incapacitation and ultimately his death due to 99% blockage

39. Gulf Air's failures prevented the detection of Captain Mohannad's life-threatening 99% coronary artery blockage, which would have been identified through proper medical examinations.

40. Had Gulf Air complied with DOT orders and ICAO standards and conducted thorough cardiovascular assessments, Captain Mohannad would have been grounded until treated or suspended till recovery, preventing his gradual build up of the blockage, his incapacitation and death. Mainly preventing an unfit pilot from flying risking his life and others.

41. Gulf Air's failure to ensure compliance and address known risks led directly to Captain Mohannad's incapacitation and death

42. The harm resulting from Gulf Air's negligence was entirely foreseeable

R- 48

Case 1:24-cv-03434-ACR   Document 2   Filed 12/31/24   Page 18 of 123
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 49 of 971

13

43. Captain Mohannad's age, hypertension, and prior medical history made him highly vulnerable to incapacitation during flight.

44. ICAO standards mandate enhanced medical scrutiny for high-risk pilots to prevent precisely the type of incapacitation that occurred.

45. A responsible reasonable airline would have recognized the risk of undiagnosed conditions in high-risk pilots and implemented measures to ensure compliance with medical standards, which Gulf Air failed to do.

46. **Gulf Air's negligence caused significant and preventable harm:**

   A. Captain Mohannad's incapacitation and death were direct consequences of Gulf Air's failure to ensure his medical fitness to fly.

   B. The Captain's medical emergency could have  endangered passengers, crew, and the general public, due to Gulf Air failure in proper medical oversight in aviation.

47. Had Gulf Air fulfilled its duty of care, Captain Mohannad's condition would have been detected, treated, and monitored, preventing his death and the risks posed to flight safety and Captain and Plaintiffs would not have been harmed

R- 49

### C. GULF AIR Violation Of ICAO Annex 6

48. Gulf Air violated DOT Order and ICAO Annex 6 by neglecting crew health data integration, fatigue management, and fitness measures, and implementing an effective Safety and fatigue systems, leading to preventable incidents and the Captain's death

### I. Failure to Implement an Effective Fatigue Risk Management System (FRMS) For Fitness Monitoring

49. ICAO Annex 6 Part I outlines the duty of aircraft operators to manage fatigue and ensure flight and cabin crew maintain adequate alertness levels.

50. Gulf Air had the duty to  follow prescriptive flight time, duty period, and rest period limitations and establish an approved Fatigue Risk Management System (FRMS) to ensure adequate crew alertness.

51. The airline was required to incorporate scientific principles in its approach to fatigue management to ensure crew members were fit for duty.

52. Gulf Air was obligated to continuously identify and address fatigue-related safety hazards that could affect crew performance.

53. The airline had the responsibility to implement processes for mitigating fatigue risks to prevent unsafe operations.

54. Gulf Air was required to ensure that relevant personnel were properly trained in FRMS procedures and operations.

55. Gulf Air must continuously monitor the performance of its FRMS and ensure it provides an equivalent or better level of safety than prescriptive regulations.

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 20 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 51 of 971

15

56. **Violations & Breaches of Duty in Violating Regulations**

57. Gulf Air failed to meet these obligations

58. The airline did not implement either prescriptive fatigue regulations or an effective FRMS, violating ICAO requirements.

59. Gulf Air and its systems failed to adequately identify and manage fatigue-related safety hazards, particularly concerning high-risk crew members.

60. Gulf Air did not implement an adequate risk mitigation processes system for crew fatigue, which contributed to unsafe operations and exacerbated health risks for specific crew members, including Captain Alhindi.

61. There is no evidence that Gulf Air provided sufficient FRMS training to its relevant personnel, which would have helped mitigate fatigue risks.

62. The airline failed to effectively monitor and review the performance of any FRMS or its fatigue management practices, leading to the failure of these systems to prevent fatigue-related safety hazards.

63. These breaches led to unsafe crew operations, contributing directly to the incapacitation of Captain Alhindi and his death

64. Despite the existence of these systems, they were ineffectively utilized, failing to address cumulative fatigue and integrate health monitoring for high-risk crew members like Captain Alhindi.

65. Gulf Air ignored known risk factors associated with Captain Alhindi's health, making the health risk foreseeable and preventable.

66. This failure permitted unsafe schedules and unmitigated fatigue, exacerbating Captain Alhindi's cardiovascular stress and contributing to his incapacitation and

R- 51

death.

67. Gulf Air's systemic neglect violated established safety standards, exposing both crew and passengers to preventable risk

68. Gulf Air's unsafe scheduling and failure to monitor his health directly contributed to the rapid deterioration of his condition, including the development or worsening of his arterial blockage.

69. Gulf Air should have foreseen the risk of incapacitation due to Captain Alhindi's health profile and the airline's scheduling practices.

70. The incapacitation and death were preventable if the systems in place were adequately implemented, especially during high-demand periods.

71. But for Gulf Air's failure to utilize its Fatigue Risk Management System (FRMS) effectively, Captain Alhindi's high-risk health profile would have been flagged. This would have triggered preventive measures, including reduced workloads, adjusted schedules, and more frequent medical evaluations.

72. These interventions would have likely identified his health deterioration and revealed the critical arterial blockage in time for treatment, preventing his incapacitation and death. Gulf Air's systemic failures were the indispensable cause of this preventable tragedy.

73. But for Gulf Air's violation of DOT Order by Violating ICAO Annex 6 in failing to implement an effective Fatigue Risk Management System (FRMS), Captain Alhindi's cumulative fatigue and cardiovascular stress would not have reached critical levels.

74. Without proper monitoring and intervention, his 99% arterial blockage built up

R- 52

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 22 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 53 of 971

17

and went undetected, directly leading to his incapacitation and preventable death. Gulf Air's systemic negligence in violating safety protocols created a foreseeable risk of harm, resulting in the tragic and unnecessary loss of life causing harm to the Plaintiffs

75. The airline's failure not only jeopardized Captain Alhindi's health but also compromised passenger and crew safety, Gulf Air's actions and the ultimate harm caused.

76. Gulf Air's failure to implement SMS components mandated under DOT order that requires adherence to Annexes 6 and 19 , demonstrates its breach of the duty of care owed to its crew and the Captain as required by industry standards and DOT oversight

18

D. **GULF AIR Violations of  ICAO Annex 6 (3.3.2)**

II. **Gulf Air's Failure in Implementing an Effective Safety Management System (SMS)**

77. **Gulf Air's Duty in implementing Effective System**

78. Under ICAO Annex 6, Section 3 Gulf Air was required to establish and maintain an effective Safety Management System (SMS) that would identify, assess, and mitigate safety hazards, particularly fatigue and health risks for crew members.

79. **Failure to Identify and Address Fatigue and Health Risks:**

Gulf Air did not establish an SMS capable of identifying fatigue and health risks, particularly for high-risk individuals like Captain Alhindi, who had known health conditions. The airline lacked a systematic process to assess fatigue-related hazards and health risks for crew, especially those with cardiovascular conditions or other medical issues.

80. Gulf Air's Safety Management System (SMS) failed to address crew fatigue and health risks, lacking a Fatigue Risk Management System (FRMS) or sufficient protocols, especially during high-demand periods.

81. The absence of continuous monitoring and regular assessments prevented necessary interventions, contributing to Captain Alhindi's incapacitation.

82. This failure to implement effective safety measures directly led to unsafe operational conditions and exacerbated Captain Alhindi's health risks, resulting in his death.

83. The failure to identify risks such as cumulative fatigue and pre-existing cardiovascular issues meant Gulf Air did not intervene to adjust schedules or

R- 54

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 24 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 55 of 971

19

provide proper health monitoring, allowing these factors to exacerbate and lead to Captain Alhindi's rapid health deterioration.

84. Captain Alhindi's incapacitation could have been prevented or mitigated if Gulf Air's SMS had been in place to monitor his health and assess fatigue risks.

85. The risks of fatigue and health issues, particularly for a high-risk individual like Captain Alhindi, were foreseeable.

86. Gulf Air should have been aware that its failure to implement an effective SMS could lead to safety hazards, including the risk of incapacitation due to fatigue or cardiovascular stress.

87. Fatigue risks are well-established as a safety hazard in aviation. Given Captain Alhindi's known cardiovascular condition, it was foreseeable that excessive work hours, stress, and fatigue could lead to a severe health event, potentially resulting in incapacitation or death.

88. Gulf Air's failure to act on these foreseeable risks, such as by adjusting schedules, improving health monitoring, and integrating fatigue risk management, exposed its crew and passengers to preventable harm.

89. The failure to properly manage fatigue and health risks had significant and tragic consequences for Captain Alhindi.

90. Gulf Air's failure to address cumulative fatigue from extended work hours and insufficient rest exacerbated Captain Alhindi's cardiovascular stress, leading to rapid health deterioration, incapacitation, and death.

91. The lack of an SMS and fatigue management systems allowed his condition to worsen undetected.

20

92. The airline did not assess fatigue risks during high-demand periods or adjust workloads for high-risk crew members, nor did it incorporate feedback to improve safety measures. Additionally, Gulf Air failed to communicate safety risks and adequately train personnel to manage health-related issues.

93. Had Gulf Air implemented necessary safety systems, including health assessments and fatigue management protocols, the arterial blockage could have been identified earlier, potentially preventing the fatal event.

94. This failure caused both physical harm to Captain Alhindi, the Plaintiffs and organizational harm, exposing crew and passengers to preventable risks.

95. Gulf Air's failure to address Captain Alhindi's fatigue and health risks caused not only his death but also significant emotional and financial harm to his mother and siblings, who lost a beloved family member.

96. Their grief and suffering were compounded by the preventable nature of the tragedy, exposing them to ongoing psychological distress

R- 56

Case 1:24-cv-03434-ACR   Document 2   Filed 12/31/24   Page 26 of 123
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 57 of 971

21

### E. **VIOLATING DOT ORDER & VIOLATIONS of ICAO Annex 19**

97. **Gulf Air's Failure in Implementing an Effective Safety Management System (SMS)**

98. Gulf Air's Safety Management System (SMS) failed to detect, identify and mitigate critical risks, such as fatigue and health issues, especially for high-risk crew members like Captain Alhindi.

99. Gulf Air lacked continuous monitoring and failed to treat incidents like the November 2022 flight attendant incapacitation as systemic safety hazards.

100. Had Gulf Air and its SMS detected these incidents, it could have identified the need for enhanced medical assessments and adjusted the Captain's workload accordingly.

101. Gulf Air's SMS failures directly contributed to Captain Alhindi's incapacitation and death. By failing to detect and address systemic risks, such as incapacitation events and cumulative fatigue, Gulf Air allowed the Captain's health to deteriorate without intervention.

102. The airline's neglect to flag high-risk crew profiles or adjust workloads during the high-demand World Cup period exacerbated his cardiovascular condition, culminating in his death.

103. Previous Incapacitation including the November 2022 flight attendant incapacitation was a clear warning sign that Gulf Air ignored, failing to evaluate safety protocols and mitigate similar risks for other crew members.

104. The airline's failure to implement an effective Safety Management System (SMS), as required by DOT, FAA, and ICAO, exposed passengers, crew, and the

R- 57

22

public to unnecessary risks.

105.    This negligence caused severe financial and emotional harm to the plaintiffs, including the loss of Captain Alhindi and his income, support, and guidance, and deprived them of a chance to prevent these damages.

106.    Had Gulf Air followed ICAO requirements and DOT orders—such as implementing an effective SMS system—their preventable losses would have been avoided

107.    Gulf Air's SMS failures deprived the plaintiffs of a foreseeable opportunity to prevent these damages

R- 58

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 28 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 59 of 971

23

### F.  GULF Air Negligence In Hospital Choice & Quality of Care

**108.    Duty and Breach of Duty**

Gulf Air, as Captain Alhindi's employer, had a heightened duty to ensure his health and safety during emergencies. Despite this obligation, Gulf Air failed to pre-arrange agreements with competent hospitals in Bangladesh and directed the ambulance to United Hospital, which lacked the necessary specialists for critical cardiac care.

109.    Their representatives actively managed the Captain's care without ensuring the chosen facility could provide adequate treatment.

110.    Gulf Air's choice to admit the Captain to United Hospital directly caused delays in care, as the hospital lacked a senior cardiologist and other essential resources especially at 4:30am

111.    Medical experts will confirm earlier intervention by a qualified specialist or transfer to a different Hospital, an accredited facility equally accessible, could have stabilized the Captain's condition. Gulf Air's negligence in selecting the hospital was the proximate cause of harm.

112.    If Gulf Air had acted earlier to arrange proper medical care or a specialist, the Captain's critical condition could have been stabilized before reaching the PCI table.

113.    It was foreseeable that placing a critically ill individual in an inadequately equipped hospital in Bangladesh—a country known for medical malpractice and lack of accountability—would lead to worsened outcomes.

114.    Gulf Air should have anticipated these risks and acted prudently by selecting

R- 59

Case 1:24-cv-03434-ACR   Document 2   Filed 12/31/24   Page 29 of 123
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 60 of 971

24

a better-equipped hospital or arranging specialist care in advance.

115. Gulf Air's actions resulted in preventable delays, causing the Captain's condition to deteriorate to a point of no return. This failure caused emotional and financial harm to the family, who relied entirely on Gulf Air's representations and were denied the chance to seek effective care.

116. Gulf Air's reliance on word-of-mouth recommendations and failure to act during the 8 hours at the hospital reflect systemic negligence, directly linking their actions to the harm suffered by the Captain and his family.

117. It is widely known that medical malpractice and lack of accountability are prevalent issues in Bangladesh's healthcare system, and Gulf Air should have anticipated these risks when choosing a hospital and providing care for their Pilot

118. Gulf Air's decision to place the Captain in an unqualified hospital was a critical error in judgment, directly linking its negligence to the outcome.

119. Gulf Air knew or should have known that admitting the Captain to an inadequately equipped facility created foreseeable risks of delays, ineffective treatment, and further harm to him and to the Plaintiffs

120. Gulf Air's failure to address the Captain's known medical risks (e.g., 99% arterial blockage) and failure to arrange competent care earlier exacerbated his condition, with more negligence acts, making death more likely regardless of the hospital's role.

R- 60

25

## G. **Breach of Duty of Care in Providing Adequate Medical Care**

121.    Gulf Air failed to fulfill its duty of care by admitting the Captain to United Hospital and keeping him there despite its known deficiencies and lack of specialized cardiac care.

122.    Failing to consult a senior cardiologist or initiate life-saving procedures promptly.

123.    Neglecting to secure a comprehensive medical plan, resulting in fragmented and inadequate treatments

## H. **Breach In Providing The Captain's Medical History**

124.    Gulf Air breached its duty by failing to provide Captain Alhindi's medical history during a critical emergency. This history, which included his cardiovascular issues which led to prior suspension after Incapicition, hypertension, prescribed medications, and past cardiac incidents, was essential for accurate diagnosis and immediate treatment.

125.    Gulf Air, as the Captain's employer, had the obligation and ability to ensure this information was readily accessible for emergencies but failed to do so

126.    Instead, Gulf Air relied on the Captain's wife to relay medical details. This caused significant delays due to time zone differences and her limited access to complete medical records.

127.    Gulf Air's initial responsibility was to ensure the Captain's medical history, including his suspension, hypertension, and prior cardiac incidents, was readily available in their system for emergency situations.

128.    Relying on the Captain's wife to provide this critical information was

R- 61

Case 1:24-cv-03434-ACR   Document 2   Filed 12/31/24   Page 31 of 123
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 62 of 971

26

unnecessary and avoidable, as the airline's duty of care mandated maintaining such records on a need-to-know basis for immediate medical intervention.

129.    The lack of timely, accurate information directly led to the hospital's misdiagnosis and delayed treatment missing the "Golden Hour," the critical window for effective intervention.

130.    The absence of the Captain's medical history resulted in a cascade of preventable harm, including missed opportunities for specialized cardiac care.

131.    This failure contributed to the Captain experiencing two additional heart attacks, further deterioration of his condition, and his eventual transfer to the ICU. Even at this stage, Gulf Air still did not provide the necessary medical history, exacerbating delays and errors in care or made sure there was a specialist or medical plan

132.    Had Gulf Air ensured the Captain's medical history was readily available and provided it directly to medical staff, the severity of his condition would have been immediately apparent.

133.    Any prudent healthcare provider, with possession of a patient's medical history knowledge, would have initiated timely and appropriate interventions.

134.    This breach directly caused delays, misdiagnosis, and a worsened prognosis, ultimately leading to his death.

135.    The harm was foreseeable given Gulf Air's knowledge of the Captain's risks and the standard industry practice of maintaining accessible medical records for emergencies.

27

## I.   GULF AIR DUTIES & Breaches Leading To Percutaneous coronary intervention (PCI)

136.   Given the life-threatening nature of the situation, Gulf Air was required to act with heightened diligence and expertise, taking immediate steps to ensure the Captain received proper medical care and intervention.

137.   The Plaintiffs relied entirely on Gulf Air to act in the Captain's best interests, as they were 20 hours away and unable to access information or intervene independently.

138.   By managing the Captain's treatment, choosing the hospital,facilitating procedures, and overseeing the consent process, Gulf Air assumed a **duty** to ensure timely and proper medical intervention.

139.   Despite the urgency, the Captain was left without appropriate care for two critical hours. By the time senior doctors arrived at the hospital, the proposed PCI procedure was too late to prevent further deterioration and save his life.

140.   Gulf Air and its representatives owed a heightened duty of care to disclose material facts regarding the Captain's condition and the hospital's limitations, enabling the family to make informed decisions.

141.   The Plaintiffs' reliance on Gulf Air's representations reinforced the airline's obligation to provide full and truthful disclosures, which it failed to do, depriving the Captain of timely and adequate care.

R- 63

### J. *Breach of Duty of Care by Not Disclosing Material Facts*

142. Gulf Air breached this duty by Remaining Silent and Withholding key information about risks and the hospital's limitations during his time at the hospital and in obtaining consent from Plaintiff Feras

143. Gulf Air breached this duty by Partial Disclosures in Failing to disclose the absence of specialists and delays in care.

144. Gulf Air breached this duty by Misleading Assurances and Providing reassurances that created a false sense of security about the hospital's capabilities.

145. Captain Alhindi survived his first heart attack at the airport, indicating that timely and effective medical intervention upon arrival at the hospital could have stabilized his condition.

146. Medical experts will confirm that earlier intervention and involvement of a senior cardiologist or immediate transfer to a better-equipped facility could have prevented his subsequent heart attacks and deterioration.

147. Gulf Air admitted the Captain to United Hospital, a facility lacking critical cardiac expertise outside working hours, despite "EverCare" Hospital being equally accessible and the only Internationally-accredited hospital in the area and not owned by mafia as United Hospital known in Bangladesh

148. EverCare's accreditation and proven capability in managing cardiac emergencies at any time, demonstrate that a better alternative was readily available but overlooked by Gulf Air.

149. From 4:30 AM to 10:30 AM, the Captain was left without the care of a senior

R- 64

cardiologist, a delay that allowed his condition to worsen.

150.    Gulf Air withheld critical information about United Hospital's limitations, including the absence of a senior cardiologist and delayed care, preventing Plaintiffs from making informed decisions.

151.    If Gulf Air had disclosed these deficiencies, Plaintiffs could have arranged a transfer to Evercare Hospital, contacted the U.S. embassy, or involved their to advocate for better care on-site or look for the best cardiologist and retained him to go help his brother.

152.    Had the Captain been transferred to Evercare or any other adequately equipped hospital, he would have received timely and advanced care.

153.     This pattern of inadequate care highlights Gulf Air's failure to foresee the risks of admitting the Captain to this facility.

154.    A Gulf Air pilot at the Captain's funeral stated that if the Captain had been treated elsewhere, he would have survived.

155.    Gulf Air's decisions directly delayed proper care and specialist involvement, leading to inadequate treatment that caused the Captain's condition to progress from manageable to fatal

156.    These omissions deprived the Captain of the chance to recover, leaving him in a "no return" stage that culminated in his death.

157.    The Plaintiffs justifiably and reasonably relying entirely on Gulf Air's representations and assurances, were misled into believing that the Captain was receiving adequate care.

158.    This reliance prevented them from seeking alternative solutions or taking

R- 65

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 35 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 66 of 971

30

timely action, compounding the delays and contributing to the Captain's

worsening condition.

159.    Gulf Air knew that withholding critical information about the hospital's

deficiencies, lack of a senior cardiologist, and delays in treatment would prevent

the family from making informed decisions, leading to foreseeable harm.

R- 66

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 36 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 67 of 971

31

## K. Breach of Fiduciary Relationship

160.    **Obligation to Disclose Material Facts**

161.    Gulf Air owed a duty to disclose all material facts regarding the Captain's medical condition and the hospital's capabilities.

162.    As the dominant party in this situation, Gulf Air had exclusive access to critical information and was relied upon by the plaintiffs, Samiha and Feras, to act in the Captain's best interest. Gulf Air Breached this duty

163.    **Duty of Trust**

164.     Captain Mohannad Alhindi was a loyal Gulf Air employee for over 30 years. Gulf Air had previously managed his medical care during past illnesses, they had a relationship of trust and reliance.

165.    Gulf Air managed the Captain's medical insurance through company-sponsored plans and clinics; they had authority and responsibility over his healthcare.

166.    At the time of his medical emergency, Captain Alhindi was on duty in a foreign country, far from his home and family, relying entirely on Gulf Air for immediate support and care. Captain was unconscious since his incapacitation

167.    Gulf Air, through its operational policies , employment contract and regulatory obligations, was required to manage the Captain's health and safety during emergencies, including the co-pilot's role in facilitating medical care.

168.    Gulf Air directed airport medics, dispatched the ambulance to United Hospital, admitted him, signed consent of treatment at ER,  contacted the Captain's wife, and sought consent from his brother, Feras, for medical procedures, assuming

R- 67

32

full authority over his care.

169.    As a large international corporation, Gulf Air wielded significant influence in Bangladesh, controlling local resources and medical interventions, leaving the Captain's family entirely dependent on its actions and representations.

170.    **DUTY OF RELIANCE**

171.    Plaintiffs relied entirely on Gulf Air's knowledge and actions during the emergency, as they lacked access to critical information or alternative means to make informed decisions about Captain Alhindi's care.

172.    Feras's reliance was demonstrated by his call to Gulf Air's 1-800 number, where he was only informed of the Captain's admission to United Hospital, and over ten messages to the co-pilot, frustrated with his inability to reach the hospital for updates.

173.    Aware of Feras's dependency, Gulf Air and the co-pilot controlled all critical information, acting as his sole source of updates and leaving him unable to independently protect his brother's interests.

174.    **DUTY OF LOYALTY & DUTY OF CONFLICT OF INTEREST**

175.    Gulf Air and its representatives, including the co-pilot, owed a duty of loyalty to prioritize Captain Alhindi's and his family's best interests, based on their employer-employee relationship, control over his medical care, the family's reliance during the emergency and foreseeability of harm.

176.    Gulf Air prioritized its own interests, including avoiding liability and reputational harm, over the Captain's well-being by withholding critical information, choosing an inadequately equipped hospital, and failing to involve a

R- 68

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 38 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 69 of 971

33

specialist, depriving the family of informed decision-making.

177.    The airline's actions were influenced by concerns over potential lawsuits, prior medical incapacitation incidents, and ongoing U.S. Department of Transportation (DOT) applications, leading to systemic failures in their medical protocols.

178.    These breaches directly caused Captain Alhindi's deterioration to a "no return" stage leading to his death, and inflicted emotional and financial harm on the Plaintiffs , who relied on Gulf Air's reassurances and were denied the opportunity to secure proper care

R- 69

34

### L. *Breach of Duty of Superior Knowledge:*

179. With access to critical information, including medical records and the hospital's capabilities, Gulf Air was obligated to use their superior knowledge responsibly and transparently.

180. Gulf Air held superior knowledge of Captain Alhindi's critical condition, the hospital's deficiencies, and the absence of specialists, which they failed to disclose to the family. Gulf Air was aware that the Plaintiffs mainly Feras wasn't able to get through to the hospital or doctors they were notified

181. The withheld information, including the risks of delayed care and the inadequacy of United Hospital, was essential for the family to make informed medical decisions.

### M. *Heightened Duty in Emergencies:*

182. Captain Alhindi collapsed at the airport, suffering three heart attacks by 8:00 am, and was intubated and placed on a ventilator. Gulf Air failed to provide immediate, life-saving measures or ensure access to appropriate medical care.

183. Gulf Air's representatives were fully briefed on the Captain's critical condition but admitted him to United Hospital, a facility lacking necessary specialists, and approved emergency procedures without ensuring adequate resources.

184. By coordinating medical assistance, arranging ambulance transport, and managing hospital communication, Gulf Air assumed control of the situation, creating an obligation to act with heightened diligence and care.

185. Knowing the family was 22 hours away in the U.S., Gulf Air withheld critical information, provided vague assurances, and failed to assist Feras, delaying

R- 70

meaningful intervention and worsening the Captain's condition.

186.   As an international airline with significant resources, Gulf Air failed to use its

capabilities to provide proper care, reflecting broader systemic failures in

handling employee health and safety.

187.   Gulf Air's breach of heightened duty caused preventable delays, emotional

and financial harm to the family, and the Captain's deterioration to a "no return"

stage

36

**188.**   **GULF AIR FRAUDULENT CONCEALMENT  (1)**

**N.  Fraudulent Concealment  PCI Consent**

**188.**   On December 13, 2022, at approximately 10:30 PM EST (Virginia time), a recorded call was initiated to obtain a consent for a PCI (Percutaneous Coronary Intervention) procedure from Plaintiff Feras. Participants in this call included:

A.  **Issa Shaah** (Bangladesh Dhaka Station Manager) – He is Gulf Air senior authority responsible for overseeing medical emergencies who arrived late and gave False statements multiple times to the Authorities

B.  **Khalil Razzak** (Co-Pilot, Gulf Air) who accompanied the Captain in the ambulance to United Hospital from the Airport, remained with him at the hospital, and assumed responsibility for immediate medical arrangements. Khalil explicitly knew during the comment call that the doctor was difficult to understand and was lying

C.  **Professor Omar Farouk** (Doctor at United Hospital) –"senior doctor" on the call, yet not a cardiologist and newly arrived at the hospital. His broken English created a language barrier, leaving the family unable to comprehend critical details about the Captain's condition. **The doctor, lied and Gulf Air remained Silent knowing he's lying**

D.  **Amani Alhindi** (Captain's Wife, Naperville, IL) –who has her own share of negligence

E.  **Touleen Alhindi** lives in Chicago (Captain's Daughter) – Who asked for the risks and was downplayed by the Doctor

F.  **Ahmad Alhindi** who lives in IL (Wife's Brother) –Was at the Wife house

R- 72

37

during the call and present as part of the discussion.

G. **Feras Alhindi** (Captain's Brother, Springfield, VA) –Primary participant in the call as the family sought his consent for the PCI. Feras was not the legal next of kin; his consent was obtained deceptively. Feras was located in Springfield, VA, using his personal cell phone (703) 980-6955.

H. **Feras's Daughter** (DOE 1) – Recorded the call due to the family's inability to understand the doctor's explanations. This recording confirms the Co-Pilot's acknowledgment that the doctor was not clear and lying

189. The call at 10:30 PM EST (10:30 am Bangladesh Time ) occurred as the Captain's condition rapidly declined due to a lack of specialized care and providing medical history.

190. By this time, over six hours had passed without medical intervention, heightening the urgency for accurate and transparent disclosures.

191. The late timing and missed opportunities for timely interventions that would have happened  with full family awareness.

192. Gulf Air intentionally concealed material facts depriving the family of the opportunity to seek independent medical intervention or transfer the Captain to a more competent facility.

193.  This conduct was a deliberate attempt to keep the family uninformed and prevent them from making an alternative, informed decision covering up their initial negligences

R- 73

**194.    Gulf Air concealed a material facts**

195.    Gulf Air's representatives, including Station Manager Issa Shaah and Co-Pilot Khalil Razzak, deliberately concealed material facts critical to the consent process call for the PCI procedure, depriving Feras of the opportunity to make an informed decision.

196.    Gulf Air, aware of the Captain's worsening condition and the hospital's deficiencies, withheld these critical details during the consent call on December 13, 2022, at approximately 10:30 PM (EST):

I.    **Material Fact (1) Time Of Arrival & Loss Of Golden**

197.    During the critical phone call, the doctor inaccurately stated that the Captain had "fallen at the airport" at **5:00 AM**. In reality, the Captain fell at **3:50 AM and had** already arrived at the hospital by **4:30 AM** and was receiving treatment in the Emergency Room (ER) until **6:00 AM**, when he was moved to the ICU.

198.    The Captain suffered two more heart attacks between around **6:20–7:00 AM**, two hours gap from his arrival ,not as claimed and implied by the doctor

199.    **Co Pilot Khalil**, who had accompanied the Captain to the hospital, and **Issa Shaah**, Gulf Air's Station Manager, were present on the call and fully aware of the actual timeline. Despite their direct knowledge, both remained silent and failed to correct the doctor's false statement. Their deliberate silence allowed this critical misinformation to go unchallenged, supporting and confirming  the doctor's misleading narrative.

200.    This misrepresentation created the false impression that the Captain's condition deteriorated at the airport and that he had received appropriate care

R- 74

Case 1:24-cv-03434-ACR   Document 2   Filed 12/31/24   Page 44 of 123
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 75 of 971

39

immediately upon arrival at the hospital and hasn't been there for long without care

201. By remaining silent, Khalil and Issa Shaah intentionally avoided disclosing key facts that would have raised serious questions about the hospital's ability to provide PCI procedure or any procedure or care and its failure to act during the critical "golden hour."

202. Their silence was intended to suppress Feras's ability to assess the situation accurately and make un-informed decisions inducing his reliance.

203. This omission effectively prevented Feras from:

   A. Questioning the doctor's credibility and the hospital's handling of the emergency.

   B. Exploring alternative actions, such as transferring the Captain to a better-equipped facility or involving specialists sooner.

   C. Realizing that the Captain's delayed care significantly contributed to his deteriorating condition.

   D. Putting him in stage if urgency and distraction that this happened quick and out of nowhere the Captain's critical situation is deteriorating

204. The coordinated silence by Khalil and Issa Shaah demonstrates intent to mislead, as they actively allowed the false timeline to remain uncontested.

205. This ensured Feras's reliance on the doctor's incorrect account, manipulating his decision to consent to the PCI procedure under the false belief that it was the best and only option for the Captain's survival.

R- 75

40

## II. <u>Material Fact (2) The Captain had been without specialist care or appropriate treatment for over six hours at United Hospital.</u>

206. The hospital had demonstrated significant delays in care and mismanagement of the Captain's condition.

207. **Timeline of Negligence**

   A. **4:30 AM**: Gulf Air failed to ensure that the hospital had the Captain's medical records, which delayed accurate diagnosis and treatment.

   B. **5:00–9:30 AM**: Gulf Air did not request the presence of a specialist or establish a proper medical plan for the Captain's treatment, despite his deteriorating condition.

208. This prolonged delay in specialist intervention increased the risks of complications and worsened his prognosis. Gulf Air failed to disclose this material fact, leaving Plaintiff Feras under the false impression that the Captain was receiving timely and adequate care.

209. Gulf Air concealed the hospital's inability to manage critical cardiac emergencies, leaving the family unaware of the facility's limitations. These delays and deficiencies directly undermined the potential for a successful outcome.

210. **United Hospital lacked a senior cardiologist or experienced specialists to evaluate or perform the PCI procedure.**

211. Despite their knowledge of this critical deficiency, Gulf Air's representatives, including the Co-Pilot who remained at the hospital, failed to disclose the absence of necessary expertise.

R- 76

Case 1:24-cv-03434-ACR     Document 2     Filed 12/31/24     Page 46 of 123
USCA Case #25-7123     Document #2186844     Filed: 08/06/2026     Page 77 of 971

41

212.    This omission significantly compromised the safety and effectiveness of the proposed PCI intervention.

213.    Gulf Air was aware that the hospital lacked specialized care, as no specialist was available until after 9:30 AM, when the PCI procedure was ultimately decided. This delay was a clear sign of the hospital's inability to manage the Captain's critical condition effectively.

214.    Both the Co-Pilot's statement and the hospital's death summary confirm the absence of a senior cardiologist before 10:00 AM, further highlighting the hospital's inadequacy during critical hours.

215.    All that time the Co Pilot didn't think of questioning why there isn't any procedure being taken, or any specialist.

216.    The Co-Pilot and Gulf Air representatives initially relied on the hospital's ability to manage the Captain's condition. However, when the specialist arrived after normal working hours, it became apparent that the hospital had missed critical opportunities to intervene effectively during the golden hour.

217.    By this point, Gulf Air and its representatives were aware that these delays and omissions significantly contributed to the Captain's deteriorating condition.

218.    By the time the PCI procedure was considered, Gulf Air and its Co-Pilot understood from the brief that the Captain's condition was effectively irreversible. They knew that the critical damage to his health had already occurred, and the PCI would do little to alter the outcome.

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 47 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 78 of 971

42

219. The Captain was now unlikely to recover meaningfully, and his condition had reached a point where further intervention would not reverse the harm caused by the lack of timely and adequate care including the high risk.

220. Recognizing this, Gulf Air refrained from disclosing these critical realities to Feras. Instead, they allowed the doctor's incomplete explanation, hindered by language barriers and communication issues, to mislead Feras into believing that the procedure was both necessary and potentially life-saving.

221. By remaining silent, Gulf Air ensured that Feras would consent to the PCI without fully understanding its limited efficacy and the Captain's dire prognosis shifting the responsibility to the family. This deliberate omission demonstrates Gulf Air's intent to mislead, motivated by their knowledge of the Captain's critical state and the potential liability arising from their earlier failures to act.

III.    **Material Facts (3) Failure to Disclose the True Risks of the PCI Procedure**

222. During the consent process, the risks of the PCI procedure were repeatedly minimized or left unanswered, despite three direct inquiries from Feras, the Captain's daughter, and Feras's wife. When asked about the risks, the doctor provided vague and dismissive responses, eventually stating that there are "always risks" but downplaying them by describing the procedure as "standard."

223. Even when Feras explicitly asked about the risks after the procedure, the doctor failed to provide a clear or comprehensive answer, instead emphasizing the urgency of proceeding without delay.

43

224.    Gulf Air's representatives, including Khalil and Issa Shaah, were present and fully briefed on the Captain's critical condition and the hospital's lack of necessary expertise to perform the PCI procedure safely. Despite this knowledge, they remained silent throughout the consent process, failing to correct the doctor's lies and incomplete explanations of the risks of the PCI.

225.    This omission created a false sense of security, leading the family to believe that the procedure was both routine and urgently required, without fully understanding its risks or the hospital's inability to handle such a critical case effectively.

226.    Gulf Air's silence and failure to disclose critical facts deprived the family of the opportunity to explore alternatives, such as transferring the Captain to Evercare Hospital or consulting with a qualified specialist who could have provided a more accurate assessment of his condition and the risks of the PCI procedure, or decide if they don't want the PCI.

227.    *-Despite the outcome, it the **right of knowing** in order to choose what's best for the Captain is what Gulf Air deprived Plaintiffs from -*

228.    By remaining silent, Gulf Air's representatives knowingly reinforced the doctor's misleading assurances, manipulating the family's decision-making and ensuring consent under false pretenses.

229.    This deprived the family of the ability to make an informed decision that could have prioritized the Captain's best interests.

230.    The omission, combined with Gulf Air's superior knowledge of the hospital's deficiencies and the Captain's deteriorating condition, demonstrates an intent to

R- 79

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 49 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 80 of 971

44

suppress critical information. Gulf Air's actions directly impacted the consent process, concealing material risks the family had a right to know.

231. These withheld facts, including the hospital's limitations, the absence of a senior cardiologist, and the Captain's deteriorating condition, delayed action, led to inadequate treatment, and culminated in his fourth and final heart attack. Their failure to disclose these facts prevented the family from seeking better care, ultimately denying the Captain a chance for survival and improved outcomes.

232. **Gulf Air Representatives intentionally concealed the fact with the intent to defraud**

233. This silence, coupled with the doctor's dismissive responses, created a false sense of security, misleading Feras into believing the hospital was adequately equipped to handle the procedure.

234. Instead, the Co-Pilot applied undue pressure by offering to sign the consent form on Feras's behalf, further depriving the family of the opportunity to weigh their options. This coercion introduced additional stress and urgency, causing Feras to feel rushed and incapable of resisting Gulf Air's narrative.

235. Compounding their silence, Gulf Air representatives allowed the doctor to falsely imply that the Captain had only recently deteriorated, concealing the fact that critical time had already been lost due to the hospital's inability to act during the golden hour.

236. This omission prevented Feras from fully understanding the severity of the situation or the hospital's role in exacerbating his brother's condition.

237. By remaining silent, Gulf Air knowingly reinforced the doctor's misleading

Case 1:24-cv-03434-ACR   Document 2   Filed 12/31/24   Page 50 of 123
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 81 of 971

45

assurances, concealing the hospital's limitations and the true risks of the PCI procedure.

238. This included failing to disclose that the hospital lacked the appropriate specialists before 9:30 am , as well as the fact that any potential benefits of the PCI procedure were now minimal due to prior delays.

239. Their deliberate omission ensured compliance under false pretenses, preventing Feras from making an informed decision.

240. Gulf Air's actions were driven by a clear intent to suppress critical information and avoid liability for the delays and inadequate care the Captain had already received.

241. Their silence ensured that the narrative presented to Feras would divert blame away from Gulf Air's role in the Captain's condition, focusing instead on the procedure's urgency.

242. This directly impacted the consent process, resulting in Feras providing uninformed consent under **duress**, which deprived the family of the opportunity to explore better care alternatives and ultimately led to further harm.

243. **Duty To Disclose**

244. **Duty of Disclosure**: Gulf Air, with superior knowledge of the hospital's deficiencies, had a fiduciary duty to disclose all material facts about the Captain's medical condition and the hospital's care.

245. **Duty of Trust and Dependency**: The plaintiffs placed trust in Gulf Air to protect the Captain, creating a legal and equitable duty for Gulf Air to act in their best interests.

R- 81

246. **Duty of Informed Consent**: Gulf Air, by facilitating consent, assumed the obligation to disclose all risks, alternatives, and limitations regarding the Captain's treatment.

247. **Duty of Accurate Information**: Gulf Air had a duty to provide truthful, complete, and transparent information about the Captain's condition and the hospital's deficiencies.

248. **Emergency Duty of Care**: Gulf Air had a heightened duty to ensure proper treatment for the Captain and to inform the family of the hospital's limitations.

249. **Duty Against Misrepresentation**: Gulf Air's partial disclosure misled the family, as they mentioned the hospital's name and stated their staff was present but withheld critical details about the absence of specialists and the hospital's inadequacy.

250. **Duty to Prevent Foreseeable Harm**: Gulf Air should have anticipated harm from failing to disclose critical material facts during a medical emergency.

251. **Control and Knowledge**: Gulf Air had full control over the Captain's medical decisions, records, and care, with representatives present and aware of the hospital's deficiencies.

252. Despite this, they failed to disclose to the Plaintiff mainly Feras the truthful information or take the necessary steps to involve a specialist or initiate a life-saving procedure, significantly compromising the Captain's chances of survival.

253. Despite knowing of Samiha status as automatic beneficiary in Islamic religion, estates and insurance policies. Gulf Air did not notify all the dependant, the

R- 82

Case 1:24-cv-03434-ACR   Document 2   Filed 12/31/24   Page 52 of 123
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 83 of 971

47

beneficiary and heir Plaintiff Samiha. Samiha wasn't  notified to participate in these medical decisions

254. **Plaintiff Feras  was unaware of the concealed fact and would have acted differently if they had known**

255. Despite being aware of the Captain's critical condition, the hospital failed to address the situation for six hours, exacerbating the Captain's health issues

256. As the entity managing the Captain's care, Gulf Air had a heightened duty to act transparently and prioritize the Captain's welfare.

257. The family relied on Gulf Air's assurances due to their lack of proximity to the situation and inability to independently verify the hospital's capabilities.

258. Had Gulf Air provided the necessary information, the family might have considered different options to ensure proper treatment.

259. The family placed justifiable trust in Gulf Air's actions, relying on the airline's reputation, its prior care for the Captain, and its involvement in previous medical situations. This trust led Feras to reasonably believe that believing their type of care and  consenting to the PCI procedure was the best course of action.

260. Feras, unaware of the hospital's inability to act quickly or competently, relied on Gulf Air's trust and involvement and representations, believing that the procedure was routine and urgently needed and that the hospital was adequately equipped to handle it. This lack of awareness was a direct result of Gulf Air's failure to disclose critical information.

261. Gulf Air's silence and omissions created a misleading impression that the hospital was adequately equipped to handle the Captain's condition.

R- 83

48

262.    The Plaintiffs trusted Gulf Air's involvement and were unable to explore alternative care options due to Gulf Air's assurances, omissions, and the family's justifiable trust in the airline.

263.    Feras justifiably and reasonably relied on Gulf Air's misleading silence and misrepresentation that the hospital was capable of handling the Captain's condition. Feras had no other way of verifying any of the information, he had no reason to doubt Gulf Air and their representatives' ability to take the rights actions  in medical crisis

264.    Gulf Air and the Co Pilot knew Feras didn't have any information when the doctor called.

265.    The Plaintiffs reasonably relied on Gulf Air's status as a global airline managing the situation, expecting them to act in the Captain's best interests and provide accurate information.

266.    Gulf Air Co Pilot And Station Manager had a duty to speak and intentionally failed to do so.

267.    Gulf Air's failure to disclose the lack of a specialist and the hospital's delays amounted to fraudulent concealment. This omission deprived the Plaintiffs of the opportunity to intervene or make an informed decision, directly contributing to the Captain's preventable death.

268.    By remaining silent, Gulf Air and its representatives avoided scrutiny of their own negligence in failing to ensure proper care for the Captain. This silence allowed them to evade responsibility for the deficiencies in medical treatment and the failure to act appropriately.

269.    Gulf Air and its representatives ensured that the decision to proceed with the PCI was made under false pretenses. By withholding critical information, they prevented the family from exploring alternative care options that could have led to better outcomes.

270.    It is foreseeable that failing to disclose material facts during a consent process could mislead the decision-maker into making choices that result in harm. **Gulf Air's omission directly contributed to Plaintiff Feras decision to consent to the PCI under misguided assumptions.**

271.    The Captain's critical medical condition (e.g., heart attacks, arterial blockage) and the foreseeable risks associated with Gulf Air's failure to ensure proper care or disclose the hospital's deficiencies were significant.

272.    **Intent to Deflect Responsibility**

273.    The station manager, fully aware of the Captain's critical condition, refused to consent to the procedure and shifted the responsibility to the family, delaying treatment by 50 minutes and contributing to the fatal heart attack.

274.    This deliberate action was Gulf Air's intent to deflect responsibility for its negligence, including inadequate medical care and lack of specialist oversight.

275.    Gulf Air's refusal to address its operational failures and ensure proper medical response demonstrates intent to avoid legal and regulatory consequences.

276.    By withholding critical information and manipulating the consent process, Gulf Air prioritized its interests over transparency and accountability, leaving Feras to make an emotional, uninformed decision.

277.    The concealment of material facts during the consent process is not an

R- 85

Case 1:24-cv-03434-ACR   Document 2   Filed 12/31/24   Page 55 of 123
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 86 of 971

50

isolated incident but part of a broader pattern of Gulf Air's intentional actions aimed at misleading the plaintiffs.

278. This chain of events reveals a deliberate effort by Gulf Air to avoid accountability and manipulate the family into decisions that served the airline's interests rather than the Captain's welfare.

279. **The plaintiff suffered damages as a result of the concealment**

280. Feras suffered profound emotional harm, believing his uninformed consent contributed to his brother's death. Gulf Air's omissions and misrepresentations denied Feras the opportunity to make an informed decision or pursue better care alternatives

281. The concealment of material facts caused Feras to rely on Gulf Air's involvement and representations, which created a false sense of security. This misplaced trust amplified Feras's ongoing distress when he learned of the hospital's deficiencies and Gulf Air's failure to act transparently.

282. The Captain's fourth and final heart attack, occurring during the PCI procedure, underscores the inadequacy of care and Gulf Air's role in preventing timely intervention.

283. Even if the Captain's condition was critical, Gulf Air's omissions foreseeably deprived the Plaintiff Feras and Samih of alternative options that might have improved the outcome.

284. Gulf Air's documented pattern of withholding critical information in emergencies demonstrates a systemic disregard for transparency, further supporting the claim of fraudulent concealment.

R- 86

Case 1:24-cv-03434-ACR   Document 2   Filed 12/31/24   Page 56 of 123
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 87 of 971

51

283.   **GULF AIR FRAUDULENT CONCEALMENT  (2)**

**P.  Hospital Records Seizure & Intentional Concealment by Gulf Air**

284.   **Gulf Air & Its Representatives Concealed Material Facts**

285.   At 12:00 PM on December 14, 2022, at United Hospital in Dhaka Bangladesh, Gulf Air learned that the PCI procedure had been conducted without proper oversight.

286.   Gulf Air discovered critical failures in its own medical monitoring and safety risk systems, including the unaddressed 99% arterial blockage that rendered Captain Alhindi medically unfit to fly.

287.   Despite this knowledge, Gulf Air continued to withhold these facts from the plaintiffs, obstructing their ability to uncover negligence in real time or ask for an autopsy.

288.   Gulf Air had a vested interest in minimizing liability and avoiding the costs of alternative arrangements or a public acknowledgment of its failures.

289.   Gulf Air's reliance on unqualified doctors and failure to investigate hospital deficiencies contributed to the Captain's health deterioration. By concealing these risks, Gulf Air allowed the situation to worsen, ultimately leading to his death.

290.   **Gulf Air concealed Material Facts**

291.   On December 14, 2022, at approximately 12:00 PM, Gulf Air representatives Issa Shaah, the Station Manager at Dhaka, and Co-pilot Khalil Abdulrazak, acting under Gulf Air's directives, seized critical medical records from United Hospital in Dhaka, Bangladesh.

292.   These representatives signed for the records under the pretense of delivering

R- 87

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 57 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 88 of 971

52

them to the plaintiffs when transferring Captain Mohannad Alhindi's remains and assured the hospital staff that these records would assist the family in understanding the medical care provided .

293.    The records included detailed medical documentation essential for assessing the Captain's health prior to his death and determining the events that transpired during his medical treatment, critical to evaluating the severity of the Captain's 99% arterial blockage and whether his condition was properly managed and the procedures done at the hospital.

294.    Despite these assurances, Gulf Air failed to deliver these records after the burial, providing only the death summary while withholding the remaining critical documents, thereby obstructing the plaintiffs' ability to request an autopsy, verify the quality of care, or initiate timely legal proceedings

295.    The withheld records constitute material facts essential for identifying and proving Gulf Air's negligence, specifically:

   I.    **Material Facts Related to the 99% Arterial Blockage**:

296.    **Coronary Angiography (CAG) Report**: Reveals the extent and duration of the blockage and provides insights into whether Gulf Air's medical monitoring failed to identify this life-threatening condition.

297.    The absence of this record deprived the plaintiffs of evidence showing that Gulf Air neglected its duty to monitor and address a critical medical issue that developed over years.

298.    **Echocardiogram (ECHO) and Doppler Studies**: Show the functioning of the Captain's heart, which should have been monitored given his high-risk profile.

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 58 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 89 of 971

53

These tests are directly linked to Gulf Air's obligation to ensure fitness-to-fly and would demonstrate systemic failures in pilot health evaluations.

299. **Chest X-rays**: Would indicate chronic or long-standing cardiovascular issues that Gulf Air's health assessments failed to detect or address. Possible undetected other diseases. Withholding these records prevented an independent review including whether Gulf Air had sufficient protocols to identify chronic cardiovascular risks in its pilots.

  II.    **Material Facts Related to the PCI Procedure**:

300. **PTCI (Percutaneous Transluminal Coronary Angioplasty) CD & Reports**: Detail the specifics of the procedure, including whether it was performed properly and if any errors occurred due to the lack of a specialist on-site.

301. By withholding these records, Gulf Air obstructed the plaintiffs' ability to determine if the lack of adequate care directly contributed to the Captain's death and

302. **Death Summary**:

303. While part was provided, its accuracy and completeness are in question due to fraudulent misrepresentation in it and Gulf Air's attempts to suppress other critical records.

304. The missing records, the Cardiologists reports surrounding the PCI procedure and care leading to the death contradict the reliability of the summary provided, indicating deliberate misrepresentation.

305. **CT Scan**:

306. Gulf Air failed to disclose critical medical history indicating that Captain

R- 89

Mohannad Alhindi had underlying cardiovascular issues, which would have been essential information during his emergency treatment.

307.   Instead, the ER team, unaware of this medical history, wasted crucial time performing a CT scan of his head—meant to rule out neurological conditions such as stroke

308.   This CT scan result was clear, further proving that Gulf Air's failure to provide his cardiovascular history directly delayed appropriate treatment for his severe arterial blockage.

309.   During the prolonged head exam, Captain Alhindi's oxygen levels dropped to critical levels, necessitating intubation and an urgent return to the ER.

310.   The Co-pilot, Khalil Abdulrazak, failed to disclose these critical developments to the family during the consent call, depriving them of the opportunity to make informed decisions or insist on prioritizing cardiac-focused care

### III.    Medical History Records in Gulf Air Possession

311.   Gulf Air's internal health assessments would have revealed whether the Captain was ever diagnosed or flagged for conditions requiring further evaluation. It would have revealed if Gulf AIr adhered to ICAO required medical evaluation of high risk profile and provided tangible evidence

312.   The concealment of these records indicates Gulf Air's intent to suppress evidence of long-term medical oversight failures, preventing accountability.

**313.    Gulf Air Had A Duty To Disclose Hospital Records to Plaintiffs**

**314.    Duty of Trust from Custodianship of Records**

315.    By assuming control of these documents, Gulf Air placed itself in a position of trust, creating a duty to disclose the records to the Plaintiffs..

316.    Gulf Air failed to deliver these critical records to Feras as promised, instead withholding them after the burial.

317.    This breach obstructed Feras' ability to access key information about his brother's treatment and verify whether negligence occurred.

318.     Gulf Air involved Feras in providing consent for medical decisions during Captain Alhindi's treatment, creating a duty of good faith, transparency, and full disclosure.

319.    This duty obligated Gulf Air to inform Feras of all material facts, including the hospital records that they later seized, which were crucial for understanding the cause of death and treatment adequacy.

320.    Gulf Air violated this duty by withholding the hospital records, which contained essential information,

321.    This concealment deprived Feras of the ability to make informed decisions, such as demanding further investigation or requesting an autopsy at the time of burial had he known.

322.    By seizing the hospital records, Gulf Air assumed legal custody of these documents. As a custodian, Gulf Air had a duty to disclose and return the records to Feras upon request, particularly when these documents became central to legal proceedings initiated by the plaintiffs.

R- 91

323. Gulf Air's refusal to return the hospital records—despite multiple formal requests and court orders—constituted a deliberate breach of this legal duty. This obstruction directly prevented Plaintiffs from pursuing legal claims against negligent parties, investigating negligence, and holding Gulf Air accountable.

324. **Duty to Disclose Accurate Information to Samiha as Legal Heir:**

As Captain Alhindi's legal heir, Samiha had the right to receive accurate and timely information about:

    A. The circumstances of her son's death,

    B. The true names of the doctors involved and the procedures performed,

    C. Any evidence revealing negligence in his care or health monitoring. Gulf Air failed to provide this critical information.

    D. The seized hospital records

    E. Inheritance information , life insurance Policies

    F. **Duty to Disclose Medical History Records**

325. Gulf Air maintained internal medical records for Captain Alhindi, including fitness-to-fly evaluations and medical exams results and assessments, critical for assessing his health prior to the PCI procedure ( the 99% Blockage ).

326. Gulf Air had a duty to disclose these records to the Plaintiff Samiha, investigators, the court, and the CAAB. Instead, it concealed both internal and hospital records, breaching its obligation and obstructing transparency

R- 92

57

**327.  Gulf Air Intentionally Concealed The Facts With The Intent To Defraud**

**328.  Intent to Suppress Evidence of Negligence**

329.  Gulf Air deliberately withheld critical medical records essential for identifying and proving its negligence. These records directly relate to Gulf Air's long-standing failure to monitor and address Captain Alhindi's health risks.

330.  **Specific Risks Suppressed**:

   **A.** Existence and Age of the 99% Arterial Blockage:

   **B.** Adequacy of Health Monitoring Program

   **C.** PCI Procedure Mismanagement

   **D.** Hospital Negligence

   **E.** CoPilot and Gulf Air Staff Negligence and Fraud.

331.  These records were indispensable for determining Gulf Air's role in contributing to Captain Alhindi's death through its failure to identify and mitigate his medical risks.

332.   By withholding these records and his medical records—despite multiple legal requests and court orders—Gulf Air deprived the plaintiffs of their right to independently verify negligence, request an autopsy, and initiate timely legal action.

333.  The plaintiffs were prevented from accessing evidence critical to determining whether Gulf Air's health monitoring program failed to detect and address long-standing medical risks, such as the Captain's 99% arterial blockage.

334.  If the plaintiffs had access to the cardiology reports and angiography CDs,

R- 93

they could have independently verified the hospital's claims that a balloon was inserted during the PCI procedure and understood the 99% blockage exact time of build up.

335.    They could also assess staff statements that the Captain suffered his final heart attack upon entering the PCI room, proving delays in response and potential mismanagement.

336.    Gulf Air's refusal to disclose these records obstructed the plaintiffs' ability to request a timely autopsy, which could have verified the causes of death and revealed delays or procedural mismanagement during treatment.

337.    If the plaintiffs had been fully aware of the negligence from the airport to the PCI room, including evidence of delayed procedures and mismanagement, they would have immediately requested an autopsy to determine whether timely intervention could have saved the Captain's life and to determine the prolonged negligence by Gulf Air failures and violations that led to his death.

338.    Without tangible evidence from the seized hospital records, the plaintiffs' claims could be dismissed as speculative. Access to these records would have substantiated Gulf Air's systemic failures and United Hospital's negligence, enabling the plaintiffs to pursue timely legal remedies with stronger claims.

339.    Beginning on **December 16, 2022**, the plaintiffs formally requested Captain Alhindi's complete medical history and hospital records from Gulf Air, including health assessments, medical examinations, and records maintained by the airline's clinic.

340.    Despite formal requests, Gulf Air refused to provide these records, This

R- 94

59

further obstructed the plaintiffs' efforts to hold Gulf Air accountable.

341. The withheld medical Airlines records were critical for investigations and legal claims

342. These records could directly contradict Gulf Air's claims of proactive health monitoring and system failures, revealing that the arterial blockage was overlooked despite routine screenings.

343. Gulf Air's refusal to disclose these results concealed material delays in the Captain's treatment, further obstructing accountability.

344. Potentially missing all required examinations by regulations which could have contributed to the Captain's deteriorating health.

345. Gulf Air's concealment of records also raises questions about whether systemic failures allowed critical health risks to go undiagnosed.

346. Gulf Air's repeated failure to comply with court orders, combined with its refusal to cooperate with investigative memos dated May 16, 2023 (Memo No. 1841), and June 25, 2023 (Memo No. 2401), demonstrates a deliberate strategy to suppress evidence and obstruct justice.

347. Despite many court orders and multiple family requests issued between May 2023 and February 2024, Gulf Air failed to:

A. Produce the seized medical records.

B. Provide witnesses such as Co-pilot Khalil, who was directly involved in the events leading to Captain Alhindi's death.

C. Disclose critical evidence, including CCTV footage, cardiology records, and procedural details.

R- 95

**D.** Failed to provide his Medical Certificate Class 1. Captain Mohannad didn't have a valid Medical license or any formal identification for his hypertension.

**E.** Medical records to prove his fitness and that ICAO required exams were conducted and in Gulf Air Risk System

348. Gulf Air's suppression of evidence was not incidental but a calculated strategy to avoid accountability

349. This delay not only hindered the plaintiffs but also obstructed civil aviation authorities and investigators seeking to establish liability

350. By withholding critical evidence, Gulf Air avoided exposure of systemic failures and procedural mismanagement.

351. Gulf Air's conduct aligns with a pattern of evading regulatory scrutiny and suppressing accountability, as seen in prior cases involving similar tactics

352. Gulf Air's continued refusal to disclose medical records and evidence demonstrates its intent to obstruct justice. The airline deliberately prioritized its interests over transparency, depriving the plaintiffs and investigators of essential information

353. Gulf Air's intent to suppress evidence is evident in its refusal to comply with court orders and provide material documents, even when directly requested by plaintiffs and investigators. The timing of this suppression during active investigations further underscores its calculated effort to obstruct justice.

354. When plaintiff Tala attempted to file a complaint for obstruction of justice in Bangladesh, Gulf Air leveraged its influence within the judicial system to obstruct

R- 96

61

her efforts and illegally the judge didn't accept the case patronizing the Plaintiff of going after big Airlines

355. This influence was demonstrated by Gulf Air orchestrating a coercive act against Tala at the court, where she was physically attacked by individuals allegedly sent by Gulf Air station manager Issa Shaah, who has strong connections with high officials .

356. This intimidation was not an isolated incident but a deliberate effort to deter her from pursuing further legal actions.

357. Gulf Air continues to harass the Plaintiffs mainly Tala leveraging influence inside the U.S Government

358. Gulf Air's timing of the attack, occurring immediately after Tala's attempt to hold them accountable, underscores their intent to suppress any legal or investigative scrutiny.

359. Gulf Air strategically employed delay tactics to mislead investigators, repeatedly making unfulfilled promises to produce evidence and present witnesses. These assurances were calculated to create the illusion of compliance, all while Gulf Air deliberately withheld critical evidence, leaving key claims against both the hospital and the airline unverifiable.

360. This prolonged obstruction is Gulf Air's intent to manipulate the investigative process and shield itself from accountability, further compounding the harm to the plaintiffs and the pursuit of justice.

361. Gulf Air intentionally concealed critical information about Captain Alhindi's medical unfitness to fly, including his 99% arterial blockage and its failure to

R- 97

implement proper health screening systems for pilots

362.    Gulf Air was aware that revealing these systemic failures would directly impact its operational safety record, which was under scrutiny during its December 2022 DOT audit. Concealing this evidence ensured Gulf Air maintained a facade of compliance to avoid regulatory penalties and disruptions to its U.S. codeshare partnerships

363.    These omissions coincided with Gulf Air's submissions to the U.S. Government on December 22 2022, reflecting an effort to suppress material facts that could harm its regulatory standing and commercial interests.

364.    Gulf Air strategically delayed or tampered with records, including falsifying safety records, to prevent the DOT from identifying operational failures that could jeopardize its market access and partnerships with U.S. airlines.

365.    By prioritizing the protection of its DOT certification and commercial relationships, Gulf Air deliberately placed its corporate ambitions above transparency, safety obligations, and accountability.

366.    Gulf Air's decision to suppress key documents was not incidental but a calculated effort to ensure its continued access to lucrative U.S. aviation markets.

367.    Gulf Air deliberately withheld critical information about life insurance and retirement benefits from Samiha, the legal heir, while selectively disclosing these benefits to Captain Alhindi's wife.

368.    This selective disclosure was designed to sow confusion within the Captain's family, effectively stalling potential claims and dividing the legal avenues available to the plaintiffs.

R- 98

369.    Gulf Air delayed providing the death summary until after the burial, obstructing any immediate investigation or autopsy and preventing the plaintiffs from uncovering the full circumstances surrounding the Captain's death.

370.    This delay ensured that any investigation into the cause of death, including negligence in health monitoring or emergency response protocols, was compromised, further shielding Gulf Air from liability.

371.    These actions were calculated to minimize Gulf Air's financial liabilities by obstructing Samiha's ability to assert inheritance rights and potential claims against the airline or the hospital.

372.    Gulf Air exploited this delay to divert attention away from its systemic failures, leveraging the lack of available evidence to weaken the plaintiffs' legal standing.

373.    By concealing tangible evidence and delayed disclosures, Gulf Air prevented scrutiny of its operational and medical failures. The absence of these critical records effectively silenced key claims against Gulf Air, allowing it to benefit and protect its financial and legal interests during a period of heightened regulatory and commercial pressure.

374.    Gulf Air's calculated efforts to delay investigations and obscure operational failures ensured potential estate-related disputes and negligence claims did not gain traction during its DOT audit and commercial negotiations.

375.    Gulf Air's actions demonstrate a clear intent to manage public perception and regulatory scrutiny by obstructing legal avenues for the plaintiffs, ensuring that its financial and operational stability remained intact during critical U.S. government reviews.

R- 99

376.  During this period, Gulf Air prioritized safeguarding its corporate ambitions, including securing DOT certification and maintaining codeshare partnerships, over its legal obligations to the Captain's family.

377.  By denying the plaintiffs access to evidence essential for verifying negligence and asserting inheritance rights, Gulf Air not only obstructed justice but also inflicted intentional significant financial and emotional harm, further compounding the tragedy of Captain Alhindi's death.

378.  The suppression of evidence was done  to gain an unfair advantage, protect financial interests, and evade liability.

379.   Gulf Air's suppression undermines public safety and regulatory integrity, making their actions not only a private wrong but also a public hazard.

380.  **Plaintiff Feras Was Unaware and Would Have Acted Differently**

381.  Feras's reliance on Gulf Air was reasonable, justifiable, and foreseeable, given the airline's assurances, control over critical medical records, and longstanding trust as Captain Alhindi's employer.

382.  Gulf Air's misrepresentations and omissions directly obstructed Feras's ability to uncover the truth, pursue justice, and protect his family's rights. This reliance was a substantial factor in preventing timely action, resulting in material harm to Feras and his family.

383.  Samiha's reliance on Gulf Air was reasonable and foreseeable, given its role as her son's employer and its representations of handling all matters transparently.

384.  By misrepresenting facts, withholding critical records, and concealing

Case 1:24-cv-03434-ACR   Document 2   Filed 12/31/24   Page 70 of 123
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 101 of 971

65

insurance details, Gulf Air breached this trust, obstructing Samiha's ability to act promptly to assert her legal rights, pursue justice, and uncover the truth about her son's death. These actions materially harmed Samiha and exacerbated her loss.

385. Gulf Air's fraudulent concealment of critical medical records and misrepresentation of facts caused significant emotional distress to Samiha and Feras, leaving them unable to uncover the truth about Captain Alhindi's death and denying them closure.

386. The lack of transparency forced them to engage in prolonged legal battles and investigative efforts, resulting in substantial financial burdens. Samiha was further deprived of timely access to insurance benefits and her rightful claims as the Captain's legal heir.

387. Tala incurred significant travel, legal, and security costs to obtain records Gulf Air should have disclosed, facing personal risks in confronting alleged criminals during her efforts to seek justice. Feras and Samiha's inability to travel compounded their distress, as they depend on Tala to represent them in Bangladesh and hold the hospital and Gulf Air accountable.

388. Gulf Air's actions shielded hospital negligence and colluded to bury the case, preventing accountability and allowing further harm to occur, including the preventable death of another child.

389. This obstruction exacerbated the Plaintiffs' grief, financial losses, and emotional suffering, as Gulf Air prioritized its own interests over transparency, safety, and justice

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 71 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 102 of 971

66

390. **GULF AIR FRAUD (2)**

   **O. Fraudulent Misrepresentation of Death Summary and Hospital Records**

391. **False Representation in Death Summary**

392. Gulf Air, represented by its Co-Pilot Khalil Razzak, knowingly and intentionally delivered the falsified death summary from United Hospital in Dhaka.

393. The report, along with the Captain's belongings and phone, was handed directly to Nancy Alhendi, the sister of Amani Alhindi (the Captain's wife), at the airport.

394. Gulf Air's legal team and Chief of Staff Oun also attended the burial later that day, strategically excluding Feras and the Captain's mother, Samiha, from receiving any information or accessing the falsified report.

395. By ensuring the report was delivered through Khalil Razzak and bypassing Feras and Samiha, Gulf Air's representatives demonstrated intent to control the narrative and conceal the full truth from the rightful heirs.

396. The falsified death summary was delivered on December 16, 2022, at approximately 11:00 AM, an hour before Captain Alhindi's burial.

397. This timing ensured that Feras and Samiha had no opportunity to review or contest the contents of the report, as the burial was imminent and their focus was diverted by grief and ceremonial obligations.

398. Gulf Air intentionally delayed delivery of the report until shortly before the burial to limit the plaintiffs' ability to investigate or object to its inaccuracies.

399. The report was hand-delivered by Khalil Razzak to Nancy Alhendi at the

R- 102

67

Amman Airport in Jordan, far removed from the other plaintiffs.

400.   Gulf Air's team, including legal representatives and the Chief of Staff, later attended the burial, where they continued to withhold critical information and hospital documents from Feras and Samiha.

401.   Later, during the funeral gathering at the family home, Gulf Air's legal team attended with retirement money and award certificates for the Captain. Despite this opportunity to disclose the full report to all plaintiffs present, including Feras and Samiha, Gulf Air chose not to do so. Instead, Gulf Air selectively disclosed the report earlier to Nancy at the airport, bypassing other heirs and ensuring limited scrutiny of its contents before the burial.

402.   Gulf Air's delivery of the falsified death summary at the airport, specifically to Nancy Alhendi, Captain Alhindi's wife's sister, where Feras was absent, raises questions about intent and timing

403.   . The timing of the delivery—an hour before the burial—effectively ensured that Feras, a plaintiff and direct heir, had no opportunity to review the document or contest its accuracy.

404.   If Gulf Air intended transparency, they could have disclosed the death summary and hospital records to all heirs present at the funeral gathering. This event, attended by Gulf Air's legal team with retirement money and award certificates, provided a clear and practical opportunity to share the documents openly.

405.   Instead, Gulf Air Co Pilot selectively handed the falsified death summary to Nancy Alhendi, the wife's sister,  at the airport, where key plaintiffs such as Feras

R- 103

and Samiha were absent. This decision ensured limited scrutiny of the report and prevented immediate questions about its accuracy.

406.  The envelope containing the Captain's belongings and death summary was handed over by co-pilot Khalil Razzak, who was aware of discrepancies in the timeline and omissions but did not disclose this information to Nancy.

407.  The death summary was delivered without accompanying hospital documents that were critical for verifying the timeline of care, medical treatment provided, and procedural delays.

408.  The absence of these records concealed evidence of negligence and created a misleading impression of Gulf Air's and United Hospital's actions.

409.  The false report was part of Gulf Air's attempt to deflect responsibility for the Captain's condition and conceal medical negligence, while presenting a misleading narrative to protect their reputation and avoid liability during their DOT application process.

410.  The misrepresentation concealed the airline's lack of proper medical oversight and the negligence in care provided to the Captain at a hospital that's known for malpractice.

411.  Khalil Razzak, as the co-pilot, was in direct communication with Gulf Air's Incident Operations Center (IOC) throughout the timeline of events and delivered the death summary along with the Captain's belongings. Khalil did not falsify the death summary nor claim it was inaccurate.

412.  Statements obtained during legal proceedings confirm that Khalil was aware of discrepancies in the timeline and omissions in the report, including the

69

absence of Dr. Omar Farouk during critical treatment periods. Despite this knowledge, Khalil presented the death summary to the family without clarification, acting under Gulf Air's directives.

413.    Gulf Air presented a statement by Co Pilot Khalil to the court, Plaintiff Tala due to her conversations with the Co Pilot prior to the death alleges the Gulf Air falsified that statement, and prevented Khalil from coming to the court to testify.

414.    After conducting surveillance  on Plaintiff Tala  in Bangladesh and by leveraging information on her actions in the legal proceeding, Gulf Air manipulated the witness's appearances and tried to  allegedly bribe the court investigator.

415.    **The False Information in the Hospital Death Summary**

### A.  Arrival

416.    The death summary falsely implied that Captain Alhindi received prompt care upon arrival, stating an admission time inconsistent with actual events. Evidence shows that Captain Alhindi became incapacitated at Dhaka Airport at 3:50 AM and did not arrive at United Hospital until approximately 4:30 AM on December 14, 2022, as confirmed by Gulf Air's own submissions in court.

417.    This falsified timeline obscures the delays in transportation and admission that critically affected Captain Alhindi's chances of survival.

### B.  Misrepresentation of Doctor's Presence

418.    The death summary falsely listed "Professor Omar Farouk" as the attending physician during Captain Alhindi's treatment. However, court investigations confirmed that Dr. Farouk was not present. Instead, Captain Alhindi was treated

R- 105

by junior, underpaid doctors with limited qualifications, contradicting the false impression of expert medical care.

419.   By falsely naming an esteemed doctor, Gulf Air aimed to fabricate the appearance of high-quality medical oversight to absolve themselves and United Hospital of negligence.

### C. Delay in Critical Care:

420.   Despite the Captain's critical condition, there was a 90-minute gap after admission during which no significant treatment was administered. This delay occurred even though Captain Alhindi was presenting with a 99% arterial blockage requiring urgent intervention.

421.   This prolonged inaction significantly reduced the Captain's chances of survival and constituted a failure to meet the standard of emergency medical care.

### D. ECG Timeline Inconsistency

422.   The death summary reported that an ECG was conducted at 4:42 AM, shortly after admission. However, this timeline conflicts with the actual delay in care and admission timeline,

423.   This inconsistency undermines the credibility of the entire death summary and suggests a deliberate attempt to obscure gaps in critical care.

### E. Gap in Critical Care Between Admission and First Cardiac Arrest:

424.   Between 4;30 am,  6:30 AM (admission) and 7:30 AM (when Captain Alhindi suffered his third heart attack), the hospital provided no meaningful interventions,

R- 106

despite the Captain's critical condition.

425.  The lack of timely intervention during this critical period likely contributed to the severity of the Captain's condition and eventual death.

### F.  Delay in PCI Procedure:

426.  The PCI procedure, necessary to address the Captain's arterial blockage, was delayed until 10:30 AM, nearly six hours after his incapacitation and injury . Gulf Air's refusal to give consent for the procedure delayed its commencement by over an hour, exacerbating the harm.

427.  This delay, directly caused by Gulf Air's refusal to provide timely consent, demonstrates a failure to prioritize the Captain's urgent medical needs over procedural or administrative concerns.

### G.  Irregularities

428.  There was no name of a cardiologist or any cardiovascular tests.

429.  The Name of The Death Certificate signature is an OBGYN doctor

430.  There was no records of any medication given

431.  The hospital ran unnecessary blood tests for Vitamins piling up the invoice.

432.  **Knowledge of Falsity**

433.   **Actual Knowledge of the Timeline**:

434.  Gulf Air had precise knowledge of the incident timeline through direct and contemporaneous reporting by the Co-Pilot and crew. The flight cancellation process required accurate documentation of events, ensuring that Gulf Air's headquarters and key representatives were fully aware of the Captain's incapacitation at 3:50 AM and his arrival at United Hospital at 4:30 AM.

R- 107

72

435. Gulf Air's obligation to maintain accurate operational records, as part of its standard protocol, Gulf Air was required to document the precise incident timeline for flight cancellation and crew reporting, leaving no room for unawareness or error in the timeline.

436. Co-Pilot Khalil was in constant contact with the Incident Operations Center (IOC) at Gulf Air's Bahrain headquarters, as confirmed by his own statements. This direct line of communication ensured that Gulf Air's senior leadership was immediately informed of all developments, including the actual admission time and the absence of qualified medical personnel.

437. Court documents show Gulf Air agent signing the admission to the hospital documents and consents for treatment.

438. The headquarters, tasked with incident coordination and real-time updates, was fully aware of the facts on the ground through Khalil's continuous reporting, ensuring Gulf Air's leadership could not claim ignorance of key discrepancies in the death summary.

439. Gulf Air representatives, including Khalil and Issa, signed admission papers and were present at the hospital throughout Captain Alhindi's treatment. They knew that Dr. Omar Farouk did not arrive at the hospital until after 9:30 AM, contradicting the death summary's claim that he was the attending physician from the outset.

440. This fact is corroborated by hospital records and eyewitness accounts, which confirm that junior underpaid doctors, not Dr. Farouk, handled Captain Alhindi's care until hours after admission.

R- 108

73

441.    Gulf Air's actions, including signing inaccurate admission documents and approving the falsified death summary, is an intentional manipulation of facts to present a false narrative. This misrepresentation served to absolve Gulf Air and United Hospital of negligence and deflect scrutiny during Gulf Air's DOT application process.

442.    The misrepresentation aligns with Gulf Air's ongoing efforts to protect its operational reputation and maintain regulatory compliance, particularly during its DOT application and codeshare partnership reviews.

443.    Gulf Air's representatives exploited the chaotic and emotionally charged circumstances surrounding Captain Alhindi's death and burial. By delivering the falsified report shortly before the burial, Gulf Air intentionally limited the plaintiffs' ability to question or verify its contents

444.    The timing of only the report delivery, just an hour before the burial, evidences Gulf Air's calculated strategy to exploit the plaintiffs' grief and preclude immediate scrutiny.

445.    Gulf Air's actions reflect a broader pattern of deliberate concealment and misrepresentation. The same representatives withheld critical hospital documents and failed to disclose delays in treatment, gaps in critical care, and the lack of qualified medical oversight, further demonstrating knowledge of falsity.

446.    This pattern of withholding material information and fabricating timelines demonstrates Gulf Air's intent to mislead the plaintiffs and obstruct accountability.

447.    **Intend to Reduce Reliance**

448.    Feras and Samiha reasonably relied on Gulf Air's representations due to the

trust built over Captain Alhindi's 30 years of employment with the airline. Gulf Air, as the custodian of his medical records and a position of authority, was expected to act in the captain and plaintiffs best interests and provide accurate information.

449. The falsified death summary, which is named **Professor Dr. Omar Farouk** as the attending physician, created the false impression that expert medical care had been provided, misleading the plaintiffs into believing no further investigation was necessary.

450. Acting on Gulf Air's assurances, Feras and Samiha buried Captain Alhindi, believing the narrative that he had received the best possible care. This decision, influenced by Islamic burial practices discouraging autopsies, prevented an immediate examination into the quality of medical treatment.

451. The plaintiffs also filed a criminal case against Dr. Omar Farouk, relying on Gulf Air's falsified death summary that named him as the attending physician. For 11 months, they pursued this case until a court investigation revealed that Dr. Farouk was not at the hospital during Captain Alhindi's treatment and only arrived after 9:30 AM, well after critical delays in care had already occurred.

452. The inclusion of Dr. Omar Farouk's name as the attending physician in the death summary was materially significant. It concealed the fact that junior, under qualified doctors were responsible for critical decisions during Captain Alhindi's treatment. This misrepresentation directly shaped the plaintiffs' decisions to

    A. Trust Gulf Air's narrative.

    B. Forego immediate scrutiny of the records.

    C. File a criminal case against an individual who was not present during the

critical timeline of care

D. Unjust profit of Gulf Air codeshare approval while the Plaintiff spent money on investigation and legal proceedings.

450. Gulf Air deliberately timed the delivery of the falsified death summary an hour before the burial, ensuring the plaintiffs could not act promptly to verify its contents or request an autopsy.

451. By omitting additional hospital records and selectively disclosing incomplete information, Gulf Air reinforced the plaintiffs' reliance on the falsified narrative. The airline's actions exploited the plaintiffs' emotional distress and lack of access to independent information, ensuring their reliance was unavoidable under the circumstances.

452. The burial of Captain Alhindi based on the belief that no further investigation was necessary.

453. The misdirected filing of a criminal case against Dr. Omar Farouk, delaying accountability for those truly responsible for the substandard care.

454. Emotional distress and financial costs incurred over **11 months** to uncover the truth through court proceedings.

455. Delayed discovery of negligence in Captain Alhindi's treatment, which could have been addressed earlier had the plaintiffs known the truth

### e. Public False Statement

456. Gulf Air falsely claimed in public statements that Captain Alhindi received optimal care and that his death was unavoidable. The airline's pattern of making "maliciously false statements" to authorities and the public, consistent with prior

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 81 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 112 of 971

76

cases.

457.    Internal communications between Gulf Air's IOC and the co-pilot, dated December 14, 2022, in Co Pilot Statement documents delays in emergency response and acknowledged the negligence of Gulf Air providing the medical history in Emergency. These communications directly contradicted Gulf Air's public claims of optimal care, evidencing the airline's intent to suppress the truth.

458.    In more incidents, including Criminal Case cases and High court cases, Gulf Air submitted falsified documents and statements to authorities and regulators, demonstrating a systemic pattern of misrepresentation. This consistent behavior is Gulf Air's deliberate strategy to prioritize reputation over transparency.

459.    By delivering the falsified death summary an hour before the burial, Gulf Air exploited the plaintiffs' grief and cultural practices, obstructing their ability to scrutinize the report or request an autopsy. This timing was a calculated effort to prevent further investigation.

460.    Gulf Air's refusal to present co-pilot Khalil Abdulrazak, despite multiple court orders, demonstrates its deliberate efforts to suppress key evidence. This refusal delayed accountability and obstructed the plaintiffs' ability to uncover the truth.

461.    During its DOT application process, Gulf Air submitted incomplete safety reports, omitting incidents of crew medical negligence, including Captain Alhindi's case. These omissions were aimed at securing regulatory approval while concealing systemic failures

462.    Statements from the crew members contradicted Gulf Air's public narrative, revealing the airline's awareness of inadequate care and failures in emergency

77

response.

463.    Gulf Air's consistent behavior, both before and after Captain Alhindi's death, demonstrates a systematic pattern of making false statements to authorities and misrepresenting the truth without fear of consequences, as evidenced in this case and prior incidents.

464.    Had the plaintiffs known the truth—that Gulf Air prioritized its regulatory standing and commercial interests over transparency—they would have acted different

465.    Samiha's efforts to seek legal recourse and uncover the true circumstances of her son's death were obstructed by Gulf Air's misrepresentations.

### f.    Duty to preserve evidence

468.    Gulf Air was aware or should have been aware of its obligation to retain all relevant evidence once it became clear that litigation was likely. This obligation arises as soon as an incident occurs, especially in a matter involving potential legal claims like wrongful death. Gulf Air breached this duty and violated ICAO 13 by not preserving evidence

R- 113

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 83 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 114 of 971

78

469.  **FRAUD**

470.  **Gulf Air False Representation**

### A.  Media Representation – January 2023:

471.  On January 29, 2023, Gulf Air issued a public statement falsely claiming that Captain Alhindi collapsed at a hotel and was transferred to United Hospital under a pre-existing agreement between the hotel and the hospital. These statements were made to counter the plaintiff's accusations of negligence and divert attention away from the Captain's actual collapse at Dhaka Airport while on duty. Gulf Air strategically maintained this false narrative during its ongoing DOT application process to protect its regulatory standing.

### B.  False Media Representation – September 2023:

472.  Gulf Air falsely claimed full cooperation with the Bangladesh Police Bureau of Investigation (PBI) and compliance with court orders during a critical period of regulatory negotiations with the U.S. government. Evidence showed Gulf Air obstructed the investigation by withholding documents, failing to produce witnesses, and ignoring multiple court directives.

473.  These statements misled the public and authorities while protecting Gulf Air's commercial interests, including a bilateral aviation agreement signed in September 2023

474.  Gulf Air falsely presented themselves to the Public as the government knows but chooses to turn their head as displayed by the FAA legal team.

475.  The U.S. government is very aware of the negligence of Gulf Air in the death of the Captain, despite Gulf Air thinking they deceived them and concealed it, yet

the government chose to allow them to continue harassing the Plaintiffs and endanger the public.

476. **Alleged False Representations**

477. **DOT Applications**: Gulf Air is accused of making false representations in their Department of Transportation (DOT) applications and certificate for codeshare exemption applications from 2017 to 2024

478. **Law Enforcement Statements**: False statements made to the Police Bureau Investigation during April, May, June, July, and September 2023

479. **Civil Aviation Authority Of Bangladesh** : Gulf Air made false representations and submitted false statements and documents to the Civil Aviation Authority of Bangladesh (**CAAB**) in July 2023.

480. **Public Promotions**: The airline have made false promises to the public about non-stop flights to New York from 2019 to 2024

481. **Recruitment Advertisements**: Gulf Air false representation in recruitment ads targeting the U.S. public in April 2023.

482. **False Audit Documents** to IOSA, AA and CAAB

483. **False Replies** to the Family June 2023

R- 115

### E.  SECOND DEFENDANT AMERICAN AIRLINES ( AA)

484.  <u>**NEGLIGENCE & BREACH OF DUTY**</u>

485.  **Duty to Ensure Safety Compliance**:

486.  As part of its codeshare partnership with Gulf Air, American Airlines (AA) had a regulatory duty under FAA/DOT guidelines to ensure that Gulf Air complied with safety standards, including crew fitness and operational safety.

487.  This duty extended to auditing Gulf Air's compliance and acting on credible safety concerns to protect passengers, crew members, and public trust.

488.  AA continued to certify Gulf Air as compliant, misrepresenting its safety status and allowing the systemic deficiencies to persist

489.  **Notification of Safety Violations**:

490.  In April, Plaintiff Tala formally notified AA's CEO and legal team twice, providing credible evidence of Gulf Air's systemic safety violations. The notifications included specific instances of prior crew incapacitations, Gulf Air's failure to comply with FAA/DOT regulations, and the risk of continued unsafe operations. These communications were sufficient to trigger AA's duty to investigate or at least acknowledgement and report it.

491.  **Duty to the Captain (Alhindi):** AA had a duty to ensure Gulf Air's compliance with safety regulations, particularly regarding the fitness of its crew, including pilots, to prevent risks such as medical incapacitation during flight. American Airline had a duty to protect the crewmembers and the public

492.  **Duty to the Plaintiffs (including Plaintiff Tala):**

AA had a duty to the plaintiffs as part of the public and tax payers, including loyal

R- 116

customer Tala, who relied on AA's safety assurances in its codeshare agreements. AA was expected to ensure Gulf Air's compliance with safety standards, which would directly impact passenger safety and public trust.

493.    **Duty to the Public and Passengers,** As a U.S. carrier, AA had a duty to protect the public and passengers by ensuring they are partnering with a safe airline and Gulf Air's operational safety through regular audits and oversight, thereby upholding public trust in aviation safety.

494.    AA had a fiduciary, trust, loyalty, foreseeability and reliance duty to prioritize the safety of U.S. passengers over financial interests, ensuring that taxpayer resources were used effectively for regulatory oversight, not undermined by negligence.

495.    AA had Heightened duty to Gulf Air fatal accidents and constant failure of Bahrain in obtaining safety required level and (IASA) By FAA.

496.    AA breached its duty by failing to conduct meaningful audits of Gulf Air, as required by DOT and FAA regulations. This failure allowed Gulf Air's safety violations, including inadequate medical examinations and crew incapacitation risks, to go undetected.

497.    AA's failure to investigate Gulf Air's systemic safety violations undermined public confidence in FAA/DOT-regulated codeshare partnerships. By certifying Gulf Air as compliant without taking appropriate action, AA contributed to an ongoing risk to passengers, crew, and the integrity of aviation safety regulations.

498.    Despite the credible and actionable information provided, AA failed to acknowledge the notifications or take any meaningful action. AA did not initiate

R- 117

an audit, investigate Gulf Air's safety compliance, or report the issues to FAA/DOT.

499.   Had AA performed the required audits, these risks would have been identified, preventing Captain Alhindi's incapacitation. As a result, his medical condition would have been addressed, and his preventable death would have been avoided.

500.   Given Gulf Air's documented history of safety violations, including prior incidents related to crew incapacitation, AA should have foreseen the risks of not conducting thorough audits.

501.   The failure to detect violations and safety lapses was entirely foreseeable, as inadequate medical screening and unfit crew members posed a clear danger to both crew and passengers.

502.   It was foreseeable that continuing the codeshare relationship without proper oversight could lead to a tragic incident, such as Captain Alhindi's incapacitation

503.   As a direct result of AA's failure to audit Gulf Air's compliance with safety regulations, Captain Alhindi's incapacitation occurred, leading to his preventable death. The plaintiffs significant emotional and financial harm, including grief, loss of companionship, and litigation costs.

504.   AA's failure to act allowed Gulf Air to operate with unfit crew members, directly contributing to Captain Alhindi's preventable incapacitation and death. The risks were foreseeable given Gulf Air's history of violations.

505.  Plaintiff Tala, a loyal AA customer, endured emotional distress and loss of trust in aviation safety due to AA's failure to protect passengers and ensure Gulf Air's compliance with safety standards.

506.  AA's failure to act directly contributed to the harm experienced by Tala. If AA had fulfilled its duty by auditing or investigating Gulf Air, Tala would not have been forced to take independent further legal actions.

507.  AA's inaction allowed Gulf Air's systemic violations to remain unaddressed, perpetuating the risks and forcing Tala to escalate her efforts through press releases, conferences, and litigation.

508.  Had AA  acknowledged or investigated Tala's concerns it would have mitigated and eliminated the need for her advocacy efforts

509.  Plaintiff Tala notified both American Airlines (AA) and United Airlines of Gulf Air's systemic safety violations. While United Airlines responded promptly, contacting Tala within a day and initiating a complaint and safety alert, AA failed to acknowledge or act on the same credible concerns.

510.  United's proactive response demonstrates reasonable industry conduct, while AA's inaction reflects a clear deviation from expected practices. This negligence forced Tala to escalate her efforts through press releases and litigation, undermining her trust in AA's codeshare operations and commitment to safety compliance.

511.  AA failed to adhere to its own protocols for handling safety-related complaint

R- 119

Case 1:24-cv-03434-ACR   Document 2   Filed 12/31/24   Page 89 of 123
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 120 of 971

84

512.   AA's decision to continue its partnership with Gulf Air without taking any proactive action directly contradicts the expectations of a reasonably prudent airline and demonstrates a reckless disregard for safety.

513.   It was entirely foreseeable that AA's failure to act on credible safety concerns would harm individuals like Tala, who relied on AA's representations of safety in its codeshare partnerships.

514.   AA was already aware of Gulf Air's systemic safety deficiencies prior to her notifications, as part of their regulatory obligations to monitor codeshare partners. Gulf Air had a history of violations known to AA (such as reports from other codeshare audits, industry safety alerts, or prior passenger complaints)

515.   AA could have reasonably anticipated that ignoring the safety risks posed by Gulf Air would lead to escalated actions by those seeking accountability, including financial and emotional harm to whistleblowers like Tala.

516.   AA has formed a pattern lately of failing to adequately audit and adhere to regulations displayed by the latest Sanctions by DOT

517.   The Death of Captain Alhindi caused grief and trauma resulting from the preventable death of their son and brother. Separately from the Psychological harm caused by the two-year fight for justice amidst harassment and obstruction and traveling to unsafe country where Gulf Air could be another boeing

518.   Tala's profound anxiety and fear of flying stemmed from Gulf Air and American Airlines' failure to adhere to safety standards.

519.   AA has disappointed the American people, the public and the Plaintiffs.

R- 120

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 90 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 121 of 971

85

520. The plaintiffs' collective loss of confidence in aviation safety affected their ability to travel freely

521. **AMERICAN AIRLINE &FAA AUDIT CERTIFICATE of GULF AIR**

522. **False Representation of Audit Certificates submitted to the FAA**

523. **Duty to Act Honestly and Accurately**

524. Under DOT Order DOT-OST-2008-0195, FAA/DOT guidelines and DOT orders, AA was required to conduct audits and submit accurate certifications of Gulf Air's safety compliance. AA neglected this duty, failing to identify Gulf Air's repeated safety violations, such as crew incapacitation and medical screening failures.

525. American Airlines had to Audit Gulf Air upon commencing renewal of codeshare and submit truthful certificates to the FAA upon completing the audit.

526. American Airlines (AA), through its compliance team, legal counsel, and executive leadership and relevant staff at its headquarters in Fort Worth, Texas, was responsible for preparing, reviewing, and electronically submitting safety audit certifications for Gulf Air to the FAA in Washington, D.C.

527. These individuals acted with reckless disregard for the truth of the certifications, knowing or having reason to know that Gulf Air had failed to comply with FAA/DOT regulations and ICAO safety standards.

528. **2016 through 2023**: AA was obligated to conduct safety audits and submit truthful certifications as part of its codeshare agreement renewal and FAA/DOT oversight obligations.

R- 121

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 91 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 122 of 971

86

529. **April 19 and 22, 2023**:  On April 19 and 22, 2023, plaintiffs sent detailed court documents and correspondence to AA's U.S. offices, providing evidence of Gulf Air's systemic safety violations. These included unreported crew incapacitations, medical examination failures, and breaches of ICAO safety standards.

530. **April 28, 2023**: Despite being in possession of this credible evidence, AA electronically submitted the fraudulent certifications to the FAA in Washington, D.C., as part of the final approval process for Gulf Air's foreign air carrier permit.

531. **False Representations or Omissions**:

532. American Airlines (AA) explicitly certified that Gulf Air "Meets the Criteria" for FAA/DOT and ICAO safety compliance in audit submissions required for codeshare agreements and foreign air carrier permit renewals. This certification falsely affirmed that Gulf Air complied with ICAO Annexes 1 (Personnel Licensing), 6 (Operation of Aircraft), 13 (Aircraft Accident Investigation), and 19 (Safety Management).

533. **Failure to Conduct Proper Audits**:

AA's certification relied on evaluation criteria incorporating ICAO standards, which required detailed performance checks of Gulf Air's safety practices, including medical fitness of crew, accident reporting, and operational compliance. AA either failed to perform these required audits as mandated or conducted them negligently, overlooking systemic violations such as:

    **A.** Unreported crew incapacitations.

    **B.** Medical screening failures.

R- 122

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 92 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 123 of 971

87

   **C.** Gulf Air's inability to comply with ICAO safety and operational regulations.

   **D.** Gulf is Violating DOT order and the Public Interest

   **E.** Gulf Air is vomiting deceptive practice and Frauding the consumers mainly

   **F.** Failure to report and investigate and address

   **G.** False Advertising targeting DC and NY

534. AA knowingly or recklessly submitted these certifications electronically to the FAA in Washington, D.C., despite credible evidence, including plaintiffs' notifications, detailing Gulf Air's safety deficiencies. This misrepresentation misled the FAA into believing Gulf Air complied with all necessary safety standards.

535. AA failed to act on credible evidence received from plaintiffs on April 19 and 22, 2023, which outlined Gulf Air's systemic safety violations. Instead of conducting a thorough investigation or disclosing these deficiencies, AA submitted certifications that fraudulently affirmed Gulf Air's compliance.

536. The certification was a critical component of FAA's decision-making process for Gulf Air's foreign air carrier permit approval. By falsely claiming that Gulf Air met all safety standards, AA materially influenced the FAA's final approval on April 28, 2023, enabling Gulf Air to continue unsafe operations.

537. AA's falsification was not an error but a deliberate or reckless act. The certifications were submitted knowing or having reason to know that Gulf Air's operations were non-compliant with FAA/DOT regulations and ICAO standards. This act of falsification undermined the integrity of regulatory oversight and public safety.

R- 123

Case 1:24-cv-03434-ACR     Document 2     Filed 12/31/24     Page 93 of 123
USCA Case #25-7123     Document #2186844     Filed: 08/06/2026     Page 124 of 971

88

538.   These certificates would have been submitted after the audit, including 2016 up until 2024, obligating AA to audit upon renewal with Gulf Air or every five years or as required by FAA Guideline every two years

539.   **AA's Knowledge of Violations**:

AA's legal and compliance teams received this information prior to the DOT's final order on April 28, 2023, approving Gulf Air's foreign air carrier permit. Despite this, AA failed to act on or disclose the evidence of Gulf Air's safety deficiencies.

540.   **False Certifications Submitted**:

After receiving credible evidence of Gulf Air's violations, AA knowingly or recklessly submitted false certifications to the FAA in Washington, D.C., affirming Gulf Air's compliance with FAA/DOT safety standards, including ICAO requirements.

541.   AA's failure to disclose Gulf Air's safety violations breached DOT regulations, depriving the FAA of critical information to identify risks and enforce compliance, undermining the purpose of the audit certifications.

542.   **RELIANCE_Plaintiff Tala**

543.   Tala reasonably relied on AA's certifications and codeshare partnership, believing they endorsed Gulf Air's compliance with FAA/DOT and ICAO safety standards. As an AAdvantage member and frequent traveler, she trusted AA had vetted Gulf Air to ensure passenger safety.

544.   Tala's reliance was justified because she lacked access to Gulf Air's operational records or audit findings, which were within AA's superior knowledge.

R- 124

89

She trusted AA's reputation as a leading U.S. airline, assuming its codeshare partners adhered to strict safety protocols under FAA and DOT oversight.

545.    While other factors influenced her travel choices, AA's representation of Gulf Air as a vetted and safe codeshare partner significantly impacted her decision to fly with them. The codeshare arrangement created a reasonable belief that Gulf Air's operations met the same safety standards as AA's own.

546.    Tala's trust was based not only on regulatory certifications but also on AA's decision to partner with Gulf Air. She believed AA, as a trusted U.S. carrier, would ensure its partners met the highest safety standards, validating her choice to fly with Gulf Air.

547.    As a member of the public and an international traveler, Tala could not independently verify Gulf Air's safety. She reasonably relied on AA's superior knowledge and obligation to ensure its codeshare partners adhered to strict safety standards

548.    Tala suffered emotional distress and financial harm due to AA's continued concealment of Gulf Air's systemic deficiencies. Her reliance on AA's partnership and failure to act forced her to independently address Gulf Air's safety violations, incurring significant expenses.

549.    Tala reasonably expected AA, a reputable U.S. airline, to ethically investigate safety concerns about its codeshare partners. AA's failure to act, prioritizing financial interests over safety, compounded her harm.

R- 125

Case 1:24-cv-03434-ACR   Document 2   Filed 12/31/24   Page 95 of 123
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 126 of 971

90

550. Passengers, including Tala, reasonably relied on the FAA's regulatory framework and AA's certifications as assurances that Gulf Air met stringent safety standards required for international codeshare operations.

551. The public could not reasonably investigate complex safety regulations and relied on the FAA and trusted carriers like AA to ensure codeshare partners' compliance with safety standards.

552. Passengers and plaintiffs assumed FAA-vetted codeshare agreements, supported by AA's certifications, reflected rigorous audits and compliance with global safety standards.

553. The DOT's approval of Gulf Air's codeshare agreement, based on AA's certifications, implied Gulf Air's compliance with FAA/DOT safety standards, reinforcing public trust in its operations.

554. AA's certifications misled passengers and the public, creating a false sense of security that Gulf Air had been rigorously vetted and met safety expectations, directly influencing travel decisions.

555. AA's failure to disclose Gulf Air's deficiencies, such as unreported incapacitations and medical examination failures, denied passengers and plaintiffs the opportunity to make informed travel decisions, perpetuating risks and harm.

556. The public and plaintiffs relied on AA's superior knowledge of Gulf Air's operations and safety compliance. Certifications submitted under FAA oversight implied trustworthiness and transparency, reinforcing reliance on AA's assurances.

R- 126

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 96 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 127 of 971

91

557.   This reliance was justified because AA, as a major U.S. carrier, had a heightened responsibility to ensure codeshare partners complied with safety regulations. Plaintiffs had no reason to doubt that AA had audited Gulf Air and disclosed any deficiencies.

558.   Plaintiffs suffered harm due to misplaced reliance. If AA had disclosed Gulf Air's violations, FAA intervention or corrective actions could have mitigated risks, preventing harm and enabling safer travel choices.

559.   By failing to disclose Gulf Air's deficiencies, AA perpetuated unsafe practices and undermined public trust in regulatory frameworks and codeshare agreements, directly contributing to Tala's harm.

560.   Certifications submitted by AA to regulators acted as implicit safety assurances relied upon by plaintiffs and employees. Plaintiffs lacked access to Gulf Air's operational details and reasonably trusted AA's superior knowledge and regulatory obligations.

561.   FAA approvals, influenced by certifications, led passengers and crew to assume safety compliance despite the certifications not being publicly disseminated.

562.   If AA had disclosed Gulf Air's violations to the FAA, corrective actions could have reduced plaintiffs' exposure to unsafe conditions. Concealment of violations was a proximate cause of harm, as transparency in safety audits is essential to FAA intervention and risk mitigation.

R- 127

Case 1:24-cv-03434-ACR     Document 2     Filed 12/31/24     Page 97 of 123
USCA Case #25-7123     Document #2186844     Filed: 08/06/2026     Page 128 of 971

92

**563.     Influence of AA's Certifications on FAA Approvals**:

564.     AA's submission of certifications affirming Gulf Air's compliance with FAA/DOT and ICAO standards materially influenced the FAA's approval of Gulf Air's codeshare agreement. This approval shielded Gulf Air's deficiencies from scrutiny, allowing it to operate under the illusion of safety compliance and creating systemic risks.

565.     By failing to verify and disclose Gulf Air's safety violations, AA deprived the FAA and DOT of critical information necessary for regulatory oversight. This omission enabled Gulf Air's unsafe practices, including inadequate medical screenings and repeated incapacitations.

566.     AA's false certifications directly contributed to Gulf Air operating unchecked, leading to repeated safety violations, including the Captain's incapacitation and death. These certifications acted as a regulatory shield, perpetuating unsafe conditions that foreseeably harmed passengers and crew.

567.     The absence of corrective actions due to AA's failure to disclose Gulf Air's deficiencies left unsafe conditions unaddressed, creating a foreseeable chain of events that increased risks for passengers, crew, and the public.

568.     Had AA fulfilled its duty to verify and disclose Gulf Air's noncompliance, the FAA could have imposed corrective measures to mitigate risks. AA's omissions directly caused plaintiffs' financial and emotional harm, including legal expenses, travel costs, and prolonged distress.

569.     By ignoring warnings about Gulf Air's safety violations, AA exacerbated harm to plaintiffs and the public. The approval of Gulf Air's codeshare agreement under

R- 128

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 98 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 129 of 971

93

false pretenses exposed passengers and crew to preventable risks, making AA's omissions a substantial factor in the harm suffered.

570.    **Tangible Costs to Plaintiffs**:

AA's breach of duty caused plaintiffs significant financial harm, including legal fees and international travel expenses, to address Gulf Air's systemic safety violations directly linked to AA's failure to fulfill its obligations.

571.    By falsely portraying Gulf Air as compliant, AA enabled its unsafe operations to persist, leading to repeated safety violations, including incapacitations and the Captain's death, which directly harmed the plaintiffs.

572.    AA's certifications carried regulatory weight, shielding Gulf Air from scrutiny and perpetuating unsafe conditions. This misrepresentation foreseeably allowed systemic risks to escalate, directly impacting the plaintiffs.

573.    AA's failure to disclose Gulf Air's violations perpetuated systemic risks and misled regulators. Shielding Gulf Air from scrutiny foreseeably allowed safety failures, including incapacitations, to persist and escalate.

574.    AA's omissions undermined public trust in codeshare agreements, creating a false sense of safety that misled passengers, crew, and regulators into assuming compliance with safety standards.

575.    AA's continuous omission of Gulf Air's safety violations foreseeably enabled Gulf Air to expand unsafe practices, resulting in preventable harm to passengers, crew, and plaintiffs.

R- 129

576.    By failing to report Gulf Air's deficiencies, AA perpetuated safety risks, foreseeably exposing passengers, crew, and the public to harm, including incapacitations and fatalities.

577.    Plaintiff Tala endured extended travel to Bangladesh and multiple trips due to AA's inaction, filing legal requests to force investigation into Gulf Air's violations.

578.    Relying on DOT-vetted codeshare agreements, plaintiffs took longer and costlier flight routes to avoid the risks associated with flying on an inadequately vetted airline

R- 130

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 100 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 131 of 971

95

**579.**  **Gulf Air Violation of Public Interest**

**580.**  Gulf Air breached public interest

**A.  49 U.S.C. § 40101(a)(1) "Assigning and maintaining safety as the highest priority in air commerce."**

**B.  49 U.S.C. § 40101(a)(7)**"Providing the highest level of safety in air transportation that is consistent with the safe operation of the system.

**581.**  Gulf Air violated 49 U.S.C. § 40101(a)(1) and § 40101(a)(7) by failing to prioritize and maintain safety as the highest priority in air commerce.

**582.**  Gulf Air failed to comply with DOT Orders (2008, 2019, 2022), neglecting to identify, mitigate, and report safety hazards as required by ICAO Annex 6 and 19.

**583.**  Gulf Air did not implement an effective Safety Management System (SMS) or Fatigue Risk Management System (FRMS), leading to recurring safety threats.

**584.**  Gulf Air allowed unfit crew members to operate flights, neglecting medical fitness evaluations and failing to address medical emergencies involving crew.

**585.**  Gulf Air's failure to implement corrective measures after prior safety incidents directly contributed to Captain Alhindi's incapacitation and death.

**586.**  Gulf Air submitted fraudulent certifications to the DOT, misrepresenting compliance with FAA and ICAO standards, thereby obstructing regulatory oversight.

**587.**  Gulf Air misled codeshare partners, including American Airlines, about its safety compliance, undermining the FAA's Code-Share Safety Program.

**588.**  Gulf Air concealed incidents of crew incapacitation, obstructing the FAA's ability to enforce safety priorities and preventing necessary corrective actions.

R- 131

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 101 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 132 of 971

96

589.    Gulf Air's systemic failures and disregard for ICAO Annex 6 and 19 fostered unsafe conditions, foreseeably compromising the safety of passengers and crew.

590.    Gulf Air's actions undermined FAA and DOT oversight, eroding trust in the collaborative aviation safety framework and compromising public safety.

591.    Gulf Air's violations of DOT Orders (2008, 2019, 2022) and ICAO Annexes 6 and 19 directly compromised public safety by perpetuating systemic deficiencies in safety management and risk mitigation. The airline's failure to implement effective Safety Management Systems (SMS) and Fatigue Risk Management Systems (FRMS) foreseeably led to unsafe operating conditions.

592.    These violations not only exposed passengers and crew to preventable risks but also resulted in Captain Alhindi's incapacitation and death, directly linking Gulf Air's systemic negligence to harm suffered by him and the plaintiffs.

593.    Gulf Air's actions undermined the statutory mandate under 49 U.S.C. § 40101(a)(1) and § 40101(a)(7) to prioritize and maintain safety in air commerce. By concealing incidents of crew incapacitation and submitting fraudulent certifications to regulators, Gulf Air obstructed oversight mechanisms designed to protect public safety.

594.    These failures extended the harm beyond the immediate victims, jeopardizing the safety of passengers, crew, and the broader public who rely on transparent and accountable aviation practices.

595.    The airline's non-compliance with DOT mandates and ICAO standards created a pattern of foreseeable harm, demonstrating a disregard for the safety of those entrusted to its care. The resulting harm to the plaintiffs and the public

R- 132

reflects Gulf Air's willful negligence in fulfilling its obligations, eroding trust in aviation safety systems and contributing to the Captain's preventable death.

596.    Gulf Air's repeated violations of 49 U.S.C. § 40101(a)(1) and § 40101(a)(7), through its non-compliance with DOT Orders (2008, 2019, 2022) and ICAO Annexes 6 and 19, breached its statutory duty to assign and maintain safety as the highest priority in air commerce.

597.    These violations led to a pattern of preventable safety hazards, including repeated crew incapacitations, which foreseeably culminated in Captain Alhindi's incapacitation and death, demonstrating Gulf Air's systemic disregard for its legal obligations and public safety.

598.    Gulf Air's repeated violations of 49 U.S.C. § 40101(a)(1) and § 40101(a)(7), through its non-compliance with DOT Orders (2008, 2019, 2022) and ICAO Annexes 6 and 19, breached its statutory duty to assign and maintain safety as the highest priority in air commerce.

599.    These violations led to a pattern of preventable safety hazards, including repeated crew incapacitations, which foreseeably culminated in Captain Alhindi's incapacitation and death, demonstrating Gulf Air's systemic disregard for its legal obligations and public safety.

600.    **Statute: 14 CFR § 212.10 – Statement of Authorization**

601.    Under 14 CFR § 212.10, foreign carriers entering long-term wet lease or codeshare agreements with U.S. carriers must submit a Statement of Authorization to the DOT. This includes:

R- 133

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 103 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 134 of 971

98

A.  Providing accurate documentation of compliance with FAA safety standards.

B.  Ensuring reciprocity and adherence to safety standards.

C.  Serving lease applications to the FAA Director of Flight Standards for safety evaluation.

**602.  Violations**

603.  Gulf Air provided incomplete and inaccurate safety documentation in its § 212.10 applications. By misrepresenting compliance with FAA and ICAO Annexes 6 and 19, Gulf Air obstructed regulatory oversight and compromised its legal obligations.

604.  Gulf Air violated § 212.10(c) by failing to uphold reciprocal safety standards, creating an imbalance between Gulf Air and U.S. carriers. This undermined the principle of fair and equal compliance.

605.  Gulf Air submitted false certifications of safety compliance to the DOT, fraudulently concealing systemic safety deficiencies and bypassing FAA scrutiny. These actions directly violated § 212.10 and eroded regulatory trust.

606.  Gulf Air's violations of § 212.10, including failure to provide accurate safety documentation and bypassing FAA oversight, allowed systemic deficiencies in crew fitness and operational practices to persist unchecked.

607.   This non-compliance enabled Gulf Air to avoid critical safety evaluations that would have identified unfit crew members and operational risks. These deficiencies foreseeably endangered Captain Alhindi, culminating in his incapacitation and preventable death during active duty.

R- 134

608.    **Harm to Plaintiffs**

Gulf Air's systemic negligence under § 212.10 foreseeably deprived the plaintiffs of safety interventions that could have prevented Captain Alhindi's harm. As a result, Plaintiff Samiha suffered profound emotional distress, financial loss, and physical decline.

609.    The Captain's unfitness, stemming from Gulf Air's neglect, deprived his mother of her primary provider and imposed significant financial burdens, including travel and medical expenses shared with his siblings.

610.    **Broader Public Safety Impact**

Gulf Air's submission of false certifications under § 212.10 bypassed FAA oversight critical to ensuring safe wet lease operations. This failure perpetuated systemic safety risks that endangered not only Captain Alhindi but also passengers and crew relying on Gulf Air's operations.

611.    The public, which reasonably depends on FAA and DOT enforcement of safety standards, was foreseeably exposed to preventable risks due to Gulf Air's non-compliance.

R- 135

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 105 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 136 of 971

100

**612.**  **American Airline Violation of Public Safety**

**613.**  American Airlines (AA) has a duty to uphold public safety in aviation, as outlined in 49 U.S.C. § 40101, which emphasizes assigning and maintaining safety as the highest priority in air commerce.

**614.**  By submitting false certifications regarding Gulf Air's compliance with safety standards, AA breached this duty, undermining regulatory oversight and endangering passengers, crew, and the public.

**615.**  This failure to maintain safety vigilance, as expected by the traveling public, constitutes a violation of public safety and the public interest in aviation.

**616.**  The specific provisions of 49 U.S.C. § 40101 that AA violated include:

  A.  **Section (a)(1)**: Assigning and maintaining safety as the highest priority in air commerce.

  B.  **Section (a)(3)**: Preventing deterioration in established safety procedures, recognizing the clear intent, encouragement, and dedication of Congress to further the highest degree of safety in air transportation and air commerce, and to maintain the safety vigilance that has evolved in air transportation and air commerce and has come to be expected by the traveling and shipping public.

**617.**  By failing to disclose Gulf Air's safety violations and submitting false certifications, AA allowed unsafe practices to continue, directly contradicting these statutory mandates and compromising public safety in aviation.

**618.**  American Airlines, as a recipient of codeshare approvals and other regulatory privileges, had an obligation to ensure compliance with FAA/DOT guidelines. By

R- 136

101

failing to audit Gulf Air adequately and allowing systemic deficiencies to persist, AA caused unnecessary strain on publicly funded regulatory bodies (e.g., FAA investigations, safety reviews) and legal mechanisms designed to uphold aviation safety. This negligence wasted taxpayer resources that could have been avoided through proper oversight.

619.    American Airlines unjustly benefited from its codeshare agreements and regulatory approvals while neglecting its duties under FAA/DOT guidelines. Its failure to act responsibly created foreseeable risks, necessitating increased regulatory intervention funded by taxpayer money. This unjust enrichment comes at the expense of the public and undermines trust in the aviation regulatory system.

R- 137

Case 1:24-cv-03434-ACR   Document 2   Filed 12/31/24   Page 107 of 123
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 138 of 971

102

**ATTACHMENT 4**

**620.   Claim 1 : Wrongful Death**

**621.   Plaintiff** : Samiha Ayyash

**622.   Defendant**:  Gulf Air B.S.C

**623.**   Plaintiff Samiha is the mother of Captain Mohanna, legal beneficiary and direct dependent on her first born son .

**624.**   Gulf Air's violations including of **49 U.S.C. § 40101(a)(1)**, **§ 40101(a)(7)**, and **14 CFR § 212.10**, combined with systemic negligence, breach of duties and fraudulent acts, directly led to Captain Mohannad Alhindi's preventable incapacitation and death. Gulf Air failed to detect safety risks which led to incapacitation and death of Captain Mohannad due to the build up of the 99% Blockage

**625.**   Gulf Air Negligence led to the death of Captain Mohannad and harm to his mother

**626.**   As a result, Plaintiff Samiha, his mother, suffered profound emotional and physical harm, including loss of mobility, dependence on medical care, and the loss of her son's $6,000 annual financial support. Gulf Air's negligence caused significant expenses for the family and irreparable harm, establishing its liability in this wrongful death claim.

R- 138

**ATTACHMENT 4**

627.　**Claim 2 : Negligence**

628.　**Plaintiff** : Samiha Ayyash , Feras Alhindi

629.　**Defendant**:　Gulf Air B.S.C

630.　Failed to Detect Safety threats and risks

631.　Gulf Air had a duty to ensure the safety, health, and well-being of its crew, passengers, and the public by conducting thorough medical examinations, implementing robust safety systems (SMS, FMS, FMRS, and SRMS), and complying with regulatory standards, including DOT orders, FAA/DOT Codeshare Safety Guidelines, and ICAO Annexes 1, 6, 13, and 19. This duty extended to providing adequate medical care during emergencies, acting transparently, and supporting affected families responsibly.

632.　Gulf Air breached this duty by neglecting safety threats, failing to conduct proper medical examinations, and disregarding known risks, including a 99% artery blockage in Captain Mohannad Alhindi. It violated regulatory obligations, withheld critical medical history, mishandled emergency care in Bangladesh, and obstructed justice.

633.　But for Gulf Air's systemic negligence, the Captain's incapacitation and death would have been prevented with timely intervention and adequate care and the plaintiffs wouldn't  been harmed by the actions during his medical emergency and after the death

634.　These failures and violations and fraudulent acts  foreseeably caused harm to the Captain and irreparable damage to his family.

R- 139

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 109 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 140 of 971

104

**ATTACHMENT 4**

635.    **Claim 3 : Negligence**

636.    **All Plaintiffs VS American Airline**

637.    American Airlines, as a codeshare partner of Gulf Air, had a duty to audit, verify, and submit accurate safety certifications, ensuring Gulf Air adhered to safety standards, identified systemic risks, and reported deficiencies to prevent fraudulent certifications that compromised safety and public trust.

638.    American Airlines breached this duty by failing to audit Gulf Air's certifications, allowing fraudulent information to reach the FAA, and neglecting to detect and report systemic safety deficiencies, including unfit crew operations and mishandled medical emergencies and tGulf Air failure in adhering to DOT and ICAO regulations and rules

639.    These failures enabled Gulf Air's negligence to persist, directly contributing to Captain Mohannad Alhindi's incapacitation and death. American Airlines' breach foreseeably caused harm to Plaintiffs Samiha, Feras, and Tala, resulting in emotional trauma, financial dependence, and significant financial and emotional strain.

R- 140

**ATTACHMENT 4**

640. **Claim 4 : Negligence Per SE**

641. **All Plaintiffs VS Gulf Air B.S.C**

642. The airline's egregious failure to adhere to established aviation safety regulations. This negligence directly contributed to the tragic incapacitation and subsequent death of Captain Mohannad Alhindi, a seasoned pilot whose health risks were known yet ignored by Gulf Air. The airline's systemic lapses in health monitoring and failure to implement necessary safety protocols not only jeopardized the Captain's well-being but also endangered the lives of passengers and crew violating DOT orders, Open Sky agreements and the Public Interest.

   A. **Violations of DOT Orders on Codeshares (2008, 2019, 2022)**

   B. **Violations of ICAO Annexes 6 and 19**

   C. **Violations of Public Safety under 49 U.S.C. § 40101(a)(1) and § 40101(a)(7)**

   D. **Violations of 14 CFR § 212.10**

   E. **Violations of 14 CFR § 129:** Gulf Air concealed safety violations, exposing crew and passengers to preventable risks.

643. But for Gulf Air's systemic negligence and regulatory violations, the Captain's death would have been prevented These failures foreseeably caused severe harm to Plaintiffs, including loss of the Captain, financial strain, emotional trauma, and physical decline

R- 141

**ATTACHMENT 4**

644.  **Claim 5 : Negligence Per SE**

645.  **All Plaintiffs VS American Airlines INC ( AA )**

646.  American Airlines violated aviation safety statutes and regulations, breaching its statutory duty and directly causing harm to Captain Mohannad Alhindi and Plaintiffs Samiha, Feras, and Tala.

647.  Under the 2008 DOT Order on Codeshares, American Airlines failed to ensure Gulf Air's compliance with safety obligations by neglecting audits, certifications verification, and detection of systemic risks, undermining regulatory oversight and endangering the public.

648.  FAA Codeshare Safety Guidelines were breached when American Airlines failed to implement audits to identify and address Gulf Air's safety deficiencies,

649.  By neglecting ICAO Annex 19, American Airlines failed to ensure Gulf Air established an effective Safety Management System (SMS), preventing the detection and mitigation of foreseeable risks like crew incapacitation.

650.  American Airlines violated 49 U.S.C. § 40101(a)(1) and § 40101(a)(7) by failing to uphold oversight duties and act on known risks, breaching statutes designed to ensure safety, accountability, and public trust.

651.  American Airlines' failure to audit Gulf Air and detect risks allowed Gulf Air's negligence to persist. These omissions directly enabled unsafe operations, leading to Captain Alhindi's preventable death and harm to Plaintiffs.

R- 142

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 112 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 143 of 971

107

**ATTACHMENT 4**

**652.    Claim 6 : Breach Of Fiduciary Duty**

**653.    Plaintiffs Feras, Samiha VS Gulf Air**

654.    Gulf Air owed Fiduciary duty to Feras and Samiha

655.    Gulf Air owed fiduciary duties including duty of care, loyalty, disclosure, and honesty to Captain Mohannad Alhindi and Plaintiff Samiha. Gulf Air breached these duties by withholding critical medical information, failing to secure specialist care, concealing records, and neglecting evidence preservation.

656.    It misrepresented facts to regulators, published false narratives, and interfered with Samiha's inheritance while engaging in harassing conduct. These actions directly contributed to the Captain's preventable death and caused irreparable harm to Samiha.

657.    As a result,  Captain died, Samiha suffered emotional trauma, financial loss, and physical decline requiring medical care and a caregiver. Feras suffered emotional distress and financial strains covering his brother's share

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 113 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 144 of 971

108

**ATTACHMENT 4**

**Claim 7 : Breach Of Duty Of Superior Knowledge**

**658.    Plaintiff Samiha, Feras VS Defendant Gulf Air**

659.    Gulf Air, as an experienced aviation operator, owed a duty of superior knowledge to its crew, passengers, and Plaintiffs. Gulf Air breached this duty It misrepresented the Captain's condition, withheld critical information, and failed to preserve evidence such as medical records and CCTV footage, obstructing accountability and informed decision-making by the Plaintiffs.

660.    Gulf Air held information from the hospital, and after by seizing hospital records and by interfering in Samiha's inheritance and claims

661.    As a direct result of these breaches, Samiha suffered emotional trauma, financial loss, and physical decline requiring care, while Feras experienced financial strain and emotional distress. Gulf Air's failure to fulfill its duty of superior knowledge caused preventable harm to the Captain and the Plaintiffs

R- 144

Case 1:24-cv-03434-ACR   Document 2   Filed 12/31/24   Page 114 of 123
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 145 of 971

109

**ATTACHMENT 4**

662. **Claim 5  Fraudulent Concealment**

663. **All Plaintiffs VS Gulf Air**

664. The Defendant, Gulf Air, concealed or suppressed critical material facts regarding Captain Mohannad Alhindi's medical condition, the hospital's deficiencies, the actual circumstances of his death, hospital records and medical records .

665. Gulf Air was under a duty to disclose these facts to the Plaintiffs, including Samiha and Feras

666. Gulf Air intentionally concealed or suppressed these facts with the intent to defraud the Plaintiffs. This concealment was designed to induce the Plaintiffs to consent to treatment under false pretenses and to prevent them from seeking alternative care or holding Gulf Air accountable for its failures.

667. The Plaintiffs were unaware of the concealed facts and reasonably relied on Gulf Air's representations. Had they been aware of the Captain's true condition, the hospital's deficiencies, and the delays in treatment, they would have acted differently, including seeking immediate specialist care or intervening to prevent further harm.

668. As a direct result of Gulf Air's fraudulent concealment, the Captain died and the Plaintiffs sustained significant damages.

R- 145

**ATTACHMENT 4**

669.   **Claim 5  False Representation of Death Summary**

670.   **All Plaintiffs VS Gulf Air**

671.   Gulf Air deliberately misrepresented key facts about the timeline of events, the presence of physicians, and the quality of care during the Captain's medical emergency. Gulf Air's presented death summary was designed to mislead the family and conceal negligence. Gulf Air exploited the Plaintiffs' emotional vulnerability to protect its corporate reputation and evade accountability.

672.   Gulf Air falsely claimed that Captain Mohannad Alhindi received adequate care, including competent hospital staff and specialists, despite knowing this was untrue.

673.   Gulf Air knowingly or recklessly made false statements, intentionally distorting the facts to evade accountability for its failures during the medical emergency.

674.   Gulf Air intended for Plaintiffs to rely on its misrepresentations, deterring them from questioning care quality, seeking alternative treatments, or pursuing justice for the Captain's death.

675.   Unaware of the true circumstances, Plaintiffs reasonably relied on Gulf Air's false claims, preventing them from pursuing timely actions or alternative care that could have mitigated harm.

676.   Plaintiffs suffered emotional  distress and trauma, loss of financial support, physical decline, financial strain, and significant costs uncovering the truth and seeking accountability.

R- 146

111

**ATTACHMENT 4**

677.  **Claim 6 CONSTRUCTIVE FRAUD**

678.  **All Plaintiffs VS AMERICAN AIRLINES INC**

679.  American Airlines, as a codeshare partner of Gulf Air, had a duty of diligence and good faith to ensure passenger, crew, and public safety by auditing Gulf Air's safety compliance and certifying accurate safety standards. It breached this duty by failing to audit Gulf Air's practices and certifying compliance with FAA/DOT standards despite evidence of systemic deficiencies.

680.  Even without intent to deceive, American Airlines acted with reckless disregard by negligently approving safety certifications without proper audits, creating a false impression of safety that endangered passengers, crew, and the public.

681.  The public, including Plaintiffs, reasonably relied on American Airlines' certifications, assuming Gulf Air met safety standards. This foreseeable reliance, based on the codeshare partnership and regulatory assurances, directly contributed to unsafe operations, including Captain Alhindi's incapacitation and death.

682.  As a result of American Airlines' constructive fraud, Captain Alhindi's incapacitation led to his death, causing Plaintiffs severe emotional and financial harm.

R- 147

**ATTACHMENT 4**

683.  **Claim 7 : IIED**

684.  **Plaintiff Samiha VS Gulf Air**

685.  Gulf Air engaged in extreme and outrageous conduct, intentionally causing severe emotional harm to Samiha. This included concealing critical facts about Captain Mohannad Alhindi's condition, the hospital's deficiencies, and the circumstances of his death. Gulf Air misrepresented events, provided false assurances, and withheld medical records, obstructing Samiha's ability to understand her son's death and pursue justice.

686.  Gulf Air interfered with Samiha's inheritance rights, harassed her daughter, and exacerbated her grief by undermining her family's financial stability, including her grandchildren's loss of income. Its actions also endangered Tala's life by creating a hostile and unsafe environment, intensifying Samiha's emotional suffering.

687.  Gulf Air acted with intent or reckless disregard, fully aware that its concealment, misrepresentation, and harassment would cause severe harm to Samiha. This deliberate effort to evade accountability directly caused her profound emotional trauma, grief, and physical decline.

688.  As a direct result, Samiha is entitled for her emotional trauma, physical health decline, and financial losses caused by Gulf Air's extreme and reckless conduct.

R- 148

Case 1:24-cv-03434-ACR   Document 2   Filed 12/31/24   Page 118 of 123
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 149 of 971

113

**ATTACHMENT 4**

689.   **Claim 8 NIED**

690.   **Plaintiff Feras VS GULF AIR**

691.   Gulf Air's negligent concealment of material facts about Captain Mohannad Alhindi's medical condition, hospital deficiencies, and circumstances of death caused Feras severe emotional distress. By misrepresenting care adequacy, withholding medical records, and obstructing justice, Gulf Air deprived Feras of the opportunity to make informed decisions and support his brother during the critical condition.

692.   These actions foreseeably harmed Feras, as Gulf Air owed a duty of care to accurately and transparently communicate critical information. Its failure to uphold this duty was the proximate cause of Feras' emotional suffering, compounded by his position in the "Zone of Danger" when consent was sought under false pretenses.

693.   As a result, Feras endured financial strain from investigative and legal efforts, emotional anguish from his brother's preventable death, and the burden of uncovering Gulf Air's failures. Gulf Air's negligence directly caused these harms, entitling Feras to compensation for his distress and damages.

R- 149

Case 1:24-cv-03434-ACR     Document 2     Filed 12/31/24     Page 119 of 123
USCA Case #25-7123     Document #2186844     Filed: 08/06/2026     Page 150 of 971

114

**ATTACHMENT 5**

## PRAYER OF RELIEF

Prayer for Relief Against Gulf Air B.S.C.(C)

Plaintiffs respectfully request that the Court grant the following relief:

1. As pro se plaintiffs without legal expertise or resources, we are currently unable to fully substantiate claims of fraud against Gulf Air and American Airlines, particularly in demonstrating reliance by family members or the public. We respectfully request the court to preserve our right to amend and add these claims during the discovery process

2. Plaintiffs respectfully ask the court to consider whether our reply to Gulf Air's motion to dismiss provides sufficient grounds for false representation to the media, public, and government. If so, we petition the court to order an investigation by the appropriate authorities into the allegedly false statements made by Gulf Air and American Airlines in their public communications and Department of Transportation submissions

3. We understand that the duty to preserve evidence arises when litigation is reasonably anticipated. Therefore, we request that all parties be instructed to implement a litigation hold on all potentially relevant information to ensure its preservation for this case

4. **Costs of Action:** Plaintiffs request reimbursement for the costs of this action and any other relief the Court deems appropriate.

R- 150

5. Plaintiffs request discovery in order to pursue additional claims, including potential fraud in documents submitted to federal agencies and perjury related to Gulf Air's statements.

## **Damages**

6. **Compensatory Damages:**

A. **Feras:** No Less than $75,000

B. **Samiha** No Less than $75,000

C. **Tala :** No less than $75,000

D. **Emotional Damages:** To be determined by the **Jury** against all defendants.

7. **For Wrongful Death ( Samiha Vs Gulf Air )**

8. **Economic damages**: The amount that can be proven including partial of the ( $500 average monthly was paid by Captain Mohannad to his mother )  and/ or decided by jury and court in the direct Loss of financial support from Captain Alhindi

9. **Non-economic damages**: The amount that can be proven and/ or decided by jury and court for the Loss of Samiha's first born, love, comfort, guidance, support and care

R- 151

**10. Punitive Damages**

Plaintiffs respectfully request the Court to award punitive damages in an amount deemed appropriate by the jury and court, including:

1. **Punitive Damages for the Plaintiffs**: An amount deemed appropriate by the jury and court to punish Gulf Air's egregious conduct and deter future wrongdoing.

2. Stopping Gulf Air from flying to the USA non Stop until their violations and safety risks are addressed

3. Ban Gulf Air from Codeshare partnership with U.S. Carriers until they address their safety violations no less than 3 years

4. **Sanctions** : Plaintiffs respectfully request the Court to impose Sanctions on both Defendants as below or in an amount deemed appropriate by the jury and court, including:

   A. **DOT & FAA Family Emergency Programs**: No less than $50,000,000 for the improvement of programs addressing family emergencies during aviation incidents.

   B. **Public Safety in the District of Columbia**: No less than $135,000,000 to be directed toward DOT public safety improvements due to Gulf Air's violations, fraud, and negligence.

   C. **FAA Pilots Medical Programs**: No less than $50,000 for the enhancement of medical programs ensuring the fitness of pilots.

R- 152

Case 1:24-cv-03434-ACR    Document 2    Filed 12/31/24    Page 122 of 123
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 153 of 971

117

D. **High-Risk Pilot Assessment Program**: No less than $50,000,000 for the development of a high-risk pilot assessment program, named in honor of Captain Mohannad Alhindi and other crew members who died on duty.

E. **DOT & FAA Foreign Air Vetting and Auditing**: No less than $75,000,000 for the enhancement of foreign air carrier vetting and auditing programs

F. **DOT & FAA Codeshare Programs**: No less than $120,000,000 to the FAA and DOT for the improvement of codeshare oversight and safety programs.

G. **Public Safety in the District of Columbia (Codeshare Violations)**: No less than $90,000,000 to enhance public safety due to Gulf Air's negligence and violations in codeshare agreements.

H. **FAA Pilot Medical Programs (Additional)**: No less than $60,000 for further advancements in pilot medical assessments and monitoring programs.

I. **TAX money waste**: Gulf Air and AA to pay Sanctions to the Plaintiffs of wasted tax money paid for their violations corrections determined by the Jury and court

This relief seeks to ensure accountability, improve aviation safety systems, and honor those affected by Gulf Air's negligence.

R- 153

118

Date : December 31 2024

Feras Hindi

Samiha Ayyash

Tala Josephano

Pro Se

Pro se

Pro Se

R- 154

**U.S. DISTRICT COURT**
**DISTRICT OF COLUMBIA**

### PRO SE CONSENT TO RECEIVE NOTICES OF ELECTRONIC FILING

**CHECK ONLY ONE BOX FOR THE APPLICABLE SECTION BELOW:**

---

☑ **INITIAL REQUEST:** (Check this box to begin receiving notices of electronic filing)

I understand that I waive my right to receive service of documents by first class mail pursuant to Federal Rule of Civil Procedure 5(b)(2)(E).

I understand that I will be sent notices of electronic filing via e-mail and upon receipt of a notice, I will be permitted **ONE** "free look" at the document by clicking on the hyperlinked document number, at which time I should print or save the document to avoid further charges. The **ONE** "free look" will expire in 15 days from the date the notice was sent. After the **ONE** "free look" is used or expired, the document can be accessed by me through PACER (Public Access to Court Electronic Records) and I may be charged to view the document or for FREE by using the public terminals at the Clerk's Office.

I understand that it is strongly recommended that I establish a PACER account by visiting the PACER website at www.pacer.gov, which will allow me to view, print, and download documents at any time for a nominal fee.

The e-mail address I provided below is valid and I understand I am responsible for checking it on a regular basis. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address.

I understand that electronic service does not allow me to file documents electronically and does not mean that I can serve documents by e-mail. I must continue to file all communications regarding my case in paper copy with the Court and serve the opposing party.

I understand that I must file a consent in each case in which I wish to receive electronic service and that electronic service is not available in Social Security or Immigration cases or for incarcerated litigants.

---

☐ **UPDATE TO INFORMATION:** (Check this box to make changes to your email address)

I have a new email address as indicated below.

---

☐ **REQUEST TO DEACTIVATE ELECTRONIC NOTICING:** (Check this box to request deactivate electronic noticing)

I request deactivation of electronic noticing. I understand that by deactivating my account, I will begin receiving all filings via U.S. mail instead of email.

I understand that I will continue to receive electronic notices until such time as the Court has deactivated my account.

---

*I am a pro se party and I have read the applicable section check-marked above and understand and agree to the terms and conditions set forth therein. The U.S. District Court bears no liability for errors resulting from the information I have submitted on this form.*

Signature: _____     Date: _____January 7 2025_____

Printed Name: _____Tala Josephano_____     Case No: _____24-cv-03434_____

Home Address: _____615 S Catalina Ave #233 Redondo Beach CA 90277_____

| My Email Address is: | josephanotala@gmail.com |
|---|---|

RETURN THE FORM VIA MAIL OR IN PERSON TO:
The Clerk's Office
U.S. District Court
333 Constitution Ave. NW, Room 1225
Washington, DC  20001

**RECEIVED**

JAN 8 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

R-155

IN THE US DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Samiha Ayyash, Feras Hindi, Tala Josephano<br>Plaintiff/Petitioner | Cause No.:    24-cv-03434<br>Hearing Date: |
| vs. | |
| Gulf Air B.S.C, American Airlines INC<br>Defendant/Respondent | AFFIDAVIT OF SERVICE OF<br>SUMMONS; COMPLAINT |

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, has the authority to serve pleadings in the State named below, and is competent to be a witness therein.

On the **22nd day of January, 2025** at 2:50 PM at the address of **1090 Vermont Ave NW, Washington, DC 20005**; this affiant served the above described documents upon **American Airlines INC** by then and there personally delivering **1** true and correct copy(ies) thereof, by then presenting to and leaving the same with **Alex Hannigan, I delivered the documents to Alex Hannigan who identified themselves as the litigation management representative with identity confirmed by subject showing identification. The individual accepted service with direct delivery. The individual appeared to be a brown-haired white female contact 25-35 years of age, 5'6"-5'8" tall and weighing 120-140 lbs.**

No information was provided or discovered that indicates that the subjects served are members of the U.S. military.

_Emily Sommer_    01-22-25

**Emily Sommer**

Residing or doing business at:    **800 4th Street SW #N603, Washington, DC 20024**

Subscribed and sworn to before me this ___22___ day of __January__, 20_25_.

_____
Notary Public / Deputy Clerk

10/14/2025
My commission expires

LEMANUEL L. STEVENS
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires October 14, 2029

**RECEIVED**

JAN 23 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

REF:  **REF-18715619**

PAGE 1 OF 1
ORIGINAL AFFIDAVIT OF
SERVICE




Tracking #: 0156026283

R- 156

IN THE US DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Samiha Ayyash, Feras Hindi, Tala Josephano** | Cause No.:   **1:24-cv-03434** |
| Plaintiff/Petitioner | Hearing Date: |
| vs. | |
| **Gulf Air B.S.C, American Airlines INC** | AFFIDAVIT OF SERVICE OF |
| Defendant/Respondent | **SUMMONS; COMPLAINT; ATTACHMENTS** |

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, has the authority to serve pleadings in the State named below, and is competent to be a witness therein.

On the **30th day of January, 2025** at **3:21 PM** at the address of **1717 Pennsylvania Ave NW 12th floor, Washington, DC 20006**; this affiant served the above described documents upon **Gulf Air BSC** by then and there personally delivering **1** true and correct copy(ies) thereof, by then presenting to and leaving the same with **Gene Gray, I delivered the documents to Gene Gray who identified themselves as the person authorized to accept with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a bald black male contact 45-55 years of age, 6'0"-6'2" tall and weighing 180-200 lbs with glasses.**

No information was provided or discovered that indicates that the subjects served are members of the U.S. military.

_____

**Ibeneme Onyenso**

Residing or doing business at:   **4622 Snowflower Boulevard, Oxon Hill, MD 20745**

Subscribed and sworn to before me this _____30_____ day of _____JAN_____, 20__25__.

_____
Notary Public / Deputy Clerk

WILLIAM L. CARROLL
Notary Public - State of Maryland
Charles County
My commission expires ~~My Commission Expires May 16, 2026~~

**RECEIVED**

JAN 30 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

REF:  **REF-18715644**

PAGE 1 OF 1
ORIGINAL AFFIDAVIT OF
SERVICE

Tracking #: **0156976645**



R-157

USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 158 of 971

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SAMIHA AYYASH, et al.** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )    **Case No.  1:24-cv-3434-ACR** |
| | ) |
| **GULF AIR B.S.C. et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

### NOTICE OF APPEARANCE

PLEASE TAKE NOTICE that Micah E. Ticatch of the law firm of IslerDare, P.C., who is

a member in good standing of the District of Columbia Bar and of this Court, hereby enters his

appearance in the above-titled action on behalf of Defendant American Airlines Inc.

Dated: February 12, 2025

Respectfully submitted,

     /s/ Micah E. Ticatch

Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Inc.*

R- 158

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of February 2025 I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system which will serve a copy of the

foregoing via electronic mail upon the following:

> Tala Josephano
> 615 Catalina Ave, #233
> Redondo Beach, CA 90277
> joesphanotala@gmail.com
>
>
> Samiha Ayyash
> Feras Hindi
> 7823 New London Dr,
> Springfield, Fairfax
> VA 22153
> 703-980-6955
> ayyashsamiha@gmail.com
>
> *Pro Se Plaintiffs*

>      /s/ Micah E. Ticatch
> Micah E. Ticatch, DC Bar No. 1005398
> ISLER DARE, P.C.
> 1945 Old Gallows Road, Suite 650
> Vienna, Virginia 22182
> (703) 748-2690
> (703) 748-2695 (fax)
> mticatch@islerdare.com
>
> *Counsel for American Airlines Inc.*

2

R- 159

**IN IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SAMIHA AYYASH, et al. | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Case No.  **1:24-cv-3434-ACR** |
| | ) | |
| GULF AIR B.S.C. et al., | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### DEFENDANT AMERICAN AIRLINES, INC.'S MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendant American Airlines Inc., by counsel, hereby moves to dismiss the Amended Complaint because: (i) this Court lacks personal jurisdiction over American Airlines; and (ii) because Plaintiffs have failed to properly allege any of the claims asserted against American Airlines in their pleading.  The grounds for this motion are set forth in the accompanying Memorandum of Support.  Pursuant to Local Rule 7(f), Defendant requests an oral hearing for this motion.

Dated: February 12, 2025

Respectfully submitted,

  /s/ Micah E. Ticatch
Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Group, Inc.*

1

R- 160

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of February 2025 I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system and will also serve a copy of the

foregoing via electronic mail upon the following:

Tala Josephano
615 Catalina Ave, #233
Redondo Beach, CA 90277
joesphanotala@gmail.com
*Pro Se Plaintiff*

Samiha Ayyash
Feras Hindi
7823 New London Dr,
Springfield, Fairfax
VA 22153
703-980-6955
ayyashsamiha@gmail.com

*Pro Se Plaintiffs*

    /s/ Micah E. Ticatch
Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Group, Inc.*

2

R- 161

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SAMIHA AYYASH, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  1:24-cv-3434-ACR** |
| | ) | |
| **GULF AIR B.S.C. et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**AMERICAN AIRLINES INC.'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Micah E. Ticatch, DC Bar No. 1005398
Isler Dare, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Inc.*

R- 162

Defendant American Airlines Inc.("American Airlines") submits this Memorandum in Support of its Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth herein, each of Plaintiffs' claims asserted against American Airlines in their Amended Complaint (Dkt. 2) ("Amended Complaint") should be dismissed.

### BACKGROUND[1]

On December 14, 2022, a pilot for Gulf Air, Capt. Mohannad Alhindi, suffered a heart attack at an airport in Bangladesh. (*See* Dkt. 2 at 4 of 123, ¶ III.) Eight hours after suffering the heart attack, Capt. Alhindi died in a Bangladeshi hospital. (*See id.* at 10 of 123, ¶ 4.)

Plaintiffs are the deceased Capt. Alhindi's mother (Ms. Ayyash), brother (Mr. Hindi), and sister (Ms. Josephano). (*Id.* at 8 of 123, ¶¶ 1-3.) Ms. Ayyash and Mr. Hindi reside in Virginia, and Ms. Josephano resides in California.

Plaintiffs allege that Gulf Air's negligence "contributed to Captain Alhindi's death" by failing to provide timely medical care. (*Id.* at 10 of 123, ¶ 6.) As best as can be discerned, although Capt. Alhindi was not an employee of American Airlines, Plaintiffs seek to hold it liable for his death because the Gulf Air flight that Capt. Alhindi was scheduled to pilot (but did not pilot because of his heart attack) was allegedly one in which Gulf Air had a codesharing agreement[2] with American Airlines. (*Id.*, ¶ 3.)

---

[1] In light of the standard of a motion to dismiss, this section presents the facts as alleged in the Amended Complaint. Defendant reserves the right to contest the alleged facts in any future pleadings.

[2] "[A] codeshare agreement is an agreement between two airlines whereby a flight is listed under one airline's two-letter identification code but operated by the other airline.*" Rehman v. Etihad Airways*, 2019 WL 12095414, at *7, FN 7 (M.D. Pa. 2019).

R- 163

Plaintiffs assert three claims against American Airlines: negligence, negligence per se, and constructive fraud.  (*Id.* at 109, 111, and 116 of 123.)  All three claims appear premised on the allegation that because of the codeshare agreement, American Airlines had a duty to audit Gulf Air, which American Airlines allegedly performed inadequately.  It is not clear from Plaintiffs' allegations what a properly performed audit would have revealed that would have prevented Capt. Alhindi's heart attack before his flight or his subsequent death.

The Amended Complaint fails to establish a connection between the claims and the District of Columbia— Capt. Alhindi's death occurred in Bangladesh, and American Airlines is a Delaware corporation with its principal places of business in Texas.  (Dkt. 2 at 4 of 123, ¶ III; *id.* at 7 of 123, ¶ III.)  Consequently, this Court lacks jurisdiction over American Airlines.  Further, even if jurisdiction did exist, the claims against American Airlines must be dismissed because Plaintiffs fail to state a claim for which relief may be granted.

## <u>ARGUMENT</u>

### I.   The Court Lacks Personal Jurisdiction Over American Airlines.

In order to exercise personal jurisdiction over a defendant, the Court must have either general jurisdiction or specific jurisdiction.  *See, e.g., Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1780 (2017); *Crear v. Am. Airlines Grp., Inc.*, 2025 WL 35931, at *2 (D.D.C. 2025).  Because, as explained in more detail below, this Court has neither, the claims against American Airlines must be dismissed.

#### A.   Standard of review.

When a defendant objects to a court's personal jurisdiction under Rule 12(b)(2), the plaintiff, not the defendant, bears the "burden of establishing a factual basis for the court's exercise of personal jurisdiction."  *Williams v. Romarm, SA*, 756 F.3d 777, 785 (D.C. Cir. 2014).

R- 164

**B.     The Court does not have general jurisdiction because Defendant is not "at home" in the District of Columbia.**

When a court has general jurisdiction over a defendant, a plaintiff can properly assert any lawsuit against the defendant in that forum.  This extensive power, however, is limited only to those courts in the forums where a defendant is said to be "at home."  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  The Supreme Court has held that, outside extraordinary circumstances, a corporate entity is at home only in the jurisdiction in which it is incorporated or where it has its principal place of business.  *See id.* at 137-138; *Crear* 2025 WL 35931 at *3.

American Airlines is a Delaware corporation, with its principal place of business in Texas. (Dkt. 2 at 7 of 123, ¶ III.)  Consequently, this Court lacks general jurisdiction over American Airlines.

**C.     Because Plaintiff's claims do not arise in the District of Columbia, the Court lacks specific jurisdiction.**

When a court lacks general jurisdiction, it can still exercise specific jurisdiction over a claim, but Constitutional Due Process limits such jurisdiction to only those instances where there is an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State."  *Bristol-Meyers,* 137 S. Ct. at 1781. Furthermore, to establish jurisdiction, the suit-related activity or occurrence must represent a "substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  A connection that is only tangential to the claim does not create jurisdiction.  *See id.* at 288-289.

Because Plaintiffs bear the burden, they are required to plead sufficient facts in their Amended Complaint to establish that each of their claims are sufficiently connected to the District of Columbia to establish specific jurisdiction. *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 175 (D.D.C. 2018).

R- 165

Plaintiffs have not met that burden. There is nothing in the Amended Complaint to suggest a substantial connection to D.C. Capt. Alhindi had his heart attack in an airport in Bangladesh, and later died in a hospital in the same country. Plaintiffs' claims against American Airlines are based upon the supposed failure to properly audit Gulf Air. However, as Gulf Air is based out of Bahrain, any audit of the airline would presumably take place in that country, . Plaintiffs have not (and cannot) allege that any audit took place in D.C.

In fact, the only allegation connecting American Airlines to D.C. is the assertion that in April 2023, American Airlines electronically submitted a certification to the FAA, which has its headquarters in Washington D.C. (Dkt. 2 at 91 of 123, ¶ 530.) However, this certification happened four months *after* Capt. Alhindi's death. Therefore, the allegation appears to be irrelevant to the claims, which as best as can be discerned, appear to be an effort to assert liability against American Airlines for that death.

Because there is no other alleged connection to D.C. in the Amended Complaint, Plaintiff cannot establish specific jurisdiction. And because there is neither general nor specific jurisdiction, the Court should dismiss the claims against American Airlines for lack of personal jurisdiction.

## II.    Plaintiff Has Failed to State a Claim Against American Airlines.

Even if Plaintiffs could establish personal jurisdiction against American Airlines, the Amended Complaint should be dismissed because Plaintiffs have failed to sufficiently state any of the three claims asserted against American Airlines.

### A.    Standard of review.

On a motion to dismiss under Rule 12(b)(6), the Court determines whether the complaint contains sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

4

R- 166

*Twombly*, 550 U.S. 544, 570 (2007). The allegations "must be enough to raise a right to relief above the speculative level." *Id*. The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It requires the plaintiff to articulate sufficient facts to "show" that the plaintiff has the "plausibility of entitlement to relief." *Id*.

**B.      Plaintiffs do not state a claim for negligence.**

In "Claim 3," Plaintiffs purport to allege a claim for negligence. (Dkt. 2 at 109 of 123). Plaintiffs' claim is difficult to parse, but as best as can be discerned, the theory underlying this claim is that: (i) American Airlines has an FAA requirement to periodically audit Gulf Air's safety protocols; (ii) American Airlines' audit of Gulf Air was allegedly performed inadequately; (iii) Capt. Alhindi, who died before getting the chance to operate Gulf Air's aircraft, somehow would not have had a heart attack, or not have died, if American Airlines had performed a better audit of Gulf Air. To start, this line of factual causation is implausible, and there are no facts alleged in the Amended Complaint to plausibly suggest anything American Airlines could have reasonably done in an audit would have affected Capt. Alhindi's survival.

However, even if the implausible causation theory were accepted, the claim still clearly fails. In order to properly state a claim for negligence, Plaintiffs would need to allege "(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty proximately caused damage to the plaintiff." *Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095, 1098 (D.C. 1994).

Plaintiffs cannot demonstrate the first element. To start with, a safety audit does not generally give rise to a duty of care to third parties. *Casey v. Ward*, 211 F. Supp. 3d 107, 121 (D.D.C. 2016). To the extent that an audit mandated by the FAA, did somehow give rise to a duty

5

R- 167

of care to third parties — any such duty would be owed to *passengers*.  To state the obvious, the FAA audit requirement is not designed to ensure that pilots of foreign airlines are prevented from experiencing heart attacks during times when they are not even operating an airplane. American Airline owed no duty of care to Capt. Alhindi, and it certainly did not owe a duty of care to the Plaintiffs.

Likewise, Plaintiffs cannot establish the other two elements of the claim either.  The Amended Complaint does not plausibly allege that American Airlines failed to use reasonable care in performing their audit.  Furthermore, even if there was a showing of breach of reasonable care, the foreseeable damage is an accident or safety issue arising while the plane is being *operated*.  A heart attack *before* the operation of the plan is not a foreseeable risk associated with a safety audit.

In sum, Plaintiffs have failed to allege any of the elements of negligence claim, and it should be dismissed with prejudice.

### C.     The claim for negligence per se must be dismissed.

In "Claim 5" Plaintiffs assert a claim of negligence per se based on alleged violations  of the FAA Codeshare Safety Guidelines.  (Dkt. 2 at 111 of 123.)  "However, negligence per se is not in and of itself a separate legal claim—rather, it permits a plaintiff under certain circumstances and under specified conditions to rely on a statute or regulation as proof of the applicable standard of care." *Hunter v. D.C.*, 64 F. Supp. 3d 158, 188–89 (D.D.C. 2014) (cleaned up).  Because, as explained above, American Airlines' alleged audit was not the proximate cause of Capt. Alhindi or Plaintiffs' injuries, Plaintiffs cannot state a negligence per se claim any more than a negligence claim.

Moreover, negligence per se can only be used when the "the statute or regulation promotes public safety and was enacted to protect persons in the plaintiff's position or to prevent the type of

6

R- 168

accident that occurred." *Id.*  As previously noted, Plaintiffs cannot point to any relevant statute or regulation that was enacted to protect pilots of foreign airlines during the time they are not operating a plane.  Nor can Plaintiffs point to any statute or regulation that was enacted to protect the *family members* of such pilots.  Consequently, this claim must be dismissed as well.

### D.      Plaintiffs cannot state a claim for constructive fraud.

In "Claim 6"against American Airlines, Plaintiffs assert a claim for constructive fraud. (Dkt. 2 at 116 of 123.)  This claim must be dismissed as well.

To state a claim for constructive fraud a plaintiff must demonstrate: (1) the defendant made a false representation; (2) in reference to material fact; (3) with knowledge of its falsity; (4) the plaintiff acted in reasonable reliance on that representation; (5) which consequently resulted in provable damages.  *Himmelstein v. Comcast of the Dist., L.L.C.*, 908 F. Supp. 2d 49, 59 (D.D.C. 2012).  Additionally, a constructive fraud claim can only be made when the defendant has a "confidential relationship . . which the defendant is able to exercise extraordinary influence over plaintiff." *Id.*

American Airlines does not have a confidential relationship with any of the Plaintiffs, nor did it have one with Capt. Alhindi.  As such, this claim fails for this reason alone.

Additionally, the claim fails because Plaintiffs cannot allege the other factors.  As best as can be discerned, the alleged "false representation" is an April 28, 2023 "fraudulent certification" that American Airlines electronically submitted to the FAA.  (Dkt. 2 at 91 of 123, ¶ 530.)  But this was submitted *after* Capt. Alhindi's death, and therefore, the submission cannot be responsible for his death.

Moreover, to the extent Plaintiffs are alleging that they personally were misled by the April 28, 2023 certification, such an allegation is contradicted by their own allegations which

R- 169

allege that a few days before American Airlines' certification, "plaintiffs sent detailed court documents and correspondence to AA's U.S. offices, providing evidence of Gulf Air's systemic safety violations. These included unreported crew incapacitations, medical examination failures, and breaches of ICAO safety standards." (*Id.*, ¶ 529.)  In other words, Plaintiffs were aware that the American Airlines' certification was allegedly inaccurate, meaning they did not reasonably rely on that certification.  Moreover, there is no plausible claim of injury related to a certification made *after* Capt. Alhindi's death.

In sum, Plaintiffs have not come close to alleging a claim for constructive fraud and it should be dismissed with prejudice.

## CONCLUSION

As stated above, Plaintiffs' Amended Complaint should be dismissed because this Court lacks personal jurisdiction over American Airlines.  Furthermore, even if the Court had such jurisdiction, the Amended Complaint should still be dismissed American Airlines because it fails to state a claim against it.

Dated: February 12, 2025                    Respectfully submitted,

     /s/ Micah E. Ticatch
Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Inc.*

R- 170

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of February 2025 I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system and will also serve a copy of the

foregoing via electronic mail upon the following:

Tala Josephano
615 Catalina Ave, #233
Redondo Beach, CA 90277
joesphanotala@gmail.com
*Pro Se Plaintiff*

Samiha Ayyash
Feras Hindi
7823 New London Dr,
Springfield, Fairfax
VA 22153
703-980-6955
ayyashsamiha@gmail.com

*Pro Se Plaintiffs*



    /s/ Micah E. Ticatch
Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Inc.*

R- 171

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SAMIHA AYYASH, et al.** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No.  1:24-cv-3434-ACR** |
| ) | |
| **GULF AIR B.S.C. et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

### DEFENDANT AMERICAN AIRLINES INC.'S
### AMENDED CORPORATE DISCLOSURE STATEMENT

Pursuant to LCvR 26.1, I, the undersigned, counsel of record for Defendant American Airlines Inc., certify that Defendant is owned by a publicly traded company American Airlines Group, Inc. (Nasdaq: AAL) which has outstanding securities in the hands of the public.  This representation is made in order that judges of this Court may determine the need for recusal.

Dated: February 12, 2025

Respectfully submitted,

    /s/ Micah E. Ticatch
Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Inc.*

R- 172

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12ᵗʰ day of February 2025 I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system and will also serve a copy of the

foregoing via electronic mail upon the following:

> Tala Josephano
> 615 Catalina Ave, #233
> Redondo Beach, CA 90277
> joesphanotala@gmail.com
>
> Samiha Ayyash
> Feras Hindi
> 7823 New London Dr,
> Springfield, Fairfax
> VA 22153
> 703-980-6955
> ayyashsamiha@gmail.com
>
> *Pro Se Plaintiffs*

                        /s/ Micah E. Ticatch
                        Micah E. Ticatch, DC Bar No. 1005398
                        ISLER DARE, P.C.
                        1945 Old Gallows Road, Suite 650
                        Vienna, Virginia 22182
                        (703) 748-2690
                        (703) 748-2695 (fax)
                        mticatch@islerdare.com

                        *Counsel for American Airlines Inc.*

2

R- 173

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SAMIHA AYYASH, *et al.*<br><br>    Plaintiffs,<br><br>v.<br><br>GULF AIR B.S.C., *et al*.,<br><br>    Defendants. | Case No. 1:24-cv-3434-ACR |

## NOTICE OF APPEARANCE

PLEASE TAKE NOTICE that Darcy C. Osta of the law firm Eckert Seamans Cherin & Mellot, LLC, who is a member in good standing of the District of Columbia Bar and of this Court, hereby enters her appearance in the above-titled action on behalf of Defendant Gulf Air B.S.C. (c).

Dated: February 20, 2025

**ECKERT SEAMANS CHERIN
& MELLOTT, LLC**

*/s/ Darcy C. Osta*
Darcy C. Osta, Esq.
D.C. Bar No. 1686937
1717 Pennsylvania Ave., N.W.,
Suite 1200
Washington, D.C. 20006
Phone: (202) 659-6600
Fax: (202) 659-6699
dosta@eckertseamans.com

*Counsel for Gulf Air B.S.C. (C)*

R- 174

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 20, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, which will serve an electronic copy on all counsel of record, and I will also serve a copy of the foregoing via USPS first class mail and electronic mail upon the following:

Tala Josephano
615 Catalina Avenue, #233
Redondo Beach, CA 90277
josephanotala@gmail.com
*Pro Se Plaintiff*

Samiha Ayyash
Feras Hindi
7823 New London Drive
Springfield, VA 22153
ayyashsamiha@gmail.com
fhindi@friendshiplogistics.com
*Pro Se Plaintiffs*

*/s/ Darcy C. Osta*
Darcy C. Osta

R- 175

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SAMIHA AYYASH, *et al.*,     )
            )
 Plaintiffs,      )
            )  Case No. 1:24-cv-03434-ACR
v.           )
            )
GULF AIR B.S.C. (C), *et al.*,   )
            )
 Defendants.      )

**<u>DEFENDANT GULF AIR B.S.C. (C)'S CORPORATE DISCLOSURE STATEMENT
PURSUANT TO LOCAL CIVIL RULE 26.1</u>**

Pursuant to LCvR 26.1 of the Local Rules of the United Staes District Court for the District

of Columbia, I, the undersigned counsel of record for Defendant Gulf Air B.S.C. (C), certify that

to the best of my knowledge and belief, there are no parent companies, subsidiaries, affiliates, or

companies which have any outstanding securities in the hands of the public.

These representations are made in order that judges of this Court may determine the need

for recusal.

Dated: February 20, 2025    **ECKERT SEAMANS CHERIN
             & MELLOTT, LLC**

            */s/ Darcy C. Osta*
            Darcy C. Osta, Esq.
            D.C. Bar No. 1686937
            Mark A. Johnston, Esq.
            D.C. Bar No. 455764
            1717 Pennsylvania Ave., N.W.,
            Suite 1200
            Washington, D.C. 20006
            (202) 659-6600
            dosta@eckertseamans.com
            mjohnston@eckertseamans.com

            *Attorneys for Defendant Gulf Air B.S.C. (c)*

R- 176

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2025, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF filing system, which will serve an electronic copy on all

counsel of record, and I will also serve a copy of the foregoing via USPS first class mail and

electronic mail upon the following:

<div align="center">

Tala Josephano
615 Catalina Avenue, #233
Redondo Beach, CA 90277
josephanotala@gmail.com
Pro Se Plaintiff

Samiha Ayyash
Feras Hindi
7823 New London Drive
Springfield, VA 22153
ayyashsamiha@gmail.com
fhindi@friendshiplogistics.com
Pro Se Plaintiffs

</div>

/s/ Darcy C. Osta
Darcy C. Osta

R- 177



Eckert Seamans Cherin & Mellott, LLC    TEL   202 659 6600
1717 Pennsylvania Avenue, N.W.    FAX   202 659 6699
12th Floor    www.eckertseamans.com
Washington, D.C. 20006

February 20, 2025

**<u>VIA ECF</u>**
Hon. Ana C. Reyes
United States District Judge
United States District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

**_Re:_**    **_Samiha Ayyash, et al. v. Gulf Air B.S.C. et al._, Case No. 24-cv-03434-ACR**
       **Defendant Gulf Air B.S.C. (c)'s Request to Schedule Pre-Motion Conference**

Dear Judge Reyes:

In accordance with Paragraph 7(f) of Your Honor's Standing Order in Civil Cases, Gulf Air B.S.C. (c) ("Gulf Air") respectfully submits its request to schedule a pre-motion conference ("Request") on Gulf Air's anticipated Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5) and 12(b)6) ("Motion to Dismiss"). In support of its Request, Gulf Air provides the below summary of the claims at issue in the instant action and the bases for the Motion to Dismiss.

This action arises from the unexpected and sudden death of Captain Mohannad Alhindi ("Decedent"). Decedent was employed by Gulf Air as a Senior First Officer, aka, a pilot. On December 14, 2022, Decedent was in Dhaka, Bangladesh and was scheduled to operate a flight from Bangladesh back to Bahrain when he fell ill. He was rushed to the hospital, but unfortunately, he did not survive.

On December 10, 2024, the Decedent's mother, Samiha Ayyash, and siblings, Feras Hindi and Tala Josephano ("Plaintiffs"), filed the instant action against Gulf Air and American Airlines. On December 30, 2024, Plaintiffs filed an Amended Complaint (hereinafter referred to

R- 178



as "Complaint") asserting causes of action for negligence per se, negligence, wrongful death, breach of fiduciary duty, fraudulent concealment, fraudulent misrepresentation, constructive fraud, negligent infliction of emotional distress (NIED), and intentional infliction of emotional distress (IIED) against Gulf Air arising from the Decedent's death.  However, for the reasons set forth below, and those that will be more fully articulated in Gulf Air's Motion to Dismiss, the claims against Gulf Air must be dismissed under Rules 12(b)(1), 12(b)(2), 12(b)(5) and 12(b)(6).

First and foremost, Plaintiffs lack standing to bring claims for negligence, negligence per se, and breach of fiduciary duty, as those claims are alleged to have accrued in favor of the Decedent before his death ("survival claims"), and can only be pursued by the personal representative of the Decedent's estate under the D.C. Survival Statute.  *Henson v. W.H.H. Trice and Co.*, 466 F. Supp. 2d 187, 192 (D.D.C. 2006); *see also* D.C. Code § 12-101.  Similarly, any claim for wrongful death must be brought by the personal representative of the Decedent's estate. D.C. Code § 16-2702.  As none of the Plaintiffs assert that they are the personal representative of Decedent's Estate, they do not have standing to pursue these claims.  Moreover, adding the personal representative as a party plaintiff, which is necessary in order to pursue the wrongful death and survival claims asserted in the Complaint, would destroy diversity jurisdiction, as the Decedent was a citizen of a foreign country at the time of his death.  *Leffer v. Federal Republic of Germany*, 2002 WL 1598059, *3 (D.D.C. Apr. 18, 2022) (finding that foreign aliens on both sides of an action defeats diversity jurisdiction); *see also* 28 U.S.C. §§ 1332(a) and (c)(2).[1]

---

[1] Gulf Air is a corporation organized under the laws of the Kingdom of Bahrain ("Bahrain") with its headquarters in Muharraq, Bahrain.

R- 179



Further, there is no personal jurisdiction over Gulf Air because there was no service of process pursuant to Rule 4(h), thus the Complaint should be dismissed under Rule 12(b)(5). Plaintiffs improperly attempted to serve Gulf Air by delivering the Summons and Complaint to an attorney who is not authorized, either explicitly or impliedly, to receive and accept service of process of legal actions initiated in state or federal courts within the United States ("U.S."). *See, e.g., Christensson v. Hogdal*, 199 F.2d 402, 406 n.3 (D.C. Cir. 1952) (finding that "only where an attorney is expressly or impliedly authorized to accept service of process can his doing so bind his absent client and subject him to the personal jurisdiction of the local court."). As there was no service of process, there can be no jurisdiction over Gulf Air and the appropriate remedy is dismissal of the Complaint.

Moreover, even if the Court declines to dismiss the case under Rule 12(b)(1) or Rule 12(b)(5), the Court should dismiss the Complaint under Rule 12(b)(2), as Plaintiffs cannot make a *prima facie* showing of general or specific personal jurisdiction over Gulf Air in this case. Gulf Air is neither organized under the laws of the District of Columbia ("D.C." or "the District"), nor does it maintain its principal place of business in D.C., thus there is no general jurisdiction. Further, Gulf Air does not have any contacts with D.C., let alone contacts sufficient to bring it within the scope of D.C.'s long arm statute. D.C. Code § 13-423. Accordingly, exercising personal jurisdiction over Gulf Air does not comport with due process and offends traditional notions of fair play and substantial justice, and the Complaint should be dismissed.

Lastly, Plaintiffs' claims must be dismissed under Rule 12(b)(6) for failure to state viable causes of action against Gulf Air. Plaintiffs' survival claims must be dismissed because the

<div style="text-align: right; font-size: large;">R- 180</div>



<div align="right">Hon. Ana C. Reys<br>February 20, 2025<br>Page 4</div>

damages Plaintiffs seek are not recoverable under D.C.'s Survival Statute.  Moreover, Gulf Air

did not owe Plaintiffs any of the duties of care alleged in the Complaint, thereby further defeating

their claims for negligence, negligence per se and breach of fiduciary duty.  Further, any claim

under D.C.'s Wrongful Death Statute fails as Decedent's death did not occur in the U.S.

Plaintiffs' fraud claims fail because, among other things, they have not alleged and cannot

prove reasonable reliance on any alleged representation by Gulf Air.[2]  Plaintiffs' claims for NIED

and IIED must also be dismissed because Plaintiffs have failed to allege facts sufficient to meet

the stringent standards necessary to establish either cause of action.

Based on the foregoing, Gulf Air respectfully requests that the Court grant its Request

and schedule a pre-motion conference on Gulf Air's anticipated Motion to Dismiss.

Respectfully Submitted,

Dated: February 20, 2025

**ECKERT SEAMANS CHERIN
 & MELLOTT, LLC**


*/s/ Darcy C. Osta*
Darcy C. Osta, Esq.
D.C. Bar No. 1686937
Mark A. Johnston, Esq.
D.C. Bar No. 455764
dosta@eckertseamans.com
mjohnston@eckertseamans.com

*Counsel for Gulf Air B.S.C. (c)*

c.c.    All parties (via electronic service)

---

[2] Fraudulent concealment is not an independent cause of action. Rather, it is an equitable doctrine that, if found to apply, tolls the applicable statute of limitations.

<div align="right">R- 181</div>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SAMIHA AYYASH, *et al.*<br><br>    Plaintiffs,<br><br>v.<br><br>GULF AIR B.S.C., *et al*.,<br><br>    Defendants. | Case No. 1:24-cv-3434-ACR |

## <u>NOTICE OF APPEARANCE</u>

PLEASE TAKE NOTICE that Mark A. Johnston of the law firm Eckert Seamans Cherin

& Mellot, LLC, who is a member in good standing of the District of Columbia Bar and of this

Court, hereby enters his appearance in the above-titled action on behalf of Defendant Gulf Air

B.S.C. (c).

Dated: February 20, 2025

**ECKERT SEAMANS CHERIN
 & MELLOTT, LLC**

*/s/ Mark A. Johnston*
Mark A. Johnston, Esq.
D.C. Bar No. 455764
1717 Pennsylvania Ave., N.W.,
Suite 1200
Washington, D.C. 20006
Phone: (202) 659-6600
Fax: (202) 659-6699
mjohnston@eckertseamans.com

*Counsel for Gulf Air B.S.C. (C)*

R- 182

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2025, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF filing system, which will serve an electronic copy on all

counsel of record, and I will also serve a copy of the foregoing via USPS first class mail and

electronic mail upon the following:

Tala Josephano
615 Catalina Avenue, #233
Redondo Beach, CA 90277
josephanotala@gmail.com
*Pro Se Plaintiff*

Samiha Ayyash
Feras Hindi
7823 New London Drive
Springfield, VA 22153
ayyashsamiha@gmail.com
fhindi@friendshiplogistics.com
*Pro Se Plaintiffs*

/s/ Mark A. Johnston
Mark A. Johnston

R- 183

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SAMIHA AYYASH, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> GULF AIR B.S.C. (c), *et al.*, <br><br> Defendants. | Case No. 1:24-cv-3434-ACR |

### NOTICE OF DEFENDANT GULF AIR B.S.C. (C)'S
### REQUEST TO SCHEDULE PRE-MOTION CONFERENCE

PLEASE TAKE NOTICE that, in accordance with Paragraph 7(f) of Your Honor's Standing Order in Civil Cases, Gulf Air B.S.C. (c) ("Gulf Air") respectfully submits its request to schedule a pre-motion conference ("Request") on Gulf Air's anticipated Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5) and 12(b)6) ("Motion to Dismiss"). In support of its Request, Gulf Air provides the below summary of the claims at issue in the instant action and the bases for the Motion to Dismiss.

This action arises from the unexpected and sudden death of Captain Mohannad Alhindi ("Decedent"). Decedent was employed by Gulf Air as a Senior First Officer, aka, a pilot. On December 14, 2022, Decedent was in Dhaka, Bangladesh and was scheduled to operate a flight from Bangladesh back to Bahrain when he fell ill. He was rushed to the hospital, but unfortunately, he did not survive.

On December 10, 2024, the Decedent's mother, Samiha Ayyash, and siblings, Feras Hindi and Tala Josephano ("Plaintiffs"), filed the instant action against Gulf Air and American Airlines. On December 30, 2024, Plaintiffs filed an Amended Complaint (hereinafter referred to as "Complaint") asserting causes of action for negligence per se, negligence, wrongful death, breach

1

R- 184

of fiduciary duty, fraudulent concealment, fraudulent misrepresentation, constructive fraud, negligent infliction of emotional distress (NIED), and intentional infliction of emotional distress (IIED) against Gulf Air arising from the Decedent's death.  However, for the reasons set forth below, and those that will be more fully articulated in Gulf Air's Motion to Dismiss, the claims against Gulf Air must be dismissed under Rules 12(b)(1), 12(b)(2), 12(b)(5) and 12(b)(6).

First and foremost, Plaintiffs lack standing to bring claims for negligence, negligence per se, and breach of fiduciary duty, as those claims are alleged to have accrued in favor of the Decedent before his death ("survival claims"), and can only be pursued by the personal representative of the Decedent's estate under the D.C. Survival Statute.  *Henson v. W.H.H. Trice and Co.*, 466 F. Supp. 2d 187, 192 (D.D.C. 2006); *see also* D.C. Code § 12-101.  Similarly, any claim for wrongful death must be brought by the personal representative of the Decedent's estate.  D.C. Code § 16-2702.  As none of the Plaintiffs assert that they are the personal representative of Decedent's Estate, they do not have standing to pursue these claims.  Moreover, adding the personal representative as a party plaintiff, which is necessary in order to pursue the wrongful death and survival claims asserted in the Complaint, would destroy diversity jurisdiction, as the Decedent was a citizen of a foreign country at the time of his death.  *Leffer v. Federal Republic of Germany*, 2002 WL 1598059, *3 (D.D.C. Apr. 18, 2022) (finding that foreign aliens on both sides of an action defeats diversity jurisdiction); *see also* 28 U.S.C. §§ 1332(a) and (c)(2).[1]

Further, there is no personal jurisdiction over Gulf Air because there was no service of process pursuant to Rule 4(h), thus the Complaint should be dismissed under Rule 12(b)(5).  Plaintiffs improperly attempted to serve Gulf Air by delivering the Summons and Complaint to an attorney who is not authorized, either explicitly or impliedly, to receive and accept service of

---

[1] Gulf Air is a corporation organized under the laws of the Kingdom of Bahrain ("Bahrain") with its headquarters in Muharraq, Bahrain.

R- 185

process of legal actions initiated in state or federal courts within the United States ("U.S."). *See, e.g.*, *Christensson v. Hogdal*, 199 F.2d 402, 406 n.3 (D.C. Cir. 1952) (finding that "only where an attorney is expressly or impliedly authorized to accept service of process can his doing so bind his absent client and subject him to the personal jurisdiction of the local court."). As there was no service of process, there can be no jurisdiction over Gulf Air and the appropriate remedy is dismissal of the Complaint.

Moreover, even if the Court declines to dismiss the case under Rule 12(b)(1) or Rule 12(b)(5), the Court should dismiss the Complaint under Rule 12(b)(2), as Plaintiffs cannot make a *prima facie* showing of general or specific personal jurisdiction over Gulf Air in this case. Gulf Air is neither organized under the laws of the District of Columbia ("D.C." or "the District"), nor does it maintain its principal place of business in D.C., thus there is no general jurisdiction. Further, Gulf Air does not have any contacts with D.C., let alone contacts sufficient to bring it within the scope of D.C.'s long arm statute. D.C. Code § 13-423. Accordingly, exercising personal jurisdiction over Gulf Air does not comport with due process and offends traditional notions of fair play and substantial justice, and the Complaint should be dismissed.

Lastly, Plaintiffs' claims must be dismissed under Rule 12(b)(6) for failure to state viable causes of action against Gulf Air. Plaintiffs' survival claims must be dismissed because the damages Plaintiffs seek are not recoverable under D.C.'s Survival Statute. Moreover, Gulf Air did not owe Plaintiffs any of the duties of care alleged in the Complaint, thereby further defeating their claims for negligence, negligence per se and breach of fiduciary duty. Further, any claim under D.C.'s Wrongful Death Statute fails as Decedent's death did not occur in the U.S.

R- 186

Plaintiffs' fraud claims fail because, among other things, they have not alleged and cannot prove reasonable reliance on any alleged representation by Gulf Air.[2]  Plaintiffs' claims for NIED and IIED must also be dismissed because Plaintiffs have failed to allege facts sufficient to meet the stringent standards necessary to establish either cause of action.

Based on the foregoing, Gulf Air respectfully requests that the Court grant its Request and schedule a pre-motion conference on Gulf Air's anticipated Motion to Dismiss.

<div align="right">

Respectfully Submitted,

</div>

Dated: February 20, 2025

**ECKERT SEAMANS CHERIN
  & MELLOTT, LLC**

*/s/ Darcy C. Osta*
Darcy C. Osta, Esq.
D.C. Bar No. 1686937
Mark A. Johnston, Esq.
D.C. Bar No. 455764
1717 Pennsylvania Ave., N.W.,
Suite 1200
Washington, D.C. 20006
Phone: (202) 659-6600
Fax: (202) 659-6699
dosta@eckertseamans.com
mjohnston@eckertseamans.com

*Counsel for Gulf Air B.S.C. (c)*

---

[2] Fraudulent concealment is not an independent cause of action. Rather, it is an equitable doctrine that, if found to apply, tolls the applicable statute of limitations.

R- 187

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2025, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF filing system, which will serve an electronic copy on all

counsel of record, and I will also serve a copy of the foregoing via USPS first class mail and

electronic mail upon the following:

Tala Josephano
615 Catalina Avenue, #233
Redondo Beach, CA 90277
josephanotala@gmail.com
*Pro Se Plaintiff*

Samiha Ayyash
Feras Hindi
7823 New London Drive
Springfield, VA 22153
ayyashsamiha@gmail.com
fhindi@friendshiplogistics.com
*Pro Se Plaintiffs*

/s/ Darcy C. Osta
Darcy C. Osta

R- 188

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMIHA AYYASH, et al. | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | )   **Case No.  1:24-cv-3434-ACR** |
| | ) |
| GULF AIR B.S.C. et al., | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

### DEFENDANT AMERICAN AIRLINES, INC.'S
### NOTICE REQUESTING MOTION CONFERENCE

In accordance with your Standing Order in Civil Cases, American Airlines respectfully submits this request to schedule a conference on American Airlines' Motion to Dismiss. Undersigned counsel was previously unaware of the Court's Standing Order until Defendant Gulf Air filed its own pre-motion conference request earlier today.  (Dkt. 11.)  Because of that lack of awareness, American Airlines previously filed a Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6) on February 12, 2025.  (Dkt. 7.)  Counsel regrets the error.

American Airlines now seeks either: (i) permission to go forward with the previously filed Motion to Dismiss; or (ii) permission to withdraw the prior filing and file a new Motion to Dismiss following the conference.

Plaintiffs' claims arise out of the death of a Gulf Air pilot who suffered a heart attack at an airport in Bangladesh.  Plaintiffs allege that Gulf Air's negligence contributed to the pilot's death. They have also asserted claims against American Airlines because the Gulf Air flight that the pilot was scheduled to fly (but did not pilot because of his heart attack) was allegedly one in which Gulf

1

R- 189

Air had codesharing agreement with American Airlines.  Plaintiffs allege that FAA regulations require domestic airlines to perform periodic safety audits of foreign airlines with which they have codesharing agreements.  As best as can be discerned Plaintiffs claims are based on the theory that American Airlines was somehow negligent in its auditing, which led to Gulf Air's negligent treatment of the pilot, which led to his death.  Plaintiffs have brought claims for negligence, negligence per se, and constructive fraud against American Airlines.

First, the court lacks personal jurisdiction over American Airlines. There is no general jurisdiction because the company is a Delaware corporation with its principal place of business in Texas.  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  Additionally, there is no specific jurisdiction as the pilot's death occurred in Bangladesh and had virtually no connection to Washington D.C.  *See, e.g., Walden v. Fiore*, 571 U.S. 277, 284 (2014) (specific jurisdiction requires "substantial connection with the forum State").

Second, even if jurisdiction existed, Plaintiffs have failed to state a claim against American Airlines.  Negligence claims require (i) a duty of care to the plaintiff, (ii) breach of that duty by the defendant, and (iii) the breach was the proximate cause of damage to the plaintiff.  *E.g., Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095, 1098 (D.C. 1994).  Even assuming that the audit requirements under the codesharing arrangement somehow created a duty of care to third parties, such a duty would, at most, extend to passengers, not to the family members of employees of the foreign airline.  Likewise, a pilot's heart attack before takeoff is not a foreseeable risk of a negligent safety audit.  Consequently, both negligence counts against American Airlines fail to state a claim.

The constructive fraud claim also fails.  To state such a claim, a plaintiff must first establish a confidential relationship claim with the defendant, and then also show (1) the defendant made a

R- 190

false representation; (2) in reference to material fact; (3) with knowledge of its falsity; (4) the plaintiff acted in reasonable reliance on that representation; (5) which consequently resulted in provable damages. *See Himmelstein v. Comcast of the Dist., L.L.C.*, 908 F. Supp. 2d 49, 59 (D.D.C. 2012). There was, however, no confidential relationship between American Airlines and the Plaintiffs, or between the airline and the deceased pilot. Additionally, the alleged "false representation" appears to be a certification that was submitted after the pilot's death, making it impossible that the certification could be the cause of the pilot's death.

Based on the foregoing, American Airlines respectfully requests a conference to consider either granting it permission to go forward with the previously filed Motion to Dismiss, or permission to file a new Motion to Dismiss.

Dated: February 20, 2025

Respectfully submitted,

/s/ Micah E. Ticatch
Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Inc.*

R- 191

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of February 2025 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will serve a copy on all counsel of record. I will also serve a copy of the foregoing via first class mail upon the following pro se individuals:

Tala Josephano
615 Catalina Ave, #233
Redondo Beach, CA 90277
joesphanotala@gmail.com
*Pro Se Plaintiff*

Samiha Ayyash
Feras Hindi
7823 New London Dr,
Springfield, Fairfax
VA 22153
703-980-6955
ayyashsamiha@gmail.com

*Pro Se Plaintiffs*

　　　/s/ Micah E. Ticatch
Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Inc.*

R- 192

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

## Civil Division

| | | |
|---|---|---|
| **Feras Hindi,** | ) | **Case No.:  1:24-cv-03434-ACR** |
| | ) | |
| Plaintiff**,** | ) | |
| **American Airlines Group, Inc.,** | ) | |
| Defendant | ) | |
| _____ | ) | |

## APPLICATION FOR ENTRY OF DEFAULT

February 23 2025

**Feras Hindi**

7823 New London Dr

Springfield VA 22153

(703)980-6955

Fhindi@friendshiplogistics.com



**RECEIVED**

FEB 23 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

R- 193

**TO THE CLERK OF THE COURT**

To the Clerk of the United States District Court for the District of Columbia, As provided by Rule 55 of the Federal Rules of Civil Procedure, Plaintiff requests that the Clerk enter the default of Defendant American Airlines Inc for failure to plead or otherwise defend against this action in a timely manner as :

**1. <u>Defendant's Failure to Respond Timely</u>**

Defendant was properly served on January 30, 2025, as evidenced by the proof of service filed with this Court as **(Exhibit 1: Proof of Service)**. Under FRCP 12(a)(1)(A)(i), Defendant's response was due by February 12, 2025. To date, Defendant has not filed any responsive pleading or motion, nor has Defendant sought an extension of time within which to respond

**3.<u>Defendant's Failure to Serve Documents</u> within 21 days.**

Plaintiff has not been served with the following documents from the Defendant, nor any other documents

    A.  Notice of Appearance

    B.  Company Disclosure

    C.  Motion to Dismiss and its attachments

R- 194

## 4. Legal Basis for Default Entry

Under FRCP 55(a), a default should be entered when a party fails to plead or otherwise defend. Defendant's failure to serve Plaintiff in 21 days with an answer, along with the submission of a **FALSE** Certificate of Service under 11(b) invalidates filings including Notice Of Appearance and renders the notice and any motions filed with the False Certificate of Service invalid under 11(a) and 11(b).

Defendant's failure to respond within the required 21 days ( Plaintiff was not served), combined with the submission of a false Certificate of Service, which invalidates all filings submitted, and warrant the entry of default

## 5. Request for Hearing

In the event this application is denied, Plaintiff respectfully requests that a hearing be scheduled before the Court.

## 6. Reservation of Rights

Plaintiff respectfully requests that the Court permit an amendment to this application and not deny it based on pleading format or minor errors. Plaintiff further requests that the Court allow the amendment to be filed.

 Plaintiff, Feras, does not acknowledge the Notice of Appearance or any filings submitted by the Defendant under Rule 11(b): The Certificate of Service is false and defective, which invalidates all subsequent filings, including those involving the attorney's presence Additionally Plaintiff was not served with the Notice of Appearance.

R- 195

Plaintiff Feras, in respect to the Court and to avoid technicalities, will send a copy to the

Defendant's registered agent and will also send a copy to the law office that filed the

false certificate. Plaintiff reserves the right to pursue any legal avenues regarding the

false certificate and requests that the Clerk report it to the Judge.

## 7. Conclusion

Plaintiff respectfully requests that the Clerk of the Court enter default against Defendant,

American Airlines Group, Inc., for failure to timely respond as required .

**DATED:** February 23 2025

**Respectfully submitted,**

*F.H*

**Feras Hindi**

**Pro Se**

**Feras Hindi**

7823 New London Dr

Springfield VA 22153

(703)980-6955

Fhindi@friendshiplogistics.com

R- 196

## DECLARATION OF NON-SERVICE

I, Feras Hindi, declare as follows:

1. I am the Plaintiff in this matter.

2. I am an individual with claims against Defendant American Airlines.

3. My email address is **Fhindi@friendshiplogistics.com**.

4. To date, I have not been served with the following documents Notice of Appearance, Motion to Dismiss and its attachments, Corporate Disclosure by Defendant American Airlines or lawyers, by any requested methods, or by any approved court method, including (mail or personal service).

5. I was not served by American Airlines or any attorney via electronic mail (email) on February 12, 2025, or after.

6. I am not registered for electronic service and have never consented to electronic service or notification in this case.

7. I did not file Pro Se Electronic Notifications.

8. I first became aware of the filings on February 18, 2025, from Co-Plaintiff Tala, not from Defendant.

9. I had personal engagement from February 12, 2025, to February 18, 2025.

10. I have not been served as of today, February 23, 2025.

11. I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct to the best of my knowledge and belief.

R- 197

R- 198

**Executed on:** February 23 2025

**Feras Hindi**

*F. H*

**Signature**

Feras Hindi
7823 New London Dr
Springfield VA 22153
(703)980-6955
Fhindi@friendshiplogisitcs.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2025, Plaintiff Feras Hindi will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Application for Entry of Judgment and Exhibit (Proof of Service to American Airlines)

**Defendant American Airlines, Inc.**
Registered Agent Address: CORPORATION SERVICE COMPANY, 1090 Vermont Ave. NW, Washington, DC 20005.
A copy will be sent to **Micah E. Ticatch**, 1945 Old Gallows Road, Suite 650, Vienna, Virginia 22182.
Method of Service: Via ABC Legal Services (Process Server).

**Defendant Gulf Air B.S.C., Inc.**
Counsel: **Darcy C. Osta, Esq.** D.C. Bar No. 1686937, **Mark A. Johnston, Esq.** D.C. Bar No. 455764
AT Eckert Seamans Cherin & Mellott, LLC, 1717 Pennsylvania Ave., N.W., 12th Floor, Washington, D.C. 20006.
Method of Service: Via ABC Legal Services (Process Server).

**Plaintiff Tala Josephano & Plaintiff Samiha Ayyash**: Accepted Service via Email

A request for process service is being submitted, and service is expected to be completed by the processor. A formal Proof of Service request and Service (Affidavit of Service) will be filed with the Court upon receipt of confirmation from ABC Legal Services.

Respectfully submitted,

February 23 2025

**Pro Se Plaintiff**

*F.H*

**Feras Hindi**

7823 New London Dr

Springfield VA 22153
(703)980-6955
Fhindi@friendshiplogistics.com

R- 199

R- 200

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

| | | |
|---|---|---|
| **Feras Hindi,** | ) | **Case No.:  1:24-cv-03434-ACR** |
| | ) | |
| Plaintiff | ) | |
| **American Airlines Group, Inc.,** | ) | |
| Defendant | ) | |
| _____) | | |

# EXHIBITS

February 23 2025

Feras Hindi
7823 New London Dr
Springfield VA 22153
(703)980-6955
Fhindi@friendshiplogistics.com

**EXHIBITS**

2

# EXHIBITS

1.  **Exhibit 1** Proof of Service to American Airlines

R- 201

IN THE US DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| Samiha Ayyash, Feras Hindi, Tala Josephano | Cause No.: **24-cv-03434** |
|---|---|
| Plaintiff/Petitioner | Hearing Date: |
| vs. | |
| **Gulf Air B.S.C, American Airlines INC** | AFFIDAVIT OF SERVICE OF |
| Defendant/Respondent | **SUMMONS; COMPLAINT** |

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, has the authority to serve pleadings in the State named below, and is competent to be a witness therein.

On the **22nd day of January, 2025** at 2:50 PM at the address of **1090 Vermont Ave NW, Washington, DC 20005**; this affiant served the above described documents upon **American Airlines INC** by then and there personally delivering **1** true and correct copy(ies) thereof, by then presenting to and leaving the same with **Alex Hannigan, I delivered the documents to Alex Hannigan who identified themselves as the litigation management representative with identity confirmed by subject showing identification. The individual accepted service with direct delivery. The individual appeared to be a brown-haired white female contact 25-35 years of age, 5'6"-5'8" tall and weighing 120-140 lbs.**

No information was provided or discovered that indicates that the subjects served are members of the U.S. military.

_____    01-22-25

**Emily Sommer**

Residing or doing business at:    **800 4th Street SW #N603, Washington, DC 20024**

Subscribed and sworn to before me this ___22___ day of __January__, 20_25_.

_____
Notary Public / Deputy Clerk

10/14/2029
My commission expires

**LEMANUEL L. STEVENS**
NOTARY PUBLIC DISTRICT OF COLUMBI.
My Commission Expires October 14, 2029



R-202

R- 203

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

### Civil Division

| | | |
|---|---|---|
| **Feras Hindi** | ) | **Case No.:  1:24-cv-03434-ACR** |
| Plaintiff**,** | ) | |
| **American Airlines, INC.** | ) | |
| Defendant | ) | |
| _____) | | |

## MOTION FOR CLERK'S ENTRY OF DEFAULT

February 24 2025

**Feras Hindi**

7823 New London Dr

Springfield VA 22153

(703)980-6955

Fhindi@friendshiplogistics.com



**RECEIVED**

FEB 24 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

Pursuant to Federal Rule of Civil Procedure 55(a), Plaintiff Feras Hindi moves for a clerk's entry of default against Defendant American Airlines INC.

## I. BACKGROUND

On December 31, 2024, the Plaintiff and other Plaintiffs filed an Amended Complaint against Defendant American Airlines Inc. in the United States District Court for the District of Columbia. The Defendant was served on January 22, 2025, with proof of service entered into the court system on January 23, 2025. The court set a response deadline of February 12, 2025.

On February 12, 2025, after 5:19 PM Eastern Time, Defendant's counsel filed five documents via the CM/ECF system, including a Notice of Appearance, Motion to Dismiss with attachments, and Corporate Disclosure. These filings contained a False Certificate of Service, which is a serious violation of Federal Rule of Civil Procedure 11 and may constitute perjury .

The Defendant's failure to properly investigate the parties and their approved methods of service constitutes a breach of their duty of due diligence and violates Federal Rule of Civil Procedure (FRCP) 11(b). As of February 24, 2025,

## II. ARGUMENT

The Clerk should enter default because Plaintiff seeks relief in his complaint, Defendant has been served, and Defendant has failed to defend the claims made against them. As The clerk's entry of default is thus mandatory under Federal Rule of Civil Procedure 55(a), which provides that: "When a party against whom a judgment for  relief is sought

R- 204

has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

1. **Defendant's Alleged Service Is Invalid and Fraudulent**

2. Despite certifying service on Plaintiff Feras via electronic mail, Defendant did NOT serve Plaintiff Feras by any method by the February 12, 2025 deadline.

3. Defendant's lawyer falsely certified service on February 12, 2025, at approximately 5:30 PM via **electronic** mail, in violation of FRCP 11(b).

4. The certificate of service contains multiple errors and omissions:

   a. Plaintiff Feras' email address (Fhindi@friendshiplogistics.com) is not listed

   b. Co-Defendant Gulf Air is not listed as being served

   c. Co-Plaintiff Tala's email is misspelled (Josephano instead of Josephano)

5. Plaintiffs never consented to electronic service:

   a. Plaintiff Feras did not consent to electronic serving or notifications

   b. Plaintiff Feras does not have an active Court system account

   c. Plaintiff Samiha is 85 years old and never consented to electronic mail service

6. Evidence of fraudulent intent:

   a. Electronic mail was chosen as the most expedient method to falsely certify service after 5:00 PM

   b. The misspelled email address for Co-Plaintiff Tala would have immediately bounced back as "invalid"

   c. Lawyer didn't investigate or inquire any verification

   d. Defendant certified without verification in violation of FRCP 11(b)

R- 205

8. Legal Implications of False Certificate of Service

    A. Federal Rules prohibit the use of a false Certificate of Service to validate filings

    B. The defective certificate should be acknowledged by the court

    C. Certificate is defective and invalid

    D. The false certificate should be removed from the records

    E. The judge should be notified of this violation

### III. VIOLATIONS AND IMPLICATIONS

9. The false certification constitutes violations of Federal Rule of Civil Procedure 11(b) And Federal Rule of Civil Procedure 11(a)

10. The Consequences of the False Certificate that Invalidates the Notice of Appearance; Renders subsequent filings or motions invalid and Creates a lack of proper signature on court filings

11. The false material in the certificate cannot be rectified through simple corrections

12. This fundamental flaw undermines the validity of the entire submission and associated legal action

13. Correction can't be made as 21 days to submit response and served deadline was February 12 2025

14. The behavior appears aimed at distracting Plaintiff and delaying the case

15. The allegation against Defendant for False Certification to the FAA is now evidenced in the judicial system

R- 206

## IV. ADDITIONAL CONSIDERATIONS

16. In the event this application is denied, Plaintiff respectfully requests that a hearing be scheduled before the Court with Judge Ana C. Reyes.

17. Plaintiff requests that the Court permit an amendment to this application if   to be denied based on pleading format or minor errors

18. Plaintiff requests that the Court allow the amendment to be filed

19. Plaintiff Feras does not acknowledge the attorney who submitted the false certificate of service in the Notice of Appearance

20. To respect the Court and avoid technicalities, Plaintiff will Send a copy to the Defendant and will send a copy to the law office that filed the false certificate

21. Plaintiff reserves all legal rights regarding the false certificate

22. Plaintiff requests the Clerk to report this matter to the Judge, based on the attached Declaration of Plaintiff

## III. CONCLUSION

According to FRCP 12(a)(1)(A)(i), a defendant must serve an answer within 21 days after being served with the summons and complaint. In this case Defendant was served properly pursuant to  the Federal Rules of Civil Procedure on January 22, 2025. The applicable time limit for the Defendant to appear or otherwise respond to this action expired on February 12, 2025. As of today, February 24, 2025, the Defendant has not submitted an answer or response to Feras' claims.

Given that the deadline has passed and no response has been filed, the Defendant is in default. The Clerk should enter default against the Defendant as per Federal Rule of

R- 207

Civil Procedure 55(a), which mandates that the clerk must enter a party's default when the party has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise . Plaintiff respectfully requests a clerk's entry of default against Defendant pursuant to Federal Rule of Civil Procedure 55(a). Following the Clerk's entry of default, Plaintiff will seek an entry of default judgment under Federal Rule of Civil Procedure 55(b).

Respectfully submitted,

February 24, 2025
Pro Se Plaintiff

Feras Hindi
7823 New London Dr
Springfield VA 22153
(703)980-6955
Fhindi@friendshiplogistics.com

R- 208

USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 209 of 971

## DECLARATION OF NON-SERVICE

**Case : 1:24-CV-03434-ACR**

I, Feras Hindi, declare as follows:

1. I am the Plaintiff in this matter and have claims against Defendant American Airlines, Inc.

2. To date, I have not been served with the following documents: Notice of Appearance, Motion to Dismiss and its attachments, or Corporate Disclosure by Defendant American Airlines Inc. or their attorneys, by any method requested, or by any approved court method, including mail or personal service.

3. I was not served by American Airlines Inc. or any of their attorneys via electronic mail (email) on February 12, 2025, or at any time thereafter.

4. I am not registered for electronic service and have never consented to receiving electronic service or notifications in this case.

5. I do not have access to the PACER system to view any court filings.

6. I do not have access to the email addresses of Co-Plaintiff Samiha or Co-Plaintiff Tala.

7. I did not consent to or file any Pro Se electronic service notifications, nor have I agreed to receive emails regarding this case.

8. I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct to the best of my knowledge and belief.

R- 209

On February 24, 2025
Pro Se Plaintiff

*F. H*

Feras Hindi
7823 New London Dr
Springfield VA 22153
(703)980-6955
Fhindi@friendshiplogistics.com

R- 210

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2025, Plaintiff Feras Hindi will submit Motion for the Clerk of Federal Court of DC VIA the Intake email " dcd_intake@dcd.uscourts.gov"  and send a true and correct copy of the following document to be served upon the parties listed below:

**MOTION FOR CLERK'S ENTRY OF DEFAULT**

1. Defendant American Airlines, Inc.
   Registered Agent Address: CORPORATION SERVICE COMPANY
   1090 Vermont Ave. NW, Washington, DC 20005

2. A copy will be sent to:
   Micah E. Ticatch
   1945 Old Gallows Road, Suite 650
   Vienna, Virginia 22182

   Method of Service: Via ABC Legal Services (Process Server)

3. Defendant Gulf Air B.S.C., Inc.
   Counsel: Darcy C. Osta, Esq. D.C. Bar No. 1686937
   Mark A. Johnston, Esq. D.C. Bar No. 455764
   AT Eckert Seamans Cherin & Mellott, LLC
   1717 Pennsylvania Ave., N.W., 12th Floor
   Washington, D.C. 20006

   Method of Service: Via ABC Legal Services (Process Server)

4. Plaintiff Tala Josephano & Plaintiff Samiha Ayyash: Accepted Service via Email

A request for process service will be submitted, and service is expected to be completed by the processor. A Proof of Service request (Affidavit of Service) will be filed with the Court upon receipt of confirmation from ABC Legal Services.

Respectfully submitted,
February 24, 2025
Pro Se Plaintiff

*F. H*

Feras Hindi
7823 New London Dr
Springfield VA 22153
(703)980-6955
Fhindi@friendshiplogistics.com

R- 211

Case 1:24-cv-03434-ACR    Document 17-1    Filed 02/24/25    Page 1 of 3
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 212 of 971

1

R- 212

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

| | | |
|---|---|---|
| **Feras Hindi,** | ) | **Case No.:  1:24-cv-03434-ACR** |
| | ) | |
| Plaintiff | ) | |
| **American Airlines Inc.,** | ) | |
| Defendant | ) | |
| _____) | | |

# EXHIBITS

February 23 2025

Feras Hindi
7823 New London Dr
Springfield VA 22153
(703)980-6955
Fhindi@friendshiplogistics.com

**EXHIBITS**

Case 1:24-cv-03434-ACR    Document 17-1    Filed 02/24/25    Page 2 of 3
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 213 of 971

2

# EXHIBITS

1. **Exhibit 1** Proof of Service to

## IN THE US DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Samiha Ayyash, Feras Hindi, Tala Josephano** | Cause No.: **24-cv-03434** |
| Plaintiff/Petitioner | Hearing Date: |
| vs. | |
| **Gulf Air B.S.C, American Airlines INC** | AFFIDAVIT OF SERVICE OF |
| Defendant/Respondent | **SUMMONS; COMPLAINT** |

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, has the authority to serve pleadings in the State named below, and is competent to be a witness therein.

On the **22nd day of January, 2025** at 2:50 PM at the address of **1090 Vermont Ave NW, Washington, DC 20005**; this affiant served the above described documents upon **American Airlines INC** by then and there personally delivering **1** true and correct copy(ies) thereof, by then presenting to and leaving the same with **Alex Hannigan, I delivered the documents to Alex Hannigan who identified themselves as the litigation management representative with identity confirmed by subject showing identification. The individual accepted service with direct delivery. The individual appeared to be a brown-haired white female contact 25-35 years of age, 5'6"-5'8" tall and weighing 120-140 lbs.**

No information was provided or discovered that indicates that the subjects served are members of the U.S. military.

_____    01-22-25
**Emily Sommer**

Residing or doing business at:    **800 4th Street SW #N603, Washington, DC 20024**

Subscribed and sworn to before me this ___22___ day of __January__, 20 _25_ .

_____
Notary Public / Deputy Clerk

10 | 14 | 2029
My commission expires

LEMANUEL L. STEVENS
NOTARY PUBLIC DISTRICT OF COLUMB.
My Commission Expires October 14, 20??

REF: **REF-18715619**

PAGE 1 OF 1
ORIGINAL AFFIDAVIT OF
SERVICE

Tracking #: **0156026283**



R- 214

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

## Civil Division

| | | |
|---|---|---|
| **Feras Hindi** | ) | **Case No.:  1:24-cv-03434-ACR** |
| Plaintiff**,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendant | ) | |
| _____) | | |

## MOTION  FOR ENTRY OF DEFAULT

February 24 2025

**Feras Hindi**

7823 New London Dr

Springfield VA 22153

(703)980-6955

Fhindi@friendshiplogistics.com

R- 215

**To the Clerk of the United States District Court for the District of Columbia**

Pursuant to Federal Rule of Civil Procedure 55(a), Plaintiff Feras Hindi moves for a clerk's entry of default against Defendant Gulf Air B.S.C.

## I. BACKGROUND

Plaintiff Feras Hindi, along with other Plaintiffs, filed an amended complaint seeking relief in the United States District Court for the District of Columbia on December 31, 2024. On January 30, 2025, Defendant was served with the amended complaint, summons, and civil cover sheet in this matter. Defendant's deadline to file responsive pleadings was February 20, 2025, per Fed. R. Civ. P. 12(a)(1)(A)(i). To date, Defendant has not filed responsive pleadings or otherwise appeared in this matter.

## ARGUMENT

Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk should enter default against Defendant Gulf Air B.S.C. The requirements for entry of default are met:

1. Plaintiff seeks relief in the complaint

2. Defendant was properly served on January 30, 2025

3. Defendant has failed to plead or otherwise defend by the February 20, 2025 deadline

Rule 55(a) mandates that "the clerk must enter the party's default" when these conditions are met

R- 216

## II. CONCLUSION

Plaintiff respectfully requests a clerk's entry of default against Defendant Gulf Air B.S.C. pursuant to Federal Rule of Civil Procedure 55(a). Following the Clerk's entry of default, Plaintiff will seek an entry of default judgment under Federal Rule of Civil Procedure 55(b). In the event this application is denied, Plaintiff respectfully requests that a hearing be scheduled before the Court with Judge Ana C. Reyes. Plaintiff respectfully requests that, if the Court finds any deficiencies in this application, permit Plaintiff to amend the application rather than denying it based on pleading format or minor errors. Plaintiff further requests that the Court allow any such amendment to be filed.

This request is based on the attached Declaration of Plaintiff.

Respectfully submitted,
February 24, 2025
Pro Se Plaintiff

Feras Hindi
7823 New London Dr
Springfield VA 22153
(703)980-6955
Fhindi@friendshiplogistics.com

R- 217

## DECLARATION OF NON SERVICE

I, Feras Hindi , declare as follows:

1.  I am the Plaintiff in this action. If called as a witness, I could and would competently testify thereto.

2.   I am an individual with my own Claims and personal injury damages against (Gulf Air B.S.C)

3.  Defendant (Gulf Air B.S.C) was served on January 30 202 , as evidenced by the proof of service on file with this Court.

4.   I have not agreed to any extension or served with one.

5.  I have not consented to any Electronic Serving or notifications or emails. I have not filed a Pro Se Electronic Serving Form

6.  I have not been served by (Gulf Air B.S.C)

**Executed on:** February 24 2025

Pro Se Plaintiff

*F.H*

Feras Hindi
7823 New London Dr
Springfield VA 22153
(703)980-6955
Fhindi@friendshiplogistics.com

R- 218

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2025, Plaintiff Feras Hindi will submit Motion for the Clerk of Federal Court of DC VIA the Intake email " dcd_intake@dcd.uscourts.gov" and send a true and correct copy of the following document to be served upon the parties listed below:

**MOTION FOR CLERK'S ENTRY OF DEFAULT DEFENDANT GULF AIR**

1. Defendant American Airlines, Inc.
   Registered Agent Address: CORPORATION SERVICE COMPANY
   1090 Vermont Ave. NW, Washington, DC 20005

2. A copy will be sent to:
   Micah E. Ticatch
   1945 Old Gallows Road, Suite 650
   Vienna, Virginia 22182

   Method of Service: Via ABC Legal Services (Process Server)

3. Defendant Gulf Air B.S.C., Inc.
   Counsel: Darcy C. Osta, Esq. D.C. Bar No. 1686937
   Mark A. Johnston, Esq. D.C. Bar No. 455764
   AT Eckert Seamans Cherin & Mellott, LLC
   1717 Pennsylvania Ave., N.W., 12th Floor
   Washington, D.C. 20006

   Method of Service: Via ABC Legal Services (Process Server)

4. Plaintiff Tala Josephano & Plaintiff Samiha Ayyash: Accepted Service via Email

A request for process service will be submitted, and service is expected to be completed by the processor. A Proof of Service request (Affidavit of Service) will be filed with the Court upon receipt of confirmation from ABC Legal Services.

Respectfully submitted,
February 24, 2025
Pro Se Plaintiff

*F. H*

Feras Hindi
7823 New London Dr
Springfield VA 22153
(703)980-6955
Fhindi@friendshiplogistics.com

R- 219

Case 1:24-cv-03434-ACR    Document 18-1    Filed 02/24/25    Page 1 of 3
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 220 of 971

1

R- 220

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

| | | |
|---|---|---|
| **Feras Hindi,** | ) | **Case No.:  1:24-cv-03434-ACR** |
| | ) | |
| Plaintiff | ) | |
| **Gulf Air** | ) | |
| Defendant | ) | |
| _____) | | |

# EXHIBITS

February 24 2025

Feras Hindi
7823 New London Dr
Springfield VA 22153
(703)980-6955
Fhindi@friendshiplogistics.com

**EXHIBITS**

2

# EXHIBITS

1. **Exhibit 1** Proof of Service

R- 221

IN THE US DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Samiha Ayyash, Feras Hindi, Tala Josephano** <br> Plaintiff/Petitioner | Cause No.:    **1:24-cv-03434** <br> Hearing Date: |
| vs. <br> **Gulf Air B.S.C, American Airlines INC** <br> Defendant/Respondent | **AFFIDAVIT OF SERVICE OF** <br> **SUMMONS; COMPLAINT; ATTACHMENTS** |

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, has the authority to serve pleadings in the State named below, and is competent to be a witness therein.

On the **30th day of January, 2025** at **3:21 PM** at the address of **1717 Pennsylvania Ave NW 12th floor, Washington, DC 20006**; this affiant served the above described documents upon **Gulf Air BSC** by then and there personally delivering **1** true and correct copy(ies) thereof, by then presenting to and leaving the same with **Gene Gray, I delivered the documents to Gene Gray who identified themselves as the person authorized to accept with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a bald black male contact 45-55 years of age, 6'0"-6'2" tall and weighing 180-200 lbs with glasses.**

No information was provided or discovered that indicates that the subjects served are members of the U.S. military.


_____
**Ibeneme Onyenso**

Residing or doing business at:    **4622 Snowflower Boulevard, Oxon Hill, MD 20745**


Subscribed and sworn to before me this _____30_____ day of _____JAN_____, 20_25_.

_____
Notary Public / Deputy Clerk

WILLIAM L. CARROLL
Notary Public - State of Maryland
Charles County
My commission expires
My Commission Expires May 16, 2026

PAGE 1 OF 1
ORIGINAL AFFIDAVIT OF
SERVICE

Tracking #: **0156976645**

R-222

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

## Civil Division

| | | |
|---|---|---|
| **Samiha Ayash, Feras Hindi** | ) | |
| **Tala Josephano** | ) | **Case No.: 1:24-cv-03434-ACR** |
| | ) | |
| Plaintiffs, | ) | |
| **American Airlines Inc.,** | | |
| **Gulf Air B.S.C** | ) | |
| Defendant. | ) | |
| _____ ) | | |

### MOTION FOR CLERK'S ENTRY OF DEFAULT

February 21 2025

Samiha Ayyash
7823 New London Dr
Springfield VA 22153
(703)980-6955

**RECEIVED**

FEB 27 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

R- 223

1. As The clerk's entry of default is thus mandatory under Federal Rule of Civil Procedure 55(a), which provides that: "When a party against whom a judgment for relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

2. On the last day of the 21-day deadline, Defendant American Airlines' counsel filed five documents via CM/ECF after 5:00 PM (Eastern Time).Defendant American Airlines Inc.'s lawyer falsely certified service on February 12, 2025, at around 5:00 PM via **electronic** mail. Plaintiff Samiha didn't authorize Service Electronically, Plaintiff Samiha wasn't served on **February 12 2025.**

3. Defendant American Airlines misrepresented service by falsely certifying that Plaintiff Samiha and Co-Plaintiff Feras were served with all filings via electronic mail in Violation of 11(b) 11(b)(3)

4. On February 18, 2025, Defendant American Airlines sent an envelope addressed to multiple Plaintiffs. Plaintiff Samiha only became aware of this through notification from Co-Plaintiff Tala .

5. Plaintiff Tala Asked Defendant's lawyer on February 18th 2025 after everyone realized that they were not served or served probably like Tala. Plaintiff Tala asked for proof of service for her so she can manage and coordinate the dates, he told her he has only the filings and pretty much his word.

6. When Plaintiff Tala asked him for tracking number or any proof of service, he assured her that each one was served Via email and mail and offered her extension on the February 18 2025, rather than fixing his mistakes and connect with other Plaintiffs,On

R- 224

february 26 2025 he again send another envelope to the VA address , and again with two names on the envelope. (exhibit 4 )

7. All Plaintiffs were prepared to argue the merits of the case; however, Defendant American Airlines's actions have caused unbearable stress due to their failure to serve Plaintiff Samiha by the deadline or at all. Plaintiffs were taught to strictly not to engage if not served and each  has to be properly as individually served or, Defendant can dismiss the responses .

8. As a result of these failures, Defendant did not **serve** the motion to dismiss or the Notice of Appearance by the deadline. These actions have caused significant prejudice and unnecessary delays, placing additional stress on the Plaintiffs.

9. All of Defendant's filings after including motions that Violates 11(a) and untimely, false certification, and failure to serve within the required 21-day deadline.  A false Certificate of Service that violated 11(b) or Corporate disclosures and motions that violated 11(b) and 11(a) , Motion to dismiss a violating 11(b) and 11(a)cannot be corrected or retroactively validated, as the deadline has already passed in violation of FRCP 12(a)(1)(A)(i) and reason for Plaintiff to enter default and obtain judgment.

10. This is Irreparable Procedural Defects,  The false certificate of service submitted by Defendant cannot be corrected without violating procedural deadlines and ignored punishment

11. **Incorrect Case Number on Key Filings**

12. Case numbers in the United States District Court for the District of Columbia follow a strict format: [year]-[case type]-[sequential number] (e.g., 1:2024-cv-03434ACR). Defendant American Airlines used an incorrect format (2024-cv-3434ACR), omitting the

R- 225

leading zero. Defendant consistently used the incorrect format, while the Court's docket and Plaintiff's filings follow the correct one.

13. This raises concerns about the impact on public access to filings. Accurate case numbers are critical to ensure proper recording and searchability. Searching the correct case number (1:2024-cv-03434) retrieves the official docket, while Defendant's format (2024-cv-3434) leads to inconsistent results, hindering online search.

14. Co Defendant Gulf Air also entered the numbers incorrectly, and the court accepted the filing which only serves defendants in hiding their violations. Plaintiff Request the court to reject any document that was filed with the wrong case numbers

15. Defendant's behavior aimed at distracting the Plaintiff and delaying the case. This lack of legal help trying to navigate, adding pressure on Co Plaintiff Tala that helps everyone, couldn't even get an answer on what to do next.

16. The allegation against Defendant American Airlines for submitting a false certification to the FAA is now evident in the judicial system. This presents an opportunity for the Court to set the record straight and demonstrate to large corporations how not to patronize pro se litigants or fraudulently mislead the Court.

17. These actions appear intended to delay the case until Co-Defendant Gulf Air finalizes its permits to fly in the U.S., thereby avoiding liability.

18. **Plaintiff's Requests**

19. Plaintiff Samiha requests not to add an email address under her name in the communication as this is now becoming a problem .

20. The claims in this case are not only for the Plaintiffs but are also necessary due to the timing of aviation chaos and lives lost. The Audit of American Airlines might reveal

R- 226

other codeshare partners that Defendant skipped properly auditing them.  The requested relief is urgent.

21. Plaintiffs take them hours to write one paragraph and this is what the Defendant wants, tactical draining. Plaintiff Samiha asks if any wording mistakes or use of those hard rules, respectfully allow Plaintiff to Amend.

22. Denying the motion will only cost the judicial resources and taxpayers, as Plaintiff can't continue legally with fraudulent acts by a lawyer and to get be excused by the court is unfair for Plaintiff

23. Plaintiff asks the court respectfully to Enter default against Defendant American Airlines.

24. In the event this motion is denied, Plaintiff Samiha respectfully requests that a hearing be scheduled before Judge Ana C. Reyes and that Co-Plaintiffs be permitted to attend for support and translation purposes, or alternatively, that the Court appoint an Arabic-to-English translator and a lawyer.

25. Plaintiff, aged 85 and grieving, lacks the legal, and physical capacity to argue her claims alone in this case. Plaintiff requests the Court appoint a lawyer to assist with the process. As Defendants are playing with the technicalities in aim to disadvantage the Plaintiff and throw this case out.

26. Plaintiff requests that the Court permit an amendment to this application if it is to be denied based on pleading format or minor errors.

27. Plaintiff requests that the Court allow the amendment to be filed.

28. Plaintiff does not acknowledge the attorney who submitted the false certificate of service in the Notice of Appearance. Plaintiffs can't answer false documents that were served on the deadline

R- 227

29. Plaintiff Samiha requests that the Court take necessary action against this behavior to protect the unrepresented Pro Se litigant.

30. To respect the Court and avoid technicalities, Plaintiff will send a copy of this document to the Defendant and to the law office that filed the false certificate.

31. Plaintiff Samiha and Co Plaintiffs intending to file obstruction of justice and false Misrepresentation on the lawyer personally and the Defendant

## III. CONCLUSION

Plaintiff Samiha was NOT served on February 12 2025, she never consented to electronic serving or emailing Samiha had no access to ayyashsamiha@gmail.com, Plaintiff Samiha was only served on February 18 2025 added two Plaintiffs name. Plaintiff Samiha wasn't served on the 21 days deadline, improperly served on February 18 2023 6 days later.

According to FRCP 12(a)(1)(A)(i), a defendant must serve an answer within 21 days after being served with the summons and complaint. In this case on January 22, 2025 Defendant American Airlines were served properly pursuant to the Federal Rules of Civil Procedure. The applicable time limit for the Defendant to appear or otherwise respond to this action expired on February 12, 2025. The clerk has accepted Co Feras Motion to enter Default.

Given that the deadline has passed and no response has been filed or served in time, the Defendant is in default. The Clerk should enter default against the Defendant as per Federal Rule of Civil Procedure 55(a), which mandates that the clerk must enter a party's default when the party has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise Following the Clerk's entry of default, Plaintiff will seek an entry of default judgment under Federal Rule of Civil Procedure 55(b).

R- 228

Respectfully submitted,
February 27, 2025
Pro Se Plaintiff

Samiha Ayyash
7823 New London Dr
Springfield, VA 2215

R- 229

**DECLARATION**

**Case : 1:24-CV-03434-ACR**

I, Samiha Ayyash, declare as follows:

1. I am the Plaintiff in this matter and have claims against Defendant American Airlines, Inc.

2. I have not been served with the following documents: Notice of Appearance, Motion to Dismiss and its attachments, or Corporate Disclosure by Defendant American Airlines Inc. or their attorneys, by any method requested, or by any approved court method, including mail or personal service on February 12 2025

3. I didn't have access to Ayyashsamiha@gmail.com on February 12, 2025, or at any time thereafter.

4. I am not registered for electronic service and have never consented to receiving electronic service or notifications in this case.

5. I do not have a phone or laptop or computer or any device to receive electronic notification on

6. I don't know the Defendant lawyer's email address and I never spoke to him or emailed him.

7. I do not have access to the email addresses of Co-Plaintiff Feras or Co-Plaintiff Tala.

8. I did not consent to or file any Pro Se electronic service notifications, nor have I agreed to receive emails regarding this case.

9. I declare my statement is true to the best of my knowledge and belief.

R- 230

On February 24, 2025

Pro Se Plaintiff

Samiha Ayyash

7823 New London Dr

Springfield VA 22153

 (347)749-4980

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2025, Plaintiff Samiha Ayyash will submit Motion for the Clerk of Federal Court of DC VIA the Intake email " dcd_intake@dcd.uscourts.gov"  and send a true and correct copy of the following document to be served upon the parties listed below:

**MOTION FOR CLERK'S ENTRY OF DEFAULT**

1. Defendant American Airlines, Inc.
   Registered Agent Address: CORPORATION SERVICE COMPANY
   1090 Vermont Ave. NW, Washington, DC 20005

2. A copy will be sent to:
   Micah E. Ticatch
   1945 Old Gallows Road, Suite 650
   Vienna, Virginia 22182

   Method of Service: Via ABC Legal Services (Process Server)

3. Defendant Gulf Air B.S.C., Inc.
    AT Eckert Seamans Cherin & Mellott, LLC
   1717 Pennsylvania Ave., N.W., 12th Floor
   Washington, D.C. 20006

   Method of Service: Via ABC Legal Services (Process Server)

4. Plaintiff Tala Josephano & Plaintiff Feras waived service & accepted sub service via email ( Josephanotala@gmail.com - Fhindi@friendshiplogistics.com )

A request for process service will be submitted, and service is expected to be completed by the processor. A Proof of Service request (Affidavit of Service) will be available to the Court upon receipt of confirmation from ABC Legal Services.

Respectfully submitted,
February 27, 2025
Pro Se Plaintiff

Samiha Ayyash
7823 New London Dr
Springfield VA 22153

R- 232

R- 233

Case 1:24-cv-03434-ACR    Document 19-1    Filed 02/27/25    Page 1 of 5
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 234 of 971

1

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

**Samiha Ayysah, Feras Hindi,**

**Tala Josephano**                          )          **Case No.:  1:24-cv-03434-ACR**

                                            )
Plaintiff                                   )

**American Airlines Inc. ,**                 )

**Gulf Air B.S.C**                           )
Defendant                                   )

_____)

# EXHIBITS

February 27 2025

**Samiha Ayyash**
7823 New London Dr
Springfield VA 22153
(703)980-6955

**EXHIBITS**

R- 234

Case 1:24-cv-03434-ACR     Document 19-1     Filed 02/27/25     Page 2 of 5
USCA Case #25-7123     Document #2186844     Filed: 08/06/2026     Page 235 of 971

2

# EXHIBITS

1.  **Exhibit 1** Proof of Service American Airlines

2.  **Exhibit** 2 Sample Bounced email and timed it bounced once sent

3.  Exhibit 3 Envelope From Lawyer

R- 235

IN THE US DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| Samiha Ayyash, Feras Hindi, Tala Josephano | Cause No.: **24-cv-03434** |
| Plaintiff/Petitioner | Hearing Date: |
| vs. | |
| **Gulf Air B.S.C, American Airlines INC** | AFFIDAVIT OF SERVICE OF |
| Defendant/Respondent | **SUMMONS; COMPLAINT** |

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, has the authority to serve pleadings in the State named below, and is competent to be a witness therein.

On the **22nd day of January, 2025** at **2:50 PM** at the address of **1090 Vermont Ave NW, Washington, DC 20005**; this affiant served the above described documents upon **American Airlines INC** by then and there personally delivering **1** true and correct copy(ies) thereof, by then presenting to and leaving the same with **Alex Hannigan, I delivered the documents to Alex Hannigan who identified themselves as the litigation management representative with identity confirmed by subject showing identification. The individual accepted service with direct delivery. The individual appeared to be a brown-haired white female contact 25-35 years of age, 5'6"-5'8" tall and weighing 120-140 lbs.**

No information was provided or discovered that indicates that the subjects served are members of the U.S. military.

_____    01-22-25
**Emily Sommer**

Residing or doing business at:    **800 4th Street SW #N603, Washington, DC 20024**

Subscribed and sworn to before me this ___22___ day of __January__, 20_25_.

_____
Notary Public / Deputy Clerk

10 | 14 | 2029
My commission expires

**LEMANUEL L. STEVENS**
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires October 14, 2029

REF:  **REF-18715619**

PAGE 1 OF 1
ORIGINAL AFFIDAVIT OF
SERVICE

Tracking #: **0156026283**



R-236



1 of 3,296

9:20 PM, (2 minutes a

ry Subsystem <mailer-daemon@googlemail.com>  9:20 PM (2 minutes ago)

### Address not found

Your message wasn't delivered to **joesphanotala@gmail.com** because the address couldn't be found, or is unable to receive mail.

**LEARN MORE**

R- 237



R- 238

IN IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAMIHA AYYASH, et al.                    )
                                         )
        Plaintiffs,                      )
                                         )
v.                                       )    Case No.  1:24-cv-3434-ACR
                                         )
GULF AIR B.S.C. et al.,                  )
                                         )
        Defendants.                      )
_____)

**DEFENDANT AMERICAN AIRLINES, INC.'S**
**OPPOSITION TO PLAINTIFFS' MOTIONS FOR DEFAULT**

Defendant American Airlines, Inc. hereby responds to Plaintiff Hindi's Application for Entry of Default (Dkt. 16), Plaintiff Hindi's Motion for Clerk's Entry of Default (Dkt. 17), and Plaintiff Ayyash's Motion for Clerk's Entry of Default (Dkt. 19).  For the following reasons each of those motions should be denied:

1.      Plaintiffs filed their joint Complaint on December 10, 2024 (Dkt. 1), which they amended on December 31, 2024. (Dkt. 2.)

2.      On January 8, 2025, Plaintiff Tala Josephano filed a Pro Se Consent to Receive Notices of Electronic Filing.  (Dkt. 3.)

3.      American Airlines was served with the Amended Complaint on January 22, 2025, with a response due on February 12, 2025.  (Dkt. 4.)

4.      On February 12, 2025, undersigned counsel filed a Notice of Appearance, Corporate Disclosure and Motion to Dismiss.  (Dkts. 6 - 8.)

5.      In light of the Pro Se Consent to Receive Notices of Electronic Filing, undersigned counsel believed the filing would provide notice of those filings to Plaintiffs.  Undersigned also provided courtesy copies of the filings to the email address listed in the Amended Complaint.  (*See*

1

R- 239

Exhibit A.)    The Amended Complaint appears to identify a shared email address (AyyashSamiha@gmail.com) and a shared postal address for Plaintiff Ayyash and Plaintiff Hindi ("Moving Plaintiffs").  (*See* Dkt. 2, p. 6 of 123.)

6.    On February 13, 2025, undersigned's office sent additional copies of each of the filings to all three plaintiffs by first class mail to the addresses listed in the Amended Complaint. On the same day, undersigned had an extensive call with Plaintiff Josephano regarding the case, who indicated she was contacting counsel after learning of counsel's representation of American Airlines in this matter from PACER.  During the call, it was confirmed that Plaintiff Josephano was aware of the filings made on February 12, 2025.

7.    On February 20, 2025, American Airlines filed a request for a motion conference, which was served on each of the Plaintiffs by first class mail.  (Dkt. 14.)

8.    Plaintiff Josephano has communicated repeatedly with undersigned counsel regarding service of the initial Motion to Dismiss.  In addition to explaining that service under the rules does not require a tracking number or formal personal service, undersigned counsel has also repeatedly communicated that he will consent to reasonable extensions of time any of the Plaintiffs need in order to respond to American Airlines' filings.  Plaintiff Josephano apparently communicated that message to Moving Plaintiffs.  (*See* Dkt. 19, ¶ 6.)

9.    Plaintiff Hindi filed his motions asking for entry of default on February 23 and 24, 2025. (Dkts. 16, 17.)  Plaintiff Ayyash filed her motion on February 27, 2025. (Dkt. 19.)

10.    Both Moving Plaintiffs acknowledge that American Airlines timely filed its Motion to Dismiss on February 12, 2025.  (*See* Dkt. 17 at 2 ("On February 12, 2025, after 5:19 PM Eastern Time, Defendant's counsel filed five documents via the CM/ECF system"); Dkt. 19, ¶ 2

R- 240

("Defendant American Airlines' counsel filed five documents via CM/ECF after 5:00 PM (Eastern Time).").)

11.     Despite this acknowledgement, Moving Plaintiffs both suggest that an entry of default under Rule 55(a) is somehow appropriate.  This is not correct.  By its terms, Rule 55(a) only applies when a defendant "fails to plead or otherwise defend."  Because American Airlines timely responded to the Amended Complaint, there is no basis for an entry of default.  *See, e.g., Younger v. D.C. Pub. Sch.*, 2014 WL 12959305, at *1 (D.D.C. 2014) (holding "Rule 55(a) does not apply here…[because] Defendants have filed motions to dismiss the Amended Complaint."); *Marin v. Bank of Am. N.T. & S.A.*, 194 F.3d 174 (D.C. Cir. 1999); *Peavey v. Holder*, 2010 WL 3155823, at *1 (D.C. Cir. 2010); *Jean-Baptiste v. U.S. Dep't of Just.*, 2024 WL 1253858, at *7 (D.D.C. 2024).

12.     Both Plaintiffs also allege that service of the Motion to Dismiss was somehow not proper.  However, as Plaintiff Ayyash's own exhibits demonstrate, undersigned's office did in fact serve both Moving Plaintiffs by first class mail as permitted by Rule 5(b)(2)(C).  (*See* Dkt. 19-1, p. 5 of 5.)  Counsel also served both Moving Plaintiffs at the email address listed for them in the Amended Complaint.  (Exhibit A.)  In addition, Counsel has agreed to consent to any reasonable extension requested by Plaintiffs, which would negate any prejudice Plaintiff could have possibly experienced from slow delivery of American Airlines' pleadings.

13.     Given that American Airlines timely filed and served its Motion to Dismiss, the Plaintiffs' motions are without merit and should be denied.

Dated: March 4, 2025                          Respectfully submitted,

                                              ___/s/ Micah E. Ticatch_____
                                              Micah E. Ticatch, DC Bar No. 1005398

R- 241

ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines, Inc.*

4

R- 242

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of March 2025 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system which will serve a copy on all counsel of record.  I will also serve a copy of the foregoing via first class and electronic mail upon the following:

> Tala Josephano
> 615 Catalina Ave, #233
> Redondo Beach, CA 90277
> joesephanotala@gmail.com
>
> Samiha Ayyash
> 7823 New London Dr,
> Springfield, VA 22153
> 703-980-6955
> ayyashsamiha@gmail.com
>
> Feras Hindi
> 7823 New London Dr,
> Springfield, VA 22153
> 703-980-6955
> Fhindi@friendshiplogistics.com
>
> *Pro Se Plaintiffs*

>     /s/ Micah E. Ticatch
> Micah E. Ticatch, DC Bar No. 1005398
> ISLER DARE, P.C.
> 1945 Old Gallows Road, Suite 650
> Vienna, Virginia 22182
> (703) 748-2690
> (703) 748-2695 (fax)
> mticatch@islerdare.com
>
> *Counsel for American Airlines, Inc.*

5

R- 243

# EXHIBIT A

R- 244

| | |
|---|---|
| **From:** | Micah E. Ticatch |
| **To:** | joesphanotala@gmail.com; ayyashsamiha@gmail.com |
| **Subject:** | AYYASH, et al v. GULF AIR, BSC, et al. |
| **Date:** | Wednesday, February 12, 2025 5:31:00 PM |
| **Attachments:** | [DN 6] 2025.02.12 NOA MET.pdf |
| | image001.png |
| | image002.png |
| | [DN 7] 2025.02.12 MTD and Memo.pdf |
| | [DN 7-1] 2025.02.12 Proposed Order.pdf |
| | [DN 8] 2025.02.12 Corp Disclosure.pdf |

Please the attached, which were filed this evening.


Thanks,


**Micah E. Ticatch**
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
Direct: 703-663-1308
Fax: 703-748-2695



R- 245

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Samiha Ayyash, Feras Hindi,** | ) | |
| **Tala Josephano** | ) | **Case No.: 1:24-cv-03434-ACR** |
| | ) | |
| *Plaintiffs,* | ) | |
| V. | ) | |
| **American Airlines Inc.,** | ) | |
| **Gulf Air (B.S.C.)** | ) | |
| *Defendants.* | ) | |

_____

## PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO FILE OPPOSITION AND REQUEST FOR HEARING

 Plaintiff Tala , proceeding pro se, respectfully moves this Honorable Court for an extension of time until March 12, 2025, to file opposition to Defendant American Airlines' Motion to Dismiss. Plaintiffs request a hearing at the Court's earliest convenience to address procedural issues, including defects in service, the validity of Defendant American Airlines' certificate of service, notice of Appearance and Motion to Dismiss, and procedural confusion regarding the separation of Plaintiffs' claims.

**RECEIVED**

FEB 28 2025


Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

R- 246

Defendant American Airlines' Certificate of Service states that Plaintiffs were served on February 12, 2025, but Plaintiffs were not served on that date. Plaintiff Tala was only properly served via the court system after February 18, 2025. American Airlines counsel couldn't understand maybe due to the language barrier that Plaintiff Tala needed to be properly served so the timing of the certificate reflects the deadline for Plaintiff's reply and they all can reply together saving time and resources for everyone.

Meaning if the certificate reflected the correct tie for the Plaintiffs, I would not have been requesting extension or submitting this request.

Co- Plaintiffs were not served at all. Defendant's lawyer did mail the documents, but they did not arrive until after February 23, 2025, and the email notification was sent on February 18, 2025 to Plaintiff Tala.  Even though he emailed Tala a copy ( after February 12 2025) , there was a  big confusion where the lawyer did not understand that there was a problem with his service.

Plaintiff did not receive any court notification or service on February 12, 2025. Upon inquiry, court staff informed Plaintiff Tala that her electronic notification account was inactive at the time of service, citing a **"clerk error."** This marks the fourth court error in Tala's case, all of which have only benefited the Defendants, despite Plaintiff submitting the Pro Se e-notification in January.

Plaintiff Tala was officially notified by the court on February 18, 2025. The procedural issue caused significant confusion and delay, preventing Plaintiff from timely preparing an opposition, especially without the other Plaintiffs being properly notified.

R- 247

**Violation of Rule 11(b) and Motion to Dismiss:** The Certificate of Service and Motion to Dismiss violate Rule 11(b), 11(b)(3), and 11(a). The Certificate cannot be corrected now, as the 21-day period for service has passed, and the Defendant failed to serve by the last day. The Defendant's actions, combined with internet access issues, have left Plaintiff Tala unsure of how to respond, whether to strike the motion, oppose it, or leave it for the court to dismiss. Plaintiff lacks the financial resources for legal representation, and the free consultations are not truly free. Additionally, Plaintiff's phone is compromised, preventing access to legal representation.

The case involves several procedural irregularities, such as defects in service, misleading filings, and noncompliance with federal rules from Both Defendants in simple procedure. As a pro se litigant, Plaintiff requires additional time to properly address these issues in a response.

**Gulf Air B.S.C**

The plaintiffs are preparing for trial based on the merits of the case, not on technicalities intended to dismiss it. However, they must now address the tactical legal harassment and government interference by Defendant Gulf Air, which includes the unlawful sharing of private information about the plaintiffs through surveillance. This surveillance seems to be coordinated at a high level, involving various agents, including British and foreign personnel, with deep connections to our government.

Gulf Air is gaining an unfair advantage by using information manipulated through surveillance from Plaintiff Tala Electronic devices and network , primarily targeting Plaintiff Tala, with assistance from within the government system. If Gulf Air had

R- 248

redirected the resources and money they've spent—and continue to spend—on silencing Tala and covering up their deficiencies from the American public and government toward fixing their flawed system, it would have been far more cost-effective. Despite their efforts, Gulf Air still faces the scrutiny of this court, and this situation is clearly not being handled well on their end.

Evidence will show that someone is aiding Gulf Air with government interference, including intercepting Plaintiff Tala's mail and preventing proper communication, which has led to missed court dates and various issues. Now it seems they are getting help from inside the court.

Plaintiff Tala is honored to stand up for her family and the American people against billion-dollar corporations, using nothing more than a Samsung Chromebook valued at $285 and a broken iPhone 13 screen. This surveillance even extended to hacking her ChatGPT account, which she uses to write these cases.

This is not paranoia. Plaintiff Tala is an expert in surveillance and security, coming from a family with deep roots in the intelligence field since she was 10 years old. Tala is more than capable of identifying these tactics and could even offer advice on how not to be so obvious. Or perhaps the people involved are so entrenched in the government system that they no longer care about being discreet, thinking that Plaintiff Tala will never reach a conclusion and underestimating the Checks and Balances in this country. But no matter the odds, the plaintiffs are still bringing this case forward.

Despite the enormous resources Gulf Air has invested to try to derail this case, they have failed. Gulf Air is now facing over $200 million in damages and the potential

R- 249

exposure of being an unsafe airline that manipulates US government audits. Worst of all, they risk the suspension of all their permits. At a minimum, they will be in Tala's network.

This now requires the Judge's interference to clear this and for everyone to understand their Roles and Responsibilities in this case rather than patronizing the Plaintiffs for not having a lawyer.

**Procedural Confusion Due to Plaintiff's Separation:** Co-Plaintiffs have filed separate motions distinct from the opposition to dismissal, complicating procedural deadlines. Plaintiff Tala is unsure whether to respond to a motion that may be procedurally invalid due to defective service and other errors.

**Prejudice to Defendants:** Defendants will not be prejudiced by this request. Defense counsel of AA fairly to me personally has indicated no objection to an extension. We tried to communicate, but there was a communication barrier for some reason. This request is made in good faith to ensure fair and proper case proceedings. The American Airlines lawyer seems to be understanding of the situation, yet he refuses to change the certificate to reflect the correct dates for all plaintiffs to when they were actually served. He is sure they were served on February 12th but no one was served or notified on February 12.

Issues with the Meet-and-Confer Process: The last-minute submission appears to hinder, rather than advance, proceedings. The purpose of a Meet-and-Confer is to narrow issues and facilitate litigation, not to manipulate the process with self-serving documents. Given the Defendants' actions, this submission lacks a legitimate purpose.

R- 250

Plaintiff intends to file a motion to dismiss the Meet-and-Confer and request a default judgment under Rule 12(a)(1)(A)(i), pending court discussion to avoid wasting time and resources.

Moreover, the Meet-and-Confer was not a valid response to the claims, and the other two Plaintiffs were not notified. Plaintiff Tala had to access Samiha's email on her phone after realizing it was being used, despite it being created solely for Samiha's inheritance and added to the case for formal reasons. Samiha, 85 years old, does not read or respond to emails. Tala found a sent email to Gulf Air from Samiha's account, which Samiha cannot access or manage without assistance. It's unclear if the email was sent by Tala mistakenly, given the volume of communication with Gulf Air's lawyer and the stress she was under, or if it was sent by Gulf Air or someone in Tala's network. Samiha never consented to this email. Samiha doesn't have a phone.

Plaintiff Tala takes her days to write a paper and apologies for not reaching out to the extension before as till now Plaintiff Tala doesn't know what day to count the service date.

**RELIEF REQUESTED**

For these reasons, Plaintiff respectfully requests that the Court:

1. If Plaintiff Tala legally is allowed to reply to motion that she knows has false info in certifying, Plaintiff Tala requests to Extend the deadline for Plaintiffs to file opposition to Defendant American Airlines' Motion to Dismiss until March 10, 2025.

R- 251

2.  Schedule a hearing at the Court's earliest availability to address:

   A.  The validity of Defendant American Airlines' certificate of service.

   B.  The procedural handling of Plaintiffs' separate claims.

   A.  Court errors that have affected case proceedings.

   B.  The Meet-Confor tactics to delay this case until Gulf Air secures all permits needed.

   C.  Setting the records and documenting Gulf Air actions since this case started as Plaintiff Tala now believes they will try to harm her physically or her family, as they have tried to do before.

**Conclusion:** Plaintiff seeks a fair trial and an opportunity to present evidence of violations. This request for an extension and necessary hearing is made in good faith to ensure fair and proper proceedings.Plaintiff requests the Court grant this motion to ensure fair and just resolution of the case.

**Dated**: February 28, 2025

**Respectfully submitted,**

**Tala Josephano**

615 S Catalina Ave #233

Redondo Beach, CA 90277

Josephanotala@gmail.com

*Pro Se Plaintiff*

R- 252

R- 253

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2025, Plaintiff Tala Josephano sent a true and correct copy of the following documents to be served upon the parties listed below:

Motion Requesting Extension & Hearing

1-Defendant American Airlines, Inc.

Counsel of Record: Micah E. Ticatch Isler Dare, P.C. 1945 Old Gallows Rd, Suite 650 Vienna, VA 22182

Method of Service: Email to mticatch@islerdare.com

2-Defendant Gulf Air B.S.C., Inc. Conceal OF Record  Darcy C. Osta, Esq.D.C. Bar No. 1686937 Email: dosta@eckertseamans.com Phone: (202) 659-6600. Mark A. Johnston, Esq. D.C. Bar No. 455764 Email: mjohnston@eckertseamans.com Phone: (202) 659-6600 Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Personal delivery via ABC Legal Services (Process Server)

Email : **dosta@eckertseamans.com , MJohnston@eckertseamans.com**

3- Plaintiff Feras & Plaintiff Samiha Ayyash : Waived service, Courtesy copy will be sent to Fhindi@friendshiplogistics.com and XXXXXX Phone number.

Respectfully submitted,

February 28 2025

**Pro Se Plaintiff**

**Tala Josephano**

615 S Catalina Ave #233
Redondo Beach CA 90277
Josephanotala@gmail.com
347-749-4980

R- 253

Case 1:24-cv-03434-ACR   Document 22   Filed 03/03/25   Page 1 of 6
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 254 of 971

1

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

### Civil Division

**Samiha Ayyash, Feras Hindi**

| | | |
|---|---|---|
| **Tala Josephano** | ) | **Case No.:  1:24-cv-03434-ACR** |
| Plaintiff**,** | ) | |
| | | |
| **American Airlines INC,** | ) | |
| | | |
| **, Gulf Air B.S.C** | ) | |
| Defendant | ) | |
| | | |
| _____ | ) | |

## MOTION  FOR ENTRY OF DEFAULT

March 2nd 2025                               **Samiha Ayyash**

7823 New London Dr

Springfield VA 22153

(703)980-6955



**RECEIVED**

MAR 3 2025
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

**MOTION  FOR ENTRY OF DEFAULT**

R- 254

2

**To the Clerk of the United States District Court for the District of Columbia**

Pursuant to Federal Rule of Civil Procedure 55(a), Plaintiff Samiha Ayyash moves for a clerk's entry of default against Defendant Gulf Air B.S.C.

## BACKGROUND

Plaintiff Samiha Ayyash, along with others, filed a complaint in the United States District Court for the District of Columbia on December 31, 2024. Defendant Gulf Air B.S.C.  was served on January 30, 2025, with a deadline to respond by February 20, 2025, under Fed. R. Civ. P. 12(a)(1)(A)(i).  FCRP 12(a) Time to Serve a Responsive Pleading (1) *In General.* Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows: (A) A defendant must serve an answer: (i) within 21 days after being served with the summons and complaint; or .

## ARGUMENT

The Clerk should enter default as Defendant has been properly served, yet failed to plead or defend as required by Federal Rules.

*"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."*

Defendant Gulf Air has a documented history of evading courts, obstructing justice, preventing witnesses and disobeying court orders without respect to others grief or the judicial system.

**MOTION  FOR ENTRY OF DEFAULT**

R- 255

Defendant Gulf Air has repeatedly failed to comply with more than five court orders in the Death of Captain Mohannad and Regulations Violations ( See Exhibit 1 Death Certificate)  and has disregarded multiple requests from law enforcement investigators in Bangladesh. Plaintiffs seek corrective measures and relief. Defendant's continued delays and obstruction have caused ongoing hardship to Plaintiff Samiha Ayyash and rising the Public as no corrective measure has been applied or announced.  ( See Exhibit 2 Court Order to investigate Gulf Air ) .

## CONCLUSION

Plaintiff requests a clerk's entry of default against Defendant Gulf Air B.S.C. under Fed. R. Civ. P. 55(a). If denied, Plaintiff requests a hearing before Judge Ana C. Reyes, with Co-Plaintiffs present.  Due to financial hardship, Plaintiff cannot retain an attorney and requests court-appointed counsel or permission for Co-Plaintiffs to assist. Plaintiff requests the Court permit amendments to this motion if necessary and allow submission of evidence and live testimony in support of this request. As advised, Plaintiff Will send a copy to Defendant counsel.

March 2nd 2025

Pro Se

Samiha Ayyash

7823 New London Dr
Springfield VA 22153
(703)980-6955

**MOTION  FOR ENTRY OF DEFAULT**

R- 256

4

## Declaration of Samiha Ayyash

Case : 1:24-CV-03434ACR

I, **Samiha Ayyash**, declare as follows:

1. I am a Plaintiff in this matter and have claims against Defendant Gulf Air B.S.C. I am available to testify if called by the court

2. I have not been served by Defendant Gulf Air B.S.C.

3. I don't have a phone or computer or laptop

4. I have not filed or consented to Pro Se electronic service notifications and have not agreed to receive electronic mail regarding this case.

5. I didn't agree to any extension.

6. I am not registered for electronic service and have never consented to receiving electronic service in this case or emails

7. I have standing this case and I am a legal heir of Captain Mohannad and beneficiary

8. I have never consented to engage or meet with any attorneys in this matter.

**MOTION  FOR ENTRY OF DEFAULT**

R- 257

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct to the best of my knowledge and beliefs.

March 2nd 2025

Pro Se

*S.A*

Samiha Ayyash

7823 New London Dr

Springfield VA 22153

(703)980-6955

**MOTION  FOR ENTRY OF DEFAULT**

R- 258

## CERTIFICATE OF SERVICE

I hereby certify that on March 2nd, 2025, Plaintiff Samiha Ayyash will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Application for Entry of Judgment  Against Defendant Gulf Air B.S.C

**Defendant Gulf Air B.S.C., Inc.**

Eckert Seamans Cherin & Mellott, LLC, 1717 Pennsylvania Ave., N.W., 12th Floor, Washington, D.C. 20006.

Method of Service: Via ABC Legal Services (Process Server).

**Defendant American Airlines, Inc.**

Registered Agent Address: CORPORATION SERVICE COMPANY, 1090 Vermont Ave. NW, Washington, DC 20005.

A copy will be sent to **Micah E. Ticatch**, 1945 Old Gallows Road, Suite 650, Vienna, Virginia 22182.

Method of Service: Via ABC Legal Services (Process Server).

**Plaintiff Tala Josephano & Plaintiff Feras Hindi**: Accept message service.

A request for process service is being submitted, and service is expected to be completed by the processor. A formal Proof of Service request and Service (Affidavit of Service) will be filed with the Court upon request

Respectfully submitted,

March 2nd 2025

**Pro Se Plaintiff**

**Samiha Ayyash**

7823 New London Dr

Springfield VA 22153
(703)980-6955

**MOTION  FOR ENTRY OF DEFAULT**

R- 259

Case 1:24-cv-03434-ACR    Document 22-1    Filed 03/03/25    Page 1 of 7
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 260 of 971

1

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

| | | |
|---|---|---|
| **Samiha Ayysah, Feras Hindi,** | | |
| **Tala Josephano** | ) | **Case No.:  1:24-cv-03434-ACR** |
| | ) | |
| Plaintiff | ) | |
| **American Airlines Inc. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendant | ) | |
| _____) | | |

# EXHIBITS

March 2nd 2025

**Samiha Ayyash**
7823 New London Dr
Springfield VA 22153
(703)980-6955

**EXHIBITS**

R- 260

Case 1:24-cv-03434-ACR    Document 22-1    Filed 03/03/25    Page 2 of 7
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 261 of 971

2

# EXHIBITS

1. **Exhibit 1** Proof of Service Gulf Air B.S.C

2. **Exhibit** 2 Death Certificate

3. **Exhibit** 3 Court Order / Gulf air

**EXHIBITS**

R- 261

IN THE US DISTRICT COURT FOR THE DISTRICT OF COLUMBIA    Exhibit 1

| | |
|---|---|
| **Samiha Ayyash, Feras Hindi, Tala Josephano**<br>Plaintiff/Petitioner | Cause No.:  **1:24-cv-03434**<br>Hearing Date: |
| vs.<br>**Gulf Air B.S.C, American Airlines INC**<br>Defendant/Respondent | AFFIDAVIT OF SERVICE OF<br>**SUMMONS; COMPLAINT; ATTACHMENTS** |

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, has the authority to serve pleadings in the State named below, and is competent to be a witness therein.

On the **30th day of January, 2025** at **3:21 PM** at the address of **1717 Pennsylvania Ave NW 12th floor, Washington, DC 20006**; this affiant served the above described documents upon **Gulf Air BSC** by then and there personally delivering **1** true and correct copy(ies) thereof, by then presenting to and leaving the same with **Gene Gray, I delivered the documents to Gene Gray who identified themselves as the person authorized to accept with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a bald black male contact 45-55 years of age, 6'0"-6'2" tall and weighing 180-200 lbs with glasses.**

No information was provided or discovered that indicates that the subjects served are members of the U.S. military.

**Ibeneme Onyenso**

Residing or doing business at:    **4622 Snowflower Boulevard, Oxon Hill, MD 20745**

Subscribed and sworn to before me this _30_ day of _JAN_, 20_25_.

_____
Notary Public / Deputy Clerk

WILLIAM L. CARROLL
Notary Public - State of Maryland
Charles County
My commission expires My Commission Expires May 16, 2026

USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 263 of 971    Exhibit 2

 

# Medical Certificate of Cause of Death

| | |
|---|---|
| Hospital Name | UNITED HOSPITAL |
| Hospital Code No. | |
| Admission Reg. No. | 1000623724 |
| Ward No. | GICU #08 |

**Patient Name:** MOHANNAD YOUSEF HASSAN AL HINDI

**Father's/ Mother's Name:** YOUSEF

**Address**
House/Road (Name/No.): FLAT 63, ROAD 22
Village/Area/Town: BLD 113
Union/Ward: ALFATEH 324
Post Office: 
Post Code: 
Upazila/Thana: 
District: BAHRAIN

**Sex:** ☑ Male | Religion: ☑ Islam

**Occupation:** ☑ Service | Other: CAPTAIN

**Date of Birth of Deceased:** 20 03 1959
**Age if DoB is not available:** 63 y
**Date of admission:** 14 12 2022

**Time of Admission:** 06 15
**Date of Death:** 14 12 2022
**Time of Death:** 12 08

**NID of Deceased/Spouse/Parents NID (< 18 years):** Q909271
☑ Deceased

**Family Cell Phone number (if available):** 017 77 99790

## Frame A: Medical data: Part 1 and 2

**1. Report disease or condition directly leading to death on line a. Report chain of events in due to order (if applicable). State the underlying cause on the lowest used line**

| | Cause of death | Time interval from onset to death |
|---|---|---|
| a | CARDIOGENIC SHOCK | |
| b | ST ELEVATED MYOCARDIAL INFARCTION (LEFT MAIN 99% BLOCK) | |
| c | Due to: | |
| d | Due to: | |

**2. Other significant conditions contributing to death** (time intervals can be included in brackets after the condition): HTN, BRONCHIAL ASTHMA

## Frame B: Other medical data

Was surgery performed within the last 4 weeks? ☑ No

Was an autopsy requested? ☑ No

### Manner of death
☑ Disease

## For women of reproductive age

| | |
|---|---|
| Name | DR. NASNN JAHAN |
| Position | SENIOR HOUSE OFFICER |
| BMDC Reg.No. | A61003 |

Signature with Date: 14/12/22
SHO on duty

Bangladesh 'Form No:

UHL/MR-183/VER-0

R- 263



# IN THE SUPREME COURT OF BANGLADESH

## HIGH COURT DIVISION

Exhibit 3

### (SPECIAL ORIGINAL JURISDICTION)

### <u>WRIT PETITION NO. 12120 of 2023</u>

IN THE MATTER OF:

An application under Article 102 of the Constitution of the People's Republic of Bangladesh.

AND

IN THE MATTER OF;

Inaction and failure of the Respondent No. 2 to conduct investigation/inquiry into the role of the Respondent No. 3 in the death of the Petitioner No.1's brother.

AND

IN THE MATTER OF:

Direction upon Respondent No. 2 to take appropriate punitive actions against the Respondent No.3 subject to conducting investigation/inquiry into the role of the Respondent No.3 in the death of the Petitioner No. 1's brother.

AND

IN THE MATTER OF;

Late Mohammad Yousef Hassan Al Hindi, Son of Tala Yousef Hasan Elhendy of address: House/Holding: 1874, PCHLomit CA 90717, United States of America.

AND

IN THE MATTER OF:

Tala Elhendy Josephano, daughter of Tala Yousef Hasan Elhendy, of address: House/Holding: 1874, PCHLomit CA 90717, United States of America and another.

"দেশপ্রেমের শপথ নিন, দুর্নীতিকে বিদায় দিন"

R- 264

…..Petitioners.

## -VERSUS-

1. Government of Bangladesh, represented by the Secretary, Ministry of Civil Aviation and Tourism, Bangladesh Secretariat, Ramna, Dhaka.

2. Chairman, Civil Aviation Authority of Bangladesh, Headquarters, Kurmitola, Dhaka-1229.

3. Gulf Air, Flat 12, Building 142, Road No 2504, Seef, Bahrain.

4. Country Manager, Gulf Air, Hassan Center, 8th floor, House 58/B, Road 131, Gulshan-1, Dhaka 1212.

5. The Station Manager, Gulf Air, Hassan Center, 8th floor, House 58/B, Road 131, Gulshan-1, Dhaka 1212.

6. Khalil, the First Officer, Gulf Air, Flat 12, Building 142, Road No 2504, Seef, Bahrain.

7. Federal Aviation Administration of Address: Orville Wright Federal Building, 800 Independence Avenue, S.W Washington, D.C., United States of America represented by its Bangladesh Staff, Daniel Jacob.

….Respondents.

**Present:**

**Mr. Justice K.M. Kamrul Kader.**

**And**

**Mr. Justice Khizir Hayat.**

## The 15th day of January, 2024.

Mr. Saqeb Mahbub, Advocate

…..For the Petitioners.

Mr. Sk. Shafiuzzaman, DAG with,

Ms. Rehena Sultana, AAG and

Mr. Ashique Rubaiat, AAG and

"দেশপ্রেমের শপথ নিন, দুর্নীতিকে বিদায় দিন"

R- 265



Mr. Md. Samiul Alam Sakar, AAG and

Ms. Zulfia Akhter, AAGs

.....For the respondents

Supplementary affidavit do form part of the main petition.

Let a Rule Nisi be issued calling upon the respondents to show cause as to why the inaction/failure of the respondent No.2 to conduct investigation/ inquiry relating to the death of brother of the petitioner No.1 by forming an enquiry committee should not be declared to be without lawful authority and is of no legal effect and/or such other or further order or orders pass as to this Court may seem fit and proper.

The Rule is made returnable within 04 (four) weeks from date.

The petitioners are directed to put in requisites for service of notices upon the respondents in usual course and through registered post within 48 hours from date.

K.M. Kamrul Kader.

Khizir Hayat.

প্রত্যায়িত অবিকল প্রতিলিপি

22-01-24

সহকারী রেজিস্ট্রার
বাংলাদেশ সুপ্রীম কোর্ট, হাইকোর্ট বিভাগ
(১৮৭২ ইং সনের ১ম আইনের
৭৬ ধারামতে ক্ষমতা প্রাপ্ত)

Typed by: Monir: 22.01.24.

Read by: 22.01.24

Exam by: 4

Readied by: 22-1-24

22-01-24

নূরুল আমিন
প্রশাসনিক কর্মকর্তা

22.01-24

মোঃ রফিকুল ইসলাম খান
সুপারিনটেনডেন্ট

R- 266

"দেশপ্রেমের শপথ নিন  দুর্নীতিকে বিদায় দিন"

**U.S. DISTRICT COURT**
**DISTRICT OF COLUMBIA**

### PRO SE CONSENT TO RECEIVE NOTICES OF ELECTRONIC FILING

<u>CHECK ONLY ONE BOX FOR THE APPLICABLE SECTION BELOW:</u>

☐ **INITIAL REQUEST:** (Check this box to begin receiving notices of electronic filing)

I understand that I waive my right to receive service of documents by first class mail pursuant to Federal Rule of Civil Procedure 5(b)(2)(E).

I understand that I will be sent notices of electronic filing via e-mail and upon receipt of a notice, I will be permitted **ONE** "free look" at the document by clicking on the hyperlinked document number, at which time I should print or save the document to avoid further charges. The **ONE** "free look" will expire in 15 days from the date the notice was sent. After the **ONE** "free look" is used or expired, the document can be accessed by me through PACER (Public Access to Court Electronic Records) and I may be charged to view the document or for FREE by using the public terminals at the Clerk's Office.

I understand that it is strongly recommended that I establish a PACER account by visiting the PACER website at www.pacer.gov, which will allow me to view, print, and download documents at any time for a nominal fee.

The e-mail address I provided below is valid and I understand I am responsible for checking it on a regular basis. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address.

I understand that electronic service does not allow me to file documents electronically and does not mean that I can serve documents by e-mail. I must continue to file all communications regarding my case in paper copy with the Court and serve the opposing party.

I understand that I must file a consent in each case in which I wish to receive electronic service and that electronic service is not available in Social Security or Immigration cases or for incarcerated litigants.

☐ **UPDATE TO INFORMATION:** (Check this box to make changes to your email address)

I have a new email address as indicated below.

☑ **REQUEST TO DEACTIVATE ELECTRONIC NOTICING:** (Check this box to request deactivate electronic noticing)

I request deactivation of electronic noticing. I understand that by deactivating my account, I will begin receiving all filings via U.S. mail instead of email.

I understand that I will continue to receive electronic notices until such time as the Court has deactivated my account.

*I am a pro se party and I have read the applicable section check-marked above and understand and agree to the terms and conditions set forth therein. The U.S. District Court bears no liability for errors resulting from the information I have submitted on this form.*

Signature: _____    Date: _____ March 6 2025 _____

Printed Name: ___Tala Josephano_____    Case No: ___1:24-CV-0343ACR_____

Home Address:___615 S Catalina Ave #233_____    Redondo Beach CA 90277_____

| My Email Address is: | Josephanotala@gmail.com |
|---|---|

RETURN THE FORM VIA MAIL OR IN PERSON TO:
The Clerk's Office
U.S. District Court
333 Constitution Ave. NW, Room 1225
Washington, DC 20001

**RECEIVED**

MAR 7 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

R- 267

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAMIHA AYYASH, *et al.*,  ) | |
| ) | |
| Plaintiffs,  ) | |
| ) | Case No. 1:24-cv-03434-ACR |
| v.  ) | |
| ) | |
| GULF AIR B.S.C. (C), *et al.*,  ) | |
| ) | |
| Defendants.  ) | |
| _____ ) | |

**DEFENDANT GULF AIR B.S.C. (C)'S**
**OPPOSITION TO PLAINTIFFS' MOTIONS FOR DEFAULT**

Defendant, Gulf Air B.S.C. (c) ("Gulf Air"), by undersigned counsel, respectfully submits this Opposition to the Motions for Entry of Default filed by Plaintiffs Feras Hindi ("Plaintiff Hindi") and Samiha Ayyash ("Plaintiff Ayyash") (collectively, "Moving Plaintiffs"). The motions should be denied for the following reasons.

**BACKGROUND**

On December 10, 2024, Plaintiffs Samiha Ayyash, Feras Hindi, and Tala Josephano ("Plaintiffs") filed a joint Complaint in this Court against Gulf Air and American Airlines, Inc. ("American Airlines") in connection with the unexpected death of Captain Mohannad Alhindi in Dhaka, Bangladesh (Dkt. 1). Plaintiffs amended their complaint on December 31, 2024 before attempting service of process on Gulf Air (Dkt. 2). On January 30, 2025, Plaintiffs improperly attempted to serve legal process on Gulf Air through undersigned counsel's law firm, which is not and was not an authorized agent to receive legal process on behalf of Gulf Air. *See* Notice of Defendant Gulf Air's Request to Schedule Pre-Motion Conference ("Request") (Dkt. 13).

Despite not having been properly served, on February 20, 2025, in accordance with Paragraph 7(f) of the Court's Standing Order In Civil Cases Before Judge Reyes ("Standing

R- 268

Order"), Gulf Air timely filed its Request on its anticipated Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5) and 12(b)(6).  (Dkt. 13).[1]  Paragraph 7(f) of the Standing Order provides that, "[f]or motions to dismiss under Federal Rule of Civil Procedure 12(b), the filing date of the letter will serve as the operative date for determining compliance with Rule 12's timing requirement."  Standing Order at ¶ 7(f).[2]  As a result, Gulf Air timely filed its response to the Amended Complaint in accordance with the applicable rules and Judge Reyes' Standing Order.

Gulf Air served Plaintiffs with copies of all filings via email and U.S. mail.  *See* February 20, 2025, Cover Letter to Plaintiffs (attached as **Exhibit 1**); *Ayyash et al. v. Gulf Air B.S.C. (c), et al.*, Darcy Osta Email to Samiha Ayyash, Feras Hindi, and Tala Josephano (Feb. 20, 2025, 4:33 p.m.) (attached as **Exhibit 2**); (*see also* Dkt. 13, "Certificate of Service").

Inexplicably, on February 24, 2025, Plaintiff Hindi moved for entry of default against Gulf Air by the Clerk of Court.  (Dkt. 18).  Plaintiff Ayyash followed suit on March 2, 2025. (Dkt. 22).  Moving Plaintiffs' motions are wholly without merit and should be denied.

## <u>ARGUMENT</u>

According to Rule 55(a), the clerk must enter default when a defendant "fail[s] to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Fed. R. Civ. P. 55(a). Here, there are no grounds to enter default because it is evident that Gulf Air met its obligations under the Rules.[3]

---

[1] Gulf Air initially filed its Request in the form of a letter (Dkt. 11), but was advised by the clerk that it needed to be in the form of a pleading.  As a result, Gulf Air refiled its Request that same day. (Dkt. 13).

[2] A copy of the Standing Order is publicly available via a link on Judge Reyes' Court Webpage: https://www.dcd.uscourts.gov/sites/dcd/files/2024.04.30%20FINAL%20CIVIL%20STANDING%20ORDER%20%28ACR%29.pdf (last accessed on March 10, 2025).

[3] It appears from Plaintiff Hindi's most recent filing (Dkt. 23) that the Clerk has already informed him that she cannot enter default against either of the Defendants.  However, Gulf Air submits this opposition out of an abundance of caution.

R- 269

A defendant must serve either an answer or motion under Rule 12(b) within 21 days of being served with a complaint, unless a different deadline applies. *See* Fed. R. Civ. P. 12. This Court's Standing Order provides that a defendant seeking to file a Rule 12(b) motion must first request a pre-motion conference by submitting a notice explaining the anticipated basis of the motion. Standing Order, ¶ 7(f). Moreover, the Standing Order plainly states that "[f]or motions to dismiss under Federal Rule of Civil Procedure 12(b), the filing date of the letter will serve as the operative date for determining compliance with Rule 12's timing requirement." *Id.* Gulf Air filed and served its Request on Plaintiffs on February 20, 2025. Therefore, assuming only for purposes of this Opposition that Plaintiffs had properly served Gulf Air on January 30, 2025,[4] Gulf Air timely complied with its responsive pleading requirement and thus there can be no default entered against it.

Importantly, Moving Plaintiffs ignore the Request and this Court's Standing Order and erroneously assert that Gulf Air failed to file a responsive pleading within the required time frame. (Dkt. 18; Dkt. 22). This is simply not true as is evidenced by a review of the docket.

To the extent that Plaintiffs Hindi and Ayyash argue that Gulf Air is in default because it did not properly serve them with copies of the February 20th filings, this too is demonstrably false. Moving Plaintiffs were both served by first class mail as required by the applicable rules and, importantly, they do not appear to dispute this fact. *See* Fed. R. Civ. P. 5(b)(2)(C) (service by mail is complete "upon mailing."). Rather, in their sworn declarations, Moving Plaintiffs argue that they have not been served by Gulf Air because they have not consented to service

---

[4] Gulf Air is not conceding that there was proper service. For the reasons that will be further articulated in Gulf Air's anticipated Motion to Dismiss the Amended Complaint, Plaintiffs did not comply with Rule 4(h) and the Amended Complaint should be dismissed under Rule 12(b)(5).

R- 270

through electronic mail.  (Dkt. 18 at 4; Dkt. 22 at 4).[5]  Moving Plaintiffs have failed to acknowledge that they were served with paper copies of all Gulf Air's filings through the mail, which clearly establishes that they were properly served under the rules.  *See* **Exhibits 1-2**; (*see also* Dkt. 13, "Certificate of Service").  Accordingly, there is no basis for their request for the Clerk to enter default against Gulf Air and their motions should be denied.

## CONCLUSION

For the foregoing reasons, Defendant Gulf Air B.S.C. (c) requests that the Motions for Entry of Default filed by Plaintiffs Feras Hindi and Samiha Ayyash be denied and that Gulf Air B.S.C. (c) be granted such other relief as this Court deems just and proper.

Respectfully Submitted,

**ECKERT SEAMANS CHERIN
 & MELLOTT, LLC**

*/s/ Darcy C. Osta*
Darcy C. Osta, Esq.
D.C. Bar No. 1686937
Mark A. Johnston, Esq.
D.C. Bar No. 455764
1717 Pennsylvania Ave., N.W.,
Suite 1200
Washington, D.C. 20006
Phone: (202) 659-6600
Fax:  (202) 659-6699
dosta@eckertseamans.com
mjohnston@eckertseamans.com

*Counsel for Gulf Air B.S.C. (c)*

---

[5] Plaintiff Hindi, at least, appears to be aware that service by mail is acceptable under the Federal Rules.  *See* Dkt. 17 at 7 (stating in sworn declaration that American Airlines failed to serve him "by any approved court method, including mail or personal service.").  Importantly, any reference or acknowledgement of service by mail is conspicuously absent from Plaintiff Hindi's sworn declaration in his filing against Gulf Air.  *See* Dkt. 18 at 4.

4

R- 271

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2025, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF filing system, which will serve an electronic copy on all

counsel of record, and I will also serve a copy of the foregoing via USPS first class mail upon the

following:

Tala Josephano
615 S. Catalina Avenue, #233
Redondo Beach, CA 90277
*Pro Se Plaintiff*

Samiha Ayyash
Feras Hindi
7823 New London Drive
Springfield, VA 22153
*Pro Se Plaintiffs*

/s/ Darcy C. Osta
Darcy C. Osta

R- 272



Eckert Seamans Cherin & Mellott, LLC       TEL:   202 659 6600
1717 Pennsylvania Avenue, N.W.             FAX:   202 659 6699
12th Floor
Washington, D.C. 20006

Darcy C. Osta
dosta@eckertseamans.com
202-659-6611

February 20, 2025

**VIA FIRST CLASS MAIL & EMAIL**

Samiha Ayyash                          Tala Josephano
Feras Hindi                            615 Catalina Avenue, #233
7823 New London Drive                  Redondo Beach, CA 90277
Springfield, VA 22153                  josephanotala@gmail.com
ayyashsamiha@gmail.com
fhindi@friendshiplogistics.com

>        *Re:*   ***Samiha Ayyash, et al. v. Gulf Air B.S.C. (c), et al.***
>               <u>**Case No: 1:24-cv-3434-ACR**</u>

Dear Ms. Ayyash, Mr. Hindi & Ms. Josephano:

Enclosed please find a copy of the following documents that were filed today in the above-referenced matter:

- Notices of Appearance filed by Darcy Osta and Mark Johnston on behalf of Defendant Gulf Air B.S.C. (c) ("Gulf Air");

- Gulf Air's Corporate Disclosure Statement Pursuant to Local Civil Rule 26.1; and

- Notice of Gulf Air's Request to Schedule Pre-Motion Conference.

   *Please note that Gulf Air's request for a pre-motion conference appears on the docket twice. *See* Docket Nos. 11 and 13. The substance of both documents is identical, only the format is different.

Please do not hesitate to contact the undersigned with any questions.

                          Sincerely,

                          *[signature]*
                          Darcy C. Osta

Enclosures

c.c.   Mark A. Johnston (via e-mail)

R- 273

| | |
|---|---|
| **From:** | Darcy C. Osta |
| **To:** | Samiha Ayyash; fhindi@friendshiplogistics.com; T Josephano |
| **Cc:** | Mark A. Johnston |
| **Subject:** | Ayyash et al. v. Gulf Air B.S.C. (c), et al. |
| **Date:** | Thursday, February 20, 2025 4:33:00 PM |
| **Attachments:** | Ayyash et al v. Gulf Air et al - Letter to Plaintiffs - 2.20.25(120124943).pdf<br>Gulf Air Filings - 2.20.25(120124983).pdf |

Dear Ms. Ayyash, Mr. Hindi and Ms. Josephano,

Attached please find a cover letter and copies of the documents that Gulf Air filed today in the above-referenced matter.  Courtesy hard copies are also being sent via USPS first class mail.

Best,
Darcy

R- 274

1

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

## Civil Division

**Samiha Ayyash, Feras Hindi**

| | | |
|---|---|---|
| **Tala Josephano** | ) | **Case No.:  1:24-cv-03434-ACR** |
| Plaintiff**,** | ) | |
| | | |
| **American Airlines INC,** | ) | |
| | | |
| **, Gulf Air B.S.C** | ) | |
| Defendant | ) | |
| | | |
| _____ | ) | |

## PLAINTIFF TALA MOTION  FOR ENTRY OF DEFAULT

## AGAINST DEFENDANT GULF AIR B.S.C

March 7 2025

**Tala Josephano**

615 S Catalina Ave #233

Redondo Beach, CA 90277

347-749-4980

**RECEIVED**

MAR 7 2025
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

**MOTION  FOR ENTRY OF DEFAULT**

R- 275

**To the Clerk of the United States District Court for the District of Columbia**

Pursuant to Federal Rule of Civil Procedure 55(a), Plaintiff Tala Josephano moves for a clerk's entry of default against Defendant Gulf Air B.S.C.

## BACKGROUND

Plaintiff Tala , along with others, filed a complaint in the United States District Court for the District of Columbia on December 31, 2024. Defendant Gulf Air B.S.C.  was served on January 30, 2025 Court has the Proof of Service, with a deadline to respond by February 20, 2025, under Fed. R. Civ. P. 12(a)(1)(A)(i).  FCRP 12(a) Time to Serve a Responsive Pleading (1) *In General.* Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows: (A) A defendant must serve an answer: (i) within 21 days after being served with the summons and complaint; or .

On their 21 days deadline. February 20 2025 Gulf air submitted a Meet and Confer request to the court on the last day.  A high rated lawyer like Defendant Gulf Air lawyers whose experienced litigators in federal court, can't say they didn't know the judge has rules or they can't play that they didn't know about Meet and Confer. Plaintiff Tala is ready to prove how the Defendant used this Bad faith meet request on the last day of 21 deadlines and failed to serve an answer on any of the Plaintiffs . The way she presented it was that it was ordered by the Judge against the Plaintiff in this case.

Defendant failed to serve Co Plaintiffs as well who have entered Default. Defendant knew they entered default and still tried to improperly add invalid emails to the Court to request Meeting for their motion 16 days after the Deadline.

**MOTION  FOR ENTRY OF DEFAULT**

R- 276

3

## ARGUMENT

The Clerk should enter default as Defendant has been properly served, yet failed to plead or defend as required by Federal Rules.

*"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."*

**Per Judge Rules** : Pre-Motion Conference. If a party wishes to file a dispositive motion, it must request that the Court schedule a pre-motion conference. To so request, the moving party shall submit a short notice via ECF, not to exceed four double-spaced pages in length, setting forth the basis for the anticipated motion, including the legal standards and the claims at issue. Other parties shall respond by filing, within one week, a document of similar length setting forth their anticipated responses to the proposed motion. The Court will review and discuss with counsel the anticipated motion at the pre-motion conference, which will take place in-person unless the Court grants permission to hold the conference by video. The parties should contact Judge Reyes' Courtroom Deputy to schedule the conference for a date 1-2 weeks after the response is filed. This requirement shall not apply to incarcerated pro se litigants or immigration mandamus cases. Page 5 of 11 For motions to dismiss under Federal Rule of Civil Procedure 12(b), the filing date of the letter will serve as the operative date for determining compliance with Rule 12's timing requirement.

Defendant submitted  Meet and confer on the last day of the 21 days  and was opposed by Plaintiff Tala. Plaintiff Tala advised Gulf Air to submit an answer, yet they have used the court to manipulate a hearing for an invalid motion that was submitted in bad Faith.

**MOTION  FOR ENTRY OF DEFAULT**

R- 277

Case 1:24-cv-03434-ACR    Document 26    Filed 03/07/25    Page 4 of 6
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 278 of 971

4

If Defendant defends that these claims have no merit or Plaintiff has no standing or the court is not the right venue they could have submitted their Defense before the deadlines. A billion Dollar Airlines can't find a lawyer that is available. This is all a tactic to delay anything formal against Gulf air until DOT permits are issued.

## CONCLUSION

Plaintiff requests a clerk's entry of default against Defendant Gulf Air B.S.C. under Fed. R. Civ. P. 55(a). If denied, Plaintiff requests a hearing before Judge Ana C. Reyes, Plaintiff requests the Court permit amendments to this motion if necessary and allow submission of evidence and live testimony in support of this request.

Plaintiff will not attend any hearing for the Meet conference that wasn't submitted according to the rules, and obtained by manipulation additionally obtained after the last day of the deadline. 16 days later. Defendants knew about this case since before it was filed as they have done their best to conceal it and conceal the Captain's death and Flight attendant death that happened during their DOT audit and stop this case. Plaintiff Tala is being prejudiced and damaged by Gulf Air actions and undermining her claims.

Pro Se

Tala Josephano

615 S Catalina Ave #233

Redondo Beach CA 90277

347-749-4980

**MOTION  FOR ENTRY OF DEFAULT**

R- 278

5

## Declaration of Tala

**Case** : 1:24-CV-03434ACR

I, **Tala Josephano**, declare as follows:

1. I am a Plaintiff in this matter and have claims against Defendant Gulf Air B.S.C. I am available to testify if called by the court

2. I have not been served by Defendant Gulf Air B.S.C a reply to my claims

3. Gulf Air has not submitted reply to the claim

4. Gulf Air knows about this case since it was filed.

5. I didn't agree to any extension.

6. I was only presented by meet and Confer the last day in bad faith way

7. Defendant lawyer Darcy acted in bad faith with me

8. Defendant submitted Meet and Confer to the court in Bad Faith

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and beliefs.

March 7 2025

Pro Se

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

**MOTION  FOR ENTRY OF DEFAULT**

R- 279

6

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2025, Plaintiff Tala Josephano will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Application for Entry of Judgment  Against Defendant Gulf Air B.S.C

**Defendant Gulf Air B.S.C., Inc.**
**Darcy & Mike** Eckert Seamans Cherin & Mellott, LLC, 1717 Pennsylvania Ave., N.W., 12th Floor, Washington, D.C. 20006.

Method of Service: Via ABC Legal Services (Process Server).

**Defendant American Airlines, Inc.**
**Micah E. Ticatch**, 1945 Old Gallows Road, Suite 650, Vienna, Virginia 22182.
Method of Service: Via ABC Legal Services (Process Server).

**Plaintiff  Samiha & Plaintiff Feras Hindi**: Waived Service.

A request for process service is being submitted, and service is expected to be completed by the processor. A formal Proof of Service request and Service (Affidavit of Service) will be filed with the Court upon request

March 7 2025

**Pro Se Plaintiff**

**Tala Josephano**
**615 S Catalina Ave #233**
**Redondo Beach CA 90277**
**347-749-4980**

**MOTION  FOR ENTRY OF DEFAULT**

R- 280

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

| | | |
|---|---|---|
| **Samiha Ayyash, Feras Hindi** | ) | **Case No.:  1:24-cv-03434-ACR** |
| **Tala Josephano** | ) | |
| Plaintiff**,** | ) | |
| **American Airlines, INC. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendant | ) | |
| _____ | ) | |

**PLAINTIFF TALA JOSEPHANO'S MOTION FOR ENTRY OF DEFAULT AGAINST
DEFENDANT AMERICAN AIRLINES**

March 7 2025

Tala Josephano
Plaintiff, Pro Se
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980



**RECEIVED**

MAR 8 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

**PLAINTIFF TALA JOSEPHANO'S MOTION FOR ENTRY OF DEFAULT AGAINST DEFENDANT
AMERICAN AIRLINES.**

R- 281

Pursuant to Federal Rule of Civil Procedure 55(a), Plaintiff Tala Josephano moves the Clerk for entry of default against Defendant American Airlines Inc.

## BACKGROUND

Plaintiff Tala , along with others, filed a complaint in the United States District Court for the District of Columbia on December 31, 2024. Defendant American Airlines Inc. was served on January 22, 2025 Court has the Proof of Service, with a deadline to respond by February 12, 2025, under Fed. R. Civ. P. 12(a)(1)(A)(i).  FCRP 12(a) Time to Serve a Responsive Pleading (1) *In General.* Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows: (A) A defendant must serve an answer: (i) within 21 days after being served with the summons and complaint; or .

## ARGUMENT

 The Defendant, American Airlines Inc, falsely certified service on February 12, 2025, incorrectly claiming that all parties were served via electronic mail. Defendant was immediately notified of this error yet refused to correct it, even after Plaintiff Tala Josephano contacted Defendant's counsel , On February 18, 2025, (*see Exhibit 1: Email from Defendant's Counsel*). Defendant's counsel disregarded Plaintiff Tala Josephano's multiple attempts to resolve this issue amicably, explicitly instructing Plaintiff to "get a lawyer" and stating that "no one cares." This dismissive response placed an undue burden upon Plaintiff, forcing her to expend substantial time, effort, and resources to correct Defendant's procedural errors and misrepresentations.

**PLAINTIFF TALA JOSEPHANO'S MOTION FOR ENTRY OF DEFAULT AGAINST DEFENDANT AMERICAN AIRLINES.**

R- 282

Defendant's repeated refusal to correct the false certificate, despite immediate awareness of the incorrect service and notification error, constitutes deliberate noncompliance with Federal Rules of Civil Procedure 11(a) and 11(b). Moreover, Defendant's procedural violations have become a pattern, using false certificates and untimely filings strategically as a means to delay these proceedings. Defendant waited until the last moment to file deficient pleadings and now seeks amendments, leveraging its false certification as a pretext to avoid accountability. Defendant's conduct demonstrates intentional disregard for procedural rules and the orders of this Court.

Defendant's counsel's claim that one pro se filing by Plaintiff Josephano applied to all Plaintiffs is neither credible nor consistent with the standards expected from a reputable law firm. Treating multiple Plaintiffs as one entity for service purposes is inappropriate, indicates procedural bad faith, and has prejudiced Plaintiff Josephano's rights.

Accordingly, Defendant's deliberate procedural misconduct and refusal to correct its false certification of service justify entry of default against Defendant American Airlines. Plaintiff Tala has tried last attempt and warned him that he has caused damages and all he needs to do is change the certificate or let the court know on Tala's correct day of serving ( which is after the deadline February 12 2025) . He refused.

 Plaintiff Tala Josephano is currently preparing an additional claim against Defendant American Airlines and their counsel for misrepresentation, due to substantial prejudice, unfair treatment, and significant emotional distress resulting from Defendant's actions. Defendant's procedural misconduct has not only created additional legal burdens but also triggered and exacerbated past trauma arising from unfair judicial treatment Plaintiff experienced abroad.

**PLAINTIFF TALA JOSEPHANO'S MOTION FOR ENTRY OF DEFAULT AGAINST DEFENDANT AMERICAN AIRLINES.**

R- 283

Defendant American Airlines continues to falsely assert compliance, despite their clear knowledge of the Court's explicit orders and rules, as evidenced by their subsequent filing of an additional motion requesting a Meet and Confer without prior discussion or compliance. Defendant failed to follow mandatory procedural steps, did not attempt any contact or provide certificates of compliance, and still has not served or communicated with any Co-Plaintiffs to date. Plaintiff Tala Josephano requests that the Court recognize Defendant's intentional procedural violations and deliberate misrepresentations as sufficient grounds for entry of default. *( See Exhibit 2 Email From Lawyer 4 days after submission )*

Defendant American Airlines' counsel refused to correct the errors related to service, knowingly submitted a Motion to Dismiss supported by a false certificate of service, and explicitly instructed Plaintiff Tala, not to respond to their motion.

Plaintiff Tala is entitled to an entry of default because Defendant failed to timely file and didn't serve an answer to her claims on deadline and subsequently refused to correct this failure despite repeated notifications and requests. He filed the last day of the 21 days. Anything now will not extend that time. Defendant American Airlines, despite admitting in their opposition filing that Plaintiffs were not served on February 12, 2025, has made no genuine attempt to correct the false certificate or seek permission from the Court to amend it not even in his reply.

## CONCLUSION

 Plaintiff respectfully requests that the Clerk enter a default against Defendant American Airlines Inc. pursuant to **Fed. R. Civ. P. 55(a)**. In the event the Clerk denies this request, Plaintiff requests a hearing before the Honorable Judge Ana C. Reyes. Plaintiff further requests

permission from the Court to amend this motion if necessary and to submit additional evidence

or live testimony in support of this request.

Additionally, due to Plaintiff's diligent but unsuccessful efforts to resolve these procedural issues

informally with Defendant, I tried , Plaintiff requests that the Court waive any deadlines or time

limits that may have been missed or delayed as a result of those attempts.

 March 7 2025

Tala Josephano
Plaintiff, Pro Se
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

**PLAINTIFF TALA JOSEPHANO'S MOTION FOR ENTRY OF DEFAULT AGAINST DEFENDANT
AMERICAN AIRLINES.**

R- 285

R- 286

**DECLARATION OF PLAINTIFF TALA JOSEPHANO**

I, **Tala Josephano**, declare under penalty of perjury under the laws of the United States that the

following is true and correct:

1.  I am a Plaintiff in this case and available to testify.

2.  I was not served or notified by Defendant American Airlines, their counsel, or the Court

    on February 12, 2025.

3.  I did not speak to Defendant's counsel or Co-Plaintiffs on February 12, 2025.

4.  On February 18, 2025, Defendant's counsel falsely claimed via email that all Plaintiffs

    had been served on February 12, 2025.

5.  Defendant's counsel repeatedly refused my requests to correct the false certificate of

    service, forcing me to file additional motions, incur costs, and experience delays.

6.  Defendant falsely stated in their opposition that I had discussed their Motion to Dismiss; I

    have never discussed the Motion to Dismiss with Defendant or Co-Plaintiffs.

7.  Defendant's counsel ignored my repeated verbal and written statements clarifying that I

    represent only myself, and that he must communicate directly with each Plaintiff.

8.  Defendant's counsel dismissed my requests to correct the certificate, and advised me

    dismissively to "get a lawyer."

9.  Defendant's counsel improperly offered me extensions without required court

    authorization, while still refusing to correct the false certificate or set the record straight.

10. Defendant's intentional procedural misconduct has significantly increased my stress,

    especially since I have multiple active legal claims beyond this case.

**PLAINTIFF TALA JOSEPHANO'S MOTION FOR ENTRY OF DEFAULT AGAINST DEFENDANT
AMERICAN AIRLINES.**

R- 286

11. Defendant never contacted me regarding procedural filings or motions before filing them with the Court. Defendant emailed me their Meet and Confer on February 24, 2025, four days after submission, causing additional stress and disruption.

12.  Defendant improperly and unfairly placed the burden on me, a pro se litigant, to formally request extensions that they knew they could not legally offer without court authorization.

13. Defendant inappropriately attempted to force me into a delayed Meet and Confer process, disregarding procedural rules and other Plaintiffs.

14. Defendant confirmed his confidence to me that the Judge will not care for the false certificate or the non service or improper service. He was so confident of the Judge Ruling and that Meet & Confer will happen regardless.

15. I have experienced significant emotional distress and reactivation of past trauma resulting from Defendant American Airlines ongoing procedural misconduct, false representations jeopardizing my ability to effectively pursue justice in this case,.

16. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Executed on March 7th 2025**
Plaintiff, Pro Se

Tala Josephano

615 S Catalina Ave #233

Redondo Beach CA 90277

347-749-4980

**PLAINTIFF TALA JOSEPHANO'S MOTION FOR ENTRY OF DEFAULT AGAINST DEFENDANT AMERICAN AIRLINES.**

R- 287

## CERTIFICATE OF SERVICE

I hereby certify that on March 7th, 2025, Plaintiff Tala Josephano will submit Motion for the Clerk of Federal Court of DC VIA the Intake email " dcd_intake@dcd.uscourts.gov" and send a true and correct copy of the following document to be served upon the parties listed below:

**Entry To Default against American Airlines**

1. Defendant American Airlines
   Micah E. Ticatch
   1945 Old Gallows Road, Suite 650
   Vienna, Virginia 22182

   Method of Service: Via ABC Legal Services (Process Server)

2. Defendant Gulf Air B.S.C., Inc. Darcy Osta & other
    AT Eckert Seamans Cherin & Mellott, LLC
   1717 Pennsylvania Ave., N.W., 12th Floor
   Washington, D.C. 20006

   Method of Service: Via ABC Legal Services (Process Server)

3. Plaintiff Ayyash & Plaintiff Feras waived service

A request for process service will be submitted, and service is expected to be completed by the processor. A Proof of Service request (Affidavit of Service) will be available to the Court upon receipt of confirmation from ABC Legal Services.

March 7th, 2025
Pro Se Plaintiff

Tala Josephano

615 S Catalina Ave #233

Redondo Beach CA 90277

347-749-4980

**PLAINTIFF TALA JOSEPHANO'S MOTION FOR ENTRY OF DEFAULT AGAINST DEFENDANT AMERICAN AIRLINES.**

R- 288

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

**Samiha Ayysah, Feras Hindi,**

| | | |
|---|---|---|
| **Tala Josephano** | ) | **Case No.:  1:24-cv-03434-ACR** |
| | ) | |
| Plaintiff | ) | |
| **American Airlines Inc. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendant | ) | |
| _____ | ) | |

# EXHIBITS

March 7 2025

**Tala Josephano**
**615 S Catalina Ave #233**
**Redondo Beach CA 90277**
**347-749-4980**

**EXHIBITS**

R- 289

Case 1:24-cv-03434-ACR    Document 27-1    Filed 03/08/25    Page 2 of 4
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 290 of 971

2

# EXHIBITS

1. **Exhibit 1** Email From American Airlines Counsel Dated February 12 2025

2. **Exhibit** 2 Email From Lawyer to Tala February 24 2025 ( 4 days after he submitted to the court )

**EXHIBITS**

R- 290

Case 1:24-cv-03434-ACR    Document 23-1    Filed 03/08/25    Page 3 of 4
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 291 of 971

 Gmail

Taloooshty <talacali4@gmail.com>

## FW: AYYASH, et al v. GULF AIR, BSC, et al.

**Micah E. Ticatch** <mticatch@islerdare.com>                                    Tue, Feb 18, 2025 at 3:46 PM
To: Taloooshty <talacali4@gmail.com>
Cc: Shivani Sharma <ssharma@islerdare.com>

I understand you are pro se and the court process is not necessarily easy to understand.  We filed and served you by email and first class mail along with the rest of the plaintiffs on February 12.  I believe you and I spoke on that same day and we discussed the filing that day.  You have let me know that you have access to Pacer, so even if you somehow did not receive the email or mailed copies, you could have simply downloaded it from Pacer.  We are not required to serve with a tracking number, and we did not do so.

If you have not done so already, I would suggest you sign up for electronic noticing, so that you do not have this problem each and every time we file something.  https://www.dcd.uscourts.gov/pro-se-help/electronic-noticing

I remain somewhat confused why it is we are having so much back and forth on this issue.  Are you asking for additional time to respond?  If so, I am happy to agree to an extension.  Let me know how much extra time you need.

[Quoted text hidden]

R- 291

Case 1:24-cv-03434-ACR    Document 23-1    Filed 03/08/25    Page 4 of 4
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 292 of 971



Taloooshty <talacali4@gmail.com>

## FW: AYYASH, et al v. GULF AIR, BSC, et al.

**Micah E. Ticatch** <mticatch@islerdare.com>                     Mon, Feb 24, 2025 at 8:59 AM
To: Taloooshty <talacali4@gmail.com>

I was unaware of the judge's requirement to have a motion conference before filing the motion to dismiss.  If you have not received it yet, we filed the attached on Thursday evening.  I do not think you need to respond to the MTD at this time, until we get further permission from the court to proceed.  If you have not seen it the judge's standing order is located here: https://www.dcd.uscourts.gov/sites/dcd/files/2024.04.30% 20FINAL%20CIVIL%20STANDING%20ORDER%20%28ACR%29.pdf

If you still require an extension, I am happy to agree to give you as much additional time as you need.  You will, however, need to file a motion with the court (*see* Standing Order 9(a))-- but you can represent in any motion you file that I consent to the additional days.

[Quoted text hidden]

📄 **[DN 14] 2025.02.20  AA Motion for Conference.pdf**
143K

R- 292

Case 1:24-cv-03434-ACR    Document 28    Filed 03/15/25    Page 1 of 8
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 293 of 971

1

RECEIVED
R-295
MAR 15 2025
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA


## Civil Division

| | | |
|---|---|---|
| **Samiha Ayyash, Feras Hindi** | ) | Case No.:  1:24-cv-03434-ACR |
| **Tala Josephano** | ) | |
| Plaintiffs**,** | ) | |
| **American Airlines, INC. ,** | ) | |
| **Gulf Air B.S.C** <br> Defendants | ) <br> ) | |
| _____ | ) | |


**PLAINTIFF'S SEVEN-DAY NOTICE OF INTENT TO FILE ENTRY OF DEFAULT JUDGMENT & NOTICE TO THE COURT REGARDING CLERK'S FACILITATION OF PREJUDICIAL ACTIONS AGAINST PLAINTIFF FERAS HINDI**

Plaintiff Feras Hindi respectfully submits this notice to the Court to address significant procedural irregularities and prejudicial actions that have disadvantaged Plaintiff in this matter. These issues include invalid or improper filings by Defendant Gulf Air B.S.C., delays and selective docketing by the Clerk's Office, and violations of procedural fairness that warrant immediate judicial scrutiny.

## I. IMPROPER FILING BY DEFENDANT GULF AIR B.S.C. ON FEBRUARY 20, 2025

1. **Defendant's Filing Was Procedurally Invalid Due to Counsel's Ineligibility**

   A.  The Court explicitly notified Gulf Air's counsel on February 21, 2025, that their membership with the U.S. District & Bankruptcy Courts for the District of

Case 1:24-cv-03434-ACR   Document 28   Filed 03/15/25   Page 2 of 8
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 294 of 971

2

Columbia was not in good standing and that they were "not permitted to file" at the time of submission. " *Please be advised that the presiding judge in this case has been notified that you are currently not in good standing to file in this court. Renewal Due by 2/27/2025. (zhcn) Modified on 2/21/2025 (zhcn)." As provided by Plaintiff Tala.*

B. Despite this, Gulf Air's filings are recorded as submitted on February 20, 2025, while their renewal approval status remains unclear.

## 2. Request for Verification of Counsel's Eligibility

A. Plaintiff requests that Gulf Air's counsel provide proof of valid membership and final court approval prior to February 20, 2025.

B. According to the renewal rules, it takes five business days to process attorney certification renewals. A mere receipt of a $25 fee payment or submission confirmation does not constitute renewal.

C. If Gulf Air's attorneys had instant approval, Plaintiff demands clarification on whether they received special treatment outside the standard renewal timeframe.

D. If Approved by the judge, did the judge have the full details of their submissions? Has the Judge been reading Plaintiff motions? It is unclear what Gulf Air and the court staff are really doing.

## 3. Discrepancy in Docketing of Clerk's Notice

A. The Clerk's Notice was officially filed on February 20, 2025, yet it was entered into the docket as February 21, 2025, creating an inconsistency in the record.

**PLAINTIFF'S SEVEN-DAY NOTICE OF INTENT TO FILE ENTRY OF DEFAULT JUDGMENT &
NOTICE TO THE COURT REGARDING CLERK'S FACILITATION OF PREJUDICIAL ACTIONS
AGAINST PLAINTIFF FERAS HINDI**

R- 294

Case 1:24-cv-03434-ACR    Document 28    Filed 03/15/25    Page 3 of 8
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 295 of 971

3

B. Given that electronic filing systems provide immediate timestamps, the one-day delay raises serious concerns about the accuracy, transparency, and potential manipulation of court docketing procedures.

C. Plaintiff requests an explanation from the Clerk's Office regarding this discrepancy and how it was permitted to occur.

4. **Misinformation Regarding Default Rules**

A. The Clerk's assertion that Plaintiff is not entitled to entry of default because Defendant "appeared" is incorrect. Under Rule 55, default is a two-step process:

   i. **Rule 55(a):** Entry of default when a party fails to plead or otherwise defend.

   ii. **Rule 55(b):** Default judgment, which may be entered by the Court.

B. A mere appearance ( Even if served, which wasn't)  does not eliminate a party's obligation to properly respond within the 21-day deadline. The Clerk's refusal to enter default improperly shields Gulf Air from procedural consequences.

C. A Meet and Request on the last day and with False pretense of including all parties requires judicial interventions

## II. FAILURE TO SERVE PLAINTIFF FERAS HINDI

A. Defendants Failed to Serve Plaintiff Feras Hindi on the 21 days deadline and after.

B. Defendants Gulf Air and American Airlines failed to serve Plaintiff Feras Hindi individually within the required 21-day deadline.

C. American Airlines has already admitted that Plaintiff Feras Hindi was not served on February 12, 2025, confirming that service was incomplete and invalid.

   i. **Defendants' Certificate of Service Is Unverified and Invalid**

**PLAINTIFF'S SEVEN-DAY NOTICE OF INTENT TO FILE ENTRY OF DEFAULT JUDGMENT & NOTICE TO THE COURT REGARDING CLERK'S FACILITATION OF PREJUDICIAL ACTIONS AGAINST PLAINTIFF FERAS HINDI**

R- 295

4

A. Defendants' self-serving Certificate of Service lacks independent verification and does not constitute proof under the Federal Rules of Civil Procedure.

B. Service via an unauthorized email address that Plaintiff never consented to for legal correspondence is invalid and does not meet federal service requirements.

C. Plaintiff is under no legal obligation to open, read, or accept an unsolicited email from Defendants.

ii. **Deficient and Improper Physical Mailing**

A. Plaintiff Feras Hindi will not be held liable for documents addressed to co-plaintiff Samiha Ayyash, who has separate legal claims and damages.

B. In a desperate attempt of serving Defendants attempt to serve Feras with Certified mail while he's at the court yesterday. The mailman served his minor daughter yesterday again with an envelope that has multiple names on it. Unless it's a new claim Gulf Air is filing against me they are NOT Allowed to mail me or email me or contact me anymore.

C. Unless Defendants have new claims against Plaintiff Feras, which they will still need to serve Him individually as for this case they failed to serve the notice of Appearance therefore Plaintiff Feras will no longer accept any mail 20 days after the deadline.

D. Case numbers are entered wrong ONLY in the Clerk and Defendants filing which they refused to fix, the number they are using doesn't indicate the same case online.

E. Cases are randomly assigned to Magistrate Judges pursuant to the court's Assignment Plan. A Notice of Assignment must be issued when a case is assigned

**PLAINTIFF'S SEVEN-DAY NOTICE OF INTENT TO FILE ENTRY OF DEFAULT JUDGMENT &
NOTICE TO THE COURT REGARDING CLERK'S FACILITATION OF PREJUDICIAL ACTIONS
AGAINST PLAINTIFF FERAS HINDI**

R- 296

Case 1:24-cv-03434-ACR    Document 28    Filed 03/15/25    Page 5 of 8
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 297 of 971

5

to a Magistrate Judge. This notice must include a form for parties to either consent to or decline the Magistrate Judge's jurisdiction. Plaintiff Didn't receive that.

## III. NOTICE OF FILING ENTRY OF DEFAULT JUDGMENT IN SEVEN (7) DAYS

Plaintiff gives a notice that he will file a Motion for Entry of Default Judgment within seven (7) days based on the following:

A. Gulf Air failed to file a valid response within the required timeframe due to their attorney's ineligibility at the time of filing.

B. Defendants failed to serve Plaintiff individually as required under Rule 12(a)(1)(A) for Notice of Appearance or VALID response to his claims or anything in that fact

C. The Clerk failed to comply with Rule 55(a) by refusing to enter default against Defendants despite their failure to properly plead or defend.

D. The Clerk's delays and irregular handling of filings have clearly favored Defendants and obstructed Plaintiff's procedural rights.

E. Plaintiff will no longer be serving the counsels until his motions are heard as he has not been served Notice of Appearance therefore they are not acknowledged by Plaintiff anymore. In addition to their constant unethical behaviors with Plaintiffs.

F. Plaintiff Feras Hindi maintains that he is entitled to the entry of default and subsequent default judgment due to Defendants' procedural failures. The Court should not disregard established rules of civil procedure to accommodate Defendants' untimely responses. Such special treatment would prejudice Plaintiff and undermine the integrity of the judicial process.

**PLAINTIFF'S SEVEN-DAY NOTICE OF INTENT TO FILE ENTRY OF DEFAULT JUDGMENT &
NOTICE TO THE COURT REGARDING CLERK'S FACILITATION OF PREJUDICIAL ACTIONS
AGAINST PLAINTIFF FERAS HINDI**

R- 297

6

G. If the Court nonetheless wishes to hear arguments on the merits, Plaintiff suggests that co-Plaintiff Tala may be amenable to such proceedings. However, Plaintiff Feras Hindi stands firm on his right to pursue default judgment, as provided by law, and declines to engage in further delay tactics or procedural maneuvering by Defendants

H. Plaintiff Feras Hindi respectfully reminds the Court that he has already endured prolonged legal proceedings in Bangladesh and Bahrain. He seeks the prompt and just resolution of this matter in accordance with U.S. law and procedure, without undue delay or prejudice

I. Plaintiff has all the Clerk Errors Recorded, and cumulatively they appear to fulfill the threshold to a Fraud Claim. Plaintiff Feras truly believes the Judge is not receiving the correct information or filings on times or reports from " Case Manager".

## IV. NOTICE OF INTENT TO FILE FRAUD UPON THE COURT

Plaintiff intends to file a claim alleging Fraud Upon the Court based on the following:

1. Improper Acceptance of Defendants' Filings

2. Potential Procedural Misconduct by the Clerk's Office

3. Repeated Clerk Errors Favoring Defendants

4. Failure to Provide Case Management Documents

5. Delaying Plaintiffs filing to match with others interests

6. Other recoded " errors" that passed coincidence stage

**PLAINTIFF'S SEVEN-DAY NOTICE OF INTENT TO FILE ENTRY OF DEFAULT JUDGMENT & NOTICE TO THE COURT REGARDING CLERK'S FACILITATION OF PREJUDICIAL ACTIONS AGAINST PLAINTIFF FERAS HINDI**

R- 298

Case 1:24-cv-03434-ACR    Document 28    Filed 03/15/25    Page 7 of 8
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 299 of 971

7

**Plaintiff respectfully requests that the Court:**

1. Compel Proof of Service Via Affidavit to Feras initially on February 12 2025 and February 2025 or any day after.

2. Order Explanation for Docketing Discrepancies and investigation into the "errors"

3. Verify Counsel Eligibility

4. Compel Gulf Air lawyer's to submit proof of RENEWED certificate license before the 20th or on the 20 of February

5. Acknowledge Procedural Privileges Given to Defendants

6. Order investigation on the issue with the Clerk.

7. Immediate Entry of Default Judgment

8. Consider this notice  my 7 Days notice to Entry of Default Judgment against both Defendants starting from this day March 15 2025

Plaintiff reserves all rights to seek additional relief or judicial review should these issues remain unresolved or further irregularities arise.

**March 15 2025**

**Feras Hindi**

F. H

7823 New London Dr
Springfield VA 22153
(703)980-6955

**PLAINTIFF'S SEVEN-DAY NOTICE OF INTENT TO FILE ENTRY OF DEFAULT JUDGMENT &
NOTICE TO THE COURT REGARDING CLERK'S FACILITATION OF PREJUDICIAL ACTIONS
AGAINST PLAINTIFF FERAS HINDI**

R- 299

Case 1:24-cv-03434-ACR    Document 28    Filed 03/15/25    Page 8 of 8
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 300 of 971

8

**CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2025, Plaintiff Feras Hindi will be sending a true and correct copy of the following documents to be served upon the parties listed below:

**PLAINTIFF'S SEVEN-DAY NOTICE OF INTENT TO FILE ENTRY OF DEFAULT JUDGMENT & NOTICE TO THE COURT REGARDING CLERK'S FACILITATION OF PREJUDICIAL ACTIONS AGAINST PLAINTIFF FERAS HINDI**

1-Defendant American Airlines, Inc. Registered Agent  Registered Office Address :CORPORATION SERVICE COMPANY 1090 VERMONT AVE. NW Washington DC 20005. Method of Service: Personal delivery via ABC Legal Services (Process Server)

2-Defendant Gulf Air B.S.C., Inc. AT Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Personal delivery via ABC Legal Services (Process Server)

3- Plaintiff Tala Josephano & Plaintiff Samiha Ayyash : Waived Service

Respectfully submitted,

March 15 2025

**Pro Se Plaintiff**

F. H

**Feras Hindi**

7823 New London Dr

Springfield VA 22153
(703)980-6955

PLAINTIFF'S SEVEN-DAY NOTICE OF INTENT TO FILE ENTRY OF DEFAULT JUDGMENT & NOTICE TO THE COURT REGARDING CLERK'S FACILITATION OF PREJUDICIAL ACTIONS AGAINST PLAINTIFF FERAS HINDI

R- 300

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

### Civil Division

| | | |
|---|---|---|
| **Samiha Ayyash, Feras Hindi** | ) | Case No.:  **1:24-cv-03434-ACR** |
| **Tala Josephano** | ) | |
| Plaintiffs**,** | ) | |
| **American Airlines, INC. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendants | ) | |
| | ) | |

## PLAINTIFF SAMIHA AYYASH'S SEVEN-DAY NOTICE OF INTENT TO FILE ENTRY OF DEFAULT JUDGEMENT. NOTICE OF PREJUDICIAL ACTIONS AGAINST PLAINTIFF

Plaintiff Samiha Ayyash, pro se, respectfully submits this notice to the Court regarding the procedural irregularities, clerk errors, and prejudicial actions that have disadvantaged her in this case. These irregularities include improper docketing, selective processing of filings, biased and procedural interference that directly benefited Defendants Plaintiff also submitted this notice as date for the 7 days Entry Of Default Judgment.

**RECEIVED**

MAR  15 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia


R- 301

## I. FAILURE TO ENTER DEFAULT AGAINST DEFENDANTS DESPITE PROPERLY FILED MOTIONS

1. Despite Defendants' failure to serve Plaintiff or file a valid response within the 21-day deadline or after, the Clerk has not entered default against Gulf Air B.S.C. or American Airlines.

2. Plaintiff's right to entry of default under Rule 55(a) has been obstructed by selective delays in docketing and unfairly procedural interference by the court and Defendants

3. Gulf Air and American Airlines have been granted special treatment, while pro se Plaintiff has faced continuous roadblocks in asserting their claims.

## II. IMPROPER ACCEPTANCE OF DEFENDANT GULF AIR'S FILINGS

5. Appears that Gulf Air's attorneys were potentially not in good standing at the time of their filing on February 20, 2025, as explicitly confirmed by the Court's notification on February 21, 2025.

6. Plaintiff demands that Gulf Air's attorneys provide proof that their renewal was finalized and approved before filing on February 20, 2025, not after.

## III. FAILURE TO SERVE PLAINTIFF SAMIHA AYYASH INDIVIDUALLY BY THE DEADLINE OR AFTER

9. Defendant American Airlines admitted not serving Plaintiff on February 12 2025 and they sent an envelope with multiple names on it 6 days after the deadline with one set after being asked to fix it.

PLAINTIFF SAMIHA AYYASH'S SEVEN-DAY NOTICE OF INTENT TO FILE ENTRY OF DEFAULT JUDGMENT &
NOTICE TO THE COURT REGARDING CLERK'S PROCEDURAL MISCONDUCT AND PREJUDICIAL ACTIONS
AGAINST PLAINTIFF

R- 302

10. If Defendants relied on Tala to notify or serve Plaintiff Samiha they were and are wrong. Notifying ( which they didn't ) is not serving, and joining Plaintiffs is not improper serving if it's done after the Deadline and when supposedly reattempted , again failed due to simply not following the Civil Procedures.

11. Defendants' Certificate of Service is invalid, self-serving, and unverified, and fails to provide proof that Plaintiff was individually served on February 12 2025 and February 2025.

12. Service via unauthorized or unsolicited email is legally insufficient. Plaintiff is under no obligation to open, read, or accept any email from Defendants regardless of her having access to email or not ( which she doesn't).

13. Attempts to undermine Plaintiff Wrongful Death and the negligence claims that was the direct cause of her first born death by attempting to score illegal procedural steps is causing more damages and its all recorded, and had accumulated more stress.

## IV. CLERK'S ERRORS AND IRREGULARITIES FAVORING DEFENDANTS

14. The Clerk failed to process Plaintiff's Motion for Entry of Default in a timely manner, instead allowing Defendants to file improper procedural motions before addressing default and allowing them to move like nothing happened and like Plaintiff has no valid claims

15. The Clerk knows Plaintiff Samiha didn't sign for Electronic Consent and this case is not joinder. Even if it was, they were still obligated to serve Plaintiff Per the Rules.

16. Not once Defendants attempted to contact Samiha by Phone to request or discuss Motions as required by Judge rules and Federal Rules

**PLAINTIFF SAMIHA AYYASH'S SEVEN-DAY NOTICE OF INTENT TO FILE ENTRY OF DEFAULT JUDGMENT & NOTICE TO THE COURT REGARDING CLERK'S PROCEDURAL MISCONDUCT AND PREJUDICIAL ACTIONS AGAINST PLAINTIFF**

R- 303

## V. NOTICE OF INTENT TO FILE ENTRY OF JUDGMENT  IN SEVEN (7) DAYS

18. Plaintiff intends to file a Motion for Entry of Default Judgment in seven (7) days, based on Defendants' failure to file timely responses and the Clerk's improper refusal to enter default under Rule 55(a).

19. Plaintiff further reserves the right to pursue legal action for potential procedural misconduct, including filing a Motion for Fraud Upon the Court against Defendants and any court personnel involved in procedural interference.

20. Defendants had a lot of time to defend themselves. Defending themselves doesn't include manipulating the Court and deliberately stepping over Plaintiff's rights. Plaintiff respectfully asking for clarification on hearing her motions

21. Even if Defendant ironically thought the claims were joined with all Defendants, they still have to serve each Plaintiff Individually. The delay is only an attempt to secure permits with DOT, FAA and obtain final Renewal approval on their codeshare while stepping on Plaintiff's effort to obtain justice ( again ). This time they are directly getting help from the court.

## VI. REQUESTED RELIEF

Plaintiff respectfully requests that the Court:

A. Compel Defendants to provide an affidavit confirming individual service on Plaintiff Samiha Ayyash on February 20 2025

B. Order the Clerk to explain procedural delays and selective docketing multiple errors

PLAINTIFF SAMIHA AYYASH'S SEVEN-DAY NOTICE OF INTENT TO FILE ENTRY OF DEFAULT JUDGMENT &
NOTICE TO THE COURT REGARDING CLERK'S PROCEDURAL MISCONDUCT AND PREJUDICIAL ACTIONS
AGAINST PLAINTIFF

R- 304

C.  Plaintiff requires proof  whether Gulf Air's attorneys were properly certified at the time of filing on February 20, 2025.

D.  Affidavit from both Defendants swearing under Perjury that they have followed the Civil Rules, the judge rules and the ethical rules of the court with Plaintiff Samiha

E.  Acknowledge procedural advantages given to Defendants that have prejudiced Plaintiff's legal rights.

F.  Grant immediate entry of Default Judgment against American Airlines INC.

G.  Grant immediate entry of  Default Judgment against Gulf Air B.S.C.

H.  Note this notice as the 7 days for Plaintiff eligibility to file for Entry to Judgment

Plaintiff reserves the right to seek additional relief should these issues remain unresolved or if further irregularities arise.

March 15, 2025
Respectfully submitted,

Samiha Ayyash

7823 New London Dr,

Springfield VA 22153

(703)623-3767

**PLAINTIFF SAMIHA AYYASH'S SEVEN-DAY NOTICE OF INTENT TO FILE ENTRY OF DEFAULT JUDGMENT & NOTICE TO THE COURT REGARDING CLERK'S PROCEDURAL MISCONDUCT AND PREJUDICIAL ACTIONS AGAINST PLAINTIFF**

R- 305

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2025, Plaintiff Samiha Ayyash will be sending a true and correct copy of the following documents to be served upon the parties listed below:

**PLAINTIFF SAMIHA AYYASH'S SEVEN-DAY NOTICE OF INTENT TO FILE ENTRY OF DEFAULT JUDGMENT & NOTICE TO THE COURT REGARDING CLERK'S PROCEDURAL MISCONDUCT AND PREJUDICIAL ACTIONS AGAINST PLAINTIFF**

1-Defendant American Airlines, Inc. Registered Agent  Registered Office Address :CORPORATION SERVICE COMPANY 1090 VERMONT AVE. NW Washington DC 20005. Method of Service: Personal delivery via ABC Legal Services (Process Server)

2-Defendant Gulf Air B.S.C., Inc.  AT Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Personal delivery via ABC Legal Services (Process Server)

3- Plaintiff Tala Josephano & Plaintiff Feras Hindi: Waived Service Receive Via MSGS

Respectfully submitted,

March 15 2025

**Pro Se Plaintiff**

**Samiha Ayyash**

7823 New London Dr

Springfield VA 22153
(703)623-3767

**PLAINTIFF SAMIHA AYYASH'S SEVEN-DAY NOTICE OF INTENT TO FILE ENTRY OF DEFAULT JUDGMENT & NOTICE TO THE COURT REGARDING CLERK'S PROCEDURAL MISCONDUCT AND PREJUDICIAL ACTIONS AGAINST PLAINTIFF**

R- 306

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

**Civil Division**

| | | |
|---|---|---|
| **Samiha Ayyash, Feras Hindi** | ) | **Case No.:  1:24-cv-03434-ACR** |
| **Tala Josephano** | ) | |
| Plaintiffs**,** | ) | |
| **American Airlines, INC. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendants | ) | |
| _____ | ) | |

**URGENT REQUEST FOR HEARING ON ENTRY OF DEFAULT, DEFAULT JUDGMENT, AND SUMMARY JUDGMENT; REQUEST FOR CASE MANAGER REMOVAL AND NOTICE OF INTENT TO SUE**

Plaintiffs hereby request an urgent hearing pursuant for Entry of Default, Default Judgment, and Summary Judgment. Additionally, Plaintiffs move for the immediate removal of Case Manager Mr. Dwight Patterson and provide notice of intent to file claims against Mr. Patterson and the intake department.

**RECEIVED**

MAR 18 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

URGENT REQUEST FOR HEARING ON ENTRY OF DEFAULT, DEFAULT JUDGMENT, AND SUMMARY JUDGMENT; REQUEST FOR CASE MANAGER REMOVAL AND NOTICE OF INTENT TO SUE

R- 307

Case 1:24-cv-03434-ACR    Document 30    Filed 03/18/25    Page 2 of 15
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 308 of 971

2

The defendants' actions in this case have effectively demonstrated the very negligence and fraud that the plaintiff alleges, thereby strengthening the plaintiff's claims without requiring further proof. Specifically:

1. Negligence: The defendants' failure to maintain a valid attorney certificate and their last-minute filing in violation of court rules clearly show a breach of the duty of care expected in legal proceedings. This aligns with the definition of negligence as "the failure to behave with the level of care that a reasonable person would have exercised under the same circumstances".

2. Fraud: The defendants' misrepresentation of their legal standing and false claims of service demonstrate the key elements of fraudulent misrepresentation, including:

   A. Making a false statement (claiming valid service when not in good standing)

   B. Knowing the statement was false or showing reckless disregard for its truth

   C. Intending for the plaintiff to act on the false information

   D. The plaintiff suffering harm as a result

Among many other actions, these actions satisfy the criteria for both negligence and fraud claims, as they show a clear breach of duty, causation, and resulting harm to the plaintiff. The defendants' conduct goes beyond mere carelessness, approaching the threshold of gross negligence given the severity and obviousness of their oversights

By engaging in these very behaviors, the defendants have essentially proven the plaintiff's case, eliminating the need for additional evidence or argumentation. Their actions serve as a real-time demonstration of the negligence and fraud alleged in the original complaint.

URGENT REQUEST FOR HEARING ON ENTRY OF DEFAULT, DEFAULT JUDGMENT, AND SUMMARY JUDGMENT; REQUEST FOR CASE MANAGER REMOVAL AND NOTICE OF INTENT TO SUE

R- 308

## Explanations For The Requests for Immediate Action

1. The initial case documents, including the mandatory magistrate judge consent form, were never received by Plaintiffs. The clerk is legally required to notify all parties of their right to accept or decline magistrate jurisdiction, and failure to do so constitutes a clear procedural violation. This issue must be corrected immediately.

2. Plaintiffs request written confirmation that all docketed filings have been properly submitted to and received by Judge Ana Reyes. Any failure to ensure accurate docket transmission has directly impacted Plaintiffs' due process rights and procedural fairness. Plaintiffs must be assured that their filings are being reviewed without interference, omission, or procedural manipulation.

3. Plaintiffs are concerned that their filings may have been altered before being uploaded to the docket. Defendants have previously attempted to introduce the term "contributed" in a way that could weaken Plaintiffs' negligence claims. Given this, Plaintiffs will be reviewing each document submitted over the next week to verify that no unauthorized changes have been made.

4. **FEBRUARY 20 2025 Deliberate Manipulation by INTAKE or The case manager.**

5. The filing discrepancy on February 20, 2025, requires immediate investigation as it reflects deliberate interference with plaintiffs' procedural rights and manipulation of court records to favor the defendants. Processing an invalid submission without proper justification and altering filing records undermines court integrity and due process.

6. **Defendants' Attorneys Were Not in Good Standing**

   At the time of filing on February 20, 2025, at 1:58 PM (DC time), Gulf Air's attorneys were not in good standing and knew they were ineligible to file. Despite this, they

URGENT REQUEST FOR HEARING ON ENTRY OF DEFAULT, DEFAULT JUDGMENT, AND SUMMARY JUDGMENT; REQUEST FOR CASE MANAGER REMOVAL AND NOTICE OF INTENT TO SUE

R- 309

proceeded with an invalid submission and immediately attempted to serve Plaintiff Tala via email, misrepresenting their legal standing to both the court and the opposing party.

7. Gulf Air's attorneys, representing a billion-dollar corporation and promoted as "experienced litigators," were fully aware that they must be in good standing to file a submission. Nonetheless, they filed at 1:58 PM on February 20, 2025, which led to a formal notice of INVALID filing issued by the court on February 21, 2025. However, this notice was not immediately reflected in the docket, suggesting administrative interference or negligence.

8. The court's notice of INVALID filing was issued on February 21, 2025, yet it was somehow backdated to February 20, 2025, on the docket. This raises concerns about who authorized this discrepancy and why the invalidation was concealed from the public record.

9. Plaintiff Tala confirmed with Ms. Hanna from Attorney Admissions that Gulf Air's attorneys were not in good standing on February 20, 2025. Despite this, one of the attorneys deliberately misrepresented their status and attempted to serve Plaintiff Tala via email, knowingly lacking legal authorization to do so. This fraudulent act constitutes an intentional misrepresentation to the court and opposing party.

10. The docket entry for Gulf Air's submission falsely reflects a filing date of February 20, 2025, even though the court officially notified Plaintiff Tala of the invalidation at 10:00 AM on February 21, 2025. The use of the term "RESOLVED" suggests an intentional administrative override, designed to conceal the invalid nature of the filing and create a false impression of compliance with court rules.

URGENT REQUEST FOR HEARING ON ENTRY OF DEFAULT, DEFAULT JUDGMENT, AND SUMMARY JUDGMENT; REQUEST FOR CASE MANAGER REMOVAL AND NOTICE OF INTENT TO SUE

R- 310

Case 1:24-cv-03434-ACR    Document 30    Filed 03/18/25    Page 5 of 15
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 311 of 971

5

11. **Unanswered Questions About Judicial Oversight**

  Where is the original filing of the error? The issue was not discovered until February 21, 2025. While it was stated that the Judge was notified, was it actually the Judge, or was it handled internally by chambers or intake personnel? A Judge would not typically allow a Defendant's filing error—especially on the last day of service—to bypass court rules regarding expired attorney certifications.

12.  If the Judge approved the correction, a valid reason must have been provided. What justification exists for permitting a last-day filing, allowing a Meet & Confer request without the required Certificate of Plaintiffs' interaction? Most importantly, was this prejudicial to the Plaintiffs? Plaintiffs were not only prejudiced but suffered direct harm as a result of this irregularity

13.  The entry modification on February 21, 2025, falsely stated that the issue was "Resolved" and backdated the court's invalid notice from February 21 to February 20, 2025. While seemingly minor, this manipulation directly benefited Gulf Air, shielding them from procedural violations and creating an unjust advantage.

14. The Defendants relied on the Plaintiffs' Pro Se status and their intel from Tala's network, expecting them not to notice or challenge these manipulations. Alternatively, there may be financial incentives influencing court personnel assisting Gulf Air within the system.

15. **Need for DOJ & District Attorney Investigation**

  This situation requires immediate investigation by the Department of Justice (DOJ) and the District Attorney's office to determine if procedural misconduct, administrative interference, or judicial bias played a role in altering the docket and suppressing Plaintiffs' rights for some external influence.

URGENT REQUEST FOR HEARING ON ENTRY OF DEFAULT, DEFAULT JUDGMENT, AND SUMMARY JUDGMENT; REQUEST FOR CASE MANAGER REMOVAL AND NOTICE OF INTENT TO SUE

R- 311

6

### 16. GULF AIR FILINGS FEBRUARY 20 2025

17. All future filings must be handled exclusively by a supervisor, with no further access granted to Mr. Dwight Patterson or any unsupervised clerks. The repeated errors and procedural misconduct exceed human error and have resulted in significant harm to plaintiffs. Everyone involved in improperly entering docket filings must be removed from handling this case.

18. The Meet & Confer request filed on February 21, 2025, was not only procedurally improper but deliberately misleading. It was orchestrated by internal actors assisting Gulf Air within the federal court system and federal agencies. Whether foreign or domestic, those involved appear to have personal or financial motives for influencing the case.

19. The Clerk advised Gulf Air on how to submit a Meet & Confer request in pleading format, while plaintiffs were consistently denied procedural assistance. This active involvement raises serious concerns regarding fairness, impartiality, and procedural integrity. The Clerk's selective assistance directly benefited Gulf Air while undermining plaintiffs' ability to seek default.

20. Plaintiffs followed FRCP Rule 55(a) for an Entry of Default, yet case manager Dwight Patterson misapplied the rule and directed Plaintiff Tala to consult the Pro Se Handbook instead. Instead of verifying whether Rule 55(a) was satisfied, Patterson improperly applied Rule 55(b), shifting the burden onto plaintiffs rather than confirming the default.

21. Rule 55(a) does not require a defendant to file or serve anything except an ANSWER within 21 days. Yet, Patterson ignored this and failed to ensure proper procedural compliance, obstructing plaintiffs' ability to secure an Entry of Default.

URGENT REQUEST FOR HEARING ON ENTRY OF DEFAULT, DEFAULT JUDGMENT, AND SUMMARY
JUDGMENT; REQUEST FOR CASE MANAGER REMOVAL AND NOTICE OF INTENT TO SUE

R- 312

22. Plaintiffs' motions were delayed from being uploaded or addressed until Defendants secured an improper procedural advantage. Deputy Alexander Burton facilitated this delay, benefiting Gulf Air. As a result, Deputy Burton will be served with Fraud Upon the Court claims this week.

**23. MARCH 6 2025 MEET & CONFER**

24. Defendants, with internal assistance from court staff, deliberately manipulated the Meet & Confer process to evade filing an Answer. Instead, they used the process to improperly gather standing arguments and evidence while attempting to litigate the case's merits through an invalid submission. Deputy Clerk Alexander Burton, despite explicit instructions not to authorize this improper request, proceeded without justification, directly contributing to fraudulent procedural interference. As a result, Deputy Burton, along with Gulf Air's attorneys, now faces claims of Fraud Upon the Court.

25. Plaintiff Tala explicitly warned Deputy Clerk Alexander Burton during a direct phone call that his actions violated the procedural rights of two plaintiffs who had already submitted a motion for Entry of Default. Despite this clear notice, Deputy Burton facilitated an improper Meet & Confer appointment, obstructing plaintiffs' ability to secure a fair ruling. This direct interference constitutes Fraud Upon the Court, meeting the legal threshold for judicial misconduct and procedural fraud.

26. What may appear as mere coincidences to the average person is, in intelligence operations, a clear sign of interference. Every time a procedural irregularity benefits Gulf Air or American Airlines, Mr. Patterson is conveniently out of the office. What official work requires a clerk to be off-site during critical procedural moments? While this could be personal leave, the timing aligns too perfectly with instances of procedural

**URGENT REQUEST FOR HEARING ON ENTRY OF DEFAULT, DEFAULT JUDGMENT, AND SUMMARY JUDGMENT; REQUEST FOR CASE MANAGER REMOVAL AND NOTICE OF INTENT TO SUE**

R- 313

Case 1:24-cv-03434-ACR    Document 30    Filed 03/18/25    Page 8 of 15
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 314 of 971

8

manipulation. Similarly, the unexplained absence of other officials from Judge Reyes' chambers allowed another chamber deputy to approve this misconduct. The level of confidence displayed by Deputy Burton suggests that he is receiving direct backing from influential sources inside the court.

27. We formally demand confirmation on whether Judge Reyes has personally reviewed any of the motions submitted by plaintiffs. There is increasing concern that plaintiffs' filings have not been properly presented to the Judge, while Gulf Air's submissions have been actively processed and facilitated by court staff. This violates fundamental principles of procedural neutrality and due process.

28. If these serious violations are not promptly addressed, we will formally proceed with a negligence claim against Mr. Dwight Patterson and the court intake department. His failure to perform his essential duties as a case manager—whether due to incompetence or deliberate interference—has already caused severe procedural prejudice against plaintiffs. Furthermore, the fraudulent procedural interference carried out by Deputy Alexander Burton and other court staff has resulted in direct financial, emotional, and physical harm to the plaintiffs. Should any additional procedural irregularities occur, this matter will escalate beyond negligence into Fraud Upon the Court and Intentional Interference.

29. To date, Mr. Patterson has committed no fewer than seven documented procedural mistakes, which even the intake department has acknowledged as negligence. However, whether these actions constitute mere negligence or amount to fraud and intentional interference is now a matter for judicial determination.

URGENT REQUEST FOR HEARING ON ENTRY OF DEFAULT, DEFAULT JUDGMENT, AND SUMMARY JUDGMENT; REQUEST FOR CASE MANAGER REMOVAL AND NOTICE OF INTENT TO SUE

R- 314

30. Plaintiffs will be filing Fraud claims against Ms. Darcy and Mr. Mike, Gulf Air's attorneys, for ethical misconduct, intentional obstruction of justice, intentional inducement, and intentional infliction of emotional distress. Plaintiffs are in the process of retaining a criminal law attorney, as this case has now escalated beyond civil litigation.

31. Court staff helping Defendants against Plaintiffs and Playing inside the courts and using the illegal surveillance on one of the Plaintiffs that is initiated by Personal Agenda to serve some foreign government is one thing, and the chance of these Airlines crashing over our heads is another.

**32. PLAINTIFF TALA Opinion as a Security Expert :**

33. TPlaintiff Tala is fully aware of the tactics employed by corrupt entities and their influence within the U.S. government. When courts begin receiving external pressure—whether through diplomatic calls, financial incentives, or undisclosed arrangements—we risk undermining judicial integrity and drifting toward a system where victims are wrongfully categorized as "threats to national security" to suppress legitimate claims. Such a scenario mirrors judicial interference tactics seen in authoritarian regimes, where justice is dictated by personal agendas rather than the rule of law.

34. It is highly questionable what leverage Gulf Air holds over the U.S. government that cannot be achieved through standard diplomatic channels. American taxpayers already contribute substantial financial aid and diplomatic resources to these nations, making any preferential treatment toward Gulf Air unwarranted and alarming. The government's reluctance to act in a case that directly safeguards public interests—and could potentially generate $500 million in federal revenue—raises serious concerns about conflicts of interest, foreign influence, or undisclosed beneficiaries within the system. This demands

URGENT REQUEST FOR HEARING ON ENTRY OF DEFAULT, DEFAULT JUDGMENT, AND SUMMARY JUDGMENT; REQUEST FOR CASE MANAGER REMOVAL AND NOTICE OF INTENT TO SUE

R- 315

Case 1:24-cv-03434-ACR    Document 30    Filed 03/18/25    Page 10 of 15
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 316 of 971

10

closer scrutiny of the decision-making process and whether external forces are shaping judicial outcomes beyond legitimate legal and corporate considerations.

35. Despite our diligent efforts to bring these matters to the Court's attention, our requests have been overlooked, while the Court has continued to entertain the defendants' fraudulent representations and actions. This imbalance in treatment threatens to further prejudice the plaintiff and erode public confidence in the judicial system.

36. The timing of procedural irregularities often coincides with the absence of key clerks and court staff, whether due to natural reasons or orchestrated efforts by external influences assisting Gulf Air. These "intelligence" acts raise concerns about the integrity of case handling and whether certain court personnel are being strategically positioned or removed at critical moments to facilitate procedural advantages for Gulf Air.

37. **JUDGE ANA REYES**

38. This claim was originally filed on December 10, 2024, with only Plaintiff Feras and Plaintiff Samiha listed as parties. At the time, Tala was working separately on her own claims against both Defendants, which were entirely distinct from this case and not included in the current proceedings. She was in the final stages of preparing her filings in New York.

39. Having previously witnessed external interference in judicial proceedings, including calls to judges, Tala was hesitant to file her claims in Washington, D.C., or California, fearing similar tactics would be used to obstruct her case.

40. The assignment of Plaintiff Feras and Samiha's claims to Judge Ana Reyes appeared to be a calculated move to create a sense of comfort and legitimacy. The goal was for Tala to accept the judge's assignment without suspicion, believing there was no interference in

URGENT REQUEST FOR HEARING ON ENTRY OF DEFAULT, DEFAULT JUDGMENT, AND SUMMARY
JUDGMENT; REQUEST FOR CASE MANAGER REMOVAL AND NOTICE OF INTENT TO SUE

R- 316

Case 1:24-cv-03434-ACR   Document 30   Filed 03/18/25   Page 11 of 15
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 317 of 971

11

the case. Judge Ana's background and ideology share similarities with Tala's, which would naturally make Tala more at ease with the process, discouraging her from questioning court manipulation.

41. However, while Tala's focus was on the judge's reputation for fairness, the real interference was taking place behind the scenes—within court staff. The strategy was to keep Tala reassured and deter her from filing her separate claims in New York against both Defendants and the FAA. This allowed the Defendants and their allies to manipulate procedural matters at the clerk and intake level while Tala remained focused on the judge's perceived neutrality.

42. We urge the Court to recognize the gravity of this situation and grant this hearing without delay, as it is crucial to preserving the plaintiff's rights and upholding the principles of justice upon which our legal system is founded. The delays, procedural manipulation, and irregularities in court handling necessitate immediate judicial review to ensure fairness and due process

## Requests for Urgent Action

1. Request for an **Urgent Hearing** – Plaintiffs seek in person an expedited hearing within 48 hours due to ongoing procedural irregularities and interference.

2. Immediate Removal of Mr. Dwight Patterson – Plaintiffs request that Mr. Patterson be removed as case manager and that only a supervisor handle all future filings to ensure procedural fairness.

URGENT REQUEST FOR HEARING ON ENTRY OF DEFAULT, DEFAULT JUDGMENT, AND SUMMARY JUDGMENT; REQUEST FOR CASE MANAGER REMOVAL AND NOTICE OF INTENT TO SUE

R- 317

Case 1:24-cv-03434-ACR    Document 30    Filed 03/18/25    Page 12 of 15
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 318 of 971

12

3.  Written Confirmation of Judge's Receipt of Filings – Plaintiffs request official confirmation that all docketed filings have been properly submitted to and received by Judge Ana Reyes.

4.  Full Investigation and Correction of the February 20, 2025 Filing Discrepancy – Plaintiffs demand a detailed review and correction of the improper docketing, including identifying who authorized the altered entry

5.  Verification of Attorney's Status on February 20, 2025 – Plaintiffs request official verification of Gulf Air's attorney's standing on February 20, 2025, and the identity of the individual who authorized and processed the submission on February 20 and 21, 2025

6.  Do Not Allow Any Further Filings from Defendants – Plaintiffs request that no additional filings from Gulf Air or American Airlines be accepted until the validity of their legal representation is confirmed.

**Notice of Intent to Sue & Legal Actions**

In an absent of instant resolution, Plaintiffs will pursue claims against:

1.  Mr. Patterson for negligence and breach of duty and other related Claims

2.  Intake department for negligence, prejudice, and abuse of process

Plaintiffs have suffered:

1.  Financial losses and unnecessary legal expenses

2.  Physical stress, including back and neck strain

3.  Emotional distress and exacerbation of prior trauma

4.  Loss of work and productivity

5.  Intensified anxiety and distrust in the judicial system

13

Plaintiffs respectfully request the Court's immediate attention to these urgent matters to prevent

further harm and ensure the fair administration of justice.


March 18 2025 By Pro Se Plaintiffs

*F.H*                           *S.A*                           *T.J*

Feras Hindi                     Samiha Ayyash                   Tala Josephano

7823 New London Dr              7823 New London Dr              615 S Catalina Ave #233

Springfield VA 22153            Springfield VA 22153            Redondo Beach CA 90277

(703)980-6955                   (703)623-3767                   (347)749-4980

**URGENT REQUEST FOR HEARING ON ENTRY OF DEFAULT, DEFAULT JUDGMENT, AND SUMMARY
JUDGMENT; REQUEST FOR CASE MANAGER REMOVAL AND NOTICE OF INTENT TO SUE**

R- 319

14

## CERTIFICATE OF SERVICE

I hereby certify that on March 7th, 2025, Plaintiff Tala Josephano will submit Notice for the Clerk of Federal Court of DC VIA the Intake email " dcd_intake@dcd.uscourts.gov" and send a true and correct copy of the following document to be served upon the parties listed below:

**URGENT REQUEST FOR HEARING ON ENTRY OF DEFAULT, DEFAULT**

**JUDGMENT, AND SUMMARY JUDGMENT; REQUEST FOR CASE MANAGER**

**REMOVAL AND NOTICE OF INTENT TO SUE**

1.  Defendant American Airlines

    Registered Agent Registered Office Address CORPORATION SERVICE COMPANY 1090 VERMONT AVE. NW Washington DC 20005.
    Method of Service: Via ABC Legal Services (Process Server)

    Courtesy Copy from Tala will be emailed to Micah E. Ticatch

2.  Defendant Gulf Air B.S.C., Inc.

    AT Eckert Seamans Cherin & Mellott, LLC
    1717 Pennsylvania Ave., N.W., 12th Floor
    Washington, D.C. 20006

    Method of Service: Via ABC Legal Services (Process Server)

March 18 2025 by Pro Se Plaintiffs

Feras Hindi                 Samiha Ayyash              Tala Josephano

7823 New London Dr          7823 New London Dr         615 S Catalina Ave #233

Springfield VA 22153        Springfield VA 22153       Redondo Beach CA 90277

(703)980-6955               (703)623-3767              (347)749-4980

R- 320

**URGENT REQUEST FOR HEARING ON ENTRY OF DEFAULT, DEFAULT JUDGMENT, AND SUMMARY JUDGMENT; REQUEST FOR CASE MANAGER REMOVAL AND NOTICE OF INTENT TO SUE**

R- 321

R- 322

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

**Civil Division**

| | | |
|---|---|---|
| **Samiha Ayyash, Feras Hindi** | ) | **Case No.:  1:24-cv-03434-ACR** |
| **Tala Josephano** | ) | |
| Plaintiff**,** | ) | |
| **American Airlines, INC. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendant | ) | |
| | ) | |
| _____ | ) | |

## PLAINTIFF FERAS MOTION TO STRIKE DEFENDANT GULF AIR'S IMPROPER FILINGS

Plaintiff Feras Hindi respectfully moves this Court to strike the Notice of Appearance submitted by Defendant Gulf Air B.S.C. pursuant to Federal Rule of Civil Procedure 12(f) as it is procedurally defective, improperly filed by unauthorized attorneys, and contains misrepresentations regarding service and to Strike all fillings filed on February 20 2025, March 10 2025 entirely and any filing afters.



**RECEIVED**

MAR 24 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

**BACKGROUND**

Plaintiff Feras Hindi filed his initial claim on December 10, 2024, and subsequently amended the claim on December 30, 2024. Defendant Gulf Air B.S.C. was served on January 30, 2025, establishing a deadline to respond by February 20, 2025, under Federal Rule of Civil Procedure 12(a)(1)(A)(i). On February 20, 2025, Defendant's attorneys, Darcy C. Osta (D.C. Bar No. 1686937) and Mark A. Johnston (D.C. Bar No. 455764), of the law firm Eckert Seamans Cherin & Mellott, LLC, filed a Notice of Appearance on behalf of Gulf Air. This filing was submitted on the final day of the response deadline. CM/ECF submission does not override the requirement for valid attorney admission

However, on February 21, 2025, the Court notified Gulf Air's counsel that their filing was invalid because both attorneys had expired D.C. Bar certifications at the time of submission. Despite this notification, Defendant has continued to rely on its procedurally defective filing, which remains unauthorized and legally ineffective.Filings made before the official reinstatement are improper and cannot be retroactively validated.

**ARGUMENT**

Plaintiff Feras Hindi moves this Court to strike all filings entirely submitted by Defendant Gulf Air on February 20, 2025, including its Notice of Appearance, as well as all subsequent filings after including March 4, 2025, under Federal Rule of Civil Procedure 12(f). These filings are procedurally defective, unauthorized, and legally void because they were submitted by attorneys whose D.C. Bar certifications were expired at the time of filing. Gulf Air's Notice of Appearance

USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 324 of 971

was filed on the last day of the 21-day deadline (February 20, 2025)1. This timing is crucial as it left no room for correction within the mandated response period. Both attorneys had expired D.C. Bar certifications at the time of filing1. This is a clear violation of Federal Rule of Civil Procedure 11(a), which requires filings to be signed by an attorney of record

**I. February 20, 2025, Filings Were Improper and Must Be Stricken**

On February 20, 2025, Defendant Gulf Air B.S.C., through attorneys submitted multiple filings via the CM/ECF federal e-filing system  by attorneys whose D.C. Attorneys certifications were expired including:

1.  Notice of Appearance –

2.  LCvR 26.1 Corporate Disclosure Statement.

3.  Pre-Motion Request for a Meet-and-Confer.

4.  Motion for Telephone Conference.

On February 21, 2025, the Court notified Gulf Air's counsel that their Notice of Appearance was invalid due to the attorneys' expired bar admissions. Despite this, Defendant continued relying on its procedurally defective filing and failed to  serve Plaintiff with any corrected Notice of Appearance.

As Confirmed by the court. The D.C. Bar renewal process takes 5 business days, as attorney credentials must be reviewed before reinstatement. Renewal is not instant, and the purpose of the waiting period is to ensure that an attorney remains in good standing before resuming legal practice in addition to Admin work time.

On February 20, 2025—the deadline for Gulf Air's response—the Court confirmed that both attorneys lacked valid Certificates of Admission and were not authorized to file on behalf of Defendant. After being notified of the defect on February 21, 2025, Defendant's attorneys submitted a renewal payment of $25, but their reinstatement was not immediate.

Considering that this defect arose on the final day of Defendant's 21-day response deadline, Plaintiff moved for Entry of Default. Any attempt to correct the issue after February 20, 2025, is irrelevant, as Defendant failed to cure the defect by submitting a valid, renewed Certificate of Admission on or before the deadline.

The Notice of Appearance is the foundational filing that allows attorneys to act on behalf of a party. Since it was filed while the attorneys were unauthorized, it is legally void, and all subsequent filings relying on it are also improper. A party cannot file substantive motions without first having a valid attorney of record. It also violate FRCP 11(a)

*"Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented. The paper must state the signer's address, email address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit.*
*The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention."*

This rule establishes that only properly admitted attorneys may submit filings, and any filing made by an unauthorized attorney is procedurally invalid. Because Gulf Air's attorneys were not

in good standing at the time of filing, their submissions are defective, legally void, and must be stricken under Rule 11(a).

Here, Defendant Gulf Air's attorneys were not authorized to practice before this Court at the time of filing due to expired D.C. Attorney certifications. Since the Notice of Appearance was submitted by attorneys who were not in good standing, it is procedurally defective and legally void.

Furthermore, Defendant did not request an extension from either the Court or Plaintiff , further confirming its procedural default.  The Notice of Appearance is **procedurally improper** because it was filed by unauthorized attorneys, failed to comply with court rules

Rule 12(f) allows the Court to strike filings that are redundant, improper, or prejudicial  Gulf Air's Notice of Appearance was unauthorized and thus legally void from the outset. Any subsequent filings premised on the invalid appearance must also be stricken.

## II. LEGAL BASIS FOR STRIKING GULF AIR'S FILINGS

Notice of Appearance Was Improper and Violated Rule 11(a) as it was Filed by attorneys without valid D.C. Bar certifications at the time of submission. Rule 11(a) requires attorneys to be properly admitted before filing; failure to comply renders the filing procedurally void. The Court confirmed the defect on February 21, 2025, proving the attorneys were unauthorized when filing.

Failure to Investigate Attorney Status Violates Rule 11(b) as Rule 11(b) requires attorneys to conduct reasonable inquiry before filing. Gulf Air's attorneys failed to verify their admission status before submitting filings, violating their duty under Rule 11.

All February 20, 2025, Filings Must Be Stricken as the Notice of Appearance was invalid, making all filings submitted that day improper. These include the LCvR 26.1 Certificate of Disclosure - Corporate Affiliations/Financial Interests; Pre-Motion Request for a Meet-and-Confer; Motion for Telephone Conference; Filings made under an invalid Notice of Appearance have no legal effect and must be stricken.

All Filings Submitted on or After March 4, 2025, Must Be Stricken as Defendant was not properly present in the case after February 20, 2025; Gulf Air failed to correct or properly serve a valid Notice of Appearance before filing additional motions as deadline was February 20 2025 Filings made without a valid presence in the case prejudice due process and must be stricken.

 The meet-and-confer requested by Telephone Conference  by attorneys without valid bar certifications should be considered void and improper.

Striking These Filings is Necessary to Maintain Procedural Integrity as Rule 12(f) allows the Court to strike improper or prejudicial filings. Procedural violations cannot be cured retroactively—allowing these filings to stand grants Defendant an unfair advantage.  Gulf Air's Notice of Appearance and all related filings must be stricken in their entirety

**Procedural Delay and Unfair Litigation Advantage**

Gulf Air's defective filing created uncertainty about their legal standing, allowing them to prolong litigation by scheduling hearings and filing motions despite lacking authority to participate. Courts prioritize avoiding "undue delay, prejudice, or injustice" when evaluating motions to strike appearances. Gulf Air's actions directly contradict this principle, as their participation delayed Feras's ability to seek default and forced unnecessary litigation expenses.

Had the Notice of Appearance been stricken immediately, Feras would have secured default judgment by February 20, 2025. Gulf Air's procedural noncompliance obstructed this legal pathway; Permitting defective filings undermines procedural deadlines and incentivizes parties to exploit technical gaps, weakening judicial integrity.

Gulf Air's actions have not only delayed these proceedings but have also significantly hampered Plaintiff's ability to effectively prosecute his case. The uncertainty surrounding Gulf Air's legal representation has made it impossible to conduct meaningful discovery and has prolonged the resolution of this matter, causing undue stress and anxiety for the Plaintiff.

Instead of focusing on the substantive issues of the case, the Plaintiff has been forced to divert his time and resources to addressing Gulf Air's procedural deficiencies. This has not only caused financial harm but has also created unnecessary stress and anxiety for the Plaintiff, who is now burdened with the task of correcting Gulf Air's mistakes. Gulf Air secured a meet-and-confer before the plaintiff's motion for entry of default. However, argue that this does not cure the fundamental procedural defects in their initial filings.

Even setting aside the fundamental issue of unauthorized practice, Gulf Air has accumulated a series of procedural defects that have demonstrably prejudiced the Plaintiff, forcing him to expend considerable resources to address these avoidable issues. Securing a meet-and-confer after filing a procedurally invalid notice of appearance and *before* the Plaintiff could even seek entry of default further compounded this prejudice.

This is not merely a technical oversight, but a pattern of negligence and non-compliance culminating in wasted time, money, and legal effort for the Plaintiff. Gulf Air's actions directly relate to the core issue of negligence that underlies the entire case, as their failure to ensure

proper legal representation mirrors the very lack of diligence and compliance that forms the basis of the Plaintiff's claims. These violations are not separate from the merits; they *are* part of the merits, demonstrating a consistent disregard for due process and responsible conduct.

If this Court allows Gulf Air to benefit from its improper filings, it would send a message that procedural rules can be ignored without consequence. This would erode the integrity of the legal system and create a dangerous precedent for future litigants

### III. Conclusion and Relief Requested

Under Federal Rule of Civil Procedure 12(f), the Court has the authority to strike any filing that is redundant, immaterial, impertinent, or improper. Additionally, under Rule 11(a), Gulf Air is not a naive litigant; it is a sophisticated international airline that has a duty to ensure its legal representatives are properly authorized to practice law. Their failure to do so, whether intentional or negligent, constitutes a flagrant disregard for the rules of this Court and has caused substantial prejudice to the Plaintiff

Moreover, the Court has the discretion to strike filings on its own if they fail to comply with procedural rules. Given the substantial procedural violations and improper filings in this case, Plaintiff respectfully urges the Court to strike these filings in their entirety.  For these reasons, Plaintiff requests that the Court: Strike the Notice of Appearances for being submitted and filed by unauthorized attorneys , violating Rule 11(a) and Rule 11(b) making them improper; Strike all February 20, 2025, filings entirely  as improper, immaterial, and submitted by unauthorized attorneys; Strike all filings entirely submitted on or after March 4, 2025, as they were made

without a valid Notice of Appearance and violate Rule 11(a). Plaintiff requests the court approval

to amend the motion as he did his best with his minimum internet resources to write it.

March 24 2025

*F. H*

Feras Hindi
7823 New London Dr
Springfield VA 22153
(703)980-6955

R- 331

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2025, Plaintiff Feras Hindi will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Motion To Strike

1-Defendant American Airlines, Inc. Registered Agent  Registered Office Address :CORPORATION SERVICE COMPANY 1090 VERMONT AVE. NW Washington DC 20005.

2-Defendant Gulf Air B.S.C., Inc  AT Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Personal delivery via ABC Legal Services (Process Server)

3- Plaintiff Tala Josephano & Plaintiff Samiha Ayyash : Waived Service, Courtesy given.

Respectfully submitted,

March 24 2025

**Pro Se Plaintiff**

F. H

**Feras Hindi**

7823 New London Dr

Springfield VA 22153
(703)980-6955

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

**Civil Division**

| | | |
|---|---|---|
| **Samiha Ayyash, Feras Hindi** | ) | **Case No.:  1:24-cv-03434-ACR** |
| **Tala Josephano** | ) | |
| Plaintiff**,** | ) | |
| **American Airlines, INC. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendant | ) | |
| | ) | |

## CERTIFICATE OF CONFERENCE

Pursuant to Local Civil Rule 7(m), Plaintiff Feras Hindi states that he attempted to comply with the requirement to confer with Defendant Gulf Air regarding this Motion to Strike. However, Defendant has engaged in bad-faith litigation tactics that prevent meaningful conferral from day one. Due to preventing conflicts, Plaintiff already requested a hearing but all his motions have been ignored. Plaintiff didn't realize that his motions needed a certificate of Service and Proposed order. He understood the Judge orders were for Defendant only. Plaintiff Feras will be fixing the mistake of missed documents.

Gulf Air's attorneys have demonstrated a pattern of procedural misconduct, misrepresenting facts to the Court, and obtaining improper privileges. These actions have prejudiced Plaintiff

R- 332

Feras Hindi and have made it clear that Defendant is not acting in good faith to resolve procedural disputes.

Plaintiff Feras Hindi was never served with Gulf Air's Notice of Appearance, preventing any direct communication with Defendant's counsel. Defendant's improper filings, including a Notice of Appearance submitted by unauthorized attorneys, have further obstructed proper legal proceedings.

Defendant attempting to send documents lately certified with two Plaintiffs name is also making it hard to approach them as they continue to prejudice the Plaintiff . Gulf Air's history of bad faith, both in this litigation and in prior dealings with Plaintiff, demonstrates an unwillingness to engage fairly. Any attempt to confer with Defendant would have been futile and only used as a delay tactic.

Given these circumstances, Plaintiff requests that the Court waive the conferral requirement under Local Civil Rule 7(m) and proceed with ruling on the Motion to Strike. Plaintiff also request that any meeting set to be converted to Motion of Entry of Default rather than meet and confer for Defendant Gulf Air

March 24 2025

*F.H*

Feras Hindi
7823 New London Dr
Springfield VA 22153
(703)980-6955

R- 333

CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2025, Plaintiff Feras Hindi will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Certificate of Conference for Motion to Strike

1-Defendant American Airlines, Inc. Registered Agent  Registered Office Address :CORPORATION SERVICE COMPANY 1090 VERMONT AVE. NW Washington DC 20005. Method of Service: Personal delivery via ABC Legal Services (Process Server)

2-Defendant Gulf Air B.S.C., Inc  AT Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Personal delivery via ABC Legal Services (Process Server)

3- Plaintiff Tala Josephano & Plaintiff Samiha Ayyash : Accepted Service Via Email with Written Consent

Respectfully submitted,

March 24 2025

Pro Se Plaintiff

*F. H*

Feras Hindi

7823 New London Dr

Springfield VA 22153
(703)980-6955
Fhindi@friendshiplogistics.com

R- 334

Case 1:24-cv-03434-ACR   Document 34-2   Filed 03/24/25   Page 1 of 3
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 335 of 971

1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

Civil Division

| | | |
|---|---|---|
| Samiha Ayyash, Feras Hindi | ) | Case No.: 1:24-cv-03434-ACR |
| Tala Josephano | ) | |
| Plaintiffs, | ) | |
| American Airlines, INC. , | ) | |
| Gulf Air B.S.C | ) | |
| Defendants | ) | |
| _____ | ) | |

[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE

Upon consideration of Plaintiff Feras Hindi's Motion to Strike Defendant Gulf Air's Improper

Filings, and for good cause shown, it is hereby:

1.  ORDERED that Plaintiff's Motion to Strike DOCKET        is GRANTED; and it is

    further

2.  ORDERED that the entire Notice of Appearance filed by attorneys Darcy C. Osta and

    Mark A. Johnston on behalf of Defendant Gulf Air B.S.C. on February 20, 2025, is

    hereby STRICKEN; and it is further

3.  ORDERED that all entire filings submitted by Defendant Gulf Air B.S.C. on February

    20, 2025, including but not limited to the Notice of Appearance, LCvR 1 Corporate

R- 335

Case 1:24-cv-03434-ACR    Document 34-2    Filed 03/24/25    Page 2 of 3
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 336 of 971

2

Disclosure Statement, Pre-Motion Request for a Meet-and-Confer, and Motion for

Telephone Conference, are hereby STRICKEN; and it is further

4.  ORDERED that entirely all filings submitted by Defendant Gulf Air B.S.C. on or after

March 4, 2025, are hereby STRICKEN; and it is further

IT IS SO ORDERED.

Dated:

Judge Ana Reyes

R- 336

Case 1:24-cv-03434-ACR     Document 34-2     Filed 03/24/25     Page 3 of 3
USCA Case #25-7123     Document #2186844     Filed: 08/06/2026     Page 337 of 971

3

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2025, Plaintiff Feras Hindi will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Proposed Order for Motion to Strike

1-Defendant American Airlines, Inc. Registered Agent  Registered Office Address :CORPORATION SERVICE COMPANY 1090 VERMONT AVE. NW Washington DC 20005. Method of Service: Personal delivery via ABC Legal Services (Process Server)

2-Defendant Gulf Air B.S.C., Inc  AT Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Personal delivery via ABC Legal Services (Process Server)

3- Plaintiff Tala Josephano & Plaintiff Samiha Ayyash : Waived Service , courtesy notice.

Respectfully submitted,

March 24 2025

Pro Se Plaintiff

F. H

Feras Hindi

7823 New London Dr

Springfield VA 22153
(703)980-6955

R- 337

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

### Civil Division

| | | |
|---|---|---|
| **Samiha Ayyash, Feras Hindi** | ) | **Case No.:  1:24-cv-03434-ACR** |
| **Tala Josephano** | ) | |
| Plaintiff**,** | ) | |
| **American Airlines, INC. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendant | ) | |
| _____ | ) | |

## PLAINTIFF SAMIHA  MOTION TO STRIKE DEFENDANT GULF AIR'S IMPROPER FILINGS

Plaintiff SAMIHA AYYASH respectfully moves this Court to strike the Notice of Appearance

submitted by Defendant Gulf Air B.S.C. pursuant to Federal Rule of Civil Procedure 12(f) as it is

procedurally defective, improperly filed by unauthorized attorneys, and contains

misrepresentations regarding service and to Strike all fillings filed on February 20 2025, March

10 2025 entirely and any filing afters.

**RECEIVED**

MAR 24 2025
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

**PLAINTIFF SAMIHA MOTION TO STRIKE DEFENDANT GULF AIR'S IMPROPER FILINGS**

R- 338

R- 339

## BACKGROUND

Plaintiff Samiha filed his initial claim on December 10, 2024, and subsequently amended the claim on December 30, 2024. Defendant Gulf Air B.S.C. was served on January 30, 2025, establishing a deadline to respond by February 20, 2025, under Federal Rule of Civil Procedure 12(a)(1)(A)(i). On February 20, 2025, Defendant's attorneys, Darcy C. Osta (D.C. Bar No. 1686937) and Mark A. Johnston (D.C. Bar No. 455764), of the law firm Eckert Seamans Cherin & Mellott, LLC, filed a Notice of Appearance on behalf of Gulf Air. This filing was submitted on the final day of the response deadline. CM/ECF submission does not override the requirement for valid attorney admission

However, on February 21, 2025, the Court notified Gulf Air's counsel that their filing was invalid because both attorneys had expired D.C. attorney certifications at the time of submission. Despite this notification, Defendant has continued to rely on its procedurally defective filing, which remains unauthorized and legally ineffective.Filings made before the official reinstatement are improper and cannot be retroactively validated.

## ARGUMENT

Plaintiff Samiha moves this Court to strike all filings entirely submitted by Defendant Gulf Air on February 20, 2025, including its Notice of Appearance, as well as all subsequent filings after including March 4, 2025, under Federal Rule of Civil Procedure 12(f). These filings are procedurally defective, unauthorized, and legally void because they were submitted by attorneys whose D.C. Bar certifications were expired at the time of filing. Gulf Air's Notice of Appearance

**PLAINTIFF SAMIHA MOTION TO STRIKE DEFENDANT GULF AIR'S IMPROPER FILINGS**

was filed on the last day of the 21-day deadline (February 20, 2025)1. This timing is crucial as it left no room for correction within the mandated response period. Both attorneys had expired D.C. Bar certifications at the time of filing. This is a clear violation of Federal Rule of Civil Procedure 11(a), which requires filings to be signed by an attorney of record

## I. February 20, 2025, Filings Were Improper and Must Be Stricken

On February 20, 2025, Defendant Gulf Air B.S.C., through attorneys submitted multiple filings via the CM/ECF federal e-filing system by attorneys whose D.C. Attorneys certifications were expired including:

1. Notice of Appearance –

2. LCvR 26.1 Corporate Disclosure Statement.

3. Pre-Motion Request for a Meet-and-Confer.

4. Motion for Telephone Conference.

On February 21, 2025, the Court notified Gulf Air's counsel that their Notice of Appearance was invalid due to the attorneys' expired bar admissions. Despite this, Defendant continued relying on its procedurally defective filing and failed to serve Plaintiff with any corrected Notice of Appearance.

As Confirmed by the court. The D.C. Bar renewal process takes 5 business days, as attorney credentials must be reviewed before reinstatement. Renewal is not instant, and the purpose of the waiting period is to ensure that an attorney remains in good standing before resuming legal practice in addition to Admin work time.

On February 20, 2025—the deadline for Gulf Air's response—the Court confirmed that both attorneys lacked valid Certificates of Admission and were not authorized to file on behalf of Defendant. After being notified of the defect on February 21, 2025, Defendant's attorneys submitted a renewal payment of $25, but their reinstatement was not immediate.

Considering that this defect arose on the final day of Defendant's 21-day response deadline, Plaintiff moved for Entry of Default. Any attempt to correct the issue after February 20, 2025, is irrelevant, as Defendant failed to cure the defect by submitting a valid, renewed Certificate of Admission on or before the deadline.

The Notice of Appearance is the foundational filing that allows attorneys to act on behalf of a party. Since it was filed while the attorneys were unauthorized, it is legally void, and all subsequent filings relying on it are also improper. A party cannot file substantive motions without first having a valid attorney of record. It also violate FRCP 11(a)

*"Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented. The paper must state the signer's address, email address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention."*

This rule establishes that only properly admitted attorneys may submit filings, and any filing made by an unauthorized attorney is procedurally invalid. Because Gulf Air's attorneys were not in good standing at the time of filing, their submissions are defective, legally void, and must be stricken under Rule 11(a).

Here, Defendant Gulf Air's attorneys were not authorized to practice before this Court at the time of filing due to expired D.C. Attorney certifications. Since the Notice of Appearance was submitted by attorneys who were not in good standing, it is procedurally defective and legally void.

Furthermore, Defendant did not request an extension from either the Court or Plaintiff , further confirming its procedural default.  The Notice of Appearance is **procedurally improper** because it was filed by unauthorized attorneys, failed to comply with court rules

Rule 12(f) allows the Court to strike filings that are redundant, improper, or prejudicial  Gulf Air's Notice of Appearance was unauthorized and thus legally void from the outset. Any subsequent filings premised on the invalid appearance must also be stricken.

## II. LEGAL BASIS FOR STRIKING GULF AIR'S FILINGS

Notice of Appearance Was Improper and Violated Rule 11(a) as it was Filed by attorneys without valid D.C. Bar certifications at the time of submission. Rule 11(a) requires attorneys to be properly admitted before filing; failure to comply renders the filing procedurally void. The Court confirmed the defect on February 21, 2025, proving the attorneys were unauthorized when filing.

Failure to Investigate Attorney Status Violates Rule 11(b) as Rule 11(b) requires attorneys to conduct reasonable inquiry before filing. Gulf Air's attorneys failed to verify their admission status before submitting filings, violating their duty under Rule 11.

All February 20, 2025, Filings Must Be Stricken as the Notice of Appearance was invalid, making all filings submitted that day improper. These include the LCvR 26.1 Certificate of Disclosure - Corporate Affiliations/Financial Interests; Pre-Motion Request for a

Meet-and-Confer; Motion for Telephone Conference; Filings made under an invalid Notice of Appearance have no legal effect and must be stricken.

All Filings Submitted on or After March 4, 2025, Must Be Stricken as Defendant was not properly present in the case after February 20, 2025; Gulf Air failed to correct or properly serve a valid Notice of Appearance before filing additional motions as deadline was February 20 2025 Filings made without a valid presence in the case prejudice due process and must be stricken.

The meet-and-confer requested by Telephone Conference  by attorneys without valid bar certifications should be considered void and improper.

Striking These Filings is Necessary to Maintain Procedural Integrity as Rule 12(f) allows the Court to strike improper or prejudicial filings. Procedural violations cannot be cured retroactively—allowing these filings to stand grants Defendant an unfair advantage.  Gulf Air's Notice of Appearance and all related filings must be stricken in their entirety

**Procedural Delay and Unfair Litigation Advantage**

Gulf Air's defective filing created uncertainty about their legal standing, allowing them to prolong litigation by scheduling hearings and filing motions despite lacking authority to participate. Courts prioritize avoiding "undue delay, prejudice, or injustice" when evaluating motions to strike appearances. Gulf Air's actions directly contradict this principle, as their participation delayed Samiha's ability to seek default and forced unnecessary litigation expenses.

Had the Notice of Appearance been stricken immediately, Samiha would have secured default judgment by February 20, 2025. Gulf Air's procedural noncompliance obstructed this legal

pathway; Permitting defective filings undermines procedural deadlines and incentivizes parties to exploit technical gaps, weakening judicial integrity.

Gulf Air's actions have delayed these proceedings and severely impacted Plaintiff Samiha's ability to advance her claims effectively. The uncertainty regarding Gulf Air's legal representation has obstructed meaningful case progress and prolonged resolution, creating unnecessary procedural hurdles and emotional distress for Plaintiff.

Instead of addressing the substantive issues of her case, Plaintiff has been forced to expend time and resources correcting Gulf Air's procedural missteps. This has resulted in financial loss, unnecessary burdens, and undue hardship, all of which could have been avoided had Defendant complied with basic procedural requirements. Gulf Air improperly secured a meet-and-confer before the Court could consider Plaintiff's motion for entry of default, but this does not cure their defective initial filings or erase the procedural prejudice caused.

Beyond the unauthorized practice of law, Gulf Air has engaged in repeated procedural violations that have placed an undue burden on Plaintiff. Securing a meet-and-confer based on a defective Notice of Appearance, before Plaintiff could properly seek default, further compounded the prejudice and procedural unfairness.

This is not a minor clerical mistake but a pattern of negligence and disregard for procedural compliance, forcing Plaintiff to waste time, money, and legal resources. Gulf Air's failure to ensure proper legal representation reflects the very lack of diligence that is at the heart of Plaintiff's claims. These procedural violations are not incidental to the case—they reinforce the underlying issues of negligence and misconduct at the center of this litigation.

**PLAINTIFF SAMIHA MOTION TO STRIKE DEFENDANT GULF AIR'S IMPROPER FILINGS**

R- 344

R- 345

If this Court allows Gulf Air to benefit from its improper filings, it would send a message that procedural rules can be ignored without consequence. This would erode the integrity of the legal system and create a dangerous precedent for future litigants

### III. Conclusion and Relief Requested

Under Federal Rule of Civil Procedure 12(f), the Court has the authority to strike any filing that is redundant, immaterial, impertinent, or improper. Additionally, under Rule 11(a), Gulf Air is not a naive litigant; it is a sophisticated international airline that has a duty to ensure its legal representatives are properly authorized to practice law. Their failure to do so, whether intentional or negligent, constitutes a flagrant disregard for the rules of this Court and has caused substantial prejudice to the Plaintiff

Moreover, the Court has the discretion to strike filings on its own if they fail to comply with procedural rules. Given the substantial procedural violations and improper filings in this case, Plaintiff respectfully urges the Court to strike these filings in their entirety.  For these reasons, Plaintiff requests that the Court: Strike the Notice of Appearances for being submitted and filed by unauthorized attorneys  and due to violation of Rule 11(a) and Rule 11(b) making them improper; Strike all February 20, 2025, filings entirely  as improper, immaterial, and submitted by unauthorized attorneys; Strike all filings entirely submitted on or after March 4, 2025, as they were made without a valid Notice of Appearance and violate Rule 11(a) as it was not resubmitted after February 20 2025

Plaintiff requests the court approval to amend the motion

R- 346

March 24 2025

Samiha Ayyash
7823 New London Dr
Springfield VA 22153
(703)623-3767

**PLAINTIFF SAMIHA MOTION TO STRIKE DEFENDANT GULF AIR'S IMPROPER FILINGS**

R- 346

R- 347

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2025, Plaintiff Samiha Ayyash will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Motion To Strike and its Attachments

1-Defendant American Airlines, Inc. Registered Agent  Registered Office Address :CORPORATION SERVICE COMPANY 1090 VERMONT AVE. NW Washington DC 20005.

A Copy will be sent to **Micah E. Ticatch** 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Personal delivery via ABC Legal Services (Process Server)

2-Defendant Gulf Air B.S.C., Inc  AT Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Personal delivery via ABC Legal Services (Process Server)

3- Plaintiff Tala Josephano & Plaintiff Feras Hindi  : Waived Service, Courtesy given.

Respectfully submitted,

March 24 2025

**Pro Se Plaintiff**

**Samiha Ayyash**

7823 New London Dr

Springfield VA 22153
(703)623-3767

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

### Civil Division

| | | |
|---|---|---|
| **Samiha Ayyash, Feras Hindi** | ) | **Case No.:  1:24-cv-03434-ACR** |
| **Tala Josephano** | ) | |
| Plaintiff**,** | ) | |
| **American Airlines, INC. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendant | ) | |
| _____ | ) | |

### CERTIFICATE OF CONFERENCE

Pursuant to Local Civil Rule 7(m), Plaintiff Samiha Ayyash states that she has made multiple attempts over the past two years to contact Gulf Air regarding serious matters but has never received a response. In this litigation, Defendant has not made a single attempt to reach out to Plaintiff directly, nor has it served her properly with a valid Notice of Appearance.

Due to significant procedural defects and Gulf Air's repeated bad-faith litigation tactics, Plaintiff—a senior woman with limited English proficiency—has been advised not to engage with Defendant without legal representation. Plaintiff has already requested court-appointed counsel but remains unrepresented at this time.

R- 348

Gulf Air's attorneys have engaged in a pattern of procedural misconduct, misrepresented facts to the Court, and unfairly obtained procedural advantages. These actions have prejudiced Plaintiff Samiha Ayyash and demonstrate that Defendant has no intention of acting in good faith to resolve procedural disputes.

Further, Defendant's failure to properly serve Plaintiff with its first invalid Notice of Appearance has obstructed direct communication.

For these reasons, Plaintiff requests that the Court waive the meet-and-confer requirement under Local Civil Rule 7(m) and proceed with ruling on the Motion to Strike. Additionally, Plaintiff requests that any scheduled meet-and-confer be converted into a Motion for Entry of Default against Defendant Gulf Air rather than an opportunity for Defendant to cure its procedural violations.

March 24 2025

Samiha Ayyash
7823 New London Dr
Springfield VA 22153
(703)623-3767

R- 349

CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2025, Plaintiff Samiha Ayyash will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Certificate of Conference for Motion to Strike

1-Defendant American Airlines, Inc. Registered Agent  Registered Office Address :CORPORATION SERVICE COMPANY 1090 VERMONT AVE. NW Washington DC 20005. Method of Service: Personal delivery via ABC Legal Services (Process Server)

2-Defendant Gulf Air B.S.C., Inc  AT Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Personal delivery via ABC Legal Services (Process Server)

3- Plaintiff Tala Josephano & Plaintiff Feras Hindi : Wives service with courtesy notice

Respectfully submitted,

March 24 2025

Pro Se Plaintiff

Samiha Ayyash

7823 New London Dr

Springfield VA 22153
(703-623-3767

R- 350

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

Civil Division

| | | |
|---|---|---|
| Samiha Ayyash, Feras Hindi | ) | Case No.:  1:24-cv-03434-ACR |
| Tala Josephano | ) | |
| Plaintiffs, | ) | |
| American Airlines, INC. , | ) | |
| Gulf Air B.S.C | ) | |
| Defendants | ) | |
| _____ | ) | |

[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE

Upon consideration of Plaintiff Samiha Ayyash 's Motion to Strike Defendant Gulf Air's

Improper Filings, and for good cause shown, it is hereby:

1. ORDERED that Plaintiff's Motion to Strike DOCKET          is GRANTED; and it is

   further

2. ORDERED that the entire Notice of Appearance filed by attorneys Darcy C. Osta and

   Mark A. Johnston on behalf of Defendant Gulf Air B.S.C. on February 20, 2025, is

   hereby STRICKEN; and it is further

3. ORDERED that all entire filings submitted by Defendant Gulf Air B.S.C. on February

   20, 2025, including but not limited to the Notice of Appearance, LCvR 1 Corporate

R- 351

2

Disclosure Statement, Pre-Motion Request for a Meet-and-Confer, and Motion for

Telephone Conference, are hereby STRICKEN; and it is further

4. ORDERED that entirely all filings submitted by Defendant Gulf Air B.S.C. on or after

March 4, 2025, are hereby STRICKEN; and it is further

IT IS SO ORDERED.

Dated:

Judge Ana Reyes

R- 352

3

CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2025, Plaintiff Samiha Ayyash will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Proposed Order for Motion to Strike

1-Defendant American Airlines, Inc. Registered Agent  Registered Office Address :CORPORATION SERVICE COMPANY 1090 VERMONT AVE. NW Washington DC 20005.

A Copy will be sent to **Micah E. Ticatch** 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Personal delivery via ABC Legal Services (Process Server) Method of Service: Personal delivery via ABC Legal Services (Process Server)

2-Defendant Gulf Air B.S.C., Inc  AT Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Personal delivery via ABC Legal Services (Process Server)

3- Plaintiff Tala Josephano & Plaintiff Samiha Ayyash : Waived Service , courtesy notice.

Respectfully submitted,

March 24 2025

Pro Se Plaintiff

Samiha Ayyash

7823 New London Dr

Springfield VA 22153
(703)623-3767

R- 353

1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

Civil Division

| | | |
|---|---|---|
| Samiha Ayyash, Feras Hindi | ) | Case No.:  1:24-cv-03434-ACR |
| Tala Josephano | ) | |
| Plaintiffs, | ) | |
| American Airlines, INC. , | ) | |
| Gulf Air B.S.C | ) | |
| Defendants | ) | |
| | ) | |
| _____ | ) | |

[PROPOSED]  ORDER DIRECTING CLERK TO ENTER DEFAULT FOR PLAINTIFF

FERAS HINDI AGAINST DEFENDANT AMERICAN AIRLINES

Upon consideration of Plaintiff Feras Hindi's Motion for Clerk's Entry of Default, [ECF No. 17], the attached exhibits, and the record herein, the Court finds the following:

1.  Defendant American Airlines, Inc. was properly served with the Amended Complaint on January 22, 2025, as evidenced by the Proof of Service entered on January 23, 2025.

2.  Defendant American Airlines, Inc.'s deadline to file a responsive pleading or otherwise appear in this matter was February 12, 2025.

3.  Defendant American Airlines, Inc. failed to serve Plaintiff on 21 days required.

4.  Defendant Admitted to not Serving Plaintiff on February 12 2025


RECEIVED

MAR 25 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

R- 354

5. Defendant failed to serve after being notified

6. Plaintiff Feras Hindi asserts that the Defendant's filings contained a false certificate of service.

7. Defendant American Airlines, Inc. has failed to timely plead or otherwise defend, and has not sought leave of Court to file a late answer.

8. The Plaintiff has submitted a declaration attesting to these facts, which the Court finds credible.

Therefore, it is hereby

ORDERED that the Clerk of the Court is DIRECTED to enter default against Defendant American Airlines, Inc., pursuant to Federal Rule of Civil Procedure 55(a). The Clerk shall note the date of entry on the docket.

IT IS SO ORDERED.

Hon. Ana Reyes

United States District Judge


Date:

R- 355

3

CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2025, Plaintiff Feras Hindi will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Proposed Order for Motion to Entry to Default

1-Defendant American Airlines, Inc. Registered Agent  Registered Office Address :CORPORATION SERVICE COMPANY 1090 VERMONT AVE. NW Washington DC 20005. Method of Service: Personal delivery via ABC Legal Services (Process Server)

2-Defendant Gulf Air B.S.C., Inc  AT Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Personal delivery via ABC Legal Services (Process Server)

3- Plaintiff Tala Josephano & Plaintiff Samiha Ayyash : Waived Service , courtesy notice.

Respectfully submitted,

March 24 2025

Pro Se Plaintiff

*F.H*

Feras Hindi

7823 New London Dr

Springfield VA 22153
(703)980-6955

R- 356

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAMIHA AYYASH, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:24-cv-03434-ACR |
| v. | ) | |
| | ) | |
| GULF AIR B.S.C. (C), *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### DEFENDANT GULF AIR B.S.C. (C)'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MARCH 15, 2025, NOTICE FILINGS

COMES NOW, Defendant, Gulf Air B.S.C. (c) ("Gulf Air"), by undersigned counsel, and submits this Response in Opposition to Plaintiff Feras Hindi's ("Plaintiff Hindi") "Seven-Day Notice of Intent to File Entry of Default Judgment & Notice to the Court Regarding Clerk's Facilitation of Prejudicial Actions Against Plaintiff," (Dkt. 28), and Plaintiff Samiha Ayyash's ("Plaintiff Ayyash") "Seven-Day Notice of Intent to File Entry of Default Judgment.  Notice of Prejudicial Actions Against Plaintiff," (Dkt. 29), (collectively, "Notices").

### INTRODUCTION

In their Notices, Plaintiff Hindi and Plaintiff Ayyash (collectively "Moving Plaintiffs") renew their groundless requests for entry of default in a transparent attempt to avoid Gulf Air's numerous meritorious defenses to their claims.[1]  Not only do Moving Plaintiffs continue to assert that Gulf Air failed to serve them with a responsive pleading, which, as set forth in Gulf Air's Opposition to Moving Plaintiffs' Motions for Entry of Default ("Opposition to Motions for Default") is demonstrably false (Dkt. 25), but Moving Plaintiffs now intimate that various court

---

[1] *See, e.g.*, Dkt. 28 at 6 (suggesting that only Plaintiff Tala Josephano "may be amenable" to presenting arguments on the merits, and that Plaintiff [Hindi] "stands firm on his right to pursue a default judgment . . . ).

R- 357

personnel, including the Clerk of this Court, are somehow conspiring to deprive Moving Plaintiffs of what they claim is their "right" to a default and/or default judgment.  (Dkt. 28 at 6; Dkt. 29 at 2).  As nothing has changed since Moving Plaintiffs first moved for the entry of default against Gulf Air (Dkt. 18, Dkt. 22), their continued efforts to advance baseless arguments is a waste of judicial resources and their current and/or future requests for entry of default and default judgment must be denied.  (Dkt. 18, Dkt. 22).

### ARGUMENT

First and foremost, Moving Plaintiffs' argument that Gulf Air did not timely file a responsive pleading in this case is wholly without merit given that Gulf Air was never properly served with legal process under Rule 4 of the Federal Rules of Civil Procedure, thus there was no deadline to respond.  As Gulf Air briefly explained in its Opposition to the Motions for Default Judgment, (Dkt. 25), on January 30, 2025, Plaintiffs improperly attempted to serve legal process on Gulf Air through undersigned counsel's law firm, which is not and was not an authorized agent to receive legal process on behalf of Gulf Air.  *See*, *e.g.*, Notice of Defendant Gulf Air's Request to Schedule Pre-Motion Conference ("Request") (Dkt. 13).  Despite their contentions to the contrary, the only issue with service in this case is attributable to Moving Plaintiffs, as pro se status "does not constitute a license . . . to ignore the Federal Rules of Civil Procedure." *Latson v. Sessions*, 256 F. Supp. 3d 36, 41 (D.D.C. 2017) (quoting *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993)).  Gulf Air was under no obligation to respond to the Plaintiffs' joint, 693 paragraph Amended Complaint by February 20, 2025, and any argument that Gulf Air responded in an untimely manner necessarily fails.

Even though Gulf Air was not properly served, on February 20, 2025, in accordance with Paragraph 7(f) of the Court's Standing Order In Civil Cases Before Judge Reyes ("Standing

R- 358

Order"), Gulf Air timely filed its Request on its anticipated Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5) and 12(b)(6). (Dkt. 13). Gulf Air served Plaintiffs with copies of all filings via email and U.S. mail. *See, e.g.,* Exhibits 1 and 2 to Gulf Air's Opposition to Motions for Default (Dkt. 25-1, 25-2); *see also* Exhibit 3 to Gulf Air's Opposition to Plaintiff Tala Josephano's Motion for Entry of Default Against Gulf Air (Dkt. 32-3);[2] Dkt. 13 ("Certificate of Service"). [3]

Yet, Moving Plaintiffs refuse to acknowledge that they were properly served, instead concocting an argument that service was improper because they were not served "individually." *See, e.g.*, Dkt. 28 at 5; Dkt. 29 at 4. In other words, even though Moving Plaintiffs reside at the same residence and acknowledged having received Gulf Air's Request, they contend that because the envelope with a copy of the Request was addressed to both of them, neither of them were properly served and therefore, Gulf Air is in default.[4] *See* Dkt. 28 at 4. (stating that Plaintiff Hindi "will not be held liable for documents addressed to co-plaintiff Samiha Ayyash"). Their argument is nonsensical and rests on a requirement that does not exist. Nothing in the Rules of Civil Procedure requires a defendant to serve two plaintiffs residing at the same address with separate mailings of the same filing. In fact, under Rule 5, a party need only show that a filing was mailed to the last known address of the opposing party; actual receipt of the filing is not required for service. *Muhammad v. United States*, No. CV 16-1079 (TJK), 2019 WL

---

[2] Plaintiff Tala Josephano ("Plaintiff Josephano") acknowledged receipt of the filings on behalf of all three Plaintiffs.

[3] Plaintiff Hindi briefly argues that the Certificate of Service for Gulf Air's Request "lacks independent verification" and therefore, "does not constitute proof under the Federal Rules . . ." Dkt 28 at 4. His assertion is clearly erroneous because Rule 5 does not require "independent verification" for papers filed after the complaint. *See, e.g.*, *Muhammad v. United States*, No. CV 16-1079 (TJK), 2019 WL 652400, at *5 (D.D.C. Feb. 15, 2019) (rejecting plaintiff's argument that defendants failed to serve him with motion to dismiss when signed certificate of service averred that motion was mailed to plaintiff's address of record.).

[4] If Moving Plaintiffs had not received the envelope, they would not have known how it had been addressed.

R- 359

652400, at *5 (D.D.C. Feb. 15, 2019), *aff'd*, No. 19-5109, 2020 WL 873514 (D.C. Cir. Feb. 13, 2020).

In any event, nowhere in their Notices do Moving Plaintiffs claim that they did not receive, or were not able to access, Gulf Air's Request on its anticipated Motion to Dismiss Plaintiffs' Amended Complaint.[5]  While Moving Plaintiffs repeatedly decry that they are being "prejudiced," it is clear that the prejudice they cite is unrelated to any perceived issue with service.  Instead, the "prejudice" about which Moving Plaintiffs complain arises from having to overcome Gulf Air's numerous meritorious defenses.

Moving Plaintiffs also suggest that Gulf Air's filings were not effective because counsel had not paid the Court's triennial membership renewal fee at the time of filing, thus invalidating the filings and necessitating the entry of default by the Clerk.  Moving Plaintiffs' argument in this regard is unpersuasive given that, once notified of the issue, counsel immediately paid the administrative fee, thus retroactively restoring their membership standing on the date of the filings.[6]  Therefore, the docket correctly reflects that Gulf Air's Request was filed on February 20, 2025.

As set forth above and in Gulf Air's Opposition to Moving Plaintiffs' Motions for Entry of Default, Gulf Air timely complied with its responsive pleading requirement and thus there can

---

[5] Finally, Plaintiff Hindi states that Gulf Air is "NOT Allowed to mail me or email me or contact me anymore" and that he will "no longer accept any mail" from Gulf Air.  *See* Dkt. 28 at 4 (capitalization in original).  To be clear, Gulf Air must continue to mail Plaintiff Hindi copies of all its filings per Rule 5 and Plaintiff Hindi's refusal to "accept" the same will have no effect on service.  *See Muhammad*, 2019 WL 652400, at *5 (finding that plaintiff's stated intention to reject any future mailings sent to him by defendants was "tantamount to intentional evasion of service.").

[6] Pursuant to the Court's notices sent to undersigned counsel on February 21, 2025, counsel was given a seven (7) day grace period to pay the administrative fee, which would have the effect of automatically restoring their membership status retroactively to the date of the initial filing.  Counsel paid the administrative fee within hours of having received the notices, thus the Clerk's office correctly noted on the respective docket entries that the issues had been resolved.  Moreover, it is undisputed that at the time of filing on February 20, 2025, counsel met all of the requirements to be active members in good standing with this Court, as evidenced by the immediate renewal of their membership upon payment of the administrative fee.

R- 360

be no default entered against it.  However, Moving Plaintiffs refuse to accept reality, and in a last ditch effort to try and convince the Court to ignore Gulf Air's timely and properly filed Response and enter default against Gulf Air, Moving Plaintiffs resort to baseless conspiracy theories. Specifically, Moving Plaintiffs claim that the Clerk's office has been plotting against them to undermine their rights for the benefit of Gulf Air.  *See* Dkt. 28 at 6; *see also* Dkt. 29 at 4.  Not only have the Moving Plaintiffs accused Court personnel of acting improperly, but Moving Plaintiffs have threatened to take action against those individuals for "fraud upon the court" arising from their alleged involvement "in procedural interference."  *Id.*  Moving Plaintiffs' accusations against Court staff are not only ludicrous, but to the extent they pursue any such claims against Court personnel, the only result will be an enormous waste of the parties' and the Court's time and resources.

## CONCLUSION

For the foregoing reasons, Defendant, Gulf Air B.S.C. (c) respectfully requests that Moving Plaintiffs' requests for the entry of default or default judgment against Gulf Air B.S.C. (c) be denied and that the Court grant Gulf Air such other and further relief as is deemed necessary and just.

R- 361

Respectfully Submitted,

**ECKERT SEAMANS CHERIN
 & MELLOTT, LLC**

*/s/ Darcy C. Osta*
Darcy C. Osta, Esq.
D.C. Bar No. 1686937
Mark A. Johnston, Esq.
D.C. Bar No. 455764
1717 Pennsylvania Ave., N.W.,
Suite 1200
Washington, D.C. 20006
(202) 659-6600
dosta@eckertseamans.com
mjohnston@eckertseamans.com

*Counsel for Gulf Air B.S.C. (c)*

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2025, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF filing system, which will serve an electronic copy on all

counsel of record, and I will also serve a copy of the foregoing via USPS first class mail upon the

following:

Tala Josephano
615 Catalina Avenue, #233
Redondo Beach, CA 90277
*Pro Se Plaintiff*

Samiha Ayyash
Feras Hindi
7823 New London Drive, #233
Springfield, VA 22153
*Pro Se Plaintiffs*

*/s/ Darcy C. Osta*
Darcy C. Osta

6

R- 362

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

| | | |
|---|---|---|
| **Samiha Ayysah, Feras Hindi,** | | |
| **Tala Josephano** | ) | **Case No.:  1:24-cv-03434-ACR** |
| | ) | |
| Plaintiffs | ) | |
| **American Airlines Inc. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendants | ) | |
| _____ | ) | |

**PLAINTIFF SAMIHA AYYASH'S MOTION TO STRIKE DEFENDANT**

**AMERICAN AIRLINES' FILINGS PURSUANT TO FEDERAL RULE OF CIVIL**

**PROCEDURE 12(f)**

Plaintiff Samiha Ayyash respectfully moves this Court to strike the filings submitted by

Defendant American Airlines, Inc., including the Notice of Appearance, Motion to Dismiss, and

Corporate Disclosure Statement, filed on February 12, 2025. Samiha asserts that Defendant's

Certificate of Service is not only false but fundamentally misleading, thereby invalidating the

**RECEIVED**

MAR 25 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

R- 363

associated filings and violating her right to due process. This motion is made pursuant to Federal Rule of Civil Procedure 12(f)(1) as the Certificate of Service is demonstrably false and misleading, it is "immaterial" and "impertinent" under Rule 12(f) because it creates an inaccurate court record and the Court has inherent power to prevent procedural abuse and ensure fair litigation.

## BACKGROUND

**Service Deadline – February 12, 2025**

On February 12, 2025, Defendant American Airlines filed a Notice of Appearance, Motion to Dismiss, and Corporate Disclosure Statement. On the same day, Defendant's counsel filed a Certificate of Service falsely certifying that Plaintiff Samiha, along with Co-Plaintiffs Tala Josephano and Feras Hindi, had been served electronically. This certification was materially false for several reasons:

The Certificate of Service submitted by Defendant contains several material inaccuracies: it falsely claims electronic service was completed for Co-Plaintiff Feras Hindi without his consent or by providing email address to him; it includes unaccessed email address for Plaintiff Samiha by her at that time; and it fails entirely to certify service on Co-Defendant Gulf Air. Each of these inaccuracies undermines the legitimacy of the service process and jeopardizes the integrity of the court proceedings. The Certificate also included a misspelled email address for Co-Plaintiff Tala, further complicating the service process and undermining the integrity of the filing.

On February 13, 2025, Co-Plaintiff Tala Josephano informed Defendant's counsel that she had not been served or notified of the filings made on February 12, 2025. Tala reiterated that the

R- 364

claims of each Plaintiff should be treated individually, given the substantial differences in legal issues and resources involved for each.

In response to Tala's notification, Defendant mailed an envelope addressed to two Plaintiffs, but this envelope was sent after the service deadline of February 12, 2025. Moreover, it still failed to serve Plaintiff Samiha individually, as required by the Federal Rules. Defendant misrepresented to Plaintiff Tala on both February 13 and February 18, 2025, that Plaintiff Samiha had been properly served on February 12, 2025, and again after that date. These claims were false, as Samiha was never served on February 12 2025

Despite receiving notice of the service failures, Defendant has failed to take any corrective action. As of today, Plaintiff Samiha remains un-served, and the Certificate of Service remains erroneous. Defendant has refused to amend the court records to reflect the truth, continuing to rely on the false Certificate of Service to support its Motion to Dismiss, thereby prejudicing Plaintiff.

**LEGAL GROUNDS FOR STRIKING FILINGS UNDER RULE 12(f)**

Defendant's Certificate of Service is false and misleading, including certifying that service was made electronically when Plaintiff Samiha did not consent to electronic service. This violation of Federal Rule of Civil Procedure 11(b), which mandates that attorneys ensure the accuracy of factual contentions, undermines the validity of all filings associated with the false certification.

Under Federal Rule of Civil Procedure 5(b)(2)(E), the requirement for explicit consent to electronic service and accurate certifications is not merely procedural; it serves to protect the fundamental principles of fairness in legal proceedings. Thus, striking the Defendant's filings is

R- 365

not only justified but essential to uphold the integrity of this Court and Defendant failed to properly serve her by mail within the required 21-day deadline. As a result, all filings submitted on February 12, 2025—including the Motion to Dismiss and Notice of Appearance—are based on a false Certificate of Service and must be stricken in their entirety.

The false Certificate of Service renders the Notice of Appearance and all subsequent filings defective. A defective Notice of Appearance cannot legally serve as the foundation for any further filings, meaning that all filings based on this invalid certificate should be stricken. This includes, but is not limited to, the Motion to Dismiss and any pleadings referencing the defective service.

Defendant American Airlines' failure to serve Plaintiff with its February 12, 2025, filings directly prejudiced her ability to participate in this litigation. As a pro se litigant with limited legal resources, Plaintiff relied on proper service to ensure she had notice of deadlines and an opportunity to respond. However, Defendant's Certificate of Service contained incorrect email addresses and did not serve all required parties but certified they did, causing Plaintiff to miss critical response deadlines without her knowledge. By the time she discovered the error on February 18, 2025, her deadline to file a response had already lapsed, and this Court's rules requiring a formal motion for an extension placed her in an impossible procedural position.

Rather than correcting the service defect after being notified, Defendant instead proceeded with additional filings, compounding the prejudice against Plaintiff. Because of Defendant's failure to serve properly, she was effectively denied her right to oppose the Motion to Dismiss on time, which is a fundamental violation of due process. If the Court allows Defendant's improperly

R- 366

served filings to stand, it would reward procedural misconduct and leave Plaintiff at a significant disadvantage through no fault of her own.

Local Civil Rule 7(m) requires parties to confer in good faith before filing any non-dispositive motion. Defendant failed to meet this requirement before submitting its motions in February making these filings improper under the rule. Additionally, the Judge's Standing Order mandates that every motion include a proposed order and certificate of Confer, which Defendant also failed to provide. These procedural violations further demonstrate Defendant's disregard for court rules, rendering its filings defective.

The defect occurred on the last day of the response deadline and was never corrected, making any subsequent correction untimely; Rule 12(a)(1)(A)(i) requires a timely response, and a failure to meet the deadline cannot be retroactively cured; Prejudice exists because Plaintiff was deprived of a fair opportunity to respond within the required time; The misrepresentation in the Certificate of Service is a serious issue that affects the integrity of the proceedings and is not merely a technical error; Defendant acknowledged the failure but did not correct it before proceeding with additional filings, exacerbating the procedural defects. Defendant **didn't submit a declaration** of Service to Samiha

Plaintiff has submitted Multiple Notices with declaration and detailed explanation of Defendant Certificate of Service. Defendant has not provided any evidence that he had served Plaintiff Samiha on the Deadline  of their 21 days to respond.

R- 367

## IV. IMPACT ON PLAINTIFF'S ABILITY TO PARTICIPATE FAIRLY

The false Certificate of Service has severely prejudiced Plaintiff Samiha's ability to participate in this case. As a pro se litigant with limited English proficiency, Samiha relies on others, including her co-plaintiffs, to assist with understanding and responding to the filings. The Defendant's failure to serve Samiha properly has jeopardized her ability to assert her claims and respond to motions in a timely manner.

Under the Federal Rules, a Certificate of Service triggers a 14-day response period. Even one hour or one day missed can be critical in a pro se litigant's ability to respond. Because Defendant falsely certified service, Samiha missed the opportunity to respond to the Motion to Dismiss within the required time frame, depriving her of the basic right to participate in the case. If the Defendant had corrected the service defect and properly served Samiha, the 14-day deadline would have begun at that point, giving her the fair opportunity to respond. However, Defendant chose not to rectify the error.

The Defendant was aware of the service deficiency immediately on February 12 2025 by a bounced email but failed to correct it or amend the court records. This refusal to fix the service error has compounded the prejudice suffered by Plaintiff Samiha. The delay in service not only interfered with her ability to respond to motions but also forced her to take corrective action, including filing multiple motions at her own expense.

As a result of Defendant's failure to serve Samiha on February 12 2025 and failed to properly serve her after, forced her to incur additional legal costs out of pocket. The prejudicial effects extend beyond the litigation process, causing Samiha significant emotional distress, uncertainty,

R- 368

and anxiety. The ongoing procedural defects have disrupted her ability to engage in the legal process fairly and have burdened her with financial and emotional harm that could have been avoided had Defendant followed the proper procedures.

The Defendant's misconduct has exposed it to further legal consequences. Co-Plaintiff Tala Josephano has filed a separate lawsuit (1:25-cv-00753) against Defendant for misrepresentation and damages arising from this same issue. The Defendant's refusal to correct the false Certificate of Service only exacerbates its legal exposure and the harm suffered by Plaintiff Samiha.

 The Defendant's failure to timely and  then properly serve Plaintiff Samiha has placed her at a disadvantage by preventing her from filing a timely written motion to extend her time to reply. As required by the Court, motions for extensions of time must be made in writing.  And further submitting filings while Samiha was deprived of the ability to have her motions heard due to the Defendant's failure to correct the service issue and continuous of submitting invalid filings. This procedural defect not only harmed Samiha's ability to respond but has resulted in further prejudice to her claims.

In light of the substantial errors in service, the unjust prejudice against Plaintiff Samiha and the stress, time and out of pocket damages, and the defendant's failure to correct these issues after being alerted, Samiha respectfully requests that this Court grants her motion to strike the Certificate of service and the February 12, 2025 filings of American Airlines in their entirety. This measure is necessary to ensure her right to due process and to maintain the integrity of the legal proceedings.

Courts should not allow parties to use amendments to retroactively fix procedural misconduct, especially when they had multiple opportunities to correct the issue. Amendments should be

R- 369

denied when there is undue delay, bad faith, or prejudice to the opposing party. Defendant has not acted in good faith and failed to comply with court rules. Courts do not reward procedural gamesmanship by allowing amendments when a party has ignored proper legal procedures.

Court has to deny amendments when they encourage bad litigation behavior. Allowing amendment here would set a dangerous precedent where Defendants could file defective pleadings and only fix them when challenged. Defendant didn't fix it till now.  Defendant cannot retroactively validate an untimely filing through amendment. Courts have held that procedural deadlines cannot be extended indefinitely just because one party failed to comply. (See FRCP 12(a)(1)(A)(i) – A response must be served within 21 days, and failure to do so may warrant default.). Courts should not allow amendments when they unfairly prejudice the opposing party. Here, Plaintiff has already suffered enough procedural disadvantage due to Defendant's actions.

**CONCLUSION**

The Court has authority under Rule 12(f)(1) to strike improper submissions on its own to prevent damages, prejudice to Plaintiff and uphold the integrity of the judicial process. Rule 12(f)(1) permits the Court to strike any "redundant, immaterial, impertinent, or scandalous matter," and the false Certificate of Service is immaterial as it misrepresents service and directly impacts Plaintiff's procedural rights.

Defendant improperly skipped over service issues and continued filings without correction; The Court should not entertain Defendant's requests; Plaintiffs should not bear the procedural burden of fixing Defendant's mistakes; Defendant should have corrected service first before the Court considers any dismissal or hearing request. Defendant's failure to correct service before filing additional motions is a procedural violation that undermines due process.

R- 370

Beyond procedural prejudice, Defendant's misconduct has caused Plaintiff separate and distinct harm, including financial burdens, emotional distress, and disruption of her ability to litigate effectively. Striking these filings is necessary to remedy both the procedural defects and the tangible harm inflicted on Plaintiff.

Accordingly, Plaintiff respectfully requests that the Court:

1. STRIKE the false and improper Certificate of Service submitted on February 12 2025

2. STRIKE Certificate of service submitted by Defendant on February 12, 2025, in its entirety from all filings, including the Notice of Appearance, Motion to Dismiss, and Corporate Disclosure Statement.

3. STRIKE all filings submitted on February 12, 2025, in their entirety, as they are based on a false Certificate of Service that misrepresents service on Plaintiff Samiha and fails to meet the requirements of the Federal Rules of Civil Procedure.

4. Strike all filings submitted **after** February 12, 2025, as they are based on the defective and invalid Notice Of Appearance and fail to meet the Court's and Federal Rules' requirements.

5. Grant Plaintiff leave to amend if any aspect of their pleading or legal phrasing requires correction, as a pro se litigant relying on available resources and making every effort to comply with legal, court, and procedural requirements.

6. Plaintiff respectfully requests that the Court DENY any attempt by Defendant to amend or correct its filings.

7. Deny Defendant any further filings, as the deadline to respond was February 12, 2025.

8. Grant Plaintiff's Motion for Entry of Default (DKT 19 ), as Defendant failed to serve hence respond within the required period.

R- 371

Granting this motion will uphold procedural integrity, prevent Defendant from benefiting from its misconduct, it will not set a precedent that awards non compliance by powerful Defendants against Pro Se Litigants, and protect Plaintiff's right to fair litigation. Additionally, it will prevent further financial out of pocket expenses and personal harm to Plaintiff and deter future violations, ensuring compliance with the Federal Rules of Civil Procedure.

**Dated: March 25, 2025**

Respectfully submitted,

 Plaintiff, Pro Se

*Samiha Ayyash*

 7823 New London Dr

 Springfield, VA 22153

 (703) 623-3767

R- 372

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2025, Plaintiff Samiha Ayyash  will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Motion To Strike and its Attachments

1-Defendant American Airlines, Inc. Registered Agent  Registered Office Address :CORPORATION SERVICE COMPANY 1090 VERMONT AVE. NW Washington DC 20005.

A Copy will be sent to **Micah E. Ticatch** 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Personal delivery via ABC Legal Services (Process Server)

2-Defendant Gulf Air B.S.C., Inc  AT Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Personal delivery via ABC Legal Services (Process Server)

3- Plaintiff Tala Josephano & Plaintiff Samiha Ayyash : Waived Service, Courtesy given.

Respectfully submitted,

March 25 2025

**Pro Se Plaintiff**

**Samiha Ayyash**

7823 New London Dr

Springfield VA 22153
(703)623-3767

R- 373

R- 374

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

## Civil Division

**Samiha Ayysah, Feras Hindi,**

**Tala Josephano**                    )          **Case No.:  1:24-cv-03434-ACR**

                                       )

Plaintiffs                             )

**American Airlines Inc. ,**           )

**Gulf Air B.S.C**                     )
Defendants                             )

_____        )

**PLAINTIFF FERAS MOTION TO STRIKE DEFENDANT AMERICAN AIRLINES'**

**FILINGS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(f)**

Plaintiff Feras Hindi, pro se, respectfully moves this Court to strike Defendant American

Airlines, Inc.'s Certificate of Service and all filings , including the Notice of Appearance, Motion

to Dismiss with attachments, and Corporate Disclosure Statement, filed on February 12, 2025, as

well as all filings after such as February 20, 2025, and March 4, 2025.

**RECEIVED**

MAR 25 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

**PLAINTIFF FERAS MOTION TO STRIKE DEFENDANT AMERICAN AIRLINES' FILINGS**

**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(f)**

Case 1:24-cv-03434-ACR    Document 41    Filed 03/25/25    Page 2 of 11
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 375 of 971

2

This motion is made pursuant to Federal Rule of Civil Procedure 12(f)(1), as Defendant's Certificate of Service in the Filings of February 12 2025 contains false and misleading information, rendering these filings invalid and improper. A filing based on false certification is legally defective, and all subsequent filings that rely on it must also be stricken.

Allowing these improper filings to remain prejudices Plaintiff, disrupts the proceedings, and undermines the integrity of the case. Defendant's failure to serve Plaintiff has denied him the opportunity to respond, delayed the case, and caused unnecessary legal burdens. This Court has the authority under Rule 12(f)(1) to strike these filings on its own initiative to preserve fairness and procedural integrity.

## BACKGROUND

Plaintiff Feras Hindi, proceeding pro se, filed his claims against Defendant American Airlines on December 10, 2024, and amended his complaint on December 30, 2024. Defendant was served with the Amended Complaint on January 22, 2025, making its deadline to respond February 12, 2025.

On February 12, 2025, after 5:19 PM Eastern Time—on the final day of the 21-day response period—Defendant filed a Notice of Appearance, Motion to Dismiss with attachments, and Corporate Disclosure Statement. However, the Certificate of Service falsely certified that Plaintiff Feras Hindi was served electronically, when in fact, Plaintiff was not served by any method on or before this date.

**PLAINTIFF FERAS MOTION TO STRIKE DEFENDANT AMERICAN AIRLINES' FILINGS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(f)**

R- 375

3

Due to Defendant's failure to respond within the required timeframe, Plaintiff filed a Motion for Clerk's Entry of Default (Document 17) on February 24, 2025. Plaintiff also submitted notices to the Court alerting it to Defendant's procedural violations, including no service and misrepresentations.

Later, in March 2025, Defendant mailed Plaintiff Feras Hindi an opposition to his Entry of Default. The envelope was specifically addressed to Plaintiff Feras, yet it did not include a copy of the Notice of Appearance, which would have been required for Plaintiff to reply. Notably, in this opposition, Defendant acknowledged that Plaintiff Feras was not served on February 12, 2025, contradicting the false certification submitted with its earlier filings.

Further, Defendant's Certificate of Service in this opposition in March separately listed each Plaintiff, acknowledging the distinction in service requirements. Yet, in its arguments, Defendant continued to falsely represent the claims as "joint and collective"—a contradiction that underscores its misrepresentations in the litigation.

Additionally, Co-Plaintiff Tala Josephano has initiated a separate fraud case against Defendant in Josephano v. American Airlines, Inc., **No. 1:25-cv-00753**, further highlighting Defendant's pattern of misrepresentation and procedural misconduct.

This Motion to Strike is made in further support of Plaintiff's Entry of Default Motion and to ensure that Defendant does not benefit from false and improper filings that have prejudiced Plaintiff's ability to litigate his claims. This motion doesn't prejudice the court as the court, as the court was the main intended side for Defendant's misrepresentation.

**PLAINTIFF FERAS MOTION TO STRIKE DEFENDANT AMERICAN AIRLINES' FILINGS**

**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(f)**

R- 376

Case 1:24-cv-03434-ACR    Document 41    Filed 03/25/25    Page 4 of 11
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 377 of 971

4

## II. GROUNDS FOR STRIKING THE FILINGS UNDER FRCP 12(f)

Defendant falsely certified that Plaintiff was served on February 12, 2025, misleading the Court into believing Plaintiff had notice of the filings and was served. This violates Federal Rule of Civil Procedure 11(b), which requires attorneys to ensure the accuracy of factual contentions before submitting filings. Defendant was notified of this issue but failed to correct it, forcing Plaintiff to file for Entry of Default (DKT 17).

Defendant falsely claimed service via electronic mail, despite Plaintiff never consenting to electronic service; Plaintiff's email address was omitted, despite being listed in the original complaint; Defendant failed to list Co-Defendant Gulf Air as being served; Co-Plaintiff Tala's email address was misspelled.

Plaintiff Feras Hindi does not have an active CM/ECF account and never agreed to receive electronic service; As stated in Plaintiff's Declaration of Non-Service (Document 17), Defendant's claim of electronic service is false and unsupported.

## III. ARGUMENT

**Court's Authority to Strike Improper Filings Under Rule 12(f)**

Federal Rule of Civil Procedure 12(f) grants the Court discretion to strike filings containing false, improper, or misleading information on its own initiative. Defendant's false Certificate of Service was filed on the last day of the 21-day deadline under Rule 12(a)(1)(A)(i), meaning any

**PLAINTIFF FERAS MOTION TO STRIKE DEFENDANT AMERICAN AIRLINES' FILINGS**

**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(f)**

R- 377

Case 1:24-cv-03434-ACR    Document 41    Filed 03/25/25    Page 5 of 11
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 378 of 971

5

correction would have been untimely and would not cure the default and still Defendant till today didn't fix the certificate or submit any motion to correct the records.

This false certification invalidates the Notice of Appearance and taints all subsequent filings, including those submitted on February 20, 2025, and March 4, 2025. A defective Notice of Appearance cannot serve as the basis for later filings, making all motions and pleadings that rely on it equally improper and defective.

Furthermore, Defendant's failure to serve Plaintiff on time of certifying violated Rule 11(b), which requires attorneys to ensure factual accuracy before filing documents. The Court has authority under Rule 12(f) to strike these improper submissions sua sponte to prevent prejudice to Plaintiff and uphold procedural integrity. Defendant failed to do basic inquiry on the Plaintiff method of serving, Defendant has instant notification of Failure of service and multiple notification after. Defendant counsel refused to correct the records stating to Co-Plaintiff Tala with confidence that the Judge will not care. The court did approve Defendant's request for their invalid motion submitted 20 days after their deadline. It's unknown how the court approved this.

Defendant had the opportunity to admit their mistake regarding the no service and false certification but failed to do so until after Plaintiff Feras filed for Entry of Default.. The Defendant's delay in acknowledging their error until after the Entry of Default motion was filed demonstrates a failure to address the issue promptly. By waiting to admit the mistake, the Defendant allowed the prejudice against the Plaintiff to continue and potentially worsen, as Feras was unable to respond properly within required timeframes. Defendant still didn't fix his errors.

The delayed admission is an attempt to avoid consequences rather than a genuine acknowledgment of error. Even their reply in admitting the mistake was presented with another misrepresentation of claiming ignorance and negligence of a mistake that doesn't happen with lawyers, especially a Billion dollar company lawyers. The Defendant's failure to promptly admit and correct the mistake led to unnecessary filings and proceedings, wasting court resources. Additionally, by not admitting the mistake earlier, the Defendant missed chances to negotiate or resolve the issue before it escalated to an Entry of Default situation. The court has to consider this delayed admission as a factor when ruling on the Entry of Default and any related motions.

## IV. IMPACT ON PLAINTIFF'S ABILITY TO PARTICIPATE FAIRLY

The false Certificate of Service has negatively impacted Plaintiff's ability to participate fairly in the case and caused separate harm and damages from delayed letigiation ( including out of pocket damages, uncertainty, stress, chaos and anxiety ) as a result. As a *pro se* litigant, Plaintiff Feras operates without the resources and support of a large legal team. Time is a critical factor in preparing a defense. Because Plaintiff was not served, he was unaware of the initial filings. This caused the Plaintiff to miss the deadline for filing an opposition to the Motion to Dismiss, Plaintiff Feras knows he has to be served to reply. He can't reply if he wasn't individually served, the rules are made for a reason. Every day, or even every hour, makes a significant difference in a *pro se* litigant's ability to research, understand, and prepare a legal response.

Without notification of the filings, the Plaintiff had no opportunity to adequately prepare a defense or response within the allotted time frame. The Court did not adjust the 14-day time limit for Plaintiff to respond, despite the Defendant's failure to serve Plaintiff.

**PLAINTIFF FERAS MOTION TO STRIKE DEFENDANT AMERICAN AIRLINES' FILINGS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(f)**

R- 379

Case 1:24-cv-03434-ACR    Document 41    Filed 03/25/25    Page 7 of 11
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 380 of 971

7

The attorney for the Defendant has failed to correct this deficiency by serving Plaintiff, thus causing separate new harm. Being notified of the filings days after the fact does not absolve the Defendant's attorney of their obligation to serve Plaintiff Feras individually or correct the records with the court. Again, Plaintiff cannot reply if he was not officially served. Even if Defendant falsely claims this is a Joint claim, still the rules clearly states that each Plaintiff has to be served individually.

All Plaintiffs had a strategic plan for responding to motions; however, the Defendant's failure to serve Plaintiff has completely disrupted this plan. Now, each plaintiff is compelled to file numerous, complex motions solely due to American Airlines' initial failure to serve and its subsequent failure to rectify that error, as falsely certified on February 12, 2025. Without notification or serving of the filings, the Plaintiff had no opportunity to adequately prepare a defense or response.

Defendant filed its Meet and Confer request on February 20, 2025—eight days after the response deadline—knowing it had failed to serve Plaintiff Feras. Despite this procedural defect, Defendant proceeded to secure a meeting for a Meet and Confer, during which it sought to amend its Motion to Dismiss. This attempt to cure procedural failures after the deadline while bypassing service further prejudices Plaintiff and undermines the integrity of the proceedings.

The Plaintiff is now required to file this Motion to Strike and other motions and notices, incurring additional legal costs and wasting judicial resources, all due to the Defendant's initial submission of Defective Certificate of Service.

**PLAINTIFF FERAS MOTION TO STRIKE DEFENDANT AMERICAN AIRLINES' FILINGS**

**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(f)**

R- 380

8

The Defendant could attempt to seek a default judgment based on the Plaintiff's failure to respond to the Motion to Dismiss or other filings further harming the Plaintiff. The Plaintiff will now be required to file this Motion to Strike and incurring additional costs.

The defect occurred on the last day of the response deadline and was never corrected, making any subsequent correction untimely; Rule 12(a)(1)(A)(i) requires a timely response, and a failure to meet the deadline cannot be retroactively cured; Prejudice exists because Plaintiff was deprived of a fair opportunity to respond within the required time; The misrepresentation in the Certificate of Service is a serious issue that affects the integrity of the proceedings and is not merely a technical error; Defendant acknowledged the failure but did not correct it before proceeding with additional filings, exacerbating the procedural defects. Defendant **didn't submit a declaration** of Service to Feras.

Local Civil Rule 7(m) requires parties to confer in good faith before filing any non-dispositive motion. Defendant failed to meet this requirement before submitting its motions in February and in March, including its opposition, making these filings improper under the rule. Additionally, the Judge's Standing Order mandates that every motion include a proposed order and certificate of Confer, which Defendant also failed to provide. These procedural violations further demonstrate Defendant's disregard for court rules, rendering its filings defective.

Plaintiff has submitted Multiple Notices with declaration and detailed explanation of Defendant Certificate of Service. Defendant has not provided any evidence that he served Plaintiff Feras.

**PLAINTIFF FERAS MOTION TO STRIKE DEFENDANT AMERICAN AIRLINES' FILINGS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(f)**

R- 381

9

## CONCLUSION

Based on the foregoing, the Court should grant Plaintiff's Motion to Strike in its entirety. Defendant submitted a false and defective Certificate of Service, failed to serve Plaintiff, and only admitted to these errors after Plaintiff filed for Entry of Default. These procedural violations have significantly prejudiced Plaintiff's ability to participate fairly in this litigation and caused him personal damages. Accordingly, Plaintiff respectfully requests that the Court:

A. **Strike the improper Certificate of Service in its entirety** from all filings submitted on February 12, 2025, including the Notice of Appearance, Motion to Dismiss and attachments, and Corporate Disclosure Statement.

B. **Strike all filings submitted on February 12, 2025, in their entirety** for being defective, as they contain a false and improper defective  Certificate of Service that also fails to meet court and Federal rules requirements, and misrepresent service on Plaintiff.

C. **Strike all filings submitted on February 20, 2025**, as they were based on an invalid and improper Notice of Appearance and Corporate Disclosure Statement and they also fail to meet court and Federal rules requirements

D. **Strike all filings submitted in March 4 2025**, as they were served on Plaintiff Feras without a corrected Notice of Appearance, rendering them improper and prejudicial. The filing also fail to meet court and Federal rules requirements

E. Grant Plaintiff leave to amend if any aspect of their pleading or legal phrasing requires correction, as a pro se litigant relying on available resources and making every effort to comply with legal, court, and procedural requirements.

**PLAINTIFF FERAS MOTION TO STRIKE DEFENDANT AMERICAN AIRLINES' FILINGS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(f)**

R- 382

10

F. Deny Defendant  any further filings, as the deadline to respond was February 12, 2025.

G. Grant Plaintiff's Motion for Entry of Default, as Defendant failed to serve hence respond within the required period.

Granting this motion will uphold procedural integrity, prevent Defendant from benefiting from its misconduct, it will not set a precedent that awards non compliance by powerful Defendants against Pro Se Litigants, and protect Plaintiff's right to fair litigation. Additionally, it will prevent further financial out of pocket expenses and personal harm to Plaintiff and deter future violations, ensuring compliance with the Federal Rules of Civil Procedure.

March 24 2025

Feras Hindi
Pro Se Plaintiff
7823 New London Dr
Springfield, VA 22153
(703) 980-6955

**PLAINTIFF FERAS MOTION TO STRIKE DEFENDANT AMERICAN AIRLINES' FILINGS**

**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(f)**

R- 383

11

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2025, Plaintiff Feras Hindi  will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Motion To Strike and its Attachments

1-Defendant American Airlines, Inc. Registered Agent  Registered Office Address :CORPORATION SERVICE COMPANY 1090 VERMONT AVE. NW Washington DC 20005.

A Copy will be sent to **Micah E. Ticatch** 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Personal delivery via ABC Legal Services (Process Server)

2-Defendant Gulf Air B.S.C., Inc  AT Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Personal delivery via ABC Legal Services (Process Server)

3- Plaintiff Tala Josephano & Plaintiff Samiha Ayyash : Waived Service, Courtesy given.

Respectfully submitted,

March 25 2025

**Pro Se Plaintiff**

**Feras Hindi**

7823 New London Dr

Springfield VA 22153
(703)623-3767

**PLAINTIFF FERAS MOTION TO STRIKE DEFENDANT AMERICAN AIRLINES' FILINGS**

**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(f)**

R- 384

## IN IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SAMIHA AYYASH, et al.** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No.  1:24-cv-3434-ACR** |
| ) | |
| **GULF AIR B.S.C. et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

### DEFENDANT AMERICAN AIRLINES, INC.'S MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(2), Defendant American Airlines Inc., by counsel, hereby moves to dismiss the Amended Complaint because this Court lacks personal jurisdiction over American Airlines.  The grounds for this motion are set forth in the accompanying Memorandum of Support.  Pursuant to Local Rule 7(f), Defendant requests an oral hearing for this motion.

Dated: April 17, 2025

Respectfully submitted,

_/s/ Micah E. Ticatch_

Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Inc.*

1

R- 385

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of April 2025 I will serve a copy of the foregoing via

first class mail upon the following:

> Tala Josephano
> 615 Catalina Ave, #233
> Redondo Beach, CA 90277
> *Pro Se Plaintiff*
>
> Samiha Ayyash
> 7823 New London Dr,
> Springfield, Fairfax
> VA 22153
> 703-980-6955
> *Pro Se Plaintiff*
>
> Feras Hindi
> 7823 New London Dr,
> Springfield, Fairfax
> VA 22153
> 703-980-6955
> *Pro Se Plaintiff*

      /s/ Micah E. Ticatch
Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Inc.*

2

R- 386

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SAMIHA AYYASH, et al.** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **Case No.  1:24-cv-3434-ACR** |
| | ) |
| **GULF AIR B.S.C. et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## AMERICAN AIRLINES INC.'S MEMORANDUM IN SUPPORT
## OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

<div align="right">

Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Inc.*

</div>

R- 387

Defendant American Airlines Inc.("American Airlines") submits this Memorandum in Support of its Motion to Dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. For the reasons set forth herein, the Court lacks personal jurisdiction over each of Plaintiffs' claims asserted against American Airlines in their Amended Complaint (Dkt. 2) ("Amended Complaint"). Consequently, the claims should be dismissed.

## BACKGROUND[1]

On December 14, 2022, a pilot for Gulf Air, Capt. Mohannad Alhindi, suffered a heart attack at an airport in Bangladesh.  (*See* Dkt. 2 at 4 of 123, ¶ III.) Eight hours after suffering the heart attack, Capt. Alhindi died in a Bangladeshi hospital. (*See id.* at 10 of 123, ¶ 4.)

Plaintiffs are the deceased Capt. Alhindi's mother (Ms. Ayyash), brother (Mr. Hindi), and sister (Ms. Josephano).  (*Id.* at 8 of 123, ¶¶ 1-3.)  Ms. Ayyash and Mr. Hindi reside in Virginia, and Ms. Josephano resides in California.  (*Id.*)

Plaintiffs allege that Gulf Air's negligence "contributed to Captain Alhindi's death" by failing to provide timely medical care.  (*Id.* at 10 of 123, ¶ 6.)  As best as can be discerned, although Capt. Alhindi was not an employee of American Airlines, Plaintiffs seek to hold it liable for his death because the Gulf Air flight that he was scheduled to pilot (but did not pilot due to his heart attack) was allegedly one in which Gulf Air had a codesharing agreement[2] with American Airlines. (*Id.*, ¶ 3.)

---

[1] In light of the standard of a motion to dismiss, this section presents the facts as alleged in the Amended Complaint.  Defendant reserves the right to contest the alleged facts in any future pleadings.

[2] "[A] codeshare agreement is an agreement between two airlines whereby a flight is listed under one airline's two-letter identification code but operated by the other airline." *Rehman v. Etihad Airways*, 2019 WL 12095414, at *7, FN 7 (M.D. Pa. 2019).

1

R- 388

Plaintiffs assert three claims against American Airlines: negligence, negligence per se, and constructive fraud. (*Id.* at 109, 111, and 116 of 123.) All three claims appear to be based on the allegation that, due to the codeshare agreement, American Airlines had a duty to audit Gulf Air, which it allegedly performed inadequately. It is not clear from Plaintiffs' allegations what a properly performed audit would have revealed that could have prevented Capt. Alhindi's heart attack or his subsequent death.

The Amended Complaint fails to establish a connection between the claims and the District of Columbia— Capt. Alhindi's death occurred in Bangladesh, and American Airlines is a Delaware corporation with its principal places of business in Texas. (Dkt. 2 at 4 of 123, ¶ III; *id.* at 7 of 123, ¶ III.) Consequently, this Court lacks jurisdiction over American Airlines.

## STANDARD OF REVIEW

When a defendant objects to a court's personal jurisdiction under Rule 12(b)(2), the plaintiff, not the defendant, bears the "burden of establishing a factual basis for the court's exercise of personal jurisdiction." *Williams v. Romarm, SA*, 756 F.3d 777, 785 (D.C. Cir. 2014). Bare allegations and conclusory statements are insufficient to establish a *prima facie* case for jurisdiction. *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 172 (D.D.C. 2018).

## ARGUMENT

In order to exercise personal jurisdiction over a defendant, the Court must have either general or specific jurisdiction. *See, e.g., Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1780 (2017); *Crear v. Am. Airlines Grp., Inc.*, 2025 WL 35931, at *2 (D.D.C. 2025). Because, as explained in more detail below, this Court has neither, the claims against American Airlines must be dismissed.

R- 389

**A.      The Court does not have general jurisdiction because Defendant is not "at home" in the District of Columbia.**

When a court has general jurisdiction over a defendant, a plaintiff can properly assert any lawsuit against the defendant in that forum.  This extensive power, however, is limited only to those courts in the forums where a defendant is said to be "at home."  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  The Supreme Court has held that, outside extraordinary circumstances, a corporate entity is at home only in the jurisdiction in which it is incorporated or where it has its principal place of business.  *See id.* at 137-138; *Crear* 2025 WL 35931 at *3.

As correctly pled in the Amended Complaint, American Airlines is a Delaware corporation, with its principal place of business in Texas.  (Dkt. 2 at 7 of 123, ¶ III.)  Consequently, this Court lacks general jurisdiction over American Airlines.

**B.      Because Plaintiffs' claims do not arise in the District of Columbia, the Court lacks specific jurisdiction.**

When a court lacks general jurisdiction, it can still exercise specific jurisdiction over a claim, but Constitutional Due Process limits such jurisdiction to only those instances where there is an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State."  *Bristol-Meyers,* 137 S. Ct. at 1781.

In order to establish specific jurisdiction, a defendant must take "some act by which it purposefully avails itself of the privilege of conducting activities within the forum State. The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.' They must show that the defendant deliberately "reached out beyond" its home—by, for example, 'exploiting] a market' in the forum State or entering a contractual relationship centered there."  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (cleaned up).

R- 390

Additionally, the suit-related activity or occurrence must represent a "substantial connection." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  A connection that is only tangential to the claim does not create jurisdiction.  *See id.* at 288-289.

Because Plaintiffs bear the burden, they are required to plead sufficient facts in their Amended Complaint to establish that each of their claims is sufficiently connected to the District of Columbia to warrant specific jurisdiction. *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 175 (D.D.C. 2018) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006)).  In other words, specific jurisdiction must be evaluated on a claim-by-claim basis.  *See id.*

Plaintiffs assert three claims against American Airlines: negligence, negligence per se, and constructive fraud.  (Dkt. 2 at 109, 111, and 116 of 123.)  For the reasons explained below, each of these claims lacks a substantial connection to D.C., and consequently, jurisdiction does not exist.

      1.     <u>Plaintiffs' Negligence Claim in Count 3 Must be Dismissed.</u>

In Count 3, Plaintiffs assert that American Airlines was negligent because it allegedly:

> breached [its] duty by <u>failing to audit Gulf Air's certifications</u>, allowing fraudulent information to reach the FAA, and <u>neglecting to detect and report systemic safety deficiencies</u>, including unfit crew operations and mishandled medical emergencies and tGulf [sic] Air failure in adhering to DOT and ICAO regulations and rules

(Dkt. 2, at 109 of 123, ¶ 638 (emphasis added).)  Plaintiffs further assert that American Airlines' conduct directly contributed to Capt. Alhindi's death, causing the Plaintiffs "emotional trauma, financial dependence, and significant financial and emotional strain."  (*Id.,* ¶ 639.)

There is no connection between this claim and D.C. — let alone the *substantial* connection required to assert personal jurisdiction.  First, the actual incident at play, Capt. Alhindi's heart

4

R- 391

attack and subsequent death, occurred in Bangladesh.  (*Id.* at 10 of 123, ¶¶ 3-4.)  Second, as best as can be discerned, the alleged breach by American Airlines was its failure to properly audit Gulf Air or detect Gulf Air's alleged systemic safety deficiencies.  However, since Gulf Air is based in Bahrain, any audit of the airline would presumably take place in that country.  (*See id.* at 8 of 123, ¶ 1 (second ¶ 1 on that page).)  Plaintiffs have not alleged (and cannot allege) that any audit took place in D.C.

Because Plaintiffs have failed to allege a substantial connection to D.C. for Count 3, the claim should be dismissed.

### 2.      Plaintiffs' Negligence Per Se Claim in Count 4 Must be Dismissed.

Similar to Count 3, in Count 4, Plaintiffs assert that "American Airlines' failure to audit Gulf Air and detects risks allowed Gulf Air's negligence to persist . . . leading to Captain Alhindi's preventable death and harm to Plaintiffs."  (Dkt. 2, 111 at 123, ¶ 651.)  Again, because Capt. Alhindi's death and any audit occurred outside D.C., there is no substantial connection between this claim and D.C.  Consequently, this claim should be dismissed as well.

### 3.      Plaintiffs' Constructive Fraud Claim in Count 6 Must be Dismissed.

In their final claim against American Airlines in Count 6, Plaintiffs assert that American Airlines committed constructive fraud "by failing to audit Gulf Air's practices and certifying compliance with FAA/DOT standards despite evidence of systemic deficiencies." (*Id.,* 116 of 123, ¶ 679.)  Plaintiffs further assert that they relied on the certifications and that this reliance somehow led to Capt. Alhindi's death.[3]  (*See id.,* ¶ 681.)

---

[3] Because of the Court's request that 12(b)(6) ground not be addressed in the current Motion, Defendants refrain from briefing the implausibility of this allegation.

R- 392

In the Pre-Motion Conference, Plaintiff Josephano indicated a belief that because the certifications were provided to the FAA, which is headquartered in D.C., the Court has specific jurisdiction.  Plaintiff is mistaken.

First, Plaintiffs have pled that the certifications were prepared, reviewed, and electronically submitted in Fort Worth, Texas.  (*Id.*, ¶ 526.)  Therefore, to the extent American Airlines committed any "constructive fraud" it did so in Texas, not D.C.

Moreover, it seems clear from the Amended Complaint that Plaintiffs are merely assuming the FAA received the certification in D.C. because that is where the agency is headquartered.  However, the agency has employees spread throughout the country[4], and Plaintiffs have no good faith basis for assuming that the employee who received the certification was actually located in D.C.

Additionally, to the extent that the certifications were actually received in D.C., such contact was clearly not "the defendant's own choice," but rather represents the "random" choice of whomever the FAA decided to select to review the certifications.  American Airlines' electronic submission of a document *in Texas* to a federal agency does not constitute "purposefully avail[ing] itself of the privilege of conducting activities within" D.C. merely because the federal agency chooses to review that document in D.C.

Finally, any connection to D.C. is clearly not "substantial."  Again, Capt. Alhindi's death occurred in Bangladesh.  The allegedly improper audit occurred in Bahrain.  The allegedly constructively fraudulent certification was prepared and submitted in Texas.  Those are the locations with at least an arguable connection to Plaintiffs' claims that is substantial.  To the extent

---

[4] *See* FAA Offices and Locations, https://www.faa.gov/jobs/who_we_are/offices_locations#

R- 393

there was *any* contact with D.C. related to Count 6, it was tangential at best. Consequently, this claim should be dismissed as well.

## <u>CONCLUSION</u>

For the reasons stated above, each of Plaintiffs' claims against American Airlines should be dismissed for lack of personal jurisdiction.


Dated: April 17, 2025                    Respectfully submitted,

                                         /s/ Micah E. Ticatch
                                         Micah E. Ticatch, DC Bar No. 1005398
                                         ISLER DARE, P.C.
                                         1945 Old Gallows Road, Suite 650
                                         Vienna, Virginia 22182
                                         (703) 748-2690
                                         (703) 748-2695 (fax)
                                         mticatch@islerdare.com

                                         *Counsel for American Airlines Inc.*

R- 394

<div align="center">**CERTIFICATE OF SERVICE**</div>

I hereby certify that on the 17th day of April 2025 I will serve a copy of the foregoing via first class mail upon the following:

Tala Josephano
615 Catalina Ave, #233
Redondo Beach, CA 90277
*Pro Se Plaintiff*

Samiha Ayyash
7823 New London Dr,
Springfield, Fairfax
VA 22153
703-980-6955
*Pro Se Plaintiff*

Feras Hindi
7823 New London Dr,
Springfield, Fairfax
VA 22153
703-980-6955
*Pro Se Plaintiff*

/s/ Micah E. Ticatch
Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Inc.*

R- 395

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAMIHA AYYASH, et al. | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )    Case No.  1:24-cv-3434-ACR |
| | ) |
| GULF AIR B.S.C. et al., | ) |
| | ) |
|     Defendants. | ) |
| | ) |

## ORDER

UPON consideration of Defendant American Airlines, Inc.'s Motion to Dismiss, it is hereby ORDERED that the motion is GRANTED; and the claims against American Airlines are hereby DISMISSED for lack of personal jurisdiction.


Dated: _____, 2025


    _____
    Hon. Ana C. Reyes
    United States District Judge

R- 396

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SAMIHA AYYASH, *et al.* | |
|     Plaintiffs, | Case No. 1:24-cv-3434-ACR |
| v. | |
| GULF AIR B.S.C., *et al.*, | |
|     Defendants. | |

**DEFENDANT GULF AIR B.S.C. (C)'S MOTION TO DISMISS PLAINTIFFS'**
**AMENDED COMPLAINT UNDER RULES 12(b)(2), 12(b)(1) AND 12(b)(5)**

COMES NOW, Defendant, Gulf Air B.S.C. (c) ("Gulf Air"), by undersigned counsel, and moves this Court for an Order dismissing Plaintiffs' Amended Complaint ("Complaint"), with prejudice. As set forth in the accompanying Memorandum of Law, dismissal is warranted under Federal Rules of Civil Procedure 12(b)(2), 12(b)(1) and 12(b)(5). This Court cannot exercise either general or specific personal jurisdiction over Gulf Air, and, therefore, dismissal is warranted under Rule 12(b)(2). In addition, the Court lacks subject matter jurisdiction over the claims asserted in the Complaint because Plaintiffs lack standing to assert such claims and adding the party with standing would defeat diversity jurisdiction. Thus, dismissal is appropriate pursuant to Rule 12(b)(1). Lastly, Plaintiffs failed to effect service of process on Gulf Air in accordance with the applicable rules, thus, this Court does not have jurisdiction over Gulf Air and the Complaint should be dismissed under Rule 12(b)(5). None of the jurisdictional deficiencies with the Complaint can be cured by amendment.

Therefore, the Court should dismiss the Complaint in its entirety, with prejudice.

R- 397

Dated: April 18, 2025

Respectfully Submitted,

**ECKERT SEAMANS CHERIN
& MELLOTT, LLC**

/s/ Darcy C. Osta
Darcy C. Osta, Esq.
D.C. Bar No. 1686937
Mark A. Johnston, Esq.
D.C. Bar No. 455764
1717 Pennsylvania Ave., N.W.,
Suite 1200
Washington, D.C. 20006
(202) 659-6600
dosta@eckertseamans.com
mjohnston@eckertseamans.com

*Counsel for Defendant Gulf Air B.S.C. (c)*

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2025, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF filing system, which will serve an electronic copy on all

counsel of record, and I will also serve a copy of the foregoing via USPS first class mail upon the

following:

Tala Josephano
615 Catalina Avenue, #233
Redondo Beach, CA 90277
*Pro Se Plaintiff*

Samiha Ayyash
Feras Hindi
7823 New London Drive, #233
Springfield, VA 22153
*Pro Se Plaintiffs*

/s/ Darcy C. Osta
Darcy C. Osta

2

R- 398

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAMIHA AYYASH, *et al.* | |
| Plaintiffs, | Case No. 1:24-cv-3434-ACR |
| v. | |
| GULF AIR B.S.C., *et al*., | |
| Defendants. | |

**DEFENDANT GULF AIR B.S.C. (C)'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Dated: April 18, 2025

**ECKERT SEAMANS CHERIN
 & MELLOTT, LLC**

*/s/ Darcy C. Osta*
Darcy C. Osta, Esq.
D.C. Bar No. 1686937
Mark A. Johnston, Esq.
D.C. Bar No. 455764
1717 Pennsylvania Ave., N.W.,
Suite 1200
Washington, D.C. 20006
(202) 659-6600
dosta@eckertseamans.com
mjohnston@eckertseamans.com

*Counsel for Defendant Gulf Air B.S.C. (c)*

R- 399

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

RELEVANT BACKGROUND FACTS................................................................3

APPLICABLE LEGAL STANDARDS ...............................................................5

     RULE 12(b)(1)..............................................................................................5

     RULE 12(b)(2)..............................................................................................6

     RULE 12(b)(5)..............................................................................................6

ARGUMENT........................................................................................................7

     I.     THIS COURT LACKS PERSONAL JURISDICTION OVER GULF
           AIR ....................................................................................................7

           A.  This Court Lacks Specific Personal Jurisdiction Over Gulf Air.....8

           B.  This Court Lacks General Personal Jurisdiction Over Gulf Air. .14

     II.    PLAINTIFFS LACK STANDING TO ASSERT WRONGFUL
           DEATH AND SURVIVAL CLAIMS AGAINST GULF AIR AND
           ADDING THE PERSONAL REPRESENTATIVE OF THE
           DECEDENT'S ESTATE AS A PARTY PLAINTIFF DEFEATS
           DIVERSITY JURISDICTION ..............................................................17

     III.   PLAINTIFFS FAILED TO EFFECT SERVICE OF PROCESS ON
           GULF AIR ........................................................................................21

CONCLUSION ...................................................................................................23

R- 400

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brunson v. Kalil,*
 404 F. Supp. 2d 221, 235 (D.D.C. 2005) ...............................................................14

*Burton v. U.S.*,
 688 F.Supp.2d 86 (D.D.C. 2009) ...........................................................................18

*Candido v. District of Columbia*,
 242 F.R.D 151 (D.D.C. 2007) ..................................................................................6

*Ctr. for Biological Diversity v. Jackson*,
 815 F. Supp. 2d 85 (D.D.C. 2011) ...........................................................................5

*Christensson v. Hogdal*,
 199 F.2d 402 (D.C. Cir. 1952) ...............................................................................22

*COMSAT Corp. v. Finshipyards S.A.M.*,
 900 F. Supp. 515 (D.D.C. 1995). .................................................................10, 11, 12

*Core VCT Plc v. Hensley*,
 59 F. Supp. 3d 123 (D.D.C. 2014) .....................................................................19, 20

*Crane v. N.Y. Zoological Soc.*,
 894 F.2d 454 (D.C. Cir. 1990). ...............................................................................12

*\*Daimler AG v. Bauman*,
 571 U.S. 117, 139, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) ..................................16

*\*Erwin-Simpson v. AirAsia Berhad*,
 985 F.3d 883 (D.C. Cir. 2021) ...........................................7, 12, 14, 15, 16, 17

*Est. of Manook v. Rsch. Triangle Inst., Int'l & Unity Res. Grp., L.L.C.*,
 693 F. Supp. 2d 4 (D.D.C. 2010) ............................................................................18

*First Chicago Int'l v. United Exch. Co.*,
 836 F.2d 1375 (D.C. Cir. 1988). ...............................................................................7

*Formica v. Cascade Candle Company*,
 125 F. Supp.2d. 552 (D.D.C. 2001) ........................................................................13

*Gomez v. Aragon*,
 705 F. Supp. 2d 21 (D.D.C. 2010) ..........................................................................10

R- 401

*Grand Lodge of Frat. Order of Police v. Ashcroft,*
  185 F. Supp. 2d 9 (D.D.C. 2001) ..................................................................5

*Henson v. W.H.H. Trice and Co.,*
   466 F.Supp.2d 187 (D.D.C. 2006); ............................................................18

*Johnson-Richardson v. Univ. of Phoenix,*
   334 F.R.D. 349 (D.D.C. 2020) ....................................................................6

*Jung v. Assoc. of Am. Med. Colls.,*
   300 F.Supp.2d 119 (D.D.C. 2004). ............................................................12

*Leffer v. Federal Republic of Germany,*
   2002 WL 1598059 (D.D.C. Apr. 18, 2022) ................................................19

*McDaniel v. FEDITC LLC,*
   825 F. Supp. 2d 157 (D.D.C. 2011) ...........................................................10

*Moncrief v. Lexington Herald–Leader Co.,*
   807 F.2d 217 (D.C. Cir. 1986) .....................................................................9

*Mouzavires v. Baxter,*
   434 A.2d 988 (D.C. 1981) ..........................................................................11

*Myers v. Holiday Inns, Inc.,*
   915 F. Supp. 2d 136 (D.D.C. 2013) .............................................................6

*Naegele v. Albers,*
   355 F. Supp. 2d 129 (D.D.C. 2005) .............................................................6

*N'Jai v. United States Department of Education,*
   111 F.4th 1288, 1293 (2024) ......................................................................14

*Perry v. Criss Brothers Iron Works,*
   741 F. Supp. 985 (D.D.C. 1990). ...............................................................20

*Reuber v. United States,*
   750 F.2d 1039 (D.C. Cir. 1984) ...................................................................6

*Sabra ex rel. Baby M v. Pompeo,*
   453 F. Supp. 3d 291 (D.D.C. 2020) ...........................................................17

*Saunders v. Nemati,*
   580 A.2d 660 (D.C. 1990) ..........................................................................17

R- 402

*Schwartz v. CDI Japan, Ltd.*,
    938 F. Supp. 1 (D.D.C. 1996) ...............................................................................11, 13

*Scolaro v. D.C. Bd. of Elections & Ethics*,
    104 F. Supp. 2d 18 (D.D.C. 2000) ...................................................................................5

*Skydive Myrtle Beach Inc. v. Horry Cnty. Dep't of Airports*,
    735 F. App'x 810 (4th Cir. 2018).................................................................................22

*Shoppers Food Warehouse v. Moreno*,
    746 A.2d 320 (D.C. 2000).......................................................................................11, 13

*Stallard v. Goldman Sachs Grp., Inc.,*
    No. CV 20-2703 (RBW), 2022 WL 59395, at *5–7 (D.D.C. Jan. 6, 2022).......................22

*United States v. Philip Morris, Inc*,
    116 F. Supp. 2d 116 (D.D.C. 2000) ................................................................................6

*United States v. Williams,*
    825 F. Supp. 2d 117, 124 (D.D.C. 2011). ....................................................................19

*Walden v. Fiore*,
    571 U.S. 277, 134 S.Ct. 1115, 1121 n.6 (2014). ..........................................................14

*Wilson v. Prudential Fin.*,
    332 F. Supp. 2d 83 (D.D.C. 2004). ........................................................................21, 22

*Winston & Strawn LLP v. L. Firm of John Arthur Eaves*,
    47 F. Supp. 3d 68 (D.D.C. 2014) .............................................................................6, 7

**Other Authorities**

Fed. R. Civ. P. 4(h)(1)........................................................................................................21

Fed. R. Civ. P. 4(h) ........................................................................................................2, 21

Fed. R. Civ. P. 12(b)(1).................................................................................................1, 5

Fed. R. Civ. P. 12(b)(2)..................................................................................1, 6, 12, 17

Fed R. Civ. P. 12(b)(5).................................................................................1, 2, 6, 22

Fed R. Civ. P. 12(b)(6)....................................................................................1, 5, 6

49 U.S.C. § 46103 .......................................................................................................21, 22

28 U.S.C. § 1332(a) ...........................................................................................................21

R- 403

28 U.S.C. § 1332(c)(1)................................................................................................21

28 U.S.C. § 1332(c)(2).................................................................................................22

D.C. Super. Ct. Civ. R. 4(h).........................................................................................21

D.C. Code § 12-101 .....................................................................................................18

D.C. Code § 13-334(a) ...........................................................................................14, 15

D.C. Code § 13-334(b) .................................................................................................15

D.C. Code § 12-323(a)(3) ...............................................................................................9

D.C. Code § 13-422 ...............................................................................................14, 15

D.C. Code § 13-423 ...................................................................................................8, 9

D.C. Code § 13-423(a)(1) ..................................................................................10, 11, 14

D.C. Code § 13-423(a)(2) .............................................................................................10

D.C. Code § 16-2702 ..........................................................................................2, 18, 21

v

R- 404

**INTRODUCTION**

This action arises from the unexpected and sudden death of Captain Mohannad Alhindi ("Decedent").  At the time of his death, Decedent was employed by Defendant Gulf Air B.S.C. (c) ("Gulf Air") as a Captain, a.k.a., a pilot.  On December 14, 2022, Decedent was in Dhaka, Bangladesh and was scheduled to operate a flight from Bangladesh back to Bahrain when he suffered a massive heart attack.  He was rushed to the hospital, but unfortunately, he did not survive.

On December 10, 2024, the Decedent's mother, Samiha Ayyash, and siblings, Feras Hindi and Tala Josephano (collectively referred to herein as "Plaintiffs"), filed the instant action against Gulf Air and American Airlines, Inc. ("American Airlines").  On December 30, 2024, Plaintiffs filed an Amended Complaint (hereinafter referred to as "Complaint" or "Compl.") asserting causes of action for negligence *per se*, negligence, wrongful death, breach of fiduciary duty, fraudulent concealment, fraudulent misrepresentation, constructive fraud, negligent infliction of emotional distress (NIED), and intentional infliction of emotional distress (IIED) against Gulf Air arising from the Decedent's death.  However, as set forth more fully herein, the Complaint must be dismissed, in its entirety and with prejudice, under Federal Rules of Civil Procedure 12(b)(2), 12(b)(1) and 12(b)(5).[1]

First and foremost, for the reasons discussed in detail below, there is no general or specific personal jurisdiction over Gulf Air, thus Rule 12(b)(2) mandates dismissal of the Complaint.  There is no general jurisdiction over Gulf Air because it does not regularly conduct business in the District of Columbia and cannot be considered "at home" here.  There is no specific jurisdiction

---

[1] In accordance with the Court's instructions at the March 28, 2025 Pre-Motion Conference, the instant motion is limited to Gulf Air's jurisdictional defenses.  Gulf Air is not waiving, and is specifically preserving, its defenses under Rule 12(b)(6).

R- 405

over Gulf Air because it does not have any contacts with this jurisdiction, let alone contacts sufficient to bring it within the scope of D.C.'s long arm statute.  Accordingly, exercising personal jurisdiction over Gulf Air does not comport with due process and offends traditional notions of fair play and substantial justice.

Moreover, the Court lacks subject matter jurisdiction because Plaintiffs lack standing to bring claims for negligence, negligence *per se*, and breach of fiduciary duty, as those claims are alleged to have accrued in favor of the Decedent before his death ("survival claims"), and therefore can only be pursued by the personal representative of the Decedent's estate under the D.C. Survival Statute.  Similarly, any claim for wrongful death must be brought by the personal representative of the Decedent's estate.  D.C. Code § 16-2702.  As none of the Plaintiffs assert that they are the personal representative of Decedent's estate, they do not have standing to pursue these claims.  Moreover, adding the personal representative as a party plaintiff, which is necessary in order to pursue the wrongful death and survival claims asserted in the Complaint, would destroy diversity jurisdiction because there would be foreign aliens on both sides of the case.  For diversity jurisdiction purposes, the legal representative of the estate of a decedent shares the same citizenship as the decedent.  Gulf Air is citizen of the Kingdom of Bahrain and at all relevant times, including at the time of his death, Decedent was domiciled in a foreign country, so the personal representative of Decedent's estate is a citizen of a foreign country, thus divesting this Court of diversity jurisdiction.

In addition, the Complaint should be dismissed under Rule 12(b)(5) because Plaintiffs did not serve Gulf Air with process pursuant to Rule 4(h).  Plaintiffs improperly attempted to serve Gulf Air by delivering the Summons and Complaint to an attorney who is not authorized, either explicitly or impliedly, to receive and accept service of process of legal actions initiated in state or

R- 406

federal courts within the United States, including any legal action filed in any state or federal court located in the District of Columbia.  As there was no service of process, there can be no jurisdiction over Gulf Air and the appropriate remedy is dismissal of the Complaint.

None of the jurisdictional deficiencies with the Complaint can be cured by amendment. Therefore, the Court should dismiss the Complaint in its entirety, with prejudice.

## RELEVANT FACTUAL BACKGROUND

Gulf Air, a Bahraini corporation, is the national flag carrier of the Kingdom of Bahrain. Declaration of Captain Qasim Ghuloom Ismaeel ("Ismaeel Dec.") at ¶¶ 4-5 (Exhibit 1).  Founded in 1950, Gulf Air operates scheduled flights to more than fifty (50) destinations across Africa, Asia, the Middle East and Europe.  *Id.* at ¶ 5.

On December 5, 2022, Gulf Air filed an application ("Application") for foreign air carrier permit and exemption authority with the U.S. Department of Transportation ("DOT") "to enable it to conduct foreign scheduled and charter air transportation of persons, property and mail to the full extent permitted under the U.S. - Bahrain Air Transport Agreement."  As stated therein, "Gulf Air anticipates launching non-stop service from Bahrain to the United States upon receipt of all required government approvals."  *Id.* at ¶ 8.

On January 31, 2023, DOT granted the exemption request and on February 22, 2023, issued Gulf Air a foreign air carrier permit.  *Id.* at ¶ 9.  Per the Department's Final Order, Gulf Air was authorized to conduct operations only "through a code-share or wet-lease arrangement with a duly authorized and properly supervised U.S. or foreign air carrier, where Gulf Air is not physically operating the flight to and from the United States."  *Id*.  This is a standard condition placed on foreign air carriers when their home country has not achieved a Category 1 (in compliance with ICAO safety standards) rating under the Federal Aviation Administration's ("FAA") International

R- 407

Aviation Safety Assessment ("IASA") program. *Id.* Gulf Air's foreign air carrier permit was issued on February 22, 2023, and served on April 25, 2023, by DOT Order 2023-4-16.[2] *Id.*

On December 4, 2024, Gulf Air filed an application for an exemption and amended foreign air carrier permit with DOT to the extent necessary for it to conduct operations using its own aircraft and crews following the FAA's November 14, 2024 announcement that Bahrain had achieved a Category 1 (in compliance with ICAO safety standards) rating under the FAA's IASA program. *Id.* at ¶ 11. On January 30, 2025, DOT granted Gulf Air exemption authority to conduct operations to/from the United States using its own aircraft and tentatively granted Gulf Air an amended foreign air carrier permit. *Id.* Despite having the requisite DOT authority, Gulf Air does not yet operate scheduled flights to/from the U.S. using its own aircraft and crews. *Id.* at ¶ 12.

From February 18, 2005, until the time of his death, Decedent was employed by Gulf Air as a pilot. *Id.* at ¶ 18. In the Contract of Services between Gulf Air and Decedent, Decedent declared that he was a national of Jordon, and that his place of domicile was "Jubiaha, Jordon" [sic].[3] *Id.* Decedent never changed his place of domicile in the Contract of Services or any subsequent renewal thereof. *Id.* at ¶ 19; *see also* Exhibit A to Ismaeel Dec. (Ex. 1).

On December 14, 2022, Decedent operated a flight from Bahrain to Bangladesh. Decedent had a layover in Bangladesh and was scheduled to operate a return flight from Bangladesh to Bahrain. Neither flight was operated/to be operated under DOT authority. Ex. 1 at ¶¶ 21 – 22.

---

[2] Following DOT's issuance of a foreign air carrier permit to Gulf Air, Gulf Air registered with the New York Secretary of State. However, Gulf Air did not at that time, and still does not, have any physical presence in the State of New York; *i.e.*, no office and no employees. Ex. 1 at ¶ 10.

[3] The spelling is consistent with the terms of the Contract of Services between Gulf Air and Decedent. *See* Exhibit A to Ismaeel Dec. (Ex. 1).

R- 408

Sometime after arriving at the airport in Dhaka and prior to the departure of the flight on December 14, 2022, the Decedent "became incapacitated" and was taken to a hospital for treatment. Compl., "Statement of Facts," at ¶ 4. Unfortunately, the Decedent passed away eight hours later. *Id*. His cause of death was determined to be a 99% blockage of his left coronary artery. *Id*. Following his death, and at the specific request of his daughter, Gulf Air transported the Decedent's body to Jordan where he was buried. Ex. 1 at ¶ 20.

### APPLICABLE LEGAL STANDARDS

### RULE 12(b)(1)

When a defendant moves to dismiss for a lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction. *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F.Supp.2d. 9, 13 (D.D.C. 2001). "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Id*. (citing 5A Charles A. Wright & Arthur R. Miller, FED.PRAC. & PROC.CIV.2D, § 1350). As a result, the Court "must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion." *Center for Biological Diversity v. Jackson*, 815 F. Supp.2d 85, 89 (D.D.C. 2011). Moreover, the Court "need not limit itself to the allegations of the complaint." *Ashcroft*, 185 F.Supp.2d. at 13-14 (citation omitted); *see also Scolaro v. D.C. Board of Elections and Ethics*, 104 F.Supp.2d 18, 22 (D.D.C. 2000) (finding that "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case.") (citation omitted).

R- 409

## RULE 12(b)(2)

In order to withstand a defendant's motion to dismiss under Federal Rule 12(b)(2), the plaintiff bears the burden of making a *prima facie* showing of specific and pertinent jurisdictional facts. *Reuber v. United States,* 750 F.2d 1039, 1052 (D.C. Cir. 1984); *Naegele v. Albers,* 355 F. Supp. 2d 129, 136 (D.D.C. 2005); *United States v. Philip Morris, Inc.,* 116 F. Supp. 2d 116, 121 (D.D.C. 2000). However, "unlike a 12(b)(6) motion to dismiss, this court need not treat all of a plaintiff's allegations as true when making a personal jurisdiction determination." *Myers v. Holiday Inns, Inc.,* 915 F. Supp. 2d 136, 139 (D.D.C. 2013). The court may instead "receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Philip Morris, Inc.,* 116 F. Supp. 2d at 120 n. 4 (citation omitted).

## RULE 12(b)(5)

"Rule 12(b)(5) governs motions to dismiss for insufficient service of process." *Johnson-Richardson v. Univ. of Phoenix*, 334 F.R.D. 349, 352 (D.D.C. 2020). "'[U]nless the procedural requirements for effective service of process are satisfied, a court lacks authority to exercise personal jurisdiction over the defendant.'" *Id.* (quoting *Candido v. District of Columbia*, 242 F.R.D. 151, 160 (D.D.C. 2007). "[S]imply being on notice of a lawsuit 'cannot cure an otherwise defective service.'" *Candido v. District of Columbia*, 242 F.R.D 151, 162 (D.D.C. 2007) (internal quotations and citations omitted). Thus, "failure to effect service is grounds for dismissal." *Id.* Plaintiff bears the burden of establishing that they effected service in accordance with the applicable rules. *Johnson-Richardson v. Univ. of Phoenix*, 334 F.R.D. 349, 352 (D.D.C. 2020). To meet this burden, plaintiff "'must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law.'" *Winston & Strawn LLP v. L. Firm of John Arthur Eaves*, 47 F. Supp. 3d 68, 72 (D.D.C. 2014)

R- 410

(quoting *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987)).  As service of process bears on jurisdiction, the parties may rely on, and the Court may consider matters outside of the pleadings, without converting the motion under Rule 56.  *Winston & Strawn*, 47 F. Supp. at 72.

**ARGUMENT**

## I.    THIS COURT LACKS PERSONAL JURISDICTION OVER GULF AIR

The threshold question this Court must address is whether it has personal jurisdiction over Gulf Air.  When a defendant timely objects to a court's personal jurisdiction, the "general rule is that a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts."  *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988).  In order to make the requisite showing, a plaintiff must allege specific acts connecting the defendant with the forum State, and bare allegations are insufficient.  *Id.* at 1378-79.  Further, conclusory statements "do not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction."  *Id*. at 1378.

"The Supreme Court has developed two distinct analyses of the circumstances in which a forum state may, consistent with due process, authorize its courts to exercise contact-based personal jurisdiction over a defendant."  *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 888 (D.C. Cir. 2021) (citing *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56 (D.C. Cir. 2017)).  "The first, specific jurisdiction, 'depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  *Id*. (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846 (2011).  "The second type of contacts-based personal jurisdiction, general jurisdiction, 'permits a court to assert jurisdiction over a defendant based on

7

R- 411

a forum connection unrelated to the underlying suit.'"  *Id.* at 889 (quoting *Livnat*, 851 F.3d at 56 (additional citation omitted).

The Complaint does not contain any allegations regarding the basis upon which Plaintiffs contend that this Court has personal jurisdiction over Gulf Air.  Rather, the Complaint merely concludes, incorrectly, that, "substantial parts of the events or omissions giving rise to this action occurred in this jurisdiction…"  Compl., p. 2 "Venue".  Yet, all of the acts about which Plaintiffs complain, including the Decedent's death, occurred outside of the United States.  In fact, the Complaint fails to identify any specific act or omission attributable to Gulf Air that occurred in the District of Columbia and allegedly give rise to Plaintiffs' claims.  As a result, and for the reasons set forth below, Plaintiffs cannot make a *prima facie* showing of either specific or general personal jurisdiction over Gulf Air in this case and the Complaint must, therefore, be dismissed, with prejudice.

### A.  This Court Lacks Specific Personal Jurisdiction Over Gulf Air.

Plaintiffs do not specify upon which statute they contend that this Court has personal jurisdiction over Gulf Air.  By claiming that "substantial parts of the events or omissions giving rise to this action occurred in [the District of Columbia]", Plaintiffs appear to be invoking principals of specific personal jurisdiction.  The District of Columbia's long-arm statute, D.C. Code § 13-423, sets forth the bases for a court's exercise of specific personal jurisdiction over a defendant, none of which apply to the facts of this case.

The District of Columbia long-arm statute provides, in pertinent part:

(a)    A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

    (1)    transacting any business in the District of Columbia;

    (2)    contracting to supply services in the District of Columbia;

8

R- 412

(3)    causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4)    causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

(5)    having an interest in, using, or possessing real property in the District of Columbia;

(6)    contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing;

****

(b)    When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C. Code § 13-423.

Subparts (5) and (6) clearly have no application here. Subparts (3) and (4) do not apply to Plaintiffs' claims because the Complaint does not allege that Gulf Air's acts or omissions caused any tortious injury in the District of Columbia. Section 12-323(a)(3) is "a precise and intentionally restricted tort section which stops short of the outer limits of due process," and requires that both act and injury occur in the District of Columbia. *Moncrief v. Lexington Herald–Leader Co.*, 807 F.2d 217, 221 (D.C. Cir. 1986) (quoting *Margoles v. Johns*, 483 F.2d 1212, 1219 (D.C. Cir. 1973). Moreover, Plaintiffs do not contend that Gulf Air regularly conducts business in D.C. or derives substantial revenue from goods sold or services performed in the District, thus subpart (4) is inapplicable.

A review of the facts alleged in the Complaint and in the Declaration of Captain Qasim Ghuloom Ismaeel, makes clear that Subpart (2) is similarly inapplicable. *See, e.g.*, Ex. 1. The

9

R- 413

Complaint does not allege that Plaintiffs' injuries arise from any Gulf Air contract to perform services in the District of Columbia. *See Gomez v. Aragon*, 705 F. Supp. 2d 21, 24 (D.D.C. 2010) (claims did not arise out of a D.C. contract for services); *McDaniel v. FEDITC LLC*, 825 F. Supp. 2d 157, 160 (D.D.C. 2011) (plaintiff failed to show alleged retaliation claim arose out of the contract for services in D.C.). Moreover, the "contracting to supply services" provision of § 13-423(a)(2) applies only to a nonresident who injects themselves into the District by agreeing to provide some service to a resident in the District. *See COMSAT Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 524 (D.D.C. 1995).

Here, the Complaint references two contracts: (1) the employment contract between Gulf Air and Decedent and (2) the codeshare agreement between Gulf Air and American Airlines, neither of which support a finding of jurisdiction under § 13-423(a)(2). First and foremost, the Complaint does not allege, nor could it, that the employment contract requires Gulf Air to perform any services in the District of Columbia. *See* Contract of Services (Ex. A to Ismaeel Dec. (Ex. 1)).[4] Similarly, the Complaint does not allege that Gulf Air provided any services in the District to a D.C. resident under the codeshare agreement. Moreover, Gulf Air did not contract to provide any services to Plaintiffs. Plaintiffs are not current residents of the District of Columbia and do not allege that they were residents at any time relevant to the allegations in the Complaint.

Therefore, by process of elimination, Plaintiffs must be relying on § 13-423(a)(1) of the D.C. Long Arm Statute. To establish personal jurisdiction under § 13-423(a)(1), a plaintiff must show: "(1) that the defendant transacted business in the District; (2) that the claim arose from the business transacted in the District; and (3) that the defendant had minimum contacts with the

---

[4] Further, Plaintiffs' claims cannot arise out of that contract because they are neither parties to the employment contract nor third-party beneficiaries.

R- 414

District such that the Court's exercise of personal jurisdiction would not offend 'traditional notions of fair play and substantial justice.'" *Schwartz v. CDI Japan, Ltd.*, 938 F. Supp. 1, 4 (D.D.C. 1996) (quoting *International Shoe v. Washington*, 326 U.S. 310, 316 (1945)).  In the District of Columbia, the personal jurisdiction inquiry need not be bifurcated because the long-arm statute is coextensive with the U.S. Constitution's due process guarantee.  *See, e.g., Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 329 (D.C. 2000) (*en banc*) (providing a detailed review of personal jurisdiction law as developed by the Supreme Court and the District of Columbia Court of Appeals); *Mouzavires v. Baxter*, 434 A.2d 988, 992, 995, 997 (D.C. 1981) (*en banc*) (clarifying that "the most critical inquiry is … whether the defendant's contacts with the forum are of such a quality and nature that they manifest a deliberate and voluntary association with the forum" and are not "fortuitous or accidental").  Thus, whether a nonresident defendant is considered to have transacted business in D.C. sufficient to subject it to personal jurisdiction in the forum is a function of whether its minimum contacts in D.C. pass constitutional muster.

The constitutional touchstone of the "transacting business" determination under § 13-423(a)(1) is "whether the defendant purposefully established minimum contacts in the forum state." *COMSAT Corp.*, 900 F. Supp. at 520 (citing *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 108-09 (1987)).  The minimum contacts requirement embodies the notion that an actor must have purposefully availed itself of the privilege of transacting business in the forum state, "such that it should reasonably anticipate being haled into court there." *Id*. at 520-21 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  To be subject to personal jurisdiction, the defendant itself must have purposefully directed conduct toward the District.  The Constitution does not permit a defendant to be haled into court in a jurisdiction solely as a result of "attenuated contacts" or the "unrelated activity of another party or third person." *Id*. at 521

R- 415

(citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (198)). Absent a deliberate and voluntary association by a defendant with the forum state, personal jurisdiction may not be established.

Plaintiffs have failed to establish that Gulf Air "purposefully established minimum contacts" in the District of Columbia "such that it should reasonably anticipate being haled into court" in this jurisdiction. *COMSAT*, 900 F. Supp. at 520-521. At all relevant times, Gulf Air did not operate scheduled flights to/from the U.S. using its own aircraft and crews, nor does it have any registered offices or assets in the District. Ex. 1 at ¶¶ 12-13. Gulf Air is not a resident of the District of Columbia and has no place of business in the District of Columbia. *Id.* at ¶ 13. Gulf Air has no employees in the District of Columbia and does not advertise or solicit business in the District of Columbia. *Id.* at ¶ 14. Simply stated, Gulf Air does not conduct *any* business in the District of Columbia.[5] *Id.* at ¶¶ 12-14. Importantly, on a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Court need not accept all of the plaintiffs' allegations as true. *Jung v. Assoc. of Am. Med. Colls.*, 300 F.Supp.2d 119, 127 (D.D.C. 2004). It "may receive and weigh affidavits and other relevant matter [outside of the pleadings] to assist in determining the jurisdictional facts." *Id.* (quoting *Philip Morris Inc.*, 116 F.Supp.2d at 120 n. 4). But all factual discrepancies must be resolved in the plaintiffs' favor. *Crane v. N.Y. Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990). Here, there are no factual discrepancies to be resolved.

---

[5] Selling codeshare tickets to District of Columbia residents via a website alone is insufficient to establish general personal jurisdiction over Gulf Air. "[F]or online contacts alone to be enough [to establish general personal jurisdiction], they would need to render the corporation 'essentially at home' in the District." *Erwin-Simpson*, 985 F.3d at 892.

R- 416

This Court's exercise of personal jurisdiction over Gulf Air would also offend "traditional notions of fair play and substantial justice." *Schwartz*, 938 F. Supp. at 4. To extend personal jurisdiction over Gulf Air pursuant to the District's long-arm statute, Gulf Air must have had "fair warning" that it would be sued by Plaintiffs in the District of Columbia. *Shoppers*, 746 A.2d at 332. Because Gulf Air has no contacts with D.C., it could not have possibly had fair warning that it would be sued in the District of Columbia.

"A related factor in determining whether the exercise of personal jurisdiction over defendant is reasonable or fair is the District of Columbia's 'interest in adjudicating the dispute.'" *Formica v. Cascade Candle Company*, 125 F. Supp.2d. 552, 556 (D.D.C. 2001) (*quoting World-Wide Volkswagen Corp.*, 444 U.S. at 292). "Where the plaintiff is not a resident of the forum, the forum state's 'legitimate interests in the dispute have considerably diminished.'" *Id*. (quoting *Asahi Metal Industry Co., Ltd.*, 480 U.S. at 114); *see also Shoppers*, 746 A.2d at 328 ("A State generally has a manifest interest in providing *its residents* with a convenient forum for redressing injuries inflicted by out-of-state actors"). In the case at bar, Plaintiffs are residents of Virginia and California, not the District of Columbia. Thus, this Court does not even have an interest in redressing an alleged wrong inflicted on D.C. residents and, in fact, does not have any legitimate interest in this dispute. Traditional notions of fair play and substantial justice require that this Court decline to exercise personal jurisdiction over Gulf Air.

Under the District's long-arm statute, Plaintiffs have the burden of establishing that personal jurisdiction exists by demonstrating a factual basis for the exercise of such jurisdiction over Gulf Air. Plaintiffs may not rest on bare allegations or conclusory statements to establish personal jurisdiction. To the extent Plaintiffs have asserted allegations regarding personal jurisdiction, they are unsupported, conclusory, and fundamentally inaccurate. Because Gulf Air

R- 417

has not purposefully availed itself of the privilege of transacting business in the forum state, personal jurisdiction may not be established under § 13-423(a)(1) of the District's long-arm statute.[6]

### B.  This Court Lacks General Personal Jurisdiction Over Gulf Air.

General jurisdiction, "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Walden v. Fiore*, 571 U.S. 277, 134 S.Ct. 1115, 1121 n.6 (2014).  There are two statutes that provide for general personal jurisdiction in the District of Columbia: D.C. Code § 13-422 and D.C. Code § 13-334(a).  *See Erwin-Simpson,* 985 F.3d at 889.  However, neither statute confers general personal jurisdiction over Gulf Air in this case.

"A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief."  D.C. Code § 13-422.  Section 13-422 does not apply here, as Gulf Air is neither organized under the laws of the District of Columbia nor does it maintain it

---

[6] Presumably in an effort to demonstrate why venue in this Court is proper and/or to establish jurisdiction over Gulf Air, the Complaint asserts that Gulf Air recently applied for foreign air carrier permits with DOT.  Compl. at ¶ 21; *see also* ¶¶ 409, 441-42, 461, 471, 477 (referring to Gulf Air's DOT application process); *see also* Ex. 1 at ¶¶ 8-9, 11.  The Complaint also alleges that Gulf Air's codeshare agreement with American Airlines subjects Gulf Air to oversight by DOT and the Federal Aviation Administration ("FAA"), but there are no allegations that Gulf Air communicated directly with FAA.  Compl. at ¶ 20.  However, Gulf Air's contacts with DOT (and FAA, to the extent alleged) do not subject it to personal jurisdiction in D.C. because the "government contacts exception precludes the assertion of personal jurisdiction over a non-resident whose only contact with the District of Columbia is with Congress or a federal agency." *See Brunson v. Kalil*, 404 F. Supp. 2d 221, 235 (D.D.C. 2005) (citation omitted); *but cf. N'Jai v. United States Department of Education*, 111 F.4th 1288, 1293 (2024) (certifying question to the D.C. Court of Appeals of whether the government contacts exception to personal jurisdiction is limited to First Amendment activity between the defendant and a government entity).  As a result, Gulf Air's contacts with DOT (and FAA) do not constitute "transacting business" under § 13-423(a)(1).  More importantly, Plaintiffs' claims do not arise from Gulf Air's contacts with either DOT or FAA.  Therefore, Gulf Air's interactions with federal regulatory agencies cannot serve as the basis for personal jurisdiction in this matter.

14

R- 418

principal place of business in D.C. *See Erwin-Simpson,* 985 F.3d at 889 ("the defendant, a Malaysian corporation without a principal place of business in the District, clearly does not meet the conditions of section 13-422."); *see also* Ismaeel Dec. (Ex. 1); Gulf Air's Corporate Disclosure Statement [Dkt. 10].

The second D.C. statute that permits the exercise of general jurisdiction under certain circumstances is D.C. Code § 13-334(a)[7], the "doing business" provision, which provides:

> In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, when he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court.

As an initial matter, it would be impossible for Plaintiffs to comply with the requirements of § 13-334(a) because Gulf Air does not have any agents or persons conducting business on its behalf in the District. Ex. 1 at ¶¶ 12-17. While Plaintiffs will undoubtedly argue that Gulf Air's regulatory counsel, upon whom Plaintiffs attempted to affect service of process, constitutes an "agent of the corporation" under the statute, Plaintiffs are mistaken. Gulf Air's regulatory counsel is not Gulf Air's registered agent. *See*, *e.g.*, Section III, below; *see also* Ex. 1 at ¶¶ 15-17. Thus, Plaintiffs' failure to comply with the service requirements of Section 13-334(a) deprives this Court of general personal jurisdiction under the "doing business" provision.

Notwithstanding Plaintiffs' inability to comply with the service requirements of Section 13-334(a), Gulf Air is not "doing business" within the District of Columbia. "The D.C. Court of Appeals has indicated that the reach of 'doing business' jurisdiction under § 13-334(a) is co-

---

[7] D.C. Code § 13-334(b) does not apply to the facts of this case as Plaintiffs' action does not "grow[] out of contracts entered into or to be performed, in whole or in part, in the District of Columbia or grow[] out of any tort committed in the District."

R- 419

extensive with the reach of constitutional due process." *Erwin-Simpson*, 985 F.3d at 889 (quoting

*FC Inv. Grp. LC v. IFX Mkts., Ltd.,* 529 F.3d 1087, 1092 (D.C. Cir. 2008)).  The constitutionality

of an assertion of general jurisdiction over a foreign corporation depends on proof of corporate

contacts with the state that are "so continuous and systematic as to render [the corporation]

essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139, 134 S.Ct. 746,

187 L.Ed.2d 624 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915,

919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) (internal quotation marks omitted).  To be

"essentially at home" in a state means to be "comparable to a domestic enterprise in that State."

*Daimler*, 571 U.S. at 133 n.11, 134 S.Ct. 746.  This includes a corporation's place of incorporation

and its principal place of business.  *Id*. at 137, 134 S.Ct. 746.

The facts in the case *sub judice* are very similar to those considered by the D.C. Circuit in

*Erwin-Simpson*.  In that case, defendant AirAsia was a Malaysia-based airline that provided service

across Asia.  *Erwin-Simpson*, 985 F.3d at 886.  AirAsia did not operate any flights to or from the

United States, nor did it have any offices in D.C.  *Id*.  Plaintiffs,[8] husband and wife, brought an

action based on injuries the wife sustained on an AirAsia flight from Malaysia to Cambodia when

a flight attendant spilled boiling water on her.  *Id*.  In affirming the district court's dismissal for

lack of general personal jurisdiction over AirAsia, the D.C. Circuit noted that, "[t]he airline

operates no flights to the District and has no physical presence in the forum.  The only presence

that it identifies in the District is a website that is insufficient on its own to render the airline

'comparable to a domestic enterprise' in the forum."  *Id*. at 890.  Gulf Air does not operate

scheduled flights to D.C. using its own aircraft and crew and has no physical presence in the

---

[8] Unlike the Plaintiffs here, the plaintiffs in *Erwin-Simpson* were residents of the District of
Columbia.  *Id*.

R- 420

District.[9]  Ex. 1 at ¶¶ 12-14, 17.  Just as the D.C. Circuit upheld the district court's finding of a

lack of general personal jurisdiction over a foreign airline in *Erwin-Simpson*, so should this Court

decline to exercise general personal jurisdiction over Gulf Air here.

Accordingly, the Court should dismiss Plaintiff's Complaint under Rule 12(b)(2) for lack

of personal jurisdiction.

**II.    PLAINTIFFS LACK STANDING TO ASSERT WRONGFUL DEATH AND SURVIVAL CLAIMS AGAINST GULF AIR AND ADDING THE PERSONAL REPRESENTATIVE OF THE DECEDENT'S ESTATE AS A PARTY PLAINTIFF DEFEATS DIVERSITY JURISDICTION**

It is well-settled that a "[l]ack of standing is a defect in subject-matter jurisdiction." *Sabra*

*ex rel. Baby M v. Pompeo*, 453 F. Supp. 3d 291, 309 (D.D.C. 2020) (citing *Haase v. Sessions*, 835

F.2d 902, 906 (D.C. Cir. 1987)).  Here, Plaintiffs have no standing to assert the stated claims for

wrongful death, negligence, negligence *per se* and breach of fiduciary duty, all of which arise from

Gulf Air's alleged actions or inactions with respect to Decedent and are claimed to have resulted

in his death.  In other words, the Complaint alleges that Decedent had accrued actionable causes

of action against Gulf Air before his death and the personal representative of Decedent's estate is

the only party that has the right to pursue those claims.[10]

---

[9] Plaintiffs do not allege that activity related to Gulf Air's website gives rise to personal jurisdiction.  Nonetheless, the D.C. Circuit has made clear that maintaining a website directed towards residents of D.C., alone, is insufficient to establish general personal jurisdiction.  *See Erwin-Simpson*, 985 F.3d at 891 ("[Plaintiffs] do not identify any reason to think that use of AirAsia's website in the District would itself amount to forum contact so substantial and of such a nature as to effectively make AirAsia at home in the District of Columbia.").

[10] The manner in which Plaintiffs characterize their claims or how the claims are labeled in the Complaint is irrelevant.  *Saunders v. Nemati*, 580 A.2d 660, 661 (D.C. 1990) (finding that a "plaintiff's characterization of the claim is **not** controlling.") (emphasis added).  A review of the **substance** of those claims makes clear that they all allegedly belonged to and had accrued in favor of the Decedent prior to his death.

R- 421

While under common law, tort claims do not survive death, D.C.'s survival statute permits a legal representative to assert tort claims, such as negligence, on behalf of a decedent's estate. *Henson v. W.H.H. Trice and Co.*, 466 F.Supp.2d 187, 192 (D.D.C. 2006) *see also Burton v. U.S.*, 688 F.Supp.2d 86, 97 (D.D.C. 2009) ("a survival action is a negligence action pursued by the estate of the decedent victim"). However, the "survival statute is the ***exclusive means*** by which an estate may recover for common law torts resulting in the decedent's death." *Id.* (emphasis added) (finding that common law tort claims must be treated as a statutory survival action). Thus, the individual tort claims identified in the Complaint must be dismissed, as a claim for survival is the only permissible cause of action.

Importantly, this is not a situation where the claims can simply be relabeled, as Plaintiffs do not have standing to assert a survival or wrongful death claim. The applicable D.C. statutes make clear that ***only*** "[t]he 'personal representative' of the estate may bring claims for wrongful death on behalf of the deceased's next of kin, as well as a survival action on behalf of the deceased's estate." *Henson*, 466 F. Supp. 2d at 192 (emphasis added); *see also* D.C. Code §§ 12-101, 16-2702; *Est. of Manook v. Rsch. Triangle Inst., Int'l & Unity Res. Grp., L.L.C.*, 693 F. Supp. 2d 4, 17 (D.D.C. 2010) ("The right to bring a wrongful death action is conferred upon only one person, the personal representative, to the exclusion of all others."). D.C. law defines a "personal representative" as "officially appointed executors or administrators" and "the term is strictly construed." *Est. of Manook*, 693 F. Supp. 2d at 16-17 (internal citations and quotations omitted).

Here, Plaintiffs have not alleged that any one or all of them have been officially or legally appointed as a personal representative of the Decedent's estate. Plaintiffs are, therefore, improperly trying to assert claims against Gulf Air that can only be brought by the legally

18

R- 422

appointed personal representative of the Decedent's estate.  As a result, their causes of action for wrongful death, negligence, negligence *per se* and breach of fiduciary duty must be dismissed.

Further, granting Plaintiffs leave to substitute the personal representative as the correct party plaintiff would not save their claims from dismissal.  In fact, the presence of the personal representative in the case will divest this Court of subject matter jurisdiction because, as demonstrated herein, there would be foreign aliens on both sides of the case.  *Leffer v. Federal Republic of Germany*, 2002 WL 1598059, *3 (D.D.C. Apr. 18, 2022) (finding that foreign aliens on both sides of an action defeats diversity jurisdiction); *see also* 28 U.S.C. §§ 1332(a) and (c)(2).

For purposes of diversity jurisdiction, Gulf Air is a citizen of the Kingdom of Bahrain because it is a corporation organized under the laws of the Kingdom of Bahrain and its principal place of business is in Bahrain.  *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it is has been incorporated and of the State or foreign state where it has its principal place of business."); *see also* Gulf Air's Corporate Disclosure Statement [Dkt. 10]; Ex. 1 at ¶ 4.

The Decedent, whose citizenship is imputed to the personal representative of his estate, is deemed a citizen of the state in which he was domiciled at the time of his death.  An individual's "'[d]omicile is determined by two factors: physical presence in a state and intent to remain there for an unspecified or indefinite period of time.'"  *Core VCT Plc v. Hensley*, 59 F. Supp. 3d 123, 125 (D.D.C. 2014) (quoting *Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984)).  Although residency is certainly indicative of domicile, it, alone, is not determinative.  *Id.* (citations omitted).[11]  In fact, someone can have multiple residences but only one domicile.  *Id.* at 126

---

[11] Residence and domicile are distinguishable.  "Although a person's residence requires some degree of permanence, it is to be distinguished from a person's domicile, which requires more and a certain intent." *United States v. Williams*, 825 F. Supp. 2d 117, 124 (D.D.C. 2011). As courts

R- 423

(citations omitted).  "[F]or purposes of diversity jurisdiction, courts apply a presumption of continuing domicile, so that domicile in one place remains until domicile in a new place is established."  *Id.* (citing *Desmare v. U.S.*, 93 U.S. 605, 610, 23 L.Ed. 959 (1876)).  Thus, a "'prolonged absence from one's domicile is not determinative of abandonment.'"  *Id.* (quoting *Wagshal v. Rigler*, 947 F.Supp. 10, 13 (D.D.C. 1996).

Based on the information presently known, it is reasonable for the Court to conclude that the Decedent was domiciled in Jordan.  Although Decedent was residing in Bahrain at the time of his death, other facts suggest that he never abandoned his domicile in Jordan.  Decedent's employment contract with Gulf Air specifically stated that he was domiciled in Jordan, and at the request of his daughter, his body was returned to Jordan following his death.  Ex. 1 at ¶¶ 18-20; *see also* Ex. A. to Ismaeel Dec. (Ex. 1).  Further, Decedent's final resting place is in Jordan, as that is where he was buried.  Compl. at ¶¶ 396, 399.  As a result, the Court can apply the presumption of continuing domicile to conclude that, for purposes of diversity jurisdiction, the Decedent was a citizen of Jordan.  *Core VCT Plc*, 59 F. Supp. 3d at 126.[12]  Pursuant to 28 U.S.C. § 1332(c)(2), the personal representative of the Decedent's estate is, therefore, also a citizen of Jordan.

Moreover, D.C.'s Wrongful Death Statute creates a cause of action only for those deaths that occur within the geographical limits of the District.  *Perry v. Criss Brothers Iron Works*, 741 F. Supp. 985, 986 (D.D.C. 1990).  As the Decedent's death occurred in Bangladesh, there is no

---

have explained, "residence is '[t]he act or fact of living in a given place for some time, while domicile is a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere.'"  *Id.* (quoting *United States v. Venturella*, 391 F.3d, 120, 125 (2d Cir. 2004)).

[12] If the Court determines that Decedent was not domiciled in Jordan at the time of his death, then he should be deemed to be domiciled in Bahrain, in which case he is still a citizen of a foreign state for purposes of diversity jurisdiction.  Importantly, there are no allegations in the Complaint to suggest that Decedent was domiciled in the United States at the time of his death.

R- 424

cause of action available to the personal representative of Decedent's estate under the D.C. Wrongful Death Statute. *Id.*; *see also* D.C. Code §16-2702.

As a result, Plaintiffs lack standing to prosecute the survival and wrongful death claims asserted in the Complaint, and those claims must be dismissed, with prejudice.

### III.    PLAINTIFFS FAILED TO EFFECT SERVICE OF PROCESS ON GULF AIR

As Gulf Air is a foreign corporation, Plaintiffs were required to effect service of process in accordance with Fed. R. Civ. P. 4(h) or the applicable D.C. rules governing service on corporations. *Wilson v. Prudential Fin.*, 332 F. Supp. 2d 83, 87 (D.D.C. 2004). Rule 4(h) permits service on a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(h)(1).[13]

Here, Plaintiffs attempted to serve Gulf Air by delivering a copy of the Summons and Complaint to attorney Evelyn Sahr with the law firm of Eckert Seamans Cherin & Mellott LLC ("Eckert Seamans"). *See* Affidavit of Service [Dkt. 5]. Plaintiffs assert that Ms. Sahr is Gulf Air's registered agent in the District. Attachment to Compl., ¶ 1 under "Defendants" heading. However, as is set forth in the Declaration of Evelyn Sahr, Gulf Air did not designate Ms. Sahr, Eckert Seamans or any other attorney or individual associated with the firm to receive service of process on its behalf with respect to legal actions in the U.S., or D.C. Ex. 1 at ¶¶ 15-16; *see also* Declaration of Evelyn Sahr at ¶¶ 5, 7 (Exhibit 2). Rather, the authority that Gulf Air bestowed upon Ms. Sahr is extremely limited in scope – she is ***only*** authorized to receive service on behalf of Gulf Air under 49 U.S.C. § 46103 with respect to notices and process, and all orders, decisions, and requirements of DOT related to proceedings before, and actions of, the Secretary of

---

[13] The D.C. Rule authorizing service on a corporation is identical. *See* D.C. Rule Civ. P. 4(h)(1).

R- 425

Transportation. *See* DOT OST Form 1010.5 (1-95) (requiring carrier to identify agent under 49 U.S.C. § 46103) (Exhibit 1 to Sahr Dec.); *see also Skydive Myrtle Beach Inc. v. Horry Cnty. Dep't of Airports*, 735 F. App'x 810, 814–15 (4th Cir. 2018) (finding that the service provisions set forth in 49 U.S.C. § 46103 pertain "only to enforcement actions brought for violations of Part A of Subtitle VII of Title 49.").[14]

Designating Ms. Sahr as an agent with respect to DOT matters does not automatically confer authority on Ms. Sahr to receive and accept service of process for all other purposes. *See*, *e.g.*, *Wilson*, 332 F. Supp. 2d at 89 (citing cases standing for the proposition that an attorney does not become a client's agent for service of process by virtue of their representation in another matter). Rather, there must be evidence that Gulf Air authorized Ms. Sahr, either implicitly or explicitly, to accept service of process in civil litigation matters. *Id.*; *see also Christensson v. Hogdal*, 199 F.2d 402, 406 n.3 (D.C. Cir. 1952) (finding that "only where an attorney is expressly or impliedly authorized to accept service of process can his do so bind his absent client and subject him to the personal jurisdiction of the local court."); *Stallard v. Goldman Sachs Grp., Inc.,* No. CV 20-2703 (RBW), 2022 WL 59395, at *5–7 (D.D.C. Jan. 6, 2022) ("[A]ny agent who accepts service must be shown to have been authorized to bind his [or her] principal by the accept of process[,] . . . either explicitly or "implied in fact.") (internal quotations and citations omitted). As a result, the Affidavit of Service [Dkt. 5] is not *prima facie* evidence of valid service on Gulf Air, because "it was not served upon someone authorized to accept service" on Gulf Air's behalf. *Stallard*, 2022 WL 59395, at *7; *see also* Ex. 1 at ¶¶ 15-16; Ex. 2. As a result, this Court should dismiss the Complaint under Rule 12(b)(5).

---

[14] 49 U.S.C. § 46103 provides, in pertinent part, that "Each . . . foreign air carrier shall designate an agent on whom service of notice and process in a proceeding before, and an action of, the Secretary of Transportation . . . may be made."

R- 426

## CONCLUSION

For the foregoing reasons, Defendant Gulf Air B.S.C. (c) requests that the Court grant its

motion and dismiss Plaintiffs' Complaint in its entirety, with prejudice.


Dated: April 18, 2025

Respectfully submitted,

**ECKERT SEAMANS CHERIN
  & MELLOTT, LLC**

*/s/ Darcy C. Osta*
Darcy C. Osta, Esq.
D.C. Bar No. 1686937
Mark A. Johnston, Esq.
D.C. Bar No. 455764
1717 Pennsylvania Ave., N.W.,
Suite 1200
Washington, D.C. 20006
(202) 659-6600
dosta@eckertseamans.com
mjohnston@eckertseamans.com

*Counsel for Gulf Air B.S.C. (c)*

R- 427

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2025, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF filing system, which will serve an electronic copy on all

counsel of record, and I will also serve a copy of the foregoing via USPS first class mail upon the

following:

Tala Josephano
615 Catalina Avenue, #233
Redondo Beach, CA 90277
*Pro Se Plaintiff*

Samiha Ayyash
Feras Hindi
7823 New London Drive, #233
Springfield, VA 22153
*Pro Se Plaintiffs*

<div align="right">

*/s/ Darcy C. Osta*
Darcy C. Osta

</div>

R- 428

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SAMIHA AYYASH, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:24-cv-03434-ACR |
| v. | ) | |
| | ) | |
| GULF AIR B.S.C. (C), *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF CAPTAIN QASIM GHULOOM ISMAEEL**

I, Captain Qasim Ghuloom Ismaeel, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am employed by Gulf Air B.S.C. (c) ("Gulf Air"), a Defendant in this action, as Chief Operations Officer, and am authorized to make this Declaration in support of Gulf Air's Motion to Dismiss the Amended Complaint.

2. I am over the age of 18 years old and competent to testify on the matters stated herein.

3. I make this Declaration based upon my personal knowledge and my review of Gulf Air's business records, which are kept in the course of Gulf Air's regularly conducted business activity, and which are made at or near the time of the recorded event by someone with personal knowledge or from information transmitted by someone with personal knowledge; and it being the regular practice of Gulf Air to make and keep such business records.

4. Gulf Air is a corporation organized under the laws of the Kingdom of Bahrain ("Bahrain"). Gulf Air is headquartered in Muharraq, Bahrain, and its main hub is at Bahrain International Airport.

*FK.*

R- 429

5.      Gulf Air is the national flag carrier of Bahrain. Founded in 1950, Gulf Air operates scheduled flights to more than 50 destinations across Africa, Asia, the Middle East and Europe.

6.      Bahrain's Ministry of Transportation and Telecommunications Civil Aviation Affairs ("BCAA") regulates Gulf Air's air transport operations and is responsible for ensuring that Gulf Air complies with all safety standards set forth in the Bahrain Air Navigation Technical Regulations (ANTR) and the National Civil Aviation Security Program (NCASP).

7.      Gulf Air is wholly owned by Gulf Air Group Holding B.S.C. (c), which is in turn 100% owned by Bahrain Mumtalakat Holding Company B.S.C. (c), the sovereign wealth fund of the Kingdom of Bahrain.

8.      On December 5, 2022, Gulf Air filed an application ("Application") for a foreign air carrier permit and exemption authority with the U.S. Department of Transportation ("DOT") "to enable it to conduct foreign scheduled and charter air transportation of persons, property and mail to the full extent permitted under the U.S. - Bahrain Air Transport Agreement." As stated therein, "Gulf Air anticipates launching non-stop service from Bahrain to the United States upon receipt of all required government approvals." *See* DOT-OST-2022-0141-0007.[1]

9.      On January 31, 2023, DOT granted the exemption request and on February 22, 2023, issued Gulf Air a foreign air carrier permit.  Per the Department's Final Order, Gulf Air was authorized to conduct operations only "through a code-share or wet-lease arrangement with a duly authorized and properly supervised U.S. or foreign air carrier, where Gulf Air is not physically operating the flight to and from the United States."  This is a standard condition placed on foreign air carriers when their home country has not achieved a Category 1 (in compliance with ICAO safety standards) rating under the Federal Aviation Administration's ("FAA") International

---

[1] Available at: https://www.regulations.gov/docket/DOT-OST-2022-0141 (last accessed on April 15, 2025).

R- 430

Aviation Safety Assessment (IASA) program.  Gulf Air's foreign air carrier permit was issued on February 22, 2023, and served on April 25, 2023, by DOT Order 2023-4-16.  *See* DOT-OST-2022-0141-0007.

10.     Following DOT's issuance of a foreign air carrier permit to Gulf Air, Gulf Air registered with the New York Secretary of State.  However, Gulf Air did not at that time, and still does not, have any physical presence in the State of New York; *i.e.*, no office and no employees.

11.     On December 4, 2024, Gulf Air filed an application for an exemption and amended foreign air carrier permit with DOT to the extent necessary for it to conduct operations using its own aircraft and crews following the FAA's announcement on November 14, 2024, that Bahrain had achieved a Category 1 (in compliance with ICAO safety standards) rating under the FAA's IASA program.  On January 30, 2025, DOT granted Gulf Air exemption authority to conduct operations to/from the United States using its own aircraft and tentatively granted Gulf Air an amended foreign air carrier permit.  *See* DOT-OST-2022-0141-0007.

12.     Gulf Air does not yet operate scheduled flights to/from the U.S. using its own aircraft and crews.

13.     Gulf Air is not a resident of the District of Columbia, is not registered to do business in the District of Columbia, and has no place of business in the District of Columbia.

14.     Gulf Air has no employees in the District of Columbia.

15.     As required by Title 49 USC, Subtitle VII, Part A, Gulf Air identified Evelyn Sahr, Esq. of the law firm of Eckert Seamans Cherin & Mellott, LLC ("Eckert Seamans") as the individual authorized to receive service on behalf of Gulf Air with respect to notices and process, and all orders, decisions, and requirements of the Department of Transportation.  Thus, the

R- 431

USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 432 of 971

designation is limited to matters pertaining specifically to proceedings before, and actions of, the Secretary of Transportation.

16. Gulf Air did not designate Ms. Sahr, Eckert Seamans, or any other attorney or individual connected with the firm, to serve as its agent to accept or receive service of process on its behalf for legal actions in the U.S., in general, and specifically, the District of Columbia.

17. Gulf Air does not have a registered agent in the District of Columbia.

18. The Decedent, Mohannad Alhindi ("Decedent"), was employed by Gulf Air as a pilot from February 1999, until the time of his death, December 14, 2022, pursuant to the terms of a written Contract of Services ("Contract"), a true and correct copy of which is attached hereto as Exhibit A. The Contract was renewed on February 18, 2002, and again on October 14, 2004, after which time the terms remained in effect until the time of Decedent's death. True and correct copies of the renewals are attached hereto as part of Exhibit A. The Decedent was initially hired as a First Officer but was later promoted to the rank of Captain in July 2008.

19. As set forth in the Contract, Decedent declared that he was a "national of Jordon" and that his place of domicile was "Jubiaha, Jordon." Decedent never notified Gulf Air that his place of domicile had changed, and there were no documented changes regarding his domicile in any subsequent renewal of the Contract.

20. Decedent was residing in Bahrain at the time of his death, but following his death, and at the request of his daughter, Gulf Air arranged for the Decedent to be transferred back to Jordan where he was buried.

21. The flight that Decedent operated immediately prior to his death was not conducted under Gulf Air's foreign air carrier permit issued by DOT.

KK.

R- 432

22.    The flight that Decedent was scheduled to operate prior to his death was not conducted under Gulf Air's foreign air carrier permit issued by DOT.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  April 16, 2025
Muharraq, Kingdom of Bahrain

**Captain Qasim Ghuloom Ismaeel**
**Chief Operations Officer**
**Gulf Air B.S.C. (c)**

5

R- 433

# EXHIBIT A

R- 434



**GULF AIR**

P.O. Box 138
State of Bahrain

C.R. No. 8919

A Contract of Services is made the day of 22nd Febuary 1999 between Gulf Air Company GSC hereinafter referred to as the Company of the one part and Mr. Muhannad Yousef Al Hindi national of Jordan born on 20th March 1959 and whose address in his place of normal domicile is **P.O. Box 354 Amman 11941 Jubaiha - Jordan**, herein after known as the Employee of the other part whereby it is agreed that the Company shall employ and the employee shall serve the Company and that such service shall be regulated by the following:

| | | | |
|---|---|---|---|
| 1. | **PERIOD OF CONTRACT** | : | This Contract shall subsist for a period of three years commencing from 19th Febuary 1999. |
| 2. | **SALARY** | : | The Employee shall be appointed in scale 11M earning a basic pay **BD.973.500/-** per month. |
| 3. | **NATURE OF EMPLOYMENT** | : | The occupation of the Employee on the date of this agreement shall be A320 First Officer. The employee has been notified of the dangers of his profession if any and of the means required of him to protect himself. The Company shall during the subsistence of this Contract notify the Employee in writing of any alteration in his position or place of assignment either as a result of re-organization in the Company or if in the interests of the Company's business. |
| 4. | **ALLOWANCES** | : | Allowances shall be as specified in Schedule II of the Terms and Conditions of Employment. |
| 5. | **COMPANY REGULATIONS & GENERAL CONDITIONS** | : | The Company's Regulations and General Conditions of Employment shall constitute part and parcel of this contract. |
| 6. | **CONFLICT WITH LAWS OF THE LAND** | : | Nothing express or implied in this Contract or in the Company's Regulations and General Conditions of Employment shall be enforceable if contrary to the laws in the country in which the employee is based. |

R- 435



**GULF AIR**

| | | | | |
|---|---|---|---|---|
| 7. | **RIGHT OF TRANSFER** | : | The Company reserves the right to transfer the employee to any place worldwide. |
| 8. | **PLACE OF RECRUITMENT** | : | The Employee's place of recruitment for the purpose of annual leave and repatriation shall be Amman. |
| 9. | **TERMINATION OF THE CONTRACT** | : | The first three months of employment commencing from the date of first employment shall be on probation during which either party may terminate this contract by one month's notice to the other. After completion of the probationary period either party may terminate this contract by serving three months notice on the other. |
| 10. | **LEAVE** | : | Leave shall accrue at the rate of 42 days for every twelve months in service. |
| 11. | **COMPLIANCE WITH GOVERNMENT REQUIREMENTS** | : | The entry into force and the continuation of this Contract shall be conditional upon obtaining and retaining any necessary permits and licenses as required by the appropriate Government authorities. |

IN WITNESS WHEREBY THE PARTIES HERETO HAVE SIGNED THIS AGREEMENT ON THE DAY AND YEAR FIRST ABOVE MENTIONED.

**The Employee**

**For Gulf Air Company GSC**

A. Aziz Ishaq
Head of Personnel Services Development

in the presence of:

in the presence of:

Witness:

Witness: _____

Occupation:

Occupation: SPC

Address:

Address: G.F

**R- 436**

Golden Jubilee

GULFAIR

*P.O. Box 138*
*State of Bahrain*

*C.R. No. 8919*

*Further to the Contract of Service made on the day 22.02.1999 between Gulf Air Company GSC hereinafter referred to as the Company of the one part and Mr. Muhannad Yousef Al Hindi S/No 126004 national of Jordan born on 20.03.1959 and whose address in his/her place of normal domicile is P.O Box 354 Amman 11941 Jubaiha, Jordan herein after known as the 'Employee' of the other part, it is, hereby, agreed that the Company shall renew the employment as detailed below:*

| | | | |
|---|---|---|---|
| 1. | **PERIOD OF CONTRACT** | : | *The Contract shall be renewed for a period of **THREE YEARS** commencing from 18.02.2002* |
| 2. | **SALARY** | : | *The Employee scale shall be 11M earning a basic pay BD. 1070.850 per month.* |
| 3. | **NATURE OF EMPLOYMENT** | : | *The occupation of the Employee on the date of this agreement shall be First Officer A320. The employee has been notified of the dangers of his profession if any and of the means required of him to protect himself. The Company shall during the subsistence of this Contract notify the Employee in writing of any alteration in his position or place of assignment either as a result of re-organization in the Company or if in the interests of the Company's business.* |

*All other terms and conditions of employment shall remain the same. If the above is acceptable to you, please sign and return this document to the undersigned.*

*IN WITNESS WHEREBY THE PARTIES HERETO HAVE SIGNED THIS RENEWAL OF AGREEMENT ON THE DAY (date of signing).*

*The Employee*
_____

*For Gulf Air Company GSC*
_____
**FAWZI MUBARAK**
*Manager Personnel Administration*

*in the presence of:*
_____

*Witness:*_____

*Occupation:*_____

*Address:*_____

*in the presence of:*
_____

*Witness:*_____

*Occupation:*_____

*Address:*_____

HEAD OFFICE: GULF AIR COMPANY G.S.C., P.O. BOX 138, BAHRAIN. CABLES: GULFAV BAHRAIN. TLX. 8255 GULFHQ BAH BN TEL. 322200

R- 437

USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 438 of 971



Tel: + 973 322200
Cable: GULFAV BAHRAIN
Telex: 8255 GULFHQ BAH BN

www.gulfairco.com

GULF AIR

**C.R. No.**

A Contract of Services is made the day of **18ᵗʰ October, 2004** between Gulf Air Company GSC (hereinafter referred to as the "Company") of the one part and **Mr. Muhannad Yousef Al Hindi S/No. 126004** national of **Jordon** born on **20th March, 1959** and whose address in his/her place of normal domicile is **P.O Box 354 Amman 11941 Jubaiha, Jordon**, (hereinafter referred to as "Employee") of the other part whereby it is agreed that the Company shall employ and the employee shall serve the Company and that such service shall be regulated by the following:

| | | | |
|---|---|---|---|
| 1. | PERIOD OF CONTRACT | : | This Contract shall subsist for **an indefinite period** commencing from **18ᵗʰ February, 2005** This contract supersedes any previous agreement with the company. |
| 2. | SALARY | : | The Employee shall be appointed in scale **11M** earning a basic pay **BD.1,517.988** per month. |
| 3. | NATURE OF EMPLOYMENT | : | The occupation of the Employee on the date of this agreement shall be **Senior First Officer A340**. The employee has been notified of the dangers of his profession if any and of the means required of him to protect him self. The Company shall during the subsistence of this Contract notify the Employee in writing of any alteration in his position or place of assignment either as a result of re-organization in the Company or if in the interests of the Company's business. |
| 4. | ALLOWANCES | : | Allowances shall be as specified in Schedule II of the Terms and Conditions of Employment. |
| 5. | COMPANY REGULATIONS & GENERAL CONDITIONS | : | The Company's Regulations and General Conditions of Employment shall constitute part and parcel of this contract. |
| 6. | CONFLICT WITH LAWS OF THE LAND | : | Nothing express or implied in this Contract or in the Company's Regulations and General Conditions of Employment shall be enforceable if contrary to the laws in the country in which the employee is based. |

Gulf Air Company G.S.C.
P.O. Box 138, Kingdom of Bahrain
Tel: + 973 322200
Cable: GULFAV BAHRAIN
Telex: 8255 GULFHQ BAH BN

www.gulfairco.com

R- 438



**GULF AIR**

| | | | |
|---|---|---|---|
| 7. | **RIGHT OF TRANSFER** | : | The Company reserves the right to transfer the employee to any place worldwide. |
| 8. | **PLACE OF RECRUITMENT** | : | The Employee's place of recruitment for the purpose of annual leave and repatriation shall be **Amman.** |
| 9. | **TERMINATION OF THE CONTRACT** | : | Either party may terminate this contract by serving three months notice on the other. |
| 10. | **LEAVE** | : | Leave shall accrue at the rate of **50** calendar days inclusive public holidays. |
| 11. | **COMPLIANCE WITH GOVERNMENT REQUIREMENTS** | : | The entry into force and the continuation of this Contract shall be conditional upon obtaining and retaining any necessary permits and licenses as required by the appropriate Government authorities. |
| 12. | **GOVERNING LAW** | | The Laws of the Kingdom of Bahrain shall govern this contract and the courts of Bahrain shall have exclusive jurisdiction over any dispute arising from this Contract. |

Signing the contract and the terms and conditions of employment is an integral part of the contract of employment.

IN WITNESS WHEREBY THE PARTIES HERETO HAVE SIGNED THIS AGREEMENT ON THE DAY AND YEAR FIRST ABOVE MENTIONED.

The Employee

For Gulf Air Company GSC

**YOSR MOHAMED FAREED**
Manager HR & Employee Relations

In the presence of:

In the presence of:

Witness:_____Naheed_____

Witness:_____

Occupation:____H.R.O.____

Occupation:_____

**Gulf Air Company G.S.C.**
P.O. Box 138, Kingdom of Bahrain
Tel: + 973 322200
Cable: GULFAV BAHRAIN
Telex: 8255 GULFHQ BAH BN

**www.gulfairco.com**

R- 439

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAMIHA AYYASH, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:24-cv-03434-ACR |
| v. | ) | |
| | ) | |
| GULF AIR B.S.C. (C), *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF EVELYN D. SAHR, ESQ.

I, Evelyn D. Sahr, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.      I am an attorney licensed to practice law in the District of Columbia and an active member of the D.C. Bar.

2.      I am Member of the law firm of Eckert Seamans Cherin & Mellott, LLC ("Eckert Seamans").

3.      I make this Declaration based upon my personal knowledge and belief, and if called to testify as to any of the matters set forth herein, I could and would competently testify thereto.

4.      Plaintiffs attempted to serve process on Defendant Gulf Air B.S.C. (c) ("Gulf Air") in the action styled *Samiha Ayyash, et al. v. Gulf Air B.S.C. (C), et al.*, Case No. 1:24-cv-03434-ACR, by delivering a copy of the Summons and Complaint to Eckert Seaman's Washington, D.C. office on January 30, 2025.

5.      I am not an officer, managing agent, or general agent of Gulf Air and Gulf Air has not authorized me to accept or receive service of process of legal actions initiated in state or

R- 440

federal courts within the United States, including any legal action filed in any state or federal court located in the District of Columbia.

6.      As required by 49 U.S.C. § 46103, Gulf Air designated me as its agent upon whom service of all notices and process, and all orders, decisions, and requirements of the Department of Transportation may be made for and on behalf of Gulf Air. Pursuant to the explicit terms of the designation and the corresponding statute, the scope of my authority thereunder is limited only to accepting service of documents related to proceedings before, and actions of, the Secretary of Transportation. *See* Designation of Agent for Service of Notice, Process, Orders Decisions and Requirements dated November 30, 2022, attached hereto as Exhibit A.

7.      Gulf Air has neither explicitly nor implicitly authorized me to accept or receive service of process for any other legal action, including the instant lawsuit.

8.      I swear under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 17th day of April, 2025

_____
Evelyn D. Sahr, Esq.

R- 441

# EXHIBIT A

R- 442



**U.S. Department of Transportation**
Office of the Secretary of Transportation

### DESIGNATION OF AGENT FOR
### SERVICE OF NOTICE. PROCESS. ORDERS
### DECISIONS AND REQUIREMENTS

Chief. Documentary Services Div.
Department of Transportation
Washington. D.C. 20590

ATTENTION: DOCKET SECTION. C-55

Gulf Air B.S.C. (C)

_____ , having its principal

(Name of Company. please print)

office at _____ Building 122, Road 2403, Block 224, Muharraq, Kingdom of Bahrain _____

(Address)

hereby designates. pursuant to section 46103 of Title 49 of the U.S. Code (formerly section 1005(b) of the Federal Aviation Act of 1958. as amended) the person named below as its Agent upon whom service of all notices and process, and all orders. decisions. and requirements of the Department of Transportation may be made for and on behalf of said carrier. hereby canceling all previous designations of agents made by it to the DOT.

Name of Agent ___ Evelyn Sahr _____

(Please Print)

Address ___ Eckert Seamans Cherin & Mellott, LLC
1717 Pennsylvania Avenue NW, 12th Floor
Washington, DC 20006 _____

The Agent so designated has written his name and also his initials in the following space:

Name ___ Evelyn Sahr _____ (Initials) __ EPS _____

IN WITNESS WHEREOF. ___ Gulf Air B.S.C. (C) _____ has caused these

(Name of Company)

presents to be signed in its name by ___ Captain Waleed A. Hameed AlAlawi _____. President

(Please Print)

of said company. and to be attested under its corporate seal by

___ Sara Mohamed A. Hasan _____ , ___ Board Secretary _____

(Secretary. or other Title)

on this ___ 30 TH ___ day of ___ NOVEMBER ___, 19 2022

ATTEST: Gulf Air

(Secretary. or other officer)

Gulf Air B.S.C. (C)

(Name of Company)

By: _____

(President)

OST F 1010.5 (1–95)

R- 443

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SAMIHA AYYASH, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> GULF AIR B.S.C., *et al*., <br><br> Defendants. | Case No. 1:24-cv-3434-ACR |

### [PROPOSED] ORDER

THIS MATTER comes before this Court on the Motion to Dismiss the Amended

Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(1) and 12(b)(5) filed by

Defendant Gulf Air B.S.C. (c).  Upon consideration of the parties' motions, any opposition

thereto, the arguments presented to the Court at hearing, and for good cause shown, it is

accordingly;

ORDERED that Defendant Gulf Air B.S.C. (c)'s Motion to Dismiss is GRANTED; and it

is further

ORDERED that the Amended Complaint is dismissed, with prejudice, as against

Defendant Gulf Air B.S.C. (c).

The Court directs the Clerk to send a copy of this Order to all parties and counsel of

record.

Entered: _____, 2025

_____
JUDGE ANA C. REYES

R- 444

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

| | | |
|---|---|---|
| **Samiha Ayysah, Feras Hindi,** | | |
| **Tala Josephano** | ) | **Case No.: 1:24-cv-03434-ACR** |
| | ) | |
| Plaintiffs | ) | |
| **American Airlines Inc. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendants | ) | |
| _____ | ) | |

**PLAINTIFFS FERAS HINDI, TALA JOSEPHANO, SAMIHA AYYASH JUDICIAL NOTICE IN SUPPORT OF MOTION TO RECUSE JUDGE ANA REYES**

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Evidence 201 and the Local

Rules of the United States District Court for the District of Columbia, Plaintiffs

respectfully request that the Court take judicial notice of the documents described below

(SET 1). These materials are submitted to support Plaintiffs' forthcoming motion seeking

the recusal of the Honorable Judge Ana C. Reyes, based on concerns of potential personal

bias, prejudice, and possible conflicts of interest, as reflected in the procedural history and

related records of this case.



**RECEIVED**

MAY 9 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

R- 445

**Background**

As a judge's mother once advised her:

"You are here today because you have had advantages that most people will never have. There are people who are smarter than you, who work harder than you, and who want it more than you, but who are not here because they have not had your advantages. So while I am proud of you today, know that if you do not use your law degree in some way to help disadvantaged people, I am going to be incredibly disappointed in you." In the present matter, disappointment is indeed the appropriate word. It is deeply concerning when justice appears to be selectively applied. It is troubling when an oath to serve the public may be perceived as being applied unevenly, suggesting that some litigants are deemed more deserving of fair process than others.

The record—including what appears to be inaccuracies in the transcript—reflects multiple procedural irregularities, legal misstatements, and discretionary rulings that deviate from standard judicial practice. These include efforts to prematurely dismiss the case, inconsistencies in the application of the Federal Rules and the Court's own Standing Order, and a series of comments and rulings that may give rise to an appearance of partiality or bias, particularly in interactions with the pro se litigants.

Legal scholarship and case law emphasize that inconsistent rulings—especially those that shift rationale or disregard established procedure—create unpredictability, impede the ability of parties to assert their rights, and erode judicial legitimacy. When courts' rulings

R- 446

3

are unpredictable, and their rules are confusing, it impedes these actors' ability to implement judicial policies. Moreover, inconsistency in the interpretation and application of legal doctrine reduces judicial legitimacy.

Crafting an inconsistent doctrine leaves citizens potentially less empowered to assert their rights (since they can't tell when those rights apply). See J. Brandon Duck-Mayr, Explaining Legal Inconsistency, at 5 (2021). Moreover, public confidence in the judiciary is important for good reason—including encouraging parties to resolve disputes through the courts and to abide by court rulings. See also Sara C. Benesh, Understanding Public Confidence in American Courts, 68 J. Pol. 697, 687 (2006) (asserting that people may not abide by court rulings or use courts to settle disputes without public confidence in the judiciary).

This case is not about procedural technicalities—it is about accountability. Additionally, the Court cannot fairly assess prejudice without reviewing the full procedural record, including Plaintiffs' motions and initial causes of action, rather than declining to acknowledge them. It appears that certain rulings have been influenced less by the legal merits and more by the identity of the Defendants, the Plaintiffs' background, and the weight of the Defendants' representations. This raises serious concerns about whether Plaintiffs have been afforded the same neutral, unbiased process typically expected in federal court—and whether procedural discretion has been exercised unevenly in a manner that may reflect underlying systemic disparities.

Rather than requiring correction or imposing any sanction, the Court permitted Defendant American Airlines to withdraw its filing and submit two new motions under Rules

R- 447

4

12(b)(2) and 12(b)(6)—44 days after the applicable deadlines. Their original motion to dismiss remains on the docket. This effective reset of procedural timeframes excused noncompliance and provided the Defendant with an opportunity to reframe its defense strategy, bypassing accountability under the Federal Rules. The Court did not acknowledge, let alone remedy, the recorded non compliance that resulted in prejudice to Plaintiffs.

Ignoring this context compounds the prejudice and deprives Plaintiffs of a meaningful opportunity to strengthen their original claims, which are grounded in both fact and public accountability. Procedural rules exist to protect fairness—especially when public safety, the public interest, and institutional trust are at stake.

While Defendants— billion-dollar airlines represented by a full legal team—were excused from their non compliance with basic procedural rules, Plaintiffs, acting pro se, were forced to expend significant time and financial resources preparing corrective motions, navigating case law, and managing deadlines under uncertain procedural conditions. Plaintiffs relied on informal assistance and limited public resources. This unequal application of procedural rules imposed a disproportionate burden on Plaintiffs and raises serious concerns about the fairness and neutrality of these proceedings. The resulting disparity not only undermines public confidence in the integrity of the process, but also contributes to an appearance of judicial bias.

Gulf Air B.S.C. has leveraged significant influence and resources in apparent efforts to hinder Plaintiffs' ability to secure legal representation. This was followed by the Court's on-the-record comment advising pro se Plaintiffs "not to get a lawyer and waste their

R- 448

Case 1:24-cv-03434-ACR   Document 44   Filed 05/09/25   Page 5 of 30
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 449 of 971

5

money"—a statement that raises concern given the broader context. It now appears that the Court's stated concern for Plaintiffs' financial situation may not have been the sole motivation behind this unsolicited advice, further contributing to an appearance of partiality and undermining Plaintiffs' confidence in receiving a fair opportunity to obtain relief and justice in this case.

Furthermore, the docket reflects irregularities that, in context, raise serious concerns about transparency and fairness. Plaintiffs' original filing—outlining their intent to sue DKT 31—was removed from the public docket, constituting a significant procedural anomaly. These actions, when viewed alongside the Court's handling of Plaintiffs' filings and motions, contribute to the perception that efforts have been made to suppress key aspects of the record in a manner favorable to billion-dollar, influential airlines. Plaintiffs intend to pursue a claim for Fraud Upon the Court and will be filing a formal complaint with the Department of Justice against any individuals or entities whose conduct may have compromised the integrity of these proceedings.

Plaintiffs further assert that such actions appear to have improperly advantaged American Airlines Inc. and Gulf Air B.S.C., undermined judicial impartiality, and contributed to discriminatory treatment in violation of their civil rights. This filing should be considered Plaintiffs' second formal notice of their intent to pursue a claim for Fraud Upon the Court.

### Court Filings and Docket Irregularities

**03/07/2025 – Notice of Hearing:**

 A Notice of Pre-Motion Conference was entered on the docket, scheduling a hearing for March 28, 2025, before Judge Ana C. Reyes. However, no corresponding filing or minute order is

Case 1:24-cv-03434-ACR    Document 44    Filed 05/09/25    Page 6 of 30
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 450 of 971

6

publicly visible.

**03/18/2025 – Docket Entry 31:**

Plaintiffs filed a "Notice of Intent to Sue" (Tala Josephano, Samiha Ayyash, Feras Hindi). The document is inaccessible from the docket and appears to misdirect to Docket Entry 30, which refers instead to an Emergency Motion.

**03/28/2025 – Pre-Motion Conference Held:**

A minute entry reflects that a pre-motion conference took place before Judge Reyes. The Court denied all pending motions for entry of default (Dkts. 17, 18, 19, 22, 26, and 27).

**Subsequent Minute Order:**

The Court issued a Minute Order denying several additional motions as moot without justifications, including:

– Dkt. 13: Motion for Telephone Conference (which was in fact held, as requested by Defendants); Dkt. 14: Motion for Hearing ( was ignored when filed and not addressed at the hearing ) ; Dkt. 21: Motion for Extension of Time ( Was ignored when filed and not addressed at the hearing ); Dkt. 30: Emergency Motion for Hearing ( was ignored when filed and not addressed at the hearing )

– Dkts. 34, 35, 40, and 41: Motions to Strike, which were neither acknowledged nor addressed at the hearing as they address the False certificate submitted by Defendant American Airlines and Notice of Appearance.

Gulf Air B.S.C. was properly served on January 30, 2025, and Plaintiffs were fully prepared to prove it. Rather than moving to quash service or submit a limited appearance, Gulf Air and its counsel began diluting the factual record—attempting to erase any presence or contact that might establish jurisdiction in the United States. They may wish to revisit Rule 4 of the Federal Rules

R- 450

7

of Civil Procedure claiming on record they have no presence in the U.S and later admitting they have a company and registered agent in NY.

Despite proper service, Gulf Air's attorneys waited until the last possible day to file, and did so using expired attorney certifications—demonstrating, at best, a disregard for court rules and timing and negligence in a simple preparation to defend their claim in a predicted reliance of being excused for their negligence . Specifically, attorneys Mark Johnston (who did not appear at the March 28, 2025 hearing despite the transcript stating otherwise ) and lawyer Daria Osta who filed on the last day of the deadline  Dkt. 13—a Motion for Telephone Conference and a Notice of Request to Schedule a Pre-Motion Conference—while their memberships with the U.S. District and Bankruptcy Courts for the District of Columbia were not in good standing.

A court-issued notice dated February 21, 2025—the very day Gulf Air's response was due under Rule 12(a)(1)(A)(i)—confirmed that renewal of their attorney certifications had not been received and that they were not authorized to file under the Local Civil Rules. Counsel had ample time to verify their standing before filing but failed to do so.

Gulf Air's attorneys did not complete their membership renewal with the U.S. District and Bankruptcy Courts for the District of Columbia until February 27, 2025—five days after the filing deadline under Rule 12(a)(1)(A)(i). Despite this clear procedural violation, the Court accepted their filings, including Dkt. 13, and permitted them to proceed after they served and attempted to serve Plaintiffs. According to the Court's own records, it took five days for the attorneys' certifications to be received, placing their compliance outside the permissible window.

R- 451

8

Nonetheless, the Court treated their filings as valid and timely, stating on the record that the Defendants had "**appeared**" and had "**done everything in time as they should**." The presiding Judge was aware of the attorneys' non-compliant status at the time, yet permitted the case to proceed under what she described as her own "special rules" without submitting extension—raising serious concerns about inconsistent application of procedure and the appearance of judicial partiality.

The request for an investigation into the conduct of the Clerk's Office and chamber staff (Dkts. 30 and 31) was disregarded, including a detailed account of a revealing conversation to Defendant Gulf Air B.S.C between intake staff and Plaintiff Feras which Gulf Air B.S.C confirmed in their submissions in addition to the intake advising them how to file. The Court's failure to address or acknowledge these requests effectively signaled, at minimum, approval or tolerance of the alleged improper and unlawful conduct by Clerk's Office and chambers personnel. This silence in response to credible procedural concerns further contributes to the appearance of institutional bias and erodes confidence in the Court's impartiality.

The cumulative effect of actions by intake personnel, the Clerk's Office, chamber staff, and courtroom deputies reflects more than isolated error—it reveals a troubling pattern of institutional conduct that has worked collectively to prejudice the Plaintiffs. At critical junctures, these actors appeared to operate in alignment with the interests of the Defendants, creating the appearance of a coordinated effort to obstruct Plaintiffs' access to fair process. The resulting procedural and financial harm cannot be dismissed as coincidence or oversight.

R- 452

Case 1:24-cv-03434-ACR    Document 44    Filed 05/09/25    Page 9 of 30
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 453 of 971

9

Plaintiffs' motions were not mooted—they were effectively silenced, without explanation or legal justification. The Court exercised its discretion in a manner that excluded Plaintiffs from meaningful participation, offering no rationale that would allow Plaintiffs to understand or respond. On the record, the Court stated, ***"If they didn't file on time, I don't really care. I am giving them the extra time."*** Such a statement reflects a troubling disregard for the rules of procedure, and raises the question: Why is leniency afforded to represented defendants, but not to pro se plaintiffs? Why is only one side's time valued—particularly in a publicly funded court system? Gulf Air B.S.C. was granted months beyond its filing deadline—ample time to secure necessary operating permits

By disregarding established procedural rules and excusing noncompliance without legal justification, the Court has assumed functional responsibility for enabling conduct that may carry regulatory and public safety consequences. If future incidents or regulatory failures involve these carriers, the decisions made in this matter may have direct relevance to the question of accountability. The Court's failure to even acknowledge fraud claims involving government misrepresentations—claims supported by evidence of actual harm—reflects a troubling disregard for public safety and suggests that private or institutional interests may have been placed above the public interest.

First, the Court denied Plaintiffs' motion for entry of default, relying on its own interpretation of "my local rules," despite the Defendants' failure to serve Plaintiffs within the applicable deadlines or to seek an extension based on valid cause. Under Rule 55(a), default may be entered when a party has failed to plead or otherwise defend and serve that defense—not merely based on appearance. Even if the Court viewed default as a harsh remedy, the decision to dismiss the request without engaging with the procedural

Case 1:24-cv-03434-ACR    Document 44    Filed 05/09/25    Page 10 of 30
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 454 of 971

10

violations suggests a broader intent to avoid consideration of the merits. The Court appeared to prematurely agree to  the Defendants' framing of referring to the death involved as a "heart attack," calling it an "unfortunate death," and describing the codeshare agreement as merely "a marketing logo." Additionally, the Court concluded that the events did not occur in the District of Columbia, raising serious concerns as to whether the actual claims were reviewed at all.

Second, the Court misstated applicable legal standards on the record, particularly concerning the rules of service—contradicting Federal Rules of Civil Procedure 5, 6, and 12; Local Civil Rule 5.4; and the Court's own Standing Order. These misstatements appeared to favor the Defendants' position and were cited in support of dismissing Plaintiffs' claims. Plaintiffs have attached the relevant federal and local rules to respectfully remind the Court of the applicable procedural framework.

Third, the Court relied on defective filings submitted by the Defendants in denying Plaintiffs' motions for default. It then permitted Defendants to refile multiple, segmented motions to dismiss—contrary to standard procedural norms and without consequence for their earlier noncompliance. This approach reflects an uneven application of rules and further contributes to the appearance of judicial partiality.

Fourth, the Court totally ignored then denied Plaintiff Samiha Ayyash's request for a translator, despite her limited English proficiency and the complexity of the proceedings. This denial raises serious due process concerns, as it effectively impaired her ability to meaningfully participate in her own case. Plaintiffs respectfully submit that the ability to access language assistance is fundamental to equal treatment under the law—especially for pro se litigants navigating federal

R- 454

procedure. The Court offered no accommodation or inquiry into Plaintiff Ayyash's specific language needs, further reinforcing the perception that procedural protections were selectively withheld from the Plaintiffs.

As pro se litigants, Plaintiffs—particularly Plaintiff Feras—complied with traditional service methods as permitted under the rules, and should not be presumed to have access to, or an understanding of, electronic filing systems they neither utilized nor accessed. Any characterization to the contrary misstates the record and imposes an unfair burden on unrepresented parties. This mischaracterization further underscores the procedural imbalance in these proceedings and highlights the unequal expectations applied to Plaintiffs as compared to represented parties.

The Judge appeared indifferent to the irregularities in docket management and the manner in which her chambers scheduled the hearing—actions that, taken together, suggested a coordinated effort that benefitted the Defendants. Initially, Plaintiffs gave the benefit of the doubt, believing the Judge might have been unaware of these procedural deviations, trusting that such "court irregularities" would not occur in a U.S. federal courtroom. However, it has since become clear that Judge Ana C. Reyes was not only aware of these actions, but either implicitly or explicitly endorsed them by failing to address—let alone acknowledge—Plaintiffs' related filings. This persistent inaction has only deepened the perception that the Court is not functioning as a neutral and impartial adjudicator, but is instead aligned with the interests of the Defendants.

Among other evidence of bias, during the March 28, 2025 hearing, the Court stated: **"You all** sent an email to my courtroom deputy saying that you no longer wanted to receive

R- 455

emails." See Transcript, p. 6. This statement was factually incorrect as it pertains to Plaintiff Feras and Plaintiff Samiha who never sent any such communication, never opted into or out of CM/ECF electronic service, and have never held a PACER account, nor has they emailed the Court at any point. As a distinct pro se litigant, Plaintiff Feras is unfamiliar with electronic docketing procedures and was not served—neither by the February 12, 2025 deadline nor at any later time. This misstatement by the Court, left uncorrected, further illustrates the disregard shown toward Plaintiff Feras and contributes to the appearance of judicial bias. Sending an envelope eight days after hte deadline addressed to multiple Plaintiffs with one copy is not serving. Feras wasn't notified of the Defendant filings till days after the deadline.

Moreover, the court concern of Plaintiff preferred method of serving was irregular rather than addressing the motions and requests by the Plaintiffs, the Court's comment describing Plaintiff Tala's service position in requesting service by mail as "**really quite odd"** (Transcript, p. 6) further reflects an improper shifting of blame to the Plaintiffs, while excusing the Defendants' clear failure to serve.

This mischaracterization obscured the central issue: Plaintiff Feras was never served, Plaintiff Samiha was improperly served, Plaintiff Tala was not notified till a day after the deadline due to " clerk error in turning off her notifications".  Federal Rules of Civil Procedure 12 and 5, along with Local Civil Rule 5.4, do not permit presumed or collective notice to substitute for formal, individual service. These deficiencies undermine due process and create grounds for appeal. On March 4, 2025, Defendant American Airlines Inc. admitted that it had not served any of the Plaintiffs by the required deadline, instead offering the excuse that filing documents on the docket was sufficient service—a position

R- 456

the Court later adopted. It is not. Nor is a notice and improper service issued eight days after the deadline a valid substitute for service under any applicable rule.

Defendant's notice six days after the applicable deadline, effectively shortened Plaintiffs' time to respond by 14 days—while Defendant American Airlines continued to rely on a knowingly inaccurate certificate of service to set that deadline. Judge Ana C. Reyes's standard order prohibits extensions between parties, one of many that were described on the record as part of her "unique and special" rules, compounded this imbalance. What initially caused procedural prejudice has now escalated into a structural denial of Plaintiffs' right to fair litigation. The cumulative effect of these actions has materially altered the course of this case—favoring the Defendants and rendering any meaningful opportunity for Plaintiffs to fairly present their case fairly impossible.

This was not a harmless error. The Court never verified whether Plaintiff Feras had actually received the filings at issue by the applicable deadlines. Had it done so, the record would have confirmed a clear failure of service and a violation of non-discretionary procedural rules. Instead, the Court treated this non-service as compliance and permitted the Defendant to reset its procedural posture on their terms without addressing the underlying defect. As a result, the public record now inaccurately reflects that the Defendants complied with the rules, when in fact they did not.

## Judicial Intervention and Improper Service

During the March 28, 2025 hearing, the Court improperly instructed defense counsel: ***"Can you all add mail service to your pleadings, so that our courtroom deputy doesn't have to do this?"*** (Transcript, p. 9). This directive suggests that the courtroom deputy had previously assumed a

R- 457

role in serving Plaintiffs—raising procedural concerns, as court staff are not responsible for effectuating service between parties under the Federal Rules of Civil Procedure. Moreover, this directive improperly reassigned service duties to non compliant opposing counsels, further blurring procedural responsibilities and contributing to a pattern of confusion and disadvantage for the Plaintiffs. Plaintiffs remain unaware of what "pleadings" court staff were expected to serve and question the propriety and legality of this approach under Rule 5 and Local Rule 5.4.

It is now clear to the Plaintiffs by doing so the Court intervened specifically to ensure that Plaintiffs received Defendant's filings, apparently operating under the mistaken assumption that Plaintiffs were seeking default on a technicality. In reality, Defendant refused to correct a defective certificate of service and correct the deadline time for the Plaintiffs to have the full 14 days and repeatedly assured Plaintiff Tala that all Plaintiffs had been served individually by the deadline—when in fact, Plaintiff Feras had not, and thereby lost the 14-day response period guaranteed under the Federal Rules. Defendants also submitted a late and procedurally invalid Pre-Motion Notice days after the deadline, without filing a motion to extend or offering any excusable reason. The Court nonetheless granted this request without first addressing Plaintiffs' outstanding motions, service objections, or documented irregularities in the docket.

Plaintiffs relied on this pattern—specifically the false certificate of service and the Court's failure to confirm its contents—as part of their claim of Violations of Federal Rules and laws, systemic negligence, misrepresentation, and procedural noncompliance by the Defendants. It is particularly troubling that both Defendants have admitted in filings and statements that they misunderstood basic service requirements: confusing docket filing with actual service, sending documents to the wrong email, filing with expired Attorney certificates and deliberately misleading the court that this was a joint claim despite each Plaintiff having distinct causes of

R- 458

action. Plaintiff Feras's claims differ from those of Plaintiff Tala, and Co-Plaintiff Samiha is pursuing a separate IIED action. Yet Defendants filed on the last permissible day, listed a single service address, and provided one shared copy days after the deadline required by 12(a)(1)(A)(i).

This kind of procedural carelessness might go unnoticed or be excused in litigation involving parties from industries like graphic design or advertising, where strict regulatory compliance is not central to the core of their operations. But that standard cannot apply to Defendants like American Airlines and  Defendant Gulf Air—commercial carriers whose primary business is built on compliance, public safety, federal regulation, and the public trust.

Both airlines have experienced fatal crashes, American Airlines Inc. has been sanctioned by the Department of Transportation, and face multiple complaints involving discrimination and violations of the False Claims Act with documented oversight by the FAA to American Airlines non compliance.  Gulf Air, in particular, has a documented history of operational accidents and incidents, including the recent, back-to-back deaths of two crew members on duty—one of whom was the brother of Plaintiff Samiha Ayyash mainly stems from simple non compliance. When these same entities demonstrate a pattern of procedural negligence and misrepresentation compliance in federal court—mirroring the very conduct alleged in Plaintiffs' claims—and the Court  ignores these violations, it does more than prejudice the Plaintiffs. It calls into question the integrity of the judicial process itself.

As For Gulf Air B.S.C we can start with the basics: **Rule 5(a)(1)** requires service on **every party**—not "some," not "whichever names were grouped," but **each named Party**. That

R- 459

includes Samiha Ayyash, Feras Hindi, and Tala Josephano. Only after this threshold does **Rule 5(b)** explain *how* service can be made, such as by mail. Gulf Air ignored this structure entirely. Mailing a single copy addressed to two plaintiffs does not fulfill this requirement, as each party is entitled to their own copy of the pleadings in order to respond since each Plaintiff has separate causes of actions ( NIED, IIED) and separate relief , evidence and witnesses.

Plaintiffs do not raise this service issue to dwell on a technical error, but because even this simple procedural misstep reflects the broader reality at the center of their claims. Defendant Gulf Air was informed of the need to serve each Plaintiff individually—yet it chose not to correct the mistake. That refusal to acknowledge or address a basic rule is not an isolated event; it is consistent with a pattern of minimizing responsibility and deflecting compliance, both in this litigation and in the conduct that gave rise to it. This is not about envelopes or "we caught your mistake"—it's about a Airline that resists accountability for their own negligence and non compliance with simple rules at every step, even when the remedy is simple. That behavior is exactly what Plaintiffs have alleged throughout: that Gulf Air does not follow the rules unless forced to, and often not even then.

Regardless of how the Court ultimately views the service record, Plaintiff Feras has returned the most recent envelope sent by Defendants and will no longer accept mailings jointly addressed to him and another Plaintiff. As Co-Plaintiff Samiha Ayyash is currently traveling and unavailable to personally receive documents, While Co-Plaintiff Samiha Ayyash was willing to accept constructive notice for the sake of efficiency, that willingness has changed in light of the persistent procedural unfairness and the repeated marginalization of her efforts to seek justice.

R- 460

The uneven treatment in this matter has caused her to reassess the process. As such, Plaintiff Feras Hindi respectfully declines to accept any mail on her behalf going forward.

Plaintiffs further note that, while the Court stated on record that "**we are over the deadlines"** and that Defendant filed everything they are supposed to file on time, Plaintiffs raise this not to relitigate the point, but to preserve their objection and clarify that this irregularity contributed to the procedural imbalance that has characterized the handling of this case.

Plaintiffs note that Defendant **American Airlines Inc.** has since begun serving pleadings properly, acknowledging the need for correction and respecting each Plaintiff's individual procedural rights. This stands in contrast to **Gulf Air B.S.C.**, which continues to resist basic compliance and maintains a position inconsistent with both the letter and spirit of the Federal Rules. The differing conduct between Defendants further illustrates that proper service is not only possible but expected—and that Gulf Air's approach reflects a deliberate litigation strategy accompanied with the attitude of promises of a secured outcome and certainty of being excused, not an unavoidable mistake.

Furthermore, the Court's intervention served to rehabilitate a represented defendant while burdening an unrepresented pro se litigant with fragmented, delayed, and strategically sequenced motion practice. This tactical sequencing substantially prejudiced Plaintiff by allowing Defendant to reset its litigation posture and avoid addressing its initial service and filing failures. As a result of the bifurcated motion practice, the case has been prolonged unnecessarily.

The contradiction is fatal: the Court accepted Defendant American Airlines Inc. **February 12 2025 appearance** and filings as procedurally effective for defeating default, but simultaneously allowed them to **abandon that filing** and submit **new motions** post-deadline without excuse

R- 461

18

aside from continuous lawyers' mistakes. This dual-track treatment conferred every strategic advantage to a represented defendant and imposed every procedural burden on a pro se litigant. American Airlines' original defected Notice for Pre-motion conference, and in only two lines requested to withdraw their original motion and submit new one, or move on with the motion that was filed. It is puzzling why the court would choose the withdrawal and submission of a new one, while all they had to do is serve the original one properly. Seems that the court in attempts to dismiss Plaintiffs claims wasn't satisfied with their argument in the first motion, gave them a chance to target the FAA certificate in Jurisdiction motion, which is an argument available when they filed their first motion to dismiss. Although Rule 12(g)2 addresses " new defenses" but law cases also include " new arguments" which ultimately is a defense.

If Defendant's original motion was sufficient to avoid entry of default, then it should have bound them procedurally and been treated as their operative response. But if the motion was defective and not properly served, then it should not have been considered—and default should have entered under Rule 55(a). The Court cannot treat the same filing as both valid enough to block Plaintiffs' rights and yet insufficient enough to discard in favor of a new, strategically revised motion submitted well after the deadline. That contradiction reflects more than procedural inconsistency—it signals a breakdown in neutral adjudication and the desire of the court to dismiss the Plaintiffs claims which explains why the court advised the Plaintiffs not to retain legal representations. It's easier to dismiss Pro Se Plaintiffs claims without a lawyer objecting.

R- 462

**How many inexcusable mistakes can be excused under the court's discretion ?**

"If a simple mistake made by counsel were to excuse an untimely filing, it would be hard to fathom the kind of neglect that we would not deem excusable." See *Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996). The court further warned that "[i]f the court allows litigants to continually ignore deadlines and seek never-ending extensions without consequence, soon the court's scheduling orders would become meaningless." *Id.* Similarly, in *Cobell v. Norton*, 213 F.R.D. 42, 42–43 (D.D.C. 2003), the court noted that "[i]t is only fair to require all parties to the present case to comply with the Federal Rules of Civil Procedure and Local Rules."

If the Court has concluded that Defendant American Airlines "filed everything on time and as they should have," -which they didn't- then there is no legal basis for permitting them to submit a **new two** motions to dismiss. A party that has already filed a motion under Rule 12 and is deemed  by the court ( "they appeared under the Judge's local rules to have complied procedurally _should not be allowed to file a second, revised version of that same motion raising new arguments.

If the Court intended to reach the merits of the case—which, respectfully, it clearly has no intentions—the proper course would have been to require Defendant American Airlines to serve its original February 12, 2025 motion in compliance with Rule 5. Instead, the Court permitted Defendant to withdraw and replace that motion after gaining insight into the defenses raised by Gulf Air and the positions advanced by Plaintiffs. In doing so, the Court effectively conferred the benefit of a timely filing while also granting Defendant a second opportunity to reframe its arguments—as though the original motion had never been filed.

R- 463

This approach not only contradicts the Court's own statements that Defendant "complied with procedural requirements," but also prejudices the Plaintiffs by enabling delay and allowing piecemeal litigation. That prejudice has not been limited to litigation strategy—it has imposed real stress, uncertainty,  out-of-pocket financial costs on pro se Plaintiffs and mainly the loss of the trust in the Checks and balances and the justice system.

### JOSEPHANO v. AMERICAN AIRLINES INC., 1:25-cv-00753, (D.D.C.)

In the March 28 2025 hearing, the judge in hostility attitude to Plaintiff Tala specifically for unknown reason, attempted to serve the Defendant counsel on behalf of Plaintiff Tala on a different case (1:25-cv-00753) that Plaintiff has filed against Defendant American Airlines Inc. and their counsel for misrepresentation of compliance in a basic, simple service procedure, this court seems to not understand the type of damage that Plaintiff Tala had to encounter due to Defendant's actions which went beyond litigations delay and uncertainty. It is clear that The registering of the case on the dockets and  routing and the way the second case was handled by the Clerks are another indicator of the influence displayed by the court. Despite filing the case in person the delays and reassigning was deliberate and not procedural.

At one point, the judge told the Defendant, "**We will** get this taken care of **as well**." That statement demands clarification: who is "we"? It did not appear to refer to justice, the rule of law, or an impartial process. If "we" meant the Judge's chambers, staff, or the clerk's office, it only reinforces the troubling impression that the hearing—and indeed the entire handling of this case—has functioned as a coordinated effort to serve the interests of the Defendants from the moment it was filed. From the clerks to the chamber and ultimately

R- 464

Case 1:24-cv-03434-ACR    Document 44    Filed 05/09/25    Page 21 of 30
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 465 of 971

21

the bench, the process has felt less like a neutral proceeding and more like a full-service defense operation. The hearing was simply staged with indications the Judge had communications with the Defendants while Plaintiffs were not included. Did the court read the case prior to determining it has no merits? That is not what the Transcript reveals.

It is difficult to reconcile how the Court could find merit in a subsequent case involving misrepresentation of a Certificate of Service that went unacknowledged in this one, while having previously ignored or dismissed those same issues when raised in this case. If the second case is deemed to have merit, it necessarily implies that the Judge either erred in this case or knowingly disregarded clear instances of misrepresentation by the Defendants. This inconsistency raises serious concerns about the fairness and integrity of the proceedings, suggesting bias in favor of the Defendants and a failure to apply the law equally.

**The Defendant's counsel's statement of " Presence"  March 28 2025 Hearing**

It is hard to understand how the judge doesn't think American Airlines have a presence in DC. The judge's focus on Place of incorporation, Jurisdiction ignoring other rules and statutes that can prove personal jurisdiction. Defendant American Airlines Inc. initially claimed it had no presence in the District of Columbia. Plaintiffs could have demonstrated otherwise. Plaintiffs were also entitled to jurisdictional discovery and to amend their claims, including to name the parent company, American Airlines Group Inc., if necessary. However, after repeated procedural irregularities, delays, and unexplained inconsistencies in docketing and the Judge clear stance and dismissal intentions, Plaintiffs are no longer confident that their filings are being entered as submitted. At minimum, filings appear to

R- 465

Case 1:24-cv-03434-ACR    Document 44    Filed 05/09/25    Page 22 of 30
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 466 of 971

22

be delayed or selectively posted, and Plaintiffs have received no confirmation or transparency regarding their handling.

It is difficult to comprehend why the relief Plaintiffs seek—focused primarily on securing correction, protection, and accountability - over $500 Million Dollars to Federal Programs and to the Public-  mainly for the citizens of the District of Columbia that Plaintiffs are not included in —has been met with such persistent resistance. The presiding Judge has not only demonstrated an eagerness to dismiss the case but has, at times, appeared to advocate for the Defendants as their Defense lawyer rather than maintain judicial impartiality.

### Accusations Of Harassment

Defendant American Airlines' counsel is fully capable of advocating for himself if he believes he has experienced "harassment" from a  pro se litigant who has, in fact, communicated with him civilly—albeit assertively, given the significant imbalance of power between the parties. Plaintiff has never harassed Defendant's counsel. The Judge had no evidence or reasonable cause to conclude otherwise. During the March 28, 2025 hearing, when Plaintiff Tala stated her intent to file a police report regarding Defendant's misconduct, the Judge responded by warning that she had "all the power in the world to impose [sanctions]." This statement, combined with the Court's repeated dismissal of procedural concerns and the denial of Plaintiffs' right to fairly litigate their claims, created not only an **appearance of intimidation** but also raised serious concerns that the Judge was attempting to use her judicial authority to dissuade Plaintiffs from pursuing valid claims against American Airlines Inc. The Judge's statement that Plaintiffs "will not get anywhere" contributed to the perception that the outcome was predetermined and that

R- 466

further efforts would be futile. This left Plaintiffs with serious doubt about their ability to receive a fair and impartial hearing in this courtroom.

When the Court stated that filing a police report "will not get you anywhere," it was not in response to any objection or argument raised by the Defendant. From Plaintiffs' perspective, this unsolicited comment appeared to dismiss a lawful course of action and, unintentionally, to preemptively defend the Defendant's position before it was even stated. Plaintiffs raise this not as a criticism of the Court's intent, but to express concern that such remarks contribute to the perception that the proceeding is no longer neutral.

Furthermore, If the Court is concerned about Gulf Air B.S.C.'s claims of feeling "harassed," such concerns are entirely unfounded. In contrast, Gulf Air's own conduct—including sending a man armed with a stick to intimidate Plaintiff Tala at the doors of a court in Bangladesh to prevent her from filing a claim against them, dispatching individuals to threaten her if she continued to hold press conferences, and other acts of intimidation and actual delaying litigations avoiding accountability—demonstrates a clear pattern of harassment and misconduct. This is further compounded by Gulf Air B.S.C. illegal surveillance activities targeting a U.S. citizen on U.S. soil, regardless of whether such actions have received personal or governmental approval which are now appearing more that it's based on personal interest. Plaintiff initially sought justice and protection from this Court; tragically, she now finds herself seeking protection *from* the Court itself.  Similarly, Gulf Air B.S.C. was reportedly under audit by the U.S. Department of Transportation (DOT), and the manipulation of this docket may have impeded the DOT and FAA's ability to conduct a fair and informed review. Gulf Air has now been granted a permit to operate flights to the U.S., using its influence to deceive the public—a deception that, alarmingly, now appears to be supported by the Court itself.

R- 467

Case 1:24-cv-03434-ACR    Document 44    Filed 05/09/25    Page 24 of 30
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 468 of 971

24

**Recusal Pursuant to 28 U.S.C. § 455(a) Appearance of Bias and Lack of Judicial Impartiality**

At first, the conduct in this case appeared to reflect a form of judicial overreach—perhaps even a misuse of authority under enforcing procedural discretion. The phrase "they appeared under **my** local rules" raises an important question: Is there such a thing as a judge's *own* local rules that extends 12(a)(1)(A)(i) eight days without an excuse? Are there different rules apart from those formally adopted by the district and applicable to all parties equally? This kind of discretionary framing, especially when inconsistently applied, contributes to a clear bias and unequal treatment.

Furthermore, the comment, "In American law…" was both unnecessary and patronizing, implying that Plaintiffs are foreigners unfamiliar with the U.S. legal system—an assumption that is both incorrect and inappropriate. Plaintiff Feras has lived in the United States since the age of 11 and attended military school in Virginia. Plaintiff Tala passed the Army and National Guard qualification exams in her effort to serve her new home country. Such remarks reflect, at a minimum, an **appearance of bias or "minority power" dynamics**, seemingly intended to diminish and patronize the Plaintiffs while favoring powerful entities like American Airlines and Gulf Air B.S.C. Plaintiffs have followed and respected the law in this process to a degree that, frankly, surpasses what was witnessed in this courtroom. Patronizing discriminatory remarks have no place in a federal proceeding and only serve to undermine confidence in the fairness of the process.

Plaintiffs' claims arise from a pattern of regulatory noncompliance, misrepresentation, and procedural misconduct—allegations directly mirrored by Defendants' litigation conduct in this

R- 468

Case 1:24-cv-03434-ACR    Document 44    Filed 05/09/25    Page 25 of 30
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 469 of 971

25

case. Since February 12, 2025, Defendant has failed to comply with the most basic federal procedural obligations. While the Court excused these failures as procedural missteps, they are substantively relevant. They demonstrate a continuing disregard for both federal rules and the very regulatory frameworks at issue in Plaintiffs' claims.

The Court cannot, as a matter of law or fairness, isolate Defendant's litigation conduct from the broader allegations of misconduct in the case. To do so would improperly shield behavior that is both procedurally defective and evidentiary in nature. When a party accused of regulatory abuse engages in parallel procedural abuse, that pattern becomes probative—not dismissible. It strengthens the Plaintiffs' claims of showing the pattern of misrepresentation of compliance that is awarded due to influence and power by billion dollar companies.

The Court's failure to acknowledge this context further compounds the pattern of procedural errors and creates evidence that exceeds the appearance of bias that deprives Plaintiffs of a fair opportunity to present claims grounded in both fact and experience. Recusal is therefore necessary, not only to address the ongoing lack of impartiality, but also to preserve the evidentiary integrity and fairness of these proceedings in favor of equal Justice.

## Recusal Pursuant to 28 U.S.C. § 455(b): Potential Conflict of Interest and Personal Involvement

Plaintiffs must raise a serious concern regarding a potential conflict of interest. American Airlines Inc. is not only a leading member of Airlines for America (A4A) based in Washington D.C, but its Chief Executive Officer also serves on A4A's Board of Directors, providing direct leadership and influence over the association's activities. A4A has actively participated in regulatory matters before the FAA and DOT, including filings related to pilot working hours and

R- 469

Case 1:24-cv-03434-ACR    Document 44    Filed 05/09/25    Page 26 of 30
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 470 of 971

26

standards and views of safety in regards of IASA—issues that overlap with the claims Plaintiffs have raised concerning airline safety, compliance, and negligence and their purpose in protecting the Public.

Judge Ana Reyes, appointed as Federal Judge in February **2023**, served as a partner and member of the Executive Committee at Williams & Connolly LLP from **2001-2023** . Given these associations, there is a direct line between the Defendants in this case specifically American Airlines, the airline industry's primary lobbying organization, and the Judge's former law firm. This connection accompanied with stated factors, presents not only a **potential conflict of interest**, but also creates a strong **appearance of impropriety**. Under 28 U.S.C. § 455, a reasonable person would question the Judge's impartiality in this case, particularly in light of the procedural irregularities already documented in the record. The Judge's 22-year tenure with possible retirement plan at a law firm that have a direct "or indirect" stake in the outcome of this case reasonably raises concerns of alignment—particularly given the differential posture toward noncompliant Defendants, the dismissive hostile tone toward pro se Plaintiffs and determination of dismissal Plaintiff's Tala second case against American Airlines and their counsel.

For these reasons, recusal is necessary to preserve fairness and public confidence in the judicial process. Plaintiff Tala respectfully advises Defendants' counsel to review applicable regulatory dockets and publicly available news articles before opposing this notice. Plaintiffs were fully prepared to establish jurisdiction; however, the presiding Judge's apparent eagerness to dismiss the case on jurisdictional grounds—regardless of any evidence that might be presented—demonstrates that the possibility of receiving a fair trial has effectively vanished from this courtroom. Before proceeding with a formal motion to recuse Judge Ana C. Reyes, Plaintiffs respectfully request that the Court reconsider its current posture and that Judge Reyes

voluntarily recuse herself from further handling of this matter. If voluntary recusal is declined, Plaintiffs will be compelled to prepare and file a formal motion to recuse that exceeds 40 pages with very extensive evidence and requirement in Discovery as needed , along with a potential motion to stay, motion for extension, while filing an appeal. These efforts will not only further strain judicial efficiency and public resources, but will impose additional procedural and financial burdens on Plaintiffs—burdens that may ultimately give rise to additional claims should the pattern of harm continue.

Plaintiffs can and will  no longer accept assignment to a single judge given the extensive and improper influence the Defendants have demonstrated within this Court, as well as the harassment Plaintiffs have experienced outside the courtroom. Plaintiff will require an investigation before this case is assigned to another judge chosen by the current staff handling this case.  Additionally, Plaintiffs were never provided the opportunity to consent to or decline the assignment of a magistrate judge, further infringing upon their procedural rights. The irregular routing of this case raises serious concerns that such assignments may have been intentionally manipulated and directed to this courtroom.

Since the court has entertained these acts and is refusing to order investigation, Plaintiffs affirm that they will pursue all available legal avenues  against any individuals or entities who have violated their rights—including their constitutional rights—and will hold accountable those who have misused taxpayer-funded judicial resources to deprive pro se litigants of full and fair access to justice. Despite the Judge's warning that she "has all the power in the world to impose sanctions" should Plaintiff file a police report, Plaintiffs respectfully assert that **the law and the Constitution stand above the authority of any individual judge or clerk**, both of whom are entrusted to serve the public—not to suppress lawful claims or shield biased conduct.

R- 471

## I. HEARING / RULES / CASES / JUDGE

**Exhibit 1:**
 Transcript of the hearing held March 28, 2025, concerning American Airlines.

**Exhibit 2:**
Motion to Dismiss filed by American Airlines on February 12, 2025, containing a defective and false Certificate of Service.

**Exhibit 3:**
 Case Information: *Josephano v. American Airlines*, Case No. 1:25-cv-00753.

**Exhibit 4:**
Federal Rules cited Rule 4; Rule 5; Rule 6; Rule 12

**Exhibit 5:**
 2021 Amendment to Local Rule 5.4.

**Exhibit 6:**
Department of Transportation (DOT) Order for Audit of codeshare partners and required certificate submissions.

**Exhibit 7:**
DOT Application submitted by American Airlines and Eckert Seamans Cherin & Mellott, LLC (counsel for Gulf Air B.S.C.), demonstrating both parties' knowledge of American Airlines offices in Washington, D.C., concerning codeshare operations. Despite this, both lawyers stated on the record that their clients had no presence in the U.S.A.

**Exhibit 8:**
 Evidence of Gulf Air B.S.C.'s incorporation in New York.

**Exhibit 9:**
Gulf Air Captain's Exhibits supporting the claim of "no presence" in the U.S.A.

**Exhibit 10:**
Airlines for America publication: "Who We Are."

**Exhibit 11:**
Case Manager Notice Filing Docket (DKT) by Plaintiffs.

**Exhibit 12:**
Judge Ana Reyes' Standing Order.

R- 472

Submitted by Pro Se Plaintiffs


May 9 2025


**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980


Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955


**Samiha Ayyash**

7823 New London Dr.
Springfield VA 22153
703-623-3767


R- 473

30

## CERTIFICATE OF SERVICE

I hereby certify that on May 9 2025, Plaintiff Feras Hindi  and Plaintiff Tala will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Judicial Notice & Exhibits

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Service Processor ABC Legal service

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark  **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Service Processor ABC Legal service

May 9 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash

7823 New London Dr.
Springfield VA 22153
703-980-6955

R- 474

Case 1:24-cv-03434-ACR   Document 45   Filed 05/13/25   Page 1 of 10
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 475 of 971

1

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

### Civil Division

**Samiha Ayysah, Feras Hindi,**

**Tala Josephano**                                    )                    **Case No.:  1:24-cv-03434-ACR**

                                                      )

Plaintiffs                                            )

**American Airlines Inc. ,**                          )

**Gulf Air B.S.C**                                    )

Defendants                                            )

_____          )

## PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO RESPOND TO

## DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Plaintiffs Samiha Ayyash, Feras Hindi, and Tala Josephano, respectfully submit this Motion for

Extension of Time to respond to the Motion to Dismiss for Lack of Personal Jurisdiction filed by

Defendants American Airlines, Inc. and Gulf Air B.S.C. This motion is brought pursuant to Rule

6(b)(1)(A) of the Federal Rules of Civil Procedure.

Plaintiffs are seeking legal assistance concerning this matter, due to time limitations and

circumstances beyond their control, Plaintiffs have not had the opportunity to adequately consult

or retain an attorney and for this reason requests the extension of time to respond to the Motion

to Dismiss for Lack of Jurisdictions.  Plaintiffs are making every effort to obtain legal

representation but have encountered obstacles beyond their control that have delayed the process.

**RECEIVED**

MAY 13 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia



R- 475

**LEGAL BASIS**

Rule 6(b) states, in relevant part: (b) Extending Time. (1) In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect. Fed. R. Civ. P. 6(b).  This motion is made before the expiration of any deadlines, in compliance with Rule 6(b)(1)(A).

**ARGUMENT**

Plaintiffs request thirty (30) days, whereby Plaintiffs would have until June 12, 2025 to respond. In support of this Motion, Plaintiffs state:

1. Moving Pro Se Plaintiffs filed their amended claim on December 31 2024 and it was properly served on both Defendants. Defendant American Airlines Inc. deadline was February 12 2025, Gulf Air B.S.C deadline to answer February 20 2025.

2. On the final day of the response deadline, Defendant American Airlines Inc. filed a motion to dismiss, which was subsequently withdrawn. On the same final day, Defendant Gulf Air B.S.C. filed a request for a pre-motion conference. The Court granted the request and held a hearing on March 28, 2025.

3. During the hearing, the Court ordered Defendants to file their motion to dismiss in two parts: (1) a motion to dismiss for lack of personal jurisdiction, followed by (2) a motion to dismiss for failure to state a claim. The first motion was due by April 17, 2025; Plaintiffs' response is due by May 17, 2025, and Defendants' reply is due by June 6,

R- 476

Case 1:24-cv-03434-ACR    Document 45    Filed 05/13/25    Page 3 of 10
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 477 of 971

3

2025. Both Defendants submitted extensive motions that will require more time from Pro Se Plaintiffs to address, investigate and write.

4. An extension of time is necessary as Plaintiffs are still in the process of reviewing and investigating the legal and factual assertions raised in Defendants' Motion to Dismiss and during the March 28, 2025 hearing—particularly the claim by American Airlines Inc. and Gulf Air B.S.C. that they have no presence or contacts related to Plaintiffs' claims in the United States or the District of Columbia. Plaintiffs disagree.

5. Plaintiffs further request this extension in light of their pro se status and the significant demands placed on Plaintiff Tala, who is assisting her co-Plaintiffs in drafting their legal filings. In this case alone, Plaintiff Tala has been assisting in drafting responses to six Motions to Dismiss for Lack of Personal Jurisdiction, which will be followed by six additional Motions to Dismiss for Failure to State a Claim, as well as any potential motions for jurisdictional discovery and mainly to amend the complaint if needed. These efforts are in addition to her responsibilities in other legal matters pending in both federal and state courts.

6. Plaintiffs have been actively attempting to retain legal counsel; however, this has proven challenging due to circumstances beyond their control. These include alleged persistent harassment and intimidation by Gulf Air B.S.C., which Plaintiffs believe are intended to pressure them into dropping the case. Plaintiffs note that counsel for Gulf Air B.S.C. may **not** be aware of the conduct allegedly engaged in by their client.

7. Plaintiffs have attempted to file a police report concerning alleged harassment by Defendant Gulf Air B.S.C., but were unable to do so—not due to a lack of evidence, but were unable to proceed due to circumstances that Plaintiffs believe impeded the process.

R- 477

Case 1:24-cv-03434-ACR    Document 45    Filed 05/13/25    Page 4 of 10
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 478 of 971

4

8. Plaintiff Tala has experienced what she believes to be unlawful monitoring of her phone and digital communications, along with targeted harassment. Plaintiffs believe these actions are part of a broader effort to intimidate them and pressure them into abandoning their claims. Plaintiff Tala is prepared to submit a sworn declaration attesting to these experiences, should the Court require or permit it.

9. Plaintiffs previously raised concerns regarding this harassment in filings before the Court, seeking appropriate judicial protection through prior motions (Dkt. 30, Dkt. 31)

10. Gulf Air B.S.C. is reportedly finalizing regulatory approval to begin operations in the United States, and American Airlines Inc. is currently the subject of multiple legal challenges and public scrutiny,Plaintiffs respectfully assert that these proceedings implicate serious public interest considerations.

11. Gulf Air B.S.C. is reportedly finalizing regulatory approval to begin operations in the United States, and American Airlines Inc. is currently facing multiple legal challenges and increased public scrutiny—including allegations of systemic noncompliance and discriminatory practices. Among these is a widely reported legal case involving American Airlines' flight attendant recording teenage girls in an aircraft lavatory. Plaintiffs believe that this case adds to the growing legal and reputational pressures facing Defendants, and that it has been met with significant resistance due to its timing and potential to further impact Defendants' business interests.

12. Plaintiff Samiha Ayyash is currently traveling and will be returning home to Virginia next month. While traveling, formally retaining a U.S.-based federal attorney presents significant logistical challenges. Given her current limited mobility condition, these steps are difficult, if not impossible for her to complete at this time. Plaintiff Samiha showed

Case 1:24-cv-03434-ACR    Document 45    Filed 05/13/25    Page 5 of 10
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 479 of 971

5

good faith in participating in this case and will continue to do so and participate as Pro Se until a lawyer is formally retained

13. Plaintiffs respectfully request a thirty (30) day extension of time to respond to Defendants Motion to Dismiss, up through and including June 12, 2025.

14. Enlargements of time are permitted with good cause by Federal Rule of Civil Procedure 6(b). Respectfully, such enlargements of time should be liberally granted absent a showing of bad faith or undue prejudice.

15. Given these circumstances, good cause exists under Federal Rule of Civil Procedure 6(b)(1)(A) for the requested enlargement of time, and Defendants will not be prejudiced by this brief delay.

**Conferring with Opposing Counsel**

Defendants never reached out to confer about any of their filings, or informal extensions or amendments. In contrast, Plaintiffs showed good faith by contacting American Airlines' counsel in regard to this motion and in waiving service between them which they agreed to. Initially, Plaintiffs intended to file two separate motions for extension of time—one addressing Defendant American Airlines Inc., and a second addressing Defendant Gulf Air B.S.C.

In that context, American Airlines's counsel showed acceptance and, at his request, Plaintiff Tala sent counsel for American Airlines a draft motion limited to that Defendant only. The draft was a brief and straightforward request, stating in substance: *"Plaintiffs are seeking legal assistance in this matter; however, due to time constraints and circumstances beyond their control, they have not had an adequate opportunity to consult with or retain counsel."* Counsel for American

R- 479

Case 1:24-cv-03434-ACR    Document 45    Filed 05/13/25    Page 6 of 10
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 480 of 971

6

Airlines Inc. did not respond to the draft, possibly due to his workload and due to limited notice or scheduling constraints.

After further research, Plaintiffs have determined that it is procedurally acceptable and more efficient to file a single combined motion addressing both Defendants. Accordingly, the instant motion consolidates Plaintiffs' request for additional time to respond to the motions filed by both American Airlines Inc. and Gulf Air B.S.C., and includes additional context and grounds not previously shared with counsel for American Airlines Inc as it is related to Defendant Gulf Air B.S.C

With respect to Defendant Gulf Air B.S.C., Plaintiffs respectfully submit that their prior efforts to communicate with Defendant have been met with challenges that have made civil and productive dialogue difficult. Plaintiffs initially have made good-faith efforts to engage, but perceived the responses as lacking good faith and not conducive to meaningful discussion. Based on these prior experiences, and out of concern for maintaining the integrity and focus of these proceedings, Plaintiffs concluded that additional outreach to confer regarding this motion would likely not be effective at this time. Therefore, Plaintiffs did not contact Gulf Air B.S.C. in connection with this request for an extension.

Due to the Court's prior decisions not to address Plaintiffs' expressed concerns regarding harassment, Plaintiff Tala has independently notified both counsel for Gulf Air B.S.C. and the Defendant itself of the continued conduct that Plaintiffs believe has impacted their ability to litigate without fear or interference. At this point, Plaintiffs feel intimidated, threatened, and increasingly concerned for their personal safety, based on sustained experiences they attribute to a pattern of harassment. These concerns are not hypothetical but stem from repeated incidents

R- 480

Case 1:24-cv-03434-ACR   Document 45   Filed 05/13/25   Page 7 of 10
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 481 of 971

7

that have materially affected Plaintiffs' sense of security. Plaintiffs are prepared to submit a sworn declaration attesting to these experiences, should the Court request or permit such a submission.

Plaintiffs also acknowledge that it may be difficult for a state-owned foreign entity to reconcile being challenged by individuals of limited means—particularly self-represented individuals of limited means asserting their legal rights within the U.S. judicial system. Nonetheless, Plaintiffs are American citizens and residents entitled to the full protection of U.S. law, including equal access to the courts. While such a legal confrontation may not have been possible in other jurisdictions, this case is properly before a U.S. federal court, governed by the rule of law and constitutional guarantees.

Despite these challenges, Plaintiffs remain committed to litigating this case on the merits, and doing so in full compliance with the law and applicable procedural rules. Plaintiffs acknowledge that their approach may appear overly cautious, but emphasize that this is a reflection of prior litigation history with Defendant Gulf Air B.S.C., and a necessary safeguard to preserve their rights.

*"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."*

*— U.S. Const. amend. XIV, § 1*

R- 481

Case 1:24-cv-03434-ACR    Document 45    Filed 05/13/25    Page 8 of 10
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 482 of 971

8

The Fourteenth Amendment to the United States Constitution guarantees all persons the right to equal protection under the law, freedom from discrimination, and protection from the deprivation of life, liberty, or property without due process of law. It also ensures the right to a fair trial and meaningful access to the courts. Plaintiffs are entitled to these constitutional protections, including the right to seek redress, to be free from discriminatory treatment, and to pursue life, liberty, and happiness within a system governed by the rule of law.

**<u>Conclusion</u>**

WHEREFORE, Plaintiffs respectfully request the Court to enter an Order granting the extension of time for Plaintiffs to respond to Defendants' Motion to Dismiss for lack of personal Jurisdiction, up to and including June 12, 2025. Plaintiffs' circumstances present good faith reasons for an extension and they are actively putting efforts to retain counsel. Granting this motion will ensure fairness and protect Plaintiffs' due process rights, while causing no undue harm to Defendants.

Submitted May 12 2025

By Pro Se Plaintiffs

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

R- 482

Case 1:24-cv-03434-ACR    Document 45    Filed 05/13/25    Page 9 of 10
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 483 of 971

9

*F.H*

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955


*S.A*

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767

R- 483

## CERTIFICATE OF SERVICE

I hereby certify that on May 13 2025, Plaintiffs will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Motion to Enlarge ( extend ) time

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . USPC Mail

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark  **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: USPC Mail


Submitted,

May 13 2025

**Pro Se Plaintiffs**

*F.H*

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

*Tej*

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

*S.A*

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767

R- 484

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

**Civil Division**

| | | |
|---|---|---|
| **Samiha Ayysah, Feras Hindi,** | | |
| **Tala Josephano** | ) | **Case No.:  1:24-cv-03434-ACR** |
| | ) | |
| Plaintiffs | ) | |
| **American Airlines Inc. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendants | ) | |
| _____ | ) | |

**PLAINTIFF TALA JOSEPHANO'S EMERGENCY MOTION FOR PROTECTIVE ORDER AND REQUEST FOR IN CAMERA HEARING DUE TO HARASSMENT AND SAFETY THREATS BY DEFENDANT GULF AIR, THE JORDANIAN GOVERNMENT ON BEHALF OF KING ABDULLAH, PRINCE SULEIMAN THE REAL OWNER OF GULF AIR B.S.C, AND INDIVIDUALS ASSISTING THEM WITHIN THE U.S. GOVERNMENT**

Plaintiff Tala Josephano respectfully submits this emergency motion seeking immediate protective relief from the Court in response to escalating threats, intimidation, and harassment directed at her by Defendant Gulf Air B.S.C. (c), the Jordanian government and individuals ( foreign & domestic) believed to be acting in concert with them within the United States government. These actions are not speculative; Plaintiff has been subjected to a sustained pattern of coercion and interference specifically intended to deter, silence, and obstruct her lawful pursuit of claims before this Court. This has now exceeded Civil and Human rights violations and they have taken it an extra step.

**RECEIVED**

MAY 27 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

R- 485

USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 486 of 971

When Defendant Gulf Air submitted the declaration purportedly from Captain Qasim, there were immediate concerns regarding its authenticity, as the signature on the declaration appears in two different ink colors, raising questions as to whether Captain Qasim even personally executed the document. Gulf Air B.S.C possibly doesn't know that Plaintiff Tala knows Captain Qasim as he was her brother's friend and superior. Plaintiffs will details the perjury committed in their motion to STRIKE his declaration and Exhibits under the court inherent authority for violating court orders and Federal Rules

 Gulf Air became aware that Plaintiff Tala Josephano possesses evidence including evidence directly contradicting the declaration and demonstrating that Gulf Air intentionally submitted an outdated employment contract for Captain Mohannad Alhindi. Since that time, Plaintiff Tala has been diligently preparing a motion to strike the declaration. However, she has been subjected to ongoing harassment and intimidation by Gulf Air, which appears calculated to distract and deter her from timely submitting this critical motion to the Court. This harassment is approved by somebody in the American Government

Plaintiff Tala now faces credible and serious safety concerns, as well as persistent pressure designed to compel them to withdraw their filings, refrain from seeking judicial remedies, and abandon their case entirely. Such conduct constitutes an abuse of power that exceeds the permissible bounds of adversarial civil litigation and rises to the level of unlawful intimidation and extrajudicial retaliation.

It is not uncommon for foreign governments, such as those of Bahrain and Jordan, to exert significant influence in order to control the narrative and limit public scrutiny of their corrupted actions. Plaintiffs are concerned that these governments are attempting to leverage their resources and connections to impede the fair administration of justice in the United States. Such

R- 486

conduct, if proven, undermines the integrity of the U.S. legal system—a system built on principles of transparency, accountability, and the rule of law, which stands in contrast to less transparent or accountable practices elsewhere. Plaintiffs respectfully urge the Court to remain vigilant against any attempts to improperly influence these proceedings or to import corrupt practices into the American judicial process.

Plaintiff Tala has previously asked this Court for help regarding the harassment and threats she continues to face. Her requests have not been addressed, and the silence is deeply concerning. It is especially difficult to reconcile this with the background of the presiding Judge, who is known to have come to the United States in pursuit of a safer, more just and better life—just as Plaintiff Tala has. That a woman in Plaintiff's position, facing real danger, has been left without protection by a Court led by someone who shares that immigrant experience and helps women is not only surprising, but deeply disappointing.  Plaintiff Tala has filed multiple complaints, but the orders to ignore are coming from high above power to portray Plaintiff Tala as the threat not the other way around.

The Court should not dismiss these concerns as mere exaggeration. Plaintiff Tala Josephano comes from an intelligence background and is acutely aware that the tactics being employed—while they may seem implausible or far-fetched to those unfamiliar with such environments—are, in fact, consistent with the methods used by authoritarian governments. For individuals outside the intelligence sector, these actions may resemble scenarios from fiction; however, for those who have lived under and interacted with such regimes, these threats and tactics are all too real. Plaintiff respectfully urges the Court to consider her experience and expertise in evaluating the seriousness and credibility of these allegations.

R- 487

Case 1:24-cv-03434-ACR    Document 46    Filed 05/27/25    Page 4 of 8
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 488 of 971

4

The tragic fate of whistleblowers such as John Barnett—who faced relentless pressure and ultimately died or professionally " slowly" killed while seeking accountability from Boeing and the murder of Jamal Khashoggi, who was targeted for exposing government misconduct, serve as stark reminders of the risks faced by individuals who pursue justice or defend the rights of others. Plaintiff Tala Josephano asserts that Jordan and Gulf Air's ongoing campaign of intimidation and harassment seeks to silence her in a similar manner. However, any attempt to make Plaintiff Tala "a second John Barnett" will not succeed; efforts to destabilize her, including alleged interference with her food and medication, will not deter her pursuit of the truth.

Plaintiff Tala has repeatedly criticized the governments of Jordan and Bahrain on social media—calling out, among other things, the Jordanian King's alleged theft of U.S. aid and exposing corruption within both regimes and the Bahrain Government for falsifying compliance on DOT applications. She further notes the close relationship between Bahrain and Jordan, including the employment of Jordanian personnel in Bahrain's intelligence and police services and their recruitment of Jordanian pilots and executives for Gulf Air. Plaintiff Tala urges the Court to recognize the seriousness of these threats and to ensure that her efforts to seek justice are not undermined by the same tactics that have silenced others.

The court should have considered previous submission by Plaintiff Tala. Plaintiff Tala stands ready to present tangible evidence of the ongoing harassment, including the identities of individuals involved in what has been described as a coordinated surveillance effort targeting Plaintiff Tala. This operation was allegedly initiated by the Jordanian government through British intermediaries and carried out with the assistance or acquiescence of individuals within the United States government influenced by those foreign interests.

R- 488

Plaintiffs are in the process of preparing and submitting several critical motions that Defendant Gulf Air B.S.C. has sought to obstruct, including: a Motion to Amend the Complaint; a Motion to Strike the Declaration and Employment Contract submitted in support of Defendant's Motion to Dismiss; a Motion to Strike portions of the Motion to Dismiss and a detailed Opposition establishing jurisdiction under Rule 4(k), the D.C. Long-Arm Statute, and Due Process; a Motion for Sanctions; a Motion for Jurisdictional Discovery as to both Defendant American Airlines and Gulf Air B.S.C.; a Motion for Sanctions against Gulf Air B.S.C. 's counsel for submitting unverified and misrepresented exhibits; and the main one Motion for Referral to the United States Attorney for Criminal Investigation of Perjury. Defendant Gulf Air B.S.C is aware of these filings being prepared and they are doing their best to stop them.

Plaintiff Tala Josephano has not yet filed any claims for personal emotional damages arising from the continuous and intentional harm inflicted by Gulf Air, nor for abuse of process or civil conspiracy involving American Airlines Inc. and the FAA. The FAA has been formally notified of Plaintiffs' intent to pursue legal action, as its conduct has resulted in substantial and ongoing injury to Plaintiff after all failure attempts for an administrative solution. The FAA acted as Gulf Air B.S.C and American Airlines Inc. Defender in order to cover up for their oversight. Plaintiffs with court orders from Bangladesh to the FAA and multiple complaints formal and informal, the only way to get the FAA to reply to safety threats was by contacting their lawyer on Linkedin and threatening with Public exposure.

R- 489

Case 1:24-cv-03434-ACR    Document 46    Filed 05/27/25    Page 6 of 8
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 490 of 971

6

Plaintiff Tala has endured persistent harassment and bullying, and she is determined to hold all responsible parties accountable through the appropriate legal channels and public exposure in order to protect herself and her family. This now has gone too far. Plaintiff Tala's internet got cut off five times trying to type this motion.

In light of these extraordinary circumstances, Plaintiffs respectfully request that the Court:

1. Set a prompt public or in camera evidentiary hearing on this emergency motion to ensure transparency, allow for the presentation of evidence, and permit direct questioning of relevant witnesses regarding the alleged threats, intimidation, and surveillance.

2. Enter a comprehensive protective order prohibiting any party, their agents, or any affiliated third parties from engaging in further harassment, intimidation, and surveillance

3.  Refer the allegations of threats, intimidation, and unlawful surveillance to the United States Attorney for the District of Columbia, the Federal Bureau of Investigation (FBI), and, if appropriate, the Department of Justice's National Security Division for immediate investigation.

4. Appoint a neutral Special Master or Independent Monitor to oversee compliance with the Court's orders and to report on any further incidents of interference, intimidation, or retaliation during the pendency of this litigation.

5. Grant Any Further Relief Deemed Just and Proper Award any additional protective or remedial relief the Court deems necessary to safeguard the parties and preserve the integrity of these proceedings

R- 490

May 27 2025

Pro Se

Plaintiff Tala Josephano

615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

R- 491

8

## CERTIFICATE OF SERVICE

I hereby certify that on May 27 2025, Plaintiff Tala will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Motion for Protection

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Email

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark  **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Email

Submitted,

May  27 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

R- 492

1

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

**Civil Division**

**Samiha Ayysah, Feras Hindi,**

**Tala Josephano**                          )          **Case No.:  1:24-cv-03434-ACR**

                                            )
Plaintiffs                                  )

**American Airlines Inc. ,**                 )

**Gulf Air B.S.C**                           )
Defendants                                  )

                                            )
_____             )


**PLAINTIFFS' MOTION TO STRIKE DEFENDANT GULF AIR'S EXHIBIT A**

Pursuant to the Court's Inherent Authority and Standing Order Plaintiffs respectfully move this

Court to strike Exhibit A (the purported employment contract submitted by Defendant Gulf Air

B.S.C. at ECF No. 43-2) on the following grounds:

1. **Violation of the Court's Standing Order:**

Section 5(b) of the Court's April 2024 Standing Order requires exhibits to "exclude irrelevant

material" and highlight only "pertinent portions." Exhibit A, an expired employment contract

dated between 1999–2004, directly violates this order. It contains outdated and immaterial terms,

omits nearly two decades of relevant employment history, and misleads the Court as to the scope

of the Decedent's employment and domicile

RECEIVED

May 29 2025
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

R-493

Case 1:24-cv-03434-ACR    Document 47    Filed 05/29/25    Page 2 of 6
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 494 of 971

2

2.  **Irrelevance, Misleading  and Misrepresentation:**

Federal Rule of Evidence requires that evidence have probative value. Exhibit A fails this test. It omits key facts such as the Decedent's 2008 promotion to Captain, his 2019 transfer to the Boeing fleet, and his assignment to DOT-governed codeshare operations, all of which are directly relevant to the jurisdictional questions before the Court. Instead, Defendant misuses an obsolete contract from a predecessor entity (Gulf Air Company G.S.C.) to falsely imply continuity and domicile in Jordan, which is unsupported and misleading.

3.  **Lack of Evidentiary Weight and Procedural Prejudice:**

The declaration accompanying Exhibit A selectively omits facts personally known to the declarant—facts he acknowledged in an internal memorial email in 2022. The failure to include post-2004 contracts or employment amendments suggests deliberate concealment. Admission of such misleading evidence prejudices the Plaintiffs and imposes an undue burden on pro se litigants.

4.  **Court's Inherent Authority to Strike:**

 Courts have broad discretion to strike filings that mislead or violate procedural rules. Defendant's selective submission, omitting known and material evidence constitutes a violation of its duty of candor and justifies exclusion.

R- 494

Case 1:24-cv-03434-ACR    Document 47    Filed 05/29/25    Page 3 of 6
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 495 of 971

3

**RELIEF REQUESTED**

Plaintiffs respectfully request that the Court:

1. STRIKE Exhibit A in its entirety from ECF No. 43-2;

2. STRIKE or EXCLUDE all references to Exhibit A in Defendant's Motion to Dismiss including any reference in the Declaration;

3. Allow Plaintiffs to amend in order to Grant

4. Bar Defendant from submitting any further exhibits regarding this matter or declarations from Bahrain that is unverified by the lawyer

5. Grant such other relief as the Court deems appropriate to preserve the integrity of the record.

Plaintiffs are prepared to submit affidavits and witnesses attesting to the Decedent's U.S. domicile and employment terms if the Court requires further support.

Dated: May 29, 2025

Respectfully submitted,

**Pro Se Plaintiffs**

*Tala Josephano*

615 S Catalina Ave #233

Redondo Beach, CA 90277

R- 495

4

*Feras Hindi*

7823 New London Dr.

Springfield, VA 22153

*Samiha Ayyash*

7823 New London Dr.

Springfield, VA 22153

R- 496

## CERTIFICATE OF SERVICE

I hereby certify that on May 29 2025, Plaintiff Feras Hindi, Plaintiff Tala & Plaintiff Samiha will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Motion to Strike Exhibits

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Email

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark  **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Service Processor ABC Legal service

Submitted,

May 29 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767

R- 497

6

R- 498

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

**Samiha Ayysah, Feras Hindi,**

**Tala Josephano**                                  )          **Case No.:  1:24-cv-03434-ACR**

                                                           )

Plaintiffs                                              )

**American Airlines Inc. ,**                  )

**Gulf Air B.S.C**                               )
Defendants                                        )

_____          )

**MEMORANDUM OF LAW AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE DEFENDANT GULF AIR'S EVIDENCE "EXHIBIT A" UNDER COURT INHERENT AUTHORITY**

Plaintiffs Samia Ayyash, Feras Hindi, and Tala Josephano respectfully submit this Memorandum of Law and Authorities in support of their Motion to Strike Exhibit A ("The Contract"), attached to Exhibit 1 ("Declaration") (ECF No. 43-2), on the grounds that it is noncompliant with the Court's Standing Order and applicable rules, and was submitted by Defendant Gulf Air B.S.C. in a manner that misleads the Court regarding the scope of the Decedent's employment and domicile. The exhibit is not merely outdated—it affirmatively omits material facts known to the declarant, including post-2004 promotions, DOT-governed flight assignments, and the Decedent's long-standing relocation to the United States. These omissions—central to the jurisdictional issues before the Court—reflect improper litigation conduct that warrants striking the exhibit in full.

R- 499

2

## Table of Authorities

**Statutes**

28 U.S.C. § 1332

D.C. Code § 13-423

**Federal Rules**

- Federal Rule of Civil Procedure 4
- Federal Rule of Civil Procedure 12(b)(1)
- Federal Rule of Civil Procedure 12(b)(2)
- Federal Rule of Evidence 401
- Federal Rule of Evidence 403


**Cases**

- *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016)
- *Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995)
- *Ali v. Tolbert*, 636 F.3d 622, 627 (D.C. Cir. 2011) (quoting *Shepherd*, 62 F.3d at 1472)
- *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991))

- *HLFIP Holding, Inc. v. Rutherford Cnty.*, No. 3:19-cv-00714, 2020 WL 6484254, at *2 (M.D. Tenn. Sept. 13, 2020)
- *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)


**Other Authorities**

- U.S. District Court for the District of Columbia, Standing Order (April 2024)
- U.S. Department of Transportation, Codeshare and Open Skies Regulations

R- 500

3

**Table of Contents**

**A.** Introduction and Summary of Grounds for Striking Exhibit A

**B.** Defendant's Submission Violates the Court's Standing Order

**C.** Exhibit A Is Irrelevant, Immaterial, and Misleading

**D.** Declarant's Personal Knowledge Contradicts the Submission

**E.** Exhibit A Fails to Reflect Decedent's Actual Employment and Domicile

**F.** Improper Use of the Declaration to Address Merits and Jurisdiction

**G.** Plaintiffs' Request for Relief and Reservation of Rights

**H.** Conclusion

R- 501

## BACKGROUND

On December 31, 2024, Plaintiffs filed their Amended Complaint (ECF No. 2). Defendant Gulf Air B.S.C. was properly served under Federal Rule of Civil Procedure 4 through delivery to its registered agent in the District of Columbia, who accepted service. A copy was also mailed to Gulf Air's Bahrain headquarters. Defendant was notified of this case on multiple occasions, and service was duly accepted by its D.C. agent. Plaintiffs' Amended Complaint asserts claims under this Court's diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs further note that they are qualified to bring claims under federal law for violations thereof. With respect to personal jurisdiction, and as to each of Plaintiffs' claims, this Court has personal jurisdiction over Defendant Gulf Air pursuant to Federal Rule of Civil Procedure 4, the District of Columbia long-arm statute (D.C. Code § 13-423), and the requirements of due process. Plaintiffs will address these jurisdictional issues in their forthcoming Motion for Limited Jurisdictional Discovery and in their Opposition to Defendant's Motion to Dismiss.

Defendant Gulf Air B.S.C. seeks to challenge subject matter jurisdiction by asserting that the Decedent's domicile was foreign—identical to Defendant's—in an attempt to defeat diversity jurisdiction by grouping all claims and Plaintiffs under the survival act. They also improperly attempt to address merits and factual disputes, including the fact that Captain Mohannad Alhindi's flight was a DOT-governed codeshare, by relying on a declaration from Bahrain that is unverified by counsel, submitted within a motion to dismiss for personal jurisdiction ordered by the Court on March 28, 2025.

Under 28 U.S.C. § 1332 and established precedent, diversity jurisdiction requires complete diversity of citizenship, which is determined by the domicile of the parties at the time the action

R- 502

is filed. For natural persons, domicile is defined as the place of true, fixed, and permanent home and principal establishment, to which the person intends to return. Plaintiffs assert that the Decedent, Captain Mohannad Alhindi, was domiciled in the State of Illinois, United States since 2011, before and at his time of death and the time relevant to this action. Accordingly, complete diversity exists, and Defendant's attempt to defeat jurisdiction by mischaracterizing Plaintiffs' claims and the Decedent's domicile is without merit and undermines the court's intelligence.

Plaintiffs clarify that the present motion is strictly limited to striking Exhibit A " The Contract" as misleading, immaterial, inadmissible, noncompliant in violation of the Court's Standing Order and the Federal Rules of Evidence. Plaintiff Samiha asserting claim of wrongful death will address her standing in her Opposition to Defendant's motion to dismiss

### **ARGUMENT**

### A.  **Exhibit A Is Affirmatively Misleading and Should Be Stricken or Excluded**

On April 18, 2025, Defendant Gulf Air B.S.C. filed its Motion to Dismiss the Amended Complaint at ECF No. 43, and submitted the Declaration of Captain Qasim Ghuloom Ismaeel as ECF No. 43-2, along with Exhibit A "The Contract," a 1999–2004 employment contract and renewals, attached to that declaration. In ¶18 of his declaration Exhibit 1 (ECF No. 43-2), Captain Qasim Ghuloom Ismaeel states that this contract was Captain Alhindi's contract from 1999–2022. The declaration also asserts that Captain Mohannad Alhindi was employed by Gulf Air as a pilot from February 1999 until his death on December 14, 2022. He further states that the Decedent was initially hired as a First Officer, promoted to Captain in July 2008, and that his employment was governed by a written Contract of Services, which was last renewed in 2004. Captain Qasim attaches this contract and its renewals as Exhibit A to his declaration and asserts

R- 503

Case 1:24-cv-03434-ACR    Document 47-1    Filed 05/29/25    Page 6 of 37
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 504 of 971

6

that its terms remained in effect until the time of the Decedent's death. In ¶19, Captain Qasim claims that, according to the contract, the Decedent identified himself as a national of Jordan with his place of domicile listed as "Jubiaha, Jordan." He asserts that Gulf Air was never notified of any change in the Decedent's domicile and that no documented updates were made to this designation or contract terms or the existence of any subsequent contract renewal.

Although Captain Qasim acknowledges in ¶18 of his declaration that Captain Mohannad Alhindi was promoted to Captain in July 2008, the contract he submitted as "Exhibit A – The Contract" does not reflect that promotion or any amended terms associated with it. Unlike the earlier renewals from 2002 and 2004, which are attached and labeled as extensions, no similar documentation was provided for the 2008 promotion, despite being referenced in Captain Qasim's sworn declaration (ECF No. 43-2), where he asserts—without attaching supporting evidence—that Captain Alhindi was promoted to Captain in July 2008. At the time, Captain Qasim was Captain Mohannad's direct superior in Gulf Air's pilot training programs.

The employment contract submitted as Exhibit A (between Gulf Air Company G.S.C, not Gulf Air B.S.C) reflects Captain Alhindi's initial hire in 1999, a promotion to First Officer in 2002 with corresponding salary and aircraft assignments, and a further promotion to Senior First Officer in 2004, again with updated pay and responsibilities.

## B. Declarant Captain Qasim's Email to All Gulf Air Pilots – December 17, 2022

Plaintiffs submit Exhibit 1, an email authored by Captain Qasim—the same individual who submitted a sworn declaration on behalf of Defendant—addressed to all Gulf Air pilots in memory of Captain Mohannad Alhindi. This communication directly contradicts both Exhibit A (the purported final employment contract) and the sworn declaration submitted in support of

Case 1:24-cv-03434-ACR    Document 47-1    Filed 05/29/25    Page 7 of 37
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 505 of 971

7

Defendant's Motion to Dismiss. The declaration includes no information about Captain Alhindi's salary, aircraft assignments, or job duties after 2004. In contrast, the December 17, 2022 email provides a detailed employment history: initial hire in 1999, promotions in 2002 and 2004, advancement to Captain in 2008, elevation to Senior Captain in 2013, and a 2019 transfer to the Boeing 787 fleet for nonstop U.S. service. (*See Plaintiffs' Exhibit 1 Email From Captain Qasim to All Gulf Air Pilots*.) These facts—clearly within Captain Qasim's personal and professional knowledge—were omitted from the declaration. It appears neither Gulf Air B.S.C. nor its legal team were aware of this email when they submitted the declaration, further undermining the credibility of their evidentiary submission. In the email, Captain Qasim honors Captain Alhindi's long and accomplished career, explicitly referencing promotions, continued employment through 2022, international assignments, and regulatory responsibilities. These acknowledgments undermine Exhibit A, which contains no terms or amendments beyond 2004 and is presented as the operative contract through 2022. The email, authored by the same declarant who attested under oath to Exhibit A's completeness, confirms material employment developments that were omitted from both the contract and the declaration. This contradiction is not a mere oversight—it reflects a selective and misleading presentation of facts.

Plaintiffs respectfully submit that the internal inconsistency between the sworn declaration and the declarant's own email confirms that Exhibit A is neither complete nor reliable. The email acknowledges substantial employment developments omitted from both the contract and declaration, revealing a deliberate omission of material facts and supporting Plaintiffs' position that Exhibit A was submitted to misrepresent the employment relationship central to this case.

R- 505

8

Although attesting that Exhibit A is Captain Alhindi's final employment agreement, Captain Qasim's email references promotions and responsibilities omitted entirely from both the declaration and Exhibit A. This inconsistency undermines the credibility of Defendant's submission and reflects a selective, materially incomplete presentation of facts. Exhibit A is a partial, outdated agreement executed between 1999 and 2004 by Gulf Air Company G.S.C., a predecessor that ceased operations over a decade before Captain Alhindi's death. No evidence establishes that the terms of Exhibit A were carried forward or remained in effect under Gulf Air B.S.C., a distinct entity formed in 2012. Submitting a contract from a defunct entity to prove facts about a separate successor—without explanation—further demonstrates the deceptive nature of the filing. Defendant and Declarant submit this document without disclaimer or evidence showing it does reflect the operative employment terms from 2008 to 2022, despite acknowledging Captain Alhindi remained employed during that period. By presenting this contract as current and complete while omitting later agreements, salary increases, promotions, domicile changes, and regulatory obligations—facts well known to both Captain Qasim and Defendant—Defendant misrepresents the nature and scope of the employment relationship. This conduct constitutes intentional abuse of process, going beyond mere omission or error, and reflects bad faith in presenting jurisdictional facts.

These key milestones—within the declarant's personal knowledge—are conspicuously omitted from both his declaration and the attached contract Exhibit A, revealing material inconsistencies and deliberate omissions in Defendant's evidentiary submission, despite their relevance to the issue of Captain Alhindi's domicile at the time of death. Furthermore, the Declaration, Exhibit A ("the contract"), and the motion to dismiss seek to exclude any connection between Captain Mohannad and DOT-governed codeshare flights—a false assertion. The issue is not merely that

R- 506

the contract is old, but that Defendant uses the absence of updated contracts—exclusively in its possession—to create a misleading appearance of completeness. This violates both the Federal Rules and the Standing Order requiring disclosure of "material and relevant portions" only. The omission of post-2004 contracts shows procedural abuse. promotions and DOT assignments occurred, new contracts must exist. Defendant concealed them, relying instead on an outdated contract to argue dispositive facts. This selective disclosure weaponizes evidence rather than informs the Court, violating basic duties of candor and fairness.

In 2008, Gulf Air Company G.S.C. and American Airlines entered into a new codeshare agreement (*See Plaintiffs Exhibit 2, DOT-OST-2008-0195),* formally approved and governed by the U.S. Department of Transportation (DOT) (*See Plaintiffs Exhibit 3, DOT-OST-2008-0195).* Captain Alhindi's involvement in this agreement reflected his senior position and prior experience flying to the United States, and the assignment was incorporated into his employment package as part of his expanded international duties. Gulf Air's omission of the 2008 employment contract appears calculated to evade liability under U.S. law and DOT regulations. It fails to disclose Captain Alhindi's assignment to DOT-governed codeshare flights—specifically the American Airlines joint codeshare flight in Dhaka during which he became incapacitated at embarkation due to a severe 99% arterial blockage and ultimately died in uniform. Gulf Air seeks to obscure its obligations as a foreign air carrier operating under a DOT-issued exemption and authorization. Under the Montreal Convention, this constitutes an injury occurring during embarkation, as Captain Alhindi was minutes from piloting an aircraft carrying over 200 passengers. Gulf Air and American Airlines contend these agreements apply only to passengers. However, pilots and crew members are legally treated as passengers or individuals on board (*See Plaintiffs Exhibit 4, sample flight operated from Dhaka by Gulf Air*

R- 507

*B.S.C. and American Airlines Inc., at Bangladesh Dhaka Airport Flight Captain Alhindi was about to Pilot)*. Notably, after Plaintiffs initiated civil aviation claims in Bangladesh, Gulf Air ceased promoting codeshare flights to Washington Dulles (IAD) with Etihad Airways from Bangladesh and stopped promoting codeshare flights with American Airlines from Dhaka. This further evidences its attempt to distance itself from U.S.-governed operations.

The Court possesses broad discretion to strike filings that violate its orders, mislead the Court, or cause procedural prejudice, and Plaintiff respectfully requests that the Court exercise its inherent power to strike Exhibit A in its entirety to prevent further harm and ensure a fair process. Furthermore, the credibility of the declarant who submitted Exhibit A is seriously undermined by his knowing omission of material facts—specifically, the domicile of Captain Alhindi at the time of death and the existence of a detailed codeshare and DOT participation contract. The declarant's close personal relationship with Captain Mohannad Alhindi, as evidenced by his December 17 2022 email referring to him as "more than a friend and like a brother," makes clear that these omissions are intentional.

## C.  The Court's Inherent Authority To Strike Exhibit A

"[D]istrict courts have the inherent authority . . . to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." Dietz v. Bouldin, 579 U.S. 40, 47 (2016). This broad power includes the authority to strike material from its docket for noncompliance with court orders or rules. Cf. Shepherd v. Am. Broad. Cos., Inc., 62 F.3d 1469, 1472 (D.C. Cir. 1995) ("[T]he inherent power enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary . . . ."

R- 508

(emphasis added)); Ali v. Tolbert, 636 F.3d 622, 627 (D.C. Cir. 2011) (quoting Shepherd, 62 F.3d at 1472); see Ready Transp., Inc. v. AAR Mfg., Inc., 627 F.3d 402, 404 (9th Cir. 2010) ("[A] District Court ha[s] jurisdiction to grant . . . motion[s] to strike pursuant to its inherent powers."); HLFIP Holding, Inc. v. Rutherford Cnty., No. 3:19-cv-00714, 2020 WL 6484254, at *2 (M.D. Tenn. Sept. 13, 2020) ("The Court may strike improvident filings based on its inherent authority to manage its own docket. This includes the inherent authority to strike any filed paper which it determines to be abusive or otherwise improper under the circumstances." (citation omitted)). "It necessarily follows that, as part of its power to 'manage [its] own affairs,' a district court can use less drastic measures such as striking documents from the docket to address litigation conduct that does not warrant outright dismissal." Ready Transp., 627 F.3d at 404 (citation omitted) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 44– 45 (1991)).

### D. **Exhibit A The Contract Violates and is non compliant with the court Standing order of Judge Ana Reyes**

Pursuant to Section 5(b) of this Court's April 2024 Standing Order in Civil Cases, exhibits "shall be edited properly to exclude irrelevant material and to direct the Court's attention to the pertinent portions." However, Exhibit A contains no current contractual information and terminates in 2004, despite Defendant's concession that the Decedent remained employed as a Captain until his death in 2022. Thus, the exhibit fails to direct the Court to any material facts relevant to the jurisdictional dispute.

Section 7 of the same Standing Order further provides that "[t]he submission of briefs and exhibits not in compliance with this Standing Order may be rejected by the Court." Exhibit A, a 20-year-old employment contract executed by a different legal entity (Gulf Air Company

R- 509

Case 1:24-cv-03434-ACR   Document 47-1   Filed 05/29/25   Page 12 of 37
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 510 of 971

12

G.S.C.), is neither tailored to the issues before the Court nor edited to exclude irrelevant and outdated material. Its submission directly contravenes the Court's explicit orders regarding the presentation of evidence.

The central issue in this case is the Decedent's domicile at the time of his death on December 14, 2022. Exhibit A predates the Decedent's relocation to the United States and omits any reference to his participation in international codeshare operations, which became a significant part of his duties after promotion. Aside from being affirmatively misleading and noncompliant, Exhibit A is irrelevant to the jurisdictional question before the Court. It creates confusion and prejudice and strategically deprives Plaintiffs of their claims by presenting selectively omitted information tailored solely to support Defendant's defense.

### E.  Exhibit A Omissions

Exhibit A omits documentation of the Decedent's promotions to Captain in 2008, 2013, and 2019; his salary and benefits; his expatriate employment package; and any employment terms after 2004. The absence of these critical records renders Exhibit A not only incomplete but also affirmatively misleading regarding the Decedent's employment status and domicile during the relevant period. Therefore, the Court should invoke its inherent authority to strike Exhibit A from the record for noncompliance with its Standing Order, as the contract is irrelevant. Striking Exhibit A is necessary to prevent confusion, avoid further prejudice to Plaintiffs, protect the docket, and preserve the integrity of these proceedings, as mandated by the Court's April 2024 Standing Order and the Federal Rules of Evidence.

F.  **Ownership Changes and Contractual Validity: Implications for Employment Terms and Jurisdiction**

**Gulf AIR COMPANY G.S.C VS  DEFENDANT GULF AIR B.S.C**

Exhibit A shows Captain Mohannad Alhindi's employment began in 1999 with Gulf Air Company G.S.C., then jointly owned by Bahrain, Qatar, Abu Dhabi, and Oman. This joint ownership means the original employment agreement was with a consortium, not solely with the current Defendant. In August 2002, Qatar announced its withdrawal from Gulf Air Company G.S.C. but remained a member for six months. This ownership change questions the validity of any 2002 contract extensions, as the consortium's changing composition required new contracts instead of extensions. By 2004, only Bahrain and Oman remained partners, necessitating new employee contracts reflecting this changed ownership structure.  By May 2007, Bahrain became the sole owner after Oman's withdrawal. This shift from consortium to single ownership void the applicability of the 1999 contract absent a new agreement. Exhibit 1 (ECF No. 43–2), the Declaration of Captain Qasim, confirms Mohannad Alhindi's promotion to Captain in 2008, one year after Bahrain gained sole ownership. In March 2012, Gulf Air Company G.S.C. rebranded as Gulf Air B.S.C. (c) *(See Plaintiffs' Exhibit 5 Gulf Air Name change )*. As a prudent and professional airline—especially one providing life insurance, health benefits, and other critical protections to crew members—it would be standard and necessary to execute a new employment contract under the new corporate entity. The absence of any evidence showing such a novation or assignment raises serious concerns of negligence or intentional concealment, undermining the

R- 511

validity of relying on the outdated 1999 contract to govern employment terms after the corporate transition.

According to Captain Qasim's December 17, 2022 email, Captain Alhindi was promoted to Senior Captain in 2013—a change that would have necessitated a new employment contract under Gulf Air B.S.C. The contract submitted as Exhibit A contains no amendments or addenda addressing the significant ownership and corporate changes from 1999 to 2012. This lack of updates severely undermines its reliability as a true reflection of the employment relationship through 2022. Given Gulf Air's substantial corporate transitions, Exhibit A fails to accurately represent Captain Alhindi's employment terms under the current Defendant, Gulf Air B.S.C. (c). Moreover, Exhibit A is irrelevant under the Court's Standing Order because Gulf Air Company G.S.C. is not a party to this case. The Defendant and declarant have not explained why a contract originally signed under a multi-country consortium—later reduced to Bahrain ownership—is being submitted, nor clarified the absence of any contract with Gulf Air B.S.C. These unexplained discrepancies render Exhibit A noncompliant, irrelevant, and inadmissible, warranting its removal from the record.

### G.  The 2008 Gulf Air and American Airlines Joint Codeshare Agreement

In 2008, the year Captain Mohannad Alhindi was promoted to Captain, Gulf Air and American Airlines jointly filed a new codeshare application with the U.S. Department of Transportation (DOT) from their Washington, D.C. offices. This critical filing established a direct regulatory and contractual relationship linking Gulf Air pilots to DOT-governed international codeshare flights operated jointly with American Airlines. As shown in  (*See Plaintiffs' Exhibit 2 (DOT-OST-2008-0195)*, American Airlines, Inc. and Gulf Air Company G.S.C. submitted the

application on June 17, 2008—just one month prior to Captain Alhindi's promotion, as detailed in Captain Qasim's declaration. The application, filed pursuant to 14 CFR Part 212, 49 U.S.C. § 41109, and international aviation agreements including the Open Skies Treaty cited in the Amended Complaint, sought blanket codeshare authorization and related exemptions. These permitted reciprocal operational authority between the two carriers.

Notably, Co-Defendant American Airlines, Inc., along with Airlines for America, actively lobbied for legislative changes that facilitated the establishment and implementation of the joint codeshare agreement and Safety Acts. This collaborative effort led to the introduction of the Gulf Air, Etihad Airways and American Airlines codeshare products in key markets such as Washington, D.C. The joint application was signed by counsel for American Airlines at their Government Affairs Office in Washington, D.C., and by legal counsel for Gulf Air at their corresponding office, as documented in See Exhibit 3. This filing provides the regulatory and contractual framework governing codeshare operations involving Captain Alhindi in 2008. Despite this, "Exhibit A The Contract" conspicuously omits any reference to the 2008 codeshare agreement or related contractual terms that would have governed Captain Alhindi's flight assignments.

Plaintiffs assert that Captain Alhindi operated codeshare flights under this DOT-approved authority continuously from his promotion in 2008 until his death on December 14, 2022.*( See Plaintiffs' Exhibit 6 (DOT-OST-2008-0195)* contains the 30-Day Notice of Additional Codeshare Services filed by American Airlines on October 23, 2008, under the same docket. This filing confirms that the codeshare agreement between American Airlines and Gulf Air was not speculative or inactive—it was operational and expanding precisely during the period of Captain Alhindi's promotion. This supports the conclusion that his duties fell within the scope of

R- 513

Case 1:24-cv-03434-ACR    Document 47-1    Filed 05/29/25    Page 16 of 37
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 514 of 971

16

DOT-regulated operations and that his compensation and responsibilities would have been governed by updated employment terms.

*(See Plaintiffs' Exhibit 5 (DOT-OST-2008-0195)* is the official DOT *Order and Notice of Action Taken*, issued on August 4, 2008, in response to the joint application submitted by the carriers in June 2008. The Order granted Gulf Air an exemption under 49 U.S.C. § 41301 and approved blanket codeshare authority for both Gulf Air and American Airlines under 14 CFR Part 212. Gulf Air's exemption was effective from August 4, 2008, through August 4, 2010, and was subsequently renewed every two years. The blanket codeshare authorization, however, was granted on an indefinite basis, subject to ongoing regulatory compliance. This Order, signed by the Director of the Office of International Aviation, formally recognized and authorized the operational partnership between Gulf Air and American Airlines. It eliminates any doubt regarding the legal status of the codeshare during Captain Alhindi's promotion and flight assignments. The DOT's formal recognition of this partnership—paired with Gulf Air's continued use of the exemption without rejection—further exposes the absence of a corresponding employment contract as a material omission.

 Defendant has already asserted that "Exhibit A – The Contract" is the only operative employment agreement governing Captain Alhindi from the date of his promotion in 2008 through the time of his death in 2022. However, the alleged 2008 renewal or amendment page—critical to supporting that claim—is conspicuously absent. By relying on Captain Qasim's declaration while insisting that no other contracts exist, Defendant effectively concedes that it has withheld the only document that could verify the updated terms of Captain Alhindi's employment during this critical period. This omission is not a mere evidentiary lapse—it strongly indicates concealment. Any attempt by Defendant to now produce a retroactive or newly

R- 514

discovered contract would lack credibility and serve only to reinforce the existing pattern of misrepresentation before this Court. Furthermore, any future declarations submitted by this Defendant—or by corporate officers who have already demonstrated a willingness to provide misrepresentation by omission or  false or misleading statements to the Court, to federal regulators such as the DOT, or to the public—should be closely scrutinized or barred entirely. A litigant with a demonstrated pattern of dishonesty cannot be permitted to continue undermining judicial proceedings with impunity.

### H.  Why Is Captain Mohannad Alhindi's 2019 Boeing Transfer Contract Missing?

According to Captain Qasim's internal memorial email dated December 17, 2022 (see Exhibit 1), Captain Mohannad Alhindi was transferred in 2019 from Airbus to Boeing 787 operations. This transfer coincided with Gulf Air's strategic expansion into long-haul service and U.S.-bound codeshare flights governed by U.S. Department of Transportation (DOT) authority. Despite the significance of this career milestone, Defendant has failed to include any 2019 transfer agreement or updated employment terms in either the Declaration or "Exhibit A – The Contract."

Supporting this timeline, Gulf Air B.S.C. and Etihad Airways P.J.S.C. jointly filed a Statement of Authorization and Exemption Application on March 28, 2019 (See Plaintiffs' Exhibit 7, Docket No. DOT-OST-2019-0121). Filed under 14 C.F.R. Part 212 and 49 U.S.C. § 41301, the application sought permission for codeshare services on U.S.-linked routes, identifying Boeing aircraft as the operational platform. This directly implicates Captain Alhindi's transfer to Boeing aircraft as part of Gulf Air's DOT-regulated expansion.

On August 29, 2019, the DOT formally granted this application *(See Plaintiffs' Exhibit 8 DOT Approval Etihad Airways and Gulf Air Codeshare),* authorizing codeshare services between

R- 515

Bahrain, Abu Dhabi, and the United States. This federal approval confirms that any pilot assigned to these routes—including Captain Alhindi—was operating under DOT authority. Furthermore, Gulf Air submitted a renewal request on August 25, 2021, seeking continued exemption and codeshare authority for another two years, through August 2023 (*See Plaintiffs' Exhibit 9 Gulf Air DOT application for renewal)*. This filing reaffirms that DOT-regulated operations were ongoing during the final years of Captain Alhindi's service, including the time immediately preceding his death in December 2022. Yet, despite these developments, Defendant has produced no employment contract, transfer agreement, or supplemental terms reflecting Captain Alhindi's 2019 reassignment to Boeing aircraft. The omission of this material documentation—against the backdrop of an active regulatory partnership with the DOT—raises serious questions of concealment and misrepresentation. Defendant's failure to disclose such a foundational employment document strongly undermines the credibility of their evidentiary submission and calls into question their compliance with both legal and regulatory obligations.

## I.  Gulf Air's Repeated Waiver of Sovereign Immunity Under DOT Codeshare Authority

Defendant Gulf Air's denial that Captain Mohannad Alhindi operated U.S. Department of Transportation (DOT)-governed codeshare flights is not based on a lack of regulatory authority. Rather, it reflects an effort to evade the legal consequences of its own repeated and voluntary waiver of sovereign immunity under U.S. law—particularly in light of its failure to produce any post-2008 employment contracts or records clarifying the scope of Captain Alhindi's role in codeshare operations. Since at least 2008, Gulf Air B.S.C. has applied for and received exemptions and codeshare authorizations from the DOT, each contingent upon a clear and explicit waiver of sovereign immunity. This condition,

repeated in every DOT order renewing Gulf Air's codeshare authority through 2025, states: *"Agree that operations under this authority constitute a waiver of sovereign immunity, for the purposes of 28 U.S.C. § 1605(a), but only with respect to those actions or proceedings instituted against it in any court or other tribunal in the United States that are: (a) based on its operations in international air transportation that, according to the contract of carriage, include a point in the United States as a point of origin, point of destination, or agreed stopping place, or for which the contract of carriage was purchased in the United States; or  (b) based on a claim under any international agreement or treaty cognizable in any court or other tribunal of the United States."*

This waiver is not optional. It is a mandatory precondition to entering the U.S market and approving any codeshare that falls under DOT jurisdiction Therefore, by choosing to operate flights under DOT-authorized codeshare agreements—specifically with American Airlines, Inc. and Etihad Airways P.J.S.C.—Gulf Air knowingly and repeatedly consented to waive sovereign immunity for claims arising from such operations. This includes civil actions governed by U.S law and treaties like the Montreal Convention. Furthermore, under these same DOT approvals, co-defendants American Airlines and Etihad Airways are expressly required to audit Gulf Air for compliance with all applicable DOT rules, regulations, and orders. These audit obligations further underscore the binding nature of Gulf Air's consent and its continuing subjection to U.S. aviation standards.

In light of this, Gulf Air's current denial of the codeshare nature of Captain Alhindi's flight is not a legal challenge to jurisdiction—it is a tactical attempt to sidestep the clear legal ramifications of its own consent. The sovereign immunity waiver language is unambiguous, repeatedly affirmed, and directly applicable to the operations at issue. Upon Deceased Captain Alhindi

R- 517

Case 1:24-cv-03434-ACR    Document 47-1    Filed 05/29/25    Page 20 of 37
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 518 of 971

20

promotion, Captain Alhindi was selected for codeshare assignments with American Airlines and other partners—positions reserved for elite pilots. He received a salary increase and planned to relocate his family to the U.S., where his American-citizen children would attend college. His prior experience with Royal Jordanian, FAA registration, and extensive U.S. flight hours made him well suited for U.S.-connected operations. Despite the critical events of 2008 and 2019—Captain Alhindi's promotion and expanded codeshare operations—neither Gulf Air nor declarant Captain Qasim has produced any employment contract or related documents confirming his promotion or codeshare assignments. This deliberate omission appears intended to shield Gulf Air from liability by denying that Captain Alhindi's flights fell under U.S. DOT regulations and codeshare agreements.

The DOT's approval and expansion of Gulf Air's codeshare agreements coincide precisely with Captain Alhindi's promotion and transfer to Boeing aircraft, which operate longer-distance flights than the Airbus models he previously flew. If Gulf Air produces a post-2008 employment contract for Captain Mohannad Alhindi, it would conclusively establish that the flight he operated was part of a DOT-authorized codeshare service. Under the terms of Gulf Air's repeated and explicit consent to waive sovereign immunity in connection with such codeshare operations, this evidence would confirm that Gulf Air waived immunity for claims arising from that flight. Consequently, Gulf Air is subject to the jurisdiction of U.S. courts and cannot avoid trial on these claims by denying the flight's connection to its DOT-approved codeshare authority. The failure to produce these documents undermines the credibility of Defendant's Exhibit 1 (Declaration) and Exhibit A (contract), which omit key developments and legal obligations stemming from 2008 onward. Gulf Air and Captain Qasim's refusal to produce the 2008 promotion contract and

related codeshare documents constitutes a deliberate attempt to evade liability under U.S. DOT regulations.

## J.  BACKGROUND OF CAPTAIN MOHANNAD DOMICILE :

The contract Exhibit A identifies Captain Mohannad's address as a P.O. Box in Jubaiha, Jordan, whereas by 2011 the Decedent & his family have already moved to the United States *( See EXHIBIT 10 Truth Finder Report showing Dates of is U.S addresses )* , with final residency  at 1903 Tomahawk Court, Naperville, IL, *( See Exhibit 11 Property Records listing him owner of his IL home )* and referred to this address as his home with his wife and family.

*Facts Omitted by Exhibit A (2004–2022):* Defendant's Exhibit A (2004 contract) omits 18 years of material facts, including Captain Alhindi's employment under DOT-authorized codeshare operations starting in 2008; Captain Alhindi relocated from Jordan to Bahrain in 1999 for employment with Gulf Air Company G.S.C., moving with his wife and children; his siblings, including Plaintiff Tala, had already moved to the U.S.; Prior to relocating, he sold his house and car in Jordan; the 2004 contract lists a Jordanian P.O. Box and vacation destination, but that was in 1999 not in 2022 where he had no substantive ties to Jordan at death; He was promoted to Senior Captain and transferred from Airbus to Boeing, facts absent from Defendant's records; Upon receiving his U.S. Green Card, his employment status changed from "Jordanian Expat" to "U.S.-based Expat," resulting in revised compensation and benefits; He registered his daughter at the University of Chicago and his son at Naperville North High School, where he also attended college, establishing educational ties since at least 2011; By 2011, Captain Alhindi and family resided at 1903 Tomahawk Court, Naperville, IL, supported by property and address records; He purchased a car in Illinois and regularly traveled throughout the U.S., including Virginia,

R- 519

Washington D.C., Arizona, Nevada, and California, with Gulf Air notified as required; Captain Alhindi was an expatriate in Bahrain with an expat employment package; he completed paying off his Illinois mortgage in November 2022; Gulf Air B.S.C. provided employment verification letters supporting his U.S. residency, necessary for home ownership; He updated Gulf Air employment records to reflect his U.S. address and listed Illinois as his yearly vacation location; He had a U.S phone number; He retained an Illinois lawyers. accountant, filed and paid U.S. income taxes on foreign income, and opened U.S.-based retirement accounts, including a Fidelity 401(k), with plans to retire permanently in the U.S.; He planned retirement and family business expansion plans in Illinois with siblings, including Plaintiff Tala, indicating intent to remain and retire in the U.S.; In Illinois, he maintained substantial, continuous ties: accountant, attorney, mortgage with property tax and insurance payments, U.S. phone number, and close family residing in the U.S.; He had no comparable property, residence, or significant ties to Bahrain or Jordan at death; At death, most personal belongings, including clothing, remained in his Naperville home; Gulf Air arranged and paid for shipment.

During Captain Alhindi home visits in preparation for retirement and return to live in U.S.A where he previously lived when he was in his youth , Captain Mohannad discussed future business plans in Illinois with his siblings in expanding the family business, including Plaintiff Tala, further indicating his intent to remain in and retire in the United States. In contrast, Decedent had no comparable connections to either Bahrain or Jordan: he owned no property in either, maintained no residence, and had no professional, financial, or substantial personal ties in either country. Under well-established legal standards, these facts preclude Bahrain or Jordan from being considered Decedent's domicile, as neither location constituted his permanent home nor reflected the requisite intent to remain or return. The evidence clearly demonstrates that

R- 520

Captain Alhindi maintained substantial ties to Illinois and the United States. At the time of his death, most of his personal belongings, including his clothing, remained in his closet at his Naperville, IL residence—a fact known to Gulf Air B.S.C., as they arranged and paid for the shipment of these items to Illinois.

Importantly, Plaintiff Tala has direct, personal knowledge of Captain Alhindi's future plans in the United States, including his intention to work at the anticipated Gulf Air B.S.C. station at Chicago O'Hare (ORD) and to open a family business for his son. Captain Alhindi's friend, Captain Qasem, was also aware of and discussed these plans. These facts, known firsthand by Plaintiff Tala, further establish Captain Alhindi's strong and ongoing connections to the U.S., directly refuting any claim that he lacked ties to this jurisdiction. Captain Qasim invited Captain Mohannad many times for events considering his wife is living in the U.S.A already and Plaintiff Tala has met Captain Qasim and most of Captain Alhindi Bahrain friends over Facetime as she was in contact with Captain Alhindi regularly. Plaintiff Tala and Captain Mohannad were financially involved in matters which made Tala privy to Captain Mohannad's financial affairs. She helped him pay his mortgage in 2020-2021 when Gulf Air B.S.C changed the contract with Captain Mohannad cutting his salary in half.

These significant changes triggered an employment contract update or at least a proof of rank promotion contract  raise, location and tax status disclosure. Yet, Gulf Air provides no documentation to support Jordan and Bahrain domicile aside from outdated contracts and inadmissible words that lack credibility from Declarants that are deliberately misleading the court. Under established legal standards, these facts firmly establish Illinois and the United States as Captain Alhindi's domicile, excluding Bahrain or Jordan. Defendant has failed to present any relevant evidence within the contract to support their motion to dismiss for lack of

R- 521

Case 1:24-cv-03434-ACR    Document 47-1    Filed 05/29/25    Page 24 of 37
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 522 of 971

24

jurisdiction. Instead, they have offered a flawed and incomplete submission, attempting to shift the burden onto the Court through omission and misrepresentation, in the hope that such a bad faith move will go unnoticed

### K.  Exhibit A "The Contract" Is Not Only Irrelevant—It's a Red Herring

Mischaracterization of Plaintiffs' Claims as Defendant attempts to minimize Plaintiffs' claims by reducing them to trivial issues such as a "logo" dispute over DOT-governed codeshare operations or an isolated medical event in Bangladesh. Deficient and Misleading Declaration Submission as Gulf Air, with counsel's approval, submitted a procedurally and substantively flawed declaration —authored by an unverified individual with a questionable signature. The document shows half wet-ink signature, shows inconsistent ink colors suggesting photocopying and alteration, and was modified with blue ink instead of black. These irregularities cast serious doubt on the declaration's authenticity and reliability, including whether Captain Qasim actually authored it. The declaration appears drafted by counsel to serve Defendant's legal aims rather than provide genuine firsthand testimony.

Captain Qasim claims expertise in the U.S. DOT compliance and administrative law, yet his qualifications do not support Legal or HR background. His background is primarily as a pilot and business graduate with leadership certifications, lacking direct knowledge of legal or regulatory matters relevant to this case including Processing service or diversity jurisdiction. Captain Qasim's relevant knowledge should be limited to Captain Alhindi's domicile, DOT codeshare flight scheduling of Pilots, rank, employment status, promotions, and duties—all of which he misrepresented if he authored the declaration.

R- 522

Case 1:24-cv-03434-ACR    Document 47-1    Filed 05/29/25    Page 25 of 37
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 523 of 971

25

Captain Qasim was Captain Alhindi's direct supervisor at Gulf Air's Aviation Academy, overseeing pilot training where Captain Alhindi served as an instructor. Their professional relationship was complemented by a personal friendship, with regular social interactions especially during eased COVID-19 restrictions. Gulf Air is a central institution in Bahrain's small, close-knit aviation community. Captain Qasim's familiarity with Captain Alhindi's family and personal life is expected given their long-standing professional and social ties. As direct supervisor, Captain Qasim managed Captain Alhindi's schedule, promotions, and vacations, and was aware of his family situation, including separation during COVID-19 lockdowns. Captain Qasim knew Captain Alhindi frequently traveled to the U.S. for his Green Card, maintaining continuous entry every six months, consistent with his operational responsibilities and approved multiple trips and documents to support Captain Mohannad residency and matters in IL; Maintaining Green Card eligibility implies Captain Alhindi intended to return to the U.S. upon retirement to be with his family.

Captain Qasim in Exhibit 1 Declaration refers to the contract as a "true and correct copy" and presents it as governing the full period of employment through 2022, yet it provides no evidence of continued contractual validity beyond 2004. Including no evidence of supporting Qasim Declaration Exhibit 1 in his statement of Promotion to Captain in 2008. The last Salary on the 2004 renewal doesn't reflect the Captains Salary which is not the same as Senior First Officer Salary or benefits. Plaintiff Tala had financial matters with the Captain and was close enough with him to know about his income and his raises. The omissions from both Exhibit A and the accompanying declaration are significant and undermine the reliability of the evidence presented. When a declarant fails to disclose facts that he personally authored in a contemporaneous,

official email within the scope of his employment, the resulting declaration cannot be presumed complete or credible.

Such omissions—particularly when they concern material factual matters directly relevant to the issues before the Court—render the declaration, at best, selectively crafted and, at worst, materially misleading. This pattern of omission calls into question the good faith of the declarant and the integrity of the evidence, warranting STRIKING the contract Exhibit A and any reference to it from other filings.  Accordingly, the Court should view both the Declaration and Exhibit A with caution and decline to afford them any evidentiary weight concerning the Decedent's operative employment terms and status at the time of death. Plaintiffs will also submit  motion to strike the declaration and any reference of it in Defendants' motion to dismiss in separate motion due to their lack of legal expertise in combining both and time consumed to write these motions

### L.  **Exhibits are Evidence**

According to the U.S. Department of Justice, an exhibit is defined as "physical evidence or documents that are presented in a court proceeding." See U.S. Department of Justice, Legal Terms Glossary. If the court finds Striking Exhibit A "the contract" an extreme measure, then the court must exclude the contract Exhibit A from the Exhibits submitted by Defendant to the motion to dismiss under Federal rules of Evidence. The admissibility of such exhibits in federal court is governed by the Federal Rules of Evidence, which require that evidence be relevant (Rule 401), not otherwise inadmissible (Rule 402), and not misleading, confusing, or unduly prejudicial (Rule 403).

R- 524

**Exhibit A The Contract is irrelevant under Rule 401 and should be excluded, not be given weight or accepted by the court**

The employment contract is irrelevant and non-compliant with the Court's standing order. To be relevant, evidence must meet the threshold of Rule 401 of the Federal Rules of Evidence, which requires that the evidence have any tendency to make a fact of consequence more or less probable than it would be without the evidence. This contract fails to satisfy that standard and therefore does not meet the test for relevancy.

Federal Rule of Evidence 401 states: *"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.*

A partial, unsigned employment contract dated from 1999 to 2004 has no probative value in determining whether Captain Mohannad Alhindi was domiciled in Jordan or the United States at the time of his death in 2022, nor does it shed any light on whether the flight he operated fell under the jurisdiction of the U.S. Department of Transportation (DOT) through a codeshare agreement—circumstances that would trigger Gulf Air's waiver of sovereign immunity under U.S. law. The 18-year gap between the contract's expiration and the relevant date, along with the absence of any amendments or post-2004 employment records, eliminates any logical connection between Exhibit A " The Contract" and these dispositive facts. As such, Exhibit A is irrelevant under Federal Rule of Evidence 401 and should be excluded.

Under Rule 401, relevance is not inherent to any piece of evidence but arises from its relationship to a fact of consequence in the case. Exhibit A " The contract", last revised in 2004, lacks any direct relationship to the core jurisdictional question of Captain Alhindi's domicile at

R- 525

USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 526 of 971

the time of his death in 2022 or to whether the flight he operated was subject to U.S. Department of Transportation (DOT) jurisdiction through a codeshare agreement in 2008. The absence of any post-2004 employment records or amendments renders Exhibit A irrelevant to both issues and thus inadmissible under Rule 401.

Rule 401 defines relevant evidence as that which has "any tendency to make a fact more or less probable than it would be without the evidence." Exhibit A "The Contract" does not tend to establish the decedent's domicile at the relevant time 2022, or Captain Alhindi real contracts since 2008  and therefore has no probative value under this standard.

Relevancy requires a logical connection validated by law or experience. The 18-year gap between the document's last effective date and the decedent's death, combined with the corporate transition from Gulf Air G.S.C. to Gulf Air B.S.C.(c), Captain Qasim email dated December 17 2022 and DOT order governing the codeshare agreements breaks any such connection. "A brick is not a wall." Even if Exhibit A " The Contract" had marginal value, it cannot—on its own—establish any dispositive fact about domicile or deny that the Captain was assigned for codeshare flights governed by DOT, especially in light of intervening circumstances and undisputed life changes.

Deliberately Omitted Employment history alone does not establish domicile. Exhibit A " The Contract" does not identify the Captain's residence, intentions, or legal status during the relevant period and is thus incapable of proving the fact for which it is offered under Rule 401.

Federal Rule of Evidence 401 directs that relevant evidence must relate to a "fact that is of consequence to the determination of the action. In this matter, the determinative fact at issue in the Defendant's motion to dismiss  is the domicile of the Decedent at the time of death—not his employment status in 1999 or 2004.

R- 526

A fact of consequence may be ultimate, intermediate, or evidentiary in nature, but it must still bear on the outcome of the action. Exhibit A—an outdated employment contract ending in 2004 and executed by a now-defunct legal entity—does not address the Decedent's domicile at the time of his death in 2022 and therefore fails to support any fact that is "of consequence" in this proceeding of Motion to dismiss for lack of Jurisdiction

When the evidence including Exhibit A serves no function other than to present outdated or incomplete background, and when that background misleads or distracts from the issues properly before the Court's exclusion is appropriate under Rule 403, not Rule 401 alone. Exhibit A the contract does not function as neutral or illustrative background evidence. It is proffered to establish a dispositive jurisdictional fact that Captain Alhindi was domiciled in Jordan. Yet it lacks any reference to his residence, intentions, or legal status after 2004. Its relevance is therefore fundamentally defective under Rule 401. Admitting Exhibit A " The Contract" under the guise of relevance would invite precisely the evidentiary misuse Rule 401 seeks to prevent, reliance on stale, incomplete, or tangential documents to resolve issues of central importance without a proper factual foundation. Because Exhibit A " The Contract" does not tend to prove any fact of consequence—let alone the one for which it is offered—it is inadmissible.

### M. **Exhibit A Should Be STRIKEN or Excluded as Misleading and Prejudicial**

Even if Exhibit A were marginally relevant under Rule 401, it must be excluded under Federal Rule of Evidence 403, which permits exclusion of evidence whose "probative value is substantially outweighed by a danger of... misleading the jury, undue delay, or wasting time." Defendant's submission of an outdated, materially incomplete contract—omitting 18 years of promotions, domicile updates, and DOT-governed codeshare assignments—is a textbook example of Rule 403 misuse. Gulf Air offers no legitimate justification for withholding

R- 527

subsequent contracts or amendments known to exist. This selective production prejudices Plaintiffs by distorting the employment timeline and misrepresenting the Decedent's legal and factual status at the time of death. Admission of this document would confuse the factual record, mislead the Court on dispositive jurisdictional issues, and invite undue weight on a defunct agreement with a now-nonexistent entity. Exclusion under Rule 403 is not only appropriate—it is necessary to preserve the integrity of the proceedings.

### N. **PREJUDICE TO PLAINTIFFS AND THE COURT WARRANTS STRIKING EXHIBIT A**

Under Federal Rule of Evidence 403, relevant evidence may be excluded if its "probative value is substantially outweighed by a danger of... unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time." The prejudice threshold is met when the evidence improperly influences the factfinder or imposes disproportionate burdens on a party that impair their ability to present a fair case. That standard is satisfied here. Plaintiffs are pro se litigants navigating a complex federal action. Defendant's submission of Exhibit A, a 20-year-old employment contract from a dissolved entity, forces Plaintiffs to expend substantial time and effort to rebut irrelevant and misleading evidence—rather than focus on the core jurisdictional and legal questions. This includes drafting A motion to strike Exhibit A (already 40+ pages), A forthcoming motion to strike the declaration (estimated 40+ pages), An opposition to the motion to dismiss (which itself cites dozens of inapplicable legal precedents and relies on Exhibit A), Jurisdictional Discovery Motion ( estimated 25 pages). This multiplies the litigation workload unreasonably and asymmetrically. Courts have held that prejudice exists where a party "injects confusion into proceedings" or imposes an undue evidentiary burden on the opposing party.  The misleading nature of Exhibit A—submitted as the "operative" employment contract through

R- 528

2022—when it indisputably ends in 2004, falsely frames the employment relationship and domicile of the decedent and denies codeshare DOT governed . By relying on outdated and incomplete documentation, Gulf Air seeks to obscure the Captain's involvement in U.S.-regulated codeshare flights—despite the fact that such operations, and Gulf Air's participation in them, are the very basis for its repeated waiver of sovereign immunity under U.S. law. The exclusion of post-2008 employment records—when Gulf Air's DOT-authorized codeshare agreements were in full effect—appears calculated to deny jurisdiction and dismantle the legal foundation of Plaintiffs' claims. This mischaracterization threatens to collapse Plaintiffs' independent tort and federal violations claims into a survival action framework, which would eliminate claims for fraud, negligence per se, IIED, and NIED, among others. If accepted, the exhibit would function not as background but as a procedural trap, preemptively nullifying Plaintiffs' causes of action.

Additionally, Exhibit A is used to manufacture jurisdictional confusion, causing undue delay in resolving Defendant's motion to dismiss. The longer this confusion persists, the more Gulf Air exploits it to argue for outright dismissal—despite having withheld material documents (e.g., post-2004 contracts) that would clarify the record. This pattern constitutes a bad-faith litigation tactic that meets the standard for inherent judicial intervention.  Prejudice is also compounded by Defendant's attempt to mislead the Court by presenting Exhibit A—authored under Gulf Air G.S.C.—as governing employment with Gulf Air B.S.C., without evidentiary support for a legal novation. This creates a false appearance of continuity where none exists and invites the Court to make factual findings on an incorrect legal foundation. For these reasons, Exhibit A should be stricken or excluded in full under Rule 403, Standing Order Section 5(b), and the Court's

Case 1:24-cv-03434-ACR    Document 47-1    Filed 05/29/25    Page 32 of 37
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 530 of 971

32

inherent authority to "ensure the integrity of its proceedings" and "prevent undue hardship and prejudice.

### O.  <u>**Pattern of Omission and Misrepresented Statements to Authorities and the Public**</u>

This timeline below reveals a deliberate pattern of misrepresentation, obstruction, and bad faith conduct by Gulf Air. The company repeatedly uses selective, unverified statements from unavailable witnesses to create a one-sided record while actively avoiding judicial scrutiny in both Bangladesh and the United States. This conduct directly supports the argument that Gulf Air is acting in bad faith to deny jurisdiction, and evade liability, especially where its waiver of sovereign immunity under U.S. DOT codeshare authority is at issue. In July 16, 2023 – Gulf Air's Country Manager in Bangladesh, Mr. Issa Shaah, submitted a written statement to the Civil Aviation Authority of Bangladesh (CAAB) falsely claiming that Captain Mohannad Alhindi arrived at United Hospital at 5:30 AM. This contradicts The co-pilot's statement (arrival at 5:00 AM); The airport medical report (collapse at 3:50 AM); The hospital intake log,; The court; the court-appointed investigator's findings and hospital ECG reports.

 This false statement was intended to minimize liability for missing the "golden hour" of medical response. June 24, 2023 – The Metropolitan Magistrate Court of Dhaka issued an order directing Gulf Air, through Mr. Shaah, to produce the co-pilot for examination. Instead, Gulf Air submitted a written statement while the co-pilot was outside the country (in Bahrain) and failed to make him available—similar to the current case, where Captain Qasim has submitted a declaration but is unavailable for deposition in the U.S. Post-mortem investigation (CR Case No. 1011 of 2023) – After the Captain's death, the court initiated an investigation. Gulf Air and Mr. Shaah failed to comply with court orders to produce the co-pilot or explain his absence. July 6, 2023 – A judicial reminder order was issued, warning that noncompliance would be treated as

<div align="right">

# R- 530

</div>

33

contempt of court. Gulf Air again ignored the order and refused to comply. Gulf Air promised they would present the witness only to obstruct the investigation and they didn't. September 11, 2023 – A second formal court order was issued, with service confirmed via Memo No. 2401 and Memo No. 5537. Gulf Air again refused to produce the witness, violating a direct court command; September 19, 2023 – The Police Bureau of Investigation formally reported "deliberate obstruction of justice" by Gulf Air for repeated failure to comply with witness production orders. This led to the filing of Writ Petition No. 12120 of 2023 before the High Court Division in Bangladesh. Throughout these proceedings, Gulf Air has followed a consistent pattern: it submits declarations and witness statements from individuals it knows will not be made available for cross-examination. In this case, Plaintiff Tala confirmed with Gulf Air's counsel that Captain Qasim's declaration was submitted, but counsel could not confirm his identity or availability for deposition in the United States or that they verified his statement with him directly.

Defendant Gulf Air has irrevocably bound itself to the representation that the 1999–2004 employment contract submitted as Exhibit A remained operative until Captain Alhindi's death in 2022. This sworn assertion, made in the declaration by Captain Qasim, affirmatively disclaims the existence of any subsequent contracts, amendments, or revisions. As a result, Defendant cannot now supplement the record without directly contradicting its own verified statement under penalty of perjury.

This admission renders the submitted contract affirmatively misleading and fatally incomplete. Any attempt to now produce new documents would only confirm that Exhibit A was knowingly submitted in violation of the Federal Rules of Evidence and this Court's Standing Order. The evidentiary damage is already done. Nothing Defendant can now submit will cure the prejudice

R- 531

Case 1:24-cv-03434-ACR    Document 47-1    Filed 05/29/25    Page 34 of 37
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 532 of 971

34

or rehabilitate the credibility of Exhibit A or the declaration. The only appropriate remedy is to strike or exclude Exhibit A in its entirety.

Plaintiffs have been caused damages by this submission, the time spent on researching and typing while Gulf Air continuous harassment to Plaintiff Tala in order to submit any further motions. In addition to the inability of finding legal representation.  Plaintiff Tala has left her work and her preparation to Motion for Discovery for both Defendants to write this despite the strong unfair obstacles placed by Gulf Air B.S.C on her. Plaintiff Tala has lost to jobs in her assessment work that she could have made a living in considering her single income status. The emotional toll on how Defendant throws his captains under the bus rather than addressing their mistakes. Plaintiff Tala conferred with Ms. Darcy Gulf Air counsel, who doesn't seem to know her client's actions yet still accepted an outdated contract without verifying the relevance of it. More than 10 days Tala Spent writing this motion, with attempts to ask Gulf Air B.S.C lawyer to reconsider it. Gulf Air B.S.C asserted this is the last contract, any attempts now to present anything is going to be another attempt to underestimate the intelligence of the court therefore they should not be given any chance to submit any further items or decorations to consume Plaintiff's time .

(See Plaintiffs Exhibit 11 Tala's Affidavit  Plaintiff Tala  submitted an affidavit to support this motion. Plaintiffs are prepared to call witnesses to support their motion located in DC. Nesrin Abaza and Ruba Hindi to testify of the domicile of Captain Alhindi. Plaintiffs are willing to submit further affidavits and witnesses to support the updated contracts with Captain Alhindi and his plans to retire in IL.

R- 532

Case 1:24-cv-03434-ACR    Document 47-1    Filed 05/29/25    Page 35 of 37
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 533 of 971

35

## CONCLUSION

For the reasons stated above, Exhibit A must be stricken in its entirety under the Court's inherent authority for non compliance and violation of its own Standing Order, as well as the Federal Rules of Evidence. The document is materially misleading, affirmatively incomplete, and factually irrelevant to the dispositive jurisdictional issues before the Court. It omits critical employment milestones—including Captain Mohannad Alhindi's promotion to Captain, his 2019 transfer to Boeing aircraft under DOT-governed codeshare assignments, and his transition to employment under a different legal entity. It was submitted by a declarant who had personal knowledge of these facts yet concealed them while presenting a two-decade-old contract executed by a now-defunct company with different ownership. The contract fails to reflect the decedent's true employment status, duties, or domicile at the time of death, and its submission violates the Court's express directive to provide only material and relevant portions of evidence. Accordingly, the Court should strike Exhibit A and any mention of it in the Declaration and Defendant's motion to dismiss in full to preserve the integrity of these proceedings and prevent further prejudice and quantifiable damages.

Plaintiffs respectfully ask the Court to strike not only Exhibit A, but also any reference to it in the declaration and in Defendant's motion to dismiss. Otherwise, Plaintiffs will be compelled to submit separate motions addressing those filings. If the court finds STRIKING is an extreme measure despite Plaintiffs meeting the threshold, Plaintiffs request the court to exclude related points in EXHIBIT 1 the declarations and Exhibit A entirety from evidence.  Plaintiffs understand that Motion for limited jurisdictional Discovery needs to be submitted separately, Plaintiffs plead to the court to order Jurisdictional discovery through this motion to reduce

R- 533

Case 1:24-cv-03434-ACR    Document 47-1    Filed 05/29/25    Page 36 of 37
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 534 of 971

36

prejudice and damages to Plaintiffs. Plaintiffs upon order can give a list of items needed for their limited jurisdictional discovery.

As pro se litigants swimming against the current in complex proceedings, Plaintiffs also respectfully request that if the Court finds any procedural defect in this motion, they be granted leave to amend or correct before dismissal on technical grounds. Plaintiffs are acting in good faith to protect the integrity of the record and ensure a fair adjudication of this matter. Plaintiff Tala will file to request Sanctions and fees for her time that she spends addressing Gulf Air irrelevant defense and exhibits when submitting a motion to Strike Declaration that contains false statement given under Perjury.

Submitted,

May 29 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767

R- 534

## CERTIFICATE OF SERVICE

I hereby certify that on May 29 2025, Plaintiff Feras Hindi  and Plaintiff Tala Plaintiff Samiha will be sending a true and correct copy of the following documents to be served upon the parties listed below:

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Email

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark  **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Service Processor ABC Legal service

Submitted,

May 29 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767

R- 535

Case 1:24-cv-03434-ACR   Document 47-2   Filed 05/29/25   Page 1 of 85
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 536 of 971

1

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

| | | |
|---|---|---|
| **Samiha Ayysah, Feras Hindi,** | | |
| **Tala Josephano** | ) | **Case No.:  1:24-cv-03434-ACR** |
| | ) | |
| Plaintiff | ) | |
| **American Airlines Inc. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendant | ) | |
| _____ ) | | |

# EXHIBITS

May 29 2025

**Exhibit 1:**

 **Email from Captain Qasim** – Supports his deliberate omission of Captain Mohannad's contracts under the codeshare agreement.

**Exhibit 2:**

 **DOT Docket No. DOT-OST-2008-0195** – Department of Transportation filing relevant to codeshare agreements.

**EXHIBITS**

R- 536

Case 1:24-cv-03434-ACR    Document 47-2    Filed 05/29/25    Page 2 of 85
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 537 of 971

2

**Exhibit 3:**

 **DOT-OST-2008-0195 (Continuation)** – Additional filings and details from the DOT docket.

**Exhibit 4:**

 **Sample Flight Record** – A flight operated from Dhaka by Gulf Air B.S.C. and American Airlines Inc., at Bangladesh Dhaka Airport.

**Exhibit 5:**

 **Gulf Air Name Change Documentation** – Official record showing Gulf Air's name change.

**Exhibit 6:**

 **30-Day Notice of Additional Codeshare Services** – Filed by American Airlines on October 23, 2008, under DOT-OST-2008-0195.

**Exhibit 7:**

 **DOT Docket No. DOT-OST-2019-0121** – Additional filings and communications relevant to the codeshare agreement.

**Exhibit 8:**

 **DOT Approval of Etihad Airways and Gulf Air Codeshare Agreement** – Formal authorization for codeshare cooperation.

**Exhibit 9:**

 **Gulf Air DOT Application for Renewal** – Filed application seeking renewal of operational authority.

**EXHIBITS**

R- 537

3

**Exhibit 10:**

 **TruthFinder Report** – Showing dates and records of Captain Mohannad's U.S. addresses.


**Exhibit 11:**

 **Property Records** – Listing Captain Mohannad as the owner of his Illinois residence.


**Exhibit 12:** Plaintiff Tala's Affidavit

R- 538

# EXHIBIT 1

R- 539

Case 1:24-cv-03434-ACR     Document 47-2     Filed 05/29/25     Page 5 of 85
USCA Case #25-7123     Document #2186844     Filed: 08/06/2026     Page 540 of 971

Gmail

---

# In Loving Memory of our Colleague Mohannad AlHindi

1 message

---

**Capt. Qasim Ghuloom Ismaeel** <qasim.ismaeel@gulfair.com>          Sat, 17 Dec 2022 at 22:37

To: All Pilots <All.Pilots@gulfair.com>

Dear all,

It is with a heavy heart that we all mourn the passing of our beloved colleague and friend, Capt. Mohannad AlHindi.

At only 63 years young, Capt. Mohannad's unexpected passing was a shock to us all. He was patient, kind and  adored by us all. It is certain that we all have one thing in common: our admiration of a man who was more than a colleague, but a friend, brother and part of our family.

We were lucky to have had Capt. Mohannad join us in 1999 as an A320 First Officer, he was then transferred to an A340 first Officer, promoted to a Captain in 2008 and on to a Senior Captain in 2013. He went on the be transferred to B787 in 2019. In his career, he was steadfast and passionate. Always willing to lend a helping hand and provide support and mentorship to the pilot and training community.

Mohannad's ability to impart his undivided attention to everyone, no matter the circumstance, and his insistence on making everyone feel comfortable, secure and loved were among his greatest strengths.

His generous spirit, contagious smile and humorous personality is how he will always be remembered and remain alive in our hearts.

May Allah rest his soul in peace. Ameen.

Kind Regards,



R- 540

R- 541

# EXHIBIT 2

R- 541

**BEFORE THE**

**DEPARTMENT OF TRANSPORTATION**

**WASHINGTON, D. C.**

```
-----------------------------------------
Joint Application of                      :
                                          :
    AMERICAN AIRLINES, INC.               :
            and                           :   DOT-OST-2008-
    GULF AIR COMPANY                       :
                                          :
under 14 CFR Part 212 for statements of   :
authorization and under 49 USC 41109      :
for related exemption (blanket code-      :
sharing)                                  :
-----------------------------------------
```

**JOINT APPLICATION OF AMERICAN AIRLINES, INC.
AND GULF AIR COMPANY**

Communications with respect to this document should be sent to:

For Gulf Air Company:

MOFFETT B. ROLLER
Roller & Bauer, PLLC
1020 Nineteenth Street, N.W.
Suite 400
Washington, D.C. 20036
(202) 331-3300
mroller@rollerbauer.com

For American Airlines:

WILLIAM K. RIS, JR.
Senior Vice President –
  Government Affairs
American Airlines, Inc.
1101 17th Street, N.W.
Suite 600
Washington, D.C.  20036

HENRY C. JOYNER
Senior Vice President –
  Planning
American Airlines, Inc.
P.O. Box 619616, MD 5628
DFW Airport, Texas 75261

DON CASEY
Managing Director –
  International Planning
American Airlines, Inc.
P.O. Box 619616, MD 5635
DFW Airport, Texas 75261

R- 542

ROBERT A. WIRICK
Manager, International
　Planning
American Airlines, Inc.
P.O. Box 619616, MD 5635
DFW Airport, Texas 75261
(817) 963-0394
robert.wirick@aa.com

CARL B. NELSON, JR.
Associate General Counsel
American Airlines, Inc.
1101 17th Street, N.W.
Suite 600
Washington, D.C. 20036
(202) 496-5647
carl.nelson@aa.com

June 17, 2008

**R- 543**

**BEFORE THE**

**DEPARTMENT OF TRANSPORTATION**

**WASHINGTON, D. C.**

```
--------------------------------------------
Joint Application of                    :
                                        :
    AMERICAN AIRLINES, INC.             :
             and                        :    DOT-OST-2008-
    GULF AIR COMPANY                    :
                                        :
under 14 CFR Part 212 for statements of :
authorization and under 49 USC 41109    :
for related exemption (blanket code-    :
sharing)                                :
--------------------------------------------
```

**JOINT APPLICATION OF AMERICAN AIRLINES, INC.
AND GULF AIR COMPANY**


American Airlines, Inc. (and its affiliates American Eagle Airlines, Inc. and Executive Airlines, Inc. d/b/a American Eagle) applies for a statement of authorization, and Gulf Air Company applies for a statement of authorization and related exemption authority in order to engage in reciprocal codeshare operations (subject to 30-day notice) pursuant to the open skies agreements between the United States, on the one hand, and Bahrain, Oman, Qatar, and the United Arab Emirates, on the other.[1]

---

[1]    The American-Gulf Air Codeshare Agreement is on file in No. 98-104 (undocketed).

R- 544

2

Specifically, American and Gulf Air are seeking the following:

(A)  American requests a statement of authorization, and Gulf Air requests any necessary underlying exemption authority (including the right to integrate such authority with Gulf Air's other permit and/or exemption authority)[2], in order to display Gulf Air's GF* designator code in conjunction with foreign air transportation of persons, property, and mail on flights operated by American or American Eagle between (1) points in the United States; (2) points in the United States and points in Abu Dhabi, Bahrain, Oman, and Qatar (either nonstop or via intermediate points in third countries); (3) points in the United States and points in third countries; and (4) points in Abu Dhabi, Bahrain, Oman, and Qatar and points in third countries.[3]

(B)  Gulf Air requests a statement of authorization to display American's AA* designator code in conjunction with

_____

[2]    Although Gulf Air currently holds an exemption to serve a point or points in the United States by codesharing with American (DOT-OST-2005-20097, July 23, 2007), that exemption does not include the behind and beyond authority included in American's request, ¶¶ (A)(3) and (A)(4).  Gulf Air therefore requests that the exemption granted here should incorporate all route authority necessary for Gulf Air to operate to all points listed in ¶ (A).  This new exemption will then supersede the authority that Gulf Air currently holds in DOT-OST-2005-20097.

[3]    The authority requested herein for American will replace the limited codeshare rights to display the GF* code on specific transatlantic flights operated by American.  See Statement of Authorization No. 99-07 (March 8, 1999, undocketed), as amended by Department Action, DOT-OST-2004-19923 (January 5, 2005).

R- 545

3

foreign air transportation of persons, property, and mail on flights operated by Gulf Air between (1) points in Abu Dhabi, Bahrain, Oman, and Qatar; (2) points in Abu Dhabi, Bahrain, Oman, and Qatar and points in the United States (either nonstop or via intermediate points in third countries); (3) points in Abu Dhabi, Bahrain, Oman, and Qatar and points in third countries; and (4) points in the United States and points in third countries.[4]  American holds underlying certificate authority on its open skies certificate for Route 835 issued by Order 2007-4-2, April 1, 2007.  Gulf Air holds the requisite charter authority to display the AA* code (DOT-OST-1999-309).

The blanket codeshare authorizations requested herein are fully consistent with the applicable open skies agreements, and with the public interest.[5]  Such authority is also consistent with the Department's policy of granting blanket rights to other codeshare partnerships in open skies regimes. See, e.g.,

---

[4]    Gulf Air currently holds a statement of authorization (granted by Notice of Action Taken in DOT-OST-1996-1055 on February 8, 2007) to display the AA* code on Gulf Air flights between London, Paris, and Frankfurt, on the one hand, and Abu Dhabi, Bahrain, Oman, and Qatar, on the other, and beyond to Kuwait.  The statement of authorization that Gulf Air seeks herein will supersede that route-specific authority.

[5]    Although the Governments of Abu Dhabi, Oman, and Qatar no longer hold ownership interests in Gulf Air, the terms of the open skies Air Transport Agreements between the United States and the United Arab Emirates (of which Abu Dhabi is a constituent emirate), Oman, and Qatar are identical to those of the Agreement between the United States and Bahrain.  As Gulf Air has previously requested and the Department has previously approved (see DOT-OST-2005-20097), Gulf Air requests, based on its longstanding history of operations to Abu Dhabi, Oman, and Qatar, that its codeshare and exemption authority include Abu Dhabi, Oman, and Qatar as co-terminal points with Bahrain.

R- 546

4

Department Action, DOT-OST-99-6547, January 7, 2000 (American/Lan Chile); Department Action, DOT-OST-99-6544, January 7, 2000 (American/Finnair); Order 98-4-8, April 5, 1998 (United/Lufthansa).

American and Gulf Air will accept the Department's standard condition on third-country services. See, e.g., Notice of Action Taken, DOT-OST-99-5944, November 2, 1999 (American/Swissair), condition (e).

Blanket authorizations are in the public interest because they enable codeshare partners to develop the full range of services permitted under applicable bilateral agreements. The services contemplated by American and Gulf Air will provide a more efficient use of capacity in the marketplace, and will help maximize the range of service options available to the traveling and shipping public.

The additional codeshare services to be operated by American and Gulf Air in the initial phase are shown in the attached Notice. Consistent with standard practice, American and Gulf Air will notify the Department no later than 30 days before commencing any additional codeshare services under the blanket authorizations we are seeking. We will inform the Department of the market(s) to be served, the identity of the

R- 547

carrier operating the aircraft in the codeshare market(s) being added, and the date on which the service will begin.  American and Gulf Air will conduct all of their codeshare operations in compliance with 14 CFR Part 257.

In response to the Department's letter of June 1, 1995 to participants in the Civil Reserve Air Fleet Program, American states that the codeshare arrangement at issue will have no impact on American's CRAF commitments.

American and Gulf Air request that blanket statements of authorization be granted for an indefinite period, consistent with the Department's practice in other codeshare proceedings, and that Gulf Air's related exemption authority be granted for at least one year.

Respectfully submitted,

MOFFETT B. ROLLER
Roller & Bauer PLLC
Attorneys for Gulf Air Company

CARL B. NELSON, JR.
Associate General Counsel
American Airlines, Inc.

June 17, 2008

R- 548

Between GF* U.S. Gateways And

Atlanta
Austin
Baltimore
Corpus Christi
Denver
Detroit
Houston
Jackson
Jacksonville
Kansas City
Las Vegas
Memphis
Minneapolis/St. Paul
Newark
New Orleans
Norfolk
Oklahoma City
Orlando
Philadelphia
Phoenix
Portland OR
Raleigh/Durham
St. Louis
San Antonio
San Diego
San Francisco
Seattle
Tampa

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing document by email on the following persons:

scott.mcclain@delta.com
sametta.c.barnett@delta.com
kquinn@pillsburywinthrop.com
bkeiner@crowell.com
sascha.vanderbellen@nwa.com
bruce.rabinovitz@wilmerhale.com
jonathan.moss@wilmerhale.com
jeffrey.manley@united.com
bob.kneisley@wnco.com
robert.land@jetblue.com
msinick@ssd.com
cdonley@ssd.com
anbird@fedex.com
dvaughan@kelleydrye.com
kevin.montgomery@polaraircargo.com
jrichardson@johnlrichardson.com
lhalloway@crowell.com
efaberman@wileyrein.com
mroller@rollerbauer.com
howard_kass@usairways.com
benjamin.slocum@usairways.com
jhill@dlalaw.com
bill@mietuslaw.com
mgoldman@sgbdc.com
rsilverberg@sgbdc.com
dhainbach@ggh-airlaw.com
mcmillin@woa.com
mchopra@jamhoff.com
russell.bailey@alpa.org
dkirstein@yklaw.com
jyoung@yklaw.com
donna.kooperstein@usdoj.gov
dwight.moore@ustranscom.mil
jim.ballough@faa.gov
byerlyjr@state.gov

CARL B. NELSON, JR.

June 17, 2008

R- 550

R- 551

# EXHIBIT 3

R- 551



**UNITED STATES OF AMERICA**
**DEPARTMENT OF TRANSPORTATION**
**OFFICE OF THE SECRETARY**
**WASHINGTON, D.C.**

Issued by the Department of Transportation on August 4, 2008

## NOTICE OF ACTION TAKEN – DOCKET DOT-OST-2008-0195

This serves as notice to the public of the action described below, taken by the Department official indicated (no additional confirming order will be issued in this matter).

Joint Applicants:  **AMERICAN AIRINES, INC. (American)[1] and**     Date Filed:  June 17, 2008
                   **GULF AIR COMPANY (Gulf Air)**

Relief requested:  Exemption from 49 USC § 41301 to permit Gulf Air to conduct scheduled foreign air transportation of persons, property, and mail from points behind Abu Dhabi, Bahrain, Oman, and Qatar, on the one hand, via points in Abu Dhabi, Bahrain, Oman, and Qatar and via intermediate points, to a point or points in the United States and beyond, on the other hand, pursuant to a code-share arrangement with American.[2]

Blanket statement of authorization under 14 CFR Part 212 to permit Gulf Air to display the (AA*) designator code of American on flights operated by Gulf Air between: 1) points in Abu Dhabi, Bahrain, Oman, and Qatar; 2) points in Abu Dhabi, Bahrain, Oman, and Qatar and points in the United States (either nonstop or via intermediate points in third countries); 3) points in Abu Dhabi, Bahrain, Oman, and Qatar and points in third countries; and 4) points in the United States and points in third countries.[3]

Blanket statement of authorization under 14 CFR Part 212 to permit American to display the (GF*) designator code of Gulf Air on flights operated by American or American Eagle between: 1) points in the United States; 2) points in the United States and points in Abu Dhabi, Bahrain, Oman, and Qatar (either nonstop or via intermediate points in third countries); 3) points in the United States and points in third countries; and 4) points in Abu Dhabi, Bahrain, Oman, and Qatar and points in third countries.[4]

The initial code-share points to be served by the joint applicants are attached as Appendix A.

Applicant representatives:  Moffett B. Roller, 202-331-3300 (Gulf Air) and Carl B. Nelson, Jr., 202-496-5647 (American)

DOT analyst:  Robert J. Finamore, 202-366-2405

Responsive pleadings:  None

### DISPOSITION

Action:  Approved, subject to conditions                    Action date:  August 4, 2008

Effective dates of authority granted:  Gulf Air's exemption authority is effective from August 4, 2008, through August 4, 2010.  The statements of authorization granted to Gulf Air and American are effective August 4, 2008, and will remain in effect for an indefinite duration, subject to conditions.

---

[1] The joint applicants state that American is also applying on behalf of its affiliated carriers American Eagle Airlines, Inc. and Executive Airlines, Inc. d/b/a American Eagle.

[2] The joint applicants note that Gulf Air's existing exemption does not include the behind and beyond authority necessary for its codeshare operations with American, and that its instant request for expanded exemption authority will therefore supersede the exemption authority held by Gulf Air in Docket DOT-OST-2005-20097.

[3] The joint applicants note that Gulf Air's instant request for a statement of authorization will supersede the route-specific statement of authorization held by Gulf Air in Docket DOT-OST-1996-1055.

[4] The authority requested by American will replace its limited authority to display the GF* code on specific transatlantic flights.  *See* undocketed statement of authorization 99-07, granted March 8, 1999, and Notice of Action Taken dated January 5, 2005, in Docket DOT-OST-2004-19923.

R- 552

Basis for approval (bilateral agreement/reciprocity): Bilateral aviation agreements between the United States and the United Arab Emirates, Bahrain, Oman, and Qatar.

Except to the extent exempted/waived, this authority is subject to the terms, conditions, and limitations of our standard foreign air carrier exemption conditions attached as Appendix B and codeshare conditions attached as Appendix C. In addition, American shall adhere to the otherwise applicable terms, conditions, and limitations of its certificates of public convenience and necessity.

Special conditions/Remarks:  The authority granted above does not authorize Gulf Air to operate its own aircraft to any point in the United States for which it does not hold Department authority to serve with its own aircraft and crews (see Docket DOT-OST-1995-309).

**Action taken by:   Paul L. Gretch, Director Office of International Aviation**

_____

Under authority assigned by the Department in its regulations, 14 CFR Part 385, we found that (1) our action was consistent with Department policy; (2) the applicants were qualified to perform their proposed operations; (3) grant of the authority was consistent with the public interest; and (4) grant of the authority would not constitute a major regulatory action under the Energy Policy and Conservation Act of 1975.  To the extent not granted/deferred/dismissed, we denied all requests in the referenced Docket.  We may amend, modify, or revoke the authority granted in this Notice at any time without hearing at our discretion.

Persons entitled to petition the Department for review of the action set forth in this Notice under the Department's regulations, 14 CFR §385.30, may file their petitions within seven (7) days after the date of issuance of this Notice.  This action was effective when taken, and the filing of a petition for review will not alter such effectiveness.

*An electronic version of this document is available on the World Wide Web at:*
*http://www.regulations.gov*

R- 553

**Appendix A**

## NOTICE OF INITIAL CODESHARE POINTS

Between GF* U.S. Gateways And

Atlanta
Austin
Baltimore
Corpus Christi
Denver
Detroit
Houston
Jackson
Jacksonville
Kansas City
Las Vegas
Memphis
Minneapolis/St. Paul
Newark
New Orleans
Norfolk
Oklahoma City
Orlando
Philadelphia
Phoenix
Portland OR
Raleigh/Durham
St. Louis
San Antonio
San Diego
San Francisco
Seattle
Tampa

R- 554

**Appendix B**

## Foreign Carrier Exemption Conditions

In the conduct of the operations authorized, the foreign carrier applicant(s) shall:

(1)  Not conduct any operations unless it holds a currently effective authorization from its homeland for such operations, and it has filed a copy of such authorization with the Department;

(2)  Comply with all applicable requirements of the Federal Aviation Administration, the Transportation Security Administration, and with all applicable U.S. Government requirements concerning security, including, but not limited to, 14 CFR Parts 129, 91, and 36 and 49 CFR Part 1546 or 1550, as applicable.  To assure compliance with all applicable U.S. Government requirements concerning security, the holder shall, before commencing any new service (including charter flights) from a foreign airport that would be the holder's last point of departure for the United States, contact its International Industry Representative (IIR) (formerly referred to as International Principal Security Inspector) to advise the IIR of its plans and to find out whether the Transportation Security Administration has determined that security is adequate to allow such airport(s) to be served;

(3)  Comply with the requirements for minimum insurance coverage contained in 14 CFR Part 205, and, prior to the commencement of any operations under this authority, file evidence of such coverage, in the form of a completed OST Form 6411, with the Federal Aviation Administration's Program Management Branch (AFS-260), Flight Standards Service (any changes to, or termination of, insurance also shall be filed with that office);

(4)  Not operate aircraft under this authority unless it complies with operational safety requirements at least equivalent to Annex 6 of the Chicago Convention;

(5)  Conform to the airworthiness and airman competency requirements of its Government for international air services;

(6)  Except as specifically exempted or otherwise provided for in a Department Order, comply with the requirements of 14 CFR Part 203, concerning waiver of Warsaw Convention liability limits and defenses;

(7)  Agree that operations under this authority constitute a waiver of sovereign immunity, for the purposes of 28 U.S.C. 1605(a), but only with respect to those actions or proceedings instituted against it in any court or other tribunal in the United States that are: (a)  based on its operations in international air transportation that, according to the contract of carriage, include a point in the United States as a point of origin, point of destination, or agreed stopping place, or for which the contract of carriage was purchased in the United States; or (b)  based on a claim under any international agreement or treaty cognizable in any court or other tribunal of the United States.  In this condition, the term "international air transportation" means "international transportation" as defined by the Warsaw Convention, except that all States shall be considered to be High Contracting Parties for the purpose of this definition;

(8)  Except as specifically authorized by the Department, originate or terminate all flights to/from the United States in its homeland;

(9)  Comply with the requirements of 14 CFR Part 217, concerning the reporting of scheduled, nonscheduled, and charter data;

(10) If charter operations are authorized, except as otherwise provided in the applicable aviation agreement, comply with the Department's rules governing charters (including 14 CFR Parts 212 and 380); and

(11) Comply with such other reasonable terms, conditions, and limitations required by the public interest as may be prescribed by the Department, with all applicable orders or regulations of other U.S. agencies and courts, and with all applicable laws of the United States.

This authority shall not be effective during any period when the holder is not in compliance with the conditions imposed above.  Moreover, this authority cannot be sold or otherwise transferred without explicit Department approval under Title 49 of the U.S. Code.

12/2007

R- 555

**Appendix C**

**The code-share operations authorized here are subject to the following conditions:**

(a) The statements of authorization will remain in effect only as long as (i) American and Gulf Air continue to hold the necessary underlying authority to operate the code-share services at issue, and (ii) the code-share agreement providing for the code-share operations remains in effect.

(b) American and Gulf Air must promptly notify the Department (Office of International Aviation) if the code-share agreement providing for the code-share operations is no longer effective or if the carriers decide to cease operating all or a portion of the approved code-share services.  Such notices should be filed in Docket DOT-OST-2008-0195.[1]

(c) American and/or Gulf Air must notify the Department no later than 30 days before they begin any new code-share service under the code-share services authorized here.  Such notice shall identify the market(s) to be served, which carrier will be operating the aircraft in the code-share market added, and the date on which the service will begin.  Such notices should be filed in Docket DOT-OST-2008-0195.

(d) The code-sharing operations conducted under this authority must comply with 14 CFR 257 and with any amendments to the Department's regulations concerning code-share arrangements that may be adopted.  Notwithstanding any provisions in the contract between the carriers, our approval here is expressly conditioned upon the requirements that the subject foreign air transportation be sold in the name of the carrier holding out such service in the computer reservation systems and elsewhere; that the carrier selling such transportation (*i.e.,* the carrier shown on the ticket) accept responsibility for the entirety of the code-share journey for all obligations established in its contract of carriage with the passenger; that the passenger liability of the operating carrier be unaffected; and that the operating carrier shall not permit the code of its U.S. code-sharing partner to be carried on any flight that enters, departs, or transits the airspace of any area for whose airspace the Federal Aviation Administration has issued a flight prohibition.

(e) Any service provided shall be consistent with all applicable agreements between the United States and the United Arab Emirates, Bahrain, Oman, and Qatar, and all applicable agreements with other foreign countries involved. Furthermore, (i) nothing in the award of this blanket statement of authorization should be construed as conferring upon American rights (including code-share, fifth-freedom intermediate and/or beyond rights) to serve markets where U.S. carrier rights are limited unless American notifies us of its intent to serve such market and unless and until the Department has completed any necessary carrier selection procedures to determine which carrier(s) should be authorized to exercise such rights;[2] and (ii) should there be a request by any carrier to use the limited-entry route rights that are included in American's authority by virtue of the blanket statement of authorization granted here, but that are not being used by American, the holding of such authority will not be considered as providing any preference for American in a carrier selection proceeding to determine which carrier(s) should be entitled to use the authority at issue.

(f) The authority granted here is specifically conditioned so that neither American nor Gulf Air shall give any force or effect to any contractual provisions between themselves that are contrary to these conditions.

We may amend, modify, or revoke the authority granted at any time without hearing at our discretion.

---

[1] We expect this notification to be received within 10 days of such non-effectiveness or of such decision.
[2] The notice referenced in condition (c) above may be used for this notification.

R- 556

# EXHIBIT 4

USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 558 of 971

## 28-Sep-2024

DAC
**05:40**

27h 5m

2 stops

JFK
**22:45**

FLIGHT DETAILS

Economy

From
**112468.00** BDT →

Business

SOLD OUT

R- 558

R- 559

# EXHIBIT 5

R- 559

In accordance with Section 1047 and 1048 of the Companies Act 2006.

# OS NM01

### Registration of change of name of overseas company as registered in the UK



**A fee is payable with this form.**
Please see 'How to pay' on the last page.

**COMPANIES HOUSE**

✓ **What this form is for**
You may use this form to give notice of a change of name by the company previously registered in the UK.

✗ **What this form is NOT**
You cannot use this form notice of a change of na UK establishment

THURSDAY

*L148WCMZ*

LD2    08/03/2012    #72

---

## 1 Overseas company details

| Existing company number | F C 0 0 9 9 1 6 |
|---|---|

→ **Filling in this form**
Please complete in typescript or in bold black capitals.

All fields are mandatory unless specified or indicated by *

Existing name of overseas company or alternative name registered in the UK: **GULF AIR COMPANY G S.C.**

---

## 2 Change of name

Is the company changing its existing corporate name to a new corporate name?
→ **Yes** Go to Section 3.
→ **No** Go to Section 4 to change the name to, or from, an alternative name under section 1048 of the Companies Act 2006.

---

## 3 Existing corporate name to new corporate name ❶

Please give the new corporate name below.

New corporate name: **Gulf Air B S C (c)**

❶ If you are an EEA company go to Section 6 (if applicable) and Section 7. If you are a non-EEA company go to Section 5, then Section 6 (if applicable) and Section 7.

---

## 4 Change of name under Section 1048 of the Companies Act 2006 ❷

The company wishes to register an alternative name under which it proposes to carry on business in the UK under Section 1048 of the Companies Act 2006.

Please tick the appropriate box below to indicate the change: ❸

☐ Corporate name to an alternative name
☐ Alternative name to a corporate name
☐ Alternative name to a new alternative name

Please give the new name below

❷ A company may register an alternative name under which it proposes to carry on business in the United Kingdom under Section 1048 of the Companies Act 2006.

❸ You must tick one box

RESCAN

New corporate/ alternative name

---

**BIS** | Department for Business Innovation & Skills

CHFP000
05/10 Version 4 0

## OS NM01

Registration of change of name of overseas company as registered in the UK

---

**5** | **Overseas company name restrictions ❶**

This section does not apply to a European Economic Area (EEA) company registering its corporate name.

| | |
|---|---|
| Please tick the box only if the proposed company name contains sensitive or restricted words or expressions that require you to seek comments of government department or other specified body. | **❶ Overseas company name restrictions** A list of sensitive or restricted words or expressions that require consent can be found in guidance available on our website· www.companieshouse.gov.uk |
| ☐ I confirm that the proposed company name contains sensitive or restricted words or expressions and that approval, where appropriate, has been sought of a government department or other specified body and I attach a copy of their response. | |

---

**6** | **UK establishments**

A return must be delivered in respect of any alteration to the company particulars by each UK establishment. If, however, a company has more than one UK establishment, it may deliver only one form in respect of all those UK establishments, provided it completes the table below

| UK establishment name | Registration number | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

---

**7** | **Signature**

I am signing this form on behalf of the overseas company.

Signature

Signature
X  ☐  X

This form may be signed by.
Director, Secretary, Permanent representative.

CHFP000
05/10 Version 4 0

R- 561

## OS NM01
Registration of change of name of overseas company as registered in the UK

### 👤 Presenter information

You do not have to give any contact information, but if you do it will help Companies House if there is a query on the form. The contact information you give will be visible to searchers of the public record

Contact name **Mr. Rajesh Saggar**

Company name **Gulf Air**

Address **3 Shortlands, Hammersmith**

Post town **London**

County/Region

Postcode | W | 6 | | 8 | D | A | |

Country **England**

DX

Telephone **+44 208 600 7455**

### ✓ Checklist

We may return forms completed incorrectly or with information missing.

Please make sure you have remembered the following:
- ☐ The company name and number as registered in the UK match the information held on the public Register.
- ☐ You have entered the proposed new overseas company name in either Section 3 or Section 4 as appropriate.
- ☐ You have completed Section 5, if applicable.
- ☐ You have completed Section 6, if applicable.
- ☐ You have signed the form
- ☐ You have included copies of any response from an appropriate body, if applicable.
- ☐ You have provided the correct fee.

### ❗ Important information

Please note that all information on this form will appear on the public record.

### £ How to pay

A fee of £10 is payable to Companies House to change the name of an overseas company. Make cheques or postal orders payable to 'Companies House'.

### ✉ Where to send

You may return this form to any Companies House address:

**England and Wales:**
The Registrar of Companies, Companies House, Crown Way, Cardiff, Wales, CF14 3UZ.
DX 33050 Cardiff.

**Scotland·**
The Registrar of Companies, Companies House, Fourth floor, Edinburgh Quay 2,
139 Fountainbridge, Edinburgh, Scotland, EH3 9FF.
DX ED235 Edinburgh 1
or LP - 4 Edinburgh 2 (Legal Post).

**Northern Ireland:**
The Registrar of Companies, Companies House, Second Floor, The Linenhall, 32-38 Linenhall Street, Belfast, Northern Ireland, BT2 8BG.
DX 481 N R. Belfast 1

### ℹ Further information

For further information, please see the guidance notes on the website at www.companieshouse.gov.uk or email enquiries@companieshouse.gov.uk

This form is available in an alternative format. Please visit the forms page on the website at www.companieshouse.gov.uk

This form has been provided free of charge by Companies House.

CHFP000
05/10 Version 4.0

R- 562



## FILE COPY

## CERTIFICATE OF REGISTRATION OF A CHANGE OF NAME OF AN OVERSEA COMPANY

Company No. FC009916

The Registrar of Companies for England and Wales hereby certifies that

## GULF AIR COMPANY G.S.C.

has this day registered a change of name to

## GULF AIR B.S.C.(C)

Given at Companies House on **13th March 2012**





THE OFFICIAL SEAL OF THE
REGISTRAR OF COMPANIES

# R- 563

R- 564

# EXHIBIT 6

R- 564

BEFORE THE

DEPARTMENT OF TRANSPORTATION

WASHINGTON, D. C.

```
-------------------------------------------------
Joint Application of                          :
                                              :
    AMERICAN AIRLINES, INC.                   :
            and                               :    DOT-OST-2008-
    GULF AIR COMPANY                          :    0195
                                              :
under 14 CFR Part 212 for statements of       :
authorization (blanket codesharing) and       :
Under 49 USC 40109 for related exemption      :
authority                                     :
-------------------------------------------------
```

30-DAY NOTICE OF AMERICAN AIRLINES, INC.
OF ADDITIONAL CODESHARE SERVICES

Communications with respect to this document should be sent to:

HENRY C. JOYNER
Senior Vice President -
  Planning
American Airlines, Inc.
P.O. Box 619616, MD 5628
DFW Airport, Texas  75261

DON CASEY
Managing Director -
  International Planning
American Airlines, Inc.
P.O. Box 619616, MD 5635
DFW Airport, Texas  75261
(817) 963-2354
don.casey@aa.com

ROBERT A. WIRICK
Director, International Planning
American Airlines, Inc.
P.O. Box 619616, MD 5635
DFW Airport, Texas  75261
(817) 963-0394
robert.wirick@aa.com

October 23, 2008

WILLIAM K. RIS, JR.
Senior Vice President -
  Government Affairs
American Airlines, Inc.
1101 17th Street, N.W.
Suite 600
Washington, D.C.  20036

CARL B. NELSON, JR.
Associate General Counsel
American Airlines, Inc.
1101 17th Street, N.W.
Suite 600
Washington, D.C.  20036
(202) 496-5647
carl.nelson@aa.com

R- 565

BEFORE THE

DEPARTMENT OF TRANSPORTATION

WASHINGTON, D. C.

```
-------------------------------------------------
Joint Application of                     :
                                         :
    AMERICAN AIRLINES, INC.              :
            and                          :   DOT-OST-2008-
    GULF AIR COMPANY                      :   0195
                                         :
under 14 CFR Part 212 for statements of  :
authorization (blanket codesharing) and  :
under 49 USC 40109 for related exemption :
authority                                :
-------------------------------------------------
```

30-DAY NOTICE OF AMERICAN AIRLINES, INC.
OF ADDITIONAL CODESHARE SERVICES

American Airlines, Inc., under condition (c) of

Appendix C to the Notice of Action Taken in this docket issued

on August 4, 2008, hereby gives notice that, effective no

sooner than 30 days from the date hereof, the GF* designator

code of Gulf Air Company will be displayed on flights operated

by American or American Eagle between GF* U.S. gateways and the

following points:

> Albuquerque
>
> Buffalo
>
> Charlotte
>
> Cincinnati
>
> Cleveland
>
> El Paso

R- 566

- 2 -

Fort Lauderdale

Nashville

Omaha

Pittsburgh

Sacramento

Santa Ana Orange County

Syracuse

Tulsa

Respectfully submitted,

CARL B. NELSON, JR.
Associate General Counsel
American Airlines, Inc.

October 23, 2008

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing document by email on the following persons:

scott.mcclain@delta.com
sametta.c.barnett@delta.com
kquinn@pillsburywinthrop.com
bkeiner@crowell.com
sascha.vanderbellen@nwa.com
bruce.rabinovitz@wilmerhale.com
jonathan.moss@wilmerhale.com
jeffrey.manley@united.com
bob.kneisley@wnco.com
robert.land@jetblue.com
msinick@ssd.com
cdonley@ssd.com
anbird@fedex.com
dvaughan@kelleydrye.com
kevin.montgomery@polaraircargo.com
jrichardson@johnlrichardson.com
lhalloway@crowell.com
efaberman@wileyrein.com
mroller@rollerbauer.com
howard_kass@usairways.com
benjamin.slocum@usairways.com
jhill@dlalaw.com
bill@mietuslaw.com
mgoldman@sgbdc.com
rsilverberg@sgbdc.com
dhainbach@ggh-airlaw.com
mcmillin@woa.com
mchopra@jamhoff.com
russell.bailey@alpa.org
dkirstein@yklaw.com
jyoung@yklaw.com
donna.kooperstein@usdoj.gov
dwight.moore@ustranscom.mil
jim.ballough@faa.gov
byerlyjr@state.gov
recohn@hhlaw.com
cjsimpson@zsrlaw.com
pmurphy@lopmurphy.com
lachter@starpower.net
anita.mosner@hklaw.com

October 23, 2008    CARL B. NELSON, JR.

R- 568

R- 569

# EXHIBIT 7

R- 569

**BEFORE THE
DEPARTMENT OF TRANSPORTATION
WASHINGTON, D.C.**

Application of

**ETIHAD AIRWAYS P.J.S.C.**

for statement of authorization pursuant to 14 C.F.R. Part 212

    and

**GULF AIR B.S.C. (C)**

For an Exemption

Docket DOT-OST-2019-___

**JOINT APPLICATION OF
ETIHAD AIRWAYS P.J.S.C. AND GULF AIR B.S.C. (C)**

Communications with respect to this document should be sent to:

Anita M. Mosner
Jennifer Nowak
Benjamin T. Slocum
Marina V. O'Brien
Holland & Knight LLP
800 17th Street, N.W., Suite 1100
Washington, DC  20006
T: (202) 419-2604
Email:  anita.mosner@hklaw.com

Counsel for Etihad Airways P.J.S.C.

Carol Anderson
Acting General Counsel
Gulf Air B.S.C. (c)
Building 122
Road 2403
Muharraq
Kingdom of Bahrain
Email: carol.anderson@gulfair.com

Counsel for Gulf Air B.S.C.(c)

DATED:  August 20, 2019

**NOTICE:  Any person may file an answer to this Joint Application.  The Joint Applicants are requesting expedited relief from the Department and will poll all interested parties.**

R- 570

# EXHIBIT 8

R- 571

**BEFORE THE
DEPARTMENT OF TRANSPORTATION
WASHINGTON, D.C.**

| | |
|---|---|
| Application of<br><br>**ETIHAD AIRWAYS P.J.S.C.**<br><br>for statement of authorization pursuant to 14 C.F.R. Part 212<br><br>    and<br><br>**GULF AIR B.S.C. (C)**<br><br>For an Exemption | Docket DOT-OST-2019-___ |

**APPLICATION OF
ETIHAD AIRWAYS P.J.S.C. AND GULF AIR B.S.C. (C)**

Pursuant to 14 C.F.R. Part 212, Etihad Airways P.J.S.C. ("Etihad") applies for a statement of authorization in order to engage display the Gulf Air B.S.C. (c) ("Gulf Air") code on its flights operated between the United States and Abu Dhabi. Gulf Air requests an exemption in order to permit it to hold out and market scheduled air transportation to the United States pursuant to this arrangement. The Joint Applicants intend to begin codeshare service as soon as possible and respectfully request expedited approval of this Application.[1] Etihad requests that the statement of authorization be granted for an indefinite period, consistent with Department precedent, so long as the codeshare agreement continues to be effective.

---

[1] To the extent necessary, Etihad requests a waiver of the 45-day advance filing requirement contained in 14 C.F.R. § 212.10(d)(2). The carriers will poll on these applications.

**R- 572**

USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 573 of 971

Joint Application of Etihad Airways P.J.S.C. and
Gulf Air B.S.C. (C)
Page 2

In support of this joint application, the Joint Applicants respectfully state as follows:

1.      Etihad requests a statement of authorization in order to display Gulf Air's GF* designator code in conjunction with foreign air transportation of persons, property, and mail on flights operated by Etihad between points in the United States and in points in the U.A.E.

3.      Etihad holds a foreign air carrier permit that authorizes it to engage in scheduled and charter foreign air transportation of persons, property, and mail from points behind the U.A.E. and intermediate points to a point or points in the United States and beyond.[2]

4.      Gulf Air hereby applies for exemption authority to hold out service to the United States pursuant to its code-sharing arrangement with Etihad.  Approval of this authority would be entirely consistent with the Department's prior approvals of codesharing by Gulf Air.[3]

5.      The codeshare authorization requested herein is fully consistent with the applicable open skies air transport agreements currently in place between the United States and both the U.A.E. and Bahrain, as well as with the public interest.[4]  As the Department has noted:

> Increased international codesharing and other cooperative arrangements can benefit consumers by increasing international service options and enhancing competition between carriers, particularly for traffic to or from cities behind major gateways. By stimulating traffic, the increased competition and service options should expand the overall international market and increase overall opportunities for the aviation industry.[5]

---

[2] See DOT Order 2010-8-6 (Aug. 11, 2010). Etihad also holds an exemption to engage in scheduled and charter foreign air transportation of property and mail between any point or points in the United States and any other point or points. See Notice of Action Taken (November 2, 2012), DOT-OST-2005-23345 (renewal timely filed).

[3] See Notice of Action Taken, Docket DOT-OST-2005-20097 (July 23, 2007) (granting exemption to Gulf Air to provide air service to the United States pursuant to a codeshare arrangement with American Airlines).

[4] See U.S.-U.A.E. Open Skies Agreement, Art. 8, Para. 7 (Mar. 11, 2002) and U.S.-Bahrain Air Transport Agreement (May 24, 1999), Annex I, Section 1, Route B.1.

[5] Statement of United States International Air Transportation Policy, 60 Fed. Reg. 21841 (May 3, 1995).

R- 573

Joint Application of Etihad Airways P.J.S.C. and
Gulf Air B.S.C. (C)
Page 3

6.      Initially, Gulf Air will place its code on Etihad services operated from Abu Dhabi to Washington, DC (IAD), New York (JFK), Los Angeles (LAX) and Chicago (ORD).

7.      The Joint Applicants accept the conditions normally applicable to codeshare authority as requested herein.  The Joint Applicants will comply with the requirements of 14 C.F.R. Part 257 in operating and marketing the codeshare services described in this application.

**WHEREFORE**, Etihad Airways P.J.S.C. and Gulf Air B.S.C. (c) respectfully request that the Department of Transportation promptly approve a statement of authorization for Etihad to enable Gulf Air to place its designator code on its US-Abu Dhabi flights, and grant Gulf Air an exemption so that it can hold out and market Bahrain-US services as described herein.  The parties further request that the Department grant such other relief as the Department may deem necessary and appropriate.

Respectfully submitted,

Anita M. Mosner
Jennifer Nowak
Benjamin T. Slocum
Marina V. O'Brien
**Holland & Knight LLP**

Counsel for Etihad Airways P.J.S.C.

DATED:  August 20, 2019

Carol Anderson
Acting General Counsel
**Gulf Air B.S.C. (c)**

R- 574

**CERTIFICATE OF SERVICE**

I hereby certify that I have this date served the foregoing document on the persons identified below by causing a copy to be sent by electronic mail.

robert.wirick@aa.com
john.b.williams@aa.com
alex.krulic@delta.com
steven.seiden@delta.com
chris.walker@delta.com
dan.weiss@united.com
steve.morrisey@united.com
abried@jenner.com (Counsel for United)
dsmalls@ups.com
anita.mosner@hklaw.com (Counsel for UPS)
jennifer.nowak@hklaw.com (Counsel for UPS)
sllunsford@fedex.com
sharon.pasley@fedex.com
cefelts@fedex.com
rscarter@fedex.com
jcanny@amerijet.com
rpommer@atlasair.com
naveen.rao@atlasair.com
kevin.montgomery@polaraircargo.com
rsilverberg@sgbdc.com (Counsel for ABX)
jjohnson@sgbdc.com (Counsel for ABX)
matwood@cozen.com (Counsel for Kalitta Air)

Marina O'Brien
August 20, 2019

**R- 575**

R- 576

# EXHIBIT 9

R- 576



**UNITED STATES OF AMERICA
DEPARTMENT OF TRANSPORTATION
OFFICE OF THE SECRETARY
WASHINGTON, D.C.**

Issued by the Department of Transportation on August 29, 2019

## NOTICE OF ACTION TAKEN -- DOCKET DOT-OST-2019-0121

This serves as notice to the public of the action described below, taken by the Department official indicated (no additional confirming order will be issued in this matter).

**Applicants:  Etihad Airways P.J.S.C. (Etihad)
        Gulf Air B.S.C. (C) (Gulf Air)**

Date Filed: August 20, 2019

Relief requested:

**Gulf Air** - Exemption from 49 U.S.C. § 41301 to permit Gulf Air to engage in scheduled foreign air transportation of persons, property, and mail to the extent necessary to hold out service pursuant to its code-share arrangement with Etihad between points in the United States and points in the United Arab Emirates.

**Etihad -** Statement of authorization under 14 CFR Part 212 to the extent necessary to permit Etihad to display the GF* designator code of Gulf Air in conjunction with foreign air transportation of persons, property, and mail on flights operated by Etihad between points in the United States and points in the United Arab Emirates.

The joint applicants further request a waiver of the 45-day advance filing requirements under 14 CFR Part 212.

If renewal, date and citation of last action: New authority

Applicant representatives: Anita M. Mosner, Jennifer Nowak,
        Benjamin T. Slocum, & Marina V. O'Brien (Etihad Airways)  (202) 419-2604
        Carol Anderson (Gulf Air)

DOT Analyst:  Shelita A. Johnson (202) 366-1226

Responsive pleadings:  None filed

### DISPOSITION

Action:  Approved                                    Action date: August 29, 2019[1]

Effective dates of exemption authority granted: August 29, 2019 – August 29, 2021
Effective dates of statement of authorization granted: August 29, 2019, and will remain in effect indefinitely, subject to conditions.

Basis for approval (bilateral agreement/reciprocity): Bilateral Air Transport Agreements between the United States and the United Arab Emirates and between the United States and Bahrain

Except to the extent exempted/waived, this authority is subject to the terms, conditions, and limitations of our standard foreign air carrier exemption conditions (attached as Appendix A), and code-share conditions (attached as Appendix B).

_____

**Action taken by:  Brian J. Hedberg, Director
            Office of International Aviation**

_____

[1] The Department is acting on the joint applicants' request prior to the expiration of the answer period with the consent of all parties served.

R- 577

Under authority assigned by the Department in its regulations, 14 CFR Part 385, we found that (1) the applicants are qualified to perform the proposed operations; (2) our action was consistent with Department policy; (3) grant of the authority was consistent with the public interest; and (4) grant of the authority would not constitute a major regulatory action under the Energy Policy and Conservation Act of 1975.  To the extent not granted/deferred/dismissed, we denied all requests in the referenced Docket.  We may amend, modify, or revoke the authority granted in this Notice at any time without hearing at our discretion.

Persons entitled to petition the Department for review of the action set forth in this Notice under the Department's regulations, 14 CFR § 385.30, may file their petitions within seven (7) days after the date of issuance of this Notice.  This action was effective when taken, and the filing of a petition for review will not alter such effectiveness.

*An electronic version of this document is available on the World Wide Web at:*
***http://www.regulations.gov***

R- 578

**Appendix A**

**Foreign Air Carrier Exemption Conditions**

In the conduct of the operations authorized, the foreign carrier applicant shall:

(1)  Not conduct any operations unless it holds a currently effective authorization from its homeland for such operations, and it has filed a copy of such authorization with the Department;

(2)  Comply with all applicable requirements of the Federal Aviation Administration, the Transportation Security Administration, and with all applicable U.S. Government requirements concerning security, including, but not limited to, 14 CFR Parts 129, 91, and 36 and 49 CFR Part 1546 or 1550, as applicable. To assure compliance with all applicable U.S. Government requirements concerning security, the holder shall, before commencing any new service (including charter flights) from a foreign airport that would be the holder's last point of departure for the United States, contact its International Industry Representative (IIR) (formerly referred to as International Principal Security Inspector) to advise the IIR of its plans and to find out whether the Transportation Security Administration has determined that security is adequate to allow such airport(s) to be served;

(3)  Comply with the requirements for minimum insurance coverage contained in 14 CFR Part 205, and, prior to the commencement of any operations under this authority, file evidence of such coverage, in the form of a completed OST Form 6411, with the Federal Aviation Administration's Program Management Branch (AFS-260), Flight Standards Service (any changes to, or termination of, insurance also shall be filed with that office);

(4)  Not operate aircraft under this authority unless it complies with operational safety requirements at least equivalent to Annex 6 of the Chicago Convention;

(5)  Conform to the airworthiness and airman competency requirements of its Government for international air services;

(6)  Except as specifically exempted or otherwise provided for in a Department Order, comply with the requirements of 14 CFR Part 203, concerning waiver of Warsaw Convention liability limits and defenses;

(7)  Agree that operations under this authority constitute a waiver of sovereign immunity, for the purposes of 28 U.S.C. 1605(a), but only with respect to those actions or proceedings instituted against it in any court or other tribunal in the United States that are: (a)  based on its operations in international air transportation that, according to the contract of carriage, include a point in the United States as a point of origin, point of destination, or agreed stopping place, or for which the contract of carriage was purchased in the United States; or (b)  based on a claim under any international agreement or treaty cognizable in any court or other tribunal of the United States.  In this condition, the term "international air transportation" means "international transportation" as defined by the Warsaw Convention, except that all States shall be considered to be High Contracting Parties for the purpose of this definition;

(8)  Except as specifically authorized by the Department, originate or terminate all flights to/from the United States in its homeland;

(9)  Comply with the requirements of 14 CFR Part 217, concerning the reporting of scheduled, nonscheduled, and charter data;

(10) If charter operations are authorized, except as otherwise provided in the applicable aviation agreement, comply with the Department's rules governing charters (including 14 CFR Parts 212 and 380);

(11) Comply with such other reasonable terms, conditions, and limitations required by the public interest as may be prescribed by the Department, with all applicable orders or regulations of other U.S. agencies and courts, and with all applicable laws of the United States; and

(12) Be subject to all applicable provisions of any treaty, convention or agreement affecting international air transportation now in effect, or that may become effective during the period this exemption remains in effect, to which the United States and the holder's homeland are or shall become parties.

This authority shall not be effective during any period when the holder is not in compliance with the conditions imposed above.  Moreover, this authority cannot be sold or otherwise transferred without explicit Department approval under Title 49 of the U.S. Code.

6/2018

R- 579

**Appendix B**

**The code-share operations authorized here are subject to the following conditions:**

(a)  The statement of authorization will remain in effect only as long as (i) Etihad Airways and Gulf Air continue to hold the necessary underlying authority to operate the code-share services at issue, and (ii) the code-share agreement providing for the code-share operations remains in effect.

(b) Etihad Airways and/or Gulf Air must promptly notify the Department if the code-share agreement providing for the code-share operations is no longer effective or the carriers decide to cease operating any or all of the approved code-share services.   We expect this notification to be received within 10 days of such non-effectiveness or of such decision.  Such notices should be filed in docket DOT-OST-2019-0121.

(c)  The code-sharing operations conducted under this authority must comply with 14 C.F.R. Part 257 and with any amendments to the Department's regulations concerning code-share arrangements that may be adopted.  Notwithstanding any provisions in the contract between the carriers, our approval here is expressly conditioned upon the requirements that the subject foreign air transportation be sold in the name of the carrier holding out such service in computer reservation systems and elsewhere; that the carrier selling such transportation (i.e., the carrier shown on the ticket) accept responsibility for the entirety of the code-share journey for all obligations established in its contract of carriage with the passenger; and that the passenger liability of the operating carrier be unaffected.

(d)  The authority granted here is specifically conditioned so that neither Etihad Airways nor Gulf Air shall give any force or effect to any contractual provisions between themselves that are contrary to these conditions.

(e)  We may amend, modify, or revoke this authority at any time without hearing, at our discretion.

R- 580

# EXHIBIT 10

truthfinder

Background Report

# Mohannad Y Alhindi

[Link to Report](Link to Report)

Report Created

Feb 22, 2023

truthfinder.com/dashboard



## Disclaimer

TruthFinder IS NOT A CREDIT REPORTING AGENCY ("CRA") FOR PURPOSES OF THE FAIR CREDIT REPORTING ACT ("FCRA"), 15 USC §§ 1681 et seq. AS SUCH, THE ADDITIONAL PROTECTIONS AFFORDED TO CONSUMERS, AND OBLIGATIONS PLACED UPON CREDIT REPORTING AGENCIES, ARE NOT CONTEM-PLATED BY, NOR CONTAINED WITHIN, THESE TERMS.

You may not use any information obtained from this report in connection with determining a prospective candidate's suitability for:

Health insurance or any other insurance

Credit and/or loans

Employment

Education, scholarships or fellowships

Housing or other accommodations

Benefits, privileges or services provided by any business establishment.

The information provided by this report has not been collected in whole or in part for the purpose of furnishing consumer reports, as defined in the FCRA. Accordingly, you understand and agree that you will not use any of the information you obtain from this report as a factor in: (a) establishing an individual's eligibility for personal credit, loans, insurance or assessing risks associated with existing consumer credit obligations; (b) evaluating an individual for employment, promotion, reassignment or retention (including employment of household workers such as babysitters, cleaning personnel, nannies, contractors, and other individuals); (c) evaluating an individual for educational opportunities, scholarships or fellowships; (d) evaluating an individual's eligibility for a license or other benefit granted by a government agency or (e) any other product, service or transaction in connection with which a consumer report may be used under the FCRA or any similar state statute, including, without limitation, apartment rental, check-cashing, or the opening of a deposit or transaction account. You also agree that you shall not use any of the information you receive through this report to take any "adverse action," as that term is defined in the FCRA; you have appropriate knowledge of the FCRA and, if necessary, you will consult with an attorney to ensure compliance with these Terms.

R- 582

# Personal Information

This section contains known aliases, birth information, and potential imposters gleaned from public records.

| First Name | Middle Name | Last Name |
| --- | --- | --- |
| Mohannad | Y | Alhindi |

## Known Aliases

Mohannad Y Amani  Alhindi          M Y  Alhindi

## Images

 

## Possible Relatives

| Name | Age | Date of Birth |
| --- | --- | --- |
| Adnan H Elhindi | 85 (approx) | Jan 1, 1938 - Feb 22, 1939 |
| Amani A Alhindi | 53 | Jun 30, 1969 |
| Theodora  Sutton | 31 | Dec 4, 1991 |
| Toleen Muhannad Yousef Alhindi | 29 | May 16, 1993 |
| Laith M Alhindi | 25 | Sep 4, 1997 |

## Possible Associates

### Ahmad A Elhindi, 43 years old (approximate)

| Shared Locations | 7345 Tiffany Dr Apt 2w |
| --- | --- |
| | Ahmad A Elhindi and Mohannad Y Alhindi may have shared this address from Oct 01, 2011 to Jul 22, 2013 for 1 years 9 months 25 days |

### Yazn El Elhindi, 49 years old (approximate)

| Phone Numbers | (708) 770-4775 |
| --- | --- |
| | (708) 444-8367 |
| | (708) 594-2506 |
| | (773) 594-2506 |

R- 583

Possible Relationships

R- 584

# Contact Information

This section contains phone numbers, previous phone number and email addresses associated with Mohannad Y Alhindi.

---

Our extensive public records search did not uncover contact information for Mohannad Y Alhindi.

R- 585

# Location Information

This section includes all of the locations related to this person. Locations listed may include current residence, past residences, and places of work.

## 1904 Tamahawk Ln, Naperville, IL 60564-8936

| Dates Seen At Address | Subdivision | Classification | Address Type |
|---|---|---|---|
| Jul 23, 2014 - Feb 22, 2023 | Hearthlands Condo | Residential | Street<br>Address Contains a Valid Primary Number Range |

| Is Deliverable | Is Receiving Mail |
|---|---|
| Yes | Yes |

## 1140 Preserve Ave Apt 210, Naperville, IL 60564-1619

| Classification | Address Type | Is Deliverable |
|---|---|---|
| Residential | High-Rise<br>Address Contains Apartment or Building Sub-Units | Yes |

| Is Receiving Mail |
|---|
| Yes |

## 7345 Tiffany Dr Apt 2w, Orland Park, IL 60462-3586

| Dates Seen At Address | Subdivision | Classification | Address Type |
|---|---|---|---|
| Oct 1, 2011 - Jul 22, 2013 | Colonades | Residential | High-Rise<br>Address Contains Apartment or Building Sub-Units |

| Building | Is Deliverable | Is Receiving Mail |
|---|---|---|
| 6 Apartments | Yes | Yes |

R- 586

# Criminal & Traffic Records

DISCLAIMER: The criminal & traffic record information contained in our reports may not be 100% accurate or complete. This is because the information is pulled from records maintained by government agencies and the information contained in those records may not be 100% accurate or complete. Please use this information as a starting point for your own due diligence and investigation.

## Our extensive public records search did not uncover arrest, criminal, or traffic records information for Mohannad Y Alhindi.

How did we search for Mohannad Y Alhindi's data?

We scanned for Mohannad Y Alhindi's name among hundreds of millions of records from local, state, and federal databases in all 50 states.

Why didn't anything show up?

1. Some counties and states don't disclose certain information about criminal, arrest, and traffic records.

2. Mohannad Y Alhindi might not have a criminal, arrest, or traffic record!

3. Mohannad Y Alhindi's record is still being processed in their county.

R- 587

truthfinder®

EXCLUDED Based on your PDF customizations

# Sex Offender Information

This section displays the names, locations, and offenses of individuals charged with sex crimes living in close proximity to the locations associated with the subject of this report. Individuals listed below may have been charged with sex crimes as indicated. We make no representation as to the current status of these individuals. Some individuals listed below may no longer be required to register or report to state sex offender registries.

This section is not included in the download because of your PDF report customizations. To include it in a future report, toggle the section to "on" when you download again.

R- 588

# Social Profiles

This section contains possible online profiles and articles for the subject of this report.

## Facebook

### Mohannad Alhindi

mohannad.alhindi.3

| Usernames: | Related URLs | User's ID |
|---|---|---|
| mohannad.alhindi.3 | http://www.facebook.com/m... | 1287677627@facebook |

## Twitter

### Mohannad Alhindi

mohannadalhindi

| Usernames: | User's ID | Followers | Following |
|---|---|---|---|
| mohannadalhindi | 413907387@twitter | 19 | 164 |

## Google Profiles

### Mohannad Alhindi

Archived URL:
plus.google.com/105647915180359786880/about

User's ID
105647915180359786880@-
google

## instagram

### Mohannad Alhindi

alhindi.mohannad

| Usernames: | User's ID | Followers | Following |
|---|---|---|---|
| alhindi.mohannad | 3966756160@instagram | 150 | 262 |
| tawfiq00000 | | 0 | 201 |

## instagram

### Mohannad Alhindi

alhindimohannad

| Usernames: | User's ID | Followers | Following |
|---|---|---|---|
| alhindimohannad | 628970721@instagram | 78 | 22 |

R- 589

Twitter

Mohannad Alhindi

mikemikehotel

| Usernames: | User's ID | Followers | Following |
|---|---|---|---|
| mikemikehotel | 256596204@twitter | 0 | 0 |

## instagram

Mohannad Alhindi

alhmohannad

| Usernames: | User's ID | Followers | Following |
|---|---|---|---|
| alhmohannad | 8284656549@instagram | 9 | 4 |

## Twitter

Mohannad Alhindi

mohannadalhind5

| Usernames: | User's ID | Followers | Following |
|---|---|---|---|
| mohannadalhind5 | 1081650714462568449@twitter | 0 | 45 |

## Facebook

Mohannad Alhindi

mohannad.alhindi.7

| Usernames: | Related URLs | User's ID |
|---|---|---|
| mohannad.alhindi.7 | http://www.facebook.com/m... | 100001202401918@facebook |

## Facebook

Mohannad Alhindi

zaid.mohannad

| Usernames: | Related URLs | User's ID |
|---|---|---|
| zaid.mohannad | http://www.facebook.com/z... | 100000760751214@facebook |

## Facebook

Mohannad Alhindi

mohannad.alhindi

| Usernames: | Related URLs | User's ID |
|---|---|---|
| mohannad.alhindi | http://www.facebook.com/m... | 100001659795602@facebook |

## Pinterest

R- 590

Mohannad Alhindi

mohannadalhindi

Usernames:
mohannadalhindi

## Flixster

mohannadalhindi

| Usernames: | Other |
|---|---|
| mohannadalhindi | Khalid  Hamadneh |

## Residential Property

Mohannad Alhindi

| Addresses: | Other | Home_owner_lives_in_property | Last_sale_date |
|---|---|---|---|
| 1904 Tamahawk Lane, Naperville, Illinois, 60564 | Amani A Alhindi | True | 2014-08-19 |
| | | True | 2014-08-19 |

Apn
07-01-02-307-009-1001
07-01-02-307-009-1001

## Residential Address

Mohannad Alhindi

Addresses:

1904 Tamahawk Lane, Naperville,
Illinois, 60564

R- 591

# Business Profiles

This section includes business related information that we have found on this person such as business affiliations or employment history.

---

Our extensive public records search did not uncover businesses information for Mohannad Y Alhindi.

R- 592

# Licenses

Possible data may include FAA pilot licenses and DEA licenses for prescribing controlled pharmaceuticals.

---

## Our extensive public records search did not uncover licenses information for Mohannad Y Alhindi.

There are 618,660 FAA certified pilots in the U.S. That's less than 0.2% of the population.

So, if FAA license information doesn't show up here, Mohannad Y Alhindi may not have one.

R- 593

# Finances

This section includes financial information that we have found on this person such as bankruptcies, liens, judgments, foreclosures or evictions.

---

Our extensive public records search did not uncover finances information for Mohannad Y Alhindi.

R- 594

# Assets

This section includes assets information that we have found on this person. Possible data may include properties owned, watercrafts owned and vehicles owned or driven.

## Currently Owned Properties

### Currently Owned Property #1

Heartland

1904 Tamahawk Ln
Naperville, Illinois, 60564

0 beds | 2 baths | 1656 sq/ft

| Assessed Value | Mortgage Amount | Sale Amount | Tax Amount |
|---|---|---|---|
| $84,104.00 | $194,400.00 | $243,000.00 | $5,674.00 |
| 2020 | | Jul 16, 2014 | 2020 |

**Current Owner**
Mohannad Y Amani Alhindi

### Property Details

| Bedrooms | Bathrooms | Living Sq. Ft | Land Sq. Ft |
|---|---|---|---|
| 0 | 2 | 1656 | 15990 |
| Floors | Year Built | APN# | Type |
| 2 | 1994 | 07-01-02-307-009-1001 | Street; Address Contains A Valid Primary Number Range. |

### Property Value

| Land Value | Improvement Value | Assessed Value (2020) | Tax Amount (2020) |
|---|---|---|---|
| $57,822.00 | $194,490.00 | $84,104.00 | $5,674.00 |

### Assessed Value
2007 - 2020

| 2007 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|
| $85,444.00 | $85,444.00 | $83,991.00 | $81,440.00 | $80,470.00 |
| 2013 | 2014 | 2016 | 2017 | 2018 |
| $80,470.00 | $80,470.00 | $77,357.00 | $79,059.00 | $81,154.00 |
| 2019 | 2020 | | | |
| $81,734.00 | $84,104.00 | | | |

## Ownership History

Current Owner
Mohannad Y Alhindi
Amani A Alhindi

Ownership Details

R- 595

| Document Number | 2014.72979 | Sale Date | Aug 19, 2014 |
|---|---|---|---|
| Recording Date | Jul 16, 2014 | Deed Securities Category | ARMS-LENGTH RESIDENTIAL TRANSACTIONS (PURCHASE/RESALES) |
| Sale Amount | $243,000.00 | Owner | Mohannad Y Alhindi<br>Amani A Alhindi |
| Seller | Diane  Workman<br>Thomas  Hartenbach | | |

### Mortgage Information

| Document Number | 2014.72982 | Mortgage Amount | $194,400.00 |
|---|---|---|---|
| Mortgage Loan Type | New Conventional | | |

### Deed Information

| Document Type | WARRANTY DEED | Transaction Type | ARMS-LENGTH RESIDENTIAL TRANSACTIONS (PURCHASE/RESALES) |
|---|---|---|---|

---

### Previous Owner
## Diane C Workman
## Diane C Hartenbach

### Ownership Details

| Document Number | 2011.1491 | Sale Date | Jan 4, 2011 |
|---|---|---|---|
| Recording Date | Dec 3, 2010 | Deed Securities Category | REFI LOANS AND 2ND TRUST DEEDS (PURCHASE AND NON-PURCHASE MONEY TRUST DEEDS) |
| Owner | Diane C Workman<br>Diane C Hartenbach | | |

### Mortgage Information

| Document Number | 2011.1491 | Mortgage Amount | $231,800.00 |
|---|---|---|---|
| Mortgage Loan Type | New Conventional | | |

### Deed Information

| Document Type | STAND ALONE MORTGAGE | Transaction Type | REFI LOANS AND 2ND TRUST DEEDS (PURCHASE AND NON-PURCHASE MONEY TRUST DEEDS) |
|---|---|---|---|

---

### Previous Owner
## Diane  Workman

### Ownership Details

| Document Number | 2008.42958 | Sale Date | Apr 4, 2008 |
|---|---|---|---|
| Recording Date | Mar 31, 2008 | Deed Securities Category | REFI LOANS AND 2ND TRUST DEEDS (PURCHASE AND NON-PURCHASE MONEY TRUST DEEDS) |
| Owner | Diane  Workman | | |

### Mortgage Information

| Document Number | 2008.42958 | Mortgage Amount | $230,100.00 |
|---|---|---|---|
| Mortgage Loan Type | Unknown | | |

### Deed Information

R- 596

USCA Case #25-5128    Document #2186844    Filed: 08/06/2026    Page 597 of 971

TRUST DEEDS (PURCHASE
AND NON-PURCHASE MONEY
TRUST DEEDS)

---

Previous Owner

## Pinaki  Datta
## Rini  Datta

### Ownership Details

| | | | |
|---|---|---|---|
| Document Number | 2006.91304 | Sale Date | Jun 2, 2006 |
| Recording Date | Dec 1, 2005 | Deed Securities Category | REFI LOANS AND 2ND TRUST DEEDS (PURCHASE AND NON-PURCHASE MONEY TRUST DEEDS) |
| Owner | Pinaki  Datta<br>Rini  Datta | | |

### Mortgage Information

| | | | |
|---|---|---|---|
| Document Number | 2006.91304 | Mortgage Amount | $180,000.00 |
| Mortgage Loan Type | Unknown | | |

### Deed Information

| | | | |
|---|---|---|---|
| Document Type | STAND ALONE MORTGAGE | Transaction Type | REFI LOANS AND 2ND TRUST DEEDS (PURCHASE AND NON-PURCHASE MONEY TRUST DEEDS) |

---

Previous Owner

## Diane  Workman

### Ownership Details

| | | | |
|---|---|---|---|
| Document Number | 2006.26755 | Sale Date | Feb 14, 2006 |
| Recording Date | Jan 24, 2006 | Deed Securities Category | ARMS-LENGTH RESIDEN-TIAL TRANSACTIONS (PUR-CHASE/RESALES) |
| Sale Amount | $256,000.00 | Owner | Diane  Workman |
| Seller | Pinaki  Datta<br>Rini  Datta | | |

### Mortgage Information

| | | | |
|---|---|---|---|
| Document Number | 2006.26756 | Mortgage Amount | $230,400.00 |
| Mortgage Loan Type | Negative Amortization | | |

### Deed Information

| | | | |
|---|---|---|---|
| Document Type | WARRANTY DEED | Transaction Type | ARMS-LENGTH RESIDEN-TIAL TRANSACTIONS (PUR-CHASE/RESALES) |

---

Previous Owner

## Pinaki  Datta
## Rini  Datta

### Ownership Details

| | | | |
|---|---|---|---|
| Document Number | 2003.157518 | Sale Date | Jul 3, 2003 |

R- 597

Recording Date    Jun 26, 2003    Deed Securities Category    ARMS-LENGTH RESIDEN-
TIAL TRANSACTIONS (PUR-
CHASE/RESALES)

| | | | |
|---|---|---|---|
| Sale Amount | $220,000.00 | Owner | Pinaki  Datta |
| | | | Rini  Datta |
| Seller | Sandra L Castronovo | | |
| | Sandra L Castronovo | | |

**Mortgage Information**

| | | | |
|---|---|---|---|
| Document Number | 2003.157519 | Mortgage Amount | $169,350.00 |
| Mortgage Loan Type | Purchase Money Mortgage | | |

**Deed Information**

| | | | |
|---|---|---|---|
| Document Type | WARRANTY DEED | Transaction Type | ARMS-LENGTH RESIDEN-TIAL TRANSACTIONS (PUR-CHASE/RESALES) |

---

### Previous Owner
## Sandra L Castronovo

**Ownership Details**

| | | | |
|---|---|---|---|
| Document Number | 2002.104633 | Sale Date | Jun 26, 2002 |
| Recording Date | Jun 5, 2002 | Deed Securities Category | HELOCS - BOTH PURCHASE MONEY AND NON-PURCHASE MONEY HELOCS |
| Owner | Sandra L Castronovo | | |

**Mortgage Information**

| | | | |
|---|---|---|---|
| Document Number | 2002.104633 | Mortgage Amount | $40,000.00 |
| Mortgage Loan Type | Credit Line (Revolving) | | |

**Deed Information**

| | | | |
|---|---|---|---|
| Document Type | STAND ALONE MORTGAGE | Transaction Type | HELOCS - BOTH PURCHASE MONEY AND NON-PURCHASE MONEY HELOCS |

---

### Previous Owner
## Sandra  Castronovo

**Ownership Details**

| | | | |
|---|---|---|---|
| Document Number | 1999.79574 | Sale Date | Jun 25, 1999 |
| Recording Date | Jun 16, 1999 | Deed Securities Category | ARMS-LENGTH RESIDEN-TIAL TRANSACTIONS (PUR-CHASE/RESALES) |
| Sale Amount | $162,500.00 | Owner | Sandra  Castronovo |
| Seller | Frank C Caputo | | |
| | Frank C Caputo | | |

**Deed Information**

| | | | |
|---|---|---|---|
| Document Type | WARRANTY DEED | Transaction Type | ARMS-LENGTH RESIDEN-TIAL TRANSACTIONS (PUR-CHASE/RESALES) |

---

### Previous Owner
## Frank C Caputo

R- 598

## Ownership Details

| | | | |
|---|---|---|---|
| Document Number | 1999.79573 | Sale Date | Jun 25, 1999 |
| Recording Date | Jun 16, 1999 | Deed Securities Category | NON-ARMS LENGTH TRANSACTIONS WITH VALID TITLE COMPANY NAME (NO ACCOMODATIONS) |
| Owner | Frank C Caputo<br>Frank C Caputo | Seller | Frank C Caputo |

### Deed Information

| | | | |
|---|---|---|---|
| Document Type | INTRAFAMILY TRANSFER & DISSOLUTION | Transaction Type | NON-ARMS LENGTH TRANSACTIONS WITH VALID TITLE COMPANY NAME (NO ACCOMODATIONS) |

## Previous Owner
### Frank C Caputo

## Ownership Details

| | | | |
|---|---|---|---|
| Document Number | 1996.42543 | Sale Date | May 14, 1996 |
| Recording Date | Mar 26, 1996 | Deed Securities Category | NON-ARMS LENGTH TRANSACTIONS WITH VALID TITLE COMPANY NAME (NO ACCOMODATIONS) |
| Owner | Frank C Caputo | Seller | Frank C Caputo<br>Louise M Caputo |

### Deed Information

| | | | |
|---|---|---|---|
| Document Type | INTRAFAMILY TRANSFER & DISSOLUTION | Transaction Type | NON-ARMS LENGTH TRANSACTIONS WITH VALID TITLE COMPANY NAME (NO ACCOMODATIONS) |

## Previous Owner
### Frank C Caputo
### Louise M Caputo

## Ownership Details

| | | | |
|---|---|---|---|
| Document Number | 1994.75910 | Sale Date | Aug 4, 1994 |
| Recording Date | Jul 27, 1994 | Deed Securities Category | ARMS-LENGTH RESIDENTIAL TRANSACTIONS (PURCHASE/RESALES) |
| Sale Amount | $154,000.00 | Owner | Frank C Caputo<br>Louise M Caputo |

### Deed Information

| | | | |
|---|---|---|---|
| Document Type | WARRANTY DEED | Transaction Type | ARMS-LENGTH RESIDENTIAL TRANSACTIONS (PURCHASE/RESALES) |

R- 599

R- 600

# EXHIBIT 11

Illinois (/il-property-records/) > Will County (/il-will-county-property-records/)

> Naperville (/naperville-il-property-records/)

> Tamahawk Lane (/tamahawk-Ln-naperville-il-property-records/)



# 1904 Tamahawk Ln, Naperville, IL 60564 Property Record

This property is a residential condominium built in 1994 sitting on a 0.367 acre lot located at 1904 Tamahawk Ln, Naperville, IL 60564. Currently owner occupied and last sold in 2014 for $243,000, the 1,656 sq ft property has a fireplace.

## Property Highlights

‣ Year Built: **1994**

‣ Bathrooms: **3**

‣ Bedrooms: **--**

‣ Property Type: **Residential Condominium**

‣ Last Sale Date: **19-Aug-2014**

‣ Last Sale Price: **$243,000**

‣ Square Footage: **1,656 sq ft**

‣ Lot Size: **--**

‣ Garage: **Yes**



**PUBLIC RECORDS**

Due to the sensitive nature of the records you may find, please review & agree to the statement below to continue your search.

I will not use this service or the info it provides to make decisions about credit, employment, insurance, or any purpose that requires FCRA compliance.

I Agree

**Public Records Search**

TruthFinder                        Open ›

## 🏠 Property Details

## Quick Facts

| | |
|---|---|
| ‣ Type | **Residential > Condominium / Townhouse > Condominium** |
| ‣ Building Area | **1,656 sq ft** |
| ‣ Lot Area | **15,991 sq ft** |
| ‣ Garage Area | **342 sq ft** |
| ‣ Last Sold | **19-Aug-2014** |
| ‣ Sale Price | **$243,000** |
| ‣ Owner Occupied | **Yes** |

## Structural Details

### Interior

| | |
|---|---|
| ‣ Full Baths | **3** |
| ‣ Stories | **2** |

## Location & Zoning

| | |
|---|---|
| ‣ Street Address | **1904 TAMAHAWK LN** |
| ‣ City | **NAPERVILLE** |
| ‣ State | **IL** |
| ‣ Zip | **60564-8936** |
| ‣ Year Added | **2006** |
| ‣ Parcel Number | **07-01-02-307-009-1001** |
| ‣ Old Parcel Number | **01023070091001 (Changed in 1997)** |
| ‣ Property Usage | **Residential** |
| ‣ Jurisdiction | **WILL IL** |
| ‣ Minor Civil Division | **WHEATLAND** |
| ‣ Census Blockgroup | **2** |
| ‣ Census Block | **2010** |
| ‣ Census Tract | **880303** |
| ‣ Legal Description | **UNIT 1904 OF LOT 9 IN THE HEARTLANDS CONDOS, BEING A SUB OF PRT OF THE W1/2 OF THE SW1/4 OF SEC 2, T37N-R9E.** |
| ‣ Legal Range | **09E** |
| ‣ Legal Township | **37N** |

R- 603

▸ Legal Section          **02**

▸ Legal Quarter          **SW**

▸ Legal Subdivision      **HEARTLAND**

▸ Legal Block            **307**

▸ Legal Lot Number       **9**

## 👥 Owner

| | |
|---|---|
| Primary Owner | **AMANI A ALHINDI** |
| Secondary Owner | **AMANI A ALHINDI REVOCABLE TRUST** |
| Address | 1904 TAMAHAWK LN, NAPERVILLE, IL 60564–8936 |
| Owner Occupied | Yes |
| Notes | Owner is a Company, Owner is a Trust |

🔒 **Property Unlocked**

R- 604



Court Records: 4 Sources Found

Review Public Records                    Open ›

##  Tax Assessment & Valuation

### Property Tax

The tax bill for 1904 Tamahawk Ln is $6,066.48, which is 35% lower than the median bill of $9,398 in Naperville.

### Tax Bill Details

| | |
|---|---|
| Tax Bill | $6,066.48 |
| Tax Roll Date | 01-Jan-2022 |
| Last Checked | May 2024 |
| Filed Exemptions | Homeowner's |

R- 605

## 1904 Tamahawk Lane Property Tax Compared



| | Value |
|---|---|
| 1904 Tamahawk Ln | **$6,066.48** |
| Naperville | $9,398.24 |
| Will County | $6,763.08 |
| Illinois | $4,647.03 |

# Assessed Market Value

The market value for 1904 Tamahawk Ln is $269,193, which is 39% lower than the median assessed value of $441,270 in Naperville.

## Tax Assessment Details

| | |
|---|---|
| Assessment Year | 2022 |
| Total Assessed Value | $89,731 |
| Land Value | $20,563 |
| Improvements Value | $69,168 (77.00%) |
| Previous Assessment | $85,458 |

## Market Value Details

R- 606

| Valuation Year | 2022 |
| Total Market Value | $269,193 |
| Land Value | $61,689 |
| Improvements Value | $207,504 (77.00%) |

## 1904 Tamahawk Lane Assessed Property Value Compared



| Location | 20th Percentile | Median Market Value | 80th Percentile |
| --- | --- | --- | --- |
| Naperville | $298,113 | $441,270 | $583,050 |
| Will County | $173,478 | $253,599 | $377,562 |
| Illinois | $84,415 | $189,261 | $342,090 |

Source: **Will County Assessor Records**

#  Deeds, Mortgages & Sale History

## Assessor's Deed Record

R- 607

| | |
|---|---|
| Deed Names | **AMANI A ALHINDI, AMANI A ALHINDI REVOCABLE TRUST** |
| Known Transactions | **$243,000** on 19-Aug-2014<br><br>26-Jan-2023 |
| Deed Transaction Id | 434332222 |
| Deed Doc Number | 0000072979 |
| Last Transfer Date | Mon 8th May 2023 |
| Transfer Doc | 0000021932 |
| Transfer Transaction | 1010492911 |

## Recorder Entries

 **April 2023: Intrafamily Transfer, Transfer**

**Record Details**

R- 608

| Document Type | Intrafamily Transfer |
|---|---|
| Jurisdiction | WILL IL |
| Recording Date | Mon 8th May 2023 |
| Property Address | 1904 TAMAHAWK LN, NAPERVILLE, IL 60564-8936 |
| Document Number | 0000021932 |
| Map Reference | DOC R94-38361 |
| Instrument Date | Thu 27th April 2023 |
| Instrument | R2023021932 |
| Transaction Type | Transfer |
| Record Updated | 21-Aug-2023 |
| Last Checked | August 2023 |

## Transaction Details

| Tax | $0.00 |
|---|---|
| Amount Accuracy | Transfer Tax Exempt |
| Additional | Interfamily Transfer |

🔓 Unlocked    💙    👤    ☰

CountyOffice.org

(/)

**Transferred From (Grantor/Seller)**

🔍 Search Property Records by Address or Street

Owner Name | 📈 Tax Assessment | 📝 Deeds & Mortgages | 🏠 Nearby Properties | 🔍 Search by Address

**AMANI A ALHINDI** (Single Person or Individual)

**Transferred To (Grantee/Buyer)**

R- 609

| Name | **AMANI A ALHINDI** (Trustee, or Conservator), **AMANI A ALHINDI REVOCABLE TRUST** (Non-Individual) |
| --- | --- |
| Relationship | Revocable Trust |
| Address | 1904 TAMAHAWK LN, NAPERVILLE, IL 60564-8936 |

### January 2023: Affidavit of Death of Joint Tenant, Transfer

## Record Details

| | |
| --- | --- |
| Document Type | Affidavit of Death of Joint Tenant |
| Jurisdiction | WILL IL |
| Recording Date | Thu 26th January 2023 |
| Property Address | 1904 TAMAHAWK LN, NAPERVILLE, IL 60564-8936 |
| Document Number | 0000004273 |
| Map Reference | DOC R93-89902 |
| Instrument Date | Tue 24th January 2023 |
| Instrument | R2023004273 |
| Transaction Type | Transfer |
| Record Updated | 21-Aug-2023 |
| Last Checked | August 2023 |

## Transaction Details

R- 610

| Tax | $0.00 |
|---|---|
| Amount Accuracy | Zero or No Consideration Stated |
| Additional | Interfamily Transfer |

## Transferred From (Grantor/Seller)

| Name | **AMANI A ALHINDI** (Surviving Joint Tenant), **MOHANNAD Y ALHINDI** (Deceased) |
|---|---|

## Transferred To (Grantee/Buyer)

| Name | **AMANI A ALHINDI** (Surviving Joint Tenant) |
|---|---|
| Address | 1904 TAMAHAWK LN, NAPERVILLE, IL 60564-8936 |

#  Nearby Properties on Tamahawk Ln

| Address ⬍ | Market Value ⬍ | Owner ⬍ |
|---|---|---|
| 1880 Tamahawk Ln, Naperville, IL 60564 (/property-record-1880-tamahawk-ln-naperville-il-60564-036/) | $244,305 | ✅ (/property-record-1880-tamahawk-ln-naperville-il-60564-036/#property-owner) |
| 1884 Tamahawk Ln, Naperville, IL 60564 (/property-record-1884-tamahawk-ln-naperville-il-60564-02f/) | $274,281 | ✅ (/property-record-1884-tamahawk-ln-naperville-il-60564-02f/#property-owner) |
| 1903 Tamahawk Ln, Naperville, IL 60564 (/property-record-1903-tamahawk-ln-naperville-il-60564-fe4/) | $249,720 | ✅ (/property-record-1903-tamahawk-ln-naperville-il-60564-fe4/#property-owner) |
| 1907 Tamahawk Ln, Naperville, IL 60564 (/property-record-1907-tamahawk-ln-naperville-il-60564-fe7/) | $237,108 | ✅ (/property-record-1907-tamahawk-ln-naperville-il-60564-fe7/#property-owner) |
| 1908 Tamahawk Ln, Naperville, IL 60564 (/property-record-1908-tamahawk-ln-naperville-il-60564-02c/) | $231,936 | ✅ (/property-record-1908-tamahawk-ln-naperville-il-60564-02c/#property-owner) |
| 1911 Tamahawk Ln, Naperville, IL 60564 (/property-record-1911-tamahawk-ln-naperville-il-60564-fe0/) | $231,423 | ✅ (/property-record-1911-tamahawk-ln-naperville-il-60564-fe0/#property-owner) |

→ View all 97 Properties on Tamahawk Ln (/tamahawk-ln-naperville-il-property-records/)

## 🔍 Property Records Search by Address

---

Search our free real estate database to access detailed property records. Enter an address to find property deeds, owner information, property tax history, assessments, home values, sales history, mortgages, and more.



| 🔍 Enter Property Address Here | **Search Property** |

> **For your privacy we don't log searches you make.**
> To save properties in your Property History, click the (🔵) button on any property page (it'll turn into a ❤️ when saved).

## Property Records in Nearby Streets

Tamahawk Ln, Naperville, IL (/tamahawk-ln-naperville-il-property-records/)

Alandale Cir, Naperville, IL (/alandale-cir-naperville-il-property-records/)

Brossman St, Naperville, IL (/brossman-st-naperville-il-property-records/)

Tee Girl Ct, Naperville, IL (/tee-girl-ct-naperville-il-property-records/)

Salix Cir, Naperville, IL (/salix-cir-naperville-il-property-records/)

Willow Ridge Dr, Naperville, IL (/willow-ridge-dr-naperville-il-property-records/)

Sutton Cir, Naperville, IL (/sutton-cir-naperville-il-property-records/)

Landore Dr, Naperville, IL (/landore-dr-naperville-il-property-records/)

95th St, Naperville, IL (/95th-st-naperville-il-property-records/)

## Property Records in Nearby Cities

Naperville, IL (/naperville-il-property-records/)

Bolingbrook, IL (/bolingbrook-il-property-records/)

Eola, IL (/eola-il-property-records/)

Naperville, TX (/naperville-tx-property-records/)

Plainfield, IL (/plainfield-il-property-records/)

Aurora, IL (/aurora-il-property-records/)

Romeoville, IL (/romeoville-il-property-records/)

Warrenville, IL (/warrenville-il-property-records/)

Woodridge, IL (/woodridge-il-property-records/)

→  All Illinois Property Records (/il-property-records/)

# 🚨 Safety Zone

R- 613

**Need to protect your privacy?**

As a verified user, you can request to have your information removed from this property record. Each request is processed immediately and later carefully reviewed by our team.

 Request Removal

For security purposes, all removal requests are cryptographically signed using your passkey and permanently logged in your account activity.

**Want peace of mind about your property's privacy?**

We understand the importance of knowing if anyone has accessed your information. As a verified user, you can check if other users have previously unlocked this property record.

 Check Activity

For transparency and your peace of mind, we maintain secure logs of all property unlocks while respecting user privacy.

⚠️ **Important:** Please check the activity history before requesting a property redaction, as this page will not exist after your request is actioned.

---

About Us (/about-us/)

Contact Us (/contact-us/)

Privacy Policy (/privacy-policy/)

36-17 30th Avenue, Suite 200

New York, New York 11103

332-244-4146 (tel:+1-332-244-414)

    ▶

(https://www.facebook.com/...property/)

© 2014-2025 CountyOffice.org.

All Rights Reserved. CountyOffice.org is an independent provider of public records & government services information.

YOUR USE OF THIS SITE IS AT ALL TIMES SUBJECT TO OUR TERMS AND CONDITIONS (/terms-and-conditions/) AND THE DISCLAIMERS SET FORTH THEREIN.

R- 614

R- 615

# EXHIBIT 12

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

| | | |
|---|---|---|
| **Samiha Ayysah, Feras Hindi,** | | |
| **Tala Josephano** | ) | **Case No.:  1:24-cv-03434-ACR** |
| | ) | |
| Plaintiffs | ) | |
| **American Airlines Inc. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendants | ) | |
| | ) | |
| _____ | ) | |

**AFFIDAVIT OF PlAINTIFF TALA JOSEPHANO**

**IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXHIBIT A**

I, Tala Josephano, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as

follows:

1.  I am a named Plaintiff in the above-captioned action and the sister of the late Captain

    Mohannad Alhindi ("Decedent"), who passed away on December 14, 2022. I have

    firsthand knowledge of his domicile, employment, and personal affairs. He was a close

    friend to me as he replaced my sick dad in giving me love.

2.  From approximately 2014 through the time of his death, Captain Alhindi maintained his

    permanent home and residence at 1903 Tomahawk Court, Naperville, Illinois. He owned

    this property, paid the mortgage and taxes, and kept the majority of his personal

**R- 616**

USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 617 of 971

belongings there. His children were enrolled in U.S. schools, and his wife resided in the United States during this period.

3. He finished paying the mortgage in Nov 2022 a month before he died.He maintained U.S.-based bank accounts, regularly paid utility bills at his Naperville residence, and subscribed to U.S. services using his Illinois address.

4. His 2021 and 2022 IRS tax returns were filed listing 1903 Tomahawk Court as his primary residence.

5. At the time of his death, Captain Alhindi was a lawful permanent resident (Green Card holder) of the United States. He had completed the residency requirements and was eligible and  preparing to file for U.S. citizenship upon retirement. His wife and two children are U.S Citizens who live in IL

6. He lived in Bahrain solely for employment purposes and maintained uninterrupted ties to his Illinois residence between rotations. He always returned to Naperville, Illinois between assignments abroad.

7. Captain Alhindi consistently returned to the United States to maintain his U.S. permanent resident status (Green Card), with the intent of retiring in Illinois. He retained U.S.-based legal counsel and an accountant, and filed U.S. tax returns on his foreign income. He had become eligible for U.S. citizenship.

8. I have personal knowledge that Captain Alhindi held employment contracts and/or compensation agreements with Gulf Air that were updated after 2004, reflecting his promotion to Captain, Instructor, and Senior Captain, and his assignment to the Boeing fleet in 2019 in preparation for upcoming U.S. flights. He was paid extra for codeshare flights and training First Officers on those routes. The employment contract labeled as

R- 617

Exhibit A is dated prior to 2005, during a period when Gulf Air operated under a different legal structure.

9. By contrast, I possess knowledge and records of at least three updated compensation agreements, including his 2019 Boeing fleet assignment, none of which are referenced in Exhibit A.

10. I have met my brother in London Multiple times through his codeshare flights and training.

11. I contributed toward mortgage payments for his Naperville property during 2020 and 2021, when Gulf Air reduced his salary due to the COVID-19 pandemic.

12. Captain Alhindi and I frequently discussed his future retirement plans. He intended to permanently relocate to Illinois and start a family business with me for his son. He also planned to work at a potential Gulf Air station at Chicago O'Hare International Airport as local

13. He was excited and ready for Gulf Air flying to the U.S

14. I know a few of his Bahrain friends and I have met Captain Qasim Ghuloom Ismaeel, who submitted the declaration supporting Exhibit A, through FaceTime and joint conversations with my brother. Captain Qasim knew my brother's living arrangements in the U.S. and was aware of his domicile, promotions, and duties.

15. On December 17, 2022, Captain Qasim sent an internal email to Gulf Air pilots acknowledging Captain Alhindi's promotions and close relationship with him. These facts are omitted from both his sworn declaration and Exhibit A.

16. The contract submitted by Defendant Gulf Air as Exhibit A is materially misleading. It is an outdated agreement executed by a now-defunct entity (Gulf Air G.S.C.) and omits at

R- 618

least 18 years of updated employment terms and domicile changes. It does not reflect the Decedent's actual duties, rank, salary, or legal residence at the time of his death.

17. We have discussed a possibility of instructing for American Airlines Inc once retired as he believed in them as the national airlines of the U.S and his record flying their codeshare flights through Gulf Air would give him an entry

18. He never wanted to be buried in Jordan, and we shared bad experiences in that authoritarian country. He never called it home after he left.

19. I respectfully submit this affidavit in support of Plaintiffs' Motion to Strike Exhibit A, as the document fails to reflect the Decedent's true legal status, domicile, and employment terms, and stands to materially mislead the Court on a central issue.

I declare under penalty of perjury that the foregoing is true and correct.

Submitted,

May 29 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

R- 619

## CERTIFICATE OF SERVICE

I hereby certify that on May 29 2025, Plaintiff Feras Hindi, Plaintiff Tala & Plaintiff Samiha will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Motion to Strike Exhibits

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Email

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark  **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Service Processor ABC Legal service

Submitted,

May 29 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767

R- 620

1

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

**Civil Division**

| | | |
|---|---|---|
| **Samiha Ayysah, Feras Hindi,** | | |
| **Tala Josephano** | ) | **Case No.: 1:24-cv-03434-ACR** |
| | ) | |
| Plaintiffs | ) | |
| **American Airlines Inc. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendants | ) | |
| | ) | |
| _____ | ) | |

**PLAINTIFFS' EMERGENCY MOTION TO STAY PROCEEDINGS PENDING**

**FEDERAL INVESTIGATION, CONGRESSIONAL REVIEW, AND JUDICIAL**

**DETERMINATION REGARDING FOREIGN INTERFERENCE**

NOW COMES Plaintiffs Samiha, Feras and Tala Josephano, Pro Se, respectfully moving this

Court to issue an immediate stay of all proceedings in this matter pending:

1. A federal investigation into the conduct of Defendants Gulf Air B.S.C. and American

   Airlines Inc., including harassment and their noncompliance with U.S. federal aviation

   laws, misrepresented declarations, and willful misrepresentation of facts and safety

   compliance;

2. A meeting with members of the United States Senate and its relevant committees

   regarding foreign interference by the Kingdom of Jordan King Abdullah, the Kingdom of

**RECEIVED**

JUN 4 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

R- 621

Bahrain Prince Suliman, and individuals acting within or in concert with the United States government. Plaintiff Tala has already reached out to two senates already and will be reaching out to the DOJ ;

3. The completion of a thorough review of this Court's own role in potentially facilitating or passively enabling such interference or intimidation;

4. And to allow for the order and completion of protective investigations into Plaintiff's well-documented claims of harassment, retaliation, and unlawful surveillance initiated or supported by foreign powers and potentially overlooked by U.S. authorities, approved on personal level by an authority within the system

5. The court has subject matter and personal Jurisdiction over both Defendants for each Of Plaintiffs' claims

## GROUNDS FOR MOTION

The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." See  Landis, 299 U.S. at 254–55 . Plaintiffs request this stay under the Court's well-established authority to manage its docket and prevent injustice. See Landis v. North American Co., 299 U.S. 248, 254 (1936); Clinton v. Jones, 520 U.S. 681, 706 (1997); Dellinger v. Mitchell, 442 F.2d 782, 787 (D.C. Cir. 1971). Given the credible and ongoing threats to Plaintiff Tala's constitutional rights, personal safety, and ability to fully participate in these proceedings, a temporary stay is necessary and appropriate to protect due process and judicial integrity.

R- 622

3

Plaintiffs respectfully notifies the Court that, after a documented series of ignored complaints and escalating retaliation, the failure to order an investigation within the next 48 hours will be the 'last straw.' This final act of inaction, when viewed in context with the Court's prior omissions, left Plaintiffs with no alternative but to pursue remedies outside this forum, including reporting to oversight bodies and the public, as the Court's conduct will have collectively amounted to a denial of due process and protection under the law

Plaintiff Tala  presents the following extraordinary circumstances in support of this Motion:

1. A credible and substantiated pattern of foreign harassment, threats, surveillance, and retaliatory conduct directed at Plaintiff and connected to this litigation, including interference with internet access, evidence tampering, and coordinated psychological pressure;

2. The involvement of foreign government actors and their agents operating with impunity, and with concerning silence or complicity from certain segments of U.S. federal agencies, including but not limited to the FAA, which Plaintiff asserts has repeatedly ignored safety and compliance complaints to shield Defendants;

3. The submission of misrepresented  documentation by Gulf Air, and attempts to subvert the judicial process by obstructing motions, omission and full declaration of exhibits, and attempt to silencing Plaintiffs;

4. Ongoing retaliation against Plaintiff Tala  through social, professional, and digital targeting, which has been documented and previously raised before this Court in her May 27, 2025, Emergency Motion for Protective Order  and three times before in multiple submission since February 2025

R- 623

4

5. An absence of response from the Court to those serious allegations, raising concerns of due process violations and potential judicial misconduct or bias;

6. An urgent need to prevent this proceeding from being used as a tool of further retaliation or legal laundering of international misconduct by foreign actors.

7. Court and dockets facilitation in favor of both Defendant against Pro Se.

8. The Court's continued failure to respond to these urgent and substantiated allegations, if not remedied by the immediate ordering of an investigation within 48 hours, constitutes the 'last straw' in a series of ongoing due process violations and judicial inaction

9. Plaintiff Tala has all the evidence to need to prove her claims. The public interest is clearly implicated, which justifies a stay so those issues can be reviewed fully and responsibly.

## CONDITIONAL NOTICE OF ACTION

Plaintiff Tala Josephano states unequivocally: If this Court fails to take immediate action or order an investigation within the next 48 hours, she will proceed—without hesitation—to hold all responsible parties publicly and legally accountable.

Specifically, She will:

1. Name the Court and the presiding Judge as respondents in formal complaints to the United States Senate, the Department of Justice, the State Department, and all relevant oversight and ethics bodies, explicitly documenting the Court's inaction and disregard for my life-threatening circumstances.

R- 624

5

2. File a public report with national and international media outlining the Court's failure to protect a U.S. resident from targeted foreign harassment, surveillance, and retaliation, and exposing any perceived favoritism or complicity in these unlawful acts.

3. Pursue all available legal remedies, including but not limited to, filing claims under civil conspiracy statutes against any individual or institution—including this Court—that has knowingly ignored or enabled these ongoing violations of my rights and safety.

4. Publicly identify, by name, every individual and entity involved in obstructing justice or enabling this misconduct, including through peaceful protest and lawful public demonstration. Plaintiff Tala has no issue camping in front of the Senate building until the meeting day to protect herself while holding a sign stating her fear.

Let there be no misunderstanding, Plaintiff is fully prepared to take these steps, regardless of any threats of sanctions or incarceration, this court biased power doesn't scare a person on the right seeking justice. Her respect for the law and this institution is unwavering, but her commitment to defending innocent lives, her own life, her rights, and the principles of justice is even stronger. If the Court continues to ignore its duty, Plaintiff will ensure that the truth is brought to light and that every avenue for accountability is pursued. Plaintiffs respectfully note procedural concerns regarding the handling of this case, including its direct assignment to Judge Ana Reyes without referral to a magistrate judge.

Plaintiffs further observe that certain actions and language from the Court appear to have favored Defendants in ways that raise concerns about impartiality. Although Plaintiffs have not formally moved for recusal, they submitted a Notice indicating their intent to prepare a recusal motion, in the belief that the Court would voluntarily consider stepping aside to preserve the appearance of fairness. To date, no such recusal has occurred, and Plaintiffs remain concerned that this has

compromised the perception of neutrality in a matter involving serious public safety implications.

Defendants will suffer no undue prejudice from a temporary stay of proceedings, unless and until they are proven complicit in the underlying misconduct—which Plaintiffs allege they are. In contrast, Plaintiffs, particularly Plaintiff Tala, face ongoing and escalating harm, including threats to her safety and violations of her constitutional rights. The disparity in harm is substantial. A stay is necessary not only to protect Plaintiffs' access to justice, but also to prevent irreparable injury while serious allegations remain unresolved and the Court continues to observe without intervention.

**CONCLUSION**

WHEREFORE, Plaintiffs respectfully requests that this Court:

1. Immediately STAY all proceedings for all Plaintiffs in this case until a neutral, independent investigation is ordered and completed into the conduct of Gulf Air B.S.C. and American Airlines Inc., including their documented fraud, noncompliance with federal aviation laws, and willful misrepresentation of facts to this Court and their influence inside this court

2. Order an urgent protective investigation into Plaintiff Tala's ongoing harassment, retaliation, and unlawful surveillance, which has been reported to law enforcement and is supported by multiple police reports. This includes surveillance enabled or supported by foreign governments authorized by someone in the USA government, specifically tied to the Kingdom of Jordan, in retaliation for Plaintiff's activism and public criticism of their corrupted regime in stealing US Aid money

R- 626

Case 1:24-cv-03434-ACR    Document 49    Filed 06/04/25    Page 7 of 10
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 627 of 971

7

3.  Acknowledge and address the Court's own inaction in failing to respond to three (3) prior serious requests for investigation and protection, which has left Plaintiff exposed to escalating danger, including interference with Plaintiff's electronic devices, tampering with food and medicine, and psychological harassment.

4.  Warn and restrain Defendants, their counsel, and any associated government agents from further harassment, interference, or intimidation of Plaintiff, directly or indirectly, throughout the duration of these proceedings.

5.  Plaintiffs respectfully request that the Court authorize the issuance of a subpoena directed to the appropriate federal agency or entity, compelling disclosure of the identity of the official(s) who authorized or approved any surveillance activities targeting Plaintiff Tala. Plaintiffs allege that such surveillance, if conducted without legal basis or judicial oversight, constituted a violation of Plaintiff Tala's constitutional rights under the First, Fourth, and Fifth Amendments, as well as applicable federal statutes and international human rights standards. The subpoena is necessary to identify responsible parties and preserve evidence essential to Plaintiffs' claims.

6.  Refer this matter to the appropriate Congressional oversight committee and DOJ, State Department and federal investigative authorities for immediate review of foreign interference and government complicity in the harassment and targeting of US Plaintiff.

7.  Order investigation on the FAA and their colluding with Gulf Air and American Airlines especially Agent Ryan Landers and Marc Nichols. Plaintiffs will not submit evidence without another official being present in this court

8.  Order any other relief deemed just and necessary to protect Plaintiffs' constitutional rights, personal safety, and the integrity of these proceedings, including access to secure

R- 627

Case 1:24-cv-03434-ACR    Document 49    Filed 06/04/25    Page 8 of 10
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 628 of 971

8

technology and communication channels so Plaintiffs may participate fully in her own defense.

Plaintiff Tala emphasizes that the continued failure of this Court to act places her life and safety at immediate risk. Plaintiff cannot respond to motions, access her own legal documents, or safely participate in these proceedings due to ongoing surveillance and intimidation. The Court's silence and inaction, after repeated urgent requests, have left Plaintiff with no choice but to seek outside intervention and to notify oversight bodies and the public if relief is not granted within 48 hours.

**Respectfully submitted,**

Dated: June 4, 2025

**Pro Se Plaintiffs**

*Tala Josephano*
615 S Catalina Ave #233
Redondo Beach, CA 90277

347-749-4980

*Feras Hindi*
7823 New London Dr.
Springfield, VA 22153

703-980-6955

R- 628

Case 1:24-cv-03434-ACR     Document 49     Filed 06/04/25     Page 9 of 10
USCA Case #25-7123     Document #2186844     Filed: 08/06/2026     Page 629 of 971

9

*Samiha Ayyash*
 7823 New London Dr.
 Springfield, VA 22153

 703-623-3767

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4 2025, Plaintiff Feras Hindi, Plaintiff Tala & Plaintiff Samiha will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Emergency Motion

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Email

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark  **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Email, First Class mail

Submitted,

June 4  2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767

R- 630

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SAMIHA AYYASH, *et al.*,          )
                                  )
    Plaintiffs,           )
                                  )          Case No. 1:24-cv-03434-ACR
v.                                )
                                  )
GULF AIR B.S.C. (C), *et al.*,    )
                                  )
    Defendants.           )
_____    )

## DEFENDANT GULF AIR B.S.C. (C)'S OPPOSITION TO PLAINTIFF TALA JOSEPHANO'S EMERGENCY MOTION FOR PROTECTIVE ORDER AND REQUEST FOR IN CAMERA HEARING

Defendant, Gulf Air B.S.C. (c) ("Gulf Air") submits its Opposition to Tala Josephano's ("Plaintiff Josephano" or "Plaintiff") Emergency Motion for Protective Order and Request for in Camera Hearing[1] (hereinafter, "Plaintiff's Motion," "Motion for Protective Order" or "Motion") (Dkt. 46) and requests an award of attorney's fees in connection with preparing this Opposition and/or sanctions for Plaintiff's willful disregard of this Court's March 26, 2025, Order, persistent bad faith, and abuse of the legal process. In support thereof, Gulf Air respectfully states as follows:

---

[1] The full title of Plaintiff's Motion is "Plaintiff Tala Josephano's Emergency Motion for Protective Order and Request for In Camera Hearing Due to Harassment and Safety Threats by Defendant Gulf Air, the Jordanian Government on Behalf of King Abdullah, Prince Suleiman the Real Owner of Gulf Air B.S.C., and Individuals Assisting them within the U.S. Government." (Dkt. 46).

R- 631

**INTRODUCTION**

On March 26, 2025, this Court entered an Order prohibiting the parties from filing further motions without leave of Court ("the March Order").[2]  Nonetheless, Plaintiff Josephano filed her Motion for Protective Order *without* leave of Court on May 27, 2025.  In her Motion she claims, without providing any evidence in support thereof, to be a victim of "harassment" and "coordinated surveillance."  Plaintiff's Motion at 4 (Dkt. 46).  According to Plaintiff Josephano, Gulf Air, along with the Kingdom of Jordan and (possibly) the Kingdom of Bahrain, are operating through "British intermediaries," with assistance from "individuals in the United States government," to conspire against Plaintiff.  *Id.* at 2, 4.  The Motion does not provide the identity of any British or U.S. government official.  As a result of the acts of these co-conspirators, the vast majority of whom are unnamed and unidentified, she seeks the following relief: (1) an evidentiary hearing to resolve the motion; (2) a "comprehensive protective order prohibiting any party, their agents, or any affiliated third parties from engaging in further harassment, intimidation, and surveillance"; (3) a referral to the United States Attorney for the District of Columbia, the Federal Bureau of Investigation (FBI) and the Department of Justice's National

---

[2] Prior to the March Order, Plaintiff Josephano and her co-plaintiffs, Plaintiff Samiha Ayyash and Plaintiff Feras Hindi, filed multiple baseless motions in which they repeatedly sought an entry of default against Defendants and accused the Court of incompetence, negligence and "intentional foul play."  Although those motions were docketed as separate entries purportedly filed separately by each respective Plaintiff, it appears that most, if not all of the prior motions were prepared, at least in part, by Plaintiff Josephano.  *See* Plaintiffs' Motion For Extension of Time to Respond (Dkt. 45, at 3) (noting that Plaintiff Tala is "assisting co-Plaintiffs in drafting their legal filings" including their responses to Defendants' pending motions to dismiss).  Plaintiff Josephano's actions in this regard are improper, as this Court has previously found that "it is long established that a pro se litigant generally cannot represent the interests of other individuals."  *Silvious v. Coca-Cola Co.*, 893 F. Supp. 2d 233, 236–37 (D.D.C. 2012) (citing 28 U.S.C. § 1654).  In addition, it appears from the signature blocks of various filings that the same individual is signing pleadings filed on behalf of all three Plaintiffs, which, if true, would also be improper.

2

R- 632

Security Division "for immediate investigation"; and (4) the appointment of a Special Master or Independent Monitor. *Id.* at 6.

Plaintiffs in this action are no strangers to conspiracy theories, having previously asserted that the office of the Clerk of this Court was conspiring against them to benefit Gulf Air. *See, e.g.*, Plaintiff's Seven-Day Notice of Intent to File Entry of Default Judgment & Notice to the Court Regarding Clerk's Facilitation of Prejudicial Actions Against Plaintiff Feras Hindi (Dkt. 28 at 6); Plaintiff Samiha Ayyash's Seven-Day Notice of Intent to File Entry of Default Judgment and Notice of Prejudicial Actions Against Plaintiff (Dkt. 29 at 4). While Plaintiff Josephano's new claims involve an alleged multi-national, transatlantic conspiracy, and are certainly more fantastical, they are equally baseless, amounting to nothing more than a transparent attempt to disparage Gulf Air and delay the resolution of Gulf Air's pending Motion to Dismiss for Lack of Jurisdiction (Dkt. 43). To be sure, Plaintiff has failed to provide any factual support for her preposterous claims and outlandish conspiracy theories, evidencing a clear and reckless disregard for the truth.

Plaintiff Josephano's repeated contempt for the Court's rules and the March Order, as well as her blatant attempt to harm Gulf Air's reputation with baseless accusations, should not be without consequences. Accordingly, Gulf Air requests that the Court strike the Motion for Protective Order for violating the Court's March 26, 2025, Order and on the grounds that the Motion contains unfounded, scandalous and abusive claims. Further, the Court should award Gulf Air attorney's fees incurred in connection with responding to such a frivolous and unauthorized filing.

R- 633

## ARGUMENT

### I.  THE COURT SHOULD STIKE PLAINTIFF'S IMPROPER FILING.

District courts possess "the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."  *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016).  This inherent power "includes the authority to strike material from [the] docket for noncompliance with court orders or rules."  *Doe #1 v. Am. Fed'n of Gov't Emps.*, No. CV 20-1558 (JDB), 2023 WL 22059, at *3 (D.D.C. Jan. 3, 2023), *appeal dismissed*, No. 23-7067, 2024 WL 4824595 (D.C. Cir. Oct. 8, 2024).  A court may strike "any filed paper which it determines to be abusive or otherwise improper under the circumstances."  *Hlfip Holding, Inc. v. Rutherford Cnty., Tennessee*, No. 3:19-CV-00714, 2020 WL 6484254, at *2 (M.D. Tenn. Sept. 13, 2020).  The inherent power doctrine, therefore, "enables courts to protect their institutional integrity and to guard against abuses of the judicial process."  *Shepherd v. Am. Broad. Companies, Inc.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995).

Plaintiff Josephano filed her Motion for Protective Order without leave of Court and, therefore, violated the Court's March Order.  Accordingly, the Court should exercise its inherent powers and strike the Motion for Protective Order.  *See, e.g.*, *Doe #1*, No. CV 20-1558 (JDB), 2023 WL 22059, at *5 (striking filing for its failure to comply with prior court order).  Moreover, the Court may also exercise its inherent authority to strike the Motion for Protective Order on grounds that it is abusive, scandalous and advances baseless conspiracy theories and falsehoods in an effort to harm Gulf Air.  *Id*. (citing *Hlfip Holding, Inc.*, 2020 WL 6484254, at *2); *see also* *Shepherd*, 62 F.3d at 1472 (finding that court's inherent power can even include outright dismissal of lawsuit for abusive behavior).

R- 634

## II.    THE MOTION FOR PROTECTIVE ORDER SHOULD BE DENIED BECAUSE PLAINTIFF FAILED TO DEMONSTRATE GOOD CAUSE.

Even if the Court declines to strike the Motion for Protective Order, the Court should deny the Motion for several compelling reasons.

First and foremost, protective orders serve to protect parties from disclosure of information in the normal course of litigation, not unfounded conspiracy theories. A protective order, therefore, cannot provide Plaintiff the relief she seeks. Requests for a protective order are governed by Federal Rule of Civil Procedure 26(c). *See Petruss Media Grp., LLC v. Advantage Sales & Mktg. LLC*, 347 F.R.D. 39, 41 (D.D.C. 2024). Rule 26(c) permits "[a] party or any person from whom discovery is sought" to seek such an order. Fed. R. Civ. P. 26(c). Here, Plaintiff is not requesting a protective order related to discovery or to prevent the disclosure of confidential information. Rather, she seeks an order prohibiting Gulf Air and "any affiliated third parties" from engaging in unspecified acts that she has characterized as "harassment, intimidation, and surveillance." Plaintiff's Motion at 6.

To the extent Rule 26 is the proper basis for Plaintiff's Motion, she has the burden of proving that there exists good cause to grant the relief she seeks. It is clear by the very nature of the Motion that she cannot. The only way to establish good cause under Rule 26(c) is "by demonstrating the specific evidence of the harm that would result." *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 21 (D.D.C.) (quoting *Jennings v. Family Management*, 201 F.R.D. 272, 275 (D.D.C. 2001)). Even a cursory review of her Motion makes clear that Plaintiff has failed to meet her burden in this regard. The Motion is completely devoid of any specificity with respect to any alleged actions undertaken by Gulf Air which would justify the issuance of a protective order. Instead, Plaintiff includes only vague references and concludes, without any supporting evidence, that she has been subject to "harassment," "intimidation," and alleged

R- 635

"surveillance." Plaintiff's Motion at 1. As a result, Plaintiff has failed to demonstrate any need for a protective order, let alone any specific harms that would befall her without such an order. Accordingly, Plaintiff failed to meet the requisite good cause showing under Rule 26(c) and her request should be denied.

Furthermore, without identifying any specific acts allegedly constituting "harassment," "intimidation," or "surveillance," the Court is seemingly incapable of fashioning an order that can be tailored to address Plaintiff's unfounded concerns while not unreasonably and/or impermissibly restricting Gulf Air's activities. Additionally, the alleged "affiliated third parties" to whom the requested protective order would presumably also apply, including the governments of Bahrain and Jordan and unspecified individuals within the United States government, are not parties to this action and not properly before this Court. Nonetheless, any purported claim against either foreign governmental entity is likely barred by the Foreign Sovereign Immunities Act. For all of these reasons, Plaintiff's Motion should be denied.

### III.    THE COURT SHOULD AWARD GULF AIR ITS ATTORNEY'S FEES.

The Court should deny Plaintiff's Motion for Protective Order and award Gulf Air its attorney's fees and costs incurred in opposing Plaintiff's Motion pursuant to Federal Rule of Civil Procedure 37(a)(5). Rule 26(c)(3) "incorporates [Rule] 37(a)(5) and states that if the court denies a motion for a protective order, the court 'must, after giving an opportunity to be heard, require the movant . . . to pay' the opposing party's expenses and attorney's fees." *Jones v. Dufek*, 830 F.3d 523, 528 (D.C. Cir. 2016) (quoting Fed. R. Civ. P. 37(a)(5)(B)). The prevailing party is entitled to such an award unless the court finds that the motion was "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). "A party meets the substantially justified standard if there is a genuine dispute or if reasonable

R- 636

people could differ as to the appropriateness of the motion." *In re Donna*, No. AP 16-10026, 2019 WL 5550596, at *13 (D.D.C. Oct. 28, 2019) (cleaned up).

For the reasons articulated herein, Plaintiff's Motion is not "substantially justified." In fact, Plaintiff's Motion is nothing more than a smear campaign against Gulf Air in which Plaintiff asserts disparaging and fantastical allegations that are not grounded in fact or reality. As the Motion is completely unjustified, there are no other circumstances that would make an award of expenses unjust. Accordingly, the Court should award Gulf Air its costs and reasonable attorney's fees expended in responding to Plaintiff's Motion pursuant to Fed. R. Civ. P. 37(a)(5)(B).

This Court has the "inherent authority to sanction 'the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . ." *Peterson v. Islamic Republic of Iran*, 224 F. Supp. 3d 17, 26 (D.D.C. 2016) (quoting *Marx v. General Revenue Corp.*, 568 U.S. 371, (2013)). Included in its inherent authority is an ability to award attorney's fees as a form of sanctions. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991).[3]

The Court can and should sanction Plaintiff Josephano for her willful disregard of the March Order. The March Order was clear – "The Court ORDERS that no parties are permitted to file any further motions without leave of Court." Not only has Plaintiff violated the March Order by filing the instant Motion without leave of court, but she has consistently continued to violate the March Order and apparently intends to keep doing so. *See* Plaintiffs' Motion to Strike Defendant Gulf Air's Exhibit A filed on May 29, 2025 (Dkt. 47); Plaintiffs' Emergency

---

[3] Rule 11 does not displace a district court's ability to issue sanctions under its inherent power, nor is a district court prevented from issuing sanctions through its intrinsic authority simply because the conduct in question could also be sanctioned under a statute or Rule. *Chambers*, 501 U.S. at 48–50.

R- 637

Motion to Stay Proceedings Pending Federal Investigation, Congressional Review, and Judicial Determination Regarding Foreign Interference filed on June 4, 2025 (Dkt. 49); *see also* Plaintiff's Motion at 5 (listing at least six (6) other motions that Plaintiff(s) intend(s) to file).

The Court should also exercise its inherent authority to sanction Plaintiff for exhibiting bad faith and acting in a vexatious manner throughout these proceedings as evidenced by multiple frivolous filings (and apparently assisting the co-plaintiffs with the same) against Gulf Air and Court staff,[4] repeatedly disregarding the rules of this Court and the March 26, 2025, Order, and for advancing scandalous and false allegations against Gulf Air in a blatant attempt to cause it harm. Plaintiff's status as a *pro se* litigant does not excuse her repeated and continued filing of baseless accusations which serve no purpose other than to harm the reputation of Gulf Air. Gulf Air, therefore, respectfully requests that the Court award attorney's fees incurred by Gulf Air in preparing the instant Opposition. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46.

## CONCLUSION

For the foregoing reasons, Defendant, Gulf Air B.S.C. (c) respectfully requests that the Court deny Plaintiff's Motion for Protective Order and Request for In Camera Hearing, award Gulf Air its attorney's fees for having to prepare the instant Opposition pursuant to Rule 37 or the Court's inherent authority, and grant Gulf Air such other relief as it deems just and proper.

---

[4] Plaintiffs continue to accuse Court personnel of engaging in improper conduct. *See*, *e.g.*, Plaintiffs' Emergency Motion to Stay Proceedings Pending Federal Investigation, Congressional Review, and Judicial Determination Regarding Foreign Interference filed on June 4, 2025, at 4 (Dkt. 49).

R- 638

Dated:  June 10, 2025

Respectfully Submitted,

**ECKERT SEAMANS CHERIN**
 **& MELLOTT, LLC**

*/s/ Mark A. Johnston*
Mark A. Johnston, Esq.
D.C. Bar No. 455764
Darcy C. Osta, Esq.
D.C. Bar No. 1686937
1717 Pennsylvania Ave., N.W.,
Suite 1200
Washington, D.C. 20006
(202) 659-6600
dosta@eckertseamans.com
mjohnston@eckertseamans.com

*Counsel for Gulf Air B.S.C. (c)*

R- 639

R- 640

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2025, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF filing system, which will serve an electronic copy on all

counsel of record, and I will also serve a copy of the foregoing via USPS first class mail upon the

following:

> Tala Josephano
> 615 Catalina Avenue, #233
> Redondo Beach, CA 90277
> *Pro Se Plaintiff*
>
> Samiha Ayyash
> Feras Hindi
> 7823 New London Drive, #233
> Springfield, VA 22153
> *Pro Se Plaintiffs*

*/s/ Mark A. Johnston*
Mark A. Johnston

10

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SAMIHA AYYASH, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:24-cv-03434-ACR |
| v. | ) | |
| | ) | |
| GULF AIR B.S.C. (C), *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT GULF AIR B.S.C. (C)'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE EVIDENCE ("EXHIBIT A") UNDER COURT INHERENT AUTHORITY**

Gulf Air B.S.C. (c) ("Gulf Air") submits its Opposition to Plaintiffs Tala Josephano's, Samiha Ayyash's, and Feras Hindi's (hereinafter, "Plaintiffs") Motion to Strike Defendant Gulf Air's Evidence "Exhibit A" Under Court Inherent Authority (hereinafter, "Motion to Strike" or "Motion") (Dkt. 47), and in support thereof, Gulf Air respectfully states as follows:

**INTRODUCTION**

In the instant Motion Plaintiffs request that this Court use its inherent authority to strike Exhibit A to the Declaration of Captain Qasim ("Exhibit A"), which was filed in support of Gulf Air's pending Motion to Dismiss for Lack of Jurisdiction ("Motion to Dismiss") (Dkt. 43). Specifically, Plaintiffs argue that Exhibit A, consisting of the original employment agreement between Gulf Air and the Decedent, Captain Alhindi, and two subsequent renewals thereof, is "misleading," an "incomplete presentation of facts," and "deceptive" because it does not include additional versions of the agreement that Plaintiffs insist must exist to coincide with Decedent's promotions throughout the years. *See, e.g.*, Plaintiffs' Motion at 5-9.[1] As a result, Plaintiffs assert

---

[1] Importantly, Plaintiffs do not attach any subsequent employment agreements to their Motion or otherwise produce any evidence to support their assertion that such agreements actually exist.

R- 641

that the Court should use its inherent authority to strike Exhibit A from the record.  Plaintiffs'
Motion at 5–8.

While Gulf Air acknowledges and does not dispute that courts possess broad authority to
strike improvident and improper filings in circumstances involving abuse and/or prejudice to the
non-moving party, Plaintiffs have failed to meet their burden to demonstrate that the document
they seek to strike falls within the very narrow scope of materials subject to being stricken, as
Exhibit A is not scandalous, impertinent, extreme or offensive and it unquestionably bears a
relationship to the issues in controversy.  *See, e.g.*, *Hlfip Holding, Inc. v. Rutherford Cnty.,
Tennessee*, No. 3:19-CV-00714, 2020 WL 6484254, at \*2 (M.D. Tenn. Sept. 13, 2020).  In
addition, and despite Plaintiffs' claims to the contrary, Exhibit A neither violates this Court's
Standing Order in Civil Cases ("Standing Order") nor any applicable rule.  Thus, the case law on
which Plaintiffs rely in support of their request to strike is inapposite.

In fact, Plaintiffs are the only parties that have systematically failed to comply with this
Court's Orders and rules.  The instant Motion was filed in violation of the Court's March 26, 2025
Order ("March Order") and demonstrates a troubling pattern of openly defying court orders[2] in a
transparent attempt to delay resolution of Gulf Air's pending Motion to Dismiss for as long as
possible.[3]  Accordingly, Gulf Air requests that the Court strike the Motion to Strike for violating

---

[2] *See, e.g.*, Plaintiff Tala Josephano's Emergency Motion for Protective Order and Request for in
Camera Hearing (filed May 27, 2025) (Dkt. 46); Plaintiffs' Emergency Motion to Stay Proceedings
Pending Federal Investigation, Congressional Review, and Judicial Determination Regarding
Foreign Interference filed on June 4, 2025 (Dkt. 49), all of which were filed without leave of Court.

[3] Plaintiffs requested and were granted a thirty (30) day extension of time, until June 12, 2025, to
respond to Gulf Air's Motion to Dismiss.  *See* May 19, 2025, Minute Order.  From the time that
Plaintiffs requested their extension to the new response deadline, Plaintiffs have filed three
motions (Dkts. 46, 47, 49) and have apparently been working on at least six (6) other motions that
Plaintiff(s) intend(s) to file in the near future.  *See* Plaintiff Tala Josephano's Emergency Motion

R- 642

the Court's March Order and consider whether further sanctions are warranted to prevent future abuses of the legal process.

<div align="center">

**<u>ARGUMENT</u>**

</div>

**I.    PLAINTIFFS FAILED TO ARTICULATE ANY LEGITIMATE REASON WHY THE COURT SHOULD EXERCISE ITS INHERENT AUTHORITY TO STRIKE EXHIBIT A.**

District courts possess "the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). The inherent power doctrine "enables courts to protect their institutional integrity and to guard against abuses of the judicial process." *Shepherd v. Am. Broad. Companies, Inc.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995). A court may, therefore, strike "any filed paper which it determines to be abusive or otherwise improper under the circumstances." *Hlfip Holding, Inc.*, 2020 WL 6484254, at *2.

However, motions to strike are generally disfavored and should be used sparingly. *Khan v. U.S. Dep't of Homeland Sec.*, No. CV 22-2480 (TJK), 2024 WL 4164644, at *5 (D.D.C. Sept. 12, 2024). As courts have explained:

> Although a motion to strike rests within the discretion of the trial judge, it is disfavored and should be granted only when the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration and their presence in the pleading throughout the proceeding will be prejudicial to the moving party. Motions to strike will generally be granted as to alleged "scandalous or impertinent" language only where the language is "extreme or offensive." An allegation may be stricken as immaterial only when it bears no possible relationship

---

for Protective Order and Request for In Camera Hearing Due to Harassment and Safety Threats by Defendant Gulf Air, the Jordanian Government on Behalf of King Abdullah, Prince Suleiman the Real Owner of Gulf Air B.S.C. (c), and Individuals Assisting them within the U.S. Government (Dkt. 46 at 5). It is clear that Plaintiffs' goal is to circumvent a speedy resolution of the jurisdictional issues raised in Gulf Air's Motion to Dismiss thereby unnecessarily prolonging the litigation. To that end, Plaintiffs have improperly attempted to use the instant Motion as a vehicle to substantively attack the jurisdictional arguments raised in Gulf Air's Motion to Dismiss. Plaintiffs should not be permitted to have a "second bite at the apple."

<div align="center">

3

</div>

R- 643

to the controversy. Courts generally grant a motion to strike only where it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.

*Hlfip Holding*, *Inc.*, 2020 WL 6484254, at *2 (internal quotations omitted) (internal citations omitted).

Here, Plaintiffs failed to identify any portion of Exhibit A that could be deemed "scandalous," "impertinent," "extreme" or "offensive" such that it would be appropriate for this Court to strike it from the record. *Id.* Rather, Plaintiffs attempted to put forth "facts" to purportedly refute Exhibit A and the legal conclusions drawn therefrom, which does not operate to transform Exhibit A into scandalous, offensive or prejudicial material, and does not establish sufficient grounds to strike Exhibit A under the Court's inherent authority. Nor can Plaintiffs credibly claim that Exhibit A is "so unrelated to [their] claims as to be unworthy of consideration," as they have admitted that Exhibit A is relevant to the issue of domicile, which directly bears on the Rule 12(b)(2) argument asserted in Gulf Air's Motion to Dismiss. To be sure, Plaintiffs devote an entire section in their Motion to argue that Exhibit A cannot be used to prove the Decedent's domicile at the time of this death.

The Court's inherent power "includes the authority to strike material from [the] docket for noncompliance with court orders or rules." *Doe #1 v. Am. Fed'n of Gov't Emps.*, No. CV 20-1558 (JDB), 2023 WL 22059, at *3 (D.D.C. Jan. 3, 2023), *appeal dismissed*, No. 23-7067, 2024 WL 4824595 (D.C. Cir. Oct. 8, 2024); *see also Est. of Fakhoury v. Islamic Republic of Iran*, No. CV 21-1218 (JDB), 2022 WL 3355799, at *4 (D.D.C. Aug. 15, 2022) (striking sur-reply filed without court permission). Plaintiffs assert that Exhibit A violates Section 5(b) of the Standing Order because it includes "irrelevant and outdated material," and must be stricken pursuant to Section 7. Plaintiff's Motion at 9, 11-12, 31. However, Section 5(b) cannot form the bases for Plaintiffs'

R- 644

motion to strike as the purpose of the rule is to control, to the extent possible, the volume of exhibits submitted in support of a motion by ensuring that parties do not include extraneous materials. For example, Rule 5(b) operates to preclude parties from filing an entire deposition transcript when the filing only cites and/or refers to several pages of testimony. Exhibit A is certainly not extraneous and is directly related to the issues raised in Gulf Air's Motion to Dismiss. As Section 5(b) is not applicable, Exhibit A cannot be "rejected" for any perceived non-compliance under Section 7.[4]

Conversely, Plaintiffs' Motion is exactly the type of motion that should be stricken under the Court's inherent authority because it violates the Court's March Order. Accordingly, the Court should exercise its inherent powers and to strike Plaintiffs' Motion. *See, e.g.*, *Doe #1*, No. CV 20-1558 (JDB), 2023 WL 22059, at *5 (striking filing for its failure to comply with prior court order). Moreover, the Court may also exercise its inherent authority to strike the Motion to Strike on grounds that it is part of a pattern of improper, abusive, and burdensome litigation conduct by Plaintiffs. *See id.* (citing *Hlfip Holding, Inc.*, 2020 WL 6484254, at *2); *see also Shepherd*, 62 F.3d at 1472 (finding that court's inherent power can even include outright dismissal of lawsuit for abusive behavior).

---

[4] Plaintiffs also argue that Exhibit A should be excluded under Federal Rules of Evidence 401 and 403. Plaintiffs' Motion at 26-32. To the extent that the Federal Rules of Evidence apply to exhibits submitted in support of a motion to dismiss, Plaintiffs have failed to demonstrate that Exhibit A is either irrelevant or unduly prejudicial. Plaintiffs also complain of having suffered prejudice because they were "force[d]" to write the instant Motion and lengthy Memorandum. Plaintiff's Motion at 30. However, Plaintiffs' arguments are unavailing, as they could have, and should have, addressed their issues with Exhibit A in their opposition to Gulf Air's Motion to Dismiss, saving themselves the time and effort of preparing the instant Motion.

R- 645

**II.    THE MOTION TO STRIKE IS PROCEDURALLY IMPROPER AND SUBSTANTIVELY BASELESS, AND IT SHOULD BE DENIED.**

Even if the Court declines to strike the Motion, the Motion is without merit and should be denied for several reasons.  First, Plaintiffs' Motion is an improper attempt to oppose Gulf Air's Motion to Dismiss on the merits.  Plaintiffs use the instant Motion as an attempt to attack the completeness or credibility of Exhibit A while simultaneously advancing argument that the Decedent was domiciled in the State of Illinois at the time of his death.  *See, e.g.*, Dkt. 47-1, at 20. This is nothing more than a ploy by Plaintiffs to circumvent the Court's 45-page limitation for their opposition.  *See* LCvR 7(e).  Indeed, Plaintiffs' supporting Memorandum itself was almost 40 pages.  Plaintiffs' Motion is a transparent attempt to end run the Court's rules which should not be permitted.

Moreover, Plaintiffs' argument in support of their request to strike Exhibit A is largely premised on false assertions and mistaken assumptions.  For example, Plaintiffs claim that the employment contracts attached as Exhibit A terminated or expired after 2004.  *See* Plaintiffs' Motion at 11, 25, 27, 29, 30-31 (claiming that last employment contract "indisputably ends" in 2004).  Plaintiffs ignore the plain terms of the 2004 contract, which clearly state that the term thereof "shall subsist for an **indefinite period** commencing from **18th February, 2005**."  *See* Exhibit A to Exhibit 1 to Gulf Air's Motion to Dismiss (emphasis in original) (Dkt. 43-2 at 10). Therefore, Plaintiffs' assertion that there is "no evidence of continued contractual validity beyond 2004," is simply incorrect and contrary to the clear terms of the agreement.  Plaintiffs' Motion at 25.

As Plaintiffs mistakenly believe that the 2004 agreement expired, they conclude that there must be subsequent employment contracts between Gulf Air and the Decedent that coincide with his subsequent promotions.  As a result, the apparent absence of any subsequent agreements

R- 646

allegedly evidences Gulf Air's intentional "concealment" of operative facts from the record.  *See* Plaintiffs' Motion at 13, 16, 18.  Again, Plaintiffs have produced no support for their allegations in this regard, and as a result, such allegations are insufficient to support their request to strike Exhibit A.[5]

### CONCLUSION

For the reasons stated herein, Plaintiffs have failed to articulate sufficient grounds to support their request that this Court exercise its inherent authority to strike Exhibit A, as it is clearly relevant to the claims at issue in this case and it does not contain any statement or language that can even potentially be deemed offensive or abusive.  Additionally, Plaintiffs' claims that Gulf Air violated the Standing Order or the Federal Rules of Evidence are completely without merit.  Rather, it is the Plaintiffs who have repeatedly engaged in sanctionable conduct by violating this Court's Orders and the applicable rules with frivolous filings aimed at preventing the speedy resolution of Gulf Air's Motion to Dismiss, forcing Gulf Air to expend significant time and resources in responding thereto.

Defendant, Gulf Air B.S.C. (c), therefore, respectfully requests that the Court deny Plaintiff's Motion to Strike Exhibit A and grant Gulf Air such other relief as it deems just and proper.

---

[5] Plaintiffs also argue that the Court should disregard Exhibit A because the last employment contract contained therein is between Gulf Air Company GSC and the Decedent, and because Gulf Air's name subsequently changed from Gulf Air Company G.S.C. to Gulf Air B.S.C. (c), the agreement is not an accurate reflection of the terms of the Decedent's employment, including his salary, aircraft assignments or job duties, at the time of this death.  *See, e.g.*, Plaintiffs' Motion at 7, 13–14.  However, the terms of Decedent's employment are not at issue in this case and the fact that he was employed by Gulf Air at the time of his death is not in dispute.

R- 647

Dated:  June 12, 2025

Respectfully Submitted,

**ECKERT SEAMANS CHERIN**
  **& MELLOTT, LLC**

*/s/ Mark A. Johnston*
Mark A. Johnston, Esq.
D.C. Bar No. 455764
Darcy C. Osta, Esq.
D.C. Bar No. 1686937
1717 Pennsylvania Ave., N.W.,
Suite 1200
Washington, D.C. 20006
(202) 659-6600
dosta@eckertseamans.com
mjohnston@eckertseamans.com


*Counsel for Gulf Air B.S.C. (c)*

8

R- 648

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2025, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF filing system, which will serve an electronic copy on all

counsel of record, and I will also serve a copy of the foregoing via USPS first class mail upon the

following:

> Tala Josephano
> 615 Catalina Avenue, #233
> Redondo Beach, CA 90277
> *Pro Se Plaintiff*
>
> Samiha Ayyash
> Feras Hindi
> 7823 New London Drive
> Springfield, VA 22153
> *Pro Se Plaintiffs*

<div align="right">

*/s/ Mark A. Johnston*
Mark A. Johnston

</div>

R- 649

1

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

### Civil Division

| | | |
|---|---|---|
| **Samiha Ayysah, Feras Hindi,** | ) | |
| **Tala Josephano** | ) | **Case No.:  1:24-cv-03434-ACR** |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| **American Airlines Inc. ,** | ) | |
| | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendants | ) | |
| | ) | |
| _____ | ) | |

**Plaintiffs' Motion For Leave To Conduct Discovery Limited To The Issue Of Personal Jurisdiction over Defendant American Airlines Inc**

In order to develop the factual record necessary to oppose Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Plaintiffs respectfully move this Court for an Order granting leave to conduct discovery limited to whether Defendant, American Airlines, Inc. ("Defendant" or "American Airlines"), is subject to the personal jurisdiction of this Court.

Plaintiffs seek jurisdictional discovery because relevant facts regarding Defendant's contacts with the District of Columbia—including the nature, scope, and extent of its business activities, regulatory filings, consent, and corporate presence—are uniquely within the knowledge or control of Defendant and/or third parties and are essential to the jurisdictional analysis. Plaintiffs

RECEIVED

JUN 12 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia



R- 650

have made a prima facie showing of jurisdiction but require targeted discovery to further support both specific and general jurisdiction.

As detailed in the accompanying Memorandum of Points and Authorities in Support of Plaintiffs' Motion, the law of this Circuit authorizes jurisdictional discovery where doubt exists regarding the underlying facts necessary for personal jurisdiction.

Wherefore, Plaintiffs respectfully request that the Court grant leave to conduct discovery limited to the issue of the Court's personal jurisdiction over the Defendant.

Although Plaintiffs previously filed a Motion to Stay, the Court has not yet ruled on that request. In order to remove any doubt or inference that Plaintiffs are seeking to delay proceedings or avoid responding to the pending motion to dismiss, Plaintiffs respectfully submit this Motion for Leave to Conduct Jurisdictional Discovery that has been discussed with Defendant for three weeks ago and again today June 11 2025. This filing reflects Plaintiffs' good-faith intent to proceed diligently and to establish a factual basis for personal jurisdiction, irrespective of the Court's pending determination on the stay.

**<u>Statement of Compliance with D.D.C. LCvR 7.1(m)</u>**

Pursuant to L.Cv.R 7.1(m), Plaintiff Tala discussed this motion with American Airlines' counsel in an effort to narrow any areas of disagreement. Counsel for American Airlines advised that the Defendant opposes this motion. Plaintiff Tala and Defendant's counsel are in a good standing communication channel.

R- 651

USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 652 of 971

3

### DISCOVERY REQUESTS

**I. FAA Compliance Submissions (Purposeful Availment)**

1. **Production of Documents from American Airlines:**

   Produce all audit compliance certificates and related codeshare audit submissions for Gulf Air, from 2008 to 2024, that American Airlines submitted to the FAA's AFS-50 Codeshare Compliance Division. For each submission, provide any available metadata (including date, time, and originating office or IP address) and any cover letters, transmittal emails, or routing information indicating the location from which these documents were sent and the FAA office to which they were addressed.

2. **Interrogatory to American Airlines:**

   Identify, for each Gulf Air audit compliance certificate submitted to the FAA from 2008 to 2024, the physical or electronic address to which the submission was sent, the method of submission (e.g., email, online portal, mail), and the office location (city and state) from which the submission originated.

3. **Deposition of American Airlines' Regulatory Compliance Officer:**

   Permit a brief, limited deposition (not to exceed two hours) of the American Airlines DC employee most knowledgeable about the codeshare compliance submission process, to testify regarding the standard procedure for submitting audit compliance certificates to the FAA, including which FAA office(s) were designated recipients and the geographic location(s) from which submissions were made.

4. **Subpoena to the FAA AFS-50 Codeshare Compliance Division:**

   Produce all audit compliance certificates and related submission records received from

R- 652

4

American Airlines for Gulf Air from 2008 to 2024, or confirm receiving them, including any routing logs, cover sheets, or metadata indicating the office to which the documents were addressed and the method/location of receipt

5. **Deposition of FAA AFS-50 Representative:**

Permit a brief, limited deposition (not to exceed two hours) of an FAA AFS-50 staff member with knowledge of the codeshare audit submission process, to confirm the designated office for receipt of such submissions and whether American Airlines' Gulf Air audit compliance certificates were received and processed at the FAA's Washington, D.C. office.

6. **Identification of Appropriate FAA Contacts:**

Plaintiffs request that the FAA AFS-50 International Program Division, headquartered in Washington, D.C., and specifically its executive or administrative staff (including but not limited to Emily A. White, Jaclyn Cacia Spafford, or John E. Long), be identified as the appropriate contacts for the production of records and testimony regarding the receipt and processing of American Airlines' Gulf Air audit compliance certificates.

## II. Transacting Business in D.C.

1. **Revenue from D.C. to DCA:**

Produce documents sufficient to show revenue generated by American Airlines from ticket sales for flights originating in the District of Columbia and arriving at Ronald Reagan Washington National Airport (DCA) from 2008–2024, including both direct sales and sales through codeshare partners such as Gulf Air.

2. **Local Contracts and Distributors:**

Produce all contracts, agreements, or arrangements between American Airlines and any

R- 653

Case 1:24-cv-03434-ACR     Document 54     Filed 06/12/25     Page 5 of 8
USCA Case #25-7123     Document #2186844     Filed: 08/06/2026     Page 654 of 971

5

local businesses, distributors, or agents located in the District of Columbia from

2008–2024, including those involving Gulf Air or related to codeshare operations.

3.  **Federal and Local Government Contracts:**

Produce contracts, invoices, and revenue reports for all federal or District of Columbia

government agency contracts administered, performed, or managed in D.C. from

2008–2024, including any such contracts handled through American Airlines' D.C.

offices at 1101 and 1200 17th Street NW.

**III. Continuous and Systematic Business Presence**

4.  **D.C. Office Operations:**

Produce leases, utility bills, and operational records for American Airlines' D.C. offices

(1101 and 1200 17th Street NW) from 2008–2024, including employee headcount, roles

(e.g., regulatory compliance, government affairs), and budget allocations for D.C.

operations.

5.  **Internet and Website Revenue:**

Produce records showing internet ticket sales, subscriptions, and website-generated

revenue from customers with billing addresses in the District of Columbia for codeshare

flights, including those operated by Gulf Air, from 2008–2024.

These requests are narrowly tailored to establish the extent of American Airlines' business

activities and revenue generation in Washington, D.C., including DCA operations, local

contracts, and Gulf Air-related transactions, all of which are directly relevant to the "exceptional

case" general jurisdiction analysis.

R- 654

**IV. Codeshare Agreements and Compliance**

9.  **Codeshare Agreements:**

    Produce full copies of all codeshare agreements with Gulf Air (2008–2024), including renewals, amendments, and compliance certifications submitted to D.C.-based regulators, as well as documents directing staff to submit compliance materials to FAA offices in D.C

**V. Targeted Marketing and Sales in D.C.**

10. **D.C. Marketing and Sales:**

    Produce marketing strategies and campaign records targeting D.C. residents from 2008–2024, including AAdvantage program promotions for codeshare flights, and revenue reports for ticket sales originating in D.C. for codeshare flights operated by Gulf Air.

The discovery requests set forth herein are strictly limited to facts that are directly relevant to the Court's jurisdictional analysis and do not seek information beyond what is necessary to resolve the threshold question of personal jurisdiction. Each request is narrowly tailored to address only those business activities, regulatory submissions, and contacts that bear on American Airlines' presence and operations in the District of Columbia, as well as the receipt and processing of relevant documents by the FAA's AFS-50 division. Plaintiffs have deliberately confined the scope of discovery to avoid undue burden or expense for American Airlines or any third parties, ensuring that only essential, targeted information is sought to inform the Court's jurisdictional determination

R- 655

Case 1:24-cv-03434-ACR     Document 54     Filed 06/12/25     Page 7 of 8
USCA Case #25-7123     Document #2186844     Filed: 08/06/2026     Page 656 of 971

7

**Respectfully submitted,**

Dated: June 12, 2025

**Pro Se Plaintiffs**

*Tala Josephano*
 615 S Catalina Ave #233
 Redondo Beach, CA 90277

347-749-4980

*Feras Hindi*
 7823 New London Dr.
 Springfield, VA 22153

703-980-6955

*Samiha Ayyash*
 7823 New London Dr.
 Springfield, VA 22153

703-623-3767

R- 656

8

## CERTIFICATE OF SERVICE

I hereby certify that on June 12 2025, Plaintiff Feras Hindi, Plaintiff Tala & Plaintiff Samiha will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Motion Leave for Limited Discovery, Memorandum & attachments

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Email

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark  **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Email, First Class mail


Submitted,

June 12  2025

**Pro Se Plaintiffs**


Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980



Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955



Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767


R- 657

Case 1:24-cv-03434-ACR   Document 54-1   Filed 06/12/25   Page 1 of 50
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 658 of 971

1

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**


**Civil Division**


| | | |
|---|---|---|
| **Samiha Ayysah, Feras Hindi,** | ) | |
| **Tala Josephano** | ) | **Case No.:  1:24-cv-03434-ACR** |
| | ) | |
| Plaintiffs | ) | |
| **American Airlines Inc. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendants | ) | |
| | ) | |


**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

**MOTION FOR LEAVE TO CONDUCT DISCOVERY LIMITED TO THE ISSUE OF**

**PERSONAL JURISDICTION**


Please submit this memorandum in support of their motion to Leave to conduct discovery.


R- 658

2

## **TABLE OF AUTHORITIES**

**United States Supreme Court Cases**

- *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987)

- *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985)

- *Burnham v. Superior Court*, 495 U.S. 604, 637 (1990) (Brennan, J., concurring)

- *Daimler AG v. Bauman*, 571 U.S. 117 (2014)

- *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021)

- *Hanson v. Denckla*, 357 U.S. 235 (1958)

- *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)

- *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011)

- *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)

- *Walden v. Fiore*, 571 U.S. 277 (2014)

- *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980)

**Federal Court of Appeals Cases**

- *Crane v. Carr*, 814 F.2d 758, 760 (D.C. Cir. 1987)

- *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991)

- *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996)

- *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1095 (D.C. Cir. 2008)

- *Future Tech Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250–51 (11th Cir. 2000)

- *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351–52 (D.C. Cir. 2000)

R- 659

Case 1:24-cv-03434-ACR     Document 54-1     Filed 06/12/25     Page 3 of 50
USCA Case #25-7123     Document #2186844     Filed: 08/06/2026     Page 660 of 971

3

**Federal District Court Cases**

- *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 131–32 (D.D.C. 2004)

- *Azure United v. American Airlines*, No. 21-cv-XXXX (S.D.N.Y. 2021)

**D.C. Court of Appeals Cases**

- *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808 (D.C. 1976) (en banc)

- *Harris v. Omelon*, 985 A.2d 1103 (D.C. 2009)

- *Mouzavires v. Baxter*, 434 A.2d 988, 992, 995, 997 (D.C. 1981)

- *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320 (D.C. 2000) (en banc)

**Federal Statutes & Regulations**

- 49 U.S.C. § 40101, § 41712

- 14 C.F.R. § 212.10

- DOT Order OST-2008-0195

- FAA Order 8430.23

- ICAO Annexes 1, 6, 19

- Open Skies Agreement

R- 660

# **Table of Contents**

Introduction ............................................................. 8

Background ............................................................. 9

Prima Facie Jurisdictional Allegations ............................................................. 12

Argument ............................................................. 13

• The Law Is Well-Settled That Plaintiffs Are Entitled To Jurisdictional Discovery

............................................................. 13

• Through Jurisdictional Discovery, Plaintiff Can Supplement the Factual Basis Supporting the

Court's Personal Jurisdiction ............................................................. 14

Jurisdiction ............................................................. 15

Texas Is Not a Proper Venue; the District of Columbia Is .............................................................

17

Delaware Is Not a Proper Venue, DC Is ............................................................. 17

American Airlines Inc Codeshare History ............................................................. 18

American Airlines Availed Itself Through the Codeshare Program

............................................................. 18

R- 661

Codeshare Safety Programs ............................................................ 19

• Congressional and Regulatory Response to Codeshare Safety

Risks.................................................... 19

• Codeshare Agreements Impose Binding Regulatory Obligations Beyond Branding

............................................... 21

• Defendant American Airlines' Codeshare Agreement with Co-Defendant Gulf Air Originated

and Was Executed in Washington, D.C. ................................................ 22

The Government Contacts & Government Contracts .......................................................... 24

Reasonableness Factors Weigh in Favor of DC Jurisdiction

............................................... 29

Presence and Continuous Operations of American Airlines, Inc. in Washington, D.C.

............................................... 30

American Airlines Presence in DC ............................................................ 31

Regulatory and Compliance Submissions from Washington, D.C.

............................................... 32

Harm in the Forum & Harm To Plaintiffs ............................................................ 34

The Minimum Contacts Standard ............................................................ 35

R- 662

• Deliberate and Continuous Contacts with the District of Columbia

............................................................ 35

• Forum-Directed Commercial Activity and Quality and Nature of Contacts Support

Jurisdiction ............................................... 36

DC Long Arm Statute ................................................ 37

• D.C. Code § 13-423(a)(1) .............................................. 37

• D.C. Code § 13-423(a)(2) .............................................. 38

Due Process ............................................... 39

• Relatedness of Contacts to the Claim ................................................ 40

• Stream of Commerce ............................................... 41

• Fair Play and Substantial Justice ............................................... 42

• No Unilateral Conduct or Mere Foreseeability ............................................... 43

• Fairness Factors Support the Exercise of Personal Jurisdiction over American Airlines

............................................................ 43

Violation of Federal Statutes, Federal Law, Regulations, DOT Orders & Public Interest

............................................................ 45

R- 663

7

General Jurisdiction Under Exceptional Case ............................................................... 47

   • Exceptional Case and Need for Discovery ........................................................... 47

 FAA Certificate Of Compliance Submission Location

There are core factual disputes that warrant jurisdictional discovery:

Conclusion

R- 664

8

## **INTRODUCTION**

Plaintiffs respectfully submit this Memorandum of Points and Authorities in support of their Motion for Leave to Conduct Discovery Limited to the Issue of Personal Jurisdiction. To oppose Defendant American Airlines, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, Plaintiffs seek targeted jurisdictional discovery. As courts in this Circuit have long recognized, jurisdictional discovery is appropriate where, as here, Plaintiffs have made a prima facie showing of jurisdiction and further discovery is necessary to develop the factual record—particularly where essential facts lie within the exclusive control of the Defendant or third parties. Plaintiffs seek limited precise discovery into Defendant's continuous and systematic business contacts with the District of Columbia, including its codeshare agreements, regulatory filings, government contracts, physical presence, marketing, and corporate structure—all directly relevant to both specific and general jurisdiction under District of Columbia law and constitutional due process. Jurisdictional discovery appropriate where plaintiffs allege specific facts that could establish jurisdiction); See *Azure United v. American Airlines*, No. 21-cv-XXXX (S.D.N.Y. 2021) (granting jurisdictional discovery where facts bearing on forum contacts were in defendant's exclusive control).

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as complete diversity exists between Plaintiffs and Defendant, and the amount in controversy exceeds $75,000. Defendant American Airlines, Inc. maintains an established business presence in the District of Columbia, has consented to jurisdiction through its ongoing and purposeful activities, and is subject to general jurisdiction as an exceptional case.

R- 665

Case 1:24-cv-03434-ACR   Document 54-1   Filed 06/12/25   Page 9 of 50
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 666 of 971

9

This Court also has specific personal jurisdiction over Defendant American Airlines, Inc. pursuant to the District of Columbia's long-arm statute, D.C. Code § 13-423(a), as Plaintiffs' claims arise directly from Defendant's conduct within the statutory categories. Specifically, the claims are based on Defendant's negotiation, submission, and renewal of codeshare agreements and compliance certifications directed at D.C.-based regulators, which are central to the alleged fraud and regulatory violations. Exercising jurisdiction fully aligns with due process because Defendant maintains minimum contacts with the District of Columbia through its purposeful availment and established presence, and those contacts are substantially related to the core of Plaintiffs' claims. Accordingly, jurisdiction over American Airlines does not offend traditional notions of fair play and substantial justice. Plaintiffs thus satisfy both the D.C. long-arm statute and the Due Process Clause of the Fourteenth Amendment.

Venue is proper in this District because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in and through the District of Columbia. See 28 U.S.C. § 1391(b)(2). Texas and Delaware are not proper venues for these claims, and Defendant's motion to dismiss for lack of jurisdiction or improper venue

## BACKGROUND

Plaintiffs US citizens and residents of VA and CA filed their Amended Complaint in this Court on December 31, 2025 **( See DKT 3 )** , asserting claims for breach of duties, negligence, negligence per se, and fraud against Defendant American Airlines, Inc., and seeking damages. Plaintiffs' selection of the United States District Court for the District of Columbia is not a matter of convenience or forum shopping, but is compelled by the direct connection between the

R- 666

Case 1:24-cv-03434-ACR    Document 54-1    Filed 06/12/25    Page 10 of 50
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 667 of 971

10

alleged causes of action and acts and omissions that occurred within and through the District of Columbia.

Plaintiffs alleged the following claims in their Amendment Claims and they did their best as Pro Se to present their claims.  **<u>Negligence :</u>** Failure in implementing Safety codeshare operations; Failure to implement and maintain an effective internal Safety Management System (SMS); Failure to audit or properly audit Gulf Air in accordance with DOT/FAA orders and ICAO obligations; Failure to detect or correct known safety defects and regulatory violations; Failure to vet codeshare partners and respond to credible safety complaints; Failure to report Gulf Air's known failures to federal regulators; Failure to implement a complaint mechanism; Failure to detect safety risks; Failure to identify safety hazards; Failure to act on known safety risks and hazards; Failure to investigate safety complaints related to codeshare partners; Failure to respond to safety risk complaints; Failure to correct deficiencies in codeshare partners; Failure to monitor codeshare partner compliance; Failure to detect safety risks within codeshare partners; Failure to identify hazardous conditions involving codeshare partners; Failure to implement a compliant audit program; Failure to implement effective safety monitoring for codeshare partners; Failure to implement a required audit program for codeshare partners as directed by DOT/FAA orders and guidelines; Failure to act on safety complaints related to Captain Alhindi and his employer; Operation of codeshare flights with unfit crew members, connected to inadequate oversight and monitoring; Breach of multiple duties owed to Captain Mohannad Alhindi, Plaintiffs, passengers, regulators, and the public; Breach of fiduciary duty owed to Captain Mohannad Alhindi, Plaintiffs, passengers, and American citizens; Submission of materially false Certificates of Compliance to the FAA; Violation of public safety laws and policies that directly resulted in injury; Caused harm to Plaintiffs by violating safety statutes enacted to prevent such harms;

R- 667

Case 1:24-cv-03434-ACR    Document 54-1    Filed 06/12/25    Page 11 of 50
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 668 of 971

11

Violations of public safety rules, DOT orders, FAA safety regulations and guidelines, and ICAO standards; Omitting Gulf Air violations from Certificates of Compliance submitted to the FAA, in violation of DOT directives; Failure to report Gulf Air's failures to federal regulators; Failure to correct Gulf Air's known regulatory and safety deficiencies; Failure to report violations to the FAA.

**Negligence Per Se:** Plaintiffs allege violations by Defendant American Airlines, Inc., including: DOT Codeshare regulations; DOT Orders (including Docket OST-2008-0195 and subsequent renewals every two years); DOT/FAA Codeshare Safety Guidelines; ICAO Annexes 1, 6, and 19; Public Interest requirements under 49 U.S.C. § 40101; 14 CFR § 212.10; and engaging in unfair and deceptive practices under 49 U.S.C. § 41712. These violations constitute negligence per se, directly implicating aviation and public safety, and are central to Plaintiffs' claims.

**Fraud:** Plaintiffs allege that Defendant American Airlines, Inc. engaged in a pattern of fraudulent conduct by knowingly submitting false and misleading filings to federal agencies headquartered in Washington, D.C., including the FAA and DOT, from 2008 through 2025. These filings contained material misrepresentations and omissions regarding Gulf Air's regulatory violations, operational deficiencies, and non-compliance with mandatory safety standards. Defendant failed to disclose known safety issues, while making affirmative false assurances concerning Gulf Air's compliance with ICAO Annexes, FAA audit protocols, and DOT requirements. Defendant further engaged in deceptive marketing practices directed at the public and AAdvantage program members, promoting codeshare services as safe and federally vetted, despite possessing information to the contrary. It exploited federal regulatory structures and public trust to facilitate continued operations with an unfit foreign carrier, thereby

R- 668

12

concealing risks and deflecting scrutiny. American Airlines repeatedly submitted fraudulent certificates and audit representations to U.S. regulators, omitting material facts that would have disqualified Gulf Air from codeshare eligibility. These falsehoods were made with the intent to induce reliance by federal agencies, ensure regulatory approval, and enable commercial gain—all while exposing the public, passengers, crew, and Plaintiffs to substantial harm.

These alleged acts and omissions, conducted through and directed at the forum including the federal entities in Washington, D.C., form the basis of Plaintiffs' fraud claim and establish a direct jurisdictional nexus with the forum.

Plaintiffs respectfully submit that this Court has personal jurisdiction over Defendant American Airlines, Inc. under the applicable two-part test. As the D.C. Circuit has explained, "A court must first determine whether there is a basis for personal jurisdiction under the District of Columbia's long-arm statute, D.C. Code § 13-423(a). Second, the court must determine whether the exercise of personal jurisdiction comports with the requirements of due process under the Fourteenth Amendment to the United States Constitution." *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1095 (D.C. Cir. 2008). Plaintiffs meet both prongs. Defendant's conduct falls within multiple subsections of the long-arm statute, and its longstanding presence , commercial, regulatory, and lobbying activities in the District of Columbia establish the minimum contacts necessary to satisfy due process.

### Prima Facie Jurisdictional Allegations

Plaintiffs, both individually and on behalf of similarly situated U.S. passengers, crew members, and their families protected by federal and international aviation safety laws, allege personal, particularized, and ongoing injuries stemming from American Airlines' actions, including those

R- 669

Case 1:24-cv-03434-ACR    Document 54-1    Filed 06/12/25    Page 13 of 50
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 670 of 971

13

before and after the death of Captain Mohannad Alhindi, which are redressable by this Court. At this procedural stage, Plaintiffs have made a prima facie showing of personal jurisdiction over American Airlines, Inc. by alleging specific forum-related conduct—such as regulatory submissions, codeshare activities, and substantial business operations in Washington, D.C.—which must be accepted as true and construed in Plaintiffs' favor. Plaintiffs have complied with all procedural requirements and, to the extent that further jurisdictional facts are within American Airlines' exclusive control, reserve the right to seek jurisdictional discovery. Accordingly, the Amended Complaint alleges sufficient facts to withstand a motion to dismiss for lack of personal jurisdiction at this stage. Plaintiffs Apologize for the length but given the circumstance of being under pressure, Plaintiffs respectfully ask the court to ignore if there is repetition and to grant amend or trim if needed.

## ARGUMENT

### 1. The Law Is Well-Settled That Plaintiffs Are Entitled To Jurisdictional Discovery

Whenever a defendant raises lack of personal jurisdiction as an affirmative defense and the plaintiffs demonstrate that its jurisdictional allegations can be supplemented through discovery, the law in this Circuit is well-settled that Plaintiffs have the right to conduct jurisdictional discovery. A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum. See El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 676 (D.C. Cir. 1996); see also GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1351 (D.C. Cir. 2000); Edmond v. United States Postal Serv. Gen. Counsel, 949 F.2d 415, 425 (D.C. Cir. 1991); Crane v. Carr, 814 F.2d 758, 760 (D.C. Cir. 1987).

R- 670

Relying primarily on public sources, Plaintiffs put considerable evidence before the Court demonstrating American Airlines Inc Entering the Codeshare program into the U.S Market (1989: The term "code sharing" or "codeshare" was coined by Qantas and American Airlines. 1990: Qantas and American Airlines offered their first codeshare flights between Australian and U.S. cities) , including those that transact business in the District of Columbia.

Plaintiffîs Memorandum As described below, through jurisdictional discovery, Plaintiff, if necessary, can supplement the existing factual basis supporting the Courtís exercise of personal jurisdiction over Defendant. See GTE, 199 F.3d at 1351-52 (finding that jurisdictional discovery was warranted even though ì[t]he record [currently] before th[e] court [wa]s plainly inadequate.). See also Edmond, 949 F.2d at 425 (holding that, given the plaintiffís specific allegations, ìit [w]as an abuse of discretion to deny jurisdictional discovery . . . .); Crane, 814 F.2d at 760 (vacating, in part, the lower courtís decision, because the plaintiffís case was dismissed with no opportunity for discovery on the issue of personal jurisdictionî).

### 2.  Through Jurisdictional Discovery, Plaintiff Can Supplement The Factual Basis

 Supporting The Courts Personal Jurisdiction Over Defendant for its Opposition Motion, the Plaintiffs  proffered evidence, which taken together, strongly suggests that the court has Jurisdiction ( General and Specific) over American Airlines and that American Airlines has strong presence in DC. This evidence includes Codeshare joint application, Offices addresses, FAA office location for receiving codeshare audit certificates, continuous business in DC, lobbying and networking for company's gain. Plaintiff seeks to supplement this evidence by conducting discovery of American Airlines; this discovery should elicit more detailed information about their continuous systematic business in DC and contracts.

R- 671

USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 672 of 971

   Plaintiff is entitled to examine the company's continuous business in DC, quantity and quality of contacts, contracts, employees and the location of the Certificate of audits submitted to the FAA.  For example, Defendant suggests that an FAA office or agents outside DC receive the compliance  audit certificates, Plaintiff has submitted evidence of Codeshare Safety guideline (See Exhibit 8 FAA/DOT Codeshare Safety  Program ) stating that audit certificates are submitted to FAA ASP-50 Department in DC. ( Exhibit 9 FAA ASP offices contact).  Plaintiff Tala also confirmed with the FAA and will ask to Subpoena th FAA agents that receive those certificates from American Airlines. Names and contact are in the attachment list of discovery requests.  ( SEE Limited Discovery requests Motion attached ).

The FAA and DOT, located in D.C., approved the codeshare based on audit certificates and compliance filings submitted by American Airlines. These approvals enabled the codeshare operations that led to harm. The filings—and omissions—originated in D.C., making jurisdiction proper.

### 3.  <u>Jurisdiction</u>

This Court has subject matter jurisdiction over Defendant American Airlines pursuant to 28 U.S.C. § 1332(a). Plaintiffs Samiha and Feras are domiciled in Virginia, and Plaintiff Tala is domiciled in California. Defendant American Airlines is incorporated in Delaware and maintains its principal place of business in Texas. Under 28 U.S.C. § 1332(c)(1), a corporation is a citizen of both its state of incorporation and the state of its principal place of business. None of the Plaintiffs shares citizenship with Defendant American Airlines, and therefore, complete diversity exists among the parties. Plaintiffs each allege in good faith an amount in controversy exceeding $75,000, thereby satisfying the jurisdictional requirement under 28 U.S.C. § 1332(a).

R- 672

16

Accordingly, this Court has original jurisdiction over this matter based on diversity of citizenship and the requisite amount in controversy

The District of Columbia is the most appropriate forum under the fairness principles recognized by federal courts. The factors of judicial efficiency the docket already has 49 entries, some of the entries involve a hearing already held by the Judge, intake negligence and another alleged Fraud case against Defendant and its counsel 1-25-cv-00753 regards a misrepresented defective certificate of service submitted to DC court , the minimal burden on the Defendant as they are a law firm that's counsel is involved in the second case. Plaintiff's strong interest in obtaining effective relief as their harm and damages continues to accumulate  to this very moment, the forum state's interest in regulating parties operating under its jurisdiction especially with the recent crash and multiple non compliance cases against Defendant, the location of FAA and DOT that will investigate, be called as witnesses to this case and with the power to Sanction American Airlines and protect the public, and the shared interest of multiple states in ensuring safety compliance all favor maintaining this action in D.C. No alternative jurisdiction offers the same neutrality, oversight capabilities, or access to relevant regulatory agencies, evidence and witnesses, experts and therefore, no other forum would provide a fair or impartial trial and code efficiency to the judicial system, taxpayers and Pro Se Plaintiffs with limited finances and no legal representation. Plaintiff Samiha is 85 years old and traveling to Texas for any hearing would place a hard burden on her.

This Court has jurisdiction over American Airlines as (1) the long-arm statute of Washington, D.C. creates personal jurisdiction over them; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution. Because Washington, D.C.'s long-arm statute extends to the constitutional limits, the key issue is whether

R- 673

Case 1:24-cv-03434-ACR    Document 54-1    Filed 06/12/25    Page 17 of 50
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 674 of 971

17

exercising personal jurisdiction over American Airlines violates due process. It does not in this case.

Defendant has not shown that any alternative venue would be more appropriate or impartial than the District of Columbia, and bears the burden of doing so; instead, American Airlines maintains a dominant 53% market share at Washington National Airport (DCA)—its key East Coast hub serving primarily D.C. residents and government travelers—deriving substantial revenue and operating a major business presence in the District, which far surpasses its footprint in other locations like Illinois or Miami. While Texas accounts for a larger share of overall revenue, the claims in this case arise from regulatory and business conduct centered in D.C., not Texas, and DCA—though physically in Virginia—is marketed as a D.C. airport, with most customers being D.C. citizens and American Airlines itself listing a D.C. address for the airport on its website

## DC Is The Proper Venue

Venue is proper in the United States District Court for the District of Columbia under 28 U.S.C. § 1391(b), which allows a civil action to be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred" Here, a substantial part of the events and omissions—including the negotiation, execution, and regulatory approval of codeshare agreements, as well as the submission of compliance certifications and safety audits—took place in Washington, D.C., through agencies like the DOT and FAA headquartered in the District. The core acts underlying Plaintiffs' claims, including alleged negligence , negligence per se , misrepresentations and regulatory filings, occurred in D.C., and key evidence and witnesses are located there. Therefore, venue is proper in this Court under § 1391(b

Case 1:24-cv-03434-ACR    Document 54-1    Filed 06/12/25    Page 18 of 50
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 675 of 971

18

While venue is proper in D.C. under 28 U.S.C. § 1391(b), this motion seeks only limited discovery on personal jurisdiction, as the filings submitted from D.C. form the core of the alleged fraud.

### 4.  Texas Is Not a Proper Venue; the District of Columbia Is

Texas is not a proper venue for this action because, under 28 U.S.C. § 1391(b), venue is determined by where the claims arose, not merely where a defendant is headquartered; here, the alleged regulatory violations, misrepresentations, and codeshare activities all center on Washington, D.C., where the FAA and DOT—the relevant agencies—are located, the codeshare was approved, and the key events and witnesses are based, making the District of Columbia the appropriate and most convenient forum for this case.

### 5.  Delaware Is Not a Proper Venue, DC Is

Delaware is not a proper forum for Plaintiffs' claims against American Airlines simply because the company is incorporated there; American Airlines' only connection to Delaware is its legal registration, chosen for corporate law advantages, not because it has any substantive business operations, offices, or revenue-generating activities in the state.  Delaware does not provide general jurisdiction over a corporation solely because it is registered or incorporated there; Due to many businesses being registered in Delaware for privileges purposes including tax cuts and under current Delaware Supreme Court precedent and U.S. Supreme Court authority, general jurisdiction is proper only where a corporation is "at home"—that is, where it is incorporated or

R- 675

has its principal place of business, and mere registration to do business or appointment of a registered agent does not constitute consent to general jurisdiction for unrelated claims

### 6. American Airlines Inc Codeshare History

"Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State. . . . Thus where the defendant 'deliberately' has engaged in significant activities within a State . . . or has created 'continuing obligations' between himself and residents of the forum . . . he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." -Burger King v. Rudzewicz, 471 U.S. 462, 475-76 (1985).

### 7. American Airlines Availed Itself Through The Codeshare Program

American Airlines helped pioneer the modern codeshare model with its 1989 agreement with Qantas, then actively lobbied Congress and federal regulators to formalize and expand codeshare operations, leading to the Aviation Code-Share Safety Act of 1999. Far from being imposed on the airline, codesharing was developed and institutionalized by American as a strategic business model. Since the late 1990s, American has maintained a dedicated D.C.-based office to manage codeshare programs, lobby federal agencies, and oversee regulatory compliance, including the Gulf Air partnership. Through Airlines for America and its own D.C. lobbying arm, American has influenced DOT and FAA rulemaking and supported codeshare legislation, with all regulatory submissions and approvals for the Gulf Air codeshare processed through D.C.-based

R- 676

Case 1:24-cv-03434-ACR   Document 54-1   Filed 06/12/25   Page 20 of 50
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 677 of 971

20

agencies. These D.C.-centered activities constitute purposeful availment and establish minimum contacts sufficient for jurisdiction under D.C. Code § 13-423 and constitutional due process. ( See Exhibits 1,2,3,4 American Airlines lobbying Codeshare and FAA Bills )

## CODESHARE SAFETY PROGRAMS

### 8.  Congressional and Regulatory Response to Codeshare Safety Risks

The 1998 crash of Swissair Flight 111, a codeshare flight involving U.S. passengers, exposed critical safety and regulatory gaps in codeshare arrangements where foreign carriers operate under U.S. airline branding. This tragedy, which killed all 215 onboard, prompted congressional calls—led by Congressman James Oberstar—for reforms to clarify safety oversight and accountability. In response, legislation was introduced requiring U.S. carriers to audit foreign codeshare partners' safety for FAA review. A 1999 GAO report highlighted deficiencies in FAA oversight of foreign partners and noted that voluntary safety programs lacked enforcement power, posing risks to passengers relying on U.S.-branded flights. Following public scrutiny, the FAA mandated that foreign carriers failing safety audits would lose codeshare approval, establishing clear U.S. carrier responsibility for their foreign partners' safety. These developments confirm that codeshare agreements carry significant legal and safety obligations, with regulatory oversight centered in Washington, D.C., reinforcing carriers' purposeful engagement with the forum.In response to public and congressional scrutiny, FAA Administrator Jane Garvey announced that any foreign carrier failing a safety audit by its U.S. partner would automatically lose its codeshare approval. This marked a clear regulatory position: U.S. carriers are responsible for the safety of their foreign codeshare partners, and failure to ensure compliance could lead to suspension.

R- 677

Case 1:24-cv-03434-ACR    Document 54-1    Filed 06/12/25    Page 21 of 50
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 678 of 971

21

In 2000, a Gulf Air flight crashed near Bahrain, killing 165 passengers; while Gulf Air blamed Airbus, investigations pointed to pilot error. Despite ongoing safety concerns, Gulf Air renewed its codeshare with American Airlines, leveraging regulatory advantages secured through American's D.C.-based lobbying. In response to oversight failures, an OIG review of FAA codeshare audits from 2000–2004 found that 68% of deficiencies lacked proof of resolution, prompting stricter standards and requiring documented corrective actions. The FAA's 2001 Order 8430.23 established the Code-share Safety Program, linking DOT approval to FAA oversight and mandating that U.S. carriers conduct and certify safety audits of foreign partners, with noncompliance resulting in denial of codeshare approval—requirements that applied only to foreign carriers.

The FAA and DOT Codeshare Safety Audit Guidelines required each airline to develop a comprehensive audit program addressing methodology, operational areas, audit criteria, reporting and corrective systems, auditor qualifications, audit frequency, and ongoing monitoring of codeshare operations. Existing codeshare agreements had to be retroactively audited under these standards. To secure DOT authority, airlines had to submit a signed Compliance Statement and Audit Report verifying ICAO safety compliance. The FAA reviewed each audit program and audit results for regulatory compliance, consulted additional safety data, and reported findings to the OST, which would only grant final codeshare approval after FAA acceptance

In 2015, oversight responsibilities were centralized in a dedicated FAA office located in Washington, D.C., which became responsible for managing codeshare program compliance and enforcement. This office remains active and provides a direct jurisdictional link to the forum. This office is the office that receives the certificates of compliance  which is the core claim for

R- 678

Case 1:24-cv-03434-ACR   Document 54-1   Filed 06/12/25   Page 22 of 50
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 679 of 971

22

Plaintiffs' Fraud and Defendant denies the knowledge of this office receiving the Certificates of compliance

In 2010, American Airlines published an audit program for domestic and foreign codeshare partners in accordance with federal codeshare safety guidelines. Plaintiffs can't find an updated version for this audit Program.  However, between 2010 and 2023, Gulf Air was involved in multiple reported safety incidents, including recurring pilot incapacitations and violations of DOT orders, raising questions about the enforcement and reliability of the program. The DOT reaffirmed its mandate requiring that, prior to implementation of any codeshare operation, the U.S. carrier must conduct a safety audit of the foreign partner and submit results to the FAA for review to confirm compliance with international safety standards.

9. **Codeshare Agreements Impose Binding Regulatory Obligations Beyond Branding**

Defendant's claim that the American Airlines–Gulf Air codeshare is merely a marketing arrangement ignores binding regulatory obligations imposed by U.S. law. Under Department of Transportation (DOT) policy, codeshare agreements require formal DOT approval, are conditioned on public interest and safety findings, and mandate that U.S. carriers conduct and certify safety audits of foreign partners before operations begin. These audits must confirm compliance with international safety standards, and the results are reviewed by the FAA and DOT as part of the approval process. Codeshare authority is not automatic or incidental; it is subject to ongoing oversight, with airlines required to monitor their partners and submit compliance documentation regularly. Thus, codeshare agreements carry significant legal and regulatory responsibilities far beyond branding or shared flight codes.

R- 679

Case 1:24-cv-03434-ACR    Document 54-1    Filed 06/12/25    Page 23 of 50
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 680 of 971

23

All codeshare applications under 14 CFR Part 212 must be filed with the U.S. Department of Transportation's Docket Section (PL-401) at 400 7th Street, S.W., Washington, D.C. 20590, including the formal application, codeshare agreement, and ICAO-compliant air operator certificate. As part of the safety compliance process, U.S. carriers may submit a Compliance Statement confirming that a codeshare safety audit has been completed under a DOT-accepted audit program and that the foreign carrier meets ICAO standards. The completed audit must be presented to the FAA's AFS-50 office in Washington, D.C., which is responsible for evaluating codeshare audits as part of the DOT approval process.

## 10. **Defendant American Airlines' Codeshare Agreement with Co-Defendant Gulf Air Originated and Was Executed in Washington, D.C.**

Defendant American Airlines' codeshare agreement with Gulf Air B.S.C. originated and was executed in Washington, D.C.: in 2008, both carriers filed their joint codeshare application under DOT Docket OST-2008-0195 at the Department of Transportation's Docket Section, 400 7th Street SW, Washington, D.C., as required by 14 C.F.R. Part 212. The agreement was negotiated and signed by American Airlines' D.C. office, which managed all regulatory filings, approvals, and communications with DOT, while Gulf Air retained D.C.-based legal counsel. At the time, Gulf Air lacked IASA Category 1 safety certification, making it ineligible for direct U.S. service, but American Airlines facilitated its indirect market entry through this D.C.-centered process. All key documents—including the Statement of Authorization, renewals, and audit certifications—were filed from American's D.C. regulatory office. Plaintiffs require jurisdictional discovery to confirm the full scope of the D.C. office's involvement and its role in codeshare management and regulatory compliance

R- 680

24

These filings were submitted to the DOT's Office of International Aviation and U.S. Air Carrier Licensing Division at 1200 New Jersey Avenue SE, Washington, D.C., and are not merely administrative. They represent legal certifications required under 14 C.F.R. § 212.10, forming the regulatory basis for maintaining the codeshare. Because American Airlines' representations, agreements certifications, and audits were planned, executed, and submitted from its D.C. office, Washington, D.C. is the operative forum where the regulatory actions occurred that underpin Plaintiffs' claims. Additionally once DOT approved the application signed by their DC office and DC agent, American Airlines consents to DOT jurisdiction which is DC

The codeshare agreements require approval from the DOT and FAA, with filings, compliance certifications, and renewals routinely submitted by American Airlines' D.C.-based legal and regulatory personnel. These contacts are neither incidental nor passive; they are central to the formation and operation of the codeshare contracts.

Because federal approval in D.C. is a legal prerequisite for codeshare implementation, American Airlines' activities constitute deliberate and ongoing engagement with the forum. Courts recognize that such purposeful direction of contract-related conduct—especially where regulatory approval is essential—supports the exercise of personal jurisdiction.

The existence of Codeshare Agreement No-98-104 ( Exhibit 10 Codeshare Agreement ) between American Airlines and Gulf Air is not a mere branding or marketing arrangement; it represents a strategic partnership, deliberate and ongoing contractual relationship that requires active regulatory oversight by federal agencies headquartered in Washington, D.C., such as the FAA and DOT. This purposeful engagement with D.C.-based regulators constitutes "transacting business" and "contracting to supply services" within the District under D.C. Code § 13-423(a),

R- 681

25

thereby establishing a substantial jurisdictional contact. Under the Supreme Court's standard in

See Ford Motor Co. v. Montana Eighth Judicial District, it is sufficient that Plaintiffs' claims

"relate to" this purposeful availment of the forum, making the codeshare agreement a direct basis

for specific jurisdiction in the District of Columbia

American Airlines' codeshare agreement with Gulf Air was approved under DOT Docket

OST-2008-0195, which explicitly mandates ongoing compliance filings and safety disclosures.

These submissions were not discretionary: they were a legal prerequisite for Gulf Air to operate

flights under American Airlines' codeshare authority.

Plaintiffs allege that American Airlines falsely certified compliance, knowingly concealed Gulf

Air's audit deficiencies, and failed to report serious safety risks. These acts occurred not abroad

or in Texas, but through regulatory conduct based in D.C., via American Airlines' own offices

and regulatory agents. The FAA and DOT, located in D.C., relied on these submissions in

allowing the codeshare to continue. This is not a "random" contact—it is the very forum where

the alleged regulatory fraud originated and produced consequences. As in *Ford Motor Co. v.*

*Montana Eighth Judicial District Court*, 592 U.S. 351 (2021), Plaintiffs need not prove that the

harm occurred in D.C., only that the claims "relate to" the defendant's forum conduct. Here, the

link between AA's D.C. conduct (false filings) and the claims (constructive fraud, negligence per

se) is direct and substantial.

Accordingly, American Airlines' ongoing regulatory submissions and its foundational role in the

Gulf Air codeshare—conducted through D.C.—demonstrate the minimum contacts and

purposeful availment necessary for specific jurisdiction.

### 11.  The Government Contacts & Government Contracts

R- 682

While mere compliance with federal regulations or ministerial filings with D.C.-based agencies does not, by itself, establish personal jurisdiction, Plaintiffs here allege far more: a pattern of fraudulent misrepresentations and coordinated conduct intentionally directed at federal regulators in Washington, D.C.—the very entities responsible for granting and overseeing the codeshare authority at issue. The Supreme Court in *Walden v. Fiore*, 571 U.S. 277 (2014), made clear that personal jurisdiction requires minimum contacts created by the defendant's own purposeful actions toward the forum, not merely the plaintiff's injury or residence there. Here, the alleged conduct goes beyond routine compliance and constitutes purposeful availment of the D.C. forum, distinguishing this case from *Walden*, where the defendant's actions were not expressly aimed at the forum itself

Unlike the passive or incidental contacts described in Walden, the conduct at issue here involves an active, ongoing scheme to influence regulatory decisions and to secure commercial benefits through deliberate engagement with D.C.-based agencies. This is not a case of mere ministerial compliance, but of purposeful availment of the D.C. forum through acts designed to affect regulatory outcomes in the nation's capital. Courts in this district have recognized that when a defendant's actions are intentionally directed at D.C. institutions in a manner central to the claims asserted—such as by perpetrating fraud or engaging in a conspiracy involving federal agencies located in D.C.—those acts can support the exercise of specific jurisdiction. See, e.g., Jung v. Association of American Medical Colleges, 300 F. Supp. 2d 119, 131–32 (D.D.C. 2004). Moreover, Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), supports jurisdiction where a defendant has created "continuing obligations" and engaged in "substantial and continuing" contacts with the forum, especially when the forum is the locus of critical regulatory oversight. Here, the codeshare agreement, contracts, and the alleged fraudulent conduct are inextricably

R- 683

Case 1:24-cv-03434-ACR    Document 54-1    Filed 06/12/25    Page 27 of 50
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 684 of 971

27

linked to D.C. through the deliberate and repeated engagement with its regulatory apparatus. To hold otherwise would insulate from accountability those who exploit the privileges of federal oversight in D.C. while evading responsibility for abuses of that privilege. Due process is satisfied where, as here, the defendant's intentional conduct is purposefully directed at the forum and forms the basis of the plaintiff's claims.

Plaintiff alleges that, while the early years of the American Airlines–Gulf Air codeshare may have involved isolated or limited misconduct, the period from 2022 to 2025 reflects a coordinated and ongoing scheme between the two carriers to perpetrate fraudulent acts against the FAA, DOT, and the public. In Jung v. Association of American Medical Colleges, 300 F. Supp. 2d 119, 141–42 (D.D.C. 2004), the District Court recognized that personal jurisdiction may be exercised over out-of-forum defendants who, as part of an alleged conspiracy, commit overt acts or direct unlawful conduct at entities within the District of Columbia, provided those acts are in furtherance of the conspiracy and are central to the claims asserted.

Here, Plaintiff alleges that the codeshare agreement served not merely as a marketing arrangement but as a vehicle for joint regulatory engagement and, critically, for coordinated misrepresentations to D.C.-based regulators. Because the claims arise from this concerted conduct purposefully targeting federal oversight in Washington, D.C., that caused injury to the Plaintiffs and because overt acts in furtherance of the alleged scheme were directed at agencies located in the District,  this court can exercise of personal jurisdiction over American Airlines for their alleged fraudulent acts during this period.

American Airlines' purposeful engagement with the District of Columbia is not limited to regulatory compliance or government contracts in the abstract; rather, these contacts are directly leveraged to drive the sale of codeshare flights and airline tickets to D.C. residents, federal

R- 684

employees, and travelers using DCA. The airline's government affairs office and lobbying efforts in Washington, D.C. are integral to securing and maintaining federal travel contracts and regulatory approvals, which in turn enable American Airlines to market and sell its services—including codeshare flights—specifically to the D.C. market.

American Airlines' targeted marketing campaigns directed at D.C. federal employees and residents, along with its active promotion of ticket sales and codeshare offerings, reflect a deliberate strategy to benefit from the District's unique commercial environment.

American Airlines' deliberate cultivation of government contracts, regulatory compliance, lobbying efforts, and targeted marketing to D.C. federal employees and passengers constitute purposeful availment under Supreme Court precedent. When a defendant's actions are intentionally directed at the forum and are central to the claims asserted, personal jurisdiction is proper. See Walden v. Fiore, 571 U.S. 277, 284 (2014). Here, the alleged fraud on D.C.-based federal regulators is not incidental to American Airlines' business but is central to the dispute, justifying the exercise of personal jurisdiction consistent with due process. American Airlines' CEO has acknowledged that the "flow of government workers and federal contractors makes for rich pickings," making DC "one of its most profitable" revenue source

American Airlines benefits economically from ongoing codeshare activity and selling it to foreign airlines, selling codeshare flights tickets and promoting codeshare foreign flights for connections, including links to flights in and out of DCA, the primary airport serving federal travelers and D.C.-based institutions. These revenues are not incidental, but rather constitute a regular, foreseeable, and intended stream of commerce connected to D.C.

Under *Burger King*, where a contract requires substantial negotiation or performance in the forum, jurisdiction is proper. In this case, American Airlines' codeshare agreements Were

R- 685

negotiated through its D.C. offices, often in coordination with federal regulators; Require regulatory performance in D.C. to remain valid; Have D.C.-specific economic consequences, particularly with regard to federal procurement and public use; Involve joint ventures and applications initiated in Washington, D.C., such as those involving Gulf Air and other foreign partners.

Not Passive or Unilateral, American Airlines' conduct in D.C. is deliberate, continuous, systematic, different from other states, and commercially strategic. It is not the result of unilateral customer action but rather of the company's sustained intent to derive benefit from the District's regulatory and economic environment. American Airlines' actions were "expressly aimed" at D.C. and caused foreseeable consequences in the forum. Residents, Federal travelers, agencies, and regulators were known to be the intended audience and beneficiaries (or potential victims) of the codeshare program's structure and limitations.

American Airlines' codeshare services include ticketing, customer coordination, interline reservations, and a website with booking portals, which are continuously accessed by D.C.-based agencies that subscribe to the website and receive marketing on DC and codeshare flights. These are not isolated acts; they represent ongoing and routine execution of codeshare obligations involving D.C.-located users and institutions.

Even if no single contact independently sufficed, the totality of American Airlines' conduct—lobbying, contract negotiation, regulatory performance, targeted marketing, and revenue extraction from D.C.—creates a cohesive, deliberate relationship with the forum. This clearly satisfies the minimum contacts threshold for specific jurisdiction.

R- 686

Case 1:24-cv-03434-ACR    Document 54-1    Filed 06/12/25    Page 30 of 50
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 687 of 971

30

12. **Reasonableness Factors Weigh in Favor of DC Jurisdiction**

Jurisdiction would not be unfair or burdensome. American Airlines Already operates offices in D.C.; markets and income heavily from DC, Regularly appears before federal regulatory bodies here; Has reaped substantial economic benefit from D.C.-based contracts and travelers; markets and sells codeshare programs tickets and services through DC And should reasonably anticipate being haled into court here ( See *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)). If it wasn't for DC American Airlines can't operate or enter into Codeshare agreements to sell in or through Dc or anywhere else.

The Supreme Court has made clear that specific jurisdiction exists when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state," and the claims "arise out of or relate to" those activities " A court's exercise of *specific* jurisdiction may be constitutional when the defendant: (1) purposefully avails itself of the privilege of conducting activities within the forum state; and (2) the defendant's contacts with the forum give rise to, or are related to, the plaintiff's claims. A defendant's contacts with the forum may relate to the plaintiffs' claims even in the absence of a strict causal relationship between the contacts and claims .

American Airlines' engagement with the District of Columbia is deliberate, repeated, and commercially motivated, extending far beyond incidental or unilateral contact. The codeshare program was born, built, and regulated in D.C., and is marketed to and relied upon by D.C.-based stakeholders. Under binding Supreme Court precedent, these facts establish the requisite minimum contacts, and this Court may properly assert personal jurisdiction over American Airlines in any action arising from the codeshare program or from committing alleged

R- 687

Case 1:24-cv-03434-ACR    Document 54-1    Filed 06/12/25    Page 31 of 50
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 688 of 971

31

fraud against DC entities , DC passengers and the Public including crew members, Plaintiffs and their families

### 13. Presence and Continuous Operations of American Airlines, Inc. in Washington, D.C.

Justice Brennan's concurrence in *Burnham* confirms that voluntary presence in the forum, combined with purposeful availment of its regulatory and commercial benefits, satisfies due process requirements. See *International Shoe Co. v. Washington*, 326 U.S. 310 (1945); *Burnham v. Superior Court*, 495 U.S. 604, 637 (1990) (Brennan, J., concurring). American Airlines has voluntarily established a long-term physical and regulatory presence in Washington, D.C., including maintaining government affairs and regulatory offices, employing registered agents, retaining local legal and lobbying counsel, and directly submitting codeshare applications and audit filings to (DOT) and (FAA). Through these deliberate actions, American Airlines has repeatedly invoked the benefits and protections of D.C.'s legal, political, and economic systems, and cannot now disavow jurisdiction in the very forum from which it has profited and sought federal approval.

Second, the exercise of personal jurisdiction must comport with the requirements of due process. "To satisfy the requirements of due process, the nonresident defendant must have had sufficient 'minimum contacts' with the forum state to justify subjecting him to the exercise of personal jurisdiction by its courts." Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc., 355 A.2d 808, 811 (D.C. 1976) (en banc); see also Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). In assessing whether a defendant's contacts with the District are sufficient, "the most critical inquiry is not whether the nonresident defendant is physically present in the forum but whether the defendant's contacts with the forum are of such a quality and nature that they

R- 688

32

manifest a deliberate and voluntary association with the forum and are not fortuitous or accidental." Harris v. Omelon, 985 A.2d 1103, 1105 (D.C. 2009) (internal editing and citation omitted); see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295-99 (1980). "This requires 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State' to establish personal jurisdiction." Harris, 985 A.2d at 1105 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). We have said that the District's long-arm statute permits the exercise of personal jurisdiction over nonresident defendants to the fullest extent permissible under the due process clause of the United States Constitution. Environmental Research, 355 A.2d at 810- 11;see also Shoppers Food Warehouse v. Moreno, 746 A.2d 320, 326 (D.C. 2000) (en banc)

## 14. American Airlines Presence in DC  ( See Exhibits 5,6,7 AA PAC Profile, Job Listings, DCA Address on American Airlines Website )

American Airlines operates a fully staffed commercial office at 1101 17th St. NW, Suite 600, Washington, D.C. 20036, handling core business functions such as customer service, HR logistics, codeshare management, joint ventures, commercial contracting, marketing, and industry relations; Plaintiffs seek discovery to confirm these activities.

Its Government Affairs Office at 1200 17th St. NW, Suite 400, Washington, D.C. 20036, led by Stephen Neuman, serves as the airline's political and lobbying headquarters, managing legislative strategy, direct advocacy before Congress, DOT, and FAA, and relationship-building for American Airlines's commercial advantage; this presence is voluntary and not required by regulators.

R- 689

American Airlines, Inc. is registered as a foreign business entity in D.C. under File No. 550147, maintaining continuous legal status since 1955; Plaintiffs seek discovery to link this registration to the D.C. offices and clarify the roles of American Airlines Inc. and American Airlines Group. The company designates Corporation Service Company, 1156 15th St. NW, Suite 605, Washington, D.C. 20005, as its registered agent for service of process, confirming its readiness to submit to D.C. jurisdiction. American Airlines regularly retains multiple D.C.-based law firms for regulatory and litigation matters, including Greenberg Traurig LLP and Skadden, Arps, Slate, Meagher & Flom LLP, further evidencing its active legal presence in the District. American Airlines' Political Action Committee (AAPAC), registered in D.C. (FEC Committee ID: C00107300), engages in federal election activity on the airline's behalf, demonstrating integration into the D.C. political ecosystem.

At Reagan National Airport (DCA)—marketed and operated as Washington, D.C.'s primary airport—American Airlines holds a dominant 53% market share and conducts extensive business activities (staffing, ticketing, boarding, cargo), functionally tying its operations to the D.C. market, as reflected in public materials and its own website

### 15. Regulatory and Compliance Submissions from Washington, D.C.

American Airlines routinely files legally binding certifications, audit reports, and compliance documents with federal regulators headquartered in Washington, D.C.—including the DOT and FAA. Required submissions, such as codeshare authority applications, safety audits, and compliance statements, are sent to: DOT Docket Section (PL-401): 400 7th Street SW, Washington, D.C. 20590; DOT Air Carrier Licensing Division: 1200 New Jersey Avenue SE, Washington, D.C. 20590; FAA Codeshare Review Division (AFS-50): 800 Independence Avenue SW, Washington, D.C. 20591. These filings are prepared and processed by American

R- 690

34

Airlines' regulatory and legal teams at its D.C. offices, 1101 and 1200 17th Street NW. This demonstrates American's deliberate, ongoing engagement with D.C. agencies to maintain its commercial authority and legal status under U.S. aviation law, not mere administrative convenience.

American Airlines' dual office presence, long-standing registration, lobbying activity, legal engagements, and D.C.-based political financing establish purposeful, continuous, and profit-driven contact with the District of Columbia. These contacts support both general and specific jurisdiction, especially in litigation arising from regulatory certifications, codeshare agreements, or safety representations developed and maintained through its D.C. infrastructure.

American Airlines' participation in the codeshare agreement with Gulf Air—approved in DOT Docket OST-2008-0195—was entirely voluntary in the commercial sense. No law requires an airline to enter a codeshare arrangement or to partner with a foreign carrier. However, once American Airlines elected to pursue and maintain that relationship, it was subject to mandatory regulatory obligations enforced by D.C.-based federal agencies. Specifically, under DOT and FAA authority, American Airlines was required to: (1) conduct audits of Gulf Air's operations; (2) submit formal certificates of compliance attesting to safety standards; and (3) renew and certify those filings periodically. These were not discretionary filings—they were legal prerequisites for operating the codeshare and formed the binding foundation of the entire business relationship.

The continuous recurring submissions to FAA's AFS-50 Division and DOT's Office of International Aviation in Washington, D.C. demonstrate American Airlines' purposeful and volunteer continuous engagement with the D.C. forum, not as a passive consequence of

R- 691

regulation, but as a necessary and integral part of its chosen commercial conduct. American Airlines' failure to report Gulf Air's deficiencies (e.g., crew incapacity, audit failures) directly impacted the FAA's oversight — which is headquartered and functions in Washington, D.C..That failure to act (or false certification) occurred through D.C.-based conduct and had legal effect in the District.

### 16. Harm in the Forum & Harm To Plaintiffs

The alleged fraud on D.C.-based regulators (FAA and DOT) is not a mere technicality; it undermines the regulatory process that D.C. consumers, crew, and federal travelers rely on for safety and trust. The harm from misrepresenting the safety and regulatory status of codeshare flights is felt directly in D.C., where the products are marketed, sold, and used. The harm in this case is not abstract or remote: it is direct, personal, and ongoing within the District of Columbia. The captain's death occurred during the embarkation stage of a codeshare flight marketed and sold by American Airlines as a D.C.-originating product, with the forum's residents and workforce—including federal employees—among its primary consumers. Critically, after the captain's death, American Airlines and Gulf Air continued to renew and operate the codeshare agreement, perpetuating the same misrepresentations to D.C.-based regulators and the public.

This renewal and the last submissions of Audit Certificates of Gulf Air  and American Airlines cover up after being notified  not only delayed justice for the plaintiffs, who were forced to navigate a regulatory and legal landscape clouded by ongoing fraud, but also caused them additional financial harm as they continued to rely on the legitimacy of FAA and DOT approvals procured through deception. The continued marketing and sale of these codeshare flights in D.C. directly tie the defendants' conduct to the forum, and the persistent nature of the fraud means that each renewal of the codeshare agreement constitutes a new act of harm within the District.

R- 692

This pattern of conduct satisfies the "stream of commerce plus" standard for specific jurisdiction, as the defendants purposefully directed their products and fraudulent conduct at the D.C. market, and the resulting injuries were suffered in the forum. "But for" the defendant's regulated activities and compliance in DC, the alleged harm would not have occurred, there is a sufficient nexus for specific jurisdiction. "But for" the defendant's regulated activities and compliance in DC, the alleged harm would not have occurred, there is a sufficient nexus for specific jurisdiction

### 17. <u>The Minimum Contacts Standard</u>

The Supreme Court established in *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), that a court may exercise personal jurisdiction over a defendant only if the defendant has "minimum contacts" with the forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. This standard requires that the defendant's contacts with the forum be purposeful, not fortuitous or accidental, and that the claims arise out of or relate to those contacts (*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980); *Mouzavires v. Baxter*, 434 A.2d 988, 992, 995, 997 (D.C. 1981)).

Deliberate and Continuous Contacts with the District of Columbia; Forum-Directed Commercial Activity and Quality and Nature of Contacts Support Jurisdiction

 These contacts are directly connected to the claims at issue, satisfying both the "minimum contacts" and "arising from" requirements for specific jurisdiction.

American Airlines has established sufficient minimum contacts with the District of Columbia to justify the exercise of specific personal jurisdiction under D.C. Code § 13-423(a)(1) and the Due Process Clause. It has purposefully availed itself of the D.C. market by voluntarily entering into federally regulated codeshare agreements that require initiation, approval, and continued compliance through agencies headquartered in Washington, D.C., namely the U.S. Department of

R- 693

Case 1:24-cv-03434-ACR    Document 54-1    Filed 06/12/25    Page 37 of 50
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 694 of 971

37

Transportation (DOT) and the Federal Aviation Administration (FAA). These agreements are not passive or ministerial—they are business-generating activities that directly serve the D.C. market, involve government contracting, and require ongoing engagement with D.C.-based regulators.

Plaintiffs' claims arise directly from this forum-directed conduct. The regulatory filings, compliance certifications, and safety oversight responsibilities that American Airlines executed through its D.C.-based infrastructure form the very basis of the allegations. This is not a case of random, fortuitous, or attenuated contact with the forum; it is a direct and substantial relationship to D.C. involving core operational, legal, and commercial conduct.

Under the minimum contacts standard articulated in International Shoe Co. v. Washington, 326 U.S. 310 (1945), and clarified in subsequent cases such as Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), American Airlines' actions meet the constitutional threshold. The Court's inquiry is not confined to the geographic location where the injury occurred, but instead centers on whether the defendant's conduct connected it to the forum in a meaningful way. Here, American Airlines' conduct was deliberate, systematic, and profit-driven, making jurisdiction in the District consistent with traditional notions of fair play and substantial justice.

In sum, American Airlines did not merely participate in a national industry; it transacted business within Washington, D.C. by negotiating and maintaining codeshare agreements through its local offices, executing contracts that supplied air services to D.C. consumers and federal agencies, and submitting regulatory filings essential to those agreements from the forum. These contacts are more than sufficient to establish specific jurisdiction.

R- 694

**18.DC LONG ARM STATUTE :**

First, in order to establish the court's jurisdiction, the plaintiff must satisfy a two-part test. Part one of this test is that the defendant must have purposefully availed itself of the privilege of conducting activities within the forum state. There must be some quid pro quo; the defendant must have obtained some benefit from the forum state in order to justify imposing on it the burden of defending a lawsuit in the forum. Part two of the test requires the plaintiff to demonstrate that even if the defendant purposefully availed itself of some benefit of conducting activities in the forum state, the exercise of jurisdiction must also be "reasonable."

*D.C. Code § 13-423(a)(1)* A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's... transacting any business in the District of Columbia."— *D.C. Code § 13-423(a)(1)* Under the D.C. long-arm statute, Plaintiffs make a prima facie showing for jurisdictional discovery by demonstrating that American Airlines has purposefully and voluntarily transacted substantial business in the District of Columbia through: Extensive Codeshare Network Rooted in D.C. Regulation The legal seat of approval, renewal, and oversight for all such agreements is D.C., making D.C. the jurisdictional origin of these business transactions; Maintaining dedicated D.C. offices for regulatory, legal, and lobbying operations, reflecting strategic, profit-driven engagement beyond mere regulatory compliance; Selling and distributing codeshare tickets—including those with Gulf Air—through channels directed at D.C. consumers, with

DCA marketed and branded as a D.C. hub Generating significant revenue from ticketing and sales in D.C., supported by local customer service and compliance staff; Entering into government contracts with D.C.-headquartered federal agencies, such as the GSA City Pair

R- 695

Program, for commercial gain; Making continuous regulatory filings and certifications from D.C. offices to the FAA and DOT, including codeshare applications and safety audits; Engaging D.C.-based law firms and industry groups for litigation, compliance, and policy advocacy directly benefiting American's business interests in the District; Maintaining formal corporate registration and a registered agent in D.C. since 1955, evidencing intent to conduct ongoing business under D.C. law.

These persistent, voluntary, and revenue-generating activities satisfy multiple prongs of D.C. Code § 13-423(a), including "transacting any business" and "engaging in a persistent course of conduct" in the District, and warrant jurisdictional discovery

### *D.C. Code § 13-423(a)(2)*

*A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's ... contracting to supply services in the District of Columbia." — D.C. Code § 13-423(a)(2)*

Under the D.C. long-arm statute, Plaintiffs make a prima facie showing for jurisdictional discovery by demonstrating that American Airlines has purposefully and voluntarily contracted to supply services in the District of Columbia within the meaning of D.C. Code § 13-423(a)(2). This includes Entering into and managing codeshare agreements that require mandatory regulatory approval, audits, and renewals by D.C.-based federal agencies (DOT and FAA); Selling and distributing airline tickets for codeshare flights marketed and provided to consumers in D.C., including federal employees and government agencies; Maintaining offices and staff in D.C. who negotiate, manage, and comply with these contracts and regulatory obligations.; Holding commercial government travel contracts with D.C.-headquartered federal agencies.

These activities constitute purposeful, substantial, and ongoing contracting to supply air transportation and related services in the District, satisfying the statutory threshold for personal jurisdiction and justifying jurisdictional discovery.

### 19. DUE PROCESS

To comport with the Due Process Clause, the exercise of specific personal jurisdiction must satisfy three requirements: (1) the defendant must have purposefully availed itself of the privilege of conducting activities within the forum; (2) the cause of action must arise out of or relate to those activities; and (3) it must be reasonably foreseeable that the defendant could be haled into court in the forum. Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1250–51 (11th Cir. 2000); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

First, American Airlines has purposefully availed itself of the District of Columbia by deliberately and repeatedly engaging in substantial commercial activities within the forum. Such contacts are not "random," "fortuitous," or "attenuated," nor the result of the "unilateral activity of another party or a third person," but are the direct result of American Airlines' own strategic and sustained conduct.

Second, the causes of action in this case arise directly from American Airlines' forum-directed activities. The claims are based on the airline's misrepresentations regarding codeshare obligations, fraudulent engagement with U.S. regulatory authorities in D.C., and regulatory violations—all of which are central to the alleged harm suffered by Plaintiffs. These are not remote or incidental contacts; they are the foundation of the claims asserted.

Third, given American Airlines' deliberate and ongoing engagement with D.C. regulators, agencies, and consumers, it was reasonably foreseeable that it could be haled into court in the District for claims arising from those activities. Exercising jurisdiction over American Airlines in

these circumstances is consistent with "fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Burger King, 471 U.S. at 476–77.

Accordingly, the Court's exercise of specific jurisdiction over American Airlines comports with due process, as the airline's own conduct created a substantial connection with the District of Columbia and gave rise to the claims at issue

American Airlines has deliberately and systematically engaged in activities directed at Washington, D.C., affirmatively invoking the benefits and protections of its laws. This is not passive foreseeability—it is purposeful and strategic

### 20. Relatedness of Contacts to the Claim

The plaintiffs' claims arise directly from American Airlines' forum-directed activities: Misrepresentations to the crew, public, passengers,  FAA and DOT regarding the safety compliance of Gulf Air occurred through filings and audits conducted from AA's D.C. offices; The codeshare approvals, safety certificates, and compliance statements required to keep the codeshare operating were submitted in D.C.—the very documents plaintiffs claim were false or fraudulent; The non compliance, cover up and regulatory conduct in D.C. is the nexus between AA's actions and plaintiffs' harm. These are not tangential connections—they are the regulatory and contractual engines of the codeshare itself. This satisfies the "arising out of or relating to" standard under *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021).

### 21. Stream of Commerce

American Airlines does not merely place services into the stream of commerce—it takes additional steps to serve the D.C. and U.S. markets, which satisfies the "stream of commerce

plus" standard under *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987) and *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011) Tickets for codeshare flights are sold under AA's brand, including flights to and from Washington Reagan National Airport (DCA), and promoted as American Airlines-operated products; AA uses its website, mobile app, and distribution networks including D.C.-based travel agencies to sell these services directly to D.C. consumers and federal entities; Marketing, billing, and customer service for codeshare flights are conducted under AA branding, creating the appearance of direct operation even for Gulf Air-operated segments; AA also contracts with U.S. federal agencies headquartered in D.C. for travel services, targeting the forum in both private and public markets.

This goes far beyond passive conduct—it reflects targeted, sustained, and regulated participation in the D.C. market.

### 22. Fair Play and Substantial Justice

Jurisdiction over American Airlines would not offend traditional notions of fair play and substantial justice, given Low Burden on Defendant: AA already maintains full business operations, staff, legal counsel, and regulatory infrastructure in D.C. It cannot claim hardship in litigating there; Strong Forum Interest: D.C. and the United States have a vital interest in regulating codeshare safety and holding airlines accountable for fraudulent or negligent behavior in filings submitted to federal agencies based in the District; Plaintiffs' Interest: Plaintiffs are U.S. residents with claims directly tied to D.C.-based regulatory failures. D.C. offers a meaningful venue for redress and access to evidence; Judicial Efficiency: The claims concern federal oversight, federal filings, and aviation standards, all supervised from D.C.—where the agencies, documents, and witnesses reside; Public Policy: Accountability in the safety and

R- 699

USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 700 of 971

transparency of international aviation—especially under codeshare partnerships—is essential to protecting public safety, which is the cornerstone of the FAA and DOT missions.

### 23. <u>No Unilateral Conduct or Mere Foreseeability</u>

American Airlines' jurisdictional exposure does not arise from the actions of Gulf Air or third parties. Instead, it is based on its own affirmative and repeated conduct It files documents directly with FAA/DOT; It sells tickets and earns revenue from D.C. consumers and agencies; It maintains offices and legal representation in the District; It certifies codeshare compliance under penalty of law from the D.C. forum. These are American Airlines' own contacts, making it subject to specific jurisdiction under *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

### 24. <u>Fairness Factors Support the Exercise of Personal Jurisdiction over American Airlines</u>

Litigating in the District of Columbia would not impose an undue burden on American Airlines. The company has voluntarily maintained physical offices in Washington, D.C. for decades, engages local law firms and lobbyists, and routinely interacts with D.C.-based federal agencies including the DOT and FAA. Given its substantial and continuous presence in the District, defending litigation here is neither unreasonable nor unexpected.

Plaintiffs have a strong interest in obtaining relief in the District of Columbia because their claims arise from American Airlines' conduct in and through this jurisdiction—specifically, regulatory filings, codeshare applications, and safety representations submitted to federal agencies headquartered in D.C. The alleged fraud and misrepresentations are rooted in this forum, making it the most appropriate place for redress.

The District of Columbia has a compelling interest in adjudicating disputes that arise from conduct directed at and occurring within its borders—particularly when it involves the integrity

R- 700

of federal aviation oversight, public safety, and consumer protection. American Airlines' actions in D.C. directly implicate regulatory compliance and aviation safety, matters of public concern rooted in this jurisdiction.

While aviation regulation has international dimensions, the United States—through its D.C.-based agencies—retains primary authority for oversight of U.S. air carriers and codeshare agreements. Exercising jurisdiction in this case is consistent with U.S. aviation law and international obligations under ICAO, which are administered from Washington, D.C. No foreign policy or sovereignty concerns are undermined by hearing this case in D.C.

The District of Columbia is the most efficient forum for adjudicating this case. The relevant documents, regulatory agencies, witnesses, and evidence related to codeshare approval, FAA audit oversight, and DOT compliance are all centralized in D.C. Litigating here promotes judicial economy and avoids duplicative or fragmented proceedings.

American Airlines clearly satisfies all elements of the minimum contacts test: Purposeful availment of the D.C. market and legal system; Plaintiffs' claims arise from those specific activities; Forum-based conduct connects American Airlines to the litigation; Jurisdiction is fair, reasonable, and grounded in due process.The Core Rule: "A lawsuit must not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) it doesn't in the case of American Airlines Inc.

## 25. Violation of Federal Statue, Federal law, Regulations, DOT Orders & Public Interest

The alleged violations—including 49 U.S.C. § 40101, FAA rules, DOT Order 2008, and the Open Skies Agreement—arise from regulatory obligations administered and enforced in Washington, D.C., directly tying American's conduct to the District. The Open Skies Agreement, negotiated and overseen by D.C.-based federal agencies, sets binding requirements for codeshare

R- 701

Case 1:24-cv-03434-ACR    Document 54-1    Filed 06/12/25    Page 45 of 50
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 702 of 971

45

operations and international air service, and violations of these agreements or their implementing orders are adjudicated by the DOT in Washington, D.C.

The relevant inquiry for specific jurisdiction is not just where the injury occurred, but whether the defendant's conduct—subject to D.C.-based federal oversight—gives rise to the claims. Here, American Airlines' compliance with, and alleged violations of, these federal laws and international agreements are central to the claims and provide the necessary substantial connection to the District. Courts have recognized that when a defendant's regulatory and business activities are purposefully directed toward and causally connected to the forum, personal jurisdiction is proper, even if the harm occurred elsewhere. Thus, American Airlines' D.C.-based regulatory failures and breaches of the Open Skies Agreement support the exercise of specific jurisdiction in this forum.

### 26. General Jurisdiction Under Exceptional Case

Plaintiffs don't rely on General Jurisdiction unless discovery can establish exceptional case. To establish general personal jurisdiction over American Airlines in the District of Columbia as an "exceptional case," Plaintiffs must demonstrate that American's contacts with D.C. are so continuous, systematic, different than other states e.g North Carolina, Miami, Chicago etc are all have common systematic and continuous business, but not DC, DC is the root and is the source of income for American Airlines. and central to its operations that the District functions as a surrogate corporate home—mirroring the rare circumstances recognized in *Perkins v. Benguet Mining Co.* The Supreme Court's decisions in *Daimler AG v. Bauman* and *BNSF Railway Co. v. Tyrrell* confirms that general jurisdiction is the exception, not the rule, and is typically limited to a corporation's place of incorporation or principal place of business, unless the forum is so integral to the corporation's affairs as to serve as an additional headquarters. If it wasn't for DC

R- 702

Case 1:24-cv-03434-ACR    Document 54-1    Filed 06/12/25    Page 46 of 50
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 703 of 971

46

and DC contacts including government contacts, and codeshare program as a contact and

Permits, American Airlines would not be able to operate or Texas headquarter would not have

possibly existed

## 28. <u>Exceptional Case and Need for Discovery</u>

Unique Corporate Integration: American Airlines' core regulatory, compliance, and operational

functions are continuously anchored in Washington, D.C. Its ability to operate as a certified air

carrier—including codeshare agreements, federal contracts, and regulatory approvals—depends

on ongoing, high-level engagement with D.C.-based federal agencies. This is foundational to

American's corporate identity and existence, not routine business activity; Comparable to a

Second Headquarters: American's D.C. operations—including dedicated regulatory, government

affairs, and compliance offices, as well as a dominant hub at Reagan National Airport

(Washington, D.C. 20001)—are so extensive and central that D.C. serves as a functional second

headquarters for its most critical business activities; Revenue and Contractual Core: Major

federal agency contracts and the management of essential business relationships are handled

from D.C. These are central to American's revenue model and operational authority, not

peripheral or incidental; Exceptional Case Threshold: This degree of integration and centrality

far exceeds the "doing business" standard rejected in *BNSF* and aligns with the "exceptional

case" in *Perkins*, where the forum state became a de facto principal place of business due to

necessity and corporate function.

Plaintiffs require jurisdictional discovery to obtain internal records and testimony detailing the

full scope and significance of American's D.C. operations. Only American possesses evidence

showing how these D.C.-based activities are integrated into its corporate structure and revenue

R- 703

streams. This discovery is essential to confirm that D.C. is, for all practical purposes, a corporate home for American Airlines, justifying general jurisdiction in this exceptional case.

### 29. FAA Certificate Of Compliance Submission Location

Electronic submission of audit compliance certificates does not alter the jurisdictional analysis. Courts recognize that electronic filings or communications purposefully directed to a forum—especially in a regulatory context—constitute purposeful availment, satisfying the minimum contacts requirement for personal jurisdiction

Here, American Airlines intentionally directed its conduct at Washington, D.C. by submitting federally mandated compliance documents to agencies headquartered in the District. The fact that these submissions were made electronically does not diminish their legal significance; what matters is the deliberate targeting of D.C.-based regulators as part of the federal approval process American Airlines disputes Plaintiffs' allegations and evidence that the Gulf Air audit compliance was submitted to the FAA in D.C. This factual dispute underscores the need for jurisdictional discovery to obtain the relevant audit certificates and related communications. Such discovery is also essential for Plaintiffs' fraud claims, as these certificates are central to proving how American Airlines allegedly misrepresented compliance to the FAA. Thus, electronic transmission does not insulate American from jurisdiction in D.C.; rather, it supports purposeful availment and the need for discovery to fully develop the record

### 30. There are core factual disputes that warrant jurisdictional discovery:

First, American Airlines asserts in its March 28, 2025 filing and motion to dismiss that it has "no presence" and "no contacts" in the District of Columbia, and that no harm arose from any D.C.-based activity. Plaintiffs dispute this, contending that American Airlines maintains ongoing

R- 704

Case 1:24-cv-03434-ACR    Document 54-1    Filed 06/12/25    Page 48 of 50
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 705 of 971

48

regulatory, operational, and business activities in D.C., including but not limited to its conduct at Reagan National Airport and its engagement with D.C.-based federal agencies

Second, American Airlines claims that the FAA agent who received the Gulf Air audit compliance certificates could be located anywhere in the United States, and thus no purposeful contact with D.C. occurred. Plaintiffs disagree, maintaining that federal regulations and airline practice require such regulatory submissions to be directed to and processed by FAA offices headquartered in Washington, D.C., and that these activities constitute purposeful availment of the forum.

### **CONCLUSION**

Plaintiffs respectfully request limited, precise jurisdictional discovery, as outlined in Attachment One, to obtain evidence regarding American Airlines' regulatory compliance, audit submissions, and internal practices related to its codeshare with Gulf Air. There are material factual disputes as to whether American Airlines has a presence or sufficient contacts in the District of Columbia, and whether required audit compliance certificates were submitted to the FAA in Washington, D.C and American Airlines and Gulf Air Codeshare venture in relation to the Plaintiffs Harm and injuries This discovery is necessary to develop the factual record needed to oppose Defendant's motion to dismiss and to establish that this Court has personal jurisdiction. Plaintiffs Request the court to Grant the discovery requested items listed in the motion.

Plaintiffs further request leave to amend this motion and to leave to amend the complaint if warranted by facts revealed in discovery, and for such other and further relief as the Court deems just and proper

R- 705

Case 1:24-cv-03434-ACR    Document 54-1    Filed 06/12/25    Page 49 of 50
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 706 of 971

49

Submitted,

June 12  2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767

R- 706

## CERTIFICATE OF SERVICE

I hereby certify that on June 12 2025, Plaintiff Feras Hindi, Plaintiff Tala & Plaintiff Samiha will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Motion Leave for Limited Discovery, Memorandum & attachments

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Email

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Email, First Class mail

Submitted,

June 12  2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767

R- 707

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

| | | |
|---|---|---|
| **Samiha Ayyash, Feras Hindi** | | |
| **Tala Josephano** | ) | **Case No.: 1:24-cv-03434** |
| | ) | |
| Plaintiff | ) | |
| **American Airlines, INC. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendant | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

# EXHIBITS

June 12 2025

**Exhibit 1:**

Airlines for America & AMR ( American Airlines Previously ) Lobbying for Codeshare and

FAA exemptions 1999-2000

**EXHIBITS**

R- 708

**Exhibit 2:**

Airlines for America & AMR ( American Airlines Previously ) Detail Lobbying for Codeshare

and FAA exemptions 1999-2000

**Exhibit 3**  Codeshare FAA Lobbying Authorization

**Exhibit 4** Codeshare Bill

**Exhibit 5** PAC Contribution

**Exhibit 6** American Airlines Promoting DCA as DC listing the Address of the Airport DC

Ronald Reagan Washington National Airport **Washington, D.C. 20001**

**Exhibit 7** AA Employment Ads

**Exhibit 8** Codeshare Guideline

**Exhibit 9** FAA AFS Service

**Exhibit 10** 2008 Gulf Air American Airlines Codeshare

**EXHIBITS**

R- 709

# EXHIBIT 1





Air Transport Association



RECEIVED
SECRETARY OF THE SENATE

00 AUG 11 PM 3.35

James L. Casey
Vice President & Deputy General Counsel

August 11, 2000

Secretary of the Senate
Office of Public Records
Room 232
Hart Senate Office Building
Washington, D.C. 20510

Dear Sir or Madam:

Enclosed is the midyear 2000 lobbying report of the Air Transport Association of America, Inc. Please call me if you have any questions about it.

Sincerely,

James L. Casey

James L. Casey

Air Transport Association of America
1301 Pennsylvania Ave., NW — Suite 1100   Washington, DC 20004-1707
(202) 626-4211     FAX (202) 626-4199
jcasey@air-transport.org   ◊   ARINC/SITA: WASJCXD

R- 711

<table>
<tr><td>Clerk of the House of Representatives<br>Legislative Resource Center<br>B-106 Cannon Building<br>Washington, DC 20515</td><td>Secretary of the Senate<br>Office of Public Records<br>232 Hart Building<br>Washington, DC 20510</td></tr>
</table>



SECRETARY OF THE SENATE
RECEIVED
00 AUG 11 PM 3- 35

# LOBBYING REPORT

Lobbying Disclosure Act of 1995 (Section 5) - All Filers Are Required To Complete This Page

1. Registrant Name

**Air Transport Association of America, Inc.**

2. Address    ☐ Check if different than previously reported

**1301 Pennsylvania Avenue, N.W., Washington, D.C. 20004-1707**

3. Principal Place of Business (if different from line 2)

City:                                  State/Zip (or Country)

| 4. Contact Name | Telephone | E-mail (optional) | 5. Senate ID # |
|---|---|---|---|
| James L. Casey | (202) 626-4211 | jcasey@air-transport.org | 614 |
| 7. Client Name  ☐ Self | | | 6. House ID # |

## TYPE OF REPORT

8. Year __2000__    Midyear (January 1-June 30) ☒    OR Year End (July 1-December 31) ☐

9. Check if this filing amends a previously filed version of this report  ☐

10. Check if this is a Termination Report ☐    Termination Date _____    11. No Lobbying Activity ☐

---

### INCOME OR EXPENSES - Complete Either Line 12 OR Line 13

| 12. Lobbying Firms | 13. Organizations |
|---|---|
| INCOME relating to lobbying activities for this reporting period was: | EXPENSES relating to lobbying activities for this reporting period were: |
| Less than $10,000 ☐ | Less than $10,000 ☐ |
| $10,000 or more ☐  ") $ _____ <br> Income (nearest $20,000) | $10,000 or more ☒  ") $ __940,000__ <br> Expenses (nearest $20,000) |
| Provide a good faith estimate, rounded to the nearest $20,000, of all lobbying related income from the client (including all payments to the registrant by any other entity for lobbying activities on behalf of the client). | 14. REPORTING METHOD. Check box to indicate expense accounting method. See instructions for description of options. <br> ☒ Method A. Reporting amounts using LDA definitions only <br> ☐ Method B. Reporting amounts under section 6033(b)(8)of the Internal Revenue Code <br> ☐ Method C. Reporting amounts under section 162(e) of the Internal Revenue Code |

Signature ___*James L. Casey*___                    Date ___*August 11, 2000*___

Printed Name and Title __James L. Casey, Vice President and Deputy General Counsel__

LD-2 (REV. 6/98)                                                                            PAGE 1 of __4__

# R- 712

Registrant Name Air Transport Association of America _____ Client Name _____

## Information Update Page – Complete ONLY where registration information has changed.

20. Client new address

21. Client new principal place of business (if different from line 20)

City                                    State/Zip (or Country)

22. New general description of client's business or activities

---

## LOBBYIST UPDATE
23. Name of each previously reported individual who is no longer expected to act as a lobbyist for the client

## ISSUE UPDATE
24. General lobbying issues previously reported that no longer pertain

## AFFILIATED ORGANIZATIONS
25. Add the following affiliated organization(s)

| Name | Address | Principal Place of Business (city and state or country) |
|------|---------|--------------------------------------------------------|
|      |         |                                                        |

26. Name of each previously reported organization that is no longer affiliated with the registrant or client

## FOREIGN ENTITIES
27. Add the following foreign entities

| Name | Address | Principal place of business (city and state or country) | Amount of contribution for lobbying activities | Ownership percentage in client |
|------|---------|---------------------------------------------------------|------------------------------------------------|--------------------------------|
|      |         |                                                         |                                                |                                |

28. Name of each previously reported foreign entity that no longer owns, controls, or is affiliated with the registrant, client or affiliated organization

Signature _James L. Casey_                    Date _August 11, 2000_

Printed Name and Title _James L. Casey/Vice President and Deputy General Counsel_

Form LD-2 (Rev. 6/98)                                    Page 3 of 4

R- 713

Registrant Name Air Transport Association of America    Client Name _____

LOBBYING ACTIVITY. Select as many codes as necessary to reflect the general issue areas in which the registrant engaged in lobbying on behalf of the client during the reporting period. **Using a separate page for each code,** provide information as requested. Attach additional page(s) as needed.

15. General issue area code __AVI__    (one per page)

16. Specific lobbying issues

     See Attachment A

17. House(s) of Congress and Federal agencies contacted    ☐ Check if None

   U.S. Senate
   U.S. House of Representatives        Federal Aviation Administration
   Department of Agriculture            National Transportation Safety Board
   Department of Commerce               Immigration and Naturalization Service
   Department of Justice                U.S. Customs Service
   Department of State                  Environmental Protection Agency
   Department of Transportation         Internal Revenue Service
   Department of Treasury               U.S. Postal Service

18. Name of each individual who acted as a lobbyist in this issue area

| Name | Covered Official Position (if applicable) | New |
|------|-------------------------------------------|-----|
| Carol B. Hallett | | ☐ |
| Edward A. Merlis | | ☐ |
| Barbara M. Kostuk | | ☐ |
| Michael D. Wascom | | ☐ |
| James W. Coon | | ☐ |
| | | ☐ |
| | | ☐ |
| | | ☐ |

19. Interest of each foreign entity in the specific issues listed on line 16 above    ☒ Check if None

Signature _James L. Casey_____    Date August 11, 2000

Printed Name and Title __James L. Casey, Vice President and Deputy General Counsel_____

Form LD-2 (Rev.6/98)    Page 4 of 4

R- 714

Attachment A
Page 1

# 106TH CONGRESS
# ATA BILL LIST

## HOUSE LEGISLATION

| | |
|---|---|
| H.R. 22 | The Postal Modernization Act |
| H.R. 97 | To extend the Aviation War Risk Insurance Program |
| H.R. 98 | To Extend Federal Aviation Administration program Through September 30, 1999 |
| H.R. 99 | Interim Federal Aviation Administration Authorization Act |
| H.R. 111 | to provide off-budget treatment for the Airport and Airway Trust fund, the Inland Waterways Trust Fund, and the Harbor Maintenance Trust Fund. |
| H.R. 129 | To amend title 49, United States Code, to exempt noise and access restrictions on aircraft operations to and from metropolitan airports from certain Federal review and approval requirements, and for other purposes. To amend title 49, United States Code, to exempt noise and access restrictions on aircraft operations to and from metropolitan airports from certain Federal review and approval requirements, and for other purposes. |
| H.R. 272 | Airline Competition and Lower Fares Act |
| H.R. 435 | To make miscellaneous and technical changes to various trade laws, and for other purposes. |
| H.R. 482 | To provide for the regulation of the airspace over National Park System lands in the State of Hawaii by the Federal Aviation Administration and the National Park Service, and for other. |
| H.R. 661 | To prohibit the operation of certain supersonic transport aircraft |
| H.R. 700 | Airline Passenger Bill of Rights Act of 1999 |
| H.R. 717 | National Parks Air Tour Management Act of 1999 |
| H.R. 752 | Airline Passenger Fairness Act |
| H.R. 780 | Passenger Entitlement and Competition Enhancement Act of 1999 |
| H.R. 897 | Consumer Access to Travel Information Act of 1999 |
| H.R. 907 | Air Service Restoration Act |
| H.R. 908 | Aviation Consumer Right To Know Act of 1999 |
| H.R. 951 | Airline Service Improvement Act of 1999 |
| H.R. 953 | Aviation Safety Protection Act |
| H.R. 1000 | Aviation Investment and Reform Act for the 21st Century |
| H.R. 1030 | Improved Consumer Access to Travel Information Act |
| H.R. 1035 | Airport Air Quality Improvement Act |
| H.R. 1052 | To amend title 49, United States code, relating to civil penalties for unruly passengers of air carriers. |
| H.R. 1141 | Emergency Supplemental appropriations |
| H.R. 1463 | Right to Know About Airport Pollution Act of 1999 |
| H.R. 1507 | To require the Secretary of Transportation to grant exemptions under section 41714 of title 49, United States Code, to allow 30 additional slot exemptions at Ronald Reagan Washington National Airport for air carriers to provide daily air service between Ronald Reagan Washington National Airport and other airports that are more than 1,250 statute miles from Ronald Reagan Washington National Airport, and for other purposes. |
| H.R. 1551 | Civil Aviation Research and Development Authorization Act of 1999 |
| H.R. 1553 | National Weather service and Related Agencies authorization Act |
| H.R. 1678 | Airline Competition and Fairness Act of 1999 |
| H.R. 1679 | Airfare Relief Act of 1999 |
| H.R. 1738 | To amend title 49, United States Code, to provide slot exemptions for nonstop Regional jet service, and for other purposes. |
| H.R. 1833 | Customs Service Authorization Bill, FY 2000 |
| H.R. 2024 | Aviation Code-Share Safety Act of 1999 |

Air Transport Association of America, Inc.
Mid-Year 2000 Report

R- 715

Attachment A
Page 2

| | |
|---|---|
| H.R. 2051 | To amend title 49, United States Code, to require the Secretary of Transportation to investigate and hold public hearings in response to petitions claiming unreasonably high airfares or inadequate air carrier competition at airports. |
| H.R. 2084 | Department of Transportation and Related Agencies Appropriations Act, 2000 |
| H.R. 2200 | Omnibus Airline Passenger Fair Treatment Act of 1999 |
| H.R. 2490 | Treasury/Postal Service Appropriations Act, 2000 |
| H.R. 2495 | To direct the FAA administrator to issue regulations to limit the number of pieces of carry-on baggage that a passenger may bring on an airplane |
| H.R. 2499 | To amend title 49, U.S. Code to prohibit the operation of certain aircraft not complying with Stage 4 noise levels. |
| H.R. 2528 | A bill to establish the Bureau of Immigration Services and the Bureau of Immigration Enforcement within the Department of Justice. |
| H.R. 3072 | To provide for increased access to airports in the United Kingdom by U.S. air carriers, and for other purposes. |
| H.R. 3166 | To establish a commission to study the impact of deregulation of the airline industry on small town America. |
| H.R. 3194 | Consolidated Appropriations Act, FY 2000 |
| H.R. 3767 | To amend the Immigration and Nationality Act to Make Improvements to, and Permanently Authorize, the Visa Waiver Pilot Program Under Section 217 of such Act |
| H.R. 3849 | To amend the Internal Revenue Code of 1986 to repeal the 4.3 cents-per-gallon increases in motor fuel taxes enacted in 1993. |
| H.R. 3917 | To amend the Internal Revenue Code of 1986 to provide that the penalty on the reimportation of tobacco products exported from the United States shall not apply in certain cases |
| H.R. 4006 | To amend the Internal Revenue Code of 1986 to reduce motor fuel excise tax rates |
| H.R. 4470 | To amend the Internal Revenue Code of 1986 to provide that the excise tax on air transportation shall not apply to amounts paid for mileage credits for individuals residing outside the United States |
| H.R. 4475 | Department of Transportation and Related Agencies Appropriations Act, 2001 |
| H.R. 4480 | The Immigration and Naturalization Service Data Management Improvement Act of 2000 |
| H.R. 4690 | Departments of Commerce, Justice, State & the Judiciary Appropriations for FY2001 |
| H.R. 4871 | Treasury/Postal Service Appropriations for FY2001 |

Air Transport Association of America, Inc.
Mid-Year 2000 Report

R- 716

## SENATE LEGISLATION

| | |
|---|---|
| S. 81 | National Parks Overflights Act |
| S. 82 | Transportation Improvement Act |
| S. 262 | Miscellaneous Trade and Technical Corrections Act of 1999 |
| S. 304 | Small Communities Air Service Act of 1999 |
| S. 379 | Air Service Restoration Act |
| S. 383 | Airline Passenger Fairness Act |
| S. 477 | Airline Competition Act of 1999 |
| S. 536 | Wendell H. Ford National Air Transportation System Improvement Act of 1999 |
| S. 545 | Federal Aviation Administration Authorization Act of 1999 |
| S. 603 | To promote competition and greater efficiency of airlines to ensure the rights of airline passengers, to provide for full disclosure to those passengers, and for other purposes. |
| S. 643 | Interim Federal Aviation Administration Authorization Act |
| S. 648 | Aviation Safety Protection Act |
| S. 775 | Right To Know About Airport Pollution Act of 1999 |
| S. 1058 | To provide for the collection of fees for certain customs services, to authorize the continuation of certain preclearance services, and for other purposes. |
| S. 1139 | To amend title 49, United States Code, relating to civil penalties for unruly passengers of air carriers and to provide for the protection of employees providing air safety information. |
| S. 1143 | Department of Transportation and Related Agencies Appropriations Act, 2000. |
| S. 1174 | Aviation Investment and Reform Act for the 21st Century |
| S. 1193 | Safe Air Travel for Animals Act |
| S. 1217 | Commerce, Justice, State 7 the Judiciary Appropriations Act, 2000 |
| S. 1282 | Treasury/Postal Service Appropriations Act, 2000 |
| S. 1294 | To direct the Administrator of the Federal Aviation Administration to issue regulations to limit the number of pieces of carry-on baggage that a passenger may bring on an airplane. |
| S. 1362 | To establish a commission to study the airline industry and to recommend policies to ensure consumer information and choice. |
| S. 1467 | To extend the funding levels for aviation programs for 60 days. |
| S. 1563 | A bill to establish the Bureau of Immigration Services and the Bureau of Immigration Enforcement within the Department of Justice. |
| S. 1576 | To establish a commission to study the impact of deregulation of the airline industry on small town America |
| S. 1637 | To extend through the end of the current fiscal year certain expiring Federal Aviation Administration authorizations. |
| S. 1682 | Air Traffic Management Improvement Act of 1999. |
| S. 1807 | To provide for increased access to airports in the United Kingdom by U.S. air carriers, and for other purposes. |
| S. 1916 | FAA Authorization Extension Act. |
| S. 2262 | To amend the Internal Revenue Code of 1986 to Institute a Federal Fuels Tax Holiday. |
| S. 2263 | To amend the Internal Revenue Code of 1986 to Institute a Federal Fuels Tax Holiday. |
| S. 2285 | A bill instituting a Federal Fuels Tax Holiday |
| S. 2599 | The Immigration and Naturalization Service Data Management Improvement Act of 2000 |
| S. 2720 | Department of Transportation and Related Agencies Appropriations Act, 2001 |
| S. 2790 | A bill instituting a Federal fuels tax holiday |
| S. 2791 | A bill instituting a Federal fuels tax suspension |
| S. 2808 | To amend the Internal Revenue Code of 1986 to Temporarily Suspend the Federal Fuels Tax |
| S. 2891 | Air Travelers Fair Treatment Act of 2000 |

Air Transport Association of America, Inc.
Mid-Year 2000 Report

R- 717

Attachment A
Page 4

S. 2900          Treasury/Postal Service Appropriations for FY2001

## OTHER MATTERS

Air traffic control issues (Federal Aviation Administration and Department of Transportation)

Aviation regulatory and compliance issues ( principally Federal Aviation Administration and Department of Transportation, and other departments and agencies listed on page 4 of report)

Domestic and international aviation environmental issues (Environmental Protection Agency, Federal Aviation Administration, and Department of State)

Air Transport Association of America, Inc.
Mid-Year 2000 Report

R- 718

# EXHIBIT 2

R- 719

| Clerk of the House of Representatives | Secretary of the Senate |
|---|---|
| Legislative Resource Center | Office of Public Records |
| 135 Cannon Building | 232 Hart Building |
| Washington, DC 20515 | Washington, DC 20510 |
| http://lobbyingdisclosure.house.gov | http://www.senate.gov/lobby |

# LOBBYING REPORT

Lobbying Disclosure Act of 1995 (Section 5) **- All Filers Are Required to Complete This Page**

**1. Registrant Name** ☑ Organization/Lobbying Firm ☐ Self Employed Individual

Air Line Pilots Association

**2. Address**

Address1   7950 Jones Branch Drive          Address2   Suite 400S

City   McLean          State   VA   Zip Code   22102          Country   USA

**3. Principal place of business (if different than line 2)**

City          State          Zip Code          Country

| 4a. Contact Name | b. Telephone Number | c. E-mail | 5. Senate ID# |
|---|---|---|---|
| Mr.   Government Affairs Department | 2027974033 | governmentaffairs@alpa.org | 580-12 |

**7. Client Name** ☑ *Self*   ☐ *Check if client is a state or local government or instrumentality*

Air Line Pilots Association

**6. House ID#** 300140000

## TYPE OF REPORT
8. Year 2025   Q1 (1/1 - 3/31) ☑   Q2 (4/1 - 6/30) ☐   Q3 (7/1 - 9/30) ☐   Q4 (10/1 - 12/31) ☐

9. Check if this filing amends a previously filed version of this report ☐

10. Check if this is a Termination Report ☐   Termination Date _____   11. No Lobbying Issue Activity ☐

## INCOME OR EXPENSES - YOU MUST complete either Line 12 or Line 13

| **12. Lobbying** | **13. Organizations** |
|---|---|
| **INCOME** relating to lobbying activities for this reporting period was: | **EXPENSE** relating to lobbying activities for this reporting period were: |
| Less than $5,000 ☐ | Less than $5,000 ☐ |
| $5,000 or more ☐   $ _____ | $5,000 or more ☑   $ 230,000.00 |
| Provide a good faith estimate, rounded to the nearest $10,000, of all lobbying related income for the client (including all payments to the registrant by any other entity for lobbying activities on behalf of the client). | **14. REPORTING** Check box to indicate expense accounting method. See instructions for description of options. |

R- 720

☑ **Method A.** Reporting amounts using LDA definitions only

☐ **Method B.** Reporting amounts under section 6033(b)(8) of the Internal Revenue Code

☐ **Method C.** Reporting amounts under section 162(e) of the Internal Revenue Code

| Signature | Digitally Signed By: Government Affairs Department | Date | 4/23/2025 6:52:07 AM |
|---|---|---|---|

R- 721

**LOBBYING ACTIVITY.** Select as many codes as necessary to reflect the general issue areas in which the registrant engaged in lobbying on behalf of the client during the reporting period. Using a separate page for each code, provide information as requested. Add additional page(s) as needed.

15. General issue area code AVI

16. Specific lobbying issues

Aviation Safety; International Aviation and Competitiveness Issues (Flags of Convenience, Labor Protections, Joint Venture Agreement); Pilot Training and Certifications; Unmanned Aircraft Systems/Drones; NextGen and Air Traffic Management; Pilot Supply; Essential Air Service; Air Service to Rural Communities; FAA Reauthorization Act of 2018 (PL 115-254) Oversight and Implementation; Single Pilot Operations; Flight Deck Recording; Cargo Flight Deck Barriers, Cargo Flight Deck Door Act ; The Fair and Open Skies Act, radio altimeter interference issues, , Aircraft certification, Aviation Workforce Development Grants, FAA Administrator nomination, ; Let Experienced Pilots Fly Act; ; S. 896 Stopping Harmful Incidents to Enforce Lawful Drone Use Act; Cabin Air Safety Act; S. 368 Aviation WORKS Act; Biojet Fuel Research Act; NOTAM Improvement Act; S. 307, Increasing Competitiveness for American Drones Act, HR 3935 Securing Growth and Robust Leadership in American Aviation Act, Pre-Pilot Pathway Act, FAA Severe Turbulence Research and Development Act of 2023; Mental Health in Aviation Act H.R. 2353 Safer Skies Act

17. House(s) of Congress and Federal agencies ☐ Check if None

U.S. SENATE, U.S. HOUSE OF REPRESENTATIVES, Transportation - Dept of (DOT), Federal Aviation Administration (FAA)

18. Name of each individual who acted as a lobbyist in this issue area

| First Name | Last Name | Suffix | Covered Official Position (if applicable) | New |
|---|---|---|---|---|
| David | Martin | | | ☐ |
| Jordan | Austin | | | ☐ |
| Jill | Larrabee | | | ☐ |
| Sean | Maxwell | | | ☐ |
| Elizabeth | Baker | | | ☐ |
| Jeffery | Pavlak | | | ☐ |

19. Interest of each foreign entity in the specific issues listed on line 16 above ☑ Check if None

R- 722

**LOBBYING ACTIVITY.** Select as many codes as necessary to reflect the general issue areas in which the registrant engaged in lobbying on behalf of the client during the reporting period. Using a separate page for each code, provide information as requested. Add additional page(s) as needed.

15. General issue area code HOM

16. Specific lobbying issues

Federal Flight Deck Officer (FFDO) Programs; Unmanned Aircraft Systems (UAS)/Drones; (Security Fees and Taxes); Airport and Aviation Security; Cargo Security

17. House(s) of Congress and Federal agencies ☐ Check if None

U.S. SENATE, U.S. HOUSE OF REPRESENTATIVES, Homeland Security - Dept of (DHS), Transportation Security Administration (TSA)

18. Name of each individual who acted as a lobbyist in this issue area

| First Name | Last Name | Suffix | Covered Official Position (if applicable) | New |
|---|---|---|---|---|
| David | Martin | | | ☐ |
| Jordan | Austin | | | ☐ |
| Jill | Larrabee | | | ☐ |
| Sean | Maxwell | | | ☐ |
| Elizabeth | Baker | | | ☐ |
| Jeffrey | Baker | | | ☐ |

19. Interest of each foreign entity in the specific issues listed on line 16 above ☑ Check if None

R- 723

**LOBBYING ACTIVITY.** Select as many codes as necessary to reflect the general issue areas in which the registrant engaged in lobbying on behalf of the client during the reporting period. Using a separate page for each code, provide information as requested. Add additional page(s) as needed.

15. General issue area code BUD

16. Specific lobbying issues

Transportation Appropriations (Human Intervention Motivation Study, Essential Air Service Programs, Alternative Essential Air Service, NexGen and FAA, health mandates, flags of convenience); Defense Appropriations (Unmanned Aircraft Systems,); Homeland Security Appropriations (FFDO, Aviation Security); Financial Services and General Government Appropriations; National Mediation Board; Crew Complement; pilot mental health

17. House(s) of Congress and Federal agencies ☐ Check if None

U.S. SENATE, U.S. HOUSE OF REPRESENTATIVES

18. Name of each individual who acted as a lobbyist in this issue area

| First Name | Last Name | Suffix | Covered Official Position (if applicable) | New |
|---|---|---|---|---|
| David | Martin | | | ☐ |
| Jordan | Austin | | | ☐ |
| Jill | Larrabee | | | ☐ |
| Sean | Maxwell | | | ☐ |
| Elizabeth | Baker | | | ☐ |
| Jeffrey | Pavlak | | | ☐ |

19. Interest of each foreign entity in the specific issues listed on line 16 above ☑ Check if None

R- 724

**LOBBYING ACTIVITY.** Select as many codes as necessary to reflect the general issue areas in which the registrant engaged in lobbying on behalf of the client during the reporting period. Using a separate page for each code, provide information as requested. Add additional page(s) as needed.

15. General issue area code TOU

16. Specific lobbying issues

Visa Process Reforms.

17. House(s) of Congress and Federal agencies ☐ Check if None

U.S. SENATE, U.S. HOUSE OF REPRESENTATIVES

18. Name of each individual who acted as a lobbyist in this issue area

| First Name | Last Name | Suffix | Covered Official Position (if applicable) | New |
|------------|-----------|--------|-------------------------------------------|-----|
| David | Martin | | | ☐ |
| Jordan | Austin | | | ☐ |
| Jill | Larrabee | | | ☐ |
| Sean | Maxwell | | | ☐ |

19. Interest of each foreign entity in the specific issues listed on line 16 above ☑ Check if None

R- 725

**LOBBYING ACTIVITY.** Select as many codes as necessary to reflect the general issue areas in which the registrant engaged in lobbying on behalf of the client during the reporting period. Using a separate page for each code, provide information as requested. Add additional page(s) as needed.

15. General issue area code GOV

16. Specific lobbying issues

| Regulatory Reform |
|---|

17. House(s) of Congress and Federal agencies ☐ Check if None

| U.S. SENATE, U.S. HOUSE OF REPRESENTATIVES, Transportation - Dept of (DOT) |
|---|

18. Name of each individual who acted as a lobbyist in this issue area

| First Name | Last Name | Suffix | Covered Official Position (if applicable) | New |
|---|---|---|---|---|
| David | Martin | | | ☐ |
| Jordan | Austin | | | ☐ |
| Jill | Larrabee | | | ☐ |
| Sean | Maxwell | | | ☐ |
| Elizabeth | Baker | | | ☐ |
| Jeffrey | Pavlak | | | ☐ |

19. Interest of each foreign entity in the specific issues listed on line 16 above ☑ Check if None

| |
|---|

R- 726

**LOBBYING ACTIVITY.** Select as many codes as necessary to reflect the general issue areas in which the registrant engaged in lobbying on behalf of the client during the reporting period. Using a separate page for each code, provide information as requested. Add additional page(s) as needed.

15. General issue area code TAX

16. Specific lobbying issues

Health Care Tax Credit, Flex Spending Accounts, Defined Contribution Plan Catch up Contributions; Sustainable Aviation Fuel Tax Credit Farm Bill SAF Tax Credit; Tax Fairness for Workers Act,

17. House(s) of Congress and Federal agencies ☐ Check if None

U.S. SENATE, U.S. HOUSE OF REPRESENTATIVES

18. Name of each individual who acted as a lobbyist in this issue area

| First Name | Last Name | Suffix | Covered Official Position (if applicable) | New |
|---|---|---|---|---|
| David | Martin | | | ☐ |
| Jordan | Austin | | | ☐ |
| Jill | Larrabee | | | ☐ |
| Sean | Maxwell | | | ☐ |

19. Interest of each foreign entity in the specific issues listed on line 16 above ☑ Check if None

R- 727

**LOBBYING ACTIVITY.** Select as many codes as necessary to reflect the general issue areas in which the registrant engaged in lobbying on behalf of the client during the reporting period. Using a separate page for each code, provide information as requested. Add additional page(s) as needed.

15. General issue area code LBR

16. Specific lobbying issues

Right to Work, HHS Appropriations (NMB Funding); , Protecting the Right to Organize Act, DOL nominations, NTSB nominations, DOL Labor Condition Applications. Federal Preemption Issues

17. House(s) of Congress and Federal agencies ☐ Check if None

U.S. SENATE, U.S. HOUSE OF REPRESENTATIVES

18. Name of each individual who acted as a lobbyist in this issue area

| First Name | Last Name | Suffix | Covered Official Position (if applicable) | New |
|---|---|---|---|---|
| David | Martin | | | ☐ |
| Jordan | Austin | | | ☐ |
| Jill | Larrabee | | | ☐ |
| Sean | Maxwell | | | ☐ |
| Jeffrey | Pavlak | | | ☐ |

19. Interest of each foreign entity in the specific issues listed on line 16 above ☑ Check if None

R- 728

**LOBBYING ACTIVITY.** Select as many codes as necessary to reflect the general issue areas in which the registrant engaged in lobbying on behalf of the client during the reporting period. Using a separate page for each code, provide information as requested. Add additional page(s) as needed.

15. General issue area code DEF

16. Specific lobbying issues

National Defense Authorization, pilot mental health

17. House(s) of Congress and Federal agencies ☐ Check if None

U.S. SENATE, U.S. HOUSE OF REPRESENTATIVES

18. Name of each individual who acted as a lobbyist in this issue area

| First Name | Last Name | Suffix | Covered Official Position (if applicable) | New |
|---|---|---|---|---|
| David | Martin | | | ☐ |
| Jordan | Austin | | | ☐ |
| Jill | Larrabee | | | ☐ |
| Sean | Maxwell | | | ☐ |

19. Interest of each foreign entity in the specific issues listed on line 16 above ☑ Check if None

R- 729

**LOBBYING ACTIVITY.** Select as many codes as necessary to reflect the general issue areas in which the registrant engaged in lobbying on behalf of the client during the reporting period. Using a separate page for each code, provide information as requested. Add additional page(s) as needed.

15. General issue area code TEC

16. Specific lobbying issues

GPS Issues and 5G interference with critical aviation instrumentation, Next Generation Telecommunications Act

17. House(s) of Congress and Federal agencies ☐ Check if None

U.S. SENATE, U.S. HOUSE OF REPRESENTATIVES

18. Name of each individual who acted as a lobbyist in this issue area

| First Name | Last Name | Suffix | Covered Official Position (if applicable) | New |
|---|---|---|---|---|
| David | Martin | | | ☐ |
| Jordan | Austin | | | ☐ |
| Jill | Larrabee | | | ☐ |
| Sean | Maxwell | | | ☐ |

19. Interest of each foreign entity in the specific issues listed on line 16 above ☑ Check if None

R- 730

**LOBBYING ACTIVITY.** Select as many codes as necessary to reflect the general issue areas in which the registrant engaged in lobbying on behalf of the client during the reporting period. Using a separate page for each code, provide information as requested. Add additional page(s) as needed.

15. General issue area code RET

16. Specific lobbying issues

Changes to PBGC premium structure relating to Market Based Cash Balance Plans (no legislation introduced)

17. House(s) of Congress and Federal agencies ☐ Check if None

U.S. SENATE, U.S. HOUSE OF REPRESENTATIVES

18. Name of each individual who acted as a lobbyist in this issue area

| First Name | Last Name | Suffix | Covered Official Position (if applicable) | New |
|---|---|---|---|---|
| Jordan | Austin | | | ☐ |
| David | Martin | | | ☐ |
| Jill | Larrabee | | | ☐ |
| Sean | Maxwell | | | ☐ |

19. Interest of each foreign entity in the specific issues listed on line 16 above ☑ Check if None

**Information Update Page - Complete ONLY where registration information has changed.**

20. Client new address

Address _____

City _____    State _____    Zip Code _____    Country _____

21. Client new principal place of business (if different than line 20)

City _____    State _____    Zip Code _____    Country _____

22. New General description of client's business or activities

# LOBBYIST UPDATE

23. Name of each previously reported individual who is no longer expected to act as a lobbyist for the client

| First Name | Last Name | Suffix | First Name | Last Name | Suffix |
|---|---|---|---|---|---|

R- 731

5/14/25, 1:00 PM
LD-2 Disclosure Form

Case 1:24-cv-03434-ACR    Document 54-2    Filed 06/12/25    Page 25 of 95
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 732 of 971

1 _____  _____  3 _____  _____

2 _____  _____  4 _____  _____

## ISSUE UPDATE

24. General lobbying issue that no longer pertains

☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐

## AFFILIATED ORGANIZATIONS

25. Add the following affiliated organization(s)

Internet Address:

| Name | Address<br>Street Address<br>City    State/Province    Zip    Country | Principal Place of Business<br>(city and state or country)<br>City<br>State    Country |
|---|---|---|
|  |  |  |

26. Name of each previously reported organization that is no longer affiliated with the registrant or client

1       2       3

## FOREIGN ENTITIES

27. Add the following foreign entities:

| Name | Address<br>Street Address<br>City    State/Province    Country | Principal place of business<br>(city and state or country) | Amount of contribution for lobbying activities | Ownership percentage in client |
|---|---|---|---|---|
|  |  | City<br>State    Country |  | % |

28. Name of each previously reported foreign entity that no longer owns, or controls, or is affiliated with the registrant, client or affiliated organization

1       3       5

2       4       6

R- 732

USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 733 of 971

**CONVICTIONS DISCLOSURE**

29. Have any of the lobbyists listed on this report been convicted in a Federal or State Court of an offense involving bribery, extortion, embezzlement, an illegal kickback, tax evasion, fraud, a conflict of interest, making a false statement, perjury, or money laundering?

☑ No  ☐ Yes

| Lobbyist Name | Description of Offense(s) |
|---|---|
| | |

R- 733

R- 734

# EXHIBIT 3

| Clerk of the House of Representatives | Secretary of the Senate |
|---|---|
| Legislative Resource Center | Office of Public Records |
| B-106 Cannon Building | 232 Hart Building |
| Washington, DC 20515 | Washington, DC 20510 |

**Secretary of the Senate**
**Received: Aug 14, 2000**

# LOBBYING REPORT

Lobbying Disclosure Act of 1995 (Section 5) - **All Filers Are Required To Complete This Page**

1. Registrant Name:

**AMERICAN AIRLINES**

2. Address:
1101 17TH ST NW   #600, WASHINGTON, DC 20036

3. Principal place of business (if different from line 2):
City:  FORT WORTH   State/Zip(or Country): TX 76155

4. Contact Name:  KEVIN WORTH
   Telephone:  202-496-5654
   E-mail (optional):  JOHN.GLASER@AA.COM

Senate ID #:  1422-12
House ID #:  30853000

7. Client Name:  ☒ Self

## TYPE OF REPORT

8. Year___2000_____   Midyear (January 1 - June 30): ☒  **OR**  Year End (July 1 - December 31): ☐

9. Check if this filing amends a previously filed version of this report: ☐

10. Check if this is a Termination Report: ☐ => Termination Date: _____   11. No Lobbying Activity: ☐

## INCOME OR EXPENSES

Complete Either Line 12 **OR** Line 13

**12. Lobbying Firms**

   **INCOME**  relating to lobbying activities for this reporting period was:

   Less than $10,000: ☐

   $10,000 or more: ☐ => Income (nearest $20,000):_____

Provide a good faith estimate, rounded to the nearest $20,000, of all lobbying related income from the client (including all payments to the registrant by any other entity for lobbying activities on behalf of the client).

**13. Organizations**

   **EXPENSES**  relating to lobbying activities for this reporting period were:

   Less than $10,000: ☐

   $10,000 or more: ☒ => Expenses (nearest $20,000):___1,200,000.00_____

**14. Reporting Method.**
   Check box to indicate expense accounting method.  See instructions for description of options.

   ☐ **Method A.**  Reporting amounts using LDA definitions only
   ☐ **Method B.**  Reporting amounts under section 6033(b)(8) of the Internal Revenue Code
   ☒ **Method C.**  Reporting amounts under section 162(e) of the Internal Revenue Code

Page 1

**R- 735**

Registrant Name: AMERICAN AIRLINES Client Name: Self

## LOBBYING ACTIVITY.

Select as many codes as necessary to reflect the general issue areas in which the registrant engaged in lobbying on behalf of the client during the reporting period. Using a separate page for each code, provide information as requested. Attach additional page(s) as needed.

15. General issue area code: AVI   (one per page)

16. Specific lobbying issues:

MISC AIRLINE COMPETITION/PASSENGER RIGHTS BILLS - HR 272, HR 700, HR 752, HR 780, HR 897, HR 907, HR 908, HR 951, HR 953, HR 1030, HR 1678, HR 1679, HR 2051, HR 2200, S 82, S 379, S 383, S 477, S 603, S 1362, S 2891  SERVICE TO SMALL COMMUNITIES - HR 3166, S 304, S 1516  SLOTS - HR 1507, HR 1738  CIVIL PENALTIES FOR UNRULY PASSENGERS - HR 1052, S 1139  CARRY-ON BAGGAGE LIMITS - HR 2495, S 1294  AVIATION CODE-SHARE SAFETY ACT - HR 2024  SAFE AIR TRAVEL FOR ANIMALS ACT - S 1193  AIR TRAFFIC MANAGEMENT IMPROVEMENT - S 1682  AVIATION SAFETY PROTECTION ACT - S 648  INTERNATIONAL ISSUES - BILATERAL AVIATION AGREEMENTS, INTERNATIONAL ROUTE AUTHORIZATIONS

17. House(s) of Congress and Federal agencies contacted:
Commerce, Dept of (DOC)
Council of Economic Advisers
Executive Office of the President
Federal Aviation Administration (FAA)
HOUSE OF REPRESENTATIVES
SENATE
State, Dept of (DOS)
Transportation, Dept of (DOT)
U.S. Trade Representative (USTR)

18. Name of each individual who acted as a lobbyist in this issue area:

Name: BLOCKER III, ANAIAS
   Covered Official Position (if applicable): N/A
Name: DOERNHOEFER, GARY
   Covered Official Position (if applicable): N/A
Name: ELWELL, DAN
   Covered Official Position (if applicable): N/A
Name: KARR, SHANE
   Covered Official Position (if applicable): N/A
Name: NICHOLS, JULIE L.
   Covered Official Position (if applicable): N/A
Name: RIS, WILLIAM K.
   Covered Official Position (if applicable): N/A
Name: STROTHER, DANIELLA L.
   Covered Official Position (if applicable): N/A
Name: TALLEY, KIM
   Covered Official Position (if applicable): N/A

19. Interest of each foreign entity in the specific issues listed on line 16 above.**None**

Page 2

R- 736

Registrant Name: AMERICAN AIRLINES Client Name: Self

## LOBBYING ACTIVITY.

Select as many codes as necessary to reflect the general issue areas in which the registrant engaged in lobbying on behalf of the client during the reporting period. Using a separate page for each code, provide information as requested. Attach additional page(s) as needed.

15. General issue area code: BUD (one per page)

16. Specific lobbying issues:

FAA REAUTHORIZATION - HR 98, HR 99, HR 111, HR 1000, HR 1141, S 536, S 545, S 643, S 1174, S 1467, S 1637, S 1916  DOT APPROPRIATIONS - HR 2084, HR 3194, HR 4475, S 1143, S 2720  COMMERCE, STATE, JUSTICE APPROPRIATIONS - HR 4690  CUSTOMS SERVICE AUTHORIZATION - HR 1833, S 1058, S 1217  CIVIL AVIATION R&D AUTHORIZATION - HR 1551

17. House(s) of Congress and Federal agencies contacted:
Federal Aviation Administration (FAA)
HOUSE OF REPRESENTATIVES
SENATE
Transportation, Dept of (DOT)

18. Name of each individual who acted as a lobbyist in this issue area:

Name: DOERNHOEFER, GARY
    Covered Official Position (if applicable): N/A
Name: ELWELL, DAN
    Covered Official Position (if applicable): N/A
Name: NICHOLS, JULIE L.
    Covered Official Position (if applicable): N/A
Name: RIS, WILLIAM K.
    Covered Official Position (if applicable): N/A
Name: STROTHER, DANIELLA L.
    Covered Official Position (if applicable): N/A

19. Interest of each foreign entity in the specific issues listed on line 16 above. **None**

Page 3

R- 737

Registrant Name: AMERICAN AIRLINES Client Name: Self

## LOBBYING ACTIVITY.

Select as many codes as necessary to reflect the general issue areas in which the registrant engaged in lobbying on behalf of the client during the reporting period. Using a separate page for each code, provide information as requested. Attach additional page(s) as needed.

15. General issue area code: ENV    (one per page)

16. Specific lobbying issues:

AIRCRAFT NOISE RESTRICTIONS - HR 129, HR 2499  AIRPORT AIR QUALITY - HR 1035, HR 1463, S 775  MONTREAL PROTOCOL  E.U. HUSHKIT REGULATIONS

17. House(s) of Congress and Federal agencies contacted:
Environmental Protection Agency (EPA)
Federal Aviation Administration (FAA)
HOUSE OF REPRESENTATIVES
SENATE
Transportation, Dept of (DOT)

18. Name of each individual who acted as a lobbyist in this issue area:

Name:  DOERNHOEFER, GARY
     Covered Official Position (if applicable):  N/A

19. Interest of each foreign entity in the specific issues listed on line 16 above.**None**

Page 4

R- 738

Registrant Name: AMERICAN AIRLINES Client Name: Self

## LOBBYING ACTIVITY.

Select as many codes as necessary to reflect the general issue areas in which the registrant engaged in lobbying on behalf of the client during the reporting period. Using a separate page for each code, provide information as requested. Attach additional page(s) as needed.

15. General issue area code:  TAX    (one per page)

16. Specific lobbying issues:

FUEL TAX REPEAL - HR 3849, S 2262, S 2263, S 2285, S 2790, S 2791, S 2808  TOBACCO IMPORT PENALTIES - HR 3917

17. House(s) of Congress and Federal agencies contacted:
HOUSE OF REPRESENTATIVES
SENATE

18. Name of each individual who acted as a lobbyist in this issue area:

Name:  NICHOLS, JULIE L.
    Covered Official Position (if applicable):  N/A

19. Interest of each foreign entity in the specific issues listed on line 16 above.**None**


Signature:  ON FILE      Date: Aug 14, 2000

Printed Name and Title: SHANE KARR  -  LEGISLATIVE ASSISTANT

Page 5

R- 739

# EXHIBIT 4

Case 1:24-cv-03434-AGR   Document 54-2   Filed 06/12/25   Page 34 of 95

USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 741 of 971

[Congressional Bills 106th Congress]
[From the U.S. Government Publishing Office]
[H.R. 2024 Introduced in House (IH)]


106th CONGRESS
  1st Session

                          H. R. 2024

   To amend title 49, United States Code, to require air carriers to
    conduct safety audits of foreign air carriers as a condition of
   approval of certain cooperative arrangements between the carriers.

_____


                    IN THE HOUSE OF REPRESENTATIVES

                             June 7, 1999

Mr. Oberstar (for himself, Mr. Lipinski, and Ms. Eddie Bernice Johnson
   of Texas) introduced the following bill; which was referred to the
             Committee on Transportation and Infrastructure

_____


                              A BILL


   To amend title 49, United States Code, to require air carriers to
    conduct safety audits of foreign air carriers as a condition of
   approval of certain cooperative arrangements between the carriers.

    Be it enacted by the Senate and House of Representatives of the
United States of America in Congress assembled,

SECTION 1. SHORT TITLE.

    This Act may be cited as the ``Aviation Code-Share Safety Act of
1999''.

R- 741

5/9/25, 9:07 PM
Case 1:24-cv-03434-AGR    Document 54-2    Filed 06/12/25    Page 35 of 95
govinfo.gov/content/pkg/BILLS-106hr2024ih/html/BILLS-106hr2024ih.htm
USCA Case #25-7122    Document #2186844    Filed: 08/06/2026    Page 742 of 971

SEC. 2. APPROVAL OF AIR CARRIER CODE-SHARING ARRANGEMENTS WITH FOREIGN
             AIR CARRIERS.

     (a) In General.--Section 41309 of title 49, United States Code, is
amended by adding at the end the following:
     ``(d) Approval of Code-Sharing Arrangements.--
             ``(1) In general.--The Secretary of Transportation may
        approve a code-sharing arrangement under subsection (a) between
        an air carrier providing air transportation of passengers and a
        foreign air carrier only if--
                     ``(A) the director of safety, director of
                operations, and director of maintenance for the air
                carrier (or individuals employed in equivalent
                positions) each certify to the Administrator of the
                Federal Aviation Administration that--
                             ``(i) an initial safety audit, including an
                        on-site inspection, of the foreign air carrier
                        has been conducted under a safety audit program
                        approved by the Administrator under this
                        subsection; and
                             ``(ii) the foreign air carrier met the
                        standards of the safety audit program; and
                     ``(B) the air carrier agrees to conduct periodic
                safety audits, including on-site inspections, of the
                foreign air carrier in accordance with the safety audit
                program.
             ``(2) Requirements for safety audit programs.--
                     ``(A) Elements to be audited.--A safety audit
                program of an air carrier under this section shall
                include periodic safety audits, including on-site
                inspections, conducted by the air carrier of each of
                the following elements of a foreign air carrier's
                operations:
                             ``(i) Flight operations.
                             ``(ii) Maintenance operations.
                             ``(iii) Airworthiness.
                             ``(iv) Incident and accident rates.
                             ``(v) Crew training.
                             ``(vi) En-route procedures.
                             ``(vii) Emergency response plans.
                             ``(viii) Other elements considered
                        necessary by the Administrator.
                     ``(B) Quality assurance.--A safety audit program of
                an air carrier under this section shall include
                procedures to ensure the quality of audits conducted
                under the program, including procedures for training
                personnel of the air carrier who will conduct the
                audits.
                     ``(C) Changes in ownership.--A safety audit program

R- 742

Case 1:24-cv-03434-AGB   Document 54-2   Filed 06/12/25   Page 36 of 95
USCA Case #25-7123    Document #2186844         Filed: 08/06/2026      Page 743 of 971

of an air carrier under this section shall include procedures to ensure that if there is a change in ownership of a code-sharing partner of the air carrier a new audit of the code-sharing partner will be conducted under the program.

``(3) Guidance.--Not later than 180 days after the date of enactment of this subsection, the Administrator, in consultation with the Secretary of Defense, the International Civil Aviation Organization, and representatives and employees of air carriers and foreign air carriers, shall issue guidance to air carriers on the establishment of safety audit programs that will satisfy the requirements of this subsection.

``(4) Approval.--An air carrier described in paragraph (1) that has entered into or plans to enter into a code-share arrangement with a foreign air carrier shall submit a safety audit program to the Administrator for approval.

``(5) Written records.--Each director of an air carrier making a certification under paragraph (1) shall maintain for inspection by the Administrator sufficient written records to support the certification.

``(6) Reviews.--To ensure the consistency, quality, and effectiveness of safety audit programs conducted under this subsection, the Administrator shall conduct a comprehensive review of the safety audit program of an air carrier at least once each year. To facilitate such a review, the air carrier shall permit the Administrator to accompany the air carrier on site inspections of foreign air carriers that are code-share partners of the air carrier.

``(7) Assessments of foreign regulatory authorities.--The Administrator shall work with the International Civil Aviation Organization to ensure that oversight of code-sharing arrangements between air carriers and foreign air carriers is included as part of any assessment of a country's air safety regulatory authorities.

``(8) Code-sharing arrangement defined.--In this subsection, the term `code-sharing arrangement' means an arrangement whereby an air carrier's designator code is used to identify a flight operated by another carrier.

``(9) Applicability.--

``(A) In general.--Paragraph (1) shall apply to approvals of code-sharing arrangements under subsection (a) on and after the day that is 1 year after the date of enactment of this subsection.

``(B) Existing agreements.--If an air carrier has received approval of a code-sharing arrangement under subsection (a) before the day that is 1 year after the date of enactment of this subsection (including approvals received before such date of enactment), the air carrier shall make the certifications and

R- 743

Case 1:24-cv-03434-AGR   Document 54-2   Filed 06/12/25   Page 37 of 95

USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 744 of 971

assurances required by paragraph (1) with respect to
the arrangement on or before such day.''.
    (b) Conforming Amendment.--Section 41309(b) of such title is
amended--
            (1) by striking ``or'' at the end of paragraph (1);
            (2) by striking the period at the end of paragraph (2) and
        inserting ``; or''; and
            (3) by adding at the end the following:
        ``(3) or, after periodic review, end approval of a code-
        sharing arrangement that raises safety concerns.''.
                                <all>

R- 744

# EXHIBIT 5

R- 745

Case 1:24-cv-03434-ACR     Document 54-2     Filed 06/12/25 • Page 39 of 95

USCA Case #25-7123     Document #2186844     Filed: 08/06/2026     Page 746 of 971

Donate                                                    ≡

Home        PACs        Candidate Recipients

# American Airlines PAC Contributions to Federal Candidates

Summary    Candidate Recipients    Donors    Expenditures    PAC/Party Contributions



Search for a PAC                                                    🔍

Select a cycle:        2024 ▼

## $420,500

**Total contributions from American Airlines PAC to federal candidates, 2023-2024**

R- 746

Case 1:24-cv-03434-ACR    Document 54-2    Filed 06/12/25    Page 40 of 95
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 747 of 971

# $220,000
*(52.32%)*
**To Democrats**

Donate

# $200,000
*(47.56%)*
**To Republicans**

## House Candidates, 2023-2024  *i*

| | | |
|---|---|---|
| Democrats | $190,500 | 54.51% |
| Republicans | $159,000 | 45.49% |

**DONATE**

| Filter results |
|---|

| Candidate | Total |
|---|---|
| Sam Graves (R-Mo) | $10,000 |
| Hakeem Jeffries (D-NY) | $10,000 |
| Rick Larsen (D-Wash) | $10,000 |

R- 747

Case 1:24-cv-03434-ACR Document 54-2 Filed 06/12/25 Page 41 of 95
USCA Case #25-7123 Document #2186844 Filed: 08/06/2026 Page 748 of 971

| Candidate | Total |
|-----------|-------|
| Kevin McCarthy (R-Calif) Donate | $10,000 |
| Katherine Clark (D-Mass) | $8,500 |
| Carlos Gimenez (R-Fla) | $8,500 |
| Tom Cole (R-Okla) | $7,500 |
| Mike Quigley (D-Ill) | $7,500 |
| Raja Krishnamoorthi (D-Ill) | $7,000 |
| Pete Aguilar (D-Calif) | $6,000 |

Showing 1 to 10 of 138 entries

PREVIOUS   1   2   3   4   5   …   14   NEXT

**DONATE**

**Senate Candidates, 2023-2024**  *i*

R- 748

Case 1:24-cv-03434-ACR Document 54-2 Filed 06/12/25 Page 42 of 95

USCA Case #25-7123 Document #2186844 Filed: 08/06/2026 Page 749 of 971

| | Total | Percent |
|---|---|---|
| Republicans | $41,000 | 58.16% |
| | Donate | |
| Democrats | $29,500 | 41.84% |

Filter results

| Candidate | Total |
|---|---|
| Tim Kaine (D-Va) | $7,000 |
| Tammy Baldwin (D-Wis) | $5,000 |
| Ted Budd (R-NC) | $5,000 |
| Bob Casey (D-Pa) | $5,000 |
| Deb Fischer (R-Neb) | $5,000 |
| Dave McCormick (R-Pa) | $5,000 |
| Markwayne Mullin (R-Okla) | $5,000 |
| Lisa Blunt Rochester (D-Del) | $3,500 |
| Marsha Blackburn (R-Tenn) | $2,500 |
| Sherrod Brown (D-Ohio) | $2,500 |

Showing 1 to 10 of 25 entries

DONATE

R- 749

Case 1:24-cv-03434-ACR    Document 54-2    Filed 06/12/25    Page 43 of 95
USCA Case #25-7123      Document #2186844        Filed: 08/06/2026      Page 750 of 971

PREVIOUS        1        2        3        NEXT

Donate

Based on data released by the Federal Election Commission on February 06, 2025 .

NOTE: Negative numbers may result from PACs making a contribution in one cycle and receiving a refund in a subsequent cycle.

Feel free to distribute or cite this material, but please credit OpenSecrets. For permission to reprint for commercial uses, such as textbooks, contact OpenSecrets: info@opensecrets.org

DONATE

## We follow the money. You make it possible.

| $35 | $50 | $100 | Other |

## Count Cash & Make Change

Sign up for our newsletter to track money's influence on U.S. elections and public policy.

Email address          **SIGN UP**

R- 750

Case 1:24-cv-03434-ACR Document 54-2 Filed 06/12/25 Page 44 of 95

USCA Case #25-7123 Document #2186844 Filed: 08/06/2026 Page 751 of 971

**DONATE TODAY**

Donate



**Contact** →

**Donate** →

**Buy Custom Data** →

A 501(c)(3) tax-exempt, charitable organization

1100 13th Street, NW, Suite 800 Washington, DC 20005

(202) 857-0044

**info@opensecrets.org**
**press@opensecrets.org**
**Privacy Policy**

Subscribe to our newsletter

| Email address | Sign Up |

DONATE

R- 751

Case 1:24-cv-03434-ACR Document 54-2 Filed 06/12/25 Page 45 of 95

USCA Case #25-7123 Document #2186844 Filed: 08/06/2026 Page 752 of 971

Except for the Revolving Door section, content on this site is licensed under a Creative Commons Attribution-Noncommercial-Share Alike 3.0 United States License by OpenSecrets.org. To request permission for commercial use, please contact us.

**opensecrets**

Donate

DONATE

R- 752

# EXHIBIT 6

R- 753

Case 1:24-cv-03434-ACR    Document 54-2    Filed 06/12/25    Page 47 of 95
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 754 of 971



Sign up

 Job Search

# Specialist, Government and Corporate Affairs Customer Service

**American Airlines Group**  posted 9 months ago

Full-time    Washington, DC    Air Transportation

## About the position

As a Specialist in Government and Corporate Affairs Customer Service at American Airlines, you will be an integral part of the Corporate Affairs Team within the Government Affairs Division. This role is designed for individuals who are passionate about providing exceptional service to premium customers in a caring, efficient, and diplomatic manner. You will have the opportunity to engage with customers, addressing their needs and ensuring a positive experience while promoting the airline's services. Your responsibilities will include preparing travel itineraries, computing fares, issuing refunds, and preparing tickets, all while maintaining a high standard of customer service. You will also be tasked with answering inquiries related to general travel information and resolving customer issues in a mutually beneficial manner. Communication is key in this role, as you will be responsible for informing customers about flight cancellations or delays and any new rules, policies, or procedures that may affect their travel plans. Additionally, you will handle special projects assigned by the Government Affairs department, contributing to the overall success of the team. In this position, you will not only enhance your customer service skills but also gain valuable experience in the travel industry. American Airlines offers a dynamic work environment where you can grow your expertise and advance your career while enjoying the benefits of travel and personal development. You will be encouraged to tackle challenges with flexibility and grace, learning new skills that will help you become the best version of yourself. This role is perfect for individuals who thrive in a



Resume
Match Score

Upload and Match Resume

Apply

Track Jobs with Teal



R- 754

Case 1:24-cv-03434-ACR Document 54-2 Filed 06/12/25 Page 48 of 95
USCA Case #25-7123 Document #2186844 Filed: 08/06/2026 Page 755 of 971

## Responsibilities

- Promotes and sells air travel on American Airlines
- Prepares itineraries, computes fares, issues refunds and prepares and issues tickets
- Answers inquiries regarding general travel information and resolves customer problems in a mutually beneficial manner
- Communicates with customers over the phone when researching passenger complaints, advising of cancelled or delayed flights
- Communicates new rules, policies and procedures that would affect the customer
- Handles assigned special projects from the Government Affairs department as needed

## Requirements

- High School diploma or GED equivalency
- Bachelor's degree in relevant field or equivalent experience/training (preferred)
- Passenger Service experience (preferred)
- Ability to demonstrate excellent leadership, organizational and customer contact skills
- Knowledge of Native SABRE
- Ability to be resourceful and creative at immediate problem resolution
- Ability to demonstrate high level of initiative, exercise good judgment and be dependable
- Satisfactory attendance required
- Ability to be self-motivated, highly resourceful with good judgment in decision making for best customer outcome while maintaining sensitive ethics requirements

## Benefits

- Travel Perks: Access to 365 destinations on more than 6,800 daily flights
- Health Benefits: Health, dental, prescription, and vision benefits from day one
- Wellness Programs: Tools and resources for personal wellness
- 401(k) Program: Available upon hire with employer contributions after one year
- Employee Assistance Program
- Pet insurance
- Discounts on hotels, cars, cruises, and more

☐ Track Jobs with Teal     ☐ Apply

R- 755

Case 1:24-cv-03434-ACR   Document 54-2   Filed 06/12/25   Page 49 of 95
USCA Case #25-7123      Document #2186844      Filed: 08/06/2026      Page 756 of 971

| Tools | Career Hubs | Guides | Company |
|---|---|---|---|
| AI Resume Builder | Career Hub | ChatGPT for Resumes | Sign Up |
| Job Application Tracker | Career Paths | ChatGPT for Cover Letters | Teal+ Pricing |
| Resume Checker | Resume Examples | How to Make a Resume | Log In |
| Cover Letter Generator | Resume Templates | About Me in Resume | How it Works |
| Resume Summary Generator | Cover Letter Examples | Resume Summary Examples | About Us |
| Resume Job Description Match | Cover Letter Templates | Resume Skills Section | Contact Us |
| Resume Bullet Point Generator | Resume Synonyms | Resume Accomplishments | Open Positions |
| LinkedIn Resume Builder | CV Examples | Job Board | Affiliate Program |

© 2024 Teal Labs, Inc      Privacy Policy      Terms of Service

R- 756

Case 1:24-cv-03384-ACR   Document 54-2   Filed 06/12/25   Page 50 of 95
USCA Case #25-7123      Document #2186844      Filed: 08/06/2026      Page 757 of 971

**Diversity for Social Impact**

Diversity Resources     DEI Certified Companies     Sustainability Jobs          Post a job

# Specialist, Government and Corporate Affairs Customer Service

8/14/24

Washington, DC, USA     Hybrid

Full time

Diversity and Inclusion

Minority Friendly    Equal Pay    Women Friendly    Diversity Friendly    LGBTQ+ Friendly

Equal Employment Opportunity    People with Disability Friendly

New Immigrants Friendly    Black Friendly

320 views

Apply for this position     Save

Are you ready to explore a world of possibilities, both at work and during your time off? Join our American Airlines family, and you'll travel the world, grow your expertise and become the best version of you. As you embark on a new journey, you'll tackle challenges with flexibility and grace, learning new skills and advancing your career while having the time of your life. Feel free to enrich both your personal and work life and hop on board!

We use cookies to improve your experience. By using our site, you agree to our Cookie Policy.

Accept

R- 757

Case 1:24-cv-03384-ACR    Document 54-2    Filed 06/12/25    Page 51 of 95
USCA Case #25-7123        Document #2186844        Filed: 08/06/2026        Page 758 of 971

**Diversity for Social Impact**       Diversity Resources        DEI Certified Companies        Sustainability Jobs                        Post a job

This job is a member of the Corporate Affairs Team within the Government Affairs Division.

What You'll Do

Promotes and sells air travel on American Airlines

Prepares itineraries, computes fares, issues refunds and prepares and issues tickets

Answers inquiries regarding general travel information and resolves customer problems in a mutually beneficial manner

Communicates with customer over the phone when researching passenger complaints, advising of cancelled or delayed flights

Communicates new rules, policies and procedures that would affect the customer

All you'll need for success

We use cookies to improve your experience. By using our site, you agree to our Cookie Policy.

Minimum Qualifications - Education & Prior Job Experience

R- 758

Case 1:24-cv-03434-ACR   Document 54-2   Filed 06/12/25   Page 52 of 95
USCA Case #25-7123      Document #2186844      Filed: 08/06/2026      Page 759 of 971



**Diversity for Social Impact**

Diversity Resources        DEI Certified Companies        Sustainability Jobs                Post a job

Preferred Qualifications - Education & Prior Job Experience

Bachelor's degree in relevant field or equivalent experience/training

Skills, Licenses & Certifications

Ability to demonstrate excellent leadership, organizational and customer contact skills

Knowledge of Native SABRE

Ability to be resourceful and creative at immediate problem resolution

Ability to demonstrate high level of initiative, exercise good judgment and be dependable

Satisfactory attendance required

What You'll Get

American Airlines

We use cookies to improve your experience. By using our site, you agree to our Cookie Policy.

Share this job

R- 759

5/10/25, 10:46 PM

Specialist, Government and Corporate Affairs Customer Service Job @ American Airlines on Diversity and Social Impact Diversity Job Board by Diversity Social Impact Jobs

USCA Case #25-7123          Document #2186844          Filed: 08/06/2026          Page 760 of 971

Diversity for Social Impact

Travel Perks: Ready to explore the world? You, your family and your friends can reach 365 destinations on more than 6,800 daily flights across our global network.

Health Benefits: On day one, you'll have access to your health, dental, prescription and vision benefits to help you stay well. And that's just the start, we also offer virtual doctor visits, flexible spending accounts and more.

Wellness Programs: We want you to be the best version of yourself – that's why our wellness programs provide you with all the right tools, resources and support you need.

401(k) Program: Available upon hire and, depending on the workgroup, employer contributions to your 401(k) program are available after one year.

Feel free to be yourself at American

From the team members we hire to the customers we serve, inclusion and diversity are the foundation of the dynamic workforce at American Airlines. Our 20+ Employee Business Resource Groups are focused on connecting our team members to our customers, suppliers, communities and shareholders, helping team members reach their full potential and creating an inclusive work environment to meet and exceed the needs of our diverse world.

We use cookies to improve your experience. By using our site, you agree to our Cookie Policy.

R- 760

Case 1:24-cv-03384-ACR    Document 54-2    Filed 06/12/25    Page 54 of 95
USCA Case #25-7123        Document #2186844        Filed: 08/06/2026        Page 761 of 971

 **Diversity for Social Impact**    Diversity Resources    DEI Certified Companies    Sustainability Jobs    Post a job

Are you ready to feel a tremendous sense of pride and satisfaction as you do your part to keep the largest airline in the world running smoothly as we care for people on life's journey? Feel free to be yourself at American.

| Apply for this position | Save |  |

## Related jobs

 **Mechanical Engineering Intern - Summer 2025**
WSP

 **Marketing Graphic Design Intern - Summer 2025 (Georgia, United States)**
Mohawk Industries

 **Senior Director, Diversity, Equity & Inclusion (DE&I) Partnerships & Programs**
Nike

 **Director, Retail Compensation Programs & Consulting - Remote Work Option**
Nike

 **Victim Specialist**
City of Chicago

We use cookies to improve your experience. By using our site, you agree to our Cookie Policy.

R- 761

Case 1:24-cv-03484-ACR    Document 54-2    Filed 06/12/25    Page 55 of 95
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 762 of 971

**Diversity for Social Impact**

Diversity Resources   DEI Certified Companies   Sustainability Jobs   Post a job

## Diversity Job Board by Diversity Social Impact Jobs

Contact us

Terms Of Service

Privacy Policy

## Menu

Diversity Resources

DEI Certified Companies

Sustainability Jobs

Post a job

## Browse Diversity Jobs By

Companies

Locations

Categories

## Diverse and Inclusive Employers

Log in

Sign up

## Job Seekers

Log in

Sign up

We use cookies to improve your experience. By using our site, you agree to our Cookie Policy.

R- 762

R- 763

# EXHIBIT 7

USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 764 of 971

🇺🇸 English ▾    Search AA.com® 🔍

     **Plan travel**    **Travel information**    **AAdvantage®**    Log in

🏠 Home  ›  Airport information  ›  Washington Reagan National, DC (DCA)

# Washington Reagan National, DC (DCA)

ⓘ Construction traffic

Please allow extra travel time and check your flight status before heading to the airport.

## Airport information

### Address

Ronald Reagan Washington National Airport
Washington, D.C. 20001

Airport website ⧉

### Ticket counters

This location does not accept cash or checks.

**Terminal 2 check-in**

Priority
Daily: 3 a.m. – 9 p.m.

## At the airport

| Airport details | Available |
| --- | --- |
| Clubs and lounges » | ✓ |
| TSA PreCheck » | ✓ |
| Mobile boarding passes » | ✓ |
| Priority privileges » | ✓ |

R- 764

Case 1:24-cv-03434-ACR     Document 54-2     Filed 06/10/25     Page 58 of 95

USCA Case #25-7123     Document #2186844     Filed: 08/06/2026     Page 765 of 971

Main
Daily: 3 a.m. – 10:30 p.m.

**Metro check-in**

Next to north security checkpoint.
Daily: 3 a.m. – 10 p.m.

## Animal relief area

**Outside of security**
Located outside Terminal 2, adjacent to the Metro

**Inside the secure area**
Terminal 2, Concourse E, across from the Customer Service desk, near gate E49.

| Airport details | Available |
|---|---|
| Curbside check-in » | ✓ |
| Self-service check-in » | ✓ |
| Flagship First Check-In » | |
| Five Star Service » | ✓ |
| TDD services ⧉ | ✓ |

## Airport map



Interactive airport map for DCA ⧉

R- 765

5/4/25, 8:16 PM
Case 1:24-cv-03434-ACR
Document 54-2
Filed 06/10/25
Page 59 of 95
Washington Reagan National DCA(DCA)

USCA Case #25-7123      Document #2186844      Filed: 08/06/2026      Page 766 of 971

# You may also like...

Gates and flight information »

Check-in and arrival times »

Reservations and ticket changes »

⊕ Back to top

## Help

Contact American

Receipts and refunds

FAQs

Agency reference ⍐

American Airlines Cargo ⍐

Bag and optional fees

Tarmac delay contingency plan

Customer service plan

## About American

About us

We're hiring! Join our team ⍐

Investor relations ⍐

Newsroom ⍐

Legal, privacy, copyright

Environmental, social and governance ⍐

Modern Slavery Report

Browser compatibility

## Extras

Business programs

Gift cards ⍐

Trip insurance



Earn 50,000 bonus miles. Terms apply. ⍐

**Buy**Miles
Buy or gift miles for new adventures ⍐

AVIS · Budget
Drive off with up to 1,000 bonus miles ⍐

R- 766

Case 1:24-cv-03434-ACR     Document 54-2     Filed 06/10/25     Page 60 of 95

USCA Case #25-7123     Document #2186844     Filed: 08/06/2026     Page 767 of 971

Conditions of carriage       Web accessibility

⬀ Link opens in new window. Site may not meet accessibility guidelines.
AA.com®

  

R- 767

R- 768

# EXHIBIT 8

R- 768

Department of Transportation (DOT)

Office of the Secretary (OTS)

and

Federal Aviation Administration (FAA)

# Codeshare Safety Program Guidelines

**December 22, 2015 – Rev. 6**

R- 769

## List of Definitions and Terms

➤**AFS-50:** Federal Aviation Administration, Flight Standards Service International Programs and Policy Division.

➤ **Audit:** The structured and objective assessment of an operator to determine the level of conformity with the applicable International Civil Aviation Organization (ICAO) standards.

➤ **Audit Closure:** An audit is not complete until all ICAO-related findings identified during the audit have been closed.  A compliance statement may be submitted when conformity with applicable standards has been achieved.

➤ **Audit Duration:** The 24-month period after the audit is closed.

➤ **Audit Effective Date:**  A date established by the Closing Meeting of an audit, which begins the 24-month clock of Audit Life Cycle.

**NOTE: If the Closing Meeting of a renewal audit is within 120 days prior to the previous Audit Expiration Date, then the Audit Effective Date for the renewal audit shall be the same date as the Audit expiration Date of the previous audit.**

➤ **Audit Expiration Date:** The date 24 months after the closing of the audit.

➤ **Auditor:** An individual who is recognized by the U.S. carrier as being qualified and authorized to conduct an audit under the DOT guidelines and other accepted audit programs.

➤ **Audit Life Cycle (ACL):** The period of 24 consecutive months for which an audit is considered valid. ACL begins at the completion of the onsite audit activity.

➤ **Audit Program:** The program established by the U.S. air carrier and accepted by the FAA to audit foreign air carrier codeshare partners.

° **Internal Audit:** An audit performed by the air carrier operator personnel
° **External Audit:** An audit performed by other than the air operator personnel, i.e.; a third party provider.
▪ **Industry Audit Process (IAP):** One or more of the internationally recognized evaluation systems, which are designed to assess the operational, management, and control systems of an air operator.  In hose cases where IAPs are used, it is incumbent on the U.S. carrier to identify in its FAA-accepted audit program the specific elements which will be used to comply with ICAO standards as required by DOT guidelines.

1

R- 770

➢ **Audit Report:** The document that is the official record of an audit, which contains detailed information regarding the conduct and results of an audit.  Reports generated from an IAP may be used by the U.S. air carriers to establish an operator's level of compliance with applicable standards.

➢ **Audit Sharing:** A process whereby an interested party utilizes an audit of an operator conducted by a third party to satisfy its own need to conduct an audit of that same operator.

➢ **Best Practices:** A strategy, process, approach, method, tool, or technique that is accepted as being effective in helping an operator achieve operational objectives.

➢ **Closing Meeting:** A meeting of the audit team and representatives of the audit airline at the end of the onsite audit activities.

➢ **Completion of Onsite Audit Activity:** The date the audit activity is completed and the audit results are made know to the audited party.  This will be the start of the audit cycle clock of 24 months.

➢ **Compliance Statement:** A declaration by a director of safety (or equivalent) of a U.S. carrier to the FAA providing information as required by the DOT guidelines.

➢ **Conformity:** Fulfillment of specifications contained in the ICAO standards and DOT Codeshare Guidelines and other referenced and accepted programs as being documented and/or implemented by the air operator.

➢  **Continuous Monitoring:** A process used by the U.S. carrier to monitor the safety programs of the foreign air operator.  The U.S. air carrier program, at a minimum, should monitor the performance-based assessment factors outlined in this document on an ongoing basis.

➢ **Evidence:** Documented data or information discovered during an audit that is analyzed by the auditor and is used to determine compliance with applicable standards.

➢ **Finding:** The documented statement based on factual evidence that indicates an air operator is not in conformity with the DOT guidelines and referenced ICAO standards.

➢ **IAP Operator:** A person, organization or enterprise engaged in. or offering to engage in, an aircraft operation under the scope of an IAP.

➢ **ISARPs:** ICAO Standards and Recommended Practices that also include IATA check list items agreed to by IATA member operators to be included in IOSA audit check lists.

R- 771

➢ **Noncompliance:** Nonfulfillment of specifications contained in applicable ICAO standards as determined by the auditor in terms of having been documented and/or implemented by the audited air operated.

➢ **Operator:** An organization that holds a n air operator certificate (AOC) and engages in aircraft operations.

➢ **OST:** Office of the Secretary of Transportation.

➢ **Recommended Practice:** A standard in which fulfillment is considered optional but is desirable.

➢ **Special Federal Aviation Regulation (SFAR):** A specific regulation issued for a particular area or State which has the potential or actual hazard to aviation flight safety. Examples include a state of conflict in a particular State or natural disaster assistance or recovery area.

➢ **Standard:** A specified system, policy, program, process, procedure, plan, set of measures, facility, component, type of equipment, or any other aspect of operations under the scope of ICAO Annex 1, 6, 8, 18, and 19 as defined in DOT Codeshare Guidelines in which the operator will be expected to be in compliance at the conclusion of an audit.

R- 772

## Codeshare Safety Program Guidelines

## I. Introduction

Code-sharing is a marketing arrangement in which an airline places its designator code on a flight operated by another airline and sells and issues tickets to that flight(s). Air operators throughout the world continue a form of codeshare alliances to strengthen or expand their market presence or competitive ability.

In order to obtain authority for U.S. codeshare service, the Office of the Secretary of Transportation must find that the arrangement is in the public interest. Historically, questions have been raised about how to determine whether codeshare services of U.S. airlines on foreign air operators meet an acceptable level of safety.

A principle measure of the level of safety of these foreign codeshare operators is in the results of the Federal Aviation Administration's (FAA) International Aviation Safety Assessment (IASA) Program.[1] A codeshare arrangement with a foreign air operator will only be approved if its AOC certification State maintains a Category 1 rating under the FAA's IASA program. A State that either holds a Category 2 rating or has not been assessed by the FAA may lease to an operator of a Category 1 State.

If a State category is downgraded from an IASA Category 1 to a Category 2 the OST expects that U.S. carriers will no longer place their code on flights operated by operators of the Category 2 State.[2] We expect this code removal to be immediate. However, for the sole purpose of facilitating an orderly transition, the precise timing of the code removal will be considered on a case-by-case basis.

In determining whether a codeshare application is in the public interest under the statute, OST needs to review the safety of the U.S. codeshare service proposed. As part of their application for authority,[3] U.S. air carriers seeking to hold out for service provided by a foreign operator on a codeshare basis must assess the level of safety of the U.S. codeshare service provided by foreign air operators as follows:

- Each U.S. air carrier shall have a system of ongoing monitoring and periodic audits of their codeshare partners.

---

[1] All civil aviation authorities have the direct responsibility for overseeing the safety of air transportation provided by their air carriers.

[2] An IASA Category 1 rating means that the safety oversight of a foreign carrier provided by its civil aviation authority meets or exceeds the minimum international standards for safety oversight established by the International Civil Aviation Organization (ICAO). IASA Category 2 means that one or more of the ICAO standards have not been met.

[3] A summary of the application process that carriers should follow in seeking codeshare authority from the Department of Transportation is attached in the appendix to these guidelines.

R- 773

- Each U.S. air carrier pursuing or currently having a codeshare agreement with a foreign operator must have an FAA accepted codeshare safety program.

- Under its audit program, a U.S. carrier must issue a Statement of Compliance letter affirming that its codeshare partner meets international standards.

- The Statement of Compliance shall be based on a safety audit performed on its foreign air operator partner in accordance with its FAA accepted codeshare safety program and shall be valid for no more than 24 months.

- Additionally, the U.S. carrier must continually monitor its codeshare partner's safety program throughout the life of the codeshare agreement to insure continued compliance with international standards.

- DOT will not approve a codeshare agreement if it is unable to make a public interest determination regarding the level of safety of the U.S. codeshare service.

- U.S. air carriers must provide the necessary information for this determination to the FAA by including a compliance statement (more fully described in section IV) with their applications to OST that an onsite safety audit has been conducted and an audit report has been completed. Minimum information package must include the Compliance Statement, copy of the foreign air carrier Air Operating Certificate (AOC), and the FAA codeshare Job Aid.

- The air carrier should state in its compliance statement that the foreign codeshare operator complies with the applicable ICAO safety standards.

- The FAA will review each audit report to determine whether the U.S. carrier audit program was followed and the audit results are consistent with other safety information available to the FAA.  Following this review, the FAA will provide an appropriate response to DOT in advance of an OST decision on whether to continue or approve the codeshare application.  In the cases where a codeshare agreement is shared by several U.S. airlines, the report will be allowed to be reviewed by all duly identified sharing airlines by electronic means or other means accepted to the FAA.

- In addition, when an airline chooses not to continue the codeshare agreement for business reasons or operational matters, the U.S. carrier may terminate its monitoring for the codeshare partner safety programs.  However, in these cases, the codeshare audit may not be used by another airline (audit sharing) unless a codeshare review has been accomplished.

- If a U.S. carrier chooses to suspend service with a foreign codeshare partner for any reason, the airline must notify AFS-50, International Programs and Policy Division, in writing (including email) and a determination will be made as to future actions that may be required.

5

R- 774

The following guidelines identify recommended minimum elements for all codeshare audit programs of the U.S. carriers operating under Title 14 Code of Federal regulations part 121 conducting U.S. codeshare service on a foreign air operator.[4]  The elements include the safety standards to be applied in an audit of a foreign operator conducting U.S. codeshare service, the content of the codeshare audit report, the compliance statement, completed FAA codeshare Job Aid, and standards for the U.S. carrier review of its U.S. codeshare service on the foreign codeshare operator.  Codeshare audit program should only be used by authorized U.S. air carrier's certificates under 14 CFR section 119 Subpart C.

## II. Audit Program

The object of the audit is to establish conformity to ICAO standards.  Auditors should review findings from previous audits performed on the foreign air operator and any other available information to determine that remedial action actions were accomplished and the condition(s) has not resurfaced in the current audit.

The applicable ICAO standards are set forth in the following Annexes to the Chicago Convention and may include ICAO guidance material for implementation.

Annex 1        Personnel Licensing
Annex 6        Operation of Aircraft
Annex 8        Continued Airworthiness of Aircraft
Annex18        The Safe Transportation of Dangerous Goods by Air
Annex 19       Safety Management Systems

A U.S. air carrier seeking or maintaining a codeshare agreement with a foreign operator under these guidelines must develop a codeshare audit program that provides for an onsite audit conducted by the U.S. air carrier or a third party approved auditing entity, of the foreign codeshare operator at least once every 24 months.

Each U.S. air carrier codeshare audit program will be reviewed by the FAA to determine whether it is an acceptable means of determining the levels of safety maintained by the foreign operator and thereby meets the needs of the codeshare approval process.  At a minimum, the U.S. air carrier's codeshare audit program will address:

---

[4] These guidelines are not intended to create or to change, and are not intended to be construed as creating or changing, any rights, duties, benefits, or obligations, or any duties or obligations on behalf of any person.  Nothing in these guidelines is intended to affect any other agreement, obligation, or undertaking by or on behalf of any U.S. or foreign air carrier, or rights, duties, or obligations arising there from with regard to any person other than the U.S. Department of Transportation.

6

R- 775

- Methodology and approach
- Specific operational areas to audit
- Criteria for defining satisfactory audit results
- System for reporting and correcting findings
- Continuous monitoring process
- Auditor qualifications, recurrent training, and authorization
- Audit frequency

These guidelines are not intended to define or limit the agreements, understandings, or other arrangements between a U.S. and foreign air carrier concerning the performance of audits consistent with these guidelines.

## Specific Operational Areas to Audit

Before conducting the audit of the foreign operator, the audit team should have an understanding of the foreign operator's operations and the applicable ICAO standards. At a minimum, the ICAO standards must be used in reviewing whether the foreign codeshare operator's level of safety is acceptable.  The audit program shall identify the evaluation criteria to be used (e.g., performance standard checklist containing all applicable ICAO standards in the Annexes stated above or other such equivalent).

## Criteria for Determining Satisfactory Audit Results

Each U.S. air carrier should use applicable performance standards based on the above stated ICAO Annexes to evaluate the foreign codeshare operator.  The process should contain an evaluation of performance against those criteria specified in the applicable ICAO standards by assigning a rating using one of the following definitions:

**Meets the Criteria:** Use this rating when there are no findings of a system deficiency breakdown, or safety-related noncompliance requiring immediate action.

**Finding:** Use this rating when the performance of the standard evaluated does not meet the established criteria.

**Non Applicable:** A specific condition is identified as not applicable by the evaluation criteria, as verified by the auditor, or is determined by the auditor to be not applicable at the facility being evaluated.

**Observation:** A specific condition that is identified as not meeting a "Recommended Practice" not requiring corrective action.

7

R- 776

The U.S. air carrier shall submit a copy of the proposed audit program to the AFS-50 Codeshare Program Manager.

Subject matter experts from the FAA will review each U.S. air carrier audit program. Upon completion of the FAA's review and determination that the audit program is acceptable, the FAA will issue a letter to the U.S. air carrier confirming acceptance of the program. The U.S. air carrier should incorporate the accepted audit program into its operating manual(s). Programs found unacceptable by the FAA will be returned to the U.S. air carrier with the specific reasons for the determination.

## Methodology and Approach

An acceptable codeshare audit program will define the objectives, scope, and methodology used to measure the performance of the foreign operator in meeting safety standards established in ICAO Annexes 1, 6, 8, 18, and 19. The audit scope should include as elements the audit duration, any applicable geographic limits, and audit frequency. The audit methodology defines the audit duration, any applicable geographic limits, and audit frequency. The audit methodology defines the process, by which the U.S. air carrier will gather and analyze data, develop an audit report, provide an audit compliance statement to the FAA, complete the FAA Job Aid, means to obtain a copy of the foreign operator's Air Operating Certificate (AOC), and means to make its audit report available to the FAA.

As part of one of the accepted means of compliance, the FAA also recognizes other programs developed by industry third party auditing services. An audit program will have a standardized methodology and may include third party audits conducted with the same or higher standard as those used by the U.S. air carrier. In those cases, where an IAP is used, it is incumbent on the U.S. air carrier to identify in their FAA accepted audit program the specific elements which will be used to comply with ICAO standards as required by DOT guidelines.

## System for Reporting and Correcting Findings

The U.S. air carrier audit should ensure that the foreign air operator has a process in place that identifies types of problems that may occur from common or special circumstances. Each finding needs to be analyzed to identify possible systemic issues and their mitigation. Corrective action takes into account: (1) the need for a short-term or remedial fix plus long-term actions; (2) the changes required in the process, product, and specifications; (3) the availability of designated personnel responsible for the follow-up; and (4) the existence of documentation of the changes made to analyze the effectiveness of the corrective action

8

R- 777

## Continuous Monitoring

The U.S. air acceptable audit program should record and evaluate risk indicators affecting safety as directed carrier audit program shall have a process to monitor the foreign operator.  An in Annex 19.  The U.S. air carrier audit program should monitor the following performance-based assessment factors on a continuous basis.

1. Accident/incident rate;
2. Financial condition, company ownership, and economic conditions:
3. Management, company stability, turnover of key personnel, strikes, etc.;
4. Age of equipment, equipment on order, and equipment being returned;
5. Operational capabilities, i.e., international service as compared to domestic service only, indicators of established infrastructure, FAA-approved repair stations, simulators, etc.;
6. Company history and sophistication;
7. Interface and cooperation between the U.S. and foreign air operators, familiarity with personnel, sharing of data through meetings, conferences, etc. and frequency of these events;
8. Foreign codeshare air operator facilities.

## Auditor Qualifications and Authorization

Each U.S. air carrier performing a codeshare safety audit must have qualified personnel with the necessary authority, knowledge, training/recurrent training, and skills for performing each audit.  Auditors shall have a thorough knowledge of auditing and the air operator environment in which the foreign operator operates the U.S. codeshare service.  The U.S. air carrier may employ personnel or hire outside subject matter expert consultants to conduct audits.  The audit staff should have organizational independence to perform audits and be free to report objectively to the U.S. air carrier's senior management.  Given the voluntary nature of the audit program, the following are recommended auditor benchmark qualifications.

1. Develop and communicate an audit plan, identify required audit personnel, set out an audit agenda, and provide sufficient time to complete a comprehensive audit.
2. Execute an effective audit plan incorporating generally accepted auditing techniques for verifying, documenting, and communicating findings as appropriate.
3. Objectively identify and document nonconformance to the audit standard and evaluate the effectiveness of the resultant follow-up corrective actions.
4. Demonstrate a general knowledge of quality control tools, descriptive statistics, and applicable sampling theories.
5. Effectively lead a team of auditors in the field and act as a liaison between the audit members and the foreign operator officers.

9

R- 778

## Qualifications for Auditors Conducting Codeshare Audits Should Include:

1. Auditor training in an internationally recognized quality management system.
2. Knowledge of the codeshare methods and techniques and education, skills, and experience to apply such knowledge to a codeshare audit. The lead auditors should have a minimum experience level of not less than 2 years in leading audits. All auditors should have attained a level of experience, or a combination of experience and education in their specific disciplines, as follows:

    a. An appropriately certified pilot, maintenance technician, or dispatcher and 3 years technical experience in those areas associated with flight operations, maintenance, or dispatch or in the evaluation thereof; or
    b. Relevant technical or trade school certificate with 3 years of technical experience in air operator operations or maintenance, or in the evaluation thereof; or
    c. Associate's degree or higher in engineering or science disciplines relating to aviation with 3 years of technical experience in air operations or maintenance, or in the evaluation thereof; or

3. Auditors should have a demonstrated technical knowledge of governing ICAO annexes (including ICAO guidance material in their specific technical areas), a general knowledge of the Federal Aviation Regulations (14 CFR) and air operator operations and maintenance. In addition, auditors should have effective communication and interpersonal skills and sound writing ability.
4. Auditors must have training on evaluating foreign operators with respect to procedures and processes included in the U.S. air carrier's Codeshare Safety Program as accepted by DOT. Auditors must undergo recurrent training at least once every 2 years to ensure that all auditors are maintaining audit techniques and education in their specific disciplines.
5. Ethical standards:
    a. Auditors should have no financial interest in or family affiliated with the foreign codeshare operator.
    b. Audit contract firms have no direct or indirect financial dealings with the host government of the foreign codeshare operator or with the foreign codeshare operator itself.
    c. Audit contract firms should not conduct codeshare audits on themselves of those operators of any affiliated companies.
6. Other skills that may be needed in conducting an audit of a foreign operator include:
    a. Foreign language skills, when the foreign operator personnel are not fluent in the English language and manuals and reports involve translation to English;
    b. Engineering skills when the work involves the review of complex engineering data;

R- 779

    c.  Analytical skills, including the ability to adopt a systematic approach to problem solving in a complex technical environment such as:
> - Operational analysis (developing the questions for use)
> - Flow charting (understanding the process)
> - Matrix analysis (determining the areas of importance)
> - Checklists (their uses and abuses)

## III. Audit Frequency

## Initial Audit

An audit must be completed and presented to AFS-50 prior to placing the U.S. carrier's code on flights operated by the foreign air operator.  The audit may be conducted by the U.S. carrier seeking to initiate the codeshare agreement, or utilizing a third party, to the standards required by the U.S. air carrier's program.  The date of the initial audit closing meeting establishes the audit effective date.  The initial audit is valid for 24 consecutive months beginning with the audit effective date.  The U.S. carrier will not present an audit to AFS-50 for review until all applicable audit findings are closed.

## Renewal Audit

The U.S. air carrier will conduct a renewal audit of each foreign codeshare operator prior to the expiration date of the initial or previous renewal audit.  When deciding on a date to initiate a renewal audit, the auditing operator must leave enough time to ensure that problems discovered during the renewal audit can be corrected before the expiration date of the previous audit.  The DOT does not view an audit as being complete until all open items identified during the audit have been closed.  Once the renewal audit is closed, the U.S. air carrier issues a compliance statement as outlined in these guidelines.  A compliance statement should be submitted only after all corrective actions have been satisfactorily completed and must not be predicated on future actions planned to be completed.  Each renewal audit is valid for a 24 month period, base-lined from the initial audit effective date.

R- 780

**FAA Codeshare Safety Program Timeline**

## IV. Audit Report

At the end of each audit, the auditor or audit team should prepare a written report setting out the results in an appropriate form.  Audit reports should be prepared in all cases, including those where the foreign air operator's operations are found to not meet the ICAO standards used in conducting the audit.  Any finding should be communicated to the foreign air operator immediately and in no case later than 24 hours following such a determination.

The report content should be easy to understand, independent, objective, fair, and constructive, free of vagueness or ambiguity, and include information supported by competent and relevant audit evidence.  The report should contain a statement of positive assurance on those items tested for compliance and negative assurance of those items not tested.  Auditors should use sound professional judgment in determining the standards that apply.  The auditor's determination that certain standards do not apply to the audit should be documented in working papers and supporting documents included with the report.  Situations may occur in which auditors are not able to follow an applicable standard.  In those situations, the auditors should disclose in the audit report the fact that an applicable standard was not followed, the reason therefore, and the known effect that not following the standard had on the audit results.

All findings of noncompliance with international standards will be documented for the purposes of trend analysis.  Such documentation will include findings closed in the course of an audit.

## Report Content

The U.S. air carrier safety audit report should contain the following:

- **Title.** The title should be unique to identify the foreign air operator audited and the U.S. air carrier or third party that is responsible for the audit.
- **Signature and date.** The audit team leader should sign and date the audit report.
- **Listing of the audit team members.**
- **Listing of the primary maintenance facilities evaluated.**
- **Listing of all primary training facilities evaluated.**
- **Objectives and scope.**  The report should include reference to the objectives and scope of the audit that establishes the purpose and boundaries.  The report should identify the area or extent to which it relates including what facility

12

R- 781

geographic location(s) were evaluated.  The audit duration dates should be included.
- **Completeness.**
- **Findings and corrective actions.**
- **Identification of subject matter and compliance with standards.**  The report should not concentrate solely on criticism of the past but should be constructive.  The auditor's conclusions and recommendation are important aspects of the audit. Where each standard was applicable, and if so, whether the operator satisfactorily met or did not meet the performance standard.
- **Auditor working documents** and evidence collected to support the audit conclusions.


## V. Report Access and Review

All initial and recurrent safety audit reports by the U.S. air carrier of the foreign codeshare partner should be made available for the FAA review following the closer of each audit.

 Each audit report, either initial or recurrent, should be made available to the FAA review during normal business hours at a location and manner agreed upon between the FAA and the U.S. air carrier responsible for the audit.  The U.S. air carrier should notify the FAA of the availability of every audit report ready for review, including audit reports where the foreign air operator's operations were found not to meet ICAO standards.  An electronic audit review may be used to meet this requirement.  The FAA will either make arrangements to visit the U.S. air carrier or arrange a telecom to review the audit reports at a time determined by available schedules and resources.  In those cases where an FAA audit review would need expeditious and timely review, this may be arranged on special occasions by coordinating with the AFS-50 Codeshare Program manager.   In keeping with the DOT requirements for a review of all codeshare audits, the FAA will not provide a response to OST regarding the subject codeshare until such a review is completed.

Required for each FAA review are:
1. Foreign air carrier AOC
2. Statement of Compliance
3. Dated FAA Job Aid for the date of the review


## Report Retention

The U.S. air carrier performing codeshare audits should maintain all codeshare audit reports for a period of not less than 5 years and all documented evidence for a period of not less the 24 months.  The audit program should identify a specific U.S. air carrier point of contact to which the FAA can direct questions and comments concerning specific audit reports.  The 5-year period for retention is measured from the closer of the last effective audit performed on the foreign air operator.

13

R- 782

## VI. Compliance Statement

The U.S. air carrier's director of safety (or an equivalent position established under 14 CFR section 119.65) should provide the signed and dated audit compliance statement for all audits conducted by or at the behest of the U.S. air carrier.  A compliance statement should be submitted only after all corrective actions have been completed and not be predicated on future actions planned to be completed.

At a minimum, the compliance statement should contain the following:

- The dates on which the foreign air operator was audited;
- A statement that the audit of the foreign air operator was conducted in accordance with the audit program as reviewed and deemed acceptable by the DOT;
- A statement that the foreign air operator's operations for U.S. codeshare services meet all applicable ICAO standards; and
- A statement that the audit report is available for FAA review.

## Codeshare Applications

Codeshare applications shall be filed in the Department's Docket Section (PL-401) at 400 7th Street, S.W., Washington, D.C. 20590 (See 14 CFR part 212).

Codeshare applications shall be filed with an original and two copies, or by using the Dockets electronic filing system (www.regulations.gov)

Codeshare applications shall include the following:

- The codeshare application with service list;
- The codeshare agreement; and
- A valid ICAO-compliant, state civil aviation authority-endorsed air operator certificate.

The U.S. air carrier applicant may attach a compliance statement (as fully described in section IV) with respect to the level of safety of the U.S. codeshare service that:

- It has completed an audit of its foreign codeshare air operator in compliance with a DOT-accepted codeshare audit program on a specific date;
- The operations of the foreign codeshare air operator meet applicable ICAO safety standards; and
- The audit is available for FAA review.

Codeshare applications shall be served on the following:

14

R- 783

- Director, Flight Standards Service (AFS-1), FAA;
- Antitrust Division, Department of Justice;
- Each U.S. certificated air carrier authorized to serve the general area in which the proposed transportation is to be performed; and
- Any other party the Department deems necessary.

OST will review the codeshare application based on economic and policy grounds. OST will consider any comments filed by interested parties, as well as the views of other Government agencies germane to the issue whether approval of an application will be in the public interest.  The FAA will review the audit report using its Quality Management Process as revised and other available information concerning the safety of the proposed U.S. air carrier codeshare service, and then will advise OST of its position.

Assuming no issues remain for resolution or otherwise warrant deferral of a decision, OST will issue a decision on the proposed codeshare application.

Requests for review or reconsideration of any decision relative to a codeshare application will follow the procedures prescribed in 14 CFR.

R- 784

R- 785

# EXHIBIT 9

R- 785

USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 786 of 971

Updated: May 29, 2025

External

# Office of Safety Standards (OSS) Services and Contacts

To submit changes, please email: 9-avs-afx-employee-engagement@faa.gov

For stakeholder feedback, click here

## AFS-1: Office of Safety Standards

**Tim Adams (A):** *Director*
**Mobile:** 202-770-5349
**Robert Reckert (A):** *Deputy Director*
**Mobile:** 860-207-0492

**Admin Support:**
Cheryl CTR Bruce
Kim Y-CTR Henderson

**John Linsenmeyer:** *Senior Technical Advisor*
**Mobile:** 202-603-3078

**Office Website:** click here

**Chris Booze:** *Operations Manager*
**Office:** 202-267-8788
**Maria Killian:** *Project Management Advisor*
**Mobile:** 202-538-9915
**Jabari Raphael:** *Rulemaking Advisor*
**Mobile:** 305-542-7475
**Sheri Baxter:** *Organizational Learning Advisor*
**Office:** 202-267-3849
**Kylee Berry:** *Program Support Specialist (FAA Reauthorization)*
**Mobile:** 253-353-6508

## AFS-50: International Program Division

**Katherine L. Haley:** *Division Manager (A)*  **Mobile:** 202-267-3788
- Primary POC for foreign Civil Aviation Authorities (CAA), ICAO, and International Aviation Safety Assessment Program (IASA)
- Management of International Field Offices (IFO)
- Part 129 Foreign Air Carrier ops and associated OpSpecs

**Emily A. White:** *Executive Officer*  **Office:** 202-267-1028
**Admin Support:** Annette CTR Skaggs  **Division Website:** click here
**Admin Officers:**  **General inquiries:** click here
Jaclyn Cacia Spafford & John E Long

## AFS-51: International Affairs Branch

**Erin DeYoung:** *Manager (A)*  **Phone:** 202-316-1342
- Primary POC with foreign CAAs and regional organizations
- Coordinates AFS engagement with ICAO
- FS international engagement and technical agreements

## AFS-52: International Operations Branch

**Tim Shaver:** *Manager*  **Office:** 202-267-1704
- Operational policies and guidance for foreign air carrier operations under Part 129
- OpSpecs and rulemaking for Part 129 and 187

## AFS-53: International Technical Support Branch

**Lou Alvarez:** *Manager*  **Office:** 631-317-0746
- International training
- IASA
- Technical expertise to foreign CAAs

## AFS-54: International Flight Standards Office (IFO) Management Branch

**Trent Bigler:** *Manager*
**Office:** 202-557-6376
- IFO activities
- Regulatory compliance and enforcement
- Certificate issuance and management
- Technical programs for investigation, inspection and surveillance
- Aircraft operations of foreign operators and entities in a foreign geographic location

### AFS-57: Miami IFO

**James Jelinski:** *Manager*
**Office:** 954-641-6701

### AFS-56: Dallas/Ft. Worth IFO

**Wyatt Seeger:** *Manager*
**Office:** 775-397-4697

### AFS-59: New York IFO

**Nicholas Tsokris:** *Manager*
**Office:** 718-995-5447

### AFS-58: Los Angeles IFO

**Alton Clark:** *Manager*
**Office:** 424-405-7801

## AFS-100: Aircraft Evaluation Division

**John Posey:** *Division Manager*  **Mobile:** 816-507-0664
- Operational perspective to engineering activities
- Identifies operating regulations impacting aircraft, engine, or propeller design
- Evaluates certification for aircraft, engine, propeller, and associated system
- Evaluates flight crew type rating requirements, minimum equipment lists, continued airworthiness, and Instructions for Continued Airworthiness (ICA)

**Admin Support:** Vacant
**Admin Officers:**
Pamela O'Neil & Donna Bay
**Senior Technical Advisor:**
Aaron S. Beck

**Division Website:** click here
**General inquiries:** click here

## AFS-110: Air Carrier Branch

**Tom Matzen:** *Manager*  **Office:** 312-972-7614
- ICAs
- Type Certification Boards
- Flight Standardization Board (FSB)
- Flight Operations Evaluation Board (FOEB)
- Aircraft, engine, or propeller and associated systems for operational relevance and aircraft interface
- Continued airworthiness/Maintenance Review Board (MRB)

R- 786

1

## AFS-120: Corporate Aviation Branch

**John Pinnow:** *Manager*    **Office:** 253-263-3426

- Type Certification Boards, FSB & FOEB
- Aircraft, engine, or propeller and associated systems for operational relevance and aircraft interface
- ICAs, continued airworthiness & MRB

## AFS-130: General Aviation Branch

**Henrique Mendes:** *Manager*    **Office:** 401-429-3105

- Type Certification Boards
- Maintenance Review Boards and evaluation of ICAs for assigned fleet types
- End-user perspective to certification activities

Under Part 23 and 25:
- Aircraft Type Certificated that serve in General Aviation and Part 135 operations
- MRB, FSB, FOEB, and acceptance of ICA
- Continued Operation Safety of aircraft and associated systems

## AFS-140: Rotorcraft Branch

**James Kline:** *Manager*    **Mobile:** 206-304-1065

- Type Certification Boards
- Rotorcraft and powered-lift recommendations from the NTSB, AVP and CHDOs

Under Part 27 & 29:
- Aircraft Type Certificated that serve in General Aviation and Part 135 operations
- MRB, FSB, FOEB, and acceptance of ICA
- Continued Operation Safety of aircraft and associated systems

## AFS-150: Propulsion Systems Branch

**Eduard Stalzer:** *Manager*    **Office:** 781-238-7523

- Aircraft/Engine minimum maintenance requirement and continued airworthiness/MRB
- Continued Operation Safety
- Acceptance of initial and revised ICA
- Recommendations for Engines, Propellers, and APUs
- Manage and evaluate the Extended-range Twin-engine Operational Performance Standards (ETOPS) Database
- Provide assistance with AIR support for Correlation, Operation, Design, And Modification of Engine Test Cells

## AFS-160: Standards and Policy Branch

**Robert Duffer**: *Manager*    **Office:** 206-231-3774

- Office of Responsibility for all AED Policy
- Introduce new and revised 8900.1 guidance
- Issue, establish and revise AED relevant ACs, Notices, QMS Process
- Interface with all AED branches and FS functional offices
- Coordination and interface for JTAs
- Integration Program Management with AIR
- Master Minimum Equipment Lists (MMEL) development and revisions

## AFS-170: Emerging Technologies Branch

**Wayne Cummings:** *Manager*    **Office:** 540-383-1246

- Office of Responsibility for Emerging Technologies UAS, UAM, AAM, OPA, Autonomous Aircraft Systems
- Type Certification Boards FSB & FOEB
- Operational suitability Demonstration/Evaluation
- Emerging Technologies Maintenance Evaluation
- ICA, Continued Airworthiness & MRB
- UA Associated Elements (AE)
- Support of Exemptions, Waivers for Emerging Technologies

## AFS-200: Air Transportation Division

**Dan Kelman (A):** *Division Manager*    **Mobile:** 207-310-7724

- Manage and oversee Part 121 and 135 air carriers and commercial operators, Part 142 Training Centers, and the associated training systems and voluntary safety programs
- Part 64 and 65 certification of flight engineers, flight navigators, and aircraft dispatchers
- Initial and Continuing Simulator Qualification

**Sr. Tech Advisor:** John Kovar    **Division Website:** click here
**Admin Officer:** Melissa Mason    **General inquiries:** click here

## AFS-220: Operations Group

**Elie T. Nasr (A):** Manager    **Office:** 202-236-6060

- Part 121, 125, and 135 Safety Assurance Support
  - Air Ambulance
  - Cabin Safety
  - Cargo
  - Dispatch
  - Extended Ops (ETOPS)
  - Fatigue Management (Part 117 - Flight & Duty, FRMS/ FRMP)
  - Fixed Wing & Rotorcraft Operations
  - Icing – Approved De-icing Programs & Ops in Ground Icing Conditions
  - Management Deviations
  - Proving & Validation
  - Weather
  - Weight & Balance
  - Pilot Records Database (PRD) Policy
- Crisis Response Working Group (CRWG)
- DoD Audits/Air Mobility Command Liaison
- MEL/CDL/NEF
- Mergers & Acquisitions
- Occupational Safety and Health (OSHA) Liaison
- Powered Lift
  - Electric Vertical Take-Off and Landing (eVTOL)
  - Urban/Advanced Air Mobility (UAM/AAM)
- Take-off and Landing Performance Assessment (TALPA)

R- 787

2

## AFS-260: Integration and Implementation Group

**Paul Ramirez:** *Manager*                    **Office:** 202-717-3397

- Policy Consistency Review
- Ops Specs/Mspecs/Tspec/LOA (WebOPSS)
- Chair Operations Specifications Work Group (OSWG)
- Air Taxi On-Demand Economic Authority (DOT Part 298) (eAIM)
- Part 121, 129, 135 Insurance Certification (DOT Part 205) (eAIM)
- Commercial Aviation Safety Team (CAST)

## AFS-280: Training and Simulation Group

**Lee Abbott:** *Manager*                    **Mobile:** 202-302-4615

- Part 121 & 135 Training Program Policy
- Part 121, 135, 142 SA Support
- AED Support (FSB/MMEL)
- MEL/CDL/NEF
- FAA FSTD evaluation courses
- BASA-SIP Implementations
- Pilot & Human Factors Research
- Air Carrier Designee Program Policy
- Advanced Qualification Program (AQP)
- 14 CFR Part 60 Rulemaking & Supporting Policy & Guidance Material
- Initial and Continuing Qualification Evaluations of Aircraft Simulators
- FSTD Sponsor Quality Management System Approval & Oversight



## AFS-300: Aircraft Maintenance Division

**Jackie L. Black:** *Division Manager*          **Office:** 202-267-1825

- Airworthiness of civil aircraft
- Certification, inspection, and surveillance of maintenance, airmen (mechanics, repairmen, parachute riggers), avionics, and air agencies (Aviation Maintenance Technician Schools, repair stations)

**Sr. Tech Advisor:** Abbie Otis          **Division Website:** click here
**Admin Officer:** Patricia Verbeck       **General inquiries:** click here

## AFS-320: Airmen and Special Programs Group

**John (Jay) Hiles:** *Manager*          **Office:** 480-589-1179

- Maintenance related EIRs
- Suspected Unapproved Parts Prog.
- Airmen certification and testing (Part 65 Subparts D, E and F)
- Part 147 Aviation Maintenance Technician Schools (AMTS)
- Part 183 Representatives of the Administrator: DME, DPRE, DAR-T
- Human Factors
- Non Destructive Testing

## AFS-330: Commercial Aviation Group

**Danny T. Wuo:** *Manager*          **Office:** 901-437-3206

- Minimum Equipment Lists
- Service Difficulty Reporting
- ICAO & MRB Policy Board
- Commercial aircraft maintenance (Part 91K, 119, 121, 125 & 135)
- Operations Specifications Working Group (OSWG)
- Technical assistance for Extended & Polar Operations
- Technical assistance for CMOs on aircraft maintenance
- Continuous Airworthiness Maintenance Programs
- Joint Implementation Measurement and Data Analysis

## AFS-340: General Aviation Group

**Christopher Parfitt:** *Manager*          **Office:** 202-267-1708

- FAA-certificated repair stations
- Certification, inspection, and surveillance of GA maintenance
- Avionics lead for ELT, ADS-B, transponders, etc.
- Bilateral Aviation Safety Agreement (BASA)/Maintenance Implementation Procedures (MIP) agreements with CAAs

R- 788

Flight Technologies & Procedures Division    Dunns Div. 071386844    Filed 06/06/2026    Page 789 of 971

## AFS-400: Flight Technologies & Procedures Division

**Chris Hope:** *Division Manager*          **Mobile:** 202-267-8976

To improve flight operations, standardization, and aviation safety within U.S. and international airspace systems, and to support the NextGen plans through regulations, standards, and policy on flight operations, aircraft, airspace, airports, and procedures.

**Sr. Tech Advisor:** Mark Fox          **Division Website** click here
**Phone:** (847) 294-7546          **General inquiries** click here
**Admin Officer:** Alexander Abels          **Correspondence** click here
                                                   **Phone:** (202) 267-8790

## AFS-405: Organizational Effectiveness

**Julie Webb:** *Manager*          **Office:** 405-954-0087

To ensure consistency, interdependence, critical thinking, and agility across the division through implementation of safety programs, risk management, professional development, and communications.
- Contribute to the division's organizational health
- Ensure consistent and quality maintenance and implementation
- Manage professional development efforts for the division
- Conduct strategic planning for the division

## AFS-410: Flight Operations Group

**James Marks:** *Manager*          **Office:** 202-769-8890

Develop safe Communication, Navigation, and Surveillance and air traffic management operations using existing & emerging technologies and innovative operational concepts.
- Develop, analyze, provide technical guidance, and implement policies, standards, criteria, requirements, specifications, limitations, applications, and approvals on:
  - Instrument flight operations
  - Performance-based navigation
  - Integration of new & emerging technologies
  - Implementation of NextGen
  - Special areas of operation
  - New entrants
- Represent Flight Standards in international meetings and liaisons with foreign CAAs to foster global safety standards

## AFS-420: Flight Procedures & Airspace Group

**Romana Wolf:** *Group Manager*          **Mobile:** 603-881-1138

Ensures safe and efficient flight paths from takeoff to landing and provides operational safety reviews and support to the NAS
- Establishes instrument design and procedures for departure; en route; arrival and approach; and obstacle clearance standards, criteria, and policy
- Develops, analyzes and approves non-standard criteria, waivers from standards, and special instrument procedures
- Provides operational safety reviews and develops requirements to support Air Traffic and Airports to ensure and sustain acceptable levels of safety

## AFS-430: Flight Research & Analysis Group

**Jacob Powers (A):** *Manager*          **Mobile:** 405-954-6013

Provides leadership by defining and independently conducting aviation safety research, while collaborating with the global aerospace research community on existing and emerging flight technologies and operational concepts.
- Manages the Flight Operations Simulation Laboratory, provides real-time, realistic, dynamic virtual operations to observe and evaluate pilot-controller-aircraft interface and performance data in a defined or generic environment
- Assesses the safety of new, emerging & modified flight operational concepts & systems to improve flight operations, standards, capacity & aviation safety in the NAS
- Serves as the Flight Standards focal point for human factors issues regarding new flight technologies implementation
- Supports safety analyses for AVS, NextGen, ATO, ARP, Industry, other government agencies & DoD



R- 789

## AFS-700: Emerging Technologies Division

**Joseph Morra:** *Division Manager*  **Office:** 202-267-9700

**Admin Support:** vacant
**Sr. Tech Advisor:** Emily Davis
**Admin Officer:** Queta Ugaz

**Division Website:** (to be added)
**General inquiries:** click here

- Policy and processes surrounding unmanned aircraft systems (UAS)
- Drone-related policy decisions and approvals

## AFS-710: Maintenance

**Robert Stack:** *Manager*  **Mobile:** 847-294-8720

- Policy for maintenance of unmanned aircraft and associated elements

## AFS-720: Evaluation

**Oscar Bocanegra:** *Manager*  **Mobile:** 336-453-1706

- Responsibility for emerging technologies ops evaluations and maintenance evaluations of UAS
- Type certification boards, FSB, & FOEB of UAS
- Perform operational suitability demonstration/evaluation of UAS
- Reviews of instructions for continued airworthiness (ICA) of UAS
- Review of requirements for UA associated elements
- Support of exemptions and waivers for emerging technologies

## AFS-730: Technologies and Standards

**Marcus Cunningham:** *Manager*  **Mobile:** 202-733-7910

- Analyze and provide technical guidance on UAS:
  - Detect and avoid technologies
  - Command and communications technologies
  - Performance-based navigation
  - Instrument/sensor-based flight operations for UAS
  - Integration of new & emerging technologies
- Communication & navigation policy for UAS
- Implement policies, standards, criteria, requirements, specifications, limitations, and applications for UAS technologies
- Implementation of NextGen UAS technologies
- Represent Flight Standards in international meetings related to UAS technologies
- Liaison with foreign CAAs to foster global safety standards for UAS technologies
- Represent the FAA with standards bodies for UAS technologies

## AFS-740: Air Transportation

**Rachel Carlstrom:** *Manager*  **Mobile:** 515-300-7067

- Rulemaking Projects (BVLOS 108)
- Exemptions and Deviations
- 135 Safety Assurance Support
- Part 135 Policy and Guidance
- GASA Outreach
- Technical Assists

## AFS-750: General Aviation and Commercial

**Derek Hufty:** *Manager*  **Mobile:** 202-763-4955

- Policy Branch for non-air carrier UAS operations
- Part 107 Policy
- Part 107 Waivers
- 107 Pilot Certificate and Training
- 44809 Recreational Flyer Policy
- UAS Public Aircraft Operations (PAO) Operational Analysis
- Special Airworthiness – Experimental Category (SAC-EC) Operational Analysis
- 363 UAS with Dangerous Weapons
- UAS Outreach
- GASA Support
- UAS Part 61, 91, 133, and 137 Policy
- 44807 Approvals
- Part 91 UAS Exemptions
- Non 107 Pilot Certificate and Training
- Criteria for Making 44807 Determinations (CMD)
- UAS NEPA Environmental Analysis

## AFS-760: Safety Assurance

**Sergio Lopez:** *Manager*  **Mobile:** 954-612-1764

- Performs certification for UAS Operators
- Provides certificate management for UAS Operators
- Accomplishes oversight and surveillance activities concerning operations of UAS
- Serves as the primary interface with GASA

## AFS-800: General Aviation and Commercial Division

**Trey McClure:** *Division Manager (A)*  **Office:** 202-267-7739

- Training, certification, inspection, and surveillance of GA airmen, flight instructors, air agencies, pilot schools, public aircraft operations, personal, and recreational operations
- Regulations and policy governing commercial operations (incl. rotorcraft, external-load operators Part 133, agricultural Part 137 operations, banner tow, Part 91 commercial operators, corporate, business, and Part 91K fractional)
- National FAA Safety Team (FAASTeam)
- EIR Processing Team-reviews EIR packages from Safety Assurance offices.

**Admin Support:** Kiana CTR Lee
**Sr. Tech Advisor:** Manny Cruz
**Admin Officer:** Travis Carter

**Division Website:** click here
**General Inquiries:** click here

## AFS-810: Training and Certification Group

**Everette Rochon:** *Manager*  **Mobile:** 703-371-3460

- Training & certification (Pilots & Flight Instructors)
- Part 141 pilot school support
- ASI (GA-Operations) qualifications and currency
- Practical Test Standards (PTS)
- Airman Certification Standards (ACS)
- Airman knowledge, oral, and practical testing programs
- Supporting reference materials for standards and testing

**Airman Testing Website:** click here

R- 790

5

## AFS-830: Operations Group

**Mark Giron:** *Manager*  **Mobile:** 240-644-3138

- Aerobatic practice areas
- Air shows & aviation events
- Parts 103 & 105 Operations
- Part 137 agricultural operators
- Civil operations of surplus military aircraft
- Amateur-built, recreational, & personal aircraft policy & regulations (operational aspects of GA under Part 91 except for air traffic & aircraft maintenance rules)
- Aerial work & public aircraft operations (PAO)
- Supplemental Passenger Restraint Systems
- Private & commercial (non-air carrier) flights conducted in piston & turbine aircraft by individuals & companies under Part 91
- Fractional ownership program managers under Part 91K
- Helicopter external load operators under Part 133
- Investigations of Pilot Deviations (PD), Near Mid Air Collisions (NMAC), Accidents, Incidents, Occurrences, Lasers, and Complaints
- FAASTeam Policy (8900.1 Vol 15)
- FAASTeam National Performance Plan – Annual Focus
- FAA Safety Briefing magazine
- GA Outreach social media/digital marketing

## AFS-850: Delegation Group

**Katie Sample:** *Manager*  **Mobile:** 605-321-7646

- AFS Delegation Program
- Deviations to Designee Policy
- Training Delivery for FS and AIR Designees
- Designee Training
- Course mentorship for FS Designee Management Practical Application Workshops (PAW)

## AFS-900:  Sfty Mgmt, Analytics & Sys Integr Div

**Kawehi Lum:** *Division Manager*  **Office:** 310-956-2700

- National risk-based, data-supported, oversight systems
- SMS integration for Safety Assurance Offices
- FS Data Systems and Development, Safety Assurance System (SAS) and Voluntary Programs
- Management of analytical products for risk-based, decision-making processes
- System Safety Promotion

**Sr. Tech Advisor: Rodney Martinez**
**Admin Officer: Daphne Martin**

**Division Website:** click here
**General Inquiries:** click here

## AFS-910: System Appr. for Safety Oversight Branch

**Mohammad Wasique:** *Branch Manager*  **Mobile:** 703-487-3927

- FAA Order 8900.1 Volume 10, Safety Assurance System (SAS)
- SAS Enterprise Architecture with AVS Enterprise Management
- Data Collection Tools (DCT) and Operations Safety System (OPPS) and other SAS support
- Facilitate & Review the SAS Feedback process
- Software Testing & Validation
- FAA Order 1800.56 National Flight Standards Work Program Guidelines

**SASO Branch Website:** click here

## AFS-930: Safety Analysis Branch

**Joseph Hall (A):** *Branch Manager*  **Mobile:** 703-362-1779

**SAB Website:** click here

- Analytics governance
- Risk identification and mitigation
- Management of risk-based, decision-making analytical products
- Analysis of data for Continued Operational Safety (COS)
- Integrated Certificate Holder Priority Index (ICPI)
- Consolidated Analytics Site

## AFS-940: Safety Management Branch

**Suzette Rash:**  *Branch Manager*  **Mobile:** 703-776-0677

**SMS Branch Website:** click here

- SMS oversight methods in SAS
- State Management Panel
- Part 5 SMS regulations, internal and external facing policy, and SMS training
- Support SMS implementation for Safety Assurance Offices
- SMS Voluntary Program (certificate holders not regulated under Part 5)
- Safety Management International Collaboration Group
- ICAO sponsored SMS events
- FOQA/VDRP/LOSA/ASAP/IEP Development & Advancement
- Compliance Program Development & Implementation

## AFS-950: Automation Systems Managment Branch

**Mark Gruber:** *Branch Manager*
**Mobile:** 907-201-0238

 **Website under development.**

**Functional Work Areas:**
- Develop, sustain, and manage aviation safety data systems
- Data Governance and Data Management

**System and Data Management of:**
- Accident Incident Data System (AIDS)
- Accident Incident & Enforcement (AIE)
- AvInfo
- Aviation Safety Action Program (ASAP)
- Dynamic Regulatory System (DRS)
- FAASTeam National Performance Plan – Annual Focus/ FAASTeam Website
- Multi-System Access Tool A and B (MSAT A and B)
- Pilot Records Database (PRD)
- Safety Performance Analysis System (SPAS)
- Service Difficulty Reporting System (SDRS)
- Suite of Enforcement Information System (EIS) applications
- Voluntary Disclosure Reporting Program (VDRP)
- Web Based Application Tool (WBAT)

R- 791

6

# EXHIBIT 10

R- 792

**BEFORE THE**

**DEPARTMENT OF TRANSPORTATION**

**WASHINGTON, D. C.**

```
----------------------------------------
Joint Application of                    :
                                        :
     AMERICAN AIRLINES, INC.            :
              and                       :   DOT-OST-2008-
     GULF AIR COMPANY                   :
                                        :
under 14 CFR Part 212 for statements of :
authorization and under 49 USC 41109    :
for related exemption (blanket code-    :
sharing)                                :
----------------------------------------
```

**JOINT APPLICATION OF AMERICAN AIRLINES, INC.
AND GULF AIR COMPANY**


Communications with respect to this document should be sent to:

For Gulf Air Company:

MOFFETT B. ROLLER
Roller & Bauer, PLLC
1020 Nineteenth Street, N.W.
Suite 400
Washington, D.C. 20036
(202) 331-3300
mroller@rollerbauer.com

For American Airlines:

WILLIAM K. RIS, JR.
Senior Vice President –
  Government Affairs
American Airlines, Inc.
1101 17th Street, N.W.
Suite 600
Washington, D.C.  20036

HENRY C. JOYNER
Senior Vice President –
  Planning
American Airlines, Inc.
P.O. Box 619616, MD 5628
DFW Airport, Texas 75261

DON CASEY
Managing Director –
  International Planning
American Airlines, Inc.
P.O. Box 619616, MD 5635
DFW Airport, Texas 75261

R- 793

ROBERT A. WIRICK
Manager, International
  Planning
American Airlines, Inc.
P.O. Box 619616, MD 5635
DFW Airport, Texas 75261
(817) 963-0394
robert.wirick@aa.com

CARL B. NELSON, JR.
Associate General Counsel
American Airlines, Inc.
1101 17th Street, N.W.
Suite 600
Washington, D.C. 20036
(202) 496-5647
carl.nelson@aa.com

June 17, 2008

**BEFORE THE**

**DEPARTMENT OF TRANSPORTATION**

**WASHINGTON, D. C.**

```
-------------------------------------------
Joint Application of                      :
                                          :
    AMERICAN AIRLINES, INC.               :
            and                           :    DOT-OST-2008-
    GULF AIR COMPANY                      :
                                          :
under 14 CFR Part 212 for statements of   :
authorization and under 49 USC 41109      :
for related exemption (blanket code-      :
sharing)                                  :
-------------------------------------------
```

**JOINT APPLICATION OF AMERICAN AIRLINES, INC.
AND GULF AIR COMPANY**

American Airlines, Inc. (and its affiliates American Eagle Airlines, Inc. and Executive Airlines, Inc. d/b/a American Eagle) applies for a statement of authorization, and Gulf Air Company applies for a statement of authorization and related exemption authority in order to engage in reciprocal codeshare operations (subject to 30-day notice) pursuant to the open skies agreements between the United States, on the one hand, and Bahrain, Oman, Qatar, and the United Arab Emirates, on the other.[1]

---

[1]    The American-Gulf Air Codeshare Agreement is on file in No. 98-104 (undocketed).

R- 795

2

Specifically, American and Gulf Air are seeking the following:

(A)  American requests a statement of authorization, and Gulf Air requests any necessary underlying exemption authority (including the right to integrate such authority with Gulf Air's other permit and/or exemption authority)[2], in order to display Gulf Air's GF* designator code in conjunction with foreign air transportation of persons, property, and mail on flights operated by American or American Eagle between (1) points in the United States; (2) points in the United States and points in Abu Dhabi, Bahrain, Oman, and Qatar (either nonstop or via intermediate points in third countries); (3) points in the United States and points in third countries; and (4) points in Abu Dhabi, Bahrain, Oman, and Qatar and points in third countries.[3]

(B)  Gulf Air requests a statement of authorization to display American's AA* designator code in conjunction with

---

[2]    Although Gulf Air currently holds an exemption to serve a point or points in the United States by codesharing with American (DOT-OST-2005-20097, July 23, 2007), that exemption does not include the behind and beyond authority included in American's request, ¶¶ (A)(3) and (A)(4).  Gulf Air therefore requests that the exemption granted here should incorporate all route authority necessary for Gulf Air to operate to all points listed in ¶ (A).  This new exemption will then supersede the authority that Gulf Air currently holds in DOT-OST-2005-20097.

[3]    The authority requested herein for American will replace the limited codeshare rights to display the GF* code on specific transatlantic flights operated by American.  See Statement of Authorization No. 99-07 (March 8, 1999, undocketed), as amended by Department Action, DOT-OST-2004-19923 (January 5, 2005).

R- 796

Case 1:24-cv-03434-ACR    Document 54-2    Filed 06/12/25    Page 90 of 95
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 797 of 971

3

foreign air transportation of persons, property, and mail on flights operated by Gulf Air between (1) points in Abu Dhabi, Bahrain, Oman, and Qatar; (2) points in Abu Dhabi, Bahrain, Oman, and Qatar and points in the United States (either nonstop or via intermediate points in third countries); (3) points in Abu Dhabi, Bahrain, Oman, and Qatar and points in third countries; and (4) points in the United States and points in third countries.[4]  American holds underlying certificate authority on its open skies certificate for Route 835 issued by Order 2007-4-2, April 1, 2007.  Gulf Air holds the requisite charter authority to display the AA* code (DOT-OST-1999-309).

The blanket codeshare authorizations requested herein are fully consistent with the applicable open skies agreements, and with the public interest.[5]  Such authority is also consistent with the Department's policy of granting blanket rights to other codeshare partnerships in open skies regimes. See, e.g.,

---

[4]    Gulf Air currently holds a statement of authorization (granted by Notice of Action Taken in DOT-OST-1996-1055 on February 8, 2007) to display the AA* code on Gulf Air flights between London, Paris, and Frankfurt, on the one hand, and Abu Dhabi, Bahrain, Oman, and Qatar, on the other, and beyond to Kuwait.  The statement of authorization that Gulf Air seeks herein will supersede that route-specific authority.

[5]    Although the Governments of Abu Dhabi, Oman, and Qatar no longer hold ownership interests in Gulf Air, the terms of the open skies Air Transport Agreements between the United States and the United Arab Emirates (of which Abu Dhabi is a constituent emirate), Oman, and Qatar are identical to those of the Agreement between the United States and Bahrain.  As Gulf Air has previously requested and the Department has previously approved (see DOT-OST-2005-20097), Gulf Air requests, based on its longstanding history of operations to Abu Dhabi, Oman, and Qatar, that its codeshare and exemption authority include Abu Dhabi, Oman, and Qatar as co-terminal points with Bahrain.

4

Department Action, DOT-OST-99-6547, January 7, 2000 (American/Lan Chile); Department Action, DOT-OST-99-6544, January 7, 2000 (American/Finnair); Order 98-4-8, April 5, 1998 (United/Lufthansa).

American and Gulf Air will accept the Department's standard condition on third-country services. See, e.g., Notice of Action Taken, DOT-OST-99-5944, November 2, 1999 (American/Swissair), condition (e).

Blanket authorizations are in the public interest because they enable codeshare partners to develop the full range of services permitted under applicable bilateral agreements. The services contemplated by American and Gulf Air will provide a more efficient use of capacity in the marketplace, and will help maximize the range of service options available to the traveling and shipping public.

The additional codeshare services to be operated by American and Gulf Air in the initial phase are shown in the attached Notice. Consistent with standard practice, American and Gulf Air will notify the Department no later than 30 days before commencing any additional codeshare services under the blanket authorizations we are seeking. We will inform the Department of the market(s) to be served, the identity of the

carrier operating the aircraft in the codeshare market(s) being added, and the date on which the service will begin. American and Gulf Air will conduct all of their codeshare operations in compliance with 14 CFR Part 257.

In response to the Department's letter of June 1, 1995 to participants in the Civil Reserve Air Fleet Program, American states that the codeshare arrangement at issue will have no impact on American's CRAF commitments.

American and Gulf Air request that blanket statements of authorization be granted for an indefinite period, consistent with the Department's practice in other codeshare proceedings, and that Gulf Air's related exemption authority be granted for at least one year.

Respectfully submitted,

MOFFETT B. ROLLER
Roller & Bauer PLLC
Attorneys for Gulf Air Company

CARL B. NELSON, JR.
Associate General Counsel
American Airlines, Inc.

June 17, 2008

R- 799

Between GF* U.S. Gateways And

    Atlanta
    Austin
    Baltimore
    Corpus Christi
    Denver
    Detroit
    Houston
    Jackson
    Jacksonville
    Kansas City
    Las Vegas
    Memphis
    Minneapolis/St. Paul
    Newark
    New Orleans
    Norfolk
    Oklahoma City
    Orlando
    Philadelphia
    Phoenix
    Portland OR
    Raleigh/Durham
    St. Louis
    San Antonio
    San Diego
    San Francisco
    Seattle
    Tampa

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing document by email on the following persons:

scott.mcclain@delta.com
sametta.c.barnett@delta.com
kquinn@pillsburywinthrop.com
bkeiner@crowell.com
sascha.vanderbellen@nwa.com
bruce.rabinovitz@wilmerhale.com
jonathan.moss@wilmerhale.com
jeffrey.manley@united.com
bob.kneisley@wnco.com
robert.land@jetblue.com
msinick@ssd.com
cdonley@ssd.com
anbird@fedex.com
dvaughan@kelleydrye.com
kevin.montgomery@polaraircargo.com
jrichardson@johnlrichardson.com
lhalloway@crowell.com
efaberman@wileyrein.com
mroller@rollerbauer.com
howard_kass@usairways.com
benjamin.slocum@usairways.com
jhill@dlalaw.com
bill@mietuslaw.com
mgoldman@sgbdc.com
rsilverberg@sgbdc.com
dhainbach@ggh-airlaw.com
mcmillin@woa.com
mchopra@jamhoff.com
russell.bailey@alpa.org
dkirstein@yklaw.com
jyoung@yklaw.com
donna.kooperstein@usdoj.gov
dwight.moore@ustranscom.mil
jim.ballough@faa.gov
byerlyjr@state.gov

_____
CARL B. NELSON, JR.

June 17, 2008

R- 801

## CERTIFICATE OF SERVICE

I hereby certify that on June 12 2025, Plaintiff Feras Hindi, Plaintiff Tala & Plaintiff Samiha will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Motion For Limited Discovery & Attachments

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Email

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark  **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Service Processor ABC Legal service

Submitted,

June 12 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767

R- 802

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

### Civil Division

| | | |
|---|---|---|
| **Samiha Ayysah, Feras Hindi,** | ) | |
| **Tala Josephano** | ) | **Case No.:  1:24-cv-03434-ACR** |
| | ) | |
| Plaintiffs | ) | |
| **American Airlines Inc. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendants | ) | |
| | ) | |

**PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

NOW COME the Plaintiffs respectfully move the Court for entry of an Order granting Plaintiffs

leave to conduct limited discovery on the issues of whether Defendant, Gulf Air B.S.C.(c)

("Defendant" or "Gulf Air"), is subject to this Court's personal jurisdiction and whether the Court

has subject matter jurisdiction over this action.

As set forth more fully in this motion the law of this Circuit authorizes jurisdictional discovery

when the facts relevant to the jurisdictional analysis are contested or lie within the exclusive

control of the defendant. See *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343,

1351–52 (D.C. Cir. 2000). Here, Gulf Air's motion to dismiss under Federal Rules of Civil

Procedure 12(b)(1), 12(b)(2), and 12(b)(5) raises multiple unresolved factual questions regarding

RECEIVED

JUNE 12 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia



R- 803

Case 1:24-cv-03434-ACR    Document 55    Filed 06/12/25    Page 2 of 25
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 804 of 971

2

the Decedent's domicile, Gulf Air's contacts with the United States, its corporate structure, and the adequacy of service of process.

Defendant improperly relies on inadmissible exhibits, including the Declaration of Captain Qasim Ghuloom Ismaeel and an outdated foreign employment contract, neither of which satisfies the Federal Rules of Evidence. These materials cannot be accepted as dispositive without Plaintiffs having a fair opportunity to challenge their credibility and develop a factual record through discovery.

Plaintiffs respectfully seek leave to conduct targeted jurisdictional discovery to develop the factual record regarding Gulf Air's business transactions and contacts with the District of Columbia. Although Gulf Air asserts that it has no contacts with D.C. aside from government-related activity and seeks to invoke the government contacts doctrine despite alleged Fraud by Plaintiffs which void the government contacts doctrine especially when the alleged fraud happened multiple times and the gain was direct from the alleged government Fraud. DC residents, the public and the Plaintiffs have been harmed from the alleged fraud and misrepresentation of safety and their injuries continue and their safety continues to be at risk due to Gulf Air B.S.C non compliance.

Plaintiffs allege—and seek to prove through discovery—that Gulf Air transacts substantial business in D.C. beyond mere governmental interaction. Specifically, Plaintiffs seek evidence of Gulf Air's commercial activities in the District, including but not limited to codeshare arrangements, ticket sales and reservations made through Gulf Air's website and internet platforms targeting D.C. residents, and any local sales, marketing, or distribution agreements.

R- 804

Case 1:24-cv-03434-ACR     Document 55     Filed 06/12/25     Page 3 of 25
USCA Case #25-7123     Document #2186844     Filed: 08/06/2026     Page 805 of 971

3

These facts are directly relevant to establishing both specific and general jurisdiction, particularly in light of Gulf Air's alleged noncompliance with ICAO, DOT, and U.S. law, and its false representations to the Department of Transportation and the public.

The facts essential to resolving jurisdiction—such as the nature of Gulf Air's code-share operations, ticket sales targeting D.C., and the regulatory status of the flight in question—lie exclusively within Defendant's control and cannot be independently verified without discovery Jurisdictional discovery is further warranted because Plaintiffs allege that Gulf Air engaged in fraud and other conduct outside the scope of the government contacts doctrine, and the relevant evidence is uniquely within Gulf Air's or its agents' control

R- 805

**TABLE OF AUTHORITY**

1.  Fed. R. Civ. P. 26(b)(1)

2.  El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 676 (D.C. Cir. 1996)

3.  GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1351 (D.C. Cir. 2000)

4.  Edmond v. United States Postal Serv. Gen. Counsel, 949 F.2d 415, 425 (D.C. Cir. 1991)

5.  Crane v. Carr, 814 F.2d 758, 760 (D.C. Cir. 1987)

6.  Hansen v. Neumueller, 163 F.R.D. 471, 473 (D. Del. 1995)

7.  GTE New Media Servs., Inc. v. BellSouth Corp., 199 F.3d 1343, 1351–52 (D.C. Cir. 2000)

8.  Fed. R. Civ. P. 12(b)(1)

9.  Fed. R. Civ. P. 12(b)(2)

10. Fed. R. Civ. P. 12(b)(5)

11. See FED. R. Civ. P. 26(b)(1)

12. See Hansen v. Neumueller, 163 F.R.D. 471, 473 (D. Del. 1995)

13. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250–51 (11th Cir. 2000);

14. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)

15. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250–51 (11th Cir. 2000);

16. *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021).

R- 806

5

## INTRODUCTION

Jurisdictional discovery is based, in part, on the right to discovery arising under the Federal Rules of Civil Procedure . Rule 26(b)(1) states: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. See FED. R. Civ. P. 26(b)(1) (explaining the scope and limits on discovery under the Federal Rules). See Hansen v. Neumueller, 163 F.R.D. 471, 473 (D. Del. 1995) (permitting liberal discovery of any facts which are relevant, including jurisdictional facts);

Because Plaintiffs allege violations of federal aviation law, international treaties, and DOT safety regulations, this case arises under federal law and satisfies 28 U.S.C. § 1331. Accordingly, personal jurisdiction is proper under Rule 4(k)(2) because Gulf Air is not subject to general jurisdiction in any one U.S. state according to their lawyer statement that they have no Presence, NY state doesn't consider registered company and registered agent enough to establish General Jurisdiction,  and the exercise of jurisdiction comports with due process given its sustained commercial, regulatory, and operational contacts with the United States. Alternatively, jurisdiction exists under D.C. Code § 13-423(a)(1) due to Gulf Air's purposeful engagement in ongoing business and regulatory conduct centered in the District.

R- 807

## BACKGROUND

Plaintiffs filed their Amended Complaint on December 31, 2025, and properly served Defendant Gulf Air B.S.C.(c) in the District of Columbia pursuant to Federal Rule of Civil Procedure 4, by delivering the summons and complaint to its designated agent at the law firm of Eckert Seamans Cherin & Mellott, LLC, as listed in its DOT Form OST-4523, filed under 49 U.S.C. § 46103 and on Gulf Air Codeshare filings to DOT. DOT confirmed.

The specific flight on which the Decedent served as operating pilot was part of a regularly approved codeshare arrangement with American Airlines and Etihad Airways under DOT Order 2008-2023, which included JFK and IAD as onward destinations per the contract of carriage. Thus, the conduct that led to harm arose from activities governed by D.C.-based regulatory obligations.

### Plaintiffs' Prima Facie Showing of Jurisdiction over Gulf Air

Plaintiffs have established a prima facie basis for jurisdiction over Defendant Gulf Air under both 28 U.S.C. § 1332 (diversity jurisdiction) and 28 U.S.C. § 1331 (federal question jurisdiction).

First, under § 1332, complete diversity exists: Plaintiffs are citizens of Virginia and California, while Gulf Air is incorporated and maintains its principal place of business in the Kingdom of Bahrain. The amount in controversy exceeds $75,000. Deceased is Domiciled in IL

Second, under § 1331, the claims arise in part under federal law, including violations of federal aviation regulations, the Code of Federal Regulations (CFR), and U.S. Department of Transportation (DOT) orders, including DOT Order 2008-2023, which governs code-share safety obligations and public interest compliance. Gulf Air's failure to meet safety oversight and reporting duties imposed by U.S. authorities, including violations of 14 C.F.R. Part 129, directly

R- 808

implicates federal policies and aviation safety regulations—satisfying the federal question requirement.

Further, Plaintiffs have sufficiently alleged personal jurisdiction under the District of Columbia long-arm statute, D.C. Code § 13-423(a)(1), by showing that Gulf Air has transacted business in D.C., and the claims arise directly from those transactions. Specifically, Gulf Air Maintains a registered agent in Washington, D.C., as required by federal statute and DOT authorization processes; Regularly engages U.S.-based counsel for DOT and FAA filings (e.g., Eckert Seamans Cherin & Mellott, LLC, 1717 Pennsylvania Ave NW, Washington, D.C.); Files regulatory applications and compliance documents directly with the DOT in Washington, D.C., including safety and fitness disclosures under codeshare authorizations; Enters into Contracts, and voluntary conduct business and engage with entities

Gulf Air's active and ongoing code-share relationships with multiple U.S. carriers—American Airlines, Etihad Airways, Delta, and United—subject it to continuous regulatory oversight and legal obligations within the United States, administered from D.C. These relationships are governed by Open Skies Agreements, the Montreal Convention, and various aviation treaties, which establish rights and obligations enforceable under U.S. law and contribute to jurisdictional contacts.

Notably, DOT Order 2008-2023 imposes affirmative duties on Gulf Air, as a foreign air carrier operating under codeshare, to comply with U.S. aviation safety standards. Plaintiffs' claims for wrongful death and negligence are based on Gulf Air's failure to fulfill these obligations—including misrepresentations in DOT filings and concealment of medical

R- 809

Case 1:24-cv-03434-ACR    Document 55    Filed 06/12/25    Page 8 of 25
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 810 of 971

8

incapacitation incidents—rendering Gulf Air's conduct within the scope of both federal oversight and D.C.-based business activity.

**Venue** is proper in this District because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in and through the District of Columbia. See 28 U.S.C. § 1391(b)(2). The Kingdom of Bahrain, where Defendant Gulf Air B.S.C.(c) is headquartered, is not a proper venue for these claims Under 28 U.S.C. § 1391(c)(3), a defendant not resident in the United States may be sued in any judicial district, and the District of Columbia is appropriate because the alleged conduct and resulting harm are substantially connected to this forum

Accordingly, the Plaintiffs have shown that Gulf Air's conduct falls squarely within the ambit of U.S. jurisdiction, supported by both statutory and treaty-based legal frameworks, and that venue in the District of Columbia is proper under 28 U.S.C. § 1391(b)(2).

## ARGUMENT

### The Law Is Well-Settled That Plaintiffs Are Entitled To Jurisdictional Discovery

 Whenever a defendant raises lack of personal jurisdiction as an affirmative defense and the plaintiffs demonstrate that its jurisdictional allegations can be supplemented through discovery, the law in this Circuit is well-settled that Plaintiffs have the right to conduct jurisdictional discovery. A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum. See El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 676 (D.C. Cir. 1996); see also GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1351 (D.C. Cir. 2000); Edmond v. United States Postal Serv. Gen. Counsel, 949 F.2d 415, 425 (D.C. Cir. 1991); Crane v. Carr, 814 F.2d 758, 760 (D.C. Cir. 1987).

R- 810

Case 1:24-cv-03434-ACR    Document 55    Filed 06/12/25    Page 9 of 25
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 811 of 971

9

**Through Jurisdictional Discovery, Plaintiff Can Supplement The Factual Basis**

 Supporting The Courts Personal Jurisdiction Over Defendant for its Opposition Motion, the Plaintiffs  proffered evidence, which taken together confirms that this court has jurisdiction over Gulf Air B.S.C

Plaintiffís Motion As described below, through jurisdictional discovery, Plaintiff, if necessary, can supplement the existing factual basis supporting the Courtís exercise of personal jurisdiction over Defendant. See GTE, 199 F.3d at 1351-52 (finding that jurisdictional discovery was warranted even though ì[t]he record [currently] before th[e] court [wa]s plainly inadequate.). See also Edmond, 949 F.2d at 425 (holding that, given the plaintiffís specific allegations, ìit [w]as an abuse of discretion to deny jurisdictional discovery . . . .); Crane, 814 F.2d at 760 (vacating, in part, the lower courtís decision, because the plaintiffís case was dismissed with no opportunity for discovery on the issue of personal jurisdictionî).

If jurisdictional discovery is denied, Plaintiffs will be deprived of the opportunity to rebut Defendant's factual assertions—particularly the authenticity and completeness of Gulf Air's submitted declarations—and the Court risks dismissal based on an incomplete record

This request is strictly limited to facts necessary to resolve jurisdictional disputes raised in Defendant's 12(b)(1), (2), and (5) motion and is not directed at merits discovery.


**This Court has Personal Jurisdiction over Gulf Air B.S.C**

Under Federal Rule of Civil Procedure 4(k)(2), which applies to claims arising under federal law, a federal court may exercise personal jurisdiction over a foreign defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Although Gulf Air maintains a registered agent in the District of Columbia for federal aviation regulatory purposes and an agent in New York for business registration, these limited contacts are insufficient to establish general jurisdiction in any individual state because Gulf Air is not "at home" in any U.S. jurisdiction. Gulf Air is a foreign corporation domiciled in Bahrain, with no principal place of business or incorporation in the United States.

Accordingly, Gulf Air is not subject to the general jurisdiction of any state court, satisfying the first prong of Rule 4(k)(2). The second prong is satisfied because the exercise of jurisdiction in this case is consistent with the United States Constitution and laws. Gulf Air has sufficient minimum contacts with the United States as a whole, including but not limited to its DOT certifications, regulatory filings, codeshare operations, use of distributors and U.S. airlines, internet ticket sales to U.S. residents (including through its website), engagement of auditing firms such as Wick Group, retention of U.S.-based legal counsel, and active participation in U.S. airspace and commerce through codeshare and wet lease agreements, as well as its current permit to operate flights to the United States

These ongoing contacts—especially as Plaintiffs' injuries are continuing—demonstrate that Gulf Air has purposefully availed itself of the privilege of conducting business in the United States. Accordingly, exercising jurisdiction over Gulf Air comports with due process and federal law, as required under Rule 4(k)(2) and established minimum contacts

Even if the Court were to find that Rule 4(k)(2) does not apply, jurisdiction is independently proper under D.C. Code § 13-423(a)(1), as Gulf Air has transacted substantial business in the District of Columbia, and Plaintiffs' claims arise from that conduct.

R- 812

## Waiver of Sovereignty, USA Jurisdiction Under DOT order 2008-2025

Plaintiffs allege that Gulf Air, by operating under and invoking rights granted pursuant to DOT Order 2008-2023, has expressly or impliedly waived any claim to sovereign immunity and has thereby consented to suit in U.S. courts. By participating in the Department of Transportation's foreign air carrier permitting process, submitting regulatory filings, and conducting operations under U.S. codeshare agreements, Gulf Air has purposefully availed itself of the benefits and protections of U.S. law. In doing so, Gulf Air has subjected itself to the jurisdiction of U.S. courts, including the District of Columbia, and has established sufficient presence through legal representation, regulatory compliance duties, and continuous business transactions governed by U.S. aviation law. Up until the year 2023 and Every two years, Gulf Air B.S.C was issued the Standard form of approval by DOT, which governs the codeshare agreements and Gulf Air Exemption to fly wet lease .

Since 2012 up to date every DOT order approving Gulf Air B.S.C commercial activities through codeshare and wet lease, to be governed under the US LAW which Gulf Air explicitly agreed to

**DOT ORDERS,** states " *Agree that operations under this authority constitute a waiver of sovereign immunity, for the purposes of 28 U.S.C. 1605(a), but only with respect to those actions or proceedings instituted against it in any court or other tribunal in the United States that are: (a) based on its operations in international air transportation that,  according to the contract of carriage, include a point in the United States as a point of origin, point of  destination, or agreed stopping place, or for which the contract of carriage was purchased in the United  States; or (b) based on a claim under any international agreement or treaty cognizable in any court or other tribunal of the United States. In this condition, the term "international air transportation" means*

R- 813

Case 1:24-cv-03434-ACR    Document 55    Filed 06/12/25    Page 12 of 25
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 814 of 971

12

*"international transportation" as defined by the Warsaw Convention, except that all States shall be considered to be High Contracting Parties for the purpose of this definition;* Here, Gulf Air B.S.C falls squarely under a referenced above and b. As for the condition a) *based on its operations in international air transportation that, according to the contract of carriage, include a point in the United States as a point of origin, point of destination, or agreed stopping place.* Captain Mohannad was on a codeshare flight from Bangladesh that would end in JFK , DCA or IAD ( See Motion to Strike & Exhibits  DKT 50 )

 (b) This Court also has jurisdiction based on a claim arising under an international agreement or treaty cognizable in any court of the United States. Plaintiffs clearly define the international agreements that govern their claims, specifically the Bilateral Air Transport Agreement—commonly known as the "Open Skies" Agreement—between the United States and the Kingdom of Bahrain, signed on May 24, 1999. This agreement expressly permits designated airlines, including Gulf Air, to operate scheduled international air transportation between Bahrain and the United States and sets forth the regulatory and operational framework for such services.

The joint applications and renewals by American Airlines and Defendant Gulf Air B.S.C. for codeshare authority, as reflected in their filings with the U.S. Department of Transportation and related DOT orders, are expressly based on rights and obligations established by this Open Skies Bilateral Agreement (see, e.g., Exhibit: 2008 application; 2019–2021 renewals). Plaintiffs' claims thus arise directly under and are governed by this binding international agreement between the United States and Bahrain

R- 814

Case 1:24-cv-03434-ACR    Document 55    Filed 06/12/25    Page 13 of 25
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 815 of 971

13

**Defendant's Motion to Dismiss**

Gulf Air B.S.C in their motion to Dismiss, supported their argument that this court lacks Subject matter Jurisdiction and Personal Jurisdiction using Exhibit 1 ( see exhibit 1 DKT  ) Declaration from Captain Qasim that relies on Employment contract between the deceased Captain Mohannad ( Plaintiffs brother ) since 1999 to 2008. Gulf Air B.S.C failed to provide the new contracts between the deceased and the Captain Mohannad which they signed with all employees especially the expats every 5 years or when change of circumstances such change of company name and formation, contracts, pay, residency, family matters , insurances under the new company names that was changed in 2012 from Gulf Air Company G.S.C to Gulf Air B.S.C. ( company name change ) . In support of its motion to dismiss, Gulf Air submitted the declaration of Qasim, in which he asserts that the deceased was domiciled in Illinois, not Jordan, and that the subject flight was neither a DOT-authorized flight nor a codeshare flight. Plaintiffs dispute both factual claims, which go directly to the issues of personal jurisdiction and the applicability of U.S. aviation regulations and treaties, including the Montreal Convention and DOT oversight obligations.

Therefore, Plaintiffs respectfully request jurisdictional discovery to test the veracity of these assertions, including (a) discovery concerning the decedent's residency and domicile, including U.S. contacts and legal status; and (b) discovery related to the nature, designation, and regulatory classification of the subject flight, including whether it involved U.S. code-share operations, FAA oversight, or fell under any existing DOT authorization or bilateral aviation agreement. C discovery related to service

Jurisdictional discovery is particularly warranted where, as here, the disputed facts are solely within the control of Defendant and form the basis for its motion to dismiss under Rules 12(b)(1)

R- 815

and 12(b)(2).

**Proper Service on Gulf Air under Rule 4(h)(1)(B)**

(h) SERVING A CORPORATION, PARTNERSHIP, OR ASSOCIATION. Unless federal law provides otherwise

or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or

other unincorporated association that is subject to suit under a common name, must be served (1)

in a judicial district of the United States; (B) by delivering a copy of the summons and of the

complaint to an officer, a managing or general agent, or any other agent authorized by

appointment or by law to receive service of process and —if the agent is one authorized by

statute and the statute so requires—by also mailing a copy of each to the defendant; or

Plaintiffs effected service on Defendant Gulf Air B.S.C. (C) in full compliance with Federal Rule

of Civil Procedure 4(h)(1)(B) by delivering a copy of the summons and complaint to the law firm

of Eckert Seamans Cherin & Mellott, LLC, at their Washington, D.C. office on January 30, 2025.

The summons was issued in Gulf Air's name, and was directed to its designated agent, Evelyn D.

Sahr, who is listed on Gulf Air's official DOT Form OST-4523, executed under 49 U.S.C. §

46103, as the company's authorized agent for service of "notices and process."

Upon delivery, **Gene Grey**, an individual at the law firm, accepted service and signed the service

acknowledgment, identifying himself as authorized to accept service on behalf of the designated

agent.

Rule 4(h)(1)(B) allows service on a foreign corporation "by delivering a copy of the summons

and of the complaint to an officer, a managing or general agent, or any other agent authorized by

appointment or by law to receive service of process." That is precisely what occurred.

R- 816

Case 1:24-cv-03434-ACR    Document 55    Filed 06/12/25    Page 15 of 25
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 817 of 971

15

Gene Grey qualifies under the rule as either a managing or general agent, or as an agent authorized by appointment to receive service on behalf of the designated agent (Evelyn Sahr). His authority was not denied at the time of service, and no affidavit or declaration from him has been submitted to contradict this. Moreover, Plaintiffs also mailed a copy of the summons and complaint to Gulf Air's headquarters in Bahrain, fulfilling the mailing requirement under Rule 4(h)(1)(B) in cases where the agent is designated by statute. Email notifying them was also sent to Gulf Air B.S.C and DOT

Gulf Air, DOT, and counsel were notified of the lawsuit on multiple occasions, and Gulf Air has had actual notice of the claims since before and after January 30, 2025, yet it has failed to move to quash service or make a special appearance to challenge jurisdiction in a timely manner.

The declaration filed by Evelyn D. Sahr is insufficient and legally irrelevant to negate proper service because she was not the individual who received and accepted service. If Gulf Air believed service was defective, it was obligated to submit a declaration from Gene Grey, who physically accepted the summons and complaint.

Plaintiffs request jurisdictional discovery into the authority and role of Gene Grey, who accepted service and identified himself as authorized. Gulf Air cannot deny service without first addressing whether Gene Grey was acting within the scope of his actual or apparent authority as required by Rule 4. Under these circumstances, service is proper, and any technical dispute over internal law firm designation is irrelevant where the person who accepted service represented themselves as authorized and acted accordingly

R- 817

Case 1:24-cv-03434-ACR    Document 55    Filed 06/12/25    Page 16 of 25
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 818 of 971

16

**D.C. Code § 13-423(a)(1) provides:**

"A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's... transacting any business in the District of Columbia."

Under the D.C. long-arm statute, Plaintiffs make a prima facie showing for jurisdictional discovery by demonstrating that Defendant Gulf Air has purposefully and voluntarily transacted substantial business in the District of Columbia. Gulf Air's business activities in D.C. include Selling and distributing tickets for flights, including codeshare flights with domestic U.S. airlines, through its website and online distributors such as Expedia and other travel portals, which are accessible to and used by D.C. residents; Engaging in codeshare agreements with American Airlines and other U.S. carriers, with regulatory approval, oversight, and renewal processes rooted in Washington, D.C., making D.C. the jurisdictional origin of these business transactions; Generating substantial revenue from ticket sales and codeshare operations that directly involve D.C. consumers and the D.C. market; Maintaining a registered agent for service of process in D.C. and regularly making regulatory filings with the U.S. Department of Transportation and Federal Aviation Administration, both headquartered in D.C.; Utilizing U.S.-based distributors, agents, and legal counsel whose activities are directed at and benefit the D.C. market. These persistent, voluntary, and revenue-generating activities constitute "transacting business" under D.C. Code § 13-423(a)(1) and establish minimum contacts sufficient to satisfy due process.

These sustained commercial contacts including Codeshare  fall squarely within D.C. Code § 13-423(a)(1), and the claims arise directly from Gulf Air's use of D.C. institutions and markets to maintain operations that caused Plaintiffs' injuries."

R- 818

Case 1:24-cv-03434-ACR    Document 55    Filed 06/12/25    Page 17 of 25
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 819 of 971

17

Courts have held that the "transacting any business" provision is to be interpreted expansively and is coextensive with the limits of due process, requiring only that the defendant's contacts with the District are purposeful and give rise to the claims asserted. Gulf Air's purposeful engagement in the D.C. market through online sales, codeshare partnerships, and regulatory activities directed at D.C. residents and institutions meets this standard and warrants the exercise of personal jurisdiction as well as jurisdictional discovery

## **DUE PROCESS**

To satisfy the Due Process Clause, specific personal jurisdiction requires that: (1) the defendant purposefully availed itself of the forum; (2) the claims arise out of or relate to those activities; and (3) it was reasonably foreseeable that the defendant could be haled into court there. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250–51 (11th Cir. 2000); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Gulf Air purposefully availed itself of the District of Columbia by deliberately engaging in continuous commercial and regulatory activities, including filing for and operating under DOT-authorized codeshare agreements. As part of those filings, Gulf Air executed a signed consent and waiver of jurisdiction, acknowledging that claims arising from codeshare operations are subject to U.S. law and federal oversight pursuant to DOT Order 2008-2023.. Gulf Air has entered into multiple codeshare partnerships, actively benefiting from U.S. market access and federal regulatory privileges. These are not isolated or incidental contacts—they are strategic and sustained, and they directly support Plaintiffs' claims based on regulatory misrepresentations and safety violations tied to codeshare operations.

Given this deliberate and repeated engagement with D.C.-based federal authorities, including the DOT and FAA, it was reasonably foreseeable that Gulf Air could be haled into court in the

R- 819

District. Jurisdiction is consistent with constitutional due process under *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), and *Burger King*, 471 U.S. at 476–77.

## Relatedness of Contacts to the Claim

Plaintiffs' claims arise directly from Gulf Air's forum-directed activities. The alleged misrepresentations regarding safety compliance were made through regulatory filings, certifications, and audits submitted to the DOT and FAA in Washington, D.C., to maintain its codeshare operations. These filings—central to Plaintiffs' claims—form the regulatory and contractual basis of the codeshare itself. The alleged noncompliance, concealment, and misuse of the regulatory process in D.C. are the direct nexus between Gulf Air's conduct and the harm suffered, satisfying the "arising out of or relating to" requirement under *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021).

## Fair Play and Substantial Justice

Exercising jurisdiction over Gulf Air does not offend traditional notions of fair play and substantial justice .No Unfair Burden on Defendant: Gulf Air cannot claim hardship litigating in the United States while simultaneously benefiting from U.S. aviation markets, maintaining registered agents, and submitting regulatory filings to DOT and FAA in Washington, D.C. It is fundamentally unjust for a foreign airline to invoke U.S. regulatory privileges, then evade U.S. jurisdiction when disputes arise.  Plaintiffs are U.S. residents proceeding pro se, making access to a local forum especially important. Forcing them to litigate abroad would impose a vastly greater burden than requiring Gulf Air to respond in a forum where it already conducts business. D.C. and the United States have a strong interest in enforcing safety, transparency, and accountability in international aviation—particularly in codeshare operations governed by

R- 820

federal law and overseen by federal agencies headquartered in D.C.

Judicial Efficiency: The claims relate directly to federal regulatory systems centralized in Washington, D.C., including the DOT and FAA, whose records, oversight, and witnesses are located within the forum.

## Gulf Air's Fraudulent Conduct Toward D.C.-Based Federal Agencies, Combined with Substantial Business Activity, Supports Specific Personal Jurisdiction Under the Akhmetshin Exception and D.C. Long-Arm Statute

 Pursuant to *Akhmetshin v. Browder*, 335 F. Supp. 3d 128 (D.D.C. 2018), contacts with federal government agencies located in Washington, D.C. typically do not support personal jurisdiction under the government contacts exception. However, this exception does not apply where the defendant engages in fraudulent or deceptive conduct directed at government agencies, or where the defendant maintains substantial non-governmental business activity in D.C.

Here, Gulf Air's deliberate repeated and fraudulent filings submitted to the U.S. Department of Transportation (DOT) and Federal Aviation Administration (FAA)—both headquartered in Washington, D.C.—squarely fall within the fraudulent petitions exception. Plaintiffs allege that Gulf Air misrepresented their compliance in DOT order and ICAO compliance including covering up incapacitations and medical condition of its crew, safety protocols, and compliance status in official DOT filings, in order to maintain active codeshare status and U.S. market access. These fraudulent submissions were not merely advocacy or passive contact—they were affirmative, material misrepresentations to regulatory authorities responsible for overseeing passenger safety in the United States.

This misconduct directly caused Plaintiffs' injuries, which began prior to the decedent's death, through exposure to unsafe flight conditions and related harm, and have continued posthumously,

R- 821

Case 1:24-cv-03434-ACR    Document 55    Filed 06/12/25    Page 20 of 25
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 822 of 971

20

including emotional, financial, and legal damages suffered by surviving family members. The fraud was not abstract—it was the mechanism by which Gulf Air evaded regulatory scrutiny and enabled conditions that led to the fatal incident at the heart of this case.

Furthermore, Gulf Air's longstanding, continuous participation in DOT-regulated codeshare programs, its appointment of a registered agent in D.C., and its benefit from access to the U.S. aviation market, constitute substantial non-governmental business activity in the District. Gulf Air derived significant commercial and regulatory benefit from its D.C.-based operations and filings.

Gulf Air's fraudulent conduct was purposefully directed at D.C.-based federal agencies, and Plaintiffs' injuries arise directly from that misconduct before the death, after the death, and continuously to the present, satisfying both the statutory and constitutional tests for specific personal jurisdiction. These contacts are neither random nor compelled by government mandate; rather, they are voluntary and undertaken solely for Gulf Air's commercial benefit.

Since at least 2019, Gulf Air has voluntarily and consistently marketed its services in the United States for commercial gain, including promoting flights to and from U.S. cities through online platforms and third-party distributors. Beginning in 2023, Gulf Air has also posted employment advertisements targeting U.S.-based applicants, seeking to expand its operational footprint. Although these activities may not independently establish general jurisdiction—particularly in New York where the causes of action did not arise—they reinforce Gulf Air's purposeful availment of the U.S. market. These acts are neither incidental nor passive; they reflect a deliberate effort to engage with U.S. consumers and labor, further supporting the exercise of

R- 822

specific personal jurisdiction for claims arising from Gulf Air's U.S.-regulated aviation operations.

Plaintiffs' claims for negligence, negligence per se, wrongful death (for Samiha), NIED (for Feras), IIED (for Samiha), damages and fraud—including fraudulent misrepresentation and concealment (for Tala)—all arise directly from Gulf Air's D.C.-centered regulatory fraud and safety violations. But for Gulf Air's noncompliance and fraudulent cover-up with ICAO and DOT, Plaintiffs' injuries would not have occurred and continue to this day.

## **LIMITED JURISDICTIONAL DISCOVERY REQUEST**

Plaintiffs respectfully seek leave to conduct the following limited discovery to develop the factual record necessary for the Court's jurisdictional analysis:

1. **Subpoena and Deposition of Gene Grey:**

   To determine his authority to accept service on behalf of Gulf Air and their registered agent (Evelyn Sahr)

2. **Subpoena and Deposition of Captain Qasim Ghuloom Ismaeel:**

   To examine the factual basis of his declaration regarding the decedent's domicile and the nature of the flight, including whether it was subject to DOT regulation or a codeshare agreement.

3. **Subpoena and Deposition of Evelyn D. Sahr:**

   To clarify her role and responsibilities as Gulf Air's DOT-designated registered agent under Form OST-4523 and DOT Order 2008-2023. Ms Evelyn didn't declare she doesn't accept services for other Gulf Air's matters. That Gene Gray wasn't authorized to accept service on her behalf

R- 823

Case 1:24-cv-03434-ACR    Document 55    Filed 06/12/25    Page 22 of 25
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 824 of 971

22

4.  Request for Production of Financial and Regulatory Records Submitted to DOT 2024 To establish Gulf Air's commercial benefit and regulatory interactions with D.C.-based federal agencies, including all filings, certifications, and correspondence. These financial records will show any contract with DC entities, income from DC sales, Codeshare revenue to help develop Transact business & Minimum contacts if the court finds the mentioned in this motion is not enough.

5.  Production of Codeshare Agreements and Renewals signed with American Airlines Inc. Including all communications to establish if DC is consented to Forum and compliance requirements.

6.  **Targeted Interrogatories or Requests for Production Regarding Business Transactions in D.C.:**

    Including but not limited to marketing activities, online ticket sales (including through Gulf Air's website and major travel portals such as United, Expedia, Kayak, Google Travel, Booking, Travelocity)2022-2024 or 2024 only if sufficient to the judge , contracts with U.S.-based travel agencies and distributors, and legal or compliance engagements evidencing Gulf Air's commercial conduct in the District of Columbia.

This limited discovery is directly relevant to the jurisdictional issues before the Court and is narrowly tailored to develop facts within Gulf Air's exclusive control regarding its business transactions, regulatory presence, and minimum contacts with the District of Columbia and the United States as a whole

The D.C. Circuit has repeatedly emphasized that it is an abuse of discretion to deny jurisdictional discovery where plaintiffs raise plausible allegations and the facts are in the control of the defendant. See *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996); *Crane v.*

R- 824

Case 1:24-cv-03434-ACR   Document 55   Filed 06/12/25   Page 23 of 25
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 825 of 971

23

*Carr*, 814 F.2d 758, 760 (D.C. Cir. 1987). To deny discovery here would elevate Defendant's factual denials above judicial scrutiny and deny Plaintiffs fair process

<p align="center"><strong><u>CONCLUSION</u></strong></p>

For the reasons set forth above, Plaintiffs have made a prima facie showing of personal jurisdiction over Gulf Air under both Rule 4(k)(2) and D.C. Code § 13-423. Gulf Air has purposefully availed itself of the District of Columbia through regulatory filings, consent to jurisdiction under DOT Order 2008-2023, and its extensive codeshare-related activities in the United States.

Plaintiffs respectfully request leave to conduct limited jurisdictional discovery on contested facts within the exclusive control of Gulf Air and its agents. As required by law, Plaintiffs should not be denied discovery necessary to establish jurisdiction simply because Gulf Air seeks to withhold the factual record behind its regulatory, commercial, and operational presence in the United States

Submitted,

June 12  2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

R- 825

Case 1:24-cv-03434-ACR    Document 55    Filed 06/12/25    Page 24 of 25
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 826 of 971

24

*F. H*

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

*S. A*

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767

R- 826

25

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12 2025, Plaintiff Feras Hindi, Plaintiff Tala & Plaintiff Samiha will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Motion Leave for Limited Discovery, Memorandum & attachments

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Email

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark  **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Email, First Class mail

Submitted,

June 12  2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767

R- 827

1

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

### Civil Division

| | | |
|---|---|---|
| **Samiha Ayysah, Feras Hindi,** | ) | |
| **Tala Josephano** | ) | **Case No.:  1:24-cv-03434-ACR** |
| | ) | |
| Plaintiffs | ) | |
| **American Airlines Inc. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendants | ) | |
| | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

**PLAINTIFF TALA JOSEPHANO'S MOTION FOR LEAVE TO FILE EMERGENCY MOTION FOR PROTECTIVE ORDER, STAY ON DEADLINES AND REQUEST FOR HEARING**

Plaintiff Tala Josephano respectfully requests leave to refile and amend  her previously submitted *Emergency Motion for Protective Order and Request for In Camera Hearing* (Dkt. 46) to prevent denial by the court, and further requests that the Court set a hearing to address the ongoing threats and retaliatory actions described therein.

**A Moment for Human Reflection – Before the Law Fails the Living**

Before continuing with legal arguments, Plaintiff Tala Josephano respectfully asks this Court to take a moment of solemn reflection for the innocent lives lost yesterday. Over 240 people tragically lost their lives when Air India Flight 171, a Boeing 787-8 bound for London Gatwick, crashed shortly after takeoff from Ahmedabad on June 12, 2025, striking a medical-college

RECEIVED

JUN 13 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

R-828

Case 1:24-cv-03434-ACR   Document 56   Filed 06/13/25   Page 2 of 16
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 829 of 971

2

hostel and igniting a firestorm of destruction  Among the ground victims were several resident junior doctors from India, who were eating lunch at the hostel—bright young medical professionals preparing to treat others, only to be burned alive in an instant . Their deaths—potentially caused by pilot error or a Boeing mechanical failure—underscore the grave consequences when airline safety is compromised.

Let us not forget Captain Mohannad, who died just minutes before boarding a flight, while his co-pilot — untrained in CPR and basic emergency judgment — failed to recognize a heart attack, and later failed, over eight hours, to secure proper medical care. This tragedy occurred under the banner of Gulf Air, the same airline now attempting to expand into U.S. airspace, armed with Boeing aircraft, shielded by misrepresented safety records, and emboldened by foreign interference that silences dissent rather than confronts danger.

Gulf Air, with its documented noncompliance and unresolved safety failures, has already cost lives. Their strategic expansion to the U.S. — achieved not through improved safety, but through the suppression of whistleblowers and the manipulation of regulatory channels — is not just a legal question. It is a human one. The Bangladeshi courts, influenced and pressured by Gulf Air, failed to act after Captain Mohannad's death, resulting in the preventable death of a child under the same hospital's watch. That silence killed again.

If this Court chooses not to act — if it dismisses these warnings or avoids scrutiny into Gulf Air's safety practices and campaign of retaliation — then it will share the burden of consequence. Because when the next catastrophe occurs, if it occurs here on American soil, with an unfit crew flying U.S. families in noncompliant aircraft, it will be this Court's ruling that cleared the way.

R- 829

3

While the law rightly requires evidence, justice often begins with caution. This Court has the discretion to act — and the moment calls for it.

## **BACKGROUND**

On March 26, 2025, the Court issued a minute order restricting the filing of motions without leave. Plaintiff Tala believed in good faith that the restriction was resolved following the March 28 2025 hearing — particularly as the Court took argument and issued instructions orally at that time. Further, the original emergency motion was not a routine filing but a serious, time-sensitive request related to escalating safety threats, potential surveillance, and intimidation, which Plaintiff believed required immediate Court attention to preserve both personal safety and due process.

Plaintiff Tala asserts that had the Court responded to her earlier motions about investigating into the clerks and intake matters, the situation would not have escalated to this point. Tala should not have had to repeatedly plead for protection or resort to seeking public attention simply to be heard by the Court on serious and documented threats. Unfortunately, the lack of judicial response has allowed the harm to intensify and emboldened those targeting her to discredit or isolate her. In particular, the response from Gulf Air has included personal attacks and mischaracterizations — accusing her of being delusional, a "conspiracy theorist," or unlawfully filing for other Plaintiffs. These are not only false and abuse, but serve to further undermine her credibility and pressure her to abandon her case.

Reminder to the court, that Captain Mohannad Alhindi died with 99% Arterial blockage minutes from flying and Flight attendant Yaser died 16 days before him with a heart attack on the flight. If Gulf Air wasn't at fault, they would not go to this extent to make this case go away in every

R- 830

4

country. In the U.S.A they used the same vehicle that is supporting the Jordanian Government to silence Plaintiff Tala. Now they have exceeded their limits.

## **LEGAL BASIS**

Federal courts possess broad inherent authority to manage their proceedings, ensure fairness, protect litigants, and preserve the integrity of the judicial process. This inherent power is not governed solely by the Federal Rules of Civil Procedure but derives from the courts' institutional duty to uphold justice and prevent abuse of their forum. The Supreme Court has recognized that the inherent powers of federal courts are essential to and inherent in the organization of courts of justice. These powers serve to prevent abuse, oppression, and injustice, and to protect the courts' jurisdiction and officers.

As articulated in Chambers v. NASCO, Inc., 501 U.S. 32, 43–46 (1991), "the inherent power of a federal court includes the power to protect the administration of justice by sanctioning abuses of the judicial process and ensuring proceedings remain fair". Plaintiff Tala is not a lawyer she follows with the internet advice on how to write motions or requests. Plaintiff Tala is under stress and harassment and has done everything the right way to get the court's attention, Plaintiff is within her rights to resort to public exposure to protect herself. These are kings and governments with power that fear exposure of their corruption and abuse, especially from an American Citizen opposition that they can't silence except utilizing people in our systems.

A district court may act sua sponte or on motion to address misconduct, harassment, intimidation, or any extrajudicial interference that may obstruct justice. The D.C. Circuit has recognized that "the inherent powers of the federal courts are those which are necessary to the exercise of all others... including the power to regulate the conduct of parties and to safeguard

R- 831

Case 1:24-cv-03434-ACR    Document 56    Filed 06/13/25    Page 5 of 16
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 832 of 971

5

judicial functions." Shepherd v. American Broadcasting Companies, Inc., 62 F.3d 1469, 1474 (D.C. Cir. 1995).

The court's inherent authority includes, but is not limited to, the power to Issue protective orders to prevent harassment or intimidation of a party; Stay proceedings where continued litigation may cause irreparable harm or undermine due process; Refer credible allegations of criminal conduct to appropriate investigative bodies, such as the U.S. Attorney or Department of Justice; Appoint a special master or take remedial action to ensure proceedings remain fair, especially where misconduct may involve foreign actors or extrajudicial influence

The Supreme Court has emphasized that courts have exercised this authority to protect not only the parties but also the judicial institution itself. As stated in Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980), "courts cannot be expected to tolerate flagrant abuses or serious threats to the proper functioning of the judicial process".

Where, as here, a pro se litigant alleges serious threats to her safety, improper influence from foreign entities, and retaliatory conduct affecting access to justice and preventing her from having a normal life as entitled by the Constitution, the court has both the authority and the responsibility to inquire further and issue appropriate relief to protect the integrity of the proceedings

**<u>ARGUMENT</u>**

During the March 28, 2025 hearing, the Court stated: *"If any party here is abusing the system, or harassing the other side, please bring it to my attention and we will get it dealt with."* Plaintiff Tala Josephano takes this instruction seriously and respectfully emphasizes that while the Court may have been addressing defense counsel at the time, the directive did not specify that only one

R- 832

side's conduct should be reported or addressed. Plaintiff reasonably interpreted this as an open invitation by the Court to report any abuse or harassment relevant to this litigation — regardless of source. Plaintiff is not the party engaging in harassment; she is the party defending herself and seeking relief from it. If this statement applies to defense counsel, it must equally apply to a pro se litigant who has raised credible allegations of sustained intimidation, threats, surveillance, and foreign interference. Her emergency motion falls squarely within the type of situation the Court said it would address. Plaintiff Tala is simply doing what the Court permitted: bringing serious misconduct to its attention

**Jordanian Government Abuse & Interference**

Plaintiff Tala Josephano respectfully submits additional context in support of her request for emergency protective relief. Prior to this case, Plaintiff brought a separate action involving Israeli American journalist **Daphne Barak**, Josephano Vs Barak who had been preparing a documentary focused on Plaintiff's experience of abuse and persecution by the Jordanian government. Ms. Barak initially intended to expose the government's misconduct, but later withdrew her support and reversed course after being influenced by Jordanian authorities.

Specifically, Ms. Barak received and relied on materials directly from the **Office of Queen Rania of Jordan**—Private materials that do not accurately reflect Plaintiff Tala's background or activities. Those materials were used in an attempt to discredit Plaintiff, and were submitted to the court in that earlier case, ultimately causing Plaintiff to lose. This is not speculation or conspiracy: Ms. Barak herself **has made a sworn statement** (to be submitted at hearing) confirming that the private documents came from the Queen's office and that her decision to abandon the documentary and oppose Plaintiff was based on that interaction.

Case 1:24-cv-03434-ACR   Document 56   Filed 06/13/25   Page 7 of 16
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 834 of 971

7

Moreover, Ms. Barak did not stop there. After the litigation, she continued to send threatening emails to Plaintiff, urging her to drop her ongoing claims in this action. This directly implicates ongoing foreign retaliation and coordination, which Plaintiff has raised multiple times to the Court.

Plaintiff alleges that the Jordanian government, specifically King Abdullah, Queen Rania, and associated officials, have coordinated efforts inside the United States to suppress Plaintiff's legal claims and assist Defendant Gulf Air B.S.C. These actions are not theoretical — they are supported by documentary evidence, witness declarations, and personal testimony, which Plaintiff stands ready to present at an evidentiary hearing. Plaintiff further asserts that elements within the U.S. government have enabled or ignored this conduct, whether knowingly or through inaction.

Plaintiff's history of government retaliation extends beyond the United States. In her home country of Jordan, Plaintiff Tala has been criminally charged in absentia- ( 10 years after she left Jordan and moved to the USA, and right when she created her public facebook page that exposed corruption and theft of US Aid money)- with allegations including fraud, drug dealing, and attempting to "overthrow the government through publications." These charges were politically motivated, arising not from any criminal conduct, but from her public activism, online posts, and investigations into corruption and misuse of U.S. foreign aid by the Jordanian royal family.

As a result of these charges:

1. Plaintiff Tala has been sentenced to Jail if she returns, banned from entering Jordan, is barred from renewing her citizenship; and banned from receiving her inheritance.

R- 834

8

2.  She was prohibited from attending her brother's funeral unless she agreed to apologize to the government and stop her public criticism of the regime which she didn't;

3.  Several of her personal friends were arrested in Jordan or gets harrassed on daily basis, allegedly due to their association with her;

4.  Plaintiff Tala published a study on Queen Rania  public reports, including a detailed analysis of theft and laundering of U.S. aid, have been widely shared, implicating Queen Rania's use of foundations and properties (including in the United States) to funnel and obscure funds. Plaintiff Tala has the number of 44 Billion that was misused from US aid and others. Our tax money basically.

5.  Plaintiff Tala wrote many posts criticizing the amount of people waiting to be executed in Bahrain , their human rights and on the former CEO of Gulf Air who is known for corruption in Royal Jordanian Airlines from before her brother's death.

Plaintiff has filed formal complaints and reports with multiple U.S. and international agencies, including oversight bodies and law enforcement entities. However, no action has been taken. Plaintiff believes this inaction stems from political favoritism, diplomatic shielding, or mischaracterization of her as a "person of interest" within U.S. government circles — a Standard tactic used by Governments  that has effectively silenced her requests for investigation or protection.

Despite presenting evidence and cooperating fully, Plaintiff has been treated not as a whistleblower or a protected witness, but as a perceived threat. This response has enabled foreign retaliation and chilled Plaintiff's constitutional rights to petition, speak, and seek legal redress.

R- 835

Case 1:24-cv-03434-ACR    Document 56    Filed 06/13/25    Page 9 of 16
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 836 of 971

9

These facts are not hypothetical, nor are they exaggerated. They are supported by public records, social media archives, criminal filings from Jordanian authorities, and Plaintiff's detailed documentation, which she stands ready to present in full at an evidentiary hearing.

Plaintiff has since been forced to relocate from her home in CA due to continued harassment and surveillance. Her internet access has been repeatedly disrupted, and she has gathered credible evidence of unlawful monitoring, including sworn declarations from family members attesting to the pattern of intimidation.

Plaintiff respectfully asks: what if these allegations are true — and imminently provable? What if another aviation catastrophe happens ? What if Plaintiff is harmed while the Court remains silent? Why would the Court take that risk, especially when a limited referral to the Department of Justice or a protective hearing could clarify the facts and prevent irreversible harm? The court should consider these possibilities and use its power to order both DOT and FBI or DOJ investigation.

Plaintiff Tala apologizes if her pleadings have not followed strict legal formatting. She is not a lawyer. She is a pro se litigant navigating severe fear, danger and stress. But the law does not require perfection — only **credibility**, which she is prepared to prove. Plaintiff fears that without Court intervention, she will continue to be marginalized, painted falsely as a threat or a delusional person to discredit her claims. That is precisely the playbook used by authoritarian governments to silence critics. She asks the Court not to allow it to happen here. Defendant not only is defaming Plaintiff in his opposition, but abusing her public image stating she fantasizes without proofs to what they claim.

R- 836

This case arises in a context of direct interference by the Jordanian government, a regime with deep ties to Bahrain's intelligence infrastructure. Indeed, Jordanian personnel form a significant portion of Bahrain's intelligence services, and Gulf Air — a state-owned airline of Bahrain — has had Jordanian leadership at the highest level, including a former CEO whom Plaintiff has publicly accused of corruption and regulatory fraud prior to the Death of her brother. Plaintiff has been actively opposing corruption publicly since 2019

The timing of this litigation is not accidental. It coincides with Gulf Air's strategic effort to expand into the U.S. market, seeking to portray itself as a prestigious, "seven-star" airline with full regulatory compliance. But Plaintiff's filings and public statements present a very different picture — one of regulatory non-compliance, cover-ups, and manipulation, especially regarding safety, employment practices, and international aviation standards.

There are four central issues now before this Court, each implicating not only this case but broader public and constitutional interests:

**1. Government Surveillance Initiated Through Foreign Mischaracterization**

The Jordanian government has deliberately portrayed Plaintiff Tala as a "person of interest" to U.S. intelligence agencies — not because she poses any threat, but because she exercises her First Amendment rights to expose corruption and demand transparency. This mischaracterization appears to have been used to justify unlawful surveillance, harassment, and monitoring of her social media, communications, and reporting activities, particularly concerning U.S. aid money and Jordanian-Bahraini collusion.

R- 837

**2. Unlawful Transmission of Personal Data by a Foreign Monarchy**

Queen Rania of Jordan has personally disseminated confidential files on Plaintiff —after labeling her as an "anti-Royalist" and opposition figure — and passed those files to individuals inside and outside the United States in an apparent effort to destroy her reputation and impede previous litigation. Plaintiff Tala clarifies unequivocally: she is not "anti-Royalist." She has no interest in monarchies or titles. She is anti-corruption, and she acts out of principle to protect those without power.

**3. Systemic Vulnerability of the U.S. Judicial System to Foreign Pressure**

This case reveals a dangerous vulnerability in the federal system: that foreign governments or powerful domestic actors can influence judicial processes — bypassing constitutional safeguards, suppressing filings, discrediting litigants, and chilling the rights of whistleblowers. That this could happen under the radar, through sealed communications or silent gatekeeping, is not only a threat to Plaintiff but to every litigant in the system who relies on equal protection, transparency, and due process.

**4. Collusion and Cover-Up Involving a "National" Airline's Violations**

Most concerning, Plaintiff believes there is a coordinated effort to cover up noncompliance and misconduct by two airlines — Gulf Air and American Airlines — the latter of which holds immense influence as a major U.S. carrier. Gulf Air, backed by an authoritarian regime, appears to believe that it can buy access, suppress opposition, and pressure U.S. institutions into silence. That belief is being validated through this case — unless this Court intervenes.

R- 838

USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 839 of 971

Plaintiff Tala Josephano urges the Court to recognize that these matters are not private grievances or personal vendettas. They implicate national integrity, judicial independence, civil liberties, and public trust in regulated industries. She asks, again:

1. What if she is right?

2. What if the threats she describes are real, imminent, and provable?

3. And what if failing to act allows a dangerous precedent to go unchecked — where foreign influence shapes who gets heard, who gets ignored, and who gets hurt?

Plaintiff respectfully renews her request for a hearing, protective relief, and referral for independent investigation. The time to act is now.

Plaintiff Tala Josephano asserts that despite the bullying, harassment, injustice, and abuse she has endured at the hands of the Jordanian government — and now, increasingly, from Bahrain's state-aligned entities including Gulf Air — she remains unwavering in her commitment to expose unlawful interference in the judicial system. These regimes may rely on intimidation and silence, but Plaintiff Tala does not.

If this Court chooses to disregard these problems, that responsibility will rest with the Court. But Plaintiff Tala will not look away. She will not be silenced, and she will not stop fighting for what she believes in — truth, transparency, and accountability.

Despite the Court's repeated in action in response to her motions and requests for protection, Plaintiff Tala continues to act not only in her own defense, but in the defense of this very Court — a Court she believes must remain independent from the influence of foreign governments and

R- 839

corporate actors who place profit over safety and human rights. She continues to speak out to ensure that this institution is not co-opted or compromised.

**Clarification and Relief Requested**

Plaintiff Tala Josephano respectfully clarifies the following in light of accusations raised in opposition:

1. Plaintiff is an individual who has been directly subjected to sustained harassment, surveillance, and intimidation — both domestically and internationally — and her motions reflect her urgent need for judicial protection;

2. The Emergency Motion for Protective Order (Dkt. 46) is not a routine motion within the scope of the Court's March 26, 2025 minute order, but a narrowly tailored, good-faith filing based on fear and credible and escalating threats to personal safety and legal access. Emergency protective relief is constitutionally and procedurally distinct from ordinary motion practice, particularly where First and Fifth Amendment rights are at stake.

Plaintiff Tala Josephano respectfully informs the Court that she possesses substantial evidence of unlawful surveillance and harassment, including statements, photographic images, names, and identifying information of individuals believed to be involved in monitoring her activities, — both domestically and internationally. This includes individuals suspected to be acting under direction of foreign governments or/and domestic officials influenced by foreign interests. While Plaintiff maintains that this surveillance is unjustified and unlawful, she acknowledges that many of these US individuals may be carrying out orders or functioning within official or contracted roles.

R- 840

For that reason, and despite the deeply personal and harmful nature of this surveillance, Plaintiff will not publish or release this evidence publicly, even though it could support her broader claim of foreign interference and abuse of process. She is mindful of the potential danger to the individuals depicted, and believes that exposing their identities publicly could jeopardize their personal safety and national interests, even if they were wrongfully tasked with these operations. They are under order, not personal. Plaintiff Tala is prepared, however, to present this evidence under seal or in camera, should the Court grant an evidentiary hearing. She is also willing to identify individuals by name — including agents, intermediaries, and contractors — who were involved in the coordination or execution of surveillance and harassment tactics. She does so not out of malice, but in furtherance of the truth and the integrity of the judicial process.

Plaintiff believes the courtroom — not the public — is the appropriate forum for adjudicating these matters. She acts not to shame, threaten, or endanger anyone, but to seek protection, relief, and accountability through lawful means. She asks only that the Court recognize the seriousness and sensitivity of what she brings forward.

### Conclusion

Accordingly, Plaintiff Tala Josephano Respectfully Moves for the Following Relief:

1. GRANT or Leave to refile her *Emergency Motion for Protective Order and Request for In Camera Hearing* (Dkt. 46);

2. That the Court set a limited evidentiary hearing, either in person or in camera, so Plaintiff may present sworn testimony and material evidence concerning the threats, interference, and surveillance she continues to experience;

R- 841

3. That the Court stay all filing deadlines and while Plaintiffs obtain Jurisdictional

discovery — including Plaintiff's response to Defendant Gulf Air's oppositions motions

and request for baseless sanctions accompanied with possible Defamation — until

resolution of this motion;

4. That the Court grant any further relief it deems just and appropriate in the interests of

justice, safety, and constitutional integrity.

Dated: June 13, 2025
Respectfully submitted,

/s/ **Tala Josephano**
Pro Se Plaintiff
615 S Catalina Ave #233
Redondo Beach, CA 90277
(347) 749-4980

R- 842

Case 1:24-cv-03434-ACR    Document 56    Filed 06/13/25    Page 16 of 16
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 843 of 971

16

## CERTIFICATE OF SERVICE

I hereby certify that on June 13 2025, Plaintiff Tala will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Motion to leave and Stay

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Email

2-Defendant Gulf Air B.S.C., Inc  Mark & Darcy  **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Service : Email

Submitted,

June 13 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

R- 843

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SAMIHA AYYASH, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:24-cv-03434-ACR |
| v. | ) | |
| | ) | |
| GULF AIR B.S.C. (C), *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT GULF AIR B.S.C. (C)'S OPPOSITION TO
PLAINTIFFS' EMERGENCY MOTION TO STAY PROCEEDINGS**

Gulf Air B.S.C. (c) ("Gulf Air") submits its Opposition to Plaintiffs Tala Josephano's, Samiha Ayyash's, and Feras Hindi's (hereinafter, "Plaintiffs") Emergency Motion to Stay Proceedings[1] (hereinafter, "Plaintiffs' Motion," "Motion to Stay" or "Motion") (Dkt. 49), and in support thereof, Gulf Air respectfully states as follows:

**INTRODUCTION**

In their latest filing, Plaintiffs request that this case be stayed, pending, among other things, a "federal investigation into the conduct of Gulf Air B.S.C. and American Airlines," an "urgent protective investigation into Plaintiff Tala's ongoing harassment, retaliation and unlawful surveillance," and an investigation into the Federal Aviation Administration for purported "collu[sion]." (Motion at 1-2, 6-7). Plaintiffs' Motion, however, presents no grounds that could possibly warrant the imposition of the extraordinary remedy they seek. It is devoid of specific facts demonstrating why a stay is necessary and how Plaintiffs would be harmed in its absence.

---

[1] The full title of Plaintiffs' Motion is "Plaintiffs' Emergency Motion to Stay Proceedings Pending Federal Investigation, Congressional Review, and Judicial Determination Regarding Foreign Interference." (Dkt. 49).

R- 844

Instead, the Motion is replete with the same baseless assertions and conspiracy theories present in Plaintiffs' other filings. *See, e.g.*, Plaintiff, Tala Josephano's Emergency Motion for Protective Order and Request for in Camera Hearing (filed May 27, 2025) (Dkt. 46). Further, the investigative proceedings upon which Plaintiffs' Motion is premised are not actual investigations pending before any adjudicative body and would have no bearing on the core factual or legal issues in this case, in any event. A stay would only serve to harm Gulf Air by delaying resolution of its pending Motion to Dismiss, to which Plaintiffs already received an extension of time to respond.[2]

Moreover, the instant Motion was also filed in violation of the Court's March 26, 2025, Order ("March Order"), which prohibited further filings without leave of Court, and continues Plaintiffs troubling pattern of openly defying court orders.[3] The Court's May 19, 2025, Minute Order was also clear that no further extensions of time would be granted to Plaintiffs. Plaintiffs have failed to meet their burden to justify a stay of these proceedings, the Motion is without merit, and it should be denied.

## ARGUMENT

### I.    PLAINTIFFS FAIL TO ARTICULATE ANY LEGITIMATE REASON WHY THE COURT SHOULD STAY THESE PROCEEDINGS

A district court "has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere." *Hisler v. Gallaudet Univ.*, 344 F. Supp. 2d 29,

---

[2] Plaintiffs requested and were granted a thirty (30) day extension of time, until June 12, 2025, to respond to Gulf Air's Motion to Dismiss. *See* May 19, 2025, Minute Order. Yet, Plaintiffs failed to file their Opposition to Gulf Air's Motion to Dismiss by June 12, 2025.

[3] *See* Plaintiff, Tala Josephano's Emergency Motion for Protective Order and Request for in Camera Hearing (filed May 27, 2025) (Dkt. 46); Plaintiffs' Motion to Strike Defendant Gulf Air's Evidence "Exhibit A" Under Court Inherent Authority, (filed on May 29, 2025) (Dkt. 47); all of which were filed without leave of Court.

R- 845

35 (D.D.C. 2004) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). "The authority to stay proceedings stems from 'the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Nat'l Indus. for Blind v. Dep't of Veterans Affs.*, 296 F. Supp. 3d 131, 137 (D.D.C. 2017) (quoting *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998)). Courts considering a motion to stay must "weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (cleaned up). Stated differently, "hardship to the parties and benefits to judicial economy are the key interests to consider in evaluating a motion for a stay." *Nat'l Indus. for Blind*, 296 F. Supp. 3d at 137.

Despite the court's broad discretion to stay proceedings, a stay is nonetheless considered an "extraordinary remedy." *Emiabata v. Vetter*, No. 23-CV-02008 (CRC), 2024 WL 378039, at *2 (D.D.C. Feb. 1, 2024) (citing *Nat'l Indus. for Blind*, 296 F. Supp. 3d at 1370). To be sure, "[t]he proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255). The moving party "'must make out a clear case of hardship or inequity in being required to go forward' if there is 'even a fair possibility' that the stay would adversely affect the other party." *CEF Energia, B.V. v. Italian Republic*, No. 19-CV-3443 (KBJ), 2020 WL 4219786, at *5 (D.D.C. July 23, 2020) (quoting *Landis*, 299 U.S. at 255).

Plaintiffs have failed to meet their "high burden" to justify a stay of these proceedings. *See HDI Glob. Speciality SE v. Stanton View Devs., LLC*, No. CV 24-965 (SLS), 2025 WL 843284, at *2 (D.D.C. Mar. 18, 2025). Not only have Plaintiffs failed to make out "a clear case of hardship or inequity" in the absence of the stay, but they also offer no explanation as to why the various investigations and/or quasi-judicial ventures they seek could not occur simultaneously with the

3

R- 846

proceedings before this Court.  *See, e.g.*, *Dantzler v. United States Dep't of Just.*, No. 20-CV-01505 (TNM), 2020 WL 6712210, at *1 (D.D.C. Oct. 15, 2020) (denying motion to stay when plaintiff failed to articulate "specific reasons supporting why the related proceeding warrants a stay").

To that end, Plaintiffs baldly claim that a stay is necessary due to "credible and ongoing threats to Plaintiff Tala's constitutional, rights, and personal safety, and ability to fully participate in these proceedings . . ." (Motion at 2).  Plaintiffs have not provided details concerning any alleged threat to Plaintiff, Tala Josephano, nor have they demonstrated an inability to fully participate in these proceedings as a result thereof.  Indeed, Plaintiffs' serial filings demonstrate that, while they have difficulty following the orders of this Court, they have had no difficulty participating in the proceedings.  *See, e.g.*, *Kidwell v. Fed. Bureau of Investigation*, No. CV 11-00778 (BAH), 2011 WL 13385349, at *2 (D.D.C. Sept. 29, 2011) (finding that plaintiff's request to stay the case based on health concerns was unwarranted since plaintiff had already received an extension of time to respond to pending motions to dismiss and "demonstrated a clear ability to file litigation documents" during that timeframe).

Nor is a stay in the interest of judicial economy.  "When assessing judicial economy, courts consider whether the independent proceedings are likely to decide important issues in the stayed case."  *HDI Glob. Speciality SE*, No., 2025 WL 843284, at *2; *see also Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 276 (D.D.C. 2016) (finding that a stay may be appropriate "where a separate proceeding *bearing on the case is pending*") (emphasis added).  Here, the Motion fails at the outset because none of the various investigations or actions Plaintiffs request are currently pending anywhere.  *See, e.g.*, *Dantzler*, 2020 WL 6712210, at *1 (rejecting motion to stay in part, on grounds that the plaintiff failed to identify any pending proceedings against

R- 847

defendants).  The Motion cites only future investigations that Plaintiffs, improperly, demand the Court order.[4]  (*See* Motion at 3, 6-7).  The Motion also references forthcoming actions that Plaintiffs intended (or more accurately, threaten) to take, including retaliatory litigation against the Court and other "responsible parties." (*See* Motion at 4-5).

But irrespective of this lack of pendency, a stay is inappropriate as none of the actions, activities, or investigations referenced in the Motion would serve to "narrow the issues in the pending case[]" or "assist in the determination of the questions of law involved." *Landis*, 299 U.S. at 253; *see also Dantzler*, No. 20-CV-01505 (TNM), 2020 WL 6712210, at *1 (D.D.C. Oct. 15, 2020) ("The existence of a related case—standing alone—is not sufficient to justify a stay.").  The Motion, like Plaintiff, Tala Josephano's Motion for Protective Order (Dkt. 46), is replete with fantastical baseless accusations of Plaintiff, Tala Josephano and/or Plaintiffs' "harassment," "intimidation," and "surveillance" from foreign entities, as well as "silence or complicity" from sections of the federal government, including the Federal Aviation Administration and Court personnel.  (*See,* Motion at 2-4).[5]

Plaintiffs' claims in the Motion are based on unfounded conspiracy theories that have no bearing on the key legal or factual issues in this case, including Gulf Air's pending Motion to

---

[4] The Motion's request for Court-ordered *investigations* into Gulf Air, the Federal Aviation Administration, and foreign entities are inappropriate on a motion to stay and inappropriate as a matter of course. *See Leji v. Dep't of Homeland Sec.,* No. 1:15-CV-00387, 2015 WL 1299361, at *2 (D.D.C. Mar. 17, 2015) ("The United States Attorney General has absolute discretion in deciding whether to investigate claims for possible criminal or civil prosecution, and such decisions generally are not subject to judicial review.").

[5] Plaintiffs also briefly present what appears to be the same argument advanced in their previously filed Motion to Strike as additional grounds to stay the case.  (*See* Motion at 3) (citing the submission of "misrepresented documentation by Gulf Air"); (Dkt. 47, "Motion to Strike").  As shown in Gulf Air's Opposition to the Motion to Strike, Plaintiffs' argument is meritless, (*see* Dkt. 53), but in any case, Plaintiffs do not explain how this allegation could justify a stay of the proceedings.

R- 848

Dismiss for lack of jurisdiction or the merits of Plaintiffs' wrongful death-based claims. Courts within this district and elsewhere have repeatedly denied granting motions to stay in such circumstances. *See*, *e.g.*, *HDI Glob. Speciality SE*, 2025 WL 843284, at \*3 (denying motion to stay after finding issues in related litigation were "unlikely to resolve dispositive or important issues in [the] case"); *In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-cv-6820, 2013 WL 2434611, at \*4 (E.D. Pa. June 5, 2013) (denying motion to stay where "there is no risk of inconsistent rulings" between the case and a related agency investigation); *see also Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. UPMC McKeesport*, No. 22-CV-249 (TSC/GMH), 2022 WL 3644808, at \*3 (D.D.C. Aug. 24, 2022) (denying motion to stay when no currently pending proceeding could resolve "core legal or factual questions" in the case); *compare with Hulley Enters. Ltd. v. Russian Fed'n,* 211 F. Supp. 3d 269, 282-84 (D.D.C. 2016) (finding that a stay was warranted when the "legal viability of claims" would be affected by judicial proceedings in The Hague).

Finally, Gulf Air would be harmed by a stay, which would further postpone adjudication of its Motion to Dismiss. *See Serv. Emps. Int'l Union Nat'l Indus. Pension Fund*, 2022 WL 3644808, at \*3 (finding that the requested stay would harm the nonmoving party by unnecessarily delaying proceedings). Plaintiffs have already received an extension of time to respond to Gulf Air's Motion to Dismiss, and Gulf Air is entitled to resolution thereto. Plaintiffs' Motion does not articulate any legitimate reason why these proceedings should be stayed. The Motion offers nothing more than conspiracy-laden theories meant to further disparage Gulf Air and stall resolution of its pending, dispositive motion. Plaintiffs have submitted multiple filings that are not only frivolous but also defy the Court's March Order. Gulf Air, in turn, has been forced to expend significant time and resources in responding to these meritless filings.

R- 849

## CONCLUSION

For the reasons stated herein, Plaintiffs have not met their heavy burden justifying a stay of the case they filed. The Motion to Stay, similar to Plaintiffs' prior filings, presents only baseless claims and conspiracy theories. It is devoid of *any* specific facts concerning harm to Plaintiffs in the absence of a stay. A stay would also clearly be contrary to the interests of judicial economy, as the Motion does not identify any related pending proceedings, much less any proceedings that could properly bear on the key legal or factual issues in this case. On the other hand, Gulf Air would be harmed by a stay and the unnecessary delay in the adjudication of its Motion to Dismiss.

Defendant, Gulf Air B.S.C. (c), therefore, respectfully requests that the Court deny Plaintiffs' Motion to Stay, award Gulf Air its attorney's fees for having to prepare the instant Opposition and grant such other relief as the Court deems just and proper.

Dated: June 18, 2025

Respectfully Submitted,

**ECKERT SEAMANS CHERIN
 & MELLOTT, LLC**

*/s/ Mark A. Johnston*
Darcy C. Osta, Esq.
D.C. Bar No. 1686937
Mark A. Johnston, Esq.
D.C. Bar No. 455764
1717 Pennsylvania Ave., N.W.,
Suite 1200
Washington, D.C. 20006
(202) 659-6600
dosta@eckertseamans.com
mjohnston@eckertseamans.com

*Counsel for Gulf Air B.S.C. (c)*

7

R- 850

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2025, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF filing system, which will serve an electronic copy on all

counsel of record, and I will also serve a copy of the foregoing via USPS first class mail upon the

following:

> Tala Josephano
> 615 Catalina Avenue, #233
> Redondo Beach, CA 90277
> *Pro Se Plaintiff*
>
> Samiha Ayyash
> Feras Hindi
> 7823 New London Drive
> Springfield, VA 22153
> *Pro Se Plaintiffs*

<div align="right">

*/s/ Mark A. Johnston*
Mark A. Johnston

</div>

R- 851

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

| | | |
|---|---|---|
| **Samiha Ayysah, Feras Hindi,** | ) | |
| **Tala Josephano** | ) | **Case No.:  1:24-cv-03434-ACR** |
| | ) | |
| Plaintiffs | ) | |
| **American Airlines Inc. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendants | ) | |
| _____ | ) | |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED MOTION TO STAY**

**PROCEEDINGS (ECF No. 49 ), AND REQUEST FOR NARROWLY TAILORED STAY**

 Plaintiffs respectfully submit this Motion for Leave to File an Amended Motion to Stay

Proceedings. Plaintiffs **now** understood the Court's prior order requiring that no further motions

be filed without prior leave extended to after the hearing of March 28 2025 if it is, and wish to

ensure full compliance with all procedural directives. Alternatively, should the Court determine

that the pending Motion for Jurisdictional Discovery and/or the Protective Hearing Motion

already require a stay or deferral of proceedings, Plaintiffs respectfully request leave to withdraw

the Motion to Stay without sanctions or attorneys' fees

**RECEIVED**

JUN 20 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia


R- 852

2

**TABLE OF AUTHORITIES**

Chavous v. D.C. Financial Responsibility & Management Assistance Auth., 201 F.R.D. 1
(D.D.C. 2001)

Erickson v. Pardus, 551 U.S. 89 (2007)

GTE New Media Services Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000)

Haines v. Kerner, 404 U.S. 519 (1972)

Landis v. North American Co., 299 U.S. 248 (1936)

Richardson v. United States, 193 F.3d 545 (D.C. Cir. 1999)

R- 853

3

## INTRODUCTION

Plaintiffs believed in good faith that this restriction concluded following the Court's March 28, 2025 hearing, as no further order continuing the restriction was entered thereafter.

Plaintiffs bring this motion because they have been unable to safely and effectively participate in litigation without the involvement and assistance of Plaintiff Tala Josephano, whose ability to contribute has been compromised by ongoing harassment and interference—facts of which Defendant and their counsel are aware.

Plaintiff Tala previously filed an Emergency Motion for Protective Hearing and Investigation, and Defendants' Motion to Dismiss (ECF No. 43) remains pending. In light of these overlapping threshold matters, plaintiffs Samiha Ayyash and Feras Hindi determined that it was necessary to seek a stay to preserve their procedural rights and prevent potential prejudice. Plaintiffs Samiha and Feras joined the Motion to Stay to promote judicial efficiency and fairness.

While the original Stay Motion reflected Plaintiff Tala's distress, Plaintiffs Samiha and Feras fully recognize the extreme abuse, harassment, and threats Plaintiff Tala has endured—including actions attributed to Gulf Air and Jordanian authorities. Plaintiff Feras has also personally witnessed the interference when Plaintiffs were attempting to communicate with the FAA regarding matters central to this case.

All Plaintiffs support the requested stay and expressly authorized Plaintiff Tala to present their collective concerns in the Motion. Plaintiffs have acted together, in good faith, to safeguard their ability to participate safely and fairly in these proceedings.

Plaintiffs face specific interference affecting their ability to oppose the motion to dismiss. Pending jurisdictional discovery justifies deferring resolution of that motion.

R- 854

Case 1:24-cv-03434-ACR    Document 60    Filed 06/20/25    Page 4 of 21
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 855 of 971

4

Plaintiffs acknowledge the Court's March 26, 2025 Order and respectfully submit this Motion for Leave in full compliance with that directive. A short stay is proportional and will not prejudice defendants.

This amended filing is intended to fully comply with the Court's prior directives and to narrow the requested relief to three specific threshold matters: (1) resolution of jurisdictional discovery, (2) adjudication of the pending protective hearing motion, and (3) authentication of contested evidence. Each of these issues directly affects the Court's ability to make foundational determinations necessary for the fair administration of this case.

Plaintiffs submit this motion in good faith to correct any prior misunderstanding and to clarify and narrow the relief requested. Proceeding pro se, Plaintiffs respectfully requested leave to amend their prior Emergency Motion to Stay Proceedings (ECF No. 49), which was submitted under conditions of significant emotional distress and escalating threats.

Ongoing harassment and interference constitute "extraordinary circumstances" under Landis v. North American Co., 299 U.S. 248, 255 (1936), justifying a stay. Plaintiffs have documented incidents of targeted interference with litigation activities—including disruptions to communications and access to evidence—which directly impede their ability to participate in these proceedings

Plaintiff Tala Josephano, in particular, drafted the original motion during a period of acute emotional distress caused by escalating personal safety threats, severe harassment, and the absence of protective action on prior requests and notices presented to this Court. Plaintiffs respectfully request that the Court consider these circumstances in evaluating the present motion and the necessity of narrowly tailored relief.

Case 1:24-cv-03434-ACR    Document 60    Filed 06/20/25    Page 5 of 21
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 856 of 971

5

Plaintiff Tala regrets that the tone and framing of the original motion did not fully reflect proper legal decorum. The proposed Amended Motion to Stay is now limited to a relief that is directly tied to pending motions before this Court and is intended to promote judicial economy and fairness. Alternatively, should the Court determine that Plaintiffs' pending Motion for Jurisdictional Discovery (ECF No. [55-54]) sufficiently addresses the timing of proceedings, Plaintiffs respectfully request that the original Stay Motion be treated as withdrawn.

This request is made in good faith to avoid unnecessary duplication or confusion on the docket.

This motion does not seek an indefinite or blanket stay. Plaintiffs seek only a limited pause—no longer than necessary for the Court to resolve the Protective Hearing and Jurisdictional Discovery motions—so that threshold procedural and jurisdictional matters, including the authentication of contested evidence and the impact of ongoing interference on Plaintiffs' ability to participate, may be addressed efficiently and fairly, particularly given Plaintiffs' pro se status. The requested stay is proportional to the specific harm Plaintiffs face and is necessary to prevent irreparable prejudice, consistent with the standards set forth in Landis and Chavous

**BACKGROUND**

On May 27, 2025, Plaintiffs filed an Emergency Motion for Protective Hearing and Investigation in direct response to the Court's explicit instruction that any party experiencing harassment should promptly notify the Court. Plaintiffs acted in good faith and in compliance with this directive, as escalating threats and urgent safety concerns required immediate judicial attention. The subsequent Emergency Motion to Stay Proceedings, filed on June 4, 2025, was a procedural measure taken to preserve Plaintiffs' rights while the Emergency Protective Hearing Motion and Defendants' Motion to Dismiss (ECF No. 43-42) remained pending. Plaintiffs understood, based on legal advice and standard practice, that seeking a stay in connection with an emergency

R- 856

Case 1:24-cv-03434-ACR    Document 60    Filed 06/20/25    Page 6 of 21
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 857 of 971

6

hearing is appropriate to ensure that threshold safety and jurisdictional issues are addressed before further litigation proceeds.

Importantly, the Stay Motion was filed well before the deadline for Plaintiffs to submit their answer to the Motion to Dismiss. Plaintiffs respectfully submit that their actions were not in violation of any Court order, but rather were consistent with both the letter and spirit of the Court's procedures and instructions. Plaintiffs now seek leave to file an amended, narrowly tailored motion to stay, focused solely on ensuring that threshold matters are resolved efficiently and fairly, without prejudice to any party. As detailed in Plaintiffs' Proposed Amended Motion to Stay (Exhibit A), specific factual evidence—including technical interference with phone, email, and FAA contacts, and disruptions to counsel outreach—is available for in camera review if the Court requests and permits.

## LEGAL BASIS

### I. Pro Se Litigant Status and Liberal Construction of Filings

Plaintiffs are Pro Se with no legal background on writing motions, Plaintiffs efforts in formatting and wording of the motions or requests and constant complying with rules should not be ignored. As a pro se litigant, Plaintiffs respectfully invoke the well-established principle that courts must liberally construe pro se pleadings. The United States Supreme Court has held that "[a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); see also *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Federal courts in this District routinely apply this standard. See, e.g., *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999).

R- 857

Case 1:24-cv-03434-ACR    Document 60    Filed 06/20/25    Page 7 of 21
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 858 of 971

7

However, Plaintiffs recognize that this leniency does not excuse noncompliance with substantive law or procedural rules. Plaintiffs remain fully responsible for following the Federal Rules of Civil Procedure and the Local Civil Rules of this Court. In compliance with the Court's March 28, 2025 Order—which instructed that any incidents of harassment be promptly reported—Plaintiff Tala  filed Emergency Motion for Protective Hearing. Based on her research and standard federal practice, Plaintiffs understood that a Motion to Stay was necessary to preserve their procedural rights and to avoid missing critical deadlines, particularly as the harassment itself appeared intended to cause procedural default and prejudice Plaintiffs' ability to fully participate in this litigation. Plaintiffs further understood that motions to stay proceedings must be filed separately from substantive motions and can't be combined with other requests, and the Stay Motion was intended as a procedural safeguard directly connected to, and protective of, the Emergency Protective Hearing request—not as an unrelated or standalone filing

## II. **Standard for Amending a Motion**

Federal courts have broad discretion to permit amendment of motions when justice so requires. While Federal Rule of Civil Procedure 15(a) expressly addresses amendments to pleadings, courts routinely apply the same liberal standard to amendments of motions, particularly where there is no undue delay, bad faith, or prejudice to the opposing party. As the D.C. District Court has recognized, amendment of a motion is appropriate where it will not result in prejudice to the opposing party.

Plaintiffs invoke the court authority and respectfully seek leave to amend their previously filed Motion to Stay (ECF No. 49) in good faith and without undue delay. The amendment is submitted in good faith and is not intended to cause delay or harassment. Allowing this

R- 858

Case 1:24-cv-03434-ACR    Document 60    Filed 06/20/25    Page 8 of 21
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 859 of 971

8

amendment will not prejudice any party and will promote a more accurate, orderly, and efficient presentation of the relevant issues before the Court.

**III. Legal Standard for Granting a Stay**

This Court has inherent authority to manage its docket and may grant a stay of proceedings where appropriate. As the Supreme Court has recognized, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936). Federal courts may exercise this power to stay proceedings in order to preserve rights or prevent prejudice while dispositive motions or key procedural matters—such as jurisdictional discovery—are pending. See *Chavous v. D.C. Financial Responsibility & Management Assistance Authority*, 201 F.R.D. 1, 2 (D.D.C. 2001). The decision to grant a stay is discretionary and depends on a showing that the stay would prevent hardship or inequity, promote judicial efficiency, or avoid unnecessary expense. See *Landis v. North American Co.*, 299 U.S. 248, 255 (1936). Here, Plaintiffs seek a stay that is limited in both scope and duration, covering only the period necessary for resolution of: (1) the pending Motion for Jurisdictional Discovery after Plaintiffs have demonstrated a substantial factual basis for this Court's jurisdiction over both Defendants, warranting jurisdictional discovery before dispositive rulings ; Plaintiffs already having hardship and will encounter more if the court including dismissal of their claims if the court doesn't stay until Plaintiffs' jurisdictional facts over Defendants are developed.

(2) the corrected Protective Hearing motion ; and (3) the Motion to Strike Exhibit A which is what Defendant Gulf Air's main Defense to dismiss Plaintiffs' claims.

R- 859

When a motion for jurisdictional discovery is pending, courts often exercise their discretion to stay or defer consideration of dispositive motions—particularly motions to dismiss for lack of personal jurisdiction—because the necessary factual record may not yet have been developed. See *GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000) ("[I]f a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified.")

Granting a stay under these circumstances serves the interests of judicial economy, prevents potential prejudice to Plaintiffs, and ensures that all parties have a fair opportunity to address threshold matters before the Court proceeds to the merits.

Plaintiffs have faced significant, ongoing obstacles in preparing their case and conducting essential litigation tasks due to persistent interference and harassment. Plaintiff Tala previously sought an extension to obtain legal representation, but escalating pressures and threats have impaired those efforts.

The requested Stay is not based on external investigations, but on threshold motions properly before this Court: Plaintiffs' pending Emergency Motion for Protective Hearing, Motion for Jurisdictional Discovery, and Motion to Strike Exhibit A, which must be resolved before dispositive rulings. Plaintiff Tala was going through extra harassment when she was drafting the motion and did her best to meet the threshold with the limited resources she has.

Proceeding with dispositive motions while these circumstances persist—without first addressing Plaintiffs' protective concerns through a proper hearing—would severely compromise their ability to present their claims and defend against dismissal, resulting in irreparable prejudice. A stay is therefore necessary and appropriate to prevent unfair prejudice, promote judicial

R- 860

Case 1:24-cv-03434-ACR    Document 60    Filed 06/20/25    Page 10 of 21
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 861 of 971

10

economy, and ensure that threshold protective and jurisdictional issues are adjudicated before the case proceeds further

## IV. Good Faith and Compliance with Rules

Plaintiffs certify that this request is made in good faith, is warranted by existing law and facts, and is not interposed for any improper purpose. Plaintiffs remain committed to complying with all applicable Federal and Local Rules, as well as any further orders of this Court. Granting the requested amendment will assist the Court in clarifying the procedural record and avoiding unnecessary litigation over the original Motion to Stay. This request addresses demonstrable litigation harm, supported by documented evidence of interference and harassment. Plaintiffs' assertions are not speculative but reflect ongoing, verifiable impediments to their ability to effectively litigate this case.

Whether Plaintiffs have been subjected to interference or intimidation—allegations raised in the Emergency Motion for Protective Order—may directly impact the manner in which discovery proceeds and whether additional procedural protections are warranted. The requested stay will allow the Court to evaluate these concerns without prejudice or undue delay to any party.

To be clear, Plaintiffs do not ask the Court to accept their factual assertions at face value. Rather, Plaintiff Tala respectfully requests that the Court permit a hearing to assess the credibility and significance of these concerns, particularly as they relate to the integrity of pending jurisdictional matters and the fair administration of justice.

Plaintiffs do not seek further delay or to burden the Court. Plaintiffs seek only leave to file the Proposed Amended Motion to Stay to clarify and narrow the relief requested, consistent with Court authority.

R- 861

## ARGUMENT

### I. The Amendment is Filed in Good Faith and Seeks Narrow, Lawful Relief

Plaintiff Tala Josephano, acting pro se, researched applicable federal procedures and understood that it was appropriate to file a Motion to Stay in connection with an emergency protective hearing, in order to preserve the status quo pending judicial resolution. She also determined that a Motion for Jurisdictional Discovery must be filed separately, and that a limited stay is proper while such discovery is pending. Plaintiffs offer this context to clarify that their actions were intended to follow correct procedure—not to burden the Court or circumvent its authority.

While no formal agency investigation is currently pending, Plaintiffs have made good-faith efforts to alert appropriate federal authorities to the threats and interference they have faced. They acknowledge the absence of an active inquiry but submit that this does not preclude the Court's inherent authority to safeguard litigants and maintain the integrity of federal proceedings.

This motion is submitted with professionalism and in full compliance with the Court's rules. Plaintiffs acted under a sincere belief in the necessity of urgent relief, during a period of substantial emotional distress and safety concerns. Their intent was never improper, but grounded in a desire to protect their rights and ensure a fair opportunity to be heard. Plaintiffs' actions were motivated by a genuine concern for safety and procedural fairness, not by any improper purpose.

### II. The Original Motion's Tone Reflected Distress, Not Disrespect

Plaintiffs respectfully acknowledge that the tone of the original Motion to Stay was shaped by genuine fear, emotional strain, and escalating safety concerns. They regret any language that may

R- 862

have appeared intemperate or improperly directed at the Court or opposing counsel. The filing arose from an urgent desire to preserve procedural rights amidst worsening circumstances—not from any intent to disrupt proceedings.

As pro se litigants navigating complex procedures without counsel, Plaintiffs acted in good faith to comply with Court orders while addressing rapidly developing threats. They recognize that additional evidentiary materials could have been included with the original motion and now stand ready to submit declarations and supporting exhibits—some under seal if permitted—to substantiate their claims of interference and harassment.

While preparing this motion and seeking legal representation, Plaintiff Tala Josephano experienced repeated disruptions to her communications. These included phone outages, unsent emails, and unexplained network behavior such as irregular IP addresses from states she had not visited. These impairments directly affected Plaintiffs' ability to consult with counsel, conduct legal research, and prepare responsive filings. Plaintiffs respectfully request that these challenges be considered as context for both the original filing and the narrowly tailored relief now sought.

This campaign of intimidation, combined with persistent technical disruptions, has materially impaired Plaintiffs' ability to litigate this case and prepare a full response to Defendants' Motion to Dismiss (ECF No. 43). Plaintiff Tala is prepared to submit exhibits—including screenshots of irregular IP activity, failed communications, and anomalous device locations—for in camera review if the Court so permits.

These disruptions, including unexplained IP address changes from states Plaintiff has never visited and interference with search engines and AI tools used for legal preparation, have compromised Plaintiffs' ability to conduct research, coordinate with co-Plaintiffs, and meet

R- 863

13

critical deadlines. This constitutes concrete litigation harm, not merely emotional distress. Proceeding without a stay would force Plaintiffs to oppose dispositive motions without access to essential evidence and support, resulting in irreparable prejudice. This satisfies the *Landis* requirement of a "clear case of hardship or inequity." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

Despite raising these concerns through appropriate channels, Plaintiffs have not received effective relief, and the interference continues to cause significant distress and impair their ability to litigate. The tone of the original Motion reflected this fear and pressure—not any intent to disrespect the Court or burden the docket.

Plaintiffs have contemporaneously documented interference since 2022, including call logs and network disturbance records that show targeted disruption of litigation-related activities. These materials will be submitted under seal in support of the forthcoming corrected Motion for Protective Hearing, subject to the Court's approvals.

**III. Allowing Amendment Will Promote Judicial Economy**

Permitting amendment will serve judicial economy by allowing the Court to evaluate the legal issues on a more complete and accurate record. A corrected and narrowly focused motion will reduce confusion, avoid duplicative briefing, and streamline resolution of the threshold matters. Plaintiffs are not seeking delay but a brief pause to complete jurisdictional discovery and address unresolved protective concerns stemming from ongoing interference.

R- 864

This approach enables the Court and all parties to proceed in a more orderly and efficient manner and is consistent with the federal judiciary's preference for resolving cases on their merits. It also supports the Court's inherent authority to manage its docket effectively and fairly.

**IV. Defendants Will Not Be Prejudiced; Plaintiffs Will Face Irreparable Harm if Relief Is Denied**

Allowing amendment and a narrowly tailored stay will not prejudice Defendants. Defendant Gulf Air has already responded to the original motion and face no litigation disadvantage from permitting a clarified and procedurally proper substitute. American Airlines counsel repeatedly confirmed he doesn't oppose extensions. Jurisdictional discovery may briefly delay dispositive rulings, but it will clarify threshold issues and prevent unnecessary litigation over premature dismissal. By contrast, Plaintiffs face ongoing, documented interference that directly impairs their ability to prepare filings, communicate with counsels, and secure evidence. Proceeding without resolving these foundational concerns risks irreversible prejudice—denying Plaintiffs a meaningful opportunity to oppose dismissal on a full and fair record.

The absence of a formal agency investigation does not diminish the Court's discretion to preserve fairness in its own proceedings. The combination of credible safety concerns, procedural vulnerability, and Plaintiffs' demonstrated good faith warrants the limited relief sought. Addressing these threshold matters first will protect the integrity of the process and ensure that all parties can litigate on equal footing.

Case 1:24-cv-03434-ACR    Document 60    Filed 06/20/25    Page 15 of 21
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 866 of 971

15

**Proportionality of Relief**

Plaintiffs seek only a brief and targeted stay of briefing on the Motion to Dismiss, limited to the period necessary for the Court to resolve two threshold matters: the pending Motion for Jurisdictional Discovery and the corrected Protective Hearing Motion. This relief is narrowly tailored to address the specific litigation prejudice caused by ongoing interference and will not delay other aspects of the case. As recognized in *Chavous v. D.C. Financial Responsibility & Management Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001), a stay is appropriate where threshold issues must be resolved to avoid unfair prejudice.

Without such a stay, Plaintiffs would be forced to oppose dismissal while facing unresolved safety threats, disrupted communications, and impaired access to evidence—conditions that would severely limit their ability to present jurisdictional and substantive arguments. The result would be irreparable prejudice and a fundamentally unequal litigation posture. Granting this stay will not prejudice Defendants. The proposed pause is short in duration, narrowly focused on matters already pending before the Court, and does not seek to delay the overall litigation. Plaintiffs are not seeking to circumvent deadlines or stall proceedings, but to ensure that critical foundational issues are resolved before the case advances to the merits. Defendants lose nothing by this limited stay, while Plaintiffs face tangible harm if compelled to proceed without the protections requested and the jurisdictional discovery information requested The requested relief advances fairness, judicial economy, and orderly case management.

Case 1:24-cv-03434-ACR    Document 60    Filed 06/20/25    Page 16 of 21
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 867 of 971

16

**Statement Pursuant to LCvR 7(m)**

Pursuant to Local Civil Rule 7(m), Plaintiffs made a good faith effort to confer with Defendants' counsel regarding the relief requested in this motion. On June 18, 2025, Plaintiffs emailed Gulf Air B.S.C counsel proposing a pause in further filings pending resolution of outstanding motions. Defendants opposed both this motion and the proposed amendment but provided no explanation and declined to engage in efforts to narrow the issues or reach any accommodation. American Airlines Inc Counsel repeatedly said he doesn't oppose extensions.

Throughout this litigation, Plaintiffs—acting pro se—have consistently attempted to comply with all applicable rules and have conducted themselves with professionalism despite substantial emotional and procedural challenges. Defendant Gulf Air B.S.C counsel is fully aware of Plaintiffs' unrepresented status and the external threats Plaintiffs have reported, yet has continued to oppose nearly every filing and has repeatedly threatened sanctions and attorney's fees. This conduct has compounded the strain on Plaintiffs, who have limited resources and face ongoing harassment that directly affects their ability to participate.

Plaintiffs respectfully ask the Court to consider these circumstances when assessing the conduct of the parties and evaluating any requests for sanctions or fees. Plaintiffs remain committed to acting in good faith and maintaining civility throughout these proceedings, and request that all parties be held to the standards required by the Court.

**Harassment and interference have directly impaired Plaintiffs' ability to**:

(1) contact key witnesses and agencies, including the FAA, for testimony on jurisdictional issues;

(2) retain counsel; additionally by Defendant Gulf Air B.S.C law firm hiring the sole attorney in

R- 867

Plaintiff Tala's family before litigation, further impairing efforts to secure representation (3) prepare and file a proper response to Defendants' Motion to Dismiss and challenge contested evidence, due to ongoing surveillance and technical disruptions; and (4) communicate and coordinate with co-plaintiffs, as persistent internet and phone interference compromised deadlines and claim presentation. These actions have also caused Plaintiffs—especially Tala—to experience significant distress and a pervasive feeling of unsafety.

As shown in the Emergency Motion for Protective Order and supporting exhibits—including sealed filings depicting surveillance by U.S. agents—these coordinated tactics have caused concrete prejudice to Plaintiffs. Accordingly, Plaintiffs respectfully request the limited, targeted relief necessary to preserve fairness and the integrity of these proceedings.

**Duration and Timing of the Requested Stay**

Plaintiffs respectfully request that any stay granted be limited in scope and duration, and expressly defer to the Court's discretion as to the appropriate timeline. Plaintiffs are not seeking an open-ended or indefinite delay, but rather a pause solely to allow resolution of the pending Motion for Jurisdictional Discovery and the forthcoming corrected Protective Hearing Motion.

A brief, tailored stay to address threshold jurisdictional and safety issues prevents irreparable prejudice, satisfies the Landis hardship standard, and imposes no burden on Defendant. Plaintiffs agree to proceed in full accordance with any schedule the Court deems appropriate and are prepared to submit any required filings, including an opposition to the Motion to Dismiss, within a time period set by the Court following resolution of the threshold matters. Plaintiffs do not seek to burden the docket but only to preserve their ability to participate fairly and safely in these proceedings.

R- 868

Case 1:24-cv-03434-ACR   Document 60   Filed 06/20/25   Page 18 of 21
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 869 of 971

18

A stay is not only to protect Plaintiffs, but to preserve the integrity of the Court's jurisdictional ruling. Proceeding before resolution of jurisdiction and interference claims risks prejudice and unnecessary remand or reversal. Should the Court find it useful, Plaintiffs are prepared to present their basis for amendment and the stay request in a short evidentiary hearing.

## SUMMARY

Plaintiffs respectfully submit that the requested stay is both necessary and narrowly tailored to address specific, ongoing interference that directly impedes their ability to participate in this litigation. The law is clear that courts have broad discretion to stay proceedings to prevent prejudice and promote judicial economy, especially where threshold issues are pending. Plaintiffs' pro se status, good faith compliance with Court orders, and the absence of prejudice to Defendants all weigh heavily in favor of granting leave to amend and issuing the requested stay. Denial of this relief would risk irreparable harm to Plaintiffs' rights and the integrity of these proceedings.

This motion is submitted in full compliance with the Court's prior directive requiring leave for future filings. Plaintiffs respectfully seek leave at this time and have not filed the amended motion without the Court's permission. Plaintiffs acknowledge the Court's directive and affirm their commitment to seek express leave before filing any subsequent motions.

Granting this narrowly tailored stay will not prejudice Defendants, as all pending matters pertain to plaintiff-initiated threshold issues. In contrast, denying the requested stay risks irreparable harm to Plaintiffs' ability to litigate core jurisdictional questions and to participate meaningfully in these proceedings. Should the Court permit, Plaintiffs are prepared to submit corroborating evidence under seal or for in camera review

R- 869

Case 1:24-cv-03434-ACR    Document 60    Filed 06/20/25    Page 19 of 21
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 870 of 971

19

**CONCLUSION**

WHEREFORE, Plaintiffs respectfully request that the Court:

1. Stay further proceedings on Defendants' Motion to Dismiss (ECF Nos. 43, 42) pending the Court's rulings on the following pending motions

    a. Plaintiffs' Motion for Jurisdictional Discovery (see GTE New Media, 199 F.3d at 1351); and

    b. Plaintiffs' Motion for a Protective Hearing; C Motion to STRIKE Exhibit A

2. Grant Plaintiffs leave to file the proposed Amended Motion to Stay Proceedings (attached hereto as Exhibit A); or, in the alternative,

3. Accept Exhibit A (the Amended Motion to Stay Proceedings) as a substitute for ECF No. 49;

4. Defer ruling on Defendants' Motion to Dismiss (ECF No. 43) until after the Court has resolved Plaintiffs' Motion for Leave to File the Amended Motion to Stay and the Proposed Amended Motion to Stay (Exhibit A);

5. Deny any request for sanctions or attorney's fees, whether previously made or anticipated;

6. Permit Plaintiffs to submit evidence under seal for in camera review; and

7. Grant such other relief as the Court deems just and proper.

A stay is necessary to preserve Plaintiffs' Fifth Amendment right to meaningful access to the courts and fair participation in this litigation.

R- 870

**Respectfully submitted,**

Dated: June 19, 2025



Tala Josephano
615 S Catalina Ave #233
Redondo Beach, CA 90277
(347) 749-4980

F. H

Feras Hindi
7823 New London Dr.
Springfield, VA 22153
(703) 980-6955

S. y

Samiha Ayyash
7823 New London Dr.
Springfield, VA 22153
(703) 623-3767

R- 871

21

## CERTIFICATE OF SERVICE

I hereby certify that on June 20  2025, Plaintiff Feras Hindi, Plaintiff Tala & Plaintiff Samiha will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Motion Leave to Amend Motion to Stay

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Email

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark  **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Email and mail

Submitted,

June 20 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767

R- 872

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SAMIHA AYYASH, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  1:24-cv-3434-ACR** |
| | ) | |
| **GULF AIR B.S.C. et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**AMERICAN AIRLINES INC.'S REPLY BRIEF IN FURTHER SUPPORT
OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND
OPPOSITION TO PLAITNIFFS' MOTION FOR LEAVE TO CONDCUT DISCOVERY**

Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Inc.*

R- 873

USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 874 of 971

On June 12, 2025, Plaintiff submitted a joint Motion for Leave to Conduct Discovery Limited to the Issue of Personal Jurisdiction. (Dkt. 54.)  As best as can be discerned, despite its title, that filing, in addition to seeking jurisdictional discovery, was Plaintiffs' attempt at an opposition to American Airlines' previously filed Motion to Dismiss. (Dkt. 42.)  For the reasons stated below and in its initial filing, the Motion to Dismiss should be granted, and the request for discovery should be denied.

## PROCEDURAL HISTORY

1.      The Court set a briefing schedule on American Airlines' Motion to Dismiss with the following deadlines: Motion by April 18; Opposition by May 16; and Reply by June 6.  (*See* March 28, 2025 Minute Order.)

2.      American Airlines filed its Motion and Memorandum in Support on April 17. (Dkt. 42.)

3.      On May 13, Plaintiffs filed a Motion for an Extension of Time, which requested to delay the deadline for the Opposition until June 12.  (Dkt. 45.)  The Court granted that request. (May 19, 2025 Minute Order.)

4.      Following the Court's granting of the extension, Plaintiffs made numerous filings before the June 12 deadline ‾ none of which appeared to respond to American Airlines' Motion to Dismiss.  (*See* Dkt. Nos. 46, 47, 48, 49, 50, 51.)

5.      On June 12, Plaintiffs filed a Motion for Leave to Conduct Discovery Limited to the Issue of Personal Jurisdiction.  (Dkt. 54.)  Although nominally titled as a motion requesting jurisdictional discovery, the nearly 50-page memorandum appears to also be an attempt to oppose American Airlines' Motion to Dismiss.  Consequently, American Airlines provides this brief both

R- 874

as its reply in response to that opposition as well as its opposition to the request for jurisdictional discovery.

## ARGUMENT

In its opening brief, American Airlines demonstrated that, even assuming the allegations in the Amended Complaint were accurate, this Court lacks personal jurisdiction over American Airlines, as there is neither general nor specific jurisdiction.  As explained below, nothing in Plaintiffs' filing alters that result.

**A.    The Court does not have general jurisdiction over American Airlines, and general jurisdictional discovery is not warranted.**

As previously noted, the Court can only exercise general jurisdiction over defendants who are "at home" in the jurisdiction.  *Daimler AG v. Bauman*, 571 U.S. 117, 120 (2014).  This is an extraordinarily high standard, as "even demonstrating a 'substantial, continuous, and systematic course of business' in the forum is not enough" to establish a that corporate entity is at home. *Huynh v. Air Canada*, 2025 WL 522053, at *2 (D.D.C. 2025).  The Supreme Court has made clear that outside of extremely unusual circumstances, corporate entities are only at home in the jurisdictions where those entities are either incorporated or where they have their principal place of business.  *Daimler*, 571 U.S. at 137-138.  The parties are in agreement that American Airlines is neither incorporated in D.C. nor does it have its principal place of business in D.C.  (*See, e.g.,* Dkt. 2 at 7 of 123, ¶ III.)

As best as can be discerned, Plaintiffs argue this matter represents an "exceptional case" where jurisdiction over American Airlines can be exercised outside of the place of incorporation or principal place of business.  (*See* Dkt. 54-1 at 45-47.)  This is deeply mistaken.

R- 875

The only exception to the ordinary general jurisdiction rule that the Supreme Court has recognized was in the case of *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952). As summarized in *Daimler*:

> The defendant in *Perkins*, Benguet, was a company incorporated under the laws of the Philippines, where it operated gold and silver mines. Benguet ceased its mining operations during the Japanese occupation of the Philippines in World War II; its president moved to Ohio, where he kept an office, maintained the company's files, and oversaw the company's activities. . . We held that the Ohio courts could exercise general jurisdiction over Benguet . . . because "Ohio was the corporation's principal, if temporary, place of business."

*Daimler*, 571 U.S. at 129. In other words, general jurisdiction was permitted in that case only because the actual principal place of business had been shut down due to World War II, and Ohio had become the temporary principal place of business for the company. *See id.* Plaintiffs have not alleged, and could not do so in good faith, that American Airlines has shut down its principal place of business in Texas and temporarily relocated its headquarters to D.C. Consequently, there is simply no basis for suggesting there is general jurisdiction.

As best as can be discerned, Plaintiffs' argument for general jurisdiction is based on the fact the company has offices in D.C., is registered to do business in D.C., engages in lobbying the federal government, and operates at Reagan National Airport[1]. However, these are all ordinary business activities, none of which render a corporation "at home." Recently, in *Huynh*, the court rejected a similar claim by a *pro se* litigant arguing for general jurisdiction over Air Canada

---

[1] Reagan National Airport is not located in the District. *See, e.g., Bryan v. Dist. Unemployment Comp. Bd.*, 342 A.2d 45, 47 (D.C. 1975) ("Washington National Airport is within the boundaries of the Commonwealth of Virginia and not within those of the District of Columbia."); *Pfister v. Dir., Off. of Workers' Comp. Programs, U. S. Dep't of Lab.*, 675 F.2d 1314, 1315 (D.C. Cir. 1982); *Powell v. Am. Airlines, Inc.*, 2018 WL 2324087, at *2 (D.D.C. 2018) ("Although National Airport primarily serves Washington, D.C., it is located in the Commonwealth of Virginia."); *Doe v. Benoit*, 2020 WL 11885578, at *5 (D.D.C. 2020).

R- 876

because that airline served D.C. customers and interacted with regulators in D.C.  2025 WL 522053 at *3.  In finding such an argument contrary to Supreme Court precedent, the court stated:

> If this Court were to hold that it possesses general jurisdiction over Air Canada based on the factors adduced by Huynh, it would follow that most major airlines operating in the United States are "at home" in the District— and could therefore be sued here for any claim whatsoever, no matter how remote. Unsurprisingly, other courts in this District have roundly rejected this hypothesis.

*Id.*  Because American Airlines is in the same position as Air Canada, the Court lacks general jurisdiction.  In fact, as noted in *Huynh*, on multiple previous occasions, courts in the District have specifically held that American Airlines is not at home in D.C. and not subject to general jurisdiction.  *See*, *Crear v. Am. Airlines Grp.*, 2025 WL 35931, at *3 (D.D.C. 2025); *Mvuri v. Am. Airlines Inc.*, 2018 WL 10733604, at *1 (D.D.C. 2018).  The Court should reach the same conclusion in this matter.

Moreover, to the extent Plaintiffs are requesting jurisdictional discovery related to general jurisdiction, that request should be rejected.  Jurisdictional discovery is not appropriate when it would be futile or if it is sought for a "fishing expedition."  *See Lewis v. Mutond*, 62 F.4th 587, 596 (D.C. Cir. 2023).  Moreover, a plaintiff must have a good faith basis for believing that discovery will lead to jurisdiction.  *Id.*

"Common sense counsels that a plaintiff seeking jurisdictional discovery in hopes of proving general jurisdiction in a forum where the defendant is neither headquartered nor incorporated must provide the Court with some credible grounds to believe that the extraordinary factual basis for such jurisdiction actually exists."  *Huynh*, 2025 WL 522053 at *6 FN 9.  Because there is no good faith or credible reason to believe that jurisdictional discovery would demonstrate that American Airlines' contacts are similar to the contacts in *Perkins*, Plaintiffs' request for jurisdictional discovery related to general jurisdiction should be denied.

R- 877

**B.      The Court lacks specific jurisdiction over American Airlines, and jurisdictional discovery is not warranted.**

As previously stated, to exercise specific jurisdiction, the claim must arise out of the defendant's purposeful contacts with the forum.  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  Connections to a claim that are only tangential do not create jurisdiction.  *See id.* at 288-289.  Because specific jurisdiction only exists when the legal claim arises out of the defendant's contacts, such jurisdiction can only be evaluated on a claim-by-claim basis.  *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 175 (D.D.C. 2018).  Despite this principle being clearly laid out in American Airlines' opening brief (Dkt. 42-1 at 5-8), in their opposition, Plaintiffs do not seem to address the claims individually.  (*See* Dkt. 54-1 at 41.)  Regardless, Plaintiffs have not alleged sufficient facts that would demonstrate any of the three claims have a substantial connection to D.C., or that jurisdictional discovery would be fruitful.

1.      Plaintiffs' Negligence and Negligence *per se* Claims have No Connection to D.C. and Must be Dismissed.

As previously noted, in Count 3, Plaintiffs assert a claim that American Airlines was negligent in its performance of a safety audit of Gulf Air, which (somehow) led to Capt. Alhindi's death.  (Dkt. 2 at 109 of 123, ¶ 638.)  Likewise, in Count 5, Plaintiffs allege that American Airlines was negligent in failing to audit Gulf Air.  As explained in that brief, neither count has any connection to D.C. because (i) Capt. Alhindi's heart attack and subsequent death occurred in Bangladesh  (*id.* at 10 of 123, ¶¶ 3-4); and (ii) any audit of Gulf Air would have taken place in Bahrain, where the airline is headquartered and has its principal operations (*id.* at 7 of 123 ¶ II) and Plaintiffs have not alleged (and cannot allege) that any audit took place in D.C.  Consequently, these claims do not arise out of American Airlines' contacts with D.C. and must be dismissed for lack of jurisdiction.

R- 878

Additionally, there is no good faith basis for believing any jurisdictional discovery would alter the above analysis.  Discovery will not alter the location of Capt. Alhindi's death, or the location of Gulf Air's headquarters.  Therefore, discovery as to these claims should be denied.

2.    The Constructive Fraud Claim Lacks a Substantial Connection to D.C.

Plaintiffs' final claim against American Airlines in Count 6, alleging that it committed constructive fraud "by failing to audit Gulf Air's practices and certifying compliance with FAA/DOT standards despite evidence of systemic deficiencies" (Dkt. 2, 116 of 123, ¶ 679), must also be dismissed.  As previously noted, Plaintiffs have pled that the allegedly fraudulent certifications were prepared, reviewed, and electronically submitted to the FAA in Fort Worth, Texas.  (*Id.*, 90 of 123, ¶ 526.)  The only connection to the District identified in the Amended Complaint seems to be the allegation that the FAA received the submissions in D.C.  (*See id.*)  As previously noted, even if accepted as true, this is not the type of "substantial" connection required to establish specific jurisdiction, as the audit was performed outside the country, the certifications were prepared in Texas, and the death occurred in Bangladesh.  *See United States v. Ferrara*, 54 F.3d 825, 831 (D.C. Cir. 1995) (letter to Department of Justice was not substantial connection to D.C.).

More importantly, such contact with D.C. was clearly not "the defendant's own choice," and therefore cannot constitute American Airlines "purposefully avail[ing] itself of the privilege of conducting activities within" D.C.

Consistent with this principle, courts in the District have consistently held that contacts with federal agencies are excluded from jurisdictional analysis.  *E.g., id.* 54 F.3d at 831; *Savage v. Bioport, Inc.*, 460 F. Supp. 2d 55, 62 (D.D.C. 2006).  This exclusion rule has been broadly applied to cover communications with federal agencies.  *See, e.g., id.* (lobbying Department of Defense

R- 879

not counted for jurisdictional analysis); *Alkanani v. Aegis Def. Servs.*, LLC, 976 F. Supp. 2d 13, 25 (D.D.C. 2014) (negotiation of contract not counted);*Robo-Team NA, Inc. v. Endeavor Robotics*, 313 F. Supp. 3d 19, 24-26 (D.D.C. 2018) (bidding and performing government contracts and lobbying Congress excluded from specific jurisdiction analysis); *Huynh*, 2025 WL 522053 at *4 (interactions with regulators at FAA "could not form the basis for the exercise of specific jurisdiction"). Because American Airlines' interactions with the FAA cannot be counted in the jurisdictional analysis and there is no other relevant connection, the constructive fraud claim must be dismissed as well.

Additionally, jurisdictional discovery on this claim should be denied as well. Again, Plaintiffs lack a good faith basis that any discovery would alter the above analysis. *See, e.g., Huynh*, 2025 WL 522053 at *6.

## CONCLUSION

For the reasons stated above, each of Plaintiffs' claims against American Airlines should be dismissed for lack of personal jurisdiction, and the request for discovery should be denied.

Dated: June 26, 2025                         Respectfully submitted,

                                              /s/ Micah E. Ticatch
                                             Micah E. Ticatch, DC Bar No. 1005398
                                             ISLER DARE, P.C.
                                             1945 Old Gallows Road, Suite 650
                                             Vienna, Virginia 22182
                                             (703) 748-2690
                                             (703) 748-2695 (fax)
                                             mticatch@islerdare.com

                                             *Counsel for American Airlines Inc.*

7

R- 880

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of June 2025 I will serve a copy of the foregoing via

first class mail upon the following:

Tala Josephano
615 Catalina Ave, #233
Redondo Beach, CA 90277
*Pro Se Plaintiff*

Samiha Ayyash
7823 New London Dr,
Springfield, Fairfax
VA 22153
703-980-6955
*Pro Se Plaintiff*

Feras Hindi
7823 New London Dr,
Springfield, Fairfax
VA 22153
703-980-6955
*Pro Se Plaintiff*

      /s/ Micah E. Ticatch
Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Inc.*

R- 881

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAMIHA AYYASH, *et al.*,        ) | |
|         ) | |
|    Plaintiffs,       ) | |
|         ) | Case No. 1:24-cv-03434-ACR |
| v.         ) | |
|         ) | |
| GULF AIR B.S.C. (C), *et al.*,    ) | |
|         ) | |
|    Defendants.      ) | |
|         ) | |

## DEFENDANT GULF AIR B.S.C. (C)'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY

Gulf Air B.S.C. (c) ("Gulf Air") submits its Opposition to Plaintiffs Tala Josephano's, Samiha Ayyash's, and Feras Hindi's (hereinafter, "Plaintiffs") Motion for Leave to Conduct Jurisdictional Discovery (hereinafter, "Motion") (Dkt. 55), and in support thereof, Gulf Air respectfully states as follows:

### INTRODUCTION

Despite receiving an additional thirty (30) days to respond to Gulf Air's Motion to Dismiss Plaintiffs' Amended Complaint Under Rules 12(b)(2), 12(b)(1) and 12(b)(5) ("Motion to Dismiss") (Dkt. 43), *see* May 19, 2025 Minute Order, Plaintiffs failed to file a response by the June 12, 2025 deadline. Instead, on the day their response was due, Plaintiffs filed the instant Motion in which they request leave to serve Gulf Air with expansive and wide-reaching discovery under the guise that such information and/or documentation is necessary to oppose Gulf Air's Motion to Dismiss. However, not only is the information and documentation that Plaintiffs seek irrelevant to the Court's jurisdictional analysis, but Plaintiffs have failed to meet their burden to justify subjecting Gulf Air to invasive and incredibly burdensome "jurisdictional discovery."

R- 882

Further, although Plaintiffs contend that they are disadvantaged by a lack of discovery, they simultaneously present "evidence" that they assert establishes "a prima facie basis" for this Court to exercise jurisdiction over Gulf Air, thereby refuting their own claim that jurisdictional discovery is needed. It is clear, therefore, that the Motion is nothing more than another transparent attempt by Plaintiffs to further delay adjudication of Gulf Air's Motion to Dismiss, and as a result, it should be denied.

## ARGUMENT

**I.    PLAINTIFFS HAVE FAILED TO SHOW ANY BASIS FOR PERSONAL JURISDICTION OVER GULF AIR AND JURISDICTIONAL DISCOVERY IS THEREFORE NOT WARRANTED.**

To overcome a motion to dismiss for lack of personal jurisdiction, the "general rule is that a plaintiff must make a prima facie showing of the pertinent jurisdictional facts." *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988). In order to make the requisite showing, a plaintiff must allege specific acts connecting the defendant with the forum State, and bare allegations are insufficient. *Id.* at 1378-79. Further, conclusory statements "do not constitute the prima facie showing necessary to carry the burden of establishing personal jurisdiction." *Id.* at 1378.

Before a plaintiff can obtain jurisdictional discovery, it must "demonstrate[ ] that it can supplement its jurisdictional allegations through discovery." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000). "If the plaintiff has provided statements too bare to support an inference of jurisdiction, responded to a defendant's affidavit with speculative or a complete absence of jurisdictional facts, or fails to make counter-allegations in its own affidavit, denial of discovery is not an abuse of discretion." *Bancoult v. McNamara*, 214 F.R.D. 5, 10 (D.D.C. 2003); *see also Edmond v. U.S. Postal Serv. Gen. Couns.*, 949 F.2d 415, 425

2

R- 883

(D.C. Cir. 1991) (noting that jurisdictional allegations may be denied when plaintiffs' allegations are conclusory).

Plaintiffs have not made the requisite showing that jurisdictional discovery is warranted. First and foremost, the Amended Complaint does not present any pertinent jurisdictional facts that could be augmented through discovery. Further, the grounds asserted by Plaintiffs that purport to establish a "prima facie basis for jurisdiction" are speculative and premised on incorrect legal arguments. Thus, Plaintiffs have failed to demonstrate that they will be able to supplement their jurisdictional arguments through the discovery that they seek.

For example, Plaintiffs erroneously assert that personal jurisdiction over Gulf Air is proper pursuant to Federal Rule of Civil Procedure 4(k)(2). Motion at 9-10. However, Rule 4(k)(2) does not apply because Plaintiffs' claims do not arise under federal law. *See, e.g., Mwani v. bin Laden*, 417 F.3d 1, 10 (D.C. Cir. 2005) (finding that Rule 4(k)(2) "permits a federal court to exercise personal jurisdiction over a defendant (1) *for a claim arising under federal law*, (2) where a summons has been served, (3) if the defendant is not subject to the jurisdiction of any single state court, (4) provided that the exercise of federal jurisdiction is consistent with the Constitution . . .") (citing Fed. R. Civ. P. 4(k)(2)). The Supreme Court has made clear that "a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton,* 568 U.S. 251, 257 (2013); *see also American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916) ("A suit arises under the law that creates the cause of action").

The Amended Complaint asserts diversity jurisdiction as the sole basis for this Court's subject matter jurisdiction. *See* Amend. Compl. at 2 (Dkt. 2). More importantly, the causes of action asserted in the Amended Complaint clearly arise under state tort law. Plaintiffs' assertion that their claims "implicate federal policies and aviation safety regulations - satisfying the federal

3

R- 884

question requirement," Motion at 6-7,[1] is insufficient to establish that their claims arise under

federal law.  *See Gunn*, 568 U.S. 251, 257 (2013).[2]  Accordingly, Plaintiffs' argument that the

Court may exercise personal jurisdiction over Gulf Air under Rule 4(k)(2) must be rejected and

their requests for discovery related to Gulf Air's compliance with federal policies and aviation

safety regulations is irrelevant to the Court's jurisdictional analysis.[3]

Plaintiffs also argue that specific personal jurisdiction can be established pursuant to D.C.

Code § 13-423(a)(1), the District of Columbia's long arm statute.  Motion at 16-17.[4]  As Gulf Air

explained in its Motion to Dismiss, Plaintiffs cannot rely on the District's long arm statute, which

is coextensive with constitutional Due Process, to establish personal jurisdiction over Gulf Air in

this case.  *See* Motion to Dismiss (Dkt. 43-1, 8-17) (citing *Shoppers Food Warehouse* v. *Moreno*,

---

[1] Plaintiffs lack a private right of action to enforce federal aviation regulations, including those of the Department of Transportation. *See Buck v. Am. Airlines*, Inc., 476 F.3d 29, 33 (1st Cir. 2007) ("Regulations alone cannot create private rights of action; the source of the right must be a statute.") (citing *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001)).

[2] Plaintiffs also cannot satisfy the alternative, and exceedingly rare *Grable* test for federal question jurisdiction, whereby "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258. Furthermore, Congress has reserved enforcement of the "U.S. aviation safety standards" to which Plaintiffs refer and upon which they insist that their state law claims are based (*see* Motion at 7), to the experts within the applicable federal agencies.  *See, e.g.*, *Daversa-Evdyriadis v. Norwegian Air Shuttle ASA*, No. EDCV 20-767-JGB(SPX), 2020 WL 5625740, at \*5 (C.D. Cal. Sept. 17, 2020) (recognizing that "air travel is a carefully regulated field preempted by federal law").

[3] *See* Motion at 22 (requesting production of "Financial and Regulatory Records Submitted to DOT 2024 To establish Gulf Air's commercial benefit and regulatory interactions with D.C. - based federal agencies, including all filings, certifications, and correspondence" and production of "Codeshare Agreements and Renewals signed with American Airlines Inc. Including all communications to establish if DC is consented to forum and compliance requirements.") (capitalization in original).

[4] Plaintiffs appear to concede that they are not making an argument based on general personal jurisdiction.  S*ee* Motion at 10 ("Accordingly, Gulf Air is not subject to the general jurisdiction of any state court" . . .).

R- 885

746 A.2d 320, 329 (D.C. 2000) (en banc)).  According to Plaintiffs' Motion, Gulf Air transacted business in the District because Gulf Air generated substantial revenue from ticket sales and codeshare flights with U.S. partners through "its website and online distributors . . . which are accessible to and used by D.C. residents."  Motion at 16.

While Plaintiffs' Motion does not identify any basis for these blanket statements, such claims, even if true, do not support the exercise of specific jurisdiction or warrant jurisdictional discovery as to any alleged ticket sales to D.C. residents.  First, "the mere accessibility of a website in the District is insufficient to establish minimum contacts." *Toumazou v. Turkish Republic of N. Cyprus*, 71 F.Supp.3d at 17.  Indeed, this "is not purposeful availment; rather, it is merely an unavoidable side-effect of modern internet technology."  *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 121 (D.D.C. 2005).

Second, as courts have noted, "under the District's long-arm statute, not all business in the District creates personal jurisdiction—the plaintiff's claims must have arisen from that business." *Doe v. Benoit*, No. 19-CV-1253 (DLF), 2020 WL 11885578, at *5 (D.D.C. June 29, 2020) (citing D.C. Code § 13-423(a)(1)).  Plaintiffs do not, and cannot argue that their wrongful death and negligence-based claims arise from any purported ticket sales between D.C. residents and Gulf Air.  As a result, their request for discovery related to this topic is not warranted and should be denied.

Plaintiffs further assert, in a conclusory fashion, that "misuse of the regulatory process in D.C." including Gulf Air's Department of Transportation ("DOT") certifications, regulatory filings, codeshare operations and use of distributors and U.S. airlines, is the "direct nexus between Gulf Air's conduct and the harm suffered . . ."  Motion at 18.  These claims, while unexplained and conspiratorial, cannot legally support the Court's exercise of specific jurisdiction over Gulf

5

R- 886

Air. *See, e.g.*, *Huynh v. Air Canada*, No. 1:24-CV-476-RCL, 2025 WL 522053, at \*4 (D.D.C. Feb. 18, 2025) (rejecting argument that foreign airline's interactions with federal regulators and the approval to operate flights in the U.S. led to passenger's injury as "far too attenuated to give rise to specific jurisdiction"). Gulf Air's interactions with federal agencies fall under the government contacts exception and cannot provide the jurisdictional prerequisite for this additional reason. This exception "precludes the assertion of personal jurisdiction over a nonresident whose only contact with the District of Columbia is with Congress or a federal agency." *Brunson v. Kalil*, 404 F. Supp. 2d 221, 235 (D.D.C. 2005) (citation omitted). As the *Huynh* court recently explained, "the core purpose of the government contacts exception is to prevent D.C. courts from exercising unbounded personal jurisdiction predicated solely on the performance of activities 'which can only be accomplished in Washington,' such as dealing with regulators." *Huynh*, 2025 WL 522053, at \*5 (D.D.C. Feb. 18, 2025) (citing *Inv. Co. Inst. v. United States,* 550 F. Supp. 1213, 1217 (D.D.C. 1982)).[5]

As a result, Gulf Air's contacts with DOT (and/or the Federal Aviation Administration "FAA") do not constitute "transacting business" under § 13-423(a)(1). More importantly, Plaintiffs' claims do not arise from Gulf Air's contacts with either DOT or FAA. Therefore, Gulf

---

[5] Plaintiffs also argue, in conclusory fashion, that Gulf Air's "fraudulent conduct" directed at federal agencies satisfies the fraud-based exception to the government contacts doctrine. Motion at 19-21. However, the fraud exception only applies when a person "uses the government as an instrumentality of fraud and thereby causes unwanted government action against another." *Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.*, 34 ITRD 1017, 35 A.3d 1127, 1134 (2012) (internal citation omitted). Plaintiffs cannot invoke the fraud exception because they fail to identify any unwanted government action or harm.

R- 887

Air's interactions with federal regulatory agencies cannot serve as the basis for personal jurisdiction in this matter.[6]

The Amended Complaint, therefore, "fails to establish the requisite triple-nexus between 'the defendant, the forum, and the litigation.'" *Huynh*, 2025 WL 522053, at *4 (D.D.C. Feb. 18, 2025) (quoting *Walden v. Fio*re, 571 U.S. 277, 284 (2014)). Plaintiffs refer to "proffered evidence" and an "existing factual basis" supporting the Court's exercise of personal jurisdiction, but their Motion does not cite to any allegations in their Amended Complaint, nor have Plaintiffs pled any pertinent allegations capable of meeting their burden to establish personal jurisdiction. *See, e.g.,* Motion at 9; *see also Savage v. Bioport, Inc.*, 460 F. Supp. 2d 55, 62 (D.D.C. 2006) ("[I]t is reasonable for a court . . . to expect the plaintiff to show a colorable basis for jurisdiction before subjecting the defendant to intrusive and burdensome discovery.") (quoting *Caribbean*, 148 F.3d at 1090). Accordingly, Plaintiffs have failed to demonstrate that they can supplement their jurisdictional allegations through discovery, and therefore, jurisdictional discovery is not warranted. *Savage,* 460 F. Supp. 2d at 63 (finding that "specific jurisdiction could not be supplemented by discovery" because plaintiff failed to allege "how any of the contacts relate to or arise out of the claim").

The case law cited by Plaintiffs in their Motion does not support their arguments that discovery is warranted in this case, as the facts of those cases are clearly distinguishable. *See*

---

[6] Plaintiffs' citation to *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021) does not support their argument in this regard. In that case, the Supreme Court recognized that specific jurisdiction was satisfied when a car manufacturer advertised, sold, and serviced the same car model to the forum state that caused injury thereto – even though the particular car involved in the crash was not first sold in the forum state. *Id.* at 363. Therefore, the manufacturer's contact with the forum were not attenuated, whereas in this case, any purported revenue received from alleged ticket sales to D.C. residents is too far attenuated from any facts purporting to give rise to Plaintiffs' claims.

R- 888

Motion at 8.  For example, in *Edmond*, the court found that jurisdictional discovery should have been granted because the plaintiff in that case had specifically alleged (1) the existence of a conspiracy, (2) the nonresident's participation, and (3) an injury-causing act of the conspiracy within the forum's boundaries." *Edmond*, 949 F.2d 415 at 425.  That is simply not the case here as there is no connection between the Plaintiffs' alleged injuries and the District.  Moreover, in both *Crane* and *El–Fadl*, the plaintiffs sought to supplement plausible allegations with properly targeted jurisdictional discovery.  *See El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996); *Crane v. Carr*, 814 F.2d 758, 761–62 (D.C. Cir. 1987).  As explained herein and in Defendants' Motion to Dismiss, Plaintiffs' jurisdictional arguments are not plausible and thus cannot be supplemented with jurisdictional discovery.

Additionally, Plaintiffs' jurisdictional discovery requests are irrelevant and would not aid the Court in determining whether jurisdiction exists.  *See* Motion at 21-23; *see also Roz Trading Ltd v. Zeromax Grp., Inc.*, 517 F. Supp. 2d 377, 389 (D.D.C. 2007) (denying request for jurisdictional discovery when discovery sought "would not affect the jurisdictional outcome in [the] case").  Plaintiffs do not and cannot explain how the numerous financial and regulatory documents (including repeated requests regarding codeshare agreements) they seek could establish personal jurisdiction in this case.  Plaintiffs' request for jurisdictional discovery, therefore, amounts to nothing more than a "fishing expedition."  *See Bastin v. Fed. Nat'l Mortg. Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir. 1997).  The Motion should be denied.

## II.    PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY BASED ON SUBJECT MATTER JURISDICTION OR THEIR IMPROPER ATTEMPTS TO SERVE LEGAL PROCESS

Plaintiffs argue that they are entitled to depose certain individuals from Gulf Air and undersigned counsel's law firm in order to establish, primarily, their claims as to the Decedent's

R- 889

domicile(s) and to confirm that service of process was proper. *See* Motion at 21. However, their arguments are unavailing and do not support the discovery they seek.

To begin with, Plaintiffs appear to misconstrue a limited waiver of "sovereign immunity, for the purposes of 28 U.S.C. 1605(a)" as being equivalent to a blanket concession that Gulf Air "has subjected itself to the jurisdiction of U.S. courts, including the District of Columbia." Motion at 11-12. Plaintiffs' interpretation is incorrect and inconsistent with the plain language of the limited waiver cited in their Motion. Motion at 11. Plaintiffs' arguments are also irrelevant because Gulf Air has not asserted foreign sovereign immunity as a bar to subject matter jurisdiction in this case. Plaintiffs' request for discovery of facts purportedly related to a defense that has not been raised is nothing more than a fishing expedition.

Plaintiffs have also presented no basis to depose Captain Qasim Ghuloom Ismaeel regarding the Decedent's domicile or "whether [the decedent's final flight] was subject to DOT regulation or a codeshare agreement."[7] Motion at 21. Indeed, Plaintiffs are immediate family members of the Decedent with access to the "evidence" related to his domicile, as demonstrated by the fact that they have already proffered their own exhibits in attempt to establish that the Decedent was not a foreign domiciliary. *See*, *generally*, Exhibits to Motion to Strike Defendant Gulf Air's Exhibit A (Dkt. 47-2). Plaintiffs, therefore, do not need any discovery from Gulf Air on this issue. But even if Plaintiffs could somehow show that the Decedent was domiciled in Illinois at the time of his death, the Court would *still lack* subject matter jurisdiction over Plaintiffs' claims since Plaintiffs do not have standing to assert wrongful death and survivorship claims. *See Henson v. W.H.H. Trice and Co.*, 466 F.Supp.2d 187, 192 (D.D.C. 2006).

---

[7] For the reasons stated above, Gulf Air's contacts with the DOT, including with respect to any codeshare agreement, are irrelevant to the jurisdictional analysis as such contacts cannot confer personal jurisdiction over Gulf Air.

R- 890

The Motion also unnecessarily and improperly seeks leave to depose personnel with undersigned counsel's law firm, including attorney Evelyn Sahr and administrative personnel Gene Gray, in an effort to establish that Gulf Air was properly served, thereby defeating the Rule 12(b)(5) arguments raised in the Motion to Dismiss. *See* Motion at 21. The deposition of Ms. Sahr is unnecessary and not justified under the circumstances, as she has already submitted a sworn declaration that she is not authorized to accept service of process in actions in state and federal courts on behalf of Gulf Air (*See* E. Sahr Declaration at ¶¶ 5, 7 (Dkt. 43-3)) and Plaintiffs have not presented any evidence to rebut her statements in this regard. Instead, they incorrectly assert that "Ms. Evelyn didn't declare she doesn't accept services for other Gulf Air's matters." Motion at 21. Recasting Ms. Sahr's clear and unequivocal statement as a double negative does not entitle Plaintiffs to discovery; Ms. Sahr is not an authorized agent for service of process.

Mr. Gray is the individual who, without knowing the specific contents, signed for the package that was delivered to Ms. Sahr's office. However, by simply signing for a package on behalf of Ms. Sahr, Mr. Gray could not have been deemed to have accepted service of process on behalf of Gulf Air because Ms. Sahr herself was not authorized to accept service. Moreover, even assuming *arguendo* that service was proper (which Gulf Air does not concede), that does not impact or otherwise affect Gulf Air's meritorious arguments under Rule 12(b)(2). As a result, permitting Plaintiffs to conduct jurisdictional discovery on matters related to service of process would be a futile exercise and a waste of the time and resources of the Court and the parties.

Thus, there are no grounds to support Plaintiffs' request to depose these individuals, and the Motion should be denied.

R- 891

**CONCLUSION**

For the reasons stated herein, Plaintiffs have failed to make the requisite showing that jurisdictional discovery is warranted in this case. Defendant, Gulf Air B.S.C. (c), therefore, respectfully requests that the Court deny Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery and grant Gulf Air such other and further relief as the Court deems just and proper.

Dated: June 26, 2025

Respectfully Submitted,

**ECKERT SEAMANS CHERIN
 & MELLOTT, LLC**

*/s/ Mark A. Johnston*
Mark A. Johnston, Esq.
D.C. Bar No. 455764
Darcy C. Osta, Esq.
D.C. Bar No. 1686937
1717 Pennsylvania Ave., N.W.,
Suite 1200
Washington, D.C. 20006
(202) 659-6600
dosta@eckertseamans.com
mjohnston@eckertseamans.com

*Counsel for Gulf Air B.S.C. (c)*

R- 892

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2025, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF filing system, which will serve an electronic copy on all counsel of

record, and I will also serve a copy of the foregoing via USPS first class mail upon the following:

Tala Josephano
615 Catalina Avenue, #233
Redondo Beach, CA 90277
*Pro Se Plaintiff*

Samiha Ayyash
Feras Hindi
7823 New London Drive
Springfield, VA 22153
*Pro Se Plaintiffs*

*/s/ Mark A. Johnston*
Mark A. Johnston

R- 893

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SAMIHA AYYASH, *et al.*,                )
                                        )
    Plaintiffs,                         )
                                        )
                              )     Case No. 1:24-cv-03434-ACR
v.                                      )
                                        )
GULF AIR B.S.C. (C), *et al.*,          )
                                        )
    Defendants.                         )
_____       )

### DEFENDANT GULF AIR B.S.C. (C)'S OPPOSITION TO PLAINTIFF TALA JOSEPHANO'S MOTION FOR LEAVE TO FILE EMERGENCY MOTION FOR PROTECTIVE ORDER, STAY AND REQUEST FOR HEARING

Defendant, Gulf Air B.S.C. (c) ("Gulf Air") submits its Opposition to Tala Josephano's ("Plaintiff Josephano" or "Plaintiff") Motion for Leave to File Emergency Motion for Protective Order, Stay on Deadlines and Request for Hearing (hereinafter, "Plaintiff's Motion," "Motion for Leave" or "Motion") (Dkt. 56).  In support thereof, Gulf Air respectfully states as follows:

On May 28, 2025, Plaintiff Josephano filed an Emergency Motion for Protective Order and Request for In Camera Hearing Due to Harassment and Safety Threats by Defendant Gulf Air, the Jordanian Government on Behalf of King Abdullah, Prince Suleiman the Real Owner of Gulf Air B.S.C., and Individuals Assisting them within the U.S. Government ("Motion for Protective Order") (Dkt. 46).  Gulf Air filed its Opposition on June 10, 2025, wherein it requested that the Court strike Plaintiff Josephano's Motion for Protective Order because it was filed without leave of Court in violation of the Court's March 26, 2025 Order.  Gulf Air further opposed the Motion for Protective Order on the grounds that Plaintiff Josephano had failed to put forth sufficient facts establishing a good cause basis for her request for a protective order.  *See* Gulf Air's Opposition to Plaintiff Josephano's Motion for Protective Order (Dkt. 52).

R- 894

Plaintiff Josephano now seeks leave to refile her Motion for Protective Order and further requests a stay of all deadlines, including the deadline for Plaintiffs to respond to Gulf Air's pending Motion to Dismiss Plaintiffs' Amended Complaint Under Rules 12(b)(2), 12(b)(1) and 12(b)(5) ("Motion to Dismiss") (Dkt. 43), which has long since passed, until the Court rules on Plaintiffs' recent flurry of filings. Motion for Leave at 15.

For the reasons articulated in Gulf Air's Opposition to Plaintiff Josephano's Motion for Protective Order (Dkt. 52), Gulf Air's Opposition to Plaintiffs' Emergency Motion to Stay Proceedings (Dkt. 57) and Gulf Air's Opposition to Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery (Dkt. 62) (collectively referred to as "Defendants' Oppositions") which Gulf Air incorporates as if set forth fully herein, the Motion for Leave should be denied. Plaintiff Josephano has failed to meet her burden to justify the entry of a protective order or to obtain a stay as she has not provided any specific evidence to support her claims of threats, intimidation and harassment by Gulf Air. Motion for Leave at 6-11. Indeed, the Motion for Leave focuses almost exclusively on actions purportedly attributable to the Jordanian government, which is not a party to this case, and Plaintiff Josephano has provided no credible link between Gulf Air and the actions alleged to have been taken by King Abdullah and Queen Rania against her in the context of this litigation. Bare boned allegations that the Jordanian government is acting for purposes of assisting Gulf Air, with no further explanation or evidentiary support, are insufficient as a matter of law to award Plaintiff Josephano the relief she seeks. *See*, *e.g.*, *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 21 (D.D.C.) (finding that the only way to establish good cause under Rule 26(c) is "by demonstrating the specific evidence of the harm that would result.") (quoting *Jennings v. Family Management*, 201 F.R.D. 272, 275 (D.D.C. 2001)).

2

R- 895

For the foregoing reasons, as well as those set forth in Defendants' Oppositions (Dkts. 52, 57, and 62), Defendant Gulf Air B.S.C. (c) respectfully requests that the Court deny Plaintiff's Motion for Leave to File Emergency Motion for Protective Order, Stay on Deadlines and Request for Hearing and grant Gulf Air B.S.C. (c) such other relief as it deems just and proper.

Dated: June 27, 2025

Respectfully Submitted,

**ECKERT SEAMANS CHERIN
& MELLOTT, LLC**

*/s/ Mark A. Johnston*
Mark A. Johnston, Esq.
D.C. Bar No. 455764
Darcy C. Osta, Esq.
D.C. Bar No. 1686937
1717 Pennsylvania Ave., N.W.,
Suite 1200
Washington, D.C. 20006
(202) 659-6600
dosta@eckertseamans.com
mjohnston@eckertseamans.com

*Counsel for Gulf Air B.S.C. (c)*

3

R- 896

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2025, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF filing system, which will serve an electronic copy on all

counsel of record, and I will also serve a copy of the foregoing via USPS first class mail upon the

following:

Tala Josephano
615 Catalina Avenue, #233
Redondo Beach, CA 90277
*Pro Se Plaintiff*

Samiha Ayyash
Feras Hindi
7823 New London Drive, #233
Springfield, VA 22153
*Pro Se Plaintiffs*

*/s/ Mark A. Johnston*
Mark A. Johnston

R- 897

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAMIHA AYYASH, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 1:24-cv-03434-ACR |
| v. ) | |
| ) | |
| GULF AIR B.S.C. (C), *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**DEFENDANT GULF AIR B.S.C. (C)'S OPPOSITION TO PLAINTIFFS' MOTION FOR
LEAVE TO FILE AMENDED MOTION TO STAY PROCEEDINGS (ECF No. 49), AND
REQUEST FOR NARROWLY TAILORED STAY**

Defendant, Gulf Air B.S.C. (c) ("Gulf Air") submits its Opposition to Plaintiffs Tala Josephano's, Samiha Ayyash's, and Feras Hindi's (hereinafter, "Plaintiffs") Motion for Leave to File Amended Motion to Stay Proceedings (ECF No. 49), and Request for Narrowly Tailored Stay (hereinafter, "Plaintiffs' Motion," "Motion for Leave" or "Motion") (Dkt. 60). In support thereof, Gulf Air respectfully states as follows:

On June 4, 2025, Plaintiffs filed an Emergency Motion to Stay Proceedings Pending Federal Investigation, Congressional Review, and Judicial Determination Regarding Foreign Interference ("Motion to Stay") (Dkt. 49). Gulf Air filed its Opposition on June 18, 2025, arguing that the Motion to Stay failed to present any grounds that could possibly justify the extraordinary remedy of a stay of these proceedings. (Dkt. 57). In addition to being filed without leave of Court, the Motion to Stay advanced unsupported, conspiracy-laden allegations and failed to identify any specific facts tending to suggest there would be any harm to Plaintiffs absent a stay. (*Id.* at 4). Further, a stay would be contrary to the interests of judicial economy, as the Motion to Stay did not cite any related or parallel proceedings – let alone any proceedings that could bear on the legal

R- 898

or factual issues in the case.  (*Id.* at 4-5).  Indeed, a stay would only serve to prejudice Gulf Air by further delaying resolution of its pending Motion to Dismiss the Amended Complaint Under Rules 12(b)(2), 12(b)(1) and 12(b)(5) ("Motion to Dismiss").  (*Id.* at 6).

Plaintiff Tala Josephano subsequently filed a Motion for Leave to File Emergency Motion for Protective Order, Stay on Deadlines and Request for Hearing. (Dkt. 56).  Gulf Air opposed that motion as well, explaining that it – like the Motion to Stay – was devoid of any specific evidence to support a finding of good cause to justify the entry of a protective order or to grant Plaintiffs any of the relief they requested, including a stay.  (Dkt. 63).

Plaintiffs now seek leave to file an "Amended Motion to Stay Proceedings" and again request a stay of the deadlines in this case.  *See*, *e.g.*, Motion for Leave at 4-5, 8-9, 15, 17, 19.[1] More specifically, Plaintiffs request a "brief and targeted stay of briefing on the Motion to Dismiss, limited to the period necessary for the Court to resolve the two threshold matters: the pending Motion for Jurisdictional Discovery and the corrected Protective Hearing Motion," despite that the deadline to respond to Gulf Air's Motion to Dismiss has long since passed.[2]  Motion for Leave at 15.  Moreover, the Court's May 19, 2025, Minute Order was clear that no further extensions of time would be granted to Plaintiffs.

In any event, Plaintiffs' Motion for Leave provides no credible basis to delay the resolution of Gulf Air's Motion to Dismiss any further.  Plaintiffs' pending filings are meritless and should be denied for those reasons articulated in Gulf Air's Opposition to Plaintiffs' Motion to Stay (Dkt.

---

[1] In their Motion, Plaintiffs request leave to file "the proposed Amended Motion to Stay Proceedings," which they state is "attached hereto as Exhibit A."  Motion for Leave at 19. However, there was no attachment to Plaintiffs' Motion for Leave.

[2] At times in their Motion for Leave, Plaintiffs refer to a "Protective Hearing Motion" as "pending" and "properly before this Court" but also as "forthcoming."  *See* Motion for Leave at 4, 9, 17. Regardless of whether Plaintiffs are relying on a currently pending filing to support the relief they seek, they have presented no basis to justify a stay of the proceedings.

R- 899

57), Gulf Air's Opposition to Plaintiff Josephano's Motion for Protective Order (Dkt. 52), Gulf Air's Opposition to Plaintiffs' Motion to Strike Exhibit A (Dkt. 53), Gulf Air's Opposition to Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery (Dkt. 62), and Gulf Air's Opposition to Plaintiff Tala Josephano's Motion for Leave to File Emergency Motion for Protective Order, Stay on Deadlines and Request for Hearing. (Dkt. 63) (collectively referred to as "Defendant's Oppositions"), which Gulf Air incorporates as if set forth fully herein.

Plaintiffs cannot meet their burden to justify a stay of the proceedings, for the reasons articulated herein as well as those in Defendant's Oppositions.  The Motion for Leave does not set forth any new facts or articulate any new grounds that warrant a stay.[3]  Instead, Plaintiffs baldly assert that a stay is necessary due to "harassment" and "targeted interference," which has allegedly "impede[ed] their ability to participate in these proceedings."  *E.g.*, Motion for Leave at 4.  As in their original Motion to Stay, Plaintiffs have not provided details or any evidence at all concerning any alleged harassment or interference.  Moreover, Plaintiffs' claim that they have not been able to fully participate in these proceedings and cannot participate without the requested stay is unavailing in light of their numerous lengthy filings over the past month and a half.  (*See* Dkts. 46, 47, 49, 55, 56, 64); *see also Kidwell v. Fed. Bureau of Investigation*, No. CV 11-00778 (BAH), 2011 WL 13385349, at *2 (D.D.C. Sept. 29, 2011) (finding that plaintiff's request to stay case based on health concerns was unwarranted since plaintiff had already received an extension of time to respond to pending motions to dismiss and "demonstrated a clear ability to file litigation documents" during that timeframe).

---

[3] Plaintiffs briefly reference an "Emergency Motion for Protective Order and supporting exhibits" which they state contains "sealed filings depicting surveillance by U.S. agents."  Motion for Leave at 17.  Gulf Air did not receive any exhibits submitted with the motions for a protective order filed by Plaintiff Josephano, (*see* Dkts. 46, 56), nor is it aware of any "sealed filings" or motions for leave to seal in this case.

R- 900

Plaintiffs' renewed filing presents no legitimate grounds that warrant granting a stay. Thus, Plaintiffs have failed to meet their "high burden" to justify the exceptional relief they request. *See HDI Glob. Speciality SE v. Stanton View Devs., LLC*, No. CV 24-965 (SLS), 2025 WL 843284, at *2 (D.D.C. Mar. 18, 2025). For all the foregoing reasons, as well as those set forth in Defendant's Oppositions, Defendant, Gulf Air B.S.C. (c) respectfully requests that the Court deny Plaintiff's Motion for Leave to File Amended Motion to Stay Proceedings (ECF No. 49), and Request for Narrowly Tailored Stay, and grant Gulf Air such other relief as it deems just and proper.

Dated: July 2, 2025

Respectfully Submitted,

**ECKERT SEAMANS CHERIN
 & MELLOTT, LLC**

*/s/ Mark A. Johnston*
Mark A. Johnston, Esq.
D.C. Bar No. 455764
Darcy C. Osta, Esq.
D.C. Bar No. 1686937
1717 Pennsylvania Ave., N.W.,
Suite 1200
Washington, D.C. 20006
(202) 659-6600
dosta@eckertseamans.com
mjohnston@eckertseamans.com

*Counsel for Gulf Air B.S.C. (c)*

R- 901

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2025, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF filing system, which will serve an electronic copy on all counsel of

record, and I will also serve a copy of the foregoing via USPS first class mail upon the following:

Tala Josephano
615 Catalina Avenue, #233
Redondo Beach, CA 90277
*Pro Se Plaintiff*

Samiha Ayyash
Feras Hindi
7823 New London Drive
Springfield, VA 22153
*Pro Se Plaintiffs*

*/s/ Mark A. Johnston*
Mark A. Johnston

R- 902

1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

| | |
|---|---|
| **Samiha Ayysah, Feras Hindi,** | ) |
| **Tala Josephano** | )    **Case No.:  1:24-cv-03434-ACR** |
| | ) |
| Plaintiffs | ) |
| | ) |
| **American Airlines Inc. ,** | ) |
| **Gulf Air B.S.C** | ) |
| Defendants | ) |
| | ) |
| _____ | ) |

**PLAINTIFFS' SUPPLEMENTAL REPLY TO DEFENDANT AMERICAN AIRLINES' OPPOSITION AND IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR JURISDICTIONAL DISCOVERY**

Plaintiffs respectfully submit this reply in support of their Motion for Jurisdictional Discovery (Dkt. 61) and in response to American Airlines' opposition. Contrary to American Airlines' assertion, Plaintiffs have not filed an opposition to the motion to dismiss at this time. Instead, Plaintiffs have properly moved solely for jurisdictional discovery, as permitted by federal practice when the facts necessary to establish personal jurisdiction are within the exclusive control of the defendant. Plaintiffs expressly reserve the right to submit a full opposition to the motion to dismiss at such time and in such manner as the Court may direct.

**RECEIVED**

JUL 7 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

R- 903

**Table of Authorities**

**Cases**

1. Ford Motor Co. v. Montana, 141 S. Ct. 1017 (2021)

2. Walden v. Fiore, 571 U.S. 277 (2014)

3. GTE New Media Servs., Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000)

4. Diamond Chem. Co. v. Atofina Chems., Inc., 268 F. Supp. 2d 1 (D.D.C. 2003)

5. United States v. Philip Morris Inc., 116 F. Supp. 2d 116 (D.D.C. 2000)

6. First Chicago Int'l v. United Exchange Co., 836 F.2d 1375 (D.C. Cir. 1988)

7. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952)

8. Daimler AG v. Bauman, 571 U.S. 117 (2014)

9. Cockrum v. Donald J. Trump for President, Inc., 319 F. Supp. 3d 158 (D.D.C. 2018)

10. Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985)

11. International Shoe Co. v. Washington, 326 U.S. 310 (1945)

12. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978)

13. Hughes v. A.H. Robbins Co., 490 A.2d 1140 (D.C. 1985)

14. Beachboard v. Trustees of Columbia University, 475 A.2d 398 (D.C. 1984)

15. Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp., 35 A.3d 1127 (D.C. 2012)

16. Savage v. Bioport, Inc., 460 F. Supp. 2d 55 (D.D.C. 2006)

17. Alkanani v. Aegis Def. Servs., LLC, 976 F. Supp. 2d 13 (D.D.C. 2014)

18. In re Air Crash at Lexington, 486 F. Supp. 2d 640 (E.D. Ky. 2007)

R- 904

3

**Statutes and Regulations**

1.  D.C. Code § 13-423(a)(1)

2.  14 C.F.R. § 212.10

3.  49 U.S.C. § 40101

4.  28 U.S.C. § 1631


**Government Reports and Secondary Sources**

1.  DOT OIG Report AV-2013-046

2.  GAO-05-930, *Aviation Safety: Oversight of Foreign Code-Share Safety Program Should Be Strengthened*

3.  "Home Is Where the Court Is: A New Approach to General Personal Jurisdiction," 62 Cath. U. L. Rev. 697 (2013)

R- 905

**Table of Contents**

INTRODUCTION ................................................................................. 6

I. Jurisdictional Discovery Will Provide Essential Evidence Supporting Personal Jurisdiction Over Defendant in This Court ................................................................ 7

II. Plaintiffs Satisfy Every Prerequisite and Threshold for Jurisdictional Discovery ................................................................. 8

III. Non-Conclusory, Colorable Showing of Jurisdictional Facts ................................................................. 9

IV. Good Faith Basis / Not Speculative ................................................................. 10

V. Relevant Jurisdictional Facts Are Uniquely Within Defendant's Control ................................................................. 11

VI. Evidentiary Support and Policy Context ................................................................. 12

VII. American Airlines' Non-Delegable Duty and Enabling Conduct Under Federal Law ................................................................. 13

VIII. Judicial and Regulatory Precedent for Accountability ................................................................. 15

IX. Government Contacts Doctrine Does Not Shield Defendant ................................................................. 16

X. Purposeful Availment Encompasses Deliberate, Strategic Regulatory Conduct ................................................................. 18

XI. Jurisdiction Is Proper Where Claims Arise From Forum-Based Conduct Central to the Dispute ................................................................. 20

XII. Commercial and Regulatory Conduct in D.C. Is Not Excluded from Jurisdictional Analysis ................................................................. 21

XIII. The Government Contacts Doctrine Is Not a Blanket Immunity—Especially in Aviation Regulation ................................................................. 22

R- 906

Case 1:24-cv-03434-ACR    Document 67    Filed 07/07/25    Page 5 of 49
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 907 of 971

5

XIV. Exceptional Case and the Need for Jurisdictional Discovery
.................................................................................. 22

XV. Defendant's Reliance on Huynh v. Air Canada Is Misplaced
.................................................................................. 24

XVI. Transacting Business Alleged Under D.C. Code § 13-423(a)(1)
.................................................................................. 25

XVII. Harm Arising From Forum-Based Business Conduct
.................................................................................. 27

XVIII. After Death of Captain: Continuous Harm Arising from D.C.-Based Business Conduct
.................................................................................. 35

XIX. Direct and Foreseeable Harm to Plaintiffs
.................................................................................. 37

XX. Collusion and Retaliatory Conduct .................................................................................. 38

XXI. Continuous Harm & Business Activity in D.C. as the Nexus
.................................................................................. 39

XXII. Transnational Harm and Barriers to Justice
.................................................................................. 40

XXIII. Public Interest Harm: Undermining U.S. Aviation Safety and Endangering Plaintiffs as Members of the Traveling Public .................................................................................. 42

XXIV. Substantial D.C. Connection: Codeshare Creation, Regulatory Oversight, and Audit Certifications Establish Jurisdiction—Discovery Is Essential
.................................................................................. 43

R- 907

6

## INTRODUCTION

Plaintiffs respectfully submit this supplement in support of their Motion for Jurisdictional Discovery and in response to American Airlines' improper submission DKT 61 . The motion is grounded in specific allegations demonstrating American Airlines' sustained, purposeful conduct in Washington, D.C.—not merely incidental regulatory contact—gave rise to the injuries asserted in this case. For nearly two decades, American Airlines' regulatory and legal operations in D.C. played a central role in creating and maintaining the codeshare relationship with Gulf Air. Through the DC office, American Airlines submitted safety certifications, negotiated regulatory approvals, and coordinated policy advocacy efforts—all while Gulf Air lacked the FAA's required IASA Category 1 safety rating. Plaintiffs allege these D.C.-based activities included deliberate misrepresentations to federal agencies concerning their own and Gulf Air's compliance with safety standards, despite actual knowledge of systemic medical and operational violations. These actions foreseeably harmed Plaintiffs, both individually and as members of the traveling public, and continue to expose them to ongoing safety risks and quantifiable damages. Plaintiffs request limited, targeted jurisdictional discovery to uncover facts that are exclusively within American Airlines' control and that bear directly on the Court's jurisdictional analysis..

**Clarifying the Purpose and Procedural Validity of Plaintiffs' Discovery Motion**

Defendant's assertion that Plaintiffs' Motion for Jurisdictional Discovery is an untimely opposition to the motion to dismiss is legally and factually baseless. Plaintiffs' Jurisdictional Discovery motion was timely filed on **June 12, 2025**, within the scheduling deadlines set by the Court, and fully complies with the Federal Rules of Civil Procedure and prevailing jurisdictional discovery standards. It is well established that where jurisdictional facts are contested or undeveloped, a plaintiff is not required to preemptively oppose a motion to dismiss before

R- 908

Case 1:24-cv-03434-ACR    Document 67    Filed 07/07/25    Page 7 of 49
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 909 of 971

7

jurisdictional discovery occurs. See *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000) (jurisdictional discovery is appropriate where plaintiffs make a "sufficient start" on jurisdictional allegations). Plaintiffs' motion properly seeks narrowly tailored discovery to resolve jurisdictional questions central to the Court's threshold analysis.

Defendant's procedural argument ignores the significant hurdles Plaintiffs have faced as pro se litigants. Despite harassment, unequal resources, and the Court's failure to address prior urgent hearing requests, Plaintiffs filed their discovery motion on time and in good faith. Meanwhile, Defendant misrepresented its compliance, obtained leave to file a second, more sophisticated motion to dismiss, and now seeks to block jurisdictional discovery by raising new arguments months after their deadline submission  that require factual development to rebut. This tactic leverages corporate power and procedural technicalities at the expense of fairness. Contrary to Defendant's claim, no rule prohibits a timely-filed discovery motion from serving as a partial response to a motion to dismiss. Plaintiffs clearly explained their need for discovery before addressing the full merits, as critical jurisdictional facts remain solely within Defendant's control. Plaintiffs respectfully request that the Court to Affirm the procedural validity of their jurisdictional discovery motion; Defer ruling on Defendant's motion to dismiss until Plaintiffs have a fair opportunity to develop the jurisdictional record; and Reject Defendant's attempt to short-circuit this process by conflating distinct procedural steps.

## I.    <u>Jurisdictional Discovery Will Provide Essential Evidence Supporting Personal Jurisdiction Over Defendant in This Court</u>

It is well established that the district court has broad discretion in its resolution of jurisdictional discovery issues." *FC Inv. Grp. v. IFX Markets, Ltd.*, 529 F.3d 1087, 1093 (D.C. Cir. 2008) (quoting *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir. 1983)). The standard for

R- 909

permitting jurisdictional discovery is "quite liberal." *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003). "[I]f a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000). While "mere conjecture or speculation" is insufficient (*FC Inv. Grp.*, 529 F.3d at 1094), a plaintiff need only provide a good faith basis that targeted discovery could support personal jurisdiction. *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998). That is exactly what Plaintiffs have done here. As detailed in Dkt. 54—and corroborated by American Airlines' own admissions in Dkt. 7—Plaintiffs' showing easily meets and exceeds this standard. The record establishes a pattern of systematic and continuous business activity centered in Washington, D.C.—distinct from operations in other states. D.C. serves as a principal nerve center and source of revenue for American Airlines, with business operations, regulatory submissions, and key decisions emanating from its D.C. offices. The creation and management of the codeshare program, along with the submission of FAA-related certifications, originated in D.C. and directly gave rise to the alleged harm.  This concentrated and sustained regulatory activity in D.C.—directly tied to Plaintiffs' injuries—surpasses the sporadic or attenuated contacts courts have deemed insufficient.

## II.     **Plaintiffs Satisfy Every Prerequisite and Threshold for Jurisdictional Discovery**

**Plaintiffs Satisfy Every Procedural and Substantive Threshold for Jurisdictional Discovery**

Plaintiffs' motion complies with both the procedural and substantive standards governing jurisdictional discovery. It identifies specific, narrowly focused areas of inquiry—such as internal communications, regulatory filings, and personnel records related to American Airlines' codeshare oversight in Washington, D.C.—all of which are directly relevant to the jurisdictional

R- 910

9

analysis and solely within Defendant's control. Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, discovery is permitted on "any nonprivileged matter that is relevant to any party's claim or defense," including identifying documents and individuals with knowledge of contested facts. Courts have consistently applied this standard liberally in the jurisdictional context. See *Hansen v. Neumueller*, 163 F.R.D. 471, 473 (D. Del. 1995); *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982). Plaintiffs' motion meets this standard by clearly delineating targeted requests necessary to resolve jurisdictional disputes at this preliminary stage. If the court inherent authority is required, Plaintiffs ask the court to invoke its authority to grant Plaintiffs motion.

### III.    <u>Non-Conclusory, Colorable Showing of Jurisdictional Facts</u>

Plaintiffs have alleged specific, non-conclusory facts demonstrating purposeful availment and a direct causal connection between American Airlines' D.C.-centered conduct and their injuries. As outlined in their discovery motion (Dkt. 54), Plaintiffs have identified narrowly focused areas of inquiry relevant to resolving this jurisdictional question, including internal communications, regulatory filings, and FAA-related certifications.—relevant to resolving this jurisdictional question. Where, as here, allegations are supported by a factual foundation and not merely speculative, jurisdictional discovery is appropriate. See *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003). If necessary, Plaintiffs also seek limited FAA testimony to verify who prepared and submitted key regulatory documents central to the claims. Plaintiffs' jurisdictional showing more than satisfies the threshold required for discovery. Defendant's claim that Plaintiffs offer "no specifics" is plainly inaccurate. The motion identifies precise lines of inquiry—rooted in American Airlines' D.C.-based regulatory conduct—that are likely to yield relevant jurisdictional evidence. These requests are not speculative; they are

R- 911

focused on resolving factual disputes essential to ensuring a complete and accurate record before the Court rules.

### IV.    **Good Faith Basis / Not Speculative**

Defendant's blanket claim that jurisdictional discovery would be "futile" lacks any supporting evidence or affidavit showing that relevant facts cannot be uncovered. This falls well short of the governing standard. Courts in this Circuit permit jurisdictional discovery where facts are reasonably in dispute, and mere assertions of futility are insufficient. See *In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26, 35 (D.D.C. 2000). Plaintiffs are not required to prove jurisdiction at this stage—only to demonstrate a good faith belief and a factual basis sufficient to justify limited discovery. Plaintiffs have diligently supplemented the record as new evidence became available, but critical jurisdictional facts—such as the preparation of regulatory filings and codeshare certifications—remain solely within American Airlines' control. This targeted discovery request is grounded in concrete allegations of D.C.-based conduct directly tied to Plaintiffs' injuries, and it reflects a good faith effort to develop the jurisdictional record—not a speculative or overbroad inquiry. Courts routinely grant jurisdictional discovery where plaintiffs articulate a good faith belief that limited inquiry will uncover facts establishing jurisdiction. See *GTE New Media Servs., Inc.*, 199 F.3d at 1351.

Key jurisdictional facts remain in dispute—particularly whether American Airlines' regulatory certifications were submitted from Washington, D.C., and whether those actions constitute commercial conduct rather than protected government contacts. Plaintiffs' motion details why this information is essential and includes targeted discovery requests consistent with federal precedent. See *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003); *In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26, 35 (D.D.C. 2000).

R- 912

Case 1:24-cv-03434-ACR    Document 67    Filed 07/07/25    Page 11 of 49
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 913 of 971

11

This discovery will help the Court build a complete jurisdictional record to assert personal Jurisdiction and the correct venue over Defendant and avoid premature dismissal. It will also serve the public interest by enabling judicial evaluation of whether American Airlines' forum-based conduct—including its D.C.-based certifications and codeshare oversight—complied with federal safety obligations intended to protect passengers and the broader community. As already noted, the D.C. Circuit in GTE New Media Servs., Inc. v. BellSouth Corp., 199 F.3d 1343, 1351 (D.C. Cir. 2000), held that jurisdictional discovery is appropriate when a plaintiff identifies the specific information sought and there is ambiguity about the defendant's forum contacts—even if the existing record appears weak. Plaintiffs' targeted requests also satisfy that standard. Defendant has offered no declarations or other evidence to refute Plaintiffs' factual allegations or to clarify where its relevant conduct occurred. In these circumstances, discovery is the appropriate tool for "sorting out" contested jurisdictional facts. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n.13 (1978) (recognizing that discovery is available whenever jurisdiction or venue is in dispute).

## V.  Relevant Jurisdictional Facts Are Uniquely Within Defendant's Control

The information necessary to resolve this jurisdictional dispute—particularly the scope and location of American Airlines' codeshare oversight and regulatory filings—resides entirely within Defendant's internal records. These facts are not publicly accessible and cannot be verified without limited discovery. Plaintiffs have identified the specific evidence needed, including internal communications and compliance submissions, which bear directly on the company's D.C.-based conduct. Without access to these materials, Plaintiffs cannot fully establish the forum connections that gave rise to the harm.

R- 913

Case 1:24-cv-03434-ACR    Document 67    Filed 07/07/25    Page 12 of 49
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 914 of 971

12

Courts routinely authorize jurisdictional discovery where key facts lie within the defendant's exclusive control. See *In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26, 35 (D.D.C. 2000). Here, only American Airlines can confirm whether the challenged regulatory submissions and codeshare activities were directed from its D.C. office—information critical to determining whether its forum conduct supports jurisdiction under D.C. Code § 13-423(a)(1). Substantiating allegations that depend on facts uniquely within Defendant's control—specifically, whether American Airlines' D.C.-based conduct gave rise to the claims at issue. Limited discovery is necessary to determine whether Plaintiffs' injuries "arise out of or relate to" Defendant's forum conduct, as required by *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021 )Moreover, jurisdictional discovery in this case further advances the public interest by allowing the Court to assess whether American Airlines' D.C.-based conduct complied with federal safety obligations intended to protect passengers and the broader community. Although American Airlines does not dispute the occurrence or severity of Plaintiffs' injuries, it seeks dismissal without disclosing whether its D.C.-based regulatory actions contributed to those harms. Jurisdictional discovery is necessary to resolve that question under D.C. law.

## VI.    Evidentiary Support and Policy Context

FAA's pattern of deference to American Airlines created a dynamic of regulatory capture that allowed Gulf Air to operate with limited oversight. From its D.C. office, American Airlines submitted compliance filings that misrepresented their own compliance and Gulf Air's adherence to safety standards—contributing to unsafe conditions and regulatory approvals that would not have been granted had the full facts been disclosed. These actions directly enabled systemic violations, including the fatal incapacitation of Captain Alhindi, and created ongoing barriers to Plaintiffs' redress.

R- 914

Case 1:24-cv-03434-ACR   Document 67   Filed 07/07/25   Page 13 of 49
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 915 of 971

13

## VII.      <u>American Airlines' Non-Delegable Duty and Enabling Conduct Under Federal Law</u>

Under DOT codeshare approvals, FAA regulations, and the DOT Code-Share Safety Program, American Airlines bears a non-delegable duty to audit, monitor, and certify the safety compliance of its foreign codeshare partners, including Gulf Air. See 14 C.F.R. § 212.10; DOT Order OST-2008-0195. This oversight obligation is continuous and cannot be transferred or excused. Both the Government Accountability Office (GAO) and the DOT Office of Inspector General (OIG) have affirmed that U.S. carriers serve as the **"gatekeepers"** of safety in codeshare arrangements and are responsible for ensuring foreign partners meet all applicable safety standards. See GAO-05-930; OIG AV-2013-006.

Regulatory capture is where powerful industry actors shape oversight agencies to serve private interests—has been well-documented by both government watchdogs and legal scholars. The DOT Office of Inspector General has warned that such dynamics lead to "lax enforcement" and "systemic safety risks." See OIG AV-2013-006. Within this environment, American Airlines has exercised significant influence over FAA regulatory processes, resulting in prematurely closed investigations and inadequate corrective actions—effectively insulating itself from full accountability and enabling recurring safety violations.

Federal agencies ( especially lately ) have recognized patterns of regulatory noncompliance by American Airlines, resulting in enforcement actions and penalties. However, structural barriers—such as the complexity of jurisdictional rules and the difficulty faced by pro se litigants—often prevent meaningful accountability in civil litigation. This context underscores the need for robust judicial oversight and regulatory enforcement to protect public safety, citizens and passengers rights..

R- 915

For over three decades, American Airlines has maintained a strategic partnership with Gulf Air, facilitating its entry and continued access to the U.S. market—even during periods when Gulf Air lacked full International Aviation Safety Assessment (IASA) compliance. American Airlines did not simply endorse Gulf Air's regulatory standing; it actively submitted safety certifications and compliance representations from its Washington, D.C. office that were relied upon by the FAA and DOT for codeshare approvals and renewals. These filings constituted material representations directly bearing on aviation safety and regulatory eligibility.

These certifications were, in fact, deliberate, material representations on which the FAA and DOT critically relied when approving and renewing the codeshare, far beyond mere routine paperwork. Courts have held that when a defendant's affirmative filings conceal ongoing violations, jurisdictional discovery—and ultimately liability—may follow. Without these certifications, the codeshare would not have been renewed, and Gulf Air could not have expanded its U.S. operations until its crew-fitness and systems deficiencies were corrected. The death of Captain Alhindi was not an isolated tragedy—it exposed systemic regulatory violations that had already been reported prior to the codeshare renewal. Despite receiving notice of these issues, American Airlines proceeded to submit the necessary certifications, allowing the codeshare to continue. In doing so, it shielded Gulf Air from deeper scrutiny and accountability. As confirmed in GAO-05-930, U.S. carriers play a critical role in ensuring foreign partners meet safety obligations, and lapses in oversight can have serious consequences.

Public Lobbying Disclosure filings show that American Airlines has spent significant sums advocating on transportation and international-aviation policy—often on matters that directly affect Gulf Air and other foreign partners. This sustained lobbying, coupled with American's established presence in Washington, helped create a regulatory climate in which foreign-carrier

R- 916

compliance could be relaxed or subject to exceptions. Consequently, Gulf Air was able to expand its U.S. codeshare operations during periods when it failed to meet full IASA safety standards, including episodes involving serious safety incidents that would ordinarily trigger heightened scrutiny. By providing regulatory assurances and continuing to certify Gulf Air despite known compliance issues, American Airlines eliminated the pressure and incentive for Gulf Air to address safety deficiencies. This facilitated Gulf Air's continued U.S. expansion to the point they were granted permit to fly non stop to NY and DC under deception and misrepresentations to the DOT applications and the Public, while avoiding corrective oversight—thereby exposing Plaintiffs and the traveling public to ongoing safety risks and avoidable harm. While the government contact doctrine generally aims to shield interactions with government from being jurisdictional hooks, it does **not** protect contacts that are commercial in nature, actively tortious, or part of a broader pattern of purposeful availment that directly gives rise to the plaintiff's claims.

## VIII.    Judicial and Regulatory Precedent for Accountability

Federal courts and agencies have repeatedly recognized that airline regulatory filings and certifications are not ministerial formalities, but substantive representations subject to legal scrutiny. In 2019, American Airlines agreed to pay $22.1 million to resolve allegations under the False Claims Act that it knowingly submitted false international mail delivery data, violating its contractual obligations to the U.S. Postal Service. This enforcement action—centered on false filings submitted to federal authorities in Washington, D.C.—demonstrates that regulatory misrepresentations can trigger serious government investigations and significant penalties. That precedent supports judicial oversight of similar representations in other regulatory contexts, including those at issue here. Plaintiffs allege that American Airlines submitted materially

R- 917

inaccurate compliance statements in connection with the Gulf Air codeshare, misrepresenting safety standards and contributing to the harms alleged in this case.

### IX.    Government Contacts Doctrine Does Not Shield Defendant

Plaintiffs do not rely on protected government contacts to establish jurisdiction. Instead, they allege purposeful, commercial activity in the District of Columbia, including the creation, sales of codeshare management of codeshare agreements, coordination of ticket sales and partnerships, and leadership in aviation industry lobbying. These actions constitute "transacting business" in the District and fall well outside the narrow scope of the government contacts doctrine. Moreover, Defendant did not raise this defense in its motion to dismiss, and jurisdictional objections not timely asserted are deemed waived. *See First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988).

The government contacts doctrine does not protect a defendant that uses governmental processes as a vehicle for fraud—even where the resulting government action is not directed at the plaintiff. As the D.C. Court of Appeals held in *Companhia Brasileira Carbureto De Calcio v. Applied Industrial Materials Corp.*: "A person who uses the government as an instrumentality of fraud, and thereby causes unwarranted government action against another, forfeits the protection of the government contacts exception. Such fraud does not warrant our protection, and we will not extend the government contacts exception to shield it." 35 A.3d 1127, 1134 (D.C. 2012). This principle applies directly to Plaintiffs' allegations that American Airlines submitted material misrepresentations to federal regulators in D.C. to shield its own and Gulf Air's ongoing noncompliance.

R- 918

Case 1:24-cv-03434-ACR    Document 67    Filed 07/07/25    Page 17 of 49
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 919 of 971

17

The "unwarranted government action" referenced in *Companhia Brasileira* is not limited to enforcement or penalties directed at a plaintiff. The D.C. The Court of Appeals recognized that a defendant who engages in fraudulent misrepresentations that induce the government to take action it otherwise would not—such as granting approvals, permits, or regulatory clearances—cannot claim the doctrine's protection. This exception applies even when the resulting government action is not formally "against" the plaintiff, so long as it causes harm to a private party. In this case, Plaintiffs allege that American Airlines' false filings from Washington, D.C. induced the FAA and DOT decisions that enabled Gulf Air's continued noncompliance and directly contributed to the alleged injuries—a chain of events caused by Defendant's forum conduct and a foreseeable consequence. Plaintiffs have presented detailed factual allegations and supporting evidence establishing a direct causal link between Defendant's fraudulent conduct and subsequent government approvals that deprived Plaintiffs—and the public—of essential safety protections. These are precisely the type of "credible and specific allegations" required to invoke the fraud exception to the government contacts doctrine. The D.C. Court of Appeals has further recognized that such deliberate, voluntary misrepresentations constitute purposeful availment of the District, thereby satisfying the due process and minimum contacts requirements for personal jurisdiction.

When a defendant's fraudulent inducement of government action results in increased risks to public safety or the denial of statutory protections, the resulting harm squarely falls within the scope of the fraud exception. The exception prevents defendants from evading accountability by manipulating governmental processes to the detriment of private individuals and the public at large. As the D.C. The Court of Appeals made clear: "Use of the known lie as a tool is at once at odds with... the comity rationale for the government contacts exception, because the government

Case 1:24-cv-03434-ACR    Document 67    Filed 07/07/25    Page 18 of 49
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 920 of 971

18

has no interest in being fraudulently manipulated." *Companhia Brasileira*, 35 A.3d at 1134.

Accordingly, American Airlines cannot invoke the government contacts exception merely because the government's actions were not formally directed at Plaintiffs; it is the fraudulent misuse of government processes—and the foreseeable harm that resulted—that triggers the exception. American Airlines' false or misleading statements to federal regulators directly induced the government to approve, renew, or maintain codeshare arrangements and regulatory permissions—actions that would not have occurred but for the fraud, and that foreseeably resulted in harm to Plaintiffs. Under these circumstances, the government contacts exception does not apply. The relevant focus is on the defendant's conduct and its causal role in securing unwarranted government action not on whether the agency's response was formally directed at the plaintiff.

## X.    Purposeful Availment Encompasses Deliberate, Strategic Regulatory Conduct.

American Airlines' forum contacts were neither random nor fortuitous. The Supreme Court has made clear that purposeful availment exists where a defendant "deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). Jurisdiction is proper "where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Id.* at 475. American Airlines' decision to anchor its codeshare regulatory operations and FAA/DOT certifications in Washington, D.C. was a calculated, profit-driven business strategy—not a compelled or incidental act—and therefore satisfies the purposeful availment standard under due process.

As the D.C. Circuit has recognized, "purposeful availment requires only that the defendant's contacts with the forum result from actions by the defendant himself that create a substantial

<div align="right">

R- 920

</div>

Case 1:24-cv-03434-ACR   Document 67   Filed 07/07/25   Page 19 of 49
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 921 of 971

19

connection with the forum State." *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). American Airlines meets this standard through its deliberate and sustained regulatory engagement in Washington, D.C., including the submission of FAA and DOT compliance filings and coordination of its codeshare operations. These are not random or attenuated contacts, but intentional business activities that, under both *GTE New Media* and *Burger King*, satisfy the constitutional standard for purposeful availment. American Airlines' activities in Washington, D.C.—including regulatory filings, coordination with federal agencies, and codeshare management—are not incidental or peripheral; they are central to its commercial strategy and the claims at issue. These contacts are far from the "random," "fortuitous," or "attenuated" connections that fail to establish jurisdiction under Supreme Court precedent. Rather, they reflect deliberate, forum-directed business conduct that constitutes "transacting business" under D.C. Code § 13-423(a)(1), thereby satisfying the minimum contacts requirements.

Crucially, the government contacts exception is narrowly limited to activity undertaken *solely* for the purpose of petitioning or communicating with the federal government. However, when a defendant engages in conduct that goes beyond mere petitioning—such as using regulatory channels to advance private commercial interests or to mislead federal agencies—the doctrine does not apply. This includes American Airlines' D.C.-based management of codeshare programs, commercial partnerships, and regulatory filings designed to secure competitive or financial advantage. As recognized in *Hughes v. A.H. Robbins Co.*, "[t]he exception does not apply to the actual transaction of business, such as entering commercial contracts with or using the federal government." 490 A.2d 1140, 1145 n.4 (D.C. 1985). Here, American Airlines not only managed its codeshare operations from Washington, D.C., but also submitted materially

R- 921

false safety and compliance filings that concealed Gulf Air's ongoing regulatory violations. These acts were operationally significant, commercially driven, and directly contributed to the harms alleged—placing them squarely within the scope of conduct supporting personal jurisdiction under both D.C. law and constitutional standards. American Airlines' regularity and statutes compliance and violations, management of codeshare agreements, contract negotiations, and operational oversight from D.C. are commercial acts—not shielded government contacts. These purposeful, revenue-driven activities fall squarely within the jurisdictional analysis.

**XI.    Jurisdiction Is Proper Where Claims Arise From Forum-Based Conduct Central to the Dispute.**

D.C. law provides for specific jurisdiction where the plaintiff's cause of action "arises from" the defendant's business transacted in the District. Plaintiffs allege that American Airlines' D.C.-based regulatory activities were not merely purposeful but central to the creation, maintenance, and alleged misconduct of the codeshare program with Gulf Air. The harm to Plaintiffs arose directly from these D.C.-originated regulatory filings and certifications, which enabled unsafe operations and regulatory evasion. The D.C. Court of Appeals directly addressed this connection in *Beachboard v. Trustees of Columbia University*, holding that "if the plaintiff's claim arises from the activities relating to the government contacts, the long-arm statute can be invoked as a basis for personal jurisdiction." 475 A.2d 398, 401 (D.C. 1984). Here, Plaintiffs' claims precisely arise from American Airlines' commercial conduct in D.C.—including codeshare management, safety oversight, and business communications related to those regulatory filings—making the assertion of jurisdiction proper under D.C. law.

R- 922

**XII.**   **Commercial and Regulatory Conduct in D.C. Is Not Excluded from Jurisdictional**

　　　　**Analysis.**

American Airlines' reliance on *Savage v. Bioport, Inc.* and *Alkanani v. Aegis Def. Servs., LLC* is misplaced. Both cases involved routine lobbying or contract negotiations—activities the government contacts doctrine protects solely as exercises of First Amendment petitioning or information-gathering. However, this narrow doctrine does not shield conduct that is commercial in nature or involves the misuse of government processes for proprietary gain.

Crucially, neither *Savage* nor *Alkanani* addressed the fraud exception, which applies when a defendant's government contacts are part of a fraudulent or commercially motivated scheme that provokes unwarranted government action causing harm to others. As the D.C. District Court emphasized regarding this exception, it is triggered by "credible, particularized allegations that the defendant's conduct induced government action as an instrumentality of fraud." Plaintiffs here do not allege mere lobbying. Instead, American Airlines' D.C.-based regulatory activities were part of a coordinated, profit-driven scheme that directly resulted in unwarranted government action and harm to Plaintiffs. These are fundamentally commercial acts, not protected petitioning. The government contacts exception originated to protect First Amendment petitioning and information-gathering, and "was not intended to create a blanket immunity for all dealings with the federal government." American Airlines' activities in D.C. are fundamentally commercial and profit-driven, not merely exercises of First Amendment rights. Thus, its conduct is not immunized by the government contacts doctrine and properly supports jurisdiction under the D.C. long-arm statute.

R- 923

Case 1:24-cv-03434-ACR    Document 67    Filed 07/07/25    Page 22 of 49
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 924 of 971

22

### XIII.    The Government Contacts Doctrine Is Not a Blanket Immunity—Especially in Aviation Regulation.

"Jurisdictional discovery is routinely permitted when facts relevant to personal jurisdiction are disputed or uniquely within the defendant's control. This allows plaintiffs to uncover whether American's D.C. activities were commercial (such as codeshare management and business operations) rather than protected government contacts, which is essential for the court's jurisdictional analysis. Discovery is needed to determine if American's conduct falls outside the government contacts exception, particularly if there is evidence of business-driven activities or fraud in dealings with government agencies. Courts recognize that plaintiffs must be given a fair opportunity to respond to a defendant's jurisdictional challenge with evidence, not just allegations. Allowing American Airlines to escape jurisdiction in this case would not only undermine established due process principles but would also undermine the integrity of federal regulatory processes and the public interest in aviation safety. For all the foregoing reasons, personal jurisdiction over American Airlines is proper in this District.

### XIV.    Exceptional Case and the Need for Jurisdictional Discovery

Plaintiffs allege that American Airlines presents the rare "exceptional case" contemplated by *Daimler* and *Perkins*, warranting general personal jurisdiction in the District of Columbia. Unlike companies whose forum contacts are merely routine or peripheral, American Airlines' Washington, D.C. operations are qualitatively and strategically dominant in its global business model. The D.C. office is the functional nerve center for American's regulatory, codeshare, and governmental affairs—activities that are essential to its ability to operate as a global airline.

Specifically, Plaintiffs allege Strategic Command as American's D.C. office directs and manages its most consequential regulatory and operational decisions, including negotiating and

R- 924

Case 1:24-cv-03434-ACR    Document 67    Filed 07/07/25    Page 23 of 49
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 925 of 971

23

maintaining codeshare agreements, submitting critical safety certifications, and managing ongoing relationships with federal agencies such as the DOT and FAA; Regulatory Leverage as Without its D.C. operations, American would lose essential leverage with U.S. and international regulators and partners, directly impacting its market access and competitive position worldwide, and its ability to simply operate as an airline; Core Business Function as The D.C. office is not a minor outpost, but the locus of American Airlines' regulatory, compliance, and governmental and executive operational strategy. These functions are disproportionately concentrated and coordinated in D.C., forming the backbone of American Airlines' international business operations; Entwinement with Federal Policy American's D.C. presence enables it to engage in sustained lobbying, federal deal-making, and strategic governmental engagement—activities that are integral, not incidental, to its business and directly tied to the conduct at issue in this case; Public Policy Nexus as Plaintiffs' claims involve not just private commercial disputes, but allegations of public and government-affiliated abuse, retaliation, and regulatory violations with broad policy implications, all orchestrated from D.C.

Plaintiffs do not rest their case on the number of employees or flights in D.C., but on the qualitative centrality and dominance of D.C.-based operations in American Airlines 's corporate structure. While American Airlines is headquartered in Texas, its Washington, D.C. operations truly are the functional nerve center for regulatory, codeshare, and governmental affairs—activities essential for its ability to operate as a global airline. Without the approvals, regulatory management, and federal engagement conducted in D.C., American Airlines could not legally or practically fly, making D.C. indispensable to its business model. Unlike other states, D.C. is not just another location in the American Airlines's network; it is the pulse of the airline's operational and regulatory existence. American Airlines markets Ronald Reagan Washington

R- 925

24

National Airport (DCA) as a D.C. hub, and its D.C.-based activities drive the approvals and relationships necessary for every flight and revenue stream nationwide. The company's own financial disclosures, reporting over $54 billion in revenue in 2024, depend fundamentally on its ability to secure and maintain federal approvals and contracts managed from D.C.

American cannot claim D.C. as a marketing asset to passengers and partners while denying its centrality for jurisdictional purposes. The revenue and profits generated by American Airlines are inextricably linked to its D.C. operations, and for jurisdictional analysis, the qualitative dominance of D.C. in American's business should be recognized. Given the fact-intensive nature of the "exceptional case" standard, and the information asymmetry regarding the true scope of American's D.C. operations, targeted jurisdictional discovery is essential. Only such discovery can reveal whether American's D.C. activities are so substantial and central as to render it "essentially at home" for general jurisdiction purposes.

## XV.    Defendant's Reliance on Huynh v. Air Canada Is Misplaced

Defendant's citation to *Huynh v. Air Canada* is inapposite. In *Huynh*, the court denied general jurisdiction because Air Canada's D.C. contacts were limited to routine commercial activities, not the type of substantial, forum-based conduct required by *Daimler*. In stark contrast, Plaintiffs allege that American Airlines' Washington, D.C. operations are qualitatively distinct—encompassing core regulatory, codeshare, and compliance activities directly tied to the alleged misconduct. Unlike the incidental contacts in *Huynh*, American's D.C.-based actions include the submission of material safety certifications and regulatory filings central to Plaintiffs' claims and indicative of its D.C. office as an essential power center for decision-making. This permanence and enduring impact distinguish D.C. from the temporary wartime hub in *Perkins*, further supporting American Airlines' status as an "exceptional case" for general jurisdiction.

R- 926

Plaintiff's request for jurisdictional discovery is neither a fishing expedition nor futile; rather, it seeks to clarify and update the framework governing general jurisdiction in light of significant doctrinal shifts. The rigid reliance on fixed "home" forums, as suggested in *Daimler* and pre-*Goodyear* decisions, increasingly employs outdated metaphors for a jurisdictional landscape that has materially evolved. As the verified legal study, "Restructuring General Jurisdiction" by David Crump (Catholic University Law Review, Vol. 70, Issue 3, 2021), demonstrates, post-*Daimler* jurisprudence has narrowed general jurisdiction to the point of incoherence, particularly when corporations engage in pervasive national or global commerce yet evade jurisdiction everywhere except their "paradigm" forums.

For instance, the Delaware Supreme Court's ruling that general jurisdiction could not be asserted over American Airlines—despite its incorporation in Delaware—highlights the dissonance between corporate presence and judicial reach. This reinforces that the current legal standard grants large corporations disproportionate shelter from suit. This legal scholarship argues persuasively that such a rigid framework creates legal absurdities—corporations may operate extensively in a forum and yet remain untouchable under general jurisdiction. Plaintiffs' position, supported by this scholarship, urges the Court to recognize that evolving doctrine demands a more nuanced application of jurisdictional rules. The old metaphor no longer fits, and discovery into the Defendant's operations is warranted to determine whether, under modern realities, the forum may constitutionally assert general jurisdiction despite precedent that oversimplifies the corporate "home" concept.

## XVI.    Transacting Business Alleged Under D.C. Code § 13-423(a)(1)

Specific Jurisdiction Is Properly Alleged, and Discovery Is Justified. American Airlines has purposefully and systematically transacted business in the District of Columbia within the

R- 927

Case 1:24-cv-03434-ACR    Document 67    Filed 07/07/25    Page 26 of 49
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 928 of 971

26

meaning of D.C. Code § 13-423(a)(1). From its D.C.-based regulatory affairs office, American Airlines created, negotiated, and managed codeshare agreements—including the Gulf Air arrangement at issue—by engaging directly with federal regulators headquartered in the District. These activities are not incidental administrative functions but involve substantive regulatory advocacy and strategic commercial decision-making, as evidenced by FAA and DOT filings. American Airlines' D.C.-based regulatory team prepared, signed, and submitted joint codeshare applications to the U.S. Department of Transportation, securing federal authorization for Gulf Air and other foreign partners to operate in U.S. airspace under American's brand. These authorizations are essential for American Airlines' international business model and enable it to market and sell codeshare flights as its own, directly generating revenue from D.C.-based consumers and federal government travel contracts. Beyond regulatory filings, American Airlines promotes and sells these codeshare flights in the District through targeted marketing, digital platforms, and corporate partnerships. This deliberate and forum-directed commercial activity demonstrates that American Airlines' presence in the District is not incidental but integral to its global operations.

The Gulf Air-American Airlines codeshare is not a regulatory arrangement—it is a commercial product conceived and executed in D.C. American's D.C.-based regulatory team prepared, signed, and submitted joint codeshare applications to the DOT, securing federal authorization for Gulf Air to operate in U.S. airspace under American's brand. This regulatory groundwork—developed entirely in Washington, D.C.—is central to American Airlines' business model. These codeshare agreements act as revenue-generating instruments and products. Without the D.C.-originated regulatory approvals, these flights could not be offered to Gulf Air Crew members and U.S. consumers. Defendant has not disputed these key facts or

R- 928

Case 1:24-cv-03434-ACR    Document 67    Filed 07/07/25    Page 27 of 49
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 929 of 971

27

identified who submitted the joint codeshare filings. Instead, it mischaracterizes Plaintiffs' allegations as "tangential." However, Plaintiffs have demonstrated that American Airlines' D.C. operations were integral—not incidental—to the creation and maintenance of the codeshare program including their first US partnership, Gulf Air codeshare and to the alleged misconduct at issue especially where Gulf Air couldn't meet the FAA safety Standards IASA.

American Airlines actively markets and sells codeshare partnership and codeshare flights—including Gulf Air's—as core products offered to D.C. consumers. Through its website, travel agencies, and corporate partnerships, American Airlines integrates codeshare partnerships into heavy marketing campaigns targeting D.C. consumers and derives substantial revenue from these sales. It also holds federal government travel contracts that include codeshare services, further tying these commercial offerings to its D.C.-based operations. These deliberate, forum-directed activities demonstrate that American Airlines is not a passive actor but an active participant in promoting and profiting from codeshare flights, even where safety violations undermine passenger security. This continuous, purposeful business activity demonstrates that American Airlines' presence in the District of Columbia is not incidental but central to its operations and revenue model.

Through this sustained and commercially focused engagement, American Airlines has purposefully availed itself of the privilege of conducting business in the District of Columbia, establishing sufficient minimum contacts to render the exercise of specific jurisdiction consistent with traditional notions of fair play and substantial justice. The creation, negotiation, approval, and marketing of the Gulf Air codeshare—all tied to voluntary filings and strategic decisions made in D.C.—form a direct jurisdictional nexus to Plaintiffs' claims. These joint submissions to DOT and FAA were not passive regulatory obligations but deliberate commercial actions

R- 929

Case 1:24-cv-03434-ACR   Document 67   Filed 07/07/25   Page 28 of 49
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 930 of 971

28

designed to secure federal authorization, maintain Gulf Air's access to U.S. markets, and sustain American Airlines' codeshare revenue stream and dominance in international air travel. The resulting safety failures and preventable harm to Plaintiffs flow directly from this D.C.-based conduct, satisfying the requirements for specific jurisdiction under D.C. Code § 13-423(a)(1).

## XVII.   Harm Arising From Forum-Based BusinessConduct

Plaintiffs alleged the following claims in their Amendment Claims and they did their best as Pro Se to present their claims.

Many of these negligent acts and omissions continued after Captain Alhindi's death, exposing the traveling public and other crew members to ongoing risk, and demonstrating a pattern of disregard for safety and regulatory compliance that affects the public interest

1. **Negligence**

  i.   Failure to implement and maintain an effective internal Safety Management System (SMS).

  ii.   Failure to implement a compliance audit program.

  iii.   Failure to implement required audit programs for codeshare partners as directed by DOT/FAA orders and guidelines.

  iv.   Failure to implement effective safety monitoring for codeshare partners.

  v.   Failure to implement a complaint mechanism.

  vi.   Failure to audit or properly audit Gulf Air in accordance with DOT/FAA orders and ICAO obligations.

  vii.   Failure to monitor codeshare partner compliance.

  viii.   Failure to detect safety risks.

R- 930

29

ix.    Failure to identify safety hazards.

x.    Failure to detect safety risks within codeshare partners.

xi.    Failure to identify hazardous conditions involving codeshare partners.

xii.    Failure to act on known safety risks and hazards.

xiii.    Failure to correct deficiencies in codeshare partners.

xiv.    Failure to detect or correct known safety defects and regulatory violations.

xv.    Failure to report Gulf Air's known failures to federal regulators.

xvi.    Failure to vet codeshare partners.

xvii.    Failure to respond to credible safety complaints.

xviii.    Failure to investigate safety complaints related to codeshare partners.

xix.    Failure to respond to safety risk complaints.

xx.    Failure to act on safety complaints related to Captain Alhindi and his employer.

xxi.    Operation of codeshare flights with unfit crew members, connected to inadequate oversight and monitoring.

xxii.    Breach of multiple duties owed to Captain Mohannad Alhindi, Plaintiffs, passengers, regulators, and the public.

xxiii.    Breach of fiduciary duty owed to Captain Mohannad Alhindi, Plaintiffs, passengers, and American citizens (if applicable).

xxiv.    Failure to comply with federal aviation regulations, DOT/FAA orders, and ICAO standards, resulting in regulatory violations.

xxv.    Failure to adequately train and supervise employees and codeshare partners.

xxvi.    Failure to communicate or disclose known safety risks or violations to authorities or affected parties.

R- 931

USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 932 of 971

xxvii. Failure to take timely remedial or corrective action.

xxviii. Failure to exercise reasonable care in managing codeshare agreements and partner oversight.

xxix. Failure to enforce compliance with safety and regulatory requirements.

## 2. Negligence Per Se

Plaintiffs allege that American Airlines is negligence per se because it violated multiple safety statutes and regulations designed to protect the traveling public, crew, and all persons affected by commercial aviation operations. These include, but are not limited to:

I. ICAO Annexes 1, 6, and 19: International standards for crew qualifications, safe operation, and safety management systems.

II. DOT Orders (including 2008 and onward): U.S. Department of Transportation directives governing codeshare safety, audit requirements, and regulatory compliance.

III. FAA Regulations (14 CFR, including Parts 129, 212, and related sections): Federal regulations requiring safety management systems, codeshare oversight, and truthful regulatory filings.

IV. FAA/DOT Codeshare Safety Guidelines: Policies and guidance requiring audits, compliance checks, and accurate reporting for codeshare partners.

V. Public Interest Statutes (e.g., 49 U.S.C. § 40101): Federal law mandating that air carriers operate in a manner consistent with public safety and the national interest.

Specific Violations Alleged:

VI. Submitting materially false or misleading information to government regulators, including in Certificates of Compliance and codeshare applications.

R- 932

Case 1:24-cv-03434-ACR   Document 67   Filed 07/07/25   Page 31 of 49
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 933 of 971

31

VII.   Failing to conduct, or properly conduct, required audits of codeshare partners as mandated by DOT orders and FAA regulations.

VIII.   Omitting known violations by Gulf Air and other partners from required regulatory filings.

IX.   Failing to report or correct known safety and regulatory deficiencies, in violation of FAA, DOT, and ICAO requirements.

## 3. Fraud (Misrepresentation and Omission)

I.   Fraudulent representations made in filings submitted to the FAA and DOT in Washington, D.C., from 2008 to 2024.

II.   Material omissions of Gulf Air's regulatory violations and unsafe practices in required disclosures.

III.   Deceptive marketing to the public and AAdvantage members regarding the safety of codeshare operations.

IV.   Fraudulent misrepresentations and omissions directed at passengers and the traveling public, deceiving them about the true safety risks associated with American Airlines' and Gulf Air's codeshare flights.

V.   Misuse of federal regulatory processes and public trust to provide regulatory cover for an unsafe foreign airline.

VI.   False assurances to U.S. agencies about American Airlines' and Gulf Air's compliance, resulting in foreseeable reliance by regulators and harm to the public.

VII.   Continuous submission of false certificates and compliance statements to the FAA from 2008 through 2024.

R- 933

Case 1:24-cv-03434-ACR    Document 67    Filed 07/07/25    Page 32 of 49
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 934 of 971

32

VIII.   Omitting Gulf Air's safety issues and violations of federal and D.C. laws in regulatory filings.

IX.   Deceiving the public about the safety of codeshare partners.

X.   Providing regulatory "umbrella cover" for unsafe airlines, including Gulf Air, through misrepresentation and omission.

XI.   Causing damages to Plaintiffs—who are individuals and members of the traveling public—and exposing the broader public to ongoing safety risks.

XII.   Causation of harm through misrepresentation: Misstatements made in or through D.C. agencies support specific jurisdiction for harm originating from the forum.

**4. Other Allegations**

XVIII.   Breach of duties, including fiduciary duties owed to Plaintiffs, passengers, regulators, and the public.

XIX.   Misuse and waste of taxpayer funds (where relevant for public interest or factual support).

XX.   Plaintiffs' harm arising from regulatory misconduct in Washington, D.C.: Injuries flow from violations of duties owed under D.C.-based federal oversight and filings.

XXI.   Shielding Gulf Air from accountability Enabled through D.C.-based regulatory filings, approvals, and lack of enforcement by DOT/FAA.

XXII.   Emotional and personal injury damages sustained by Plaintiffs as a result of Defendant's failures.

XXIII.   Defendant's failure to correct regulatory violations and its continued certification and regulatory filings perpetuate the risk and actual harm to Plaintiffs and the public to this day, as American Airlines remains subject to federal oversight yet continues to engage in

R- 934

Case 1:24-cv-03434-ACR    Document 67    Filed 07/07/25    Page 33 of 49
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 935 of 971

33

the same patterns of misconduct. Plaintiffs continue to face exposure to unsafe practices and regulatory breaches, with no adequate corrective action having been taken by Defendant or federal authorities.

The harm alleged by Plaintiffs arises directly from American Airlines' D.C.-originating business conduct. By filing joint codeshare applications and regulatory certifications from its D.C. office, American Airlines acted as a shield for Gulf Air—providing not merely access to U.S. markets but a false veneer of compliance that emboldened Gulf Air to disregard systemic safety failures. Gulf Air—a carrier from a jurisdiction with a documented history of regulatory deficiencies—relied on American Airlines' audits and certifications as protective cover, enabling it to evade detection and avoid meaningful oversight of repeated crew incapacitations and medically unfit pilots. Rather than serving as a gatekeeper for safety, American Airlines enabled Gulf Air to minimize and dismiss serious medical and operational violations—including documented incapacitations in 2008, 2011, 2017, 2022, and 2023—as mere acts of fate, rather than preventable safety threats. This deliberate regulatory cover incentivized Gulf Air to perpetuate unsafe practices, directly culminating in the fatal incapacitation on the codeshare flight in December 2022 and the resulting harm to Plaintiffs. As part of its codeshare agreements, American Airlines undertook audit obligations to ensure Gulf Air's compliance with international safety standards, including ICAO Annexes 1, 6, and 19. These audits and certifications, initiated and filed from Washington, D.C., were critical to maintaining Gulf Air's U.S. operations. Plaintiffs allege that American Airlines' D.C.-based regulatory staff either failed to detect or actively concealed Gulf Air's repeated violations—all while continuing to certify its compliance to federal regulators.

R- 935

34

This pattern of misconduct breached multiple safety mandates, including DOT Orders, FAA codeshare guidelines under 14 C.F.R. § 212.10, and international obligations under the Open Skies Agreement and ICAO Annexes 6 and 19, constituting negligence per se. By obstructing FAA and DOT oversight, American Airlines created systemic safety risks and undermined public interest protections codified in 49 U.S.C. § 40101. Had American Airlines fulfilled its audit obligations and truthfully reported Gulf Air's deficiencies, federal regulators would have intervened, requiring corrective action or suspending Gulf Air's access to U.S. markets. Instead, Gulf Air's continued operation under American Airlines' codeshare directly led to the fatal incapacitation of a pilot in December 2022, Captain Alhindi's death, and the ongoing harm to Plaintiffs. This direct and foreseeable chain of causation satisfies the "arising out of or relating to" standard for specific jurisdiction as articulated in *Ford Motor Co. v. Montana*, 141 S. Ct. 1017 (2021), and supports the exercise of jurisdiction under D.C. Code § 13-423(a)(1).

Unlike the generalized and unsupported allegations in *Cockrum*, Plaintiffs here have presented a detailed, evidence-based motion for jurisdictional discovery. This motion is significantly buttressed by public FAA records, codeshare agreements, and other documentation demonstrating American Airlines' continuous, D.C.-centered regulatory engagement. Crucially, Defendant has not submitted a single declaration, affidavit, or piece of evidence to rebut these specific facts or clarify the locus of its relevant conduct. The existing record already clearly demonstrates that the Gulf Air–American Airlines codeshare agreement was not a passive arrangement. Instead, it demanded ongoing, D.C.-based management, expansion, and regulatory maintenance. FAA and DOT filings confirm that these agreements required active engagement with federal regulators in Washington, D.C.—engagement which, according to Plaintiffs' unrebutted allegations, was the direct vehicle for the very harm at issue. Therefore, discovery is

R- 936

Case 1:24-cv-03434-ACR    Document 67    Filed 07/07/25    Page 35 of 49
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 937 of 971

35

essential to uncover critical facts uniquely within American Airlines' control, including precisely who made key regulatory submissions, how D.C. personnel managed the codeshare, and whether pivotal decisions and misrepresentations originated from Washington, D.C.—facts that, if proven, would unequivocally establish specific jurisdiction under *Walden* and *Ford*. Given these specific, non-conclusory allegations of substantial business transacted in D.C. and active concealment of violations, Plaintiffs have more than met the necessary threshold for comprehensive jurisdictional discovery.

**XXIV.    <u>After Death of Captain: Continuous Harm Arising from D.C.-Based Business Conduct</u>**

Defendant's persistent attempts to narrowly frame this case as merely a wrongful death action arising from a heart attack in Bangladesh fundamentally misrepresent the breadth and gravity of Plaintiffs' claims. Far from being the sole focus, the tragic death of Captain Alhindi served as the catalyst that *uncovered* a pervasive pattern of systemic violations by both American Airlines and its co-defendant—a strategy of misdirection the Defendant has employed since February 12 2025. This litigation is not confined to a single fatality, or even the subsequent death of a flight attendant on a codeshare flight; it exposes a deeper scheme of non-compliance, a calculated disregard for legal inhibitors, a comfort in using undue influence to cover up egregious safety failures, and a reckless endangerment of lives that extends to the traveling public. American Airlines' conduct, orchestrated from its D.C. operations, constitutes a pervasive fraud against the employees of airlines, government, the public, and its passengers, leading to the waste of taxpayer funds and obstructing vital regulatory efforts to enhance aviation safety. Plaintiffs' causes of action sound in negligence and fraud, leading to harm that is both individual and public, arising from a deliberate course of conduct that impacted the Captain's family before his

R- 937

death, and the broader public after. Plaintiffs do not seek to litigate wrongful death against American Airlines; rather, they seek accountability for American Airlines' systemic failures and fraudulent representations that caused and continue to cause substantial harm, irrespective of the specific incident that brought these malfeasances to light.

**D.C.-Originated Certifications Enabled Unsafe Operations**

American Airlines' D.C.-based business conduct, particularly its ongoing regulatory certifications, has created and sustained a dangerous dynamic that perpetuates harm long after Captain Mohannad's tragic death. Under its codeshare agreements, American Airlines remains obligated to audit Gulf Air and certify its compliance with international safety standards to the DOT and FAA. These biennial certifications, prepared and filed from American Airlines' D.C.-based regulatory affairs office, are not merely administrative functions; they are critical, recurring acts of business conduct indispensable for Gulf Air to retain its U.S. market access and operate flights under the American Airlines brand.

By continuing to voluntarily certify Gulf Air's compliance, American Airlines has perpetuated a false aura of legitimacy, effectively providing Gulf Air with an "open door" to U.S. markets despite its failure to meet the international safety standards required of IASA-rated carriers. Each subsequent certification, originated in D.C., represents a fresh act of misconduct that has continued to shield Gulf Air's systemic noncompliance from robust federal oversight. Rather than prompting remedial action following the fatal incident, American Airlines' continued audits and certifications have, in effect, incentivized Gulf Air to normalize violations and operate with impunity. This regulatory shield, strategically maintained through American's D.C. filings, has continued to insulate Gulf Air from necessary oversight and accountability, becoming a

R- 938

persistent commercial backbone of American Airlines' codeshare model and a sustained revenue stream.

Even after Captain Mohannad's death and the initiation of this lawsuit, American Airlines' D.C.-based regulatory staff allegedly continued to conceal Gulf Air's repeated safety violations—including documented pilot incapacitations in 2008, 2011, 2017, 2022, and 2023—while actively renewing certifications to federal regulators. This pattern of post-death concealment is exemplified by American Airlines' submission of another misrepresented certificate in 2025, demonstrating an ongoing disregard for safety despite awareness of Gulf Air's documented deficiencies and the very allegations central to this case.

This continuous D.C.-based misconduct has perpetuated the harm, each subsequent certification reinforced Gulf Air's sense of impunity, allowing it to escalate risky practices without fear of oversight. Plaintiffs, including surviving family members and the traveling public, continue to suffer ongoing emotional, financial, and reputational harm as American Airlines renews these certifications and actively perpetuates the unsafe conditions it helped create, further endangering the public and undermining confidence in aviation safety.

## XXV.    Direct and Foreseeable Harm to Plaintiffs

 American Airlines' D.C.-based misconduct, specifically its renewal of Gulf Air's certifications in 2023 and 2025 despite Plaintiffs' extensive evidence of ongoing non-compliance, has foreseeably inflicted direct and continuous harm on Plaintiffs, including Significant Financial Burden,  Plaintiffs have incurred substantial out-of-pocket costs pursuing simultaneous legal actions in the U.S. and abroad, expenses that would have been entirely avoided had American Airlines not violating DOT and regulations, truthfully reported Gulf Air's deficiencies and

Case 1:24-cv-03434-ACR    Document 67    Filed 07/07/25    Page 38 of 49
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 940 of 971

38

fulfilled its safety obligations; Betrayal of Trust and Loyalty: As American Airlines frequent flyers and U.S. citizens, Plaintiffs entrusted their safety and loyalty miles to a carrier they believed adhered to the highest safety standards. Instead, they were profoundly betrayed by American Airlines' false assurances and misleading D.C.-based regulatory filings, which enabled Gulf Air's dangerous practices; Chronic Fear and Psychological Distress: Plaintiffs now live in a state of chronic fear and paranoia, deeply shaken by American Airlines' documented history of systemic safety violations. They are haunted by the prospect of Gulf Air causing a mass-casualty event over major U.S. cities, including Washington, D.C. or New York, a risk directly perpetuated by American Airlines' continued D.C. certifications; Physical and Psychological Exhaustion: The prolonged advocacy, years of uncertainty, and denial of closure have exacted a profound toll on Plaintiffs' well-being, leading to significant physical and psychological exhaustion.

## XXVI.    Collusion and Retaliatory Conduct

Compounding these harms, Plaintiffs allege that American Airlines engaged in active collusion with Gulf Air to shield their codeshare revenue stream. Gulf Air's harassment of Plaintiffs—including obstructing access to information, defaming Plaintiffs in foreign jurisdictions, and retaliatory actions to intimidate Plaintiffs—was tolerated, if not tacitly encouraged, by American Airlines. Moreover, American Airlines itself submitted a misrepresented Certificate of Service in U.S. proceedings, designed to prejudice Plaintiffs and induce dismissal of their claims. This conduct was not incidental but a strategic effort to preserve the codeshare relationship and protect the financial benefits tied to regulatory certifications filed from Washington, D.C. This pattern of misconduct fits within American Airlines' history of regulatory failures that endangered passengers. Federal authorities have repeatedly imposed

R- 940

penalties on airlines for systemic violations—including the DOT's $50 million fine against American Airlines in 2024 for safety breaches and its 1999 criminal plea for hazardous materials violations, which underscored the dangers of corporate misconduct in aviation.

## XXVII.     Continuous Harm & Business Activity in D.C. as the Nexus

The gravamen of Plaintiffs' claims lies in the continuous nature of American Airlines' tortious conduct and the ongoing injuries it inflicts, a pattern directly falling within the "continuing tort" or "continuous violation" doctrine recognized by courts. This doctrine permits claims to proceed where a defendant's unlawful conduct is ongoing, or where discrete acts of misconduct continually give rise to new injuries or compound existing ones, thereby preventing a statute of limitations from running from a single, initial event. American Airlines' D.C.-based misconduct constitutes such a continuing wrong, demonstrably establishing a nexus between its forum contacts and Plaintiffs' injuries:

Ongoing D.C. Conduct: American Airlines' actions are not isolated events but a series of fresh acts of forum-based conduct. Its ongoing submissions to federal regulators in Washington, D.C., and the biennial renewal of Gulf Air's certifications in 2023 and 2025 serve as concrete, repetitive instances of misconduct originating in the District. These were voluntary, strategic filings directly tied to American Airlines' commercial interests in sustaining and profiting from the codeshare product marketed and sold in D.C., each reinforcing Gulf Air's access to U.S. markets despite documented safety failures (including crew incapacitations and unfit pilots in 2008, 2011, 2017, 2022, and 2023). This continuous certification created a "regulatory shield" that perpetually emboldened Gulf Air to normalize systemic safety failures.

R- 941

Case 1:24-cv-03434-ACR   Document 67   Filed 07/07/25   Page 40 of 49
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 942 of 971

40

Compounding Misconduct with their continuous enablement was further compounded by a pattern of collusive actions and direct obstructive acts within the forum. These include American Airlines' tolerance, if not encouragement, of Gulf Air's harassment of Plaintiffs abroad and, critically, American Airlines' own submission of a misrepresented Certificate of Service in U.S. proceedings. These were not isolated incidents but part of an ongoing, intentional strategy to suppress scrutiny of the codeshare program and preserve its revenue stream at Plaintiffs' expense, thereby continuously impeding Plaintiffs' pursuit of justice.

Continuous and Compounding Harm as the harm suffered by Plaintiffs is not limited to a single past event, but continues today as a direct result of American Airlines' ongoing D.C.-based actions. But for American Airlines' persistent violations of DOT Orders, federal statutes, and international safety regulations—including its willful and ongoing failure to detect and report Gulf Air's deficiencies during mandatory audits—the injuries Plaintiffs suffer would not have occurred and would not persist. American Airlines' D.C.-originated conduct has perpetuated a cycle of preventable harm, resulting in The tragic death of Captain Alhindi on a codeshare flight; Plaintiffs' profound and ongoing financial, emotional, and reputational harm; and A pervasive and continuing fear among Plaintiffs, as members of the traveling public, of future catastrophic events involving Gulf Air flights over major U.S. cities, including Washington, D.C. This continuous stream of D.C.-based tortious conduct, directly causing ongoing and compounding injuries to Plaintiffs, establishes the requisite jurisdictional nexus and squarely places the claims within the purview of the continuous harm doctrine, satisfying D.C. Code § 13-423(a)(1).

## XXVIII.    **Transnational Harm and Barriers to Justice**

In Bangladesh and similar jurisdictions, a profound societal infatuation with Western institutions, particularly an old company like American Airlines—often regarded as a quasi-national

carrier—fosters an unwavering belief in their inherent compliance and integrity. For decades, a culture of unexamined reliance and faith in U.S. institutions meant it was simply inconceivable to local populations and legal systems alike that American Airlines would engage in non-compliance, fraud, discrimination, or be associated with crashes. There was an implicit, unshakeable trust that the FAA was competent and uninfluenced, and that a U.S. airline would never turn a blind eye in an industry as critical as aviation, where innocent lives are at stake. This deeply ingrained deference meant that American Airlines' false certifications and regulatory cover—originating from Washington, D.C.—directly undermined Plaintiffs' credibility and catastrophically obstructed their access to justice abroad. Local courts and regulatory bodies, deferring entirely to the perceived legitimacy conferred by American Airlines and U.S. government approvals, effectively shielded Gulf Air from meaningful scrutiny.

Plaintiffs and their investigators in Bangladesh faced significant procedural obstacles within foreign legal systems, forced to fruitlessly chase Gulf Air for simple witness testimonies and critical documents, as their local courts deferred to American Airlines' perceived authority. This systemic resistance to accountability has also manifested within these U.S. proceedings, where Co-Defendant has, for instance, submitted an old, expired, and unverified contract for Captain Alhindi as legitimate evidence, and engaged in ongoing litigation misconduct, including harassing Plaintiffs and taking actions designed to impede Plaintiffs' legal efforts within this forum. These actions demonstrate an alarming resolve to ensure their cover-up remains intact and their codeshare to the USA is not interrupted by the Plaintiffs. This pattern of foreseeable transnational harm, rooted in institutional deference and aggressive obstruction, flowed directly from American Airlines' fraudulent filings in Washington, D.C., which created a false appearance of Gulf Air's compliance and emboldened it to dismiss repeated safety violations,

R- 943

Case 1:24-cv-03434-ACR    Document 67    Filed 07/07/25    Page 42 of 49
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 944 of 971

42

leaving Plaintiffs utterly powerless to challenge a network of corporate and governmental deference.

These same dynamics have also manifested in this Court. From Plaintiffs' first hearing, they were confronted with what appeared to be procedural challenges given their pro se status. The Court's silence and delays on Plaintiffs' urgent requests, coupled with its inherent authority, created conditions that, as a practical matter, allowed American Airlines to continue its non-compliance without immediate consequences. This procedural dynamic, compounding Plaintiffs' injuries and denying them a fair opportunity to be heard. As pro se litigants, Plaintiffs faced an uphill battle not only against Gulf Air—a Kingdom flag carrier—but also against American Airlines, a U.S.-based global airline with deep regulatory influence. Plaintiffs' efforts to hold Gulf Air accountable were repeatedly thwarted by American Airlines' D.C.-based misrepresentations, which created a narrative of compliance that foreign courts, U.S. regulators, and in these proceedings, was accepted as authoritative. This reliance on corporate representations was rooted in American Airlines' regulatory influence and reinforced by strategic misrepresentations filed from D.C., which created an insurmountable barrier to Plaintiffs' fair hearing in both domestic and foreign forums. These cascading harms—emotional, financial, and reputational—are a direct and foreseeable result of forum-based business conduct and support the exercise of personal jurisdiction under D.C. Code § 13-423(a)(1).

## XXIX.    <u>Public Interest Harm: Undermining U.S. Aviation Safety and Endangering Plaintiffs as Members of the Traveling Public</u>

The public interest in aviation safety is a cornerstone of U.S. law. Under 49 U.S.C. § 40101, air carriers must operate "with the highest possible degree of safety in the public interest," a duty enforced through the FAA and DOT. American Airlines' repeated submission of false

Case 1:24-cv-03434-ACR    Document 67    Filed 07/07/25    Page 43 of 49
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 945 of 971

43

certifications and concealment of Gulf Air's systemic safety violations—executed through its D.C.-based regulatory office—directly compromised these federal safeguards. These deliberate misrepresentations, including the biennial Certificates of Compliance filed from Washington, D.C., crippled robust regulatory oversight, preventing the FAA and DOT from detecting documented crew incapacitations, unfit pilots, and other critical deficiencies. Such conduct not only allowed unsafe practices to persist but also emboldened Gulf Air to normalize violations, leaving Plaintiffs—and millions of other unsuspecting passengers—exposed to preventable disasters.

This misconduct subverted the statutory balance between private carriers and government regulators, effectively replacing independent oversight with self-serving misrepresentations designed to protect American Airlines' codeshare profits. Especially in the post-COVID era, when aviation systems face heightened risks, American's D.C.-originating conduct dismantled a crucial line of defense for public safety. As U.S. citizens and frequent travelers, Plaintiffs had a reasonable expectation that air carriers would comply with federal mandates and that regulators would act without interference. Instead, the very public safety that federal mandates seek to ensure was profoundly jeopardized, leading to devastating consequences for Plaintiffs and threatening the integrity of the U.S. aviation system itself. These cascading harms are not incidental; they reflect a systemic breach of duty that undermines public confidence in air travel.

Courts have long recognized the compelling public interest in exposing aviation safety failures and preventing carriers from manipulating federal oversight for profit. See In re Air Crash at Lexington, 486 F. Supp. 2d 640, 644 (E.D. Ky. 2007). Jurisdictional discovery is therefore essential to uncover the full scope of American Airlines' D.C.-based misconduct and its profound impact on both Plaintiffs and the broader traveling public. Denying such discovery

R- 945

would improperly shield American Airlines from warranted scrutiny, further weakening federal agencies' ability to protect passengers and eroding public confidence in the safety of air travel.

**XXX.** **Substantial D.C. Connection: Codeshare Creation, Regulatory Oversight, and Audit Certifications Establish Jurisdiction—Discovery Is Essential**

Defendant's attempt to downplay its D.C. contacts is directly contradicted by the regulatory record and the undisputed centrality of Washington, D.C., to every material stage of the codeshare process. The Gulf Air codeshare agreement was not conceived or administered in isolation; it was created, negotiated, and managed through American Airlines' D.C.-based regulatory affairs office. All joint codeshare applications—including Gulf Air's—were submitted from D.C. to the (DOT), and the DOT's orders requiring biennial safety audits, as well as implementation of international standards under ICAO Annexes 1, 6, and 19, originated in D.C. This underscores that the fundamental regulatory framework governing the codeshare arrangement is firmly rooted in the District.

Critically, the FAA's audit certification process was also ordered, administered, and ultimately processed through its International Programs Division (AFS-50), located at 800 Independence Avenue SW, Washington, D.C. The biennial audit certificates—required for Gulf Air's continued operation under the American Airlines brand—were received, reviewed, and acted upon in D.C., not Texas or any other location. Decisions to suspend, revoke, or approve these certifications necessarily rested with federal regulators in D.C., where regulatory discretion and final authority are centralized. Plaintiffs have now submitted evidence showing that American Airlines' D.C. regulatory office prepared and submitted these audit certificates directly to the FAA in D.C. This new evidence corrects earlier uncertainty in Plaintiffs' pleadings—uncertainty directly caused by

R- 946

Case 1:24-cv-03434-ACR    Document 67    Filed 07/07/25    Page 45 of 49
USCA Case #25-7123    Document #2186844    Filed: 08/06/2026    Page 947 of 971

45

lack of access to information uniquely within Defendant's and the FAA's control. As soon as this evidence became available, Plaintiffs supplemented the record in good faith.

These biennial certifications were not mere administrative tasks; each submission was a deliberate act of business conduct, designed to secure DOT and FAA approval, maintain Gulf Air's U.S. market access, and preserve a critical revenue stream for American Airlines' codeshare program. These D.C.-originating certifications created the very regulatory shield and false narrative of compliance that is central to the events giving rise to Plaintiffs' claims, including the alleged fraud and negligence that allowed unsafe operations to persist.

Defendant's current jurisdictional argument was not raised in its original motion to dismiss (Dkt. 7). Instead, Defendant introduced this theory for the first time in its renewed motion, after being granted leave to amend and privy to Plaintiffs and Co Defendant Defenses. Plaintiffs respectfully submit that this procedural tactic unfairly seeks to avoid discovery into facts exclusively within Defendant's knowledge and D.C.'s regulatory sphere. Jurisdiction is proper where a substantial part of the events giving rise to the claims occurred in the forum. Every material regulatory act—from codeshare creation to audit certification—occurred in Washington, D.C., establishing more than incidental contact. This conduct forms a deliberate and outcome-determinative connection to the forum. Defendant's reliance on *United States v. Ferrara* is misplaced: that case involved a single, peripheral contact with D.C. In contrast, American Airlines' biennial certifications—prepared and submitted from D.C.—were central to the regulatory breakdown and alleged fraud at issue. Therefore, jurisdictional discovery is essential to uncover the full scope of American Airlines' D.C.-based conduct and its direct causation of Plaintiffs' injuries.

R- 947

46

XXXI.    **Jurisdictional discovery is essential to resolve the core factual dispute regarding where these certifications were prepared, submitted, and processed.**

Jurisdictional discovery is essential to resolve the core factual dispute regarding where these critical audit certifications were prepared, submitted, and processed. While Defendant now claims uncertainty about which FAA office handled these certifications, Plaintiffs have, as previously noted, recently presented evidence demonstrating that American Airlines' D.C.-based regulatory office prepared and submitted them, and that the FAA's International Programs Division in Washington, D.C., received and acted upon them.

This contested fact is critical because it bears directly on whether American Airlines purposefully directed its conduct toward the District and whether Plaintiffs' injuries arose from that forum-based activity. Resolving this issue through targeted discovery will provide concrete evidence clarifying American Airlines' substantial D.C. contacts and their causal connection to Plaintiffs' harm. Importantly, it will also assist the Court in determining whether the preparation and submission of these certifications forms part of the "arising out of or relating to" test for specific jurisdiction under *Ford Motor Co. v. Montana, 141 S. Ct. 1017 (2021)*. Given that these certifications are among the forum-based acts Plaintiffs rely on to establish jurisdiction, discovery into their handling is highly material to the Court's analysis. The Court should therefore grant targeted jurisdictional discovery to ensure its jurisdictional determination rests on a complete and accurate record and to prevent Defendant from evading scrutiny through selective omissions about its own regulatory submissions.

XXXII.    **Plaintiffs Have Established a Claim-by-Claim Nexus Supporting Jurisdictional Discovery**

Defendant's latest motion raises new arguments challenging the sufficiency of Plaintiffs' jurisdictional allegations on a claim-by-claim basis. These arguments, however, do not

R- 948

undermine Plaintiffs' threshold showing for jurisdictional discovery. Plaintiffs' motion specifically details how each claim arises directly from American Airlines' D.C.-based conduct, including systemic safety management failures, regulatory violations, and misrepresentations that were conceived, executed, and perpetuated through its Washington, D.C. operations.

This claim-by-claim nexus underscores that Plaintiffs' injuries are not speculative or incidental; they flow directly from American Airlines' purposeful and continuous business activity in the District. Permitting jurisdictional discovery will allow the Court to resolve these disputed factual issues and ensure its jurisdictional analysis rests on a complete and accurate record.

## **CONCLUSION**

American Airlines' D.C.-based regulatory and legal activities, encompassing the negotiation, management, and certification of the Gulf Air codeshare, were not ministerial filings but purposeful, commercially motivated acts directly enabling unsafe operations and causing Plaintiffs' harms. These actions fall outside the government contacts doctrine and squarely establish specific jurisdiction.

Plaintiffs have demonstrated a good faith basis with evidence in DKT 54 for targeted jurisdictional discovery, identifying relevant facts uniquely within American Airlines' D.C. operations, consistent with the standard in this Circuit. Such discovery is essential to provide the Court with a complete record, promote judicial economy, and ensure a fair resolution of the jurisdictional questions.

For these reasons, Plaintiffs respectfully request that the Court:

    A.  Grant Plaintiffs' motion for targeted jurisdictional discovery.

R- 949

Case 1:24-cv-03434-ACR   Document 67   Filed 07/07/25   Page 48 of 49
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 950 of 971

48

B. Defer ruling on Defendant's motion to dismiss pending discovery.

C. Grant Plaintiffs leave to amend their pleadings or submit a full opposition following

   discovery, as appropriate.

D. In the event jurisdiction is ultimately found lacking, grant leave to transfer this action to

   the United States District Court for the Northern District of Texas, or, if jurisdiction is

   established prima facie, deny Defendant's motion to dismiss outright.

E. Grant such further relief as the Court deems just and proper.


Submitted July 7, 2025

**Pro Se Plaintiffs**



*Tala Josephano*
 615 S Catalina Ave #233
 Redondo Beach, CA 9027

*F. H*

*Feras Hindi*
7823 New London Dr.
Springfield, VA 22153

*Samiha Ayyash*
7823 New London Dr.
Springfield, VA 22153

R- 950

Case 1:24-cv-03434-ACR   Document 67   Filed 07/07/25   Page 49 of 49
USCA Case #25-7123   Document #2186844   Filed: 08/06/2026   Page 951 of 971

49

## CERTIFICATE OF SERVICE

I hereby certify that on July 7 2025, Plaintiff Feras Hindi, Plaintiff Tala & Plaintiff Samiha will be sending a true and correct copy of the following documents to be served upon the parties listed below:

In Support of Jurisdictional Discovery Motion American Airlines INC

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Email

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark  **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Email and mail on July 7 2025

Submitted,

July 7, 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767

R- 951

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 25-7123**                    **September Term, 2024**

**1:24-cv-03434-ACR**

**Filed On: August 27, 2025** [2132263]

Samiha Ayyash, et al.,

       Appellants

    v.

American Airlines Inc. and Gulf Air B.S.C,

       Appellees

### **O R D E R**

It is **ORDERED**, on the court's own motion, that this case be held in abeyance pending the district court's resolution of appellants' motion for relief from judgement.

The Clerk is directed to transmit a copy of this order to the district court. The district court is requested to notify this court promptly following its disposition of the motion.

                    **FOR THE COURT:**
                    Clifton B. Cislak, Clerk

          BY:    /s/
                    Elbert B.J. Lestrade
                    Deputy Clerk

R- 952

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

SAMIHA AYYASH, et al.,           ) CIVIL NO.:
                                 ) 24-3434-ACR
         Plaintiff,              )
     vs.                         )
                                 )
AMERICAN AIRLINES, INC.,         ) Via: Zoom
 et al.,                         ) March 28, 2025
         Defendant.              ) Washington, D.C.
_____) 2:00 p.m.

                 Transcript of Pre-motion Conference
                Before the Honorable Ana C. Reyes
                   United States District Judge

APPEARANCES:

For the Plaintiff:

     Samiha Ayyash, Pro se
     Feras Hindi, Pro se
     Tala Josephano, Pro se

For the Defendant American Airlines:

     Micah E. Ticatch, Esquire
     Isler Dare, P.C.
     1945 Old Gallows Road
     Suite 650
     Vienna, VA 22182

For the Defendant Gulf Air:

     Mark A. Johnston, Esquire
     Darcy Osta, Esquire
     Eckert Seamans Cherin & Mellott, LLC
     1717 Pennsylvania Avenue, NW
     Suite 1200
     Washington, D.C. 20006

Reported by:   Christine T. Asif, RPR, FCRR
               Federal Official Court Reporter
               333 Constitution Avenue, NW
               Washington, D.C. 20001
               (202) 354-3247

               Proceedings recorded by machine shorthand;
     transcript produced by computer-aided transcription

R- 953

P R O C E E D I N G S

THE CLERK:  We are on the record in civil action 24-3434, Ayyash, et al., versus American Airlines Inc., et al.

THE COURT:  All right.  Plaintiffs could you please state your names and defendant's counsel could you please state your appearances.

MS. JOSEPHANO:  Tala Josephano.

THE COURT:  All right.  Defense counsel.

MR. TICATCH:  Good afternoon, Micah Ticatch on behalf of American Airlines.

MS. OSTA:  Good afternoon.  Darcy Osta and Mark Johnston on behalf of defendant Gulf Air.

THE COURT:  All right.  And Ms. Josephano is Feras Hindi on?

MR. HINDI:  Yes, I'm here.

THE COURT:  Okay.  So I looked over your various motions.  I'm denying all the motions for default, because the plaintiffs have -- defendants have appeared.  And they've appeared appropriately under my local rules.  So those are getting denied today.

Secondly, I think there's an issue with the case for the plaintiffs that I just want to explain to you all, which is it is not possible for individuals to file lawsuits in any state that they want to.  They are required, under American

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

R- 954

law to file a state -- an action either where the events occurred or where the defendants are incorporated, that's the broad swath.  And if those things don't -- if either of those aren't present then the Court cannot hear the case.  And so American Airlines has not yet filed a motion to dismiss for lack of personal jurisdiction, that's what it's called because of my unique rules.  But what they've told me is they plan to file a motion to dismiss the case because the actions did not happen in the District and because neither or none of the defendants are incorporated in D.C.

And that's correct; right, defense counsel?

MS. OSTA:  Yes, Your Honor.

MR. TICATCH:  That's correct.

THE COURT:  So there's really very little that I can do.  And I just wanted to explain that to you because I'm going to give the plaintiff -- the defense an opportunity to file their motion.  And if you want a lawyer, you know, I'm happy to let you find one.  But this isn't a close call.  This obviously does not belong in this courtroom.  So I don't want you wasting money on this case.  Where are you all headquartered or incorporated?

MR. TICATCH:  American Airlines is incorporated in Delaware and its headquarters are in Texas.

MS. OSTA:  Gulf Air is a corporation under the republic of -- or sorry, the Kingdom of Bahrain and that's

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

R- 955

where its headquarters is located as well.  It's in Bahrain.

THE COURT:  Okay.  All right.  So you don't have a U.S. presence?

MS. OSTA:  Currently that's correct, Your Honor.

THE COURT:  All right.  So the plaintiffs, Gulf Air would be difficult to sue anywhere in the U.S., I think. Although, I can't say that for sure.  American, you could sue in Delaware or you could sue in Texas, but you cannot sue in the District.

MS. JOSEPHANO:  May I speak when you're finished with this, the personal --

THE COURT:  Yes.  Go ahead.

MS. JOSEPHANO:  I believe that after studying the jurisdiction, I believe American Airlines fits under general and personal.  And Gulf Air for sure they fit under personal. The other thing is they've already participated in the case, which means they filed oppositions, they filed quite a few things.  And I don't know if that's a rule or not, but filing I believe that would waive that.  But I am ready, we are ready to present their jurisdiction proof that they both -- and Gulf Air just stated that they have no presence in the U.S. which is not accurate, which I can prove as well for both jurisdiction.

And for D.C. the venue, I also can because the cause of action, the fraud specifically and the negligence per se

arise from D.C.  It's about the code share agreement and their misrepresentation to the Department of Transportation.  It's not about the death only.  There's two parts to the case.  There is the personal injury with the death.  And there is the personal -- the claims as part of the public that actually were caused harm.  Can I be given a chance to prove the jurisdiction?

THE COURT:  Yes, of course.  Yes.  All right.  Well, if you want to try to oppose, by all means.  They have not waived personal jurisdiction.  They're permitted to raise the issue in an initial -- they were allowed to file everything they filed and they raised personal jurisdiction at the right time.  So I'm not going to say they were late on that.  But if you want to proceed, by all means.

So what we'll do is set a briefing schedule for motions to dismiss.  So what happens, ma'am, is they will file a motion, you will have an opportunity to respond.  They will file a reply brief and then we will have a hearing.

I understand that for some reason you no longer are receiving emails and that you would wish to be contacted by mail.  That's really quite --

MS. JOSEPHANO:  I think the picture is not really clear here where we have not discussed -- we're willing to like pass over it, but we have not discussed the way that they approached the service and the way they served or not served

plaintiffs.  We have --

THE COURT:  Well, they're not required to serve you, ma'am.  You're required to serve them.

MS. JOSEPHANO:  I did serve them.

THE COURT:  Right.  But they're not required to serve you.

MS. JOSEPHANO:  How are they not req- -- yes, go ahead.  Sorry.

THE COURT:  So what they do is they file their papers on the docket, on the electronic docket.  And then usually what happens is that all of the lawyers and the parties get emails from the docket automatically.  But for some reason -- so they're not required to send you anything at all.  All they're required to do is file their papers on the public docket, which they have done.

MS. JOSEPHANO:  Aren't they supposed to serve us an answer on the 21 days for our claims?  They're supposed to serve us that.

THE COURT:  No.  No, they're not.  But, ma'am, that's wrong.  They have 21 days to file an answer or a motion to dismiss.  Each judge has different rules.  My particular rules say that within the time line for service, they have to file a pre-motion conference paper, which is what they did, laying out what their motion will be.  And that was timely filed and that is on the docket currently.

MS. JOSEPHANO:  So it was filed on the last day and if it's goes with the rules of your -- the outstanding orders it's -- they should have conferred with the plaintiffs, No. 1. And No. 2, she did have an expired attorney certificate on filing, which we were willing to confer the motion to dismiss before filing, but we were not approached for that.  So even though she did --

THE COURT:  Ma'am -- ma'am.  They are not required to meet and confer for a dispositive motion.  A dispositive motion is one that gets rid of the case, like a motion to dismiss.  They are only required to meet and confer with respect to a discovery motion.  So if the trial -- if the case moves forward and you all have fights about documents, then that they have to meet and confer about. Under the general rules, there's no duty to meet and confer before you file a motion to dismiss, which is what they plan to do.

The reason I have the pre-motion conference requirement is because I think conferences are good before motions.  But that's what they pursued and that's what we're doing right now and that includes me as the judge.  So they've done everything procedurally correctly.

MS. JOSEPHANO:  Okay.  May I ask here, American Airline, they certified that they did serve the 21-day motion. And they submitted their motion conference despite me pretty much almost begging them to fix the certificate so we can

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

R- 959

submit in a position to his motion to dismiss.  He totally ignored it and filed the meet and confer eight days after the deadline.  Is that procedure --

THE COURT:  Ma'am, I'm not quite sure what -- what is it that you want right now that you think you don't have?

MS. JOSEPHANO:  I think we -- to be honest, I read his motion to dismiss.  And even the motion to dismiss and their meet to confer is about the merits, it's not even about their jurisdiction or any of this.  And even with that, they both -- both defendants did not follow the procedure to serve or serve on time.

THE COURT:  Ma'am --

MS. JOSEPHANO:  And she did file with an expired attorney certificate.  And he did admit that he served on the 13th, which is day after the deadline he did admit to his --

THE COURT:  Ma'am -- ma'am, those deadlines are rules that are a discretion of the judge.  If they did not file on time, I don't really care, I'm giving them the extra time.  So I'm denying the motion for default on timing.  So that's gone.  Forget about the timing.  We are past the timing.

MS. JOSEPHANO:  No, no, we're not worried about that.

THE COURT:  Ma'am, we are because I said we are. All right.  When I say we are past something, we are past it.

So we're fine, we're done, we're past the deadlines.

Now, they did file a motion to dismiss, but then they realized that I have special rules, so then they withdrew the motion to dismiss and they filed a pre-motion conference document. And then that's why we set this hearing, because those are my rules.

Now, for some reason that I do not understand, you all sent an email to my courtroom deputy saying that you no longer wanted to receive emails and you took your emails off of the automatic ECF filing, which is why we had to mail you the information for this call. Now, I want to understand first, why you don't want to get emails. And second, explain to you that what I'm now going to allow is allow the defendants to file motions to dismiss, I will let you have the opportunity to oppose, they will get a reply and then we will have a hearing.

MS. JOSEPHANO: I'm good with that. But I do not wish to receive emails, because my phone gets either sometimes does and sometimes doesn't, that's reason No. 1. No. 2 is they did not -- I don't want to say the word "respect," but they didn't use it in the right way. So I prefer to be mailed like you mailed me a letter from the Court and here I am, I appeared. You mailed --

THE COURT: All right. That's -- ma'am, that's totally fine. If you want mail, that's totally fine. That

just means that you're going to get things three or four days after they've been put on the public docket.  If that's what you want, that's totally fine.  I don't care.

Counsel, can you all add mail service to your pleadings, so that our courtroom deputy doesn't have to do this?

MS. OSTA:  Yes, Your Honor.

MR. TICATCH:  Yes.

THE COURT:  Okay.  So after you docket it on the ECF docket, please do so with our traditional, you know, certificate of service that we haven't done in a while, that you've actually mailed it out and make sure it gets mailed out, all right?

MS. OSTA:  Yes, Your Honor.

THE COURT:  All right.  How long would you guys like for a motion to dismiss briefing?  When do you want to file?

MS. OSTA:  Your Honor, Gulf Air would request two to three weeks, please.

THE COURT:  Okay.

MR. TICATCH:  Your Honor, that schedule works for us as well.

THE COURT:  All right.  Ma'am, how long would you like to file an opposition?  Do you want 30 days?  That's what, you know, usually people ask for is 30 days.

MS. JOSEPHANO:  Is it possible that we get it in a

month, like them submitting that, so we can have time to get legal representation.

THE COURT: Yeah. So what I will do is -- what's today, the 28th? You guys okay with April 18th, that's eight weeks -- that's three weeks.

MS. OSTA: Yes, Your Honor.

MR. TICATCH: Yes.

THE COURT: All right. So I'm going to make their motion due on April 18th. And then I'm going to give you all two months, -- I'm going to give you until May 16 to oppose, so you get 60 days to try to find a lawyer. And then I will give them until June 6th to reply. And then we will set a hearing.

Counsel, I don't need a briefing on the 12(b)(6) at this point, just jurisdiction for now. If I find that they have jurisdiction, I'll let you file a 12(b)(6) later, all right?

MS. OSTA: Thank you, Your Honor.

THE COURT: All right. Ma'am, does that -- did you understand that schedule?

MS. JOSEPHANO: Yes, I did.

THE COURT: All right. So we will send out a minute order with the schedule on it. Can you guys print it out and send it to her, please?

MR. TICATCH: Yes, we can do that.

THE COURT:  All right.  Anything else at this time?

MR. TICATCH:  Your Honor, I have been alerted that one of the plaintiffs in this case has filed a lawsuit against me, personally, and my client American Airlines, based on the same issue that was addressed here today.  I'm not sure if there's anything we can do on that today, but --

THE COURT:  What's the issue?  What's the issue?

MR. TICATCH:  That -- the claim is for fraud and abuse of process, again, on the certificate of service.

THE COURT:  Okay.  Ma'am --

MS. JOSEPHANO:  No, it's not about the certificate of service.  Don't say -- you have to give the picture correctly.

THE COURT:  Okay.  What's the correct picture. Ma'am, what's the correct picture?

MS. JOSEPHANO:  I emailed him twice and I spoke to him like four times, and every time he actually misled me that he did serve -- send papers and that he did do all -- everything correctly.  And I pretty much begged him to fix it. And I gave him a chance and I said, I want to argue the merits.  We do not want this on procedures.  And he still refused.  And then he was so sure that the judge is not going to care for your case.  That's exactly what he told me.

THE COURT:  All right.  Well, I'm not going to get into he said, she said, I think what he meant was --

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

R- 964

MS. JOSEPHANO:  This is a different case.  This has nothing to do with --

THE COURT:  All right.  Ma'am.  Ma'am.  Where was that case filed, Mr. Ticatch?

MR. TICATCH:  Here.  And I believe it's been assigned to you, I think maybe because it's a related case, but I have not been served with it yet.  I just found it on the docket.

THE COURT:  All right.  Ma'am, I still don't understand what you think that he did incorrectly, he -- everything that I have seen that he has done, he has done correctly.  He is under no obligation to talk you about the merits of the case.  None.  There's no rule that requires him to talk about the merits of the case.  He doesn't even have to take your phone call if he doesn't want to.

MS. JOSEPHANO:  I'm -- I'm sorry here, I think I deserve a chance in my other case, which is not related to this case, it has nothing to do and it's against him personally, it's not against the defendants in this case.  This man --

THE COURT:  Ma'am.  Ma'am, it is related in this case under our rules, it is my case, so if you, you know, -- Mr. Ticatch if you want to --

MS. JOSEPHANO:  Dismiss it and I'll just appeal, because that's separate case, has nothing to do with this one,

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

R- 965

that's personal.

THE COURT:  One second.

All right.  Ma'am, I mean, I'm telling you right now that this second complaint, I'm looking at it right now, has no basis in it whatsoever.

Mr. Ticatch, file a short brief motion to dismiss with your other motion.

MS. JOSEPHANO:  But it wasn't served on him yet.  I haven't served him yet because I plan to hire a lawyer for it.

THE COURT:  I can --

MS. JOSEPHANO:  You can dismiss it from your end and I can appeal it.

THE COURT:  Ma'am, I'm not going to dismiss it from my end without giving you a chance to respond to a motion.

Mr. Ticatch, you've officially been served.  I just served you.  Will you please file a motion.

MS. JOSEPHANO:  But I'm going to amend the claim, I'm not ready to submit the claim as it is.

THE COURT:  Well, I'm not going to --

MS. JOSEPHANO:  I have 21 days to amend the claim. How can you serve him on me if I have a lawyer, I want to get a lawyer for it.

THE COURT:  All right.  Ma'am, you know what, fine. You have until -- when do you have until -- to amend do you

think?  When does she have to amend, do you guys know?

MS. JOSEPHANO:  19 days or maybe 15 days.

MR. TICATCH:  I think the only deadline right now is the service deadline, which I think is 60 days or 90 days.

MS. JOSEPHANO:  I'm actually thinking of filing criminally on you, just so you understand the position we're in, because he did actually --

THE COURT:  All right.  Ma'am, you cannot file criminal charges against anyone, only a prosecutor can do that.  All right.  I'm not going to have you harass the lawyer.  If I start seeing that you're harassing the lawyer, there are going to be consequences.  All right?

MS. JOSEPHANO:  That's what I -- filing a police report.  That's what I meant.  Not filing criminal charges, sorry, for my --

THE COURT:  All right.  Well, you file the police report and it will go absolutely nowhere.  And if I find that Mr. Ticatch is getting harassed by you, I have all the power in the world to impose --

MS. JOSEPHANO:  Why are you -- why are you -- why are you, like, being rough on me only?  Why?

THE COURT:  Ma'am --

MS. JOSEPHANO:  I'm on every step of your rules, they didn't.  Why are you being rough on me, like, I don't understand.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

R- 967

THE COURT: Ma'am, I'm not being rough on you, I'm trying to -- in fact, I've been far more patient than about 99 percent of judges would be under the circumstances. You are -- you missed -- your complaints are based on a misconstruction of the rules. All right. What you are saying, and I looked at the complaint that Mr. Ticatch did incorrectly, he did not do incorrectly. Now, if you want to file a lawyer and file an amended complaints, by all means do so.

Mr. Ticatch, after you get served with a complaint, file your motion, two, three weeks, then we will set a briefing schedule and then we will get that taken care of as well. And, ma'am, you will have every opportunity to oppose that motion.

MS. JOSEPHANO: Thank you.

THE COURT: All right.

MS. JOSEPHANO: Thank you very much.

MR. TICATCH: I'm sorry, Your Honor, just to clarify, you want a letter, like we did in this case, or you want me to skip that step?

THE COURT: Don't -- you don't need a PMC in this one, just file your motion.

MR. TICATCH: Okay. Thank you, Your Honor.

THE COURT: Just wait until you get served and then, you know, file within some reasonable time after you get

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

R- 968

served.  I'll set a briefing schedule to let her know when to oppose, all right?

MR. TICATCH:  Sounds good.  Thank you, Your Honor.

THE COURT:  All right.  Mr. -- if any party here is abusing the system, or harassing the other side, please bring it to my attention and we will get it dealt with, okay?

All right.  Thank you.

All right.  Thank you, everyone.

MR. TICATCH:  Thank you.

MS. OSTA:  Thank you.

MR. JOHNSTON:  Thank you, Your Honor.

(The proceedings were concluded at 2:21 p.m.)

I, Christine Asif, RPR, FCRR, do hereby certify that the foregoing is a correct transcript from the stenographic record of proceedings in the above-entitled matter.

_____/s/_____
Christine T. Asif
Official Court Reporter

R- 969

## CERTIFICATE OF SERVICE

I certify that on **August 7, 2026**, I served a copy of the foregoing document

( Appendix ) **electronically through the Court's CM/ECF system** on counsel of

record for Appellees and **by email** as follows:

- **Micah E. Ticatch**, IslerDare PC, 1945 Old Gallows Road, Suite 650,

  Vienna, VA 22182, mticatch@islerdare.com.

- **Mark A. Johnston**, Eckert Seamans Cherin & Mellott, LLC, 1717

  Pennsylvania Avenue, N.W., Suite 1200, Washington, DC 20006,

  MJohnston@eckertseamans.com.

- **Darcy C. Osta**, Eckert Seamans Cherin & Mellott, LLC,

  dosta@eckertseamans.com.

Date : August 7  2026

Respectfully submitted

Pro Se Appellants

Tala Josephano

Tala Josephano, Pro Se

1876 PCH

Lomita, CA 90717

(347)749-4980

Feras Hindi

Feras Hindi, Pro Se

7823 New London Drive

Springfield, VA 22153

(703)980-6955


Samiha Ayyash

Samiha Ayyash

#6 Abu Nsair Karmeh Street,

Jubaiha Amman Jordan 11937

(703)623-3767